IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| *In re Clearview AI, Inc. Consumer Privacy Litigation* | ) ) ) ) ) ) ) | Case No. 1:21-cv-00135 Judge Sharon Johnson Coleman Magistrate Judge Maria Valdez |

### AFFIDAVIT OF MICHAEL WILLIAMS IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

| | |
|---|---|
| COUNTY OF WASHINGTON | ) |
| | ) ss.: |
| STATE OF OREGON | ) |

MICHAEL WILLIAMS, being duly sworn deposes and says:

1.    My name is Michael Williams, and I am a retired Group Supervisor/Supervisory Special Agent from the Homeland Security Investigations ("HSI") office in Portland, Oregon. I was an investigative and law-enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and was empowered by law to conduct investigations and make arrests for felony offenses. At the time of my retirement in December 2019, I had been a federal law enforcement officer for more than 23 years. I spent the last ten years of my career as a manager, and the first 13 years as a Special Agent/Criminal Investigator. Before I began working in federal law enforcement, I was a Deputy Sheriff for the Clackamas County Sheriff's Office in Oregon City, Oregon.

2.    I have received extensive training and practical experience relating to federal criminal procedure, federal criminal statutes, U.S. immigration and nationality law, U.S. customs

1

laws and regulations, and other federal and state laws. I have attended the Criminal Investigator Training Program and the Immigration Officer Basic Training Course at the Federal Law Enforcement Training Center in Brunswick, Georgia. I also attended the Basic Police Academy at the Oregon Department of Public Safety Standards and Training in Monmouth, Oregon.

3.      From June 2014 through December 2019, I supervised HSI's investigative group handling child-exploitation, anti-money laundering, intellectual-property rights, customs fraud, and counter-proliferation investigations. During that time, I also supervised the computer forensics program and the agents who worked in that program. From July 2013 through April 2014, I served as the Acting Assistant Special Agent in Charge of the HSI Portland office, which included the supervision of all personnel in Oregon and southwest Washington. From May 2012 through June 2014, I supervised the investigative group for narcotics, bulk cash, and contraband smuggling. From December 2009 through May 2012, I supervised the investigative group handling national security, public safety, and critical infrastructure. Finally, from April 1996 through December 2009, I was a Special Agent/Criminal Investigator within HSI's Portland office working in a variety of investigative case areas.

4.      I earned a Bachelor's Degree from Portland State University in Administration of Justice in 1994.

5.      Since then, I have completed numerous trainings to hone my law enforcement skills. For example, in 2018, I attended the Intellectual Property & Trade Enforcement Investigations Course at the National Intellectual Property Rights Coordination Center in Arlington, Virginia. In 2015, I successfully completed the Internet Crimes Against Children Unit Supervisor Training Program at the U.S. Department of Justice, Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention, in Alexandria, Virginia. In addition, I completed

trainings in federal asset forfeiture through the Oregon Narcotics Enforcement Association in 2012; supervisory leadership trainings at the Immigration and Customs Enforcement Academy in Dallas, Texas, in 2010 and 2011; and other law-enforcement-related training sessions in various program areas. Given the nature of my work, I received a Top Secret/Sensitive Compartmented Information security clearance from the U.S. government that remains valid until November 2023.

6. As a Group Supervisor/Supervisory Special Agent for the HSI Portland office supervising the child-exploitation program, between June 2019 and December 2019 (when I retired), I directly supervised a Special Agent within the group who was authorized to access and use the Clearview AI ("Clearview") app to investigate crimes involving child-exploitation.

7. Clearview's facial-recognition technology has been instrumental in bringing victims of child sexual exploitation to safety, and their abusers to justice. For example, in May 2019, HSI received a series of images from the National Center for Missing and Exploited Children depicting the brutal sexual abuse of a prepubescent child by her father. The child victim was approximately six years old at the time.

8. Agents scoured the photos for clues about the location and identities of the child and her abusive father. Unfortunately, consistent with many child-exploitation cases conducted using traditional investigative techniques, these efforts were unsuccessful, and the child was subjected to further sexual abuse at the hands of her father.

9. Following this dead end, images of the suspect were sent to other groups specializing in child sexual exploitation cases within other HSI offices (including HSI Task Force Officers) asking for their assistance in identifying this person. One of these agents worked on a taskforce with the New York City Police Department and was able to have the suspect's face run through the Clearview app (which, at the time, my agency did not have access to) by a member of

3

the police department.

