IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | ) ) ) Case No. 1:21-cv-00135 ) ) Hon. Sharon Johnson Coleman ) ) Magistrate Judge Maria Valdez |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO CONVERT THEIR PENDING MOTION FOR PRELIMINARY INJUNCTION INTO A MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

In Plaintiffs' Emergency Motion to Convert their Pending Motion for Preliminary Injunction into a Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 69 ("Pl.'s Mot."), Plaintiffs express their "fear" that "in an effort to avoid the impact of any injunction this Court may order, Defendants are going to distribute or otherwise disseminate the Biometric Database — containing Plaintiffs' and Illinois residents' Biometric Data — to" Clearview's two foreign subsidiaries. Pl.'s Mot. at 2. However, as detailed in the accompanying May 19, 2021 declaration of Clearview's General Counsel, Thomas Mulcaire ("Mulcaire Decl."), these fears are not based in fact. As the fear is wholly unfounded and based solely on speculation, it cannot form the basis for Plaintiffs' requested relief as a matter of law. Accordingly, Plaintiffs' Motion should be denied.

**BACKGROUND**

During the May 13, 2021 deposition of Thomas Mulcaire, Plaintiffs' counsel asked Mr. Mulcaire for a list of Clearview's current subsidiaries. Mulcaire Tr. at 174:21-175:8 (Mulcaire Decl. Ex. A). Mr. Mulcaire identified four subsidiaries, including two foreign entities — Standard

1

International Technologies SA, a Panamanian entity, and Standard International Technologies PLC, a Singaporean entity. *Id.* at 175:9-176:25. Mr. Mulcaire testified that these subsidiaries currently have no customers, and that they were established to "potentially" transact with Latin American and Asian law-enforcement authorities. *Id.*

Despite the fact that Plaintiffs now seek an order prohibiting Clearview from "distributing and disseminating Plaintiffs' and Illinois residents' Biometric Data" to Clearview's foreign subsidiaries, Pl.'s Mot. at 5, Plaintiffs' counsel never asked Mr. Mulcaire — either during the deposition or at any point before filing their "Emergency Motion" — whether Clearview intends to place any such information under the control of Clearview's foreign subsidiaries. Mulcaire Decl. ¶ 6. Had Plaintiffs' counsel asked this simple and seemingly dispositive question, Mr. Mulcaire's response would have been that Clearview does not intend, either now or in the foreseeable future, to place its database of facial vectors under the ownership or control of any other company, including any current or former Clearview subsidiary. *Id.* ¶¶ 6-7.

In fact, contrary to what Plaintiffs' submission seeks to persuade the Court to believe, the testimony given at the deposition made plain that there was no real-world threat that Clearview would place its database of facial vectors under the ownership or control of any of its foreign subsidiaries.[1] For example, Mr. Mulcaire testified that: (1) he did not think the foreign subsidiaries

---

[1] In their effort to impugn Mr. Mulcaire, Plaintiffs suggest that they uncovered the non-material fact that Mr. Mulcaire became General Counsel in March 2020 and not September 2019 as set forth in his prior declarations. Plaintiffs' Reply in Support of Motion for Preliminary Injunction ("Pl.'s Reply") at 1-2. In fact, Mr. Mulcaire volunteered that fact at the beginning of his deposition. Mulcaire Tr. at 14:10-19 ("[T]here's an issue in my declaration and in some other declarations I made that conflates the date I started working at Clearview, which was September 2019, with the date that I became general counsel at Clearview, which was after I was sworn in, in March of 2020 . . . . So that was just an . . . oversight."). Plaintiffs also try to suggest that Mr. Mulcaire tried to deceive the Illinois Secretary of State into believing that Rocky Mountain was a separate company from Clearview. Pl.'s Reply at 2-3. In fact, Mr. Mulcaire testified that the Illinois Secretary of State was fully aware of the relationship between the two companies since, among other things, the contract with Rocky Mountain followed from a trial subscription with Clearview. Mulcaire Tr. at 118:13-21; 147:13-22.

were registered to do business in the United States; (2) because Clearview already "offers its product in the United States directly, . . . there's no need to use any other entity"; (3) it "would be inconvenient and unnecessary" to use a foreign subsidiary to conduct business in the United States; and (4) Clearview "hasn't authorized [the foreign subisidiaries] to provide its product in the United States." *Id.* ¶ 11. And when asked if it was "possible that either or both of these entities could offer the Clearview database in the United States," Mr. Mulcaire responded that, "I don't think that they — at this current time . . . would be able to for various reasons." *Id.* ¶ 12. Finally, when asked whether it would be "in the realm of possibility" that Clearview's foreign subsidiaries "could register to do business in the United States," Mr. Mulcaire testified that "[i]f . . . facts were different tha[n] what they are now, it's possible that those entities could do business in the United States and even offer Clearview's product in the United States." *Id.* ¶ 13.

If there were any doubt about Clearview's intentions, however, Clearview has put them to rest by representing to this Court now that, if at any point during the pendency of this litigation, Clearview changes its mind and decides to place facial vectors under the ownership or control of another company, it will inform the Court and Plaintiffs before doing so. *Id.* ¶¶ 8, 17.

