**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| *In re: Clearview AI, Inc. Consumer* | ) | Case No. 1:21-cv-00135 |
| *Privacy Litigation* | ) |  |
|  | ) | Hon. Sharon Johnson Coleman |
|  | ) |  |
|  | ) |  |

**CLEARVIEW DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS
ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      The Claims Against the Individual Defendants Should Be Dismissed Because All of the Alleged Misconduct Was Committed in Their Corporate Capacity ................... 3

II.     Plaintiffs Cannot Pierce Rocky Mountain's Veil ............................................................ 5

III.    Plaintiffs Fail to State a BIPA Claim Against Rocky Mountain and Mulcaire ............. 5

IV.    Plaintiffs' BIPA Claim Is Barred by the First Amendment ........................................... 6

       A.     Clearview Engages in Speech Protected by the First Amendment ..................... 6

       B.     BIPA As Applied Is a Content-Based Restriction on Speech Triggering Strict Scrutiny ..................................................................................................... 8

       C.     BIPA As Applied Cannot Survive Strict, or Even Intermediate, First Amendment Scrutiny ......................................................................................... 9

V.      BIPA Does Not Regulate Out-Of-State Conduct ......................................................... 10

       A.     Plaintiffs' BIPA Claim Violates Illinois' Extraterritoriality Doctrine .............. 10

       B.     Applying BIPA to Clearview Would Violate the Dormant Commerce Clause ............................................................................................................... 12

VI.    The Complaint Does Not Adequately Allege a Violation of Section 15(c) ................ 14

VII.   Plaintiffs Fail to State a Claim Under California, New York, or Virginia Law ........... 15

       A.     Plaintiffs Fail to Allege a Cognizable Injury for Article III Standing ............. 15

       B.     Plaintiffs Fail to State a Right of Publicity Claim Under State Law ................ 16

       C.     Plaintiff Roberson Fails to State a Virginia Computer Crimes Act Claim ...... 18

       D.     Plaintiff Vestrand Fails to State an Unfair Competition Law Claim ............... 19

       E.     Plaintiff Vestrand Fails to State a Claim for Invasion of Privacy .................... 20

VIII.   Plaintiffs Fail to State a Claim for Unjust Enrichment or Declaratory Judgment ........ 20

CONCLUSION .................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*
216 Ill.2d 100, 835 N.E.2d 801 (2005) ...................................................................11

*Belluomini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) ..........................................................20

*Brandt v. Rokeby Realty Co.*,
2004 WL 2050519 (Del. Super. Ct. Sept. 8, 2004) ...................................................4

*Brokaw v. Brokaw*,
2006 WL 618901 (C.D. Ill. Mar. 10, 2006) ......................................................10, 12

*Bryant v. Compass Group USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ..................................................................................16

*C.R. Bard, Inc. v. Guidant Corp.*,
997 F. Supp. 556 (D. Del. 1998) ...............................................................................5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................................................19

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th. Cir. 2016) ...................................................................................7

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ..................................................................................17

*Edenfield v. Fane*,
507 U.S. 761 (1993) ...................................................................................................9

*In re Facebook Biometric Information Privacy Litigation*,
2018 WL 2197546 (N.D. Cal. May 14, 2018) .........................................................13

*Fax Connection, Inc. v. Chevy Chase Bank, F.S.B.*,
73 Va. Cir. 263 (2007) .............................................................................................19

*Flores v. Motorola Sols., Inc.*,
2021 WL 232627 (N.D. Ill. Jan. 8, 2021) ...............................................................14

*Fox v. Dakkota Integrated Sys., LLC*,
980 F.3d 1146 (7th Cir. 2020) .................................................................................20

*Galligan v. Adtalem Glob. Educ. Inc.*,
    2020 WL 231078 (N.D. Ill. Jan. 15, 2020) .............................................................................4

*In re Google Ass't Privacy Litig.*,
    2021 WL 2711747 (N.D. Cal. July 1, 2021) .........................................................................19

*In re Hackman*,
    534 B.R. 867 (Bankr. E.D. Va. 2015) ..................................................................................18

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ...........................................................................................................12

*Junger v. Daley*,
    209 F.3d 481 (6th Cir. 2000) ................................................................................................7

*Landau v. CNA Fin. Corp.*,
    381 Ill. App. 3d 61, 886 N.E.2d 405 (1st Dist. 2008) ..........................................................10

*Lerman v. Flynt Distrib. Co.*,
    745 F.2d 123 (2d Cir. 1984) ................................................................................................18

*People ex rel. Madigan v. Tang*,
    46 Ill. App. 3d 277, 805 N.E.2d 243 (1st Dist. 2004) ...........................................................4

*Mason v. Network of Wilmington, Inc.*,
    2005 WL 1653954 (Del. Ch. July 1, 2005) .......................................................................1, 3

*Midwest Title Loans, Inc. v. Mills*,
    593 F.3d 660 (7th Cir. 2010) ..........................................................................................12, 13

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ..............................................................................................17

*Monroy v. Shutterfly, Inc.*,
    2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .........................................................11, 13, 14

*Motise v. Am. Online, Inc.*,
    2005 WL 1667658 (E.D. Va. June 24, 2005) ......................................................................18

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ...............................................................................................17

*Otero v. Houston Street Owners Corp*,
    2012 WL 692037 (N.Y. Sup. Ct. Feb. 28, 2012) .................................................................18

*People v. Austin*,
    2019 IL 123910, 155 N.E.3d 439 (2019) ..............................................................................6

*Rice v. Nova Biomedical Corp.*,
    38 F.3d 909 (7th Cir. 1994) ........................................................................5

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................10

*Se. Wholesale Corp. v. Cox Communications Hampton Roads, LLC*,
    2013 WL 2147478 (E.D. Va. May 14, 2013) ............................................18

*Sondik v. Kimmel*,
    131 A.D.3d 1041 (N.Y. Sup. Ct. 2015) .....................................................20

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .................................................................................6, 8