10. Clearview's facial-recognition technology returned an image of the suspect in the background of a photo of other people attending a bodybuilding convention. Although the suspect was not the focus of the photo, Clearview's facial-recognition technology identified him standing in a booth in the background selling supplements and other fitness-related items. The agent used this image as our first lead in the case.

11. The agent scrutinized the image and noted that the booth the suspect was in bore the name of a company. The agent then contacted the company and showed representatives from the company an image of the suspect. The company gave the agent the suspect's name, which enabled the agent to conduct additional fact-finding and eventually learn that the suspect lived in Las Vegas. The agent then contacted HSI Las Vegas, which worked with the Las Vegas Metropolitan Police Department to gather additional evidence, obtain and execute a search warrant, and arrest the suspect based on probable cause and the evidence gathered at the scene of the search warrant in June 2019. This was only days after the suspect had been identified by Clearview's facial-recognition technology. Because there were no other leads in this case, I am confident that the six-year-old victim would have been subjected to further abuse by her father had we not been able to use Clearview's facial-recognition technology.

12. In September 2020, the suspect was sentenced in the U.S. District Court for the District of Nevada to 35 years in federal prison for repeatedly sexually assaulting a child, producing images of the sexual abuse, and possessing hundreds of images and videos of child sexual assault.

13. This example is representative of numerous other investigations throughout HSI where Clearview's facial-recognition technology was used to create leads where none existed.

4

These leads are always followed up with traditional investigative techniques, which ultimately confirm whether the person identified in Clearview's search results is, in fact, the victim or the suspect. Being able to identify victims is just as important as identifying a suspect because once victims are identified and located, they can be offered the services and benefits so desperately needed to help with what is many times ongoing traumatic physical and sexual abuse.

14.     It is important to note that every law-enforcement agency, whether state, local, or federal, all have policies that their personnel must abide by. Within HSI specifically, licenses for Clearview are being limited within each Special Agent in Charge office to just two for those agents conducting or otherwise supporting child-exploitation investigations within their areas of responsibility. Those that will be using Clearview must complete an online-training course for general use of facial-recognition services, and each user will also need to attend virtual training sessions conducted by HSI headquarters' Cyber Crimes Center. HSI's facial-recognition policy states that the technology may only be used when it is relevant and necessary to an ongoing investigation relating to HSI's statutory authorities, or as part of an established HSI program or task force whose use of facial-recognition technology is assessed for its impacts on privacy, civil rights, and civil liberties. In addition, any facial-recognition systems used by HSI may not be used to surveil the general public or used in real-time. Also, any use of facial-recognition systems must be noted in program or system logs, case files, and the case-management system. Regular audits are conducted by the Office of Professional Responsibility to ensure compliance and correct usage of these systems.

15.     Based on my training and experience as a law-enforcement officer, and information relayed to me by the agent under my direct supervision who was an authorized Clearview user, I can confirm that Clearview's app has had a substantial positive impact on the ability of HSI to

bring crime victims to safety and identify and apprehend criminals and online predators.

16.     Clearview's facial-recognition technology can be analogized with Suspicious Activity Reports filed by financial institutions for use by law enforcement in financial investigations.  Both are used as tools at the beginning of investigations to gather information to use as a starting point in a broader investigation.  Both tools are powerful, but they are not meant to be used in a vacuum strictly on their accord, but in conjunction with traditional investigative techniques.  When these tools are used judiciously and ethically, and I am aware of no instances where they have not been used in this manner, they serve only to supplement investigations.  In all cases, the information generated with these tools must be verified, confirmed, and validated before any law-enforcement action is taken.

17.     Without the use of Clearview's facial-recognition technology as an investigative tool in child exploitation investigations, I believe that there are cases that would not have been solved by HSI or would have taken far longer to solve using other investigative techniques.  This means that countless child victims would have continued to suffer at the hands of their abusers while awaiting rescue by law-enforcement.

18.     In my opinion, reducing Clearview's ability to serve its law-enforcement clients would significantly impair the ability of HSI to conduct successful investigations.  Reducing Clearview's ability to serve law-enforcement would make my community in Oregon, and communities throughout the nation and the world, less safe, since there are no borders when it comes to crimes committed through the internet.

Michael Williams

Sworn to before me this 29 day of
April 2021

Notary Public

OFFICIAL STAMP
**JEAN M BRAULT**
NOTARY PUBLIC - OREGON
COMMISSION NO. 1004178
MY COMMISSION EXPIRES SEPTEMBER 21, 2024

7