**ARGUMENT**

It is well established that "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *E. St. Louis Laborers' Local 100* v. *Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005); *cf. Stroman Realty,* Inc. v. *Martinez*, 505 F.3d 658, 664 (7th Cir. 2007) ("[S]peculation does not rise to the level of irreparable harm that would justify the intervention of a federal court."). Moreover, it is "well-settled law" that injunctions may not be issued "merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Cont'l Grp., Inc.* v. *Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citation

3

omitted).

That is precisely what Plaintiffs seek to do here, where they are asking for the "extraordinary and drastic remedy" of an injunction to prevent Clearview from engaging in conduct that Clearview's General Counsel has stated under oath Clearview does not plan to engage in, either now or in the foreseeable future. *See Goodman* v. *Ill. Dep't of Fin. & Prof'l Regul.*, 430 F.3d 432, 437 (7th Cir. 2005); Mulcaire Decl. ¶¶ 6-7, 17. Moreover, were Clearview to change its mind and decide to place its facial vectors under the control or ownership of another company, Clearview has further represented that Clearview would give the Court and Plaintiffs notice before doing so. Mulcaire Decl. ¶¶ 8, 17. Thus, if Plaintiffs' speculative concerns were ever to crystalize into a real-life concern, the parties and the Court would have sufficient notice to address the issue anew. Based on these facts, Plaintiffs have failed to demonstrate the need for an injunction.

Indeed, courts have repeatedly held that injunctions are inappropriate where the risk of harm is speculative. For example in *Amoco Chems. Corp.*, the Third Circuit overturned a district court decision enjoining a company's former employee from engaging in certain work with his new employer, given the "risk" of "an inadvertent disclosure or use" of proprietary information. 614 F.2d at 357. The Third Circuit reversed this decision because an injunction "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Id.* at 359.

Here, Plaintiffs have failed to demonstrate anything more the "possibility" of a speculative future injury. Indeed, Plaintiffs merely state their "fear" that Clearview "could" place its facial vectors under the ownership and control of its foreign subsidiaries. Pl.'s Mot. at 1, 3-4. This is not a sufficient basis for this Court to grant Plaintiffs' Motion, particularly when Clearview's General Counsel has represented to the Court, under oath, that Clearview does not plan to engage

4

in any such conduct. *See, e.g.*, *Transunion Risk & Alt. Data Sols., Inc.* v. *Challa*, 676 F. App'x 822, 825-26 (11th Cir. 2017) (crediting the defendant's testimony that he would not disclose his former employer's proprietary information, and rejecting the argument that "the mere possibility" that the defendant could divulge confidential information in the future constituted irreparable harm); *Glob. Generation Grp., LLC* v. *Mazzola*, 2:13-cv-14979, 2014 WL 1772417, at *5 (E.D. Mich. May 2, 2014) (denying a motion for a temporary restraining order where plaintiffs "made no effort to substantiate their claim that they will suffer irreparable harm if an injunction is not granted," and defendants submitted an affidavit from a manager stating that the company did not plan to engage in the conduct that plaintiffs were seeking to enjoin); *Ocilla Indus., Inc.* v. *Katz*, 677 F. Supp. 1291, 1297 (E.D.N.Y. 1987) (finding no irreparable harm because "[t]he record in fact demonstrates no present intention by defendants to" engage in the conduct plaintiffs were seeking to enjoin).

Plaintiffs cite no cases permitting an injunction or temporary restraining order based on a similar fact pattern. Nor could they. Courts may not enter injunctions based on mere speculation about what is theoretically possible; rather, parties seeking an injunction must come forward with evidence that there is a real-world threat of imminent irreparable harm. *Amoco Chems. Corp.*, 614 F.2d at 357; *Transunion Risk & Alt. Data Sols., Inc.*, 676 F. App'x at 826; *Glob. Generation Grp., LLC*, 2:13-cv-14979, 2014 WL 1772417, at *5; *Ocilla Indus., Inc.*, 677 F. Supp. at 1297. There is no such evidence here, and the request for a temporary restraining order should be denied.

## CONCLUSION

Plaintiffs' Motion should be denied.

Dated: May 19, 2021                                Respectfully submitted,


By:   /s/ Joel Kurtzberg
Joel Kurtzberg
Floyd Abrams
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Phone: (212) 701-3000
jkurtzberg@cahill.com
fabrams@cahill.com

Lee Wolosky (admitted pro hac vice)
Andrew J. Lichtman (pro hac vice pending)
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022-3908
Phone: (212) 891-1600
lwolosky@jenner.com
alichtman@jenner.com

Howard S. Suskin
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Phone: (312) 222-9350
hsuskin@jenner.com


Attorneys for Defendants Clearview AI, Inc., Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC, and Thomas Mulcaire

## **CERTIFICATE OF SERVICE**

      I certify that on May 19, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

                                      By:   /s/ Joel Kurtzberg
                                                 Joel Kurtzberg