*South Dakota v. Wayfair, Inc.*,
    138 S. Ct. 2080 (2018) ..............................................................................13

*Thornley v. Clearview AI, Inc.*,
    984 F.3d 1241 (7th Cir. 2021) ..................................................................16

*Thornley v. CDW-Government, LLC*,
    No. 2020 CH 04346 (Cir. Ct. Cook Cnty. June 25, 2021) .......................1, 6

*Timed Out, LLC v. Youabian, Inc.*,
    229 Cal. App. 4th 1001 (2014) .................................................................17

*Town & Country Props. v. Riggins*,
    249 Va. 387 (1995) ...................................................................................17

*TransUnion, LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..............................................................................15

*United Fin. Mortg. Corp. v. Bayshores Funding Corp.*,
    245 F. Supp. 2d 884 (N.D. Ill. 2002) .........................................................5

*United States v. O'Brien*,
    391 U.S. 367 (1968) ....................................................................................8

*Vance v. Microsoft Corp.*,
    2021 WL 1401634 (W.D. Wash. Apr. 14, 2021) ......................................14

*Williams v. Newsweek, Inc.*,
    63 F. Supp. 2d 734 (E.D. Va.) ..................................................................18

*Yezek v. Mitchell*,
    2007 WL 61887 (N.D. Cal. Jan. 8, 2007) .................................................20

**Statutes**

740 ILCS 14/25(c) ...................................................................................................8

740 ILCS 14/25(e) .................................................................................................5, 8

Va. Code § 18.2-152.4(A)(6)...................................................................................19

**Other Authorities**

First Amendment ............................................................................................2, 6, 7, 9

California Constitution.............................................................................................20

Illinois Constitution ..................................................................................................2

# INTRODUCTION[1]

Confronted with the litany of deficiencies in their Complaint, Plaintiffs accuse the Clearview Defendants of "tak[ing] the proverbial kitchen-sink approach," Opp'n at 1, but in fact it is Plaintiffs who have brought sixteen claims under the laws of four states, none of which are actionable with respect to the conduct alleged. The number of defenses raised by the Clearview Defendants only highlights the many fundamental deficiencies in the Complaint.

At the outset, the Complaint should be dismissed as to the individual defendants because Plaintiffs do not come close to clearing the high bar for establishing individual liability for alleged corporate misconduct. Contrary to Plaintiffs' assertion that they need not allege fraud to pierce the corporate veil, Plaintiffs' own authority demonstrates that they "must" show that Clearview and Rocky Mountain "exist for no other purpose than as a vehicle for fraud." *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005).

The claims against Rocky Mountain and Thomas Mulcaire ("Mulcaire") should be dismissed because Plaintiffs allege that Rocky Mountain (through Mulcaire[2]) engaged in a transaction with its "sole customer," the Illinois Secretary of State, Compl. ¶ 16—a transaction that is expressly exempt from BIPA. In fact, an Illinois court recently dismissed with prejudice a BIPA claim against a company that allegedly sold Clearview's technology to the Chicago Police Department, holding that "the government-contractor exemption under section 25(e) of BIPA may be understood as applying to one whom a state agency or local unit of government engages to furnish materials or provide services concerning biometric identifiers." *Thornley v. CDW-Government, LLC*, No. 2020 CH 04346 (Cir. Ct. Cook Cnty. June 25, 2021). The claims against

---

[1] Unless noted otherwise, capitalized terms used in this brief have the same definitions as set forth in the Clearview Defendants' opening brief.

[2] Mulcaire is not specifically alleged to have engaged in any other wrongdoing.

Rocky Mountain and Mulcaire should be dismissed for the same reason.[3]

Plaintiffs' claims also are barred by the First Amendment and Article One, Section Four of the Illinois Constitution, which protect the creation and dissemination of information. Plaintiffs do not dispute that their allegations show that Clearview does nothing more than share information about whether certain photographs provided by Clearview customers match other photographs that are publicly available on the Internet. Plaintiffs' attempt to apply BIPA as a restriction on using alleged "biometric information" from publicly available sources impairs Clearview's First Amendment right to collect, analyze, and disseminate truthful and constitutionally-protected information, and cannot survive First Amendment scrutiny.

And, even if Plaintiffs' claims could survive First Amendment scrutiny, they would still fail because Plaintiffs cannot overcome the bars to their claims presented by the extraterritoriality doctrine or the dormant Commerce Clause. Plaintiffs rely on inapposite BIPA cases in which the plaintiffs uploaded their photos to defendants' product from a computer or device in Illinois or in which the defendant had a physical location in Illinois. Unlike in those cases, Plaintiffs here do not allege that Clearview has ever had any contact with any putative class member, in Illinois or otherwise. Because the alleged conduct underlying Plaintiffs' BIPA claims—collecting, capturing, disseminating, and otherwise profiting from biometrics—all occurred outside of Illinois, the claims are not subject to BIPA's reach.

Plaintiffs' claims under California, New York, and Virginia law suffer from additional deficiencies. For example, Plaintiffs misconstrue the states' right of publicity laws to argue that any commercial use of their likeness gives rise to a claim. If that were true, then Internet search engines, like Google, could not allow users to search for photos of individuals on the Internet

---

[3] Likewise, Clearview's current operations are exempt from BIPA under Section 25(e).

unless they received consent from every individual in every photo in advance. The result would be the end of the Internet as we know it. For that reason, the case law in each of those states makes clear that the right of publicity prohibits only the unauthorized *promotional* use of Plaintiffs' likenesses, which is not alleged anywhere in the Complaint.

## ARGUMENT

### I.  The Claims Against the Individual Defendants Should Be Dismissed Because All of the Alleged Misconduct Was Committed in Their Corporate Capacity

Plaintiffs contend that Ton-That, Schwartz, and Mulcaire can be individually liable for Clearview's conduct because they allegedly are alter egos of Clearview and because they personally participated in tortious conduct. The Court should reject both theories because the Complaint does not allege fraud, a sham, or active participation in any tortious activities, and because the fiduciary shield doctrine precludes the exercise of personal jurisdiction on these facts.

To begin, Plaintiffs understate the standard for piercing the corporate veil, asserting that allegations of fraud are unnecessary and that Plaintiffs need only show "fraud or similar injustice." Opp'n at 5 n.3 (quoting *Mason*, 2005 WL 1653954, at *3). Plaintiffs' own authority, however, makes clear that the rule for veil piercing is that "the corporation *must* be a sham and exist *for no other purpose than as a vehicle for fraud*." *Mason*, 2005 WL 1653954, at *3 (emphasis added). Plaintiffs do not come close to satisfying that exacting standard. Br. at 5.[4] Instead, Plaintiffs concede that Clearview and Rocky Mountain had a legitimate business purpose: to license their technology to users nationwide.[5] *See* Compl. ¶¶ 13, 21.

---

[4] Plaintiffs argue that "Defendants make no claim that the Individual Defendants cannot be individually liable for Rocky Mountain's conduct," Opp'n at 4, but in fact, the Clearview Defendants argue that the Complaint fails to state a claim against any of the individual defendants, Br. at 4, and that the Complaint fails to pierce the corporate veil of either Clearview or Rocky Mountain, Br. at 5.

[5] Plaintiffs cite seven factors the Court may consider when determining whether a corporation and its principals "operated as a unified economic entity." Opp'n at 5 (citing *Galligan v. Adtalem Glob. Educ.*

Plaintiffs also contend that the individuals can be held personally liable because "[t]he Complaint alleges the Individual Defendants' participation in, and authorization of, Clearview's tortious conduct." Opp'n at 5. However, conclusory allegations that corporate officers had general corporate authority are insufficient to hold them personally liable. Rather, as Plaintiffs' authority makes clear in dismissing claims against a corporate officer, "[t]o state a claim, the allegations must show that [the individual] was personally, as opposed to only in his corporate capacity, involved in the alleged violations." *People ex rel. Madigan v. Tang*, 46 Ill. App. 3d 277, 289, 805 N.E.2d 243, 254 (1st Dist. 2004). Because Plaintiffs' allegations against the individuals focus only on their general management duties, such as managing sales and executing agreements on behalf of the company, Compl. ¶¶ 15, 20, Plaintiffs have failed to allege that the individuals personally and actively participated in any tortious conduct such that they can be held personally liable for Clearview's normal business operations. *Madigan*, 46 Ill. App. 3d at 289, 805 N.E.2d at 253 ("[A] plaintiff must do more than allege corporate wrongdoing. Similarly, the plaintiff must allege more than that the corporate officer held a management position, had general corporate authority, or served in a supervisory capacity in order to establish individual liability."); *Brandt v. Rokeby Realty Co.*, 2004 WL 2050519, at *10 (Del. Super. Ct. Sept. 8, 2004) (same).

Finally, the individual defendants should be dismissed because Illinois recognizes a fiduciary shield that "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). Where an individual defendant's

---

*Inc.*, 2020 WL 231078, at *6 (N.D. Ill. Jan. 15, 2020)). However, the Court need not consider any of these factors because there are no allegations of fraud. And even if the Court were to consider those factors, Plaintiffs' allegations suggest only that Clearview is a small startup company with a handful of separate individual executives. *See* Br. at 5. Plaintiffs' cited authority shows veil piercing is inappropriate in these circumstances. *See Galligan*, at *6.

conduct "was a product of, and was motivated by, his employment situation and not his personal interests . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (citations and quotation marks omitted). Plaintiffs do not allege that the individual defendants' conduct in Illinois was motivated by their personal interests. Under Illinois law, personal jurisdiction does not lie under those circumstances.

## II.     Plaintiffs Cannot Pierce Rocky Mountain's Veil

Plaintiffs also argue that they can pierce Rocky Mountain's corporate veil under both an alter ego theory and an agency theory. Opp'n at 6-7. Their alter ego theory fails for the same reasons described above—Plaintiffs have not alleged any element of fraud or even participation in any tortious conduct. Likewise, Plaintiffs' agency theory fails because, "under the agency theory, only the precise conduct shown to be instigated by the parent is attributed to the parent." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998). Plaintiffs do not allege that Clearview instigated Rocky Mountain to engage in any fraudulent, tortious, or wrongful conduct.

## III.    Plaintiffs Fail to State a BIPA Claim Against Rocky Mountain and Mulcaire

The Complaint's allegations against Rocky Mountain describe only one transaction entered into by Mulcaire with Rocky Mountain's "sole customer," the Illinois Secretary of State, Compl. ¶¶ 16, 38—a transaction that is expressly exempt from BIPA. In particular, BIPA exempts "contractor[s], subcontractor[s], or agent[s] of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). An Illinois court recently dismissed with prejudice a BIPA claim against a company that allegedly sold Clearview's technology to the Chicago Police Department, holding that "the government-contractor exemption under section 25(e) of BIPA may be understood as applying to one whom a state agency or local

unit of government engages to furnish materials or provide services concerning biometric identifiers." *Thornley v. CDW-Government, LLC*, No. 2020 CH 04346 (Cir. Ct. Cook Cnty. June 25, 2021). Likewise, because the Complaint's only allegations about Rocky Mountain or Mulcaire allege that Rocky Mountain (through Mulcaire) furnished materials or services—access to the Clearview database containing alleged biometrics—to a state agency, BIPA liability cannot attach, and all claims related to Rocky Mountain and Mulcaire should be dismissed.

## IV.     Plaintiffs' BIPA Claim Is Barred by the First Amendment

### A.     Clearview Engages in Speech Protected by the First Amendment

At the core of Plaintiffs' First Amendment position is the inapt notion that BIPA, as applied to Clearview, regulates conduct and not speech. But when Clearview collects photos that are publicly available on the Internet, compares those photos to those sent to it by its application user, and informs that party whether the photos it has sent to Clearview match any of the publicly available ones collected by Clearview, it is engaged in the very "creation and dissemination of information" that the Supreme Court has held "*are speech within the meaning of the First Amendment*." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (emphasis added); *see also People v. Austin*, 2019 IL 123910, ¶ 31, 155 N.E.3d 439, 454 (2019). Plaintiffs' *Amicus* supporter Electronic Frontier Foundation ("EFF") correctly articulated just that proposition this way: Clearview "***collects*** information about the unique shape and measurements of a person's face . . . ***creates*** information about that face in the form of a unique representation . . . [and ***disseminates***] information to its clients about the people depicted in probe photos." EFF *Amicus* Br. at 4 (emphasis added).

Clearview accomplishes these tasks through a proprietary computer algorithm, which, contrary to Plaintiffs' assertions, Opp'n at 15, Clearview created. By prohibiting Clearview's app, as Plaintiffs would read BIPA to do, BIPA regulates Clearview's "source code," which is "an

expressive means for the exchange of information . . . protected by the First Amendment." *Junger v. Daley*, 209 F.3d 481, 485 (6th Cir. 2000); *see also* Electronic Frontier Foundation *Amicus* Br. at 5 (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) ("[T]he faceprints used by Clearview to identify probe photos [] receive First Amendment protection in the same manner as musical scores and other 'symbolic notations not comprehensible to the uninitiated.'")).

The persistent and wholly inappropriate reliance by Plaintiffs on the decision of the Court of Appeals in *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th. Cir. 2016)—a case cited more than any other in Plaintiffs' brief—illustrates just how weak their legal position is. In that case, the Court rejected a Chicago newspaper's claim that it was protected by the First Amendment when it illegally published confidential information it had illicitly obtained about police officers from their motor vehicle records in violation of the state Driver's Privacy Protection Act. The information at issue, the Court concluded, was non-public in nature; the newspaper was not entitled to any "special access to information not available to the public generally"; and the ban on disclosing illegally-obtained information did not violate the First Amendment. *Id.* at 946, 954.

Here, all information at issue was obtained by Clearview from the public Internet and was in every sense public. Yet as applied to Clearview, Plaintiffs' interpretation of BIPA would frustrate the company's ability to obtain, let alone disclose, information available to anyone with an Internet connection.[6] The First Amendment does not permit such limitations and nothing in *Dahlstrom* is to the contrary.

---

[6] Plaintiffs' attempt to analogize BIPA to various privacy regulations that do not regulate speech, *see* Opp'n at 12 n.7, therefore misses the mark. Those regulations protect information which is not accessible to the general public, while Plaintiffs read BIPA to regulate access to entirely public information.

**B.      BIPA As Applied Is a Content-Based Restriction on Speech Triggering Strict Scrutiny**

BIPA is a content-based and speaker-based restriction on speech that triggers strict scrutiny.  Plaintiffs take issue with BIPA being characterized as a speaker-based statute, but they cannot escape the fact that it explicitly provides that "[n]othing in this Act shall be deemed to apply in any manner" to the entities it exempts.  740 ILCS 14/25(c), (e).  They insist that strict scrutiny applies to speaker-based regulations only when the speaker preference also reflects a content preference.  Opp'n at 24.  Plaintiffs claim that BIPA takes no viewpoint, but as applied in this case it does just that by impeding otherwise unproblematic truthful dissemination of public information because it is more efficient than the manual identification of the same facial features.  The Supreme Court held just this approach unconstitutional in *Sorrell* because its "purpose and effect" would, in the name of privacy, diminish the effectiveness of marketing by drug manufacturers who relied on so-called "data miners," while leaving open more cumbersome avenues of learning the same information by calling individual doctors and asking them what they prescribed.  *Sorrell*, 564 U.S. at 552.  Like the statute in *Sorrell*, the "purpose and practical effect" of BIPA on Clearview is to unconstitutionally limit Clearview's effectiveness in conveying to its app users important information contained in public images and the related URL links.  BIPA need not state that "manually identifying people is permissible but identifying people with the aid of biometrics is not" for it to express a viewpoint, as Plaintiffs would have us believe; it is well established that "the inevitable effect of a statute on its face may render it unconstitutional."  *United States v. O'Brien*, 391 U.S. 367, 384 (1968).  Moreover, the content-based and speaker-based restrictions of BIPA intersect; built into the speaker exemptions is the idea that the purposes for which the exempted entities are anticipated to use the targeted technology are more acceptable, from a privacy standpoint, than the way non-exempted entities might use them.  The statute's preference

for certain speakers, and effect of privileging one way of collecting and communicating information over another, triggers strict scrutiny.

### C. BIPA As Applied Cannot Survive Strict, or Even Intermediate, First Amendment Scrutiny

Tellingly, Plaintiffs make no effort to argue that BIPA's application to Clearview's business could withstand strict scrutiny; they argue only that BIPA may satisfy the more relaxed standard of intermediate scrutiny. BIPA satisfies neither standard. BIPA's application here is not limited in scope to some sort of misuse of facial vectors but to all facial vectors—even, as in this case, when they are used only within search engines as part of the efforts of official business of law enforcement agencies. It is undisputed that the images from which Clearview creates "facial vectors" and from which it allegedly profits are publicly available on the internet. Because these photographs are public (and, by definition, cannot be private), the State has *no* interest—let alone a "substantial" one as the intermediate scrutiny test articulated in *O'Brien* requires—in protecting the "privacy" of information contained in or about those photographs. Courts have repeatedly held that individuals have no valid privacy interest in such materials (this surplus of precedent is cited at Br. at 23-24) and this alone is enough to defeat the statute's application to Clearview's business. To satisfy intermediate scrutiny, Plaintiffs have the burden of affirmatively demonstrating that the harms to be addressed by BIPA in this context "are real" and that the restriction on speech "will in fact alleviate them to a material degree." *Edenfield v. Fane,* 507 U.S. 761, 770-71 (1993). There can be no privacy harm where there is no privacy interest. Moreover, BIPA is so overbroad in proscribing the creation of facial vectors that applying it to Clearview as Plaintiffs intend would force Clearview to shutter its business;[7] this is a drastic result that does not comport with

---

[7] Plaintiffs complain that Clearview impermissibly references facts outside the record when it maintains that BIPA essentially bans their total ability to match publicly-available photographs with other

intermediate scrutiny's requirement that the restrictions imposed are "no greater than is essential to the furtherance of" Illinois' stated privacy interest. Opp'n at 25. Clearview's examination and depiction of facial vectors appear only within its search engine. They are invisible to the world and not disclosed to anyone outside of Clearview. They are used only to assist in determining if an individual in one public photograph is the same as one in another public photo. There is no state interest at all that can justify all but criminalizing doing so.

## V.     BIPA Does Not Regulate Out-Of-State Conduct

### A.     Plaintiffs' BIPA Claim Violates Illinois' Extraterritoriality Doctrine

Plaintiffs acknowledge that BIPA lacks extraterritorial effect and that they must show "the *majority* of circumstances relating to the alleged violation" of BIPA occurred in Illinois. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 65, 886 N.E.2d 405, 409 (1st Dist. 2008) (emphasis added). Nonetheless, Plaintiffs argue that the issue of extraterritoriality is premature and that "each of [the] relevant circumstances occurred in Illinois." Opp'n at 8. Both of these arguments fail.

As an initial matter, courts routinely grant motions to dismiss on extraterritoriality grounds. *See* Br. at 7 n.4. Moreover, the BIPA cases Plaintiffs cite are all distinguishable because they involved allegations either that plaintiffs uploaded their photos to defendants' product from a computer or device in Illinois or that the defendant was physically located in Illinois. *See* Opp'n at 7-8 (citing *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1268 (9th Cir. 2019) ("each [plaintiff] uploaded photos to Facebook while in Illinois"); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017) ("[Plaintiffs'] photographs were allegedly 'automatically uploaded in Illinois

---

photographs because they cannot limit their collection to non-Illinois residents. Opp'n at 18-19. This is a common sense conclusion that flows from the undisputed statement in Clearview's Motion to Dismiss that "often it is impossible to identify where a photo on the Internet comes from." Br. at 17. The Court can take judicial notice of a commonly known fact that is "not subject to reasonable dispute." *Brokaw v. Brokaw*, 2006 WL 618901, at \*5 (C.D. Ill. Mar. 10, 2006).

to [defendant's] cloud-based Google Photos service . . . from an Illinois-based Internet Protocol ('IP') address"); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017) ("[T]he complaint alleges that the photo of [Plaintiff] was uploaded to [Defendant]'s website from a device that was physically located in Illinois and had been assigned an Illinois-based IP address"); *Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577 (N.D. Ill. Sept. 15, 2020), ECF No. 19 ¶ 13 (defendant had a "regional headquarters in Chicago, Illinois").

Here, dismissal is appropriate based on the face of the Complaint because Plaintiffs do not allege that "the *majority* of circumstances relating to the alleged violation" of BIPA occurred in Illinois. Unlike the BIPA cases cited by Plaintiffs, there is no allegation here that Clearview or the individual defendants have ever had any contact with any Plaintiffs or putative class member.

Nonetheless, Plaintiffs argue that they are Illinois residents, the Clearview Defendants did not provide notice to plaintiffs in Illinois, and the Clearview Defendants "trespassed on" plaintiffs in Illinois. Opp'n at 8. But these allegations are unrelated to the allegations underlying the BIPA claims. To be clear, Plaintiffs allege that the Clearview Defendants violated BIPA by collecting, capturing, disseminating, trading, and otherwise profiting from biometrics. All of those activities, however, were alleged to have been carried out by Clearview, which, as the Complaint admits, is headquartered in New York. Compl. ¶ 13. While Clearview's home state *alone* does not control the analysis, Opp'n at 8, Clearview's home state is particularly relevant here, because that is where the alleged statutory violations took place. As for Clearview's purported sales to Illinois entities, *id.*, those connections to Illinois do not constitute a "majority" of the circumstances because those sales make up a small fraction of Clearview's nationwide sales. Compl. ¶ 13 (alleging that "Clearview's business and unlawful practices extend nationwide").[8]

---

[8] Plaintiffs rely on *Avery v. State Farm Mut. Auto. Ins. Co.*, but that case supports Clearview Defendants.

Significantly, Plaintiffs do not limit their alleged damages—or their request for injunctive relief—to Clearview's sales in Illinois. Compl. ¶¶ 4, Prayer for Relief; Pls.' Mot. for Preliminary Injunction, Dkt. No. 30 at 1-2. Nor do they (or could they) allege that the majority of the conduct they seek to enjoin and to recover damages for took place in Illinois. That makes this case different from all of the cases cited by Plaintiffs, Opp'n at 7-8, where a motion to dismiss on extraterritoriality grounds was denied. Because the face of the Complaint here makes plain that the majority of the allegedly tortious conduct did *not* occur in Illinois, the claims should be dismissed on extraterritoriality grounds.

### B.    Applying BIPA to Clearview Would Violate the Dormant Commerce Clause

Plaintiffs next argue that the dormant Commerce Clause does not apply here because it only applies "to commerce that takes place *wholly* outside the State's borders." Opp'n at 9. That, however, is a misstatement of the law. In fact, the dormant Commerce Clause applies even when a statute affects conduct within a state's borders, such as "where the regulation is local but the consequences felt elsewhere." *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010). Thus, the dormant Commerce Clause precludes the application of a state statute that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," which is precisely the problem here. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).

Plaintiffs also deny that Illinois residents are only a "small percentage" of Clearview's database, but this is evident from the Complaint itself, which alleges that the database contains more than "three billion photographs."[9] Compl. ¶¶ 1, 29. And contrary to Plaintiffs' assertion that

---

216 Ill. 2d 100, 190, 835 N.E.2d 801, 855 (2005) (dismissing claims where "the damage to [plaintiffs'] vehicles did not occur in Illinois, they did not receive the repair estimates in Illinois, and they did not have their cars repaired in Illinois").

[9] The Court may take judicial notice of a commonly known fact. *Brokaw*, 2006 WL 618901, at *5. Here, the Court can take judicial notice of the commonly known fact that the entire population of Illinois is less than 13 million (www.usapopulation.org), which is less than .4% of the alleged images in the database.

no authority "prohibit[s] a state from protecting its residents from tortious conduct if the tortfeasor also harms people elsewhere," Opp'n Br. at 10, the dormant Commerce Clause does, in fact, prohibit a state from using a statute to protect its own citizens in a way that results in regulation of citizens of other states. *See, e.g., Midwest Title*, 593 F.3d at 665.

Plaintiffs cite *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), for the general proposition that "states can regulate online conduct involving their citizens without offending the dormant Commerce Clause." Opp'n at 10. The Clearview Defendants do not disagree that states can regulate online conduct as a general matter, but they must do so in a way that does not create "undue burdens upon interstate commerce." 138 S. Ct. at 2099. Such would be the case here. Because Illinois residents can travel to, take photos in, and upload photos from other states, and because many photos on the Internet bear no indication of who is in the photo, in many instances it is effectively impossible to identify which photos on the Internet are of Illinois residents.[10]

This problem did not exist in *In re Facebook Biometric Information Privacy Litigation*, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018), because Facebook has a direct relationship with the users who upload photos to its product, which means Facebook can "activate or deactivate features for users in specific states with apparent ease when it wants to do so." *Monroy v. Shutterfly, Inc.* is likewise distinguishable because that plaintiff's "suit, as well as his proposed class, is confined to individuals whose biometric data was obtained from photographs *uploaded to Shutterfly in Illinois*." 2017 WL 4099846, at *7 (emphasis added). Thus, the court concluded that "[a]pplying BIPA in this case would not entail any regulation of Shutterfly's gathering and storage

---

And there are no facts pled in the Complaint that would suggest that Illinois residents likely make up a disproportionate percentage of the more than three billion photographs in Clearview's database, or even that photos for a high percentage of Illinois residents even appear in the database.

[10] Plaintiffs suggest that Clearview would avoid BIPA liability if Clearview "ma[de] reasonable efforts to identify Illinois residents," Opp'n at 10, but BIPA does not contain any such "reasonable efforts" language.

of biometric data *obtained outside of Illinois*"; rather, "the statute requires Shutterfly to comply with certain regulations if it wishes to *operate in Illinois*." *Id.* (emphasis added). By contrast, Plaintiffs' BIPA claims purport to regulate the collection of biometrics that occurred from Clearview's headquarters in New York, including photographs captured and uploaded all over the country.

## VI. The Complaint Does Not Adequately Allege a Violation of Section 15(c)

The BIPA claims under Section 15(c) should also be dismissed because the Complaint fails to sufficiently allege that the Clearview Defendants sold or otherwise profited from biometrics. Plaintiffs accuse the Clearview Defendants of applying a "narrow interpretation" of Section 15(c), Opp'n at 20, but Plaintiffs ignore the purpose and legislative history of BIPA, which make plain that BIPA was not meant to prohibit profiting from biometric technology. *See* Br. at 18-19. To the contrary, a for-profit transaction where no biometric data is transferred or exchanged cannot be the basis for liability under Section 15(c).[11]

Plaintiffs also contend that their allegations are sufficient to establish the sale of biometrics because the Clearview Defendants allegedly "transferred for profit Plaintiffs' and class members' biometric information to customers." Opp'n at 20. However, Plaintiffs' allegations regarding the

---

[11] The Clearview Defendants respectfully submit that *Flores v. Motorola Sols., Inc.*, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021), was wrongly decided. A better analysis of the meaning of "or otherwise profit from" in BIPA appears in *Vance v. Microsoft Corp.*, 2021 WL 1401634, at *4 (W.D. Wash. Apr. 14, 2021):

> Indeed, Plaintiffs' reading of § 15(c)—prohibition of any use of biometric data that brings a benefit—would lead to absurd results that contravene BIPA itself. . . . Taken to its logical end, Plaintiffs' reading of § 15(c) would prohibit the sale of any product containing biometric technology because any such feature had to be developed or built with biometric data. For instance, a company could not sell biometric timekeeping systems—or any product with a biometric feature—because it was presumably developed using biometric data. . . . Nothing—not BIPA's statutory language, its stated intent, or any authority analyzing § 15(c)—supports such a broad reading.

*Id.* (internal citations omitted).

14

sale of biometrics are conclusory and should be rejected. The Complaint itself describes the experience of Clearview's customers, which involves "querying" a database that relies on biometrics to identify photographs of individuals. Compl. ¶ 32. The Complaint contains no allegations that Clearview's customers—or any other third parties—ever receive access to biometrics.[12]

## VII.    Plaintiffs Fail to State a Claim Under California, New York, or Virginia Law

### A.    Plaintiffs Fail to Allege a Cognizable Injury for Article III Standing

Plaintiffs' standing argument rests upon *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021), Opp'n at 22, but that case only further shows that Plaintiffs lack Article III standing for Counts Eight through Fourteen.[13] *TransUnion* involved a class of 8,185 consumers whose names were wrongly identified as potential national security threats. *Id*. at 2200. These consumers sued a credit reporting company that allegedly used this incorrect information to generate credit reports. However, it was later revealed that only 1,853 of the 8,185 consumers actually had incorrect credit reports provided to a third party. *Id*.

In its analysis of standing, the Court concluded that the remaining 6,332 plaintiffs had no cognizable injury. *Id*. That is because the "mere existence of incorrect information in a database" gave rise to nothing more than a theoretical risk of future harm. *Id*. at 2209. Simply put, "No concrete harm, no standing." *Id*. at 2214. Likewise, Plaintiffs' alleged injuries consist of hypothetical risks of future identity theft, data breach, and voluntary withdrawal from certain

---

[12] In response to the Clearview Defendants' argument that BIPA does not apply to photographs, Plaintiffs point to non-binding decisions from other courts, which, the Clearview Defendants respectfully submit, were wrongly decided. Opp'n at 20-21.

[13] Plaintiffs' citations to other data privacy statutes are not relevant. Plaintiffs do not bring a claim under these statutes (including Virginia's, *see* Br. at 26-27)—and in any event, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC*, 141 S. Ct. at 2205.

transactions—not enough for Article III standing. *See* Br. at 21-22. They do not plausibly allege that their biometric data was disclosed to any third-parties or even that someone ever searched for them using the Clearview application. And the Seventh Circuit made clear in another BIPA case that similarly-situated plaintiffs lacked standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) (no standing for plaintiffs whose alleged biometrics were not disclosed to third parties and who were never searched for in Clearview's application).

Plaintiffs also argue that their "asserted harms bear a 'close relationship'" to "disclosure of private information" and "intrusion upon seclusion." Opp'n at 22. But unlike these "traditional" privacy harms, Clearview's alleged conduct relates to information derived from *publicly* available sources, and does not resemble intrusion upon seclusion or the public disclosure of private facts— inapposite tort claims that Plaintiffs cite now, but failed to allege in their Complaint.

Plaintiffs also wrongly argue that "the standing analysis" for their California, Virginia, and New York claims "is identical" to the BIPA standing analysis. Opp'n at 23. Plaintiffs seek to graft BIPA-specific injuries onto unrelated causes of action under the laws of other states. For example, Plaintiffs cite *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), in which the court looked to the legislative purpose of BIPA to assess the protectable rights available under that statute for Article III standing. *Id.* at 621-22. But these BIPA cases do not establish that the collection of truthful information derived from publicly available sources gives rise to a privacy injury for Plaintiffs' various other causes of action based on the laws of other states.

### B.    Plaintiffs Fail to State a Right of Publicity Claim Under State Law

Plaintiffs rely on inapposite and misconstrued authority that only confirms that they have no right of publicity claim against Clearview. Plaintiffs' theory is that "capturing" and providing others with "access" to information constitutes unlawful "misappropriation." Opp'n at 23. But this theory bears no resemblance to a right of publicity claim, which is "a right to prevent others

from misappropriating the *economic value* generated through the *merchandising* of the . . . likeness of the holder." *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1006 (2014) (emphasis added). Plaintiffs concede that they cannot establish that Clearview used their likenesses for a promotional purpose. As a result, Counts Eight, Eleven, Twelve, and Fourteen fail to state a claim.

For Count Eleven, Plaintiff Vestrand misreads § 3344(a), asserting that this narrowly drawn statute prohibits any "unconsented commodification . . . of a person's likeness." Opp'n at 23. She relies on *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988 (2008), a case that reinforces Clearview's argument. In *Miller*, the court noted that the first element of a § 3344(a) claim requires proof that the plaintiff's likeness was used "on merchandise or to sell products or services." *Id*. at 994 (quoting CACI No. 1804). Plaintiff Vestrand ignores this element and instead quotes unrelated text from *Miller* about calculations of damages. Opp'n at 24. The common law right of publicity similarly requires proof that Clearview used Plaintiff Vestrand's identity in a manner that capitalizes on her publicity. *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994). Plaintiff Vestrand fails to allege such facts, and her sole citation to *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)—another advertising case—does not salvage Count Twelve. Opp'n at 24.

As for Counts Eight and Fourteen, Plaintiffs Roberson and Hurvitz concede that Clearview does not use their likenesses in advertising or merchandising, but argue that because Clearview is a business, any use of their likenesses is, by definition, for a trade purpose in violation of the law. Opp'n at 25. Plaintiffs cite no authority for this novel contention which, if adopted, would lead to an absurd result in which every individual whose image has ever appeared in an Internet search result would have a right of publicity claim against the search engine that produced the result.[14]

---

[14] Plaintiff Roberson also cites *Town & Country Props. v. Riggins*, 249 Va. 387, 395 (1995), for the elements

Moreover, this argument was considered and rejected by the court in *Motise v. Am. Online, Inc.*, 2005 WL 1667658 (E.D. Va. June 24, 2005). In *Motise*, the plaintiff argued that because AOL was a business, "every piece of information" it disclosed had an "advertising or trade" purpose. *Id*. at *3. Plaintiff Roberson advances the same theory now, but under Virginia law, "Plaintiff must allege that Defendant used his name specifically for the *purpose of advertising or solicitation for patronage of a product*." *Id*. (emphasis added). As a result, Count Nine fails.

New York law provides a "picture is used for trade purposes if its use is to attract trade to a business entity." *Otero v. Houston Street Owners Corp*, 2012 WL 692037, at *2 (N.Y. Sup. Ct. Feb. 28, 2012). Plaintiff Hurvitz cites only *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984)—a case in which use of the plaintiff's name to sell magazines containing false information about her was for a "trade purpose." *Id*. at 131. The conduct at issue in *Lerman* is unrelated to the allegations against Clearview. Plaintiff Hurvitz fails to allege that Clearview capitalized on his individual publicity to attract trade, so Count Fourteen should be dismissed.[15]

### C.     Plaintiff Roberson Fails to State a Virginia Computer Crimes Act Claim

As to Count Nine, Plaintiff Roberson misinterprets the term "without authority" as defined by the Virginia Computer Crimes Act ("VCCA"). Opp'n at 26-27. Dismissal of Plaintiffs' VCCA claim is warranted where "there is no allegation that [Clearview's] use of its own computer system was unauthorized." *In re Hackman*, 534 B.R. 867, 879-80 (Bankr. E.D. Va. 2015); *see also Se. Wholesale Corp. v. Cox Communications Hampton Roads, LLC*, 2013 WL 2147478, at *6-7 (E.D.

---

of a claim for conversion under Virginia law. This case is irrelevant because Plaintiff Roberson does not bring a claim of conversion against Clearview in the Complaint.

[15] Plaintiffs' argument that Clearview's alleged use of Plaintiffs' likenesses lacked a public interest purpose because Clearview made a profit is unavailing. Opp'n at 25. A "profit motive . . . does not negate [Clearview's] right to depict matter of public interest." *Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734, 736 (E.D. Va.). And the allegations in the Complaint show that Clearview's conduct has a public interest purpose. *See* Br. at 9-10.

Va. May 14, 2013) (noting that "the VCCA's legislative history suggests that the focus of the law was on hackers" and dismissal of VCCA claim was thus appropriate where the defendants were "authorized to use [their] own computers and network").

Plaintiff Roberson argues that she pleads the false pretenses, conversion, artifice, trickery, or deception necessary to state a VCCA claim because she pleads "conversion." Opp'n at 27. To plead conversion, however, she must allege the wrongful exercise of dominion or control over her property, thus depriving her of possession. *Fax Connection, Inc. v. Chevy Chase Bank, F.S.B.*, 73 Va. Cir. 263, at *2 (2007). Plaintiff Roberson fails to plead any of these elements. Likewise, the Complaint contains no mention of "fraudulent concealment." Opp'n at 27. Plaintiff Roberson cannot amend the Complaint in her opposition brief, and these arguments should not be credited.

Finally, Plaintiff Roberson wrongly states that Clearview did not address Va. Code § 18.2-152.4(A)(6). Opp'n at 27. This claim fails for the reasons already provided. *See* Br. at 28 n.20.

### D.     Plaintiff Vestrand Fails to State an Unfair Competition Law Claim

Plaintiff Vestrand argues that her potential future decision to "withdraw from biometric-facilitated transactions" constitutes "lost money or property" as required for UCL standing. Opp'n at 28. Plaintiff Vestrand cites no authority for the proposition that the potential withdrawal from future transactions is sufficient for standing under the UCL, and Clearview is not aware of any. Courts have firmly rejected claims of UCL standing where, as here, "the plaintiffs' theory of economic loss . . . is purely hypothetical." *In re Google Ass't Privacy Litig.*, 2021 WL 2711747, at *18 (N.D. Cal. July 1, 2021). And Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Count Ten should be dismissed.[16]

---

[16] Plaintiff Vestrand does not dispute that she fails to allege a UCL claim predicated on the California

### E. Plaintiff Vestrand Fails to State a Claim for Invasion of Privacy

Plaintiff Vestrand's claim under Article 1, § 1 of the California Constitution fails because it satisfies none of the required elements. *See* Br. at 25-26. Plaintiff Vestrand cites no California authority establishing a protected privacy interest or reasonable expectation of privacy over information derived from publicly posted photographs.[17] And courts routinely dismiss invasion of privacy claims involving the disclosure of sensitive information that does not concern medical or sexual history. *See, e.g.*, *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms'"); *see also* Br. at 26 & n.17. Plaintiff Vestrand cites only *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020), a BIPA case that has no bearing on what constitutes an "egregious breach" of social norms under California law. Accordingly, Count Thirteen should be dismissed.

## VIII. Plaintiffs Fail to State a Claim for Unjust Enrichment or Declaratory Judgment

Plaintiffs fail to state a claim for unjust enrichment or declaratory judgment because they fail to allege an actionable wrong. *See* Br. at 29-30. Further, contrary to his contentions, Plaintiff Hurvitz's unjust enrichment claim is preempted because all of his underlying allegations are already incorporated into his right of publicity claim. *See Sondik v. Kimmel*, 131 A.D.3d 1041, 1042 (N.Y. Sup. Ct. 2015). As a result, Counts Fifteen and Sixteen should be dismissed.

## CONCLUSION

The Clearview Defendants respectfully request dismissal of the Complaint with prejudice.

---

Consumer Privacy Act or for "failing to provide adequate data security." *See* Br. at 28 & n.19. The remainder of Plaintiff Vestrand's UCL claim is derivative of her right of publicity and invasion of privacy claims, which fail for the reasons discussed in Parts VII.B, *supra*, and VII.E, *infra*.

[17] "There is no reasonable expectation of privacy about one's face." *Yezek v. Mitchell*, 2007 WL 61887, at *6 n.5 (N.D. Cal. Jan. 8, 2007).

July 30, 2021                    Respectfully submitted,


                                 By:   /s/ Lee Wolosky
                                    Lee Wolosky (pro hac vice)
                                    Andrew J. Lichtman (pro hac vice)
                                    JENNER & BLOCK LLP
                                    919 Third Avenue
                                    New York, New York 10022-3908
                                    Phone: (212) 891-1600
                                    lwolosky@jenner.com
                                    alichtman@jenner.com

                                    Howard S. Suskin (ARDC No. 6185999)
                                    Precious S. Jacobs-Perry (ARDC No.
                                    6300096)
                                    JENNER & BLOCK LLP
                                    353 North Clark Street
                                    Chicago, Illinois 60654
                                    Phone: (312) 222-9350
                                    hsuskin@jenner.com
                                    pjacobs-perry@jenner.com

                                    Floyd Abrams
                                    Joel Kurtzberg
                                    CAHILL GORDON & REINDEL LLP
                                    32 Old Slip
                                    New York, NY 10005
                                    Phone: (212) 701-3000
                                    fabrams@cahill.com
                                    jkurtzberg@cahill.com

                                    Attorneys for Defendants Clearview AI, In
                                    Hoan Ton-That, Richard Schwartz, Rocky
                                    Mountain Data Analytics LLC, and Thomas
                                    Mulcaire

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 30, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

By: ___/s/ Lee Wolosky___
Lee Wolosky