IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' OPPOSITION TO MACY'S, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

I.      THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT .........................2

II.     THE DATABASE ....................................................................................................2

III.    MACY'S USE OF THE DATABASE ......................................................................2

IV.     THE PARTIES AND CLASS MEMBERS...............................................................3

ARGUMENT .......................................................................................................................4

I.      PLAINTIFFS HAVE ARTICLE III STANDING ...................................................4

        A.      Macy's BIPA Violations Confer Article III Standing. ...................................4

        B.      Plaintiffs Allege an Injury that Is Fairly Traceable to Macy's and Can
                Be Redressed Through a Decision Against Macy's. .......................................7

II.     PLAINTIFFS ADEQUATELY STATE CLAIMS UNDER BIPA. .........................8

        A.      Plaintiffs State a Claim Under BIPA § 15(b)................................................8

        B.      Plaintiffs State a Claim Under BIPA § 15(c) ...............................................9

                1.      Macy's Possessed Plaintiffs' and Plaintiff Class Members' Biometrics .................9

                2.      Macy's Profited From Plaintiffs' and Plaintiff Class Members' Biometrics .........10

        C.      Plaintiffs Vestrand and Hurvitz Have Adequately Pled Their Non-BIPA Claims. .......12

                1.      Plaintiff Vestrand Sufficiently Alleges a Violation of California's Unfair
                        Competition Law ("UCL") (Count Ten)................................................................12

i

2.  Plaintiffs Vestrand and Hurvitz Have Sufficiently Pled Their Respective California Commercial Misappropriation and Common Law Right of Publicity Claims (Counts Eleven and Twelve) and New York Civ. Rights Law § 51 Claim (Count Fourteen) ..........................................................................13

3.  Plaintiff Vestrand Has Sufficiently Pled a Right of Privacy Claim Under The California Constitution. ......................................................................................16

4.  Plaintiffs Have Sufficiently Pled Unjust Enrichment (Count Fifteen) .....................17

CONCLUSION ............................................................................................................................18

## TABLE OF AUTHORITIES

## <u>CASES</u>

*Blazheiv v. Ubisoft Toronto Inc.*, No. 17-CV-07160-EMC,
2018 WL 3417481 (N.D. Cal. July 13, 2018)................................................................14

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) ..............................4, 7

*Callahan v. Ancestry.com Inc.*, No. 20-cv-08437,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021)..................................................................15

*Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350 (Cal. Ct. App. 2010) ...................17

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016)................................17

*Flores v. Motorola Solutions, Inc.*, No. 1:20-cv-01128,
2021 WL 232627 (N.D. Ill. Jan. 8, 2021) ....................................................................11

*Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020)...........................16

*Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960 (N.D. Ill. 2020) .................9, 10

*Heard v. Becton, Dickinson & Co.*, No. 19 C 4158,
__ F.Supp.3d__, 2021 WL 872963 (N.D. Ill. Mar. 9, 2021) .......................................10

*In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)................................................................14

*Judge v. Quinn*, 612 F.3d 537 (7th Cir.) ........................................................................8

*Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 246 P.3d 877 (Cal. 2011) ...................13

*Kyllo v. United States*, 533 U.S. 27 (2001)....................................................................17

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984)...........................................16

*Miller v. Collectors Universe, Inc.*,
159 Cal.App.4th 988, 72 Cal.Rptr.3d 194 (Cal. Ct. App. 2008) ..................................14

*Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279 (N.D. Ill. 2019) .................................9

*Otero v. Houston Street Owners Corp.*, No. 104819/2010,
2012 WL 692037 (N.Y. Sup. Ct. Feb. 28, 2012) .........................................................15

*Pfeiffer v. CompUSA.com, Inc.*, No. CV 10-95-GW(PJWX),
2010 WL 11597810 (C.D. Cal. Feb. 18, 2010)...................................................................14

*Renier v. Eringer*, No. CV 18-243 DSF (JPRX),
2018 WL 6844717 (C.D. Cal July 6, 2018).......................................................................14

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186 (Ill. 2019) ...........................................11, 12

*Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021)............................................ *passim*

*Vance v. Amazon.com, Inc.*, No. C20-1084JLR,
__F.Supp.3d__, 2021 WL 1401633 (W.D. Wash. Apr. 14, 2021) .................................7

*Vance v. Microsoft Corp.*, No. C20-1082JLR,
__F.Supp.3d__, 2021 WL 1401634 (W.D. Wash. Apr. 14, 2021) ...............................11

## **STATUTES**

740 ILCS 14/5 ......................................................................................................................2, 16

740 ILCS 14/10......................................................................................................................2

740 ILCS 14/15 ..............................................................................................................2, 6, 8, 10

740 ILCS 14/20......................................................................................................................6

Cal. Civ. Code § 3344 .........................................................................................................14

N.Y. Civ. R. Law § 51 .........................................................................................................15

## INTRODUCTION

Defendant Macy's, Inc.[1] ("Macy's") is one of more than 200 private companies that used the biometric database (the "Database") of Defendant Clearview AI, Inc. ("Clearview"). To create the Database, Clearview scraped over three billion online images, unlawfully extracted Plaintiffs' and Plaintiff class members' sensitive biometric identifiers from those images and then made those identifiers and biometric information (collectively "biometrics") available for others to unlawfully obtain. Macy's purchased access to the Database, and on more than 6,000 occasions, obtained the biometrics of Plaintiffs and Plaintiff class members without notice or consent.

Unable to deny its repeated use of the Database and access to Plaintiffs' and Plaintiff class members' biometrics, and faced with Plaintiffs' well-pled claims, Macy's contends Plaintiffs have failed to allege an Article III injury. The contention fails as a matter of fact and law.

Macy's next asserts under Fed. R. Civ. P. 12(b)(6) that Plaintiffs have failed to state claims under §§ 15(b) and (c) of Illinois' Biometric Information Privacy Act ("BIPA"). Ignoring Plaintiffs' actual allegations, Macy's pretends Plaintiffs' BIPA claims arise out of Macy's upload of specific photographs to the Database. However, as alleged, Macy's violated BIPA by: (a) unlawfully obtaining Illinois Plaintiffs' and Illinois class members' biometrics each time it accessed the Database; and (b) profiting from those biometrics. Just as Macy's ignores Plaintiffs' BIPA allegations, so too does it ignore the allegations underlying the claims of Plaintiffs Vestrand and Hurvitz, as well as the applicable law.

The Court should deny Macy's motion to dismiss in its entirety so that Macy's can be held accountable for its unlawful actions.

---

[1] Despite claims in the response (Dkt. 112-1 at ECF 2), Plaintiffs' First Amended Consolidated Class Action Complaint (the "Complaint") names Macy's, Inc. – not Macy's Retail Holdings, Inc.

1

## FACTUAL BACKGROUND

### I. THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

BIPA prohibits a private entity from, among other things: (a) collecting and obtaining a person's biometrics without notice and consent, *see* 740 ILCS 14/15(b); or (b) selling, trading or otherwise profiting from those biometrics, *see* 740 ILCS 14/15(c). Under BIPA, "biometric identifiers" include a "scan of . . . face geometry," while "biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. Underlying BIPA is the Illinois General Assembly's recognition of the extreme sensitivity and unique nature of biometrics because of their immutable nature. 740 ILCS 14/5(c).

### II. THE DATABASE

Without providing notice or obtaining consent, Clearview scraped from the Internet three billion photographs – including photographs of Plaintiffs – and then scanned the face geometry of each depicted individual to harvest their unique biometrics. Dkt. 116 ¶¶ 1, 30, 53, 58-59. Clearview then created a searchable biometric database – the Database – that allowed users like Macy's and more than 200 other private companies to identify unknown individuals by uploading a photograph. *Id.* ¶ 33. Clearview's algorithms compared the facial geometry of the subject appearing in the uploaded photograph against the facial geometry of each of the hundreds of millions of subjects appearing in the Database, including the facial geometry of each of the Plaintiffs and Plaintiff class members. *Id.*

### III. MACY'S USE OF THE DATABASE

Macy's used the Database over 6,000 times, each time uploading a probe image thereto with the intent that Clearview's algorithms would search the biometrics contained therein, including the biometrics of millions of Illinois residents, for a biometric match. Dkt. 116 ¶ 23.

These searches included probe images uploaded in Illinois. *Id.* Each time Macy's queried the Database, Macy's obtained, accessed and used all of the biometrics therein, including the biometrics of Plaintiffs and Plaintiff class members. *Id.* ¶ 33. Macy's profited from those biometrics by using them to prevent losses and/or improve the customer's experience. *Id.* ¶ 57.

## IV.     THE PARTIES AND CLASS MEMBERS

Defendant Clearview is a Delaware corporation that created the unlawful Database and then made it available to others. *See id.* ¶ 14. Plaintiffs are individuals from Illinois, New York, California and Virginia who have brought statutory, state constitutional and common law claims on behalf of members of a nationwide class and Illinois, California, New York and Virginia subclasses. *Id.* ¶¶ 5-13, 65. Photographs of Plaintiffs' faces that were taken in, and uploaded to the Internet from, each Plaintiffs' state of residence are posted online. *Id.* ¶¶ 44-52. Plaintiffs allege that Clearview harvested Plaintiffs' and Plaintiff class members' biometrics from those photographs, among others, and included those biometrics in the Database. *Id.* ¶¶ 44-52.

Macy's is a Delaware corporation, doing business in Illinois, with twenty-one department stores in the state. *Id.* ¶ 23. Macy's obtained access to the Database and subsequently accessed the biometrics therein over 6,000 times. *Id.* ¶¶ 23, 67. Macy's is similarly-situated to other Database users which comprise the Clearview Client Class:

> **Clearview Client Class:** All non-governmental, private entities – including publicly-traded companies – who purchased access to, or otherwise obtained, the Biometric Database and then utilized the database to run biometric searches at a time when the Biometrics of one or more of the named Plaintiffs had already been captured, collected or obtained, and subsequently stored, by the Clearview Defendants.

*Id.* ¶ 67.

## ARGUMENT

## I.   PLAINTIFFS HAVE ARTICLE III STANDING.

### A.   Macy's BIPA Violations Confer Article III Standing.

Ignoring Plaintiffs' allegations, Macy's contends Plaintiffs have failed to allege any particularized injury resulting from Macy's BIPA-violative conduct.[2] Dkt. 112-1 at 13.[3] To support its standing argument, Macy's primarily relies on the distinguishable case of *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246-47 (7th Cir. 2021). Dkt. 112-1 at 13-15. There, the court held that a district court lacked subject-matter jurisdiction over a BIPA § 15(c) claim where, in a transparent effort to avoid federal jurisdiction, the plaintiffs merely alleged a "statutory aggrievement" without any "particularized injury." *See Thornley*, 984 F.3d at 1247-48. Unlike in *Thornley*, here, Plaintiffs allege concrete and particularized injuries resulting from Macy's violations of BIPA §§ 15(b) and (c). Plaintiffs do not claim a mere statutory aggrievement.

The Seventh Circuit has held that § 15(b) violations confer Article III standing because a defendant's failure to provide the requisite notice and obtain the requisite consent before obtaining a person's biometrics is an invasion of the person's private domain, much like an act of trespass *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624, 626 (7th Cir. 2020). According to the Court, the deprivation of a person's ability to provide informed consent to the use of her biometrics is a "concrete injury-in-fact that is particularized to [the plaintiff]." *Id.* at 626. Here, Plaintiffs allege that Macy's deprived them of the ability to provide informed consent to the use of their biometrics by failing to provide the notice and obtain the consent required by BIPA § 15(b). *See* Dkt. 116 ¶¶

---

[2] Macy's does not contest the Article III standing of Plaintiffs Vestrand and Hurvitz, who allege violations of California, New York and common law.

[3] Citations to docketed entries are to the CM/ECF-stamped page numbers at the top of the page.

62, 81, 84. Plaintiffs, therefore, have Article III standing. Notably, Macy's wholly ignores the Seventh Circuit's holding in *Bryant* as it relates to BIPA § 15(b).

Plaintiffs similarly have alleged a concrete and particularized injury under BIPA § 15(c). Unlike in *Thornley*, Plaintiffs allege that as a result of Macy's conduct, they "have suffered and will continue to suffer injury." *Id.* ¶ 101. For instance, Macy's conduct has resulted in Plaintiffs' biologically unique information being compromised. *Id.* ¶ 64. Moreover, the conduct has resulted in Plaintiffs' likely withdrawal from biometric-facilitated transactions and other facially-mediated electronic participation. *Id.* Based on the pleadings and the gravity of the harm caused by Macy's conduct, it is reasonable to infer that the withdrawal is imminent and certainly impending. In *Thornley*, the Seventh Circuit contemplated Article III injuries such as those described in this paragraph. *See* 984 F.3d at 1247.

Wholly ignoring Plaintiffs' actual allegations, Macy's contends "the only action Plaintiffs allege Macy's took was to upload photographs of unknown persons to the Clearview Database, for purposes of having Clearview determine the individual's identity from Clearview's pre-existing cache of data." Dkt. 112-1 at 13; *see also id.* ("Plaintiffs do not allege that Macy's uploaded *their* photos, or caused *them* any type of harm whatsoever.") (emphasis in original). As discussed above, that is not what Plaintiffs allege. Plaintiffs' allegations against Macy's do not arise out of the uploading of their photographs to the Database, but rather from the fact that each time Macy's uploaded a photograph, Macy's obtained, accessed and used the biometrics of everyone in the Database, including Plaintiffs and Illinois class members, and profited from that conduct. *See* Dkt. 116 ¶¶ 33, 57, 189 Absent such obtainment, access and use, the Database would have served no purpose to Macy's because it could not have determined who was and was not the person Macy's was interested in. As discussed, Plaintiffs' allegations confer Article III standing.

Macy's reliance on *Thornley* (Dkt. 112-1 at 13-15) is misplaced. In *Thornley*, the Seventh Circuit expressly recognized that "[i]t is no secret to anyone that [the plaintiffs] took care in their allegations, and especially in the scope of the proposed class they would like to represent, to steer clear of federal court." 984 F.3d at 1248. Critical to the court's holding in *Thornley* was the plaintiffs' decision to expressly "concede[]," in their complaint, "that none of the named plaintiffs, and no class member, "suffered any injury as a result of the violations of Section 15(c) of BIPA other than the [bare] statutory aggrievement alleged in Paragraph 38." *Id.* at 1246. Plaintiffs make no such concession.

Further, in *Thornley*, the court noted that under § 15(c), plaintiffs may sue a defendant "alone or under a class definition that includes an allegation of injury," *see id.* at 1248, as Plaintiffs have done here. Indeed, the court observed that "there are a number of class actions pending against Clearview, many of which appear to be broader than [*Thornley*]." *Id.*

Knowing that *Thornley* has no applicability to this case, Macy's seeks to rewrite BIPA, claiming without support that § 15(c) does not provide stand-alone liability. *See* Dkt. 112-1 at 15. The claim is absurd, as it contradicts BIPA's plain language and the Seventh Circuit's holding in *Thornley*. Section 15(c) flatly prohibits a private entity from selling, leasing, trading or otherwise profiting from a person's or a customer's biometrics. 740 ILCS 14/15(c). BIPA § 20 allows any "person aggrieved by a violation of this Act" to obtain actual or statutory damages, among other relief. 740 ILCS 14/20. Nowhere does BIPA state that a person may only assert a § 15(c) violation if there is a corresponding violation of § 15(a), (b) or (d). This makes sense given that, at minimum, § 15(c) is designed to prevent "the operation of a market in biometric identifiers and information. If it is not profitable to collect or hold that data, one can assume that the incentive to collect or hold it will be significantly reduced." *Thornley*, 984 F.3d at 1247. The non-binding decision in

*Vance v. Amazon.com, Inc.*, No. C20-1084JLR, __F.Supp.3d__, 2021 WL 1401633 (W.D. Wash. Apr. 14, 2021) (Dkt. 112-1 at 15), is inapposite. There, the court ruled on the defendant's Rule 12(b)(6) motion and made no findings as to Article III standing under § 15(c). *See id.* at *1-2. Moreover, the court made no finding that a plaintiff could never assert a standalone claim under § 15(c).

What Macy's really wants to do is turn BIPA into a toothless tiger. Macy's asserts that "there is no prohibition against Macy's or any other entity or individual asking a third party to identify a person in a photograph." Dkt. 112-1 at 14. But that is not what Macy's did. Here, Macy's – the "entity asking a third party to identify a person in a photograph" – knew full well that its use of the Database would necessarily involve its obtainment of the biometrics of millions of Illinois residents for purposes of comparing the BIPA-protected data of those subjects against the biometrics of the subjects depicted in the photographs it uploaded. BIPA plainly does not permit one private entity to farm out its BIPA-violative dirty work to another third-party who then feeds back the results of an illegally performed biometric-facilitated task.

### B. Plaintiffs Allege an Injury that Is Fairly Traceable to Macy's and Can Be Redressed Through a Decision Against Macy's.

Again ignoring Plaintiffs' allegations, Macy's contends that Plaintiffs lack Article III standing because they fail to allege an injury that is fairly traceable to Macy's or that can be redressed through a decision against Macy's. Dkt. 112-1 at 15-16. This "alternative" argument is nothing more than a rehash of its arguments above – *i.e.*, Macy's contends Plaintiffs cannot show that Macy's uploaded their photographs to the Database and that Plaintiffs' actual claims lie against Clearview. *Id.* As discussed above, those arguments fail. Further, as the Seventh Circuit held in *Bryant*, "the prospect of statutory damages shows that [the alleged injury] is redressable." 958 F.3d at 621.

## II.     PLAINTIFFS ADEQUATELY STATE CLAIMS UNDER BIPA.

### A.     Plaintiffs State a Claim Under BIPA § 15(b).

Macy's argues that Plaintiffs' BIPA § 15(b) claim fails because Plaintiffs do not allege that they entered a Macy's store.[4]  Dkt. 112-1 at 17. As discussed above, the basis of Plaintiffs' § 15(b) claim against Macy's is not that Plaintiffs were Macy's customers, but rather that Macy's violated § 15(b) by necessarily accessing and obtaining Plaintiffs' and Plaintiff class members' biometrics without providing the notice or receiving the consent required by BIPA each time it sought to identify an individual in an image it uploaded to the Database. *See* Dkt. 116 ¶¶ 23, 33, 55. Section 15(b) prohibits a private entity like Macy's from purchasing, receiving through trade or otherwise obtaining a person's biometrics without first providing written notice and obtaining a written release. 740 ILCS 14/15(b). Here, as alleged, Macy's purchased access to, received through trade and obtained Plaintiffs' and Plaintiff class members' biometrics without complying with § 15(b)'s requirements. *See* Dkt. 116 ¶¶ 23, 33, 55, 84-86.

Macy's tacitly admits the sufficiency of Plaintiffs' allegations by avoiding use of the words "purchase," "receive through trade" or "obtain" when discussing its alleged conduct.[5] *See* Dkt. 112-1 at 17-18. Instead, Macy's pretends Plaintiffs allege that Macy's "collected" their biometrics and then attacks that paper tiger. *See id.* at 17 (the duties under § 15(b) lie "solely with the entity that collects" the biometrics). Plaintiffs' actual allegations state a § 15(b) claim.

---

[4] In a parenthetical, Macy's mentions the "extraterritorial limitations of BIPA." Dkt. 112-1 at 17. To the extent the parenthetical constitutes an argument, because of its perfunctory and undeveloped nature, the argument is waived. *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir.).

[5] Further evidence of Macy's tacit admission of the sufficiency of Plaintiffs' allegations is its improper references to Plaintiffs' preliminary injunction motion. *See, e.g.,* Dkt. 112-1 at 18. Besides being extrinsic to the Complaint, the fact that Plaintiffs sought injunctive relief against Clearview has nothing to do with Macy's § 15(b) liability.

Macy's also seeks to downplay its conduct by characterizing it as mere passive possession of Plaintiffs' biometrics. *See id.* at 17-18. The authority it cites in support (*id.*) is distinguishable. In *Heard v. Becton, Dickinson & Co.* (*"Heard I"*), 440 F.Supp.3d 960 (N.D. Ill. 2020), the plaintiff filed a BIPA claim against the manufacturer of a fingerprint scanner used by his employer. *Id.* at 962. The court held the manufacturer was not actively involved in the collection of biometrics because it was merely a third-party technology provider, not the entity that actually collected the biometrics. *Id.* at 966-67. Unlike the situation in *Heard*, here: (a) Macy's is not a passive third-party technology provider; and (b) as discussed above, Plaintiffs allege Macy's active obtainment of Plaintiffs' and Plaintiff class members' biometrics. *Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279 (N.D. Ill. 2019), also cited by Macy's, is similarly distinguishable.

**B.      Plaintiff State A Claim Under BIPA § 15(c).**

Macy's argues that Plaintiffs do not state a claim under BIPA § 15(c) because they do not allege that "Macy's possesses their biometric information" or "profited" from that information, as that term is contemplated by BIPA. Dkt. 112-1 at 18-19. The arguments fail.

**1.      Macy's Possessed Plaintiffs' and Plaintiff Class Members' Biometrics.**

The Complaint's allegations show that Macy's possessed Plaintiffs' and Plaintiff class members' biometrics. As alleged, Clearview made access to its Database and the corresponding biometrics available for purchase. Dkt. 116 ¶¶ 31, 33. Macy's subsequently "obtained access to the Biometric Database and the Biometrics contained therein" through such a purchase. *Id.* ¶¶ 23, 31, 33. Macy's then "queried the Biometric Database for [its] own business purposes" – *i.e.*, Macy's controlled how it used the biometrics therein, as evidenced by its over 6,000 searches. *Id.* ¶¶ 23, 33.

The above-described allegations comport with any reasonable understanding of what it means to be "in possession" of biometrics. *See* 740 ILCS 14/15(c). Just as someone who leases a car is "in possession" of a vehicle, even though they cannot sell it, so too was Macy's "in possession" of Plaintiffs' and Plaintiff class members' biometrics. Macy's controlled when it accessed and obtained the biometrics and the purpose for which the biometrics were used vis-à-vis Macy's. *See* Dkt. 116 ¶¶ 23, 33; *see also Heard v. Becton, Dickison & Co.*, No. 19 C 4158, __ F.Supp.3d__, 2021 WL 872963, at *4 (N.D. Ill. Mar. 9, 2021) (a defendant who can "access the biometric data collected" is "in possession" of that data); *Heard I*, 440 F.Supp.3d at 968 ("The ordinary meaning of possession does not contemplate exclusive control" and "multiple entities [can] control the same data.").

Again, Macy's tacitly acknowledges the sufficiency of Plaintiffs' allegations. Indeed, as it did in its § 15(b) argument, Macy's felt compelled to look outside the Complaint to defeat the Complaint's well-pled allegations. *See* Dkt. 112-1 at 19 (citing to preliminary injunction motion). Moreover, as Macy's did in its § 15(b) argument, Macy's ignores the operative language "profit," and instead focuses on the word "sell." *Id.* According to Macy's, it "cannot sell what it does not possess." *Id.* However, Plaintiffs do not contend that Macy's sold their biometrics.

### 2. Macy's Profited From Plaintiffs' and Plaintiff Class Members' Biometrics.

In addition to possessing Plaintiffs' and Plaintiff class members' biometrics, Macy's profited from them. Macy's also profited from Plaintiffs' and class members' biometrics. As alleged, "Macy's . . . profited from the Biometrics in the Biometric Database, including the Biometrics of Plaintiffs and Plaintiff Class Members, by using those Biometrics to prevent losses and/or improve the customer experience." Dkt. 116 ¶ 57. From these allegations, it is reasonable to infer that: (a) Plaintiffs' and class members' biometrics were a necessary element to the loss

10

prevention aspect of Macy's business model and allowed Macy's to profit; and (b) the biometrics generated the profits by reducing the number of stolen goods, which in turn allowed Macy's to attractively price products, thereby improving the customer experience. Because Macy's directly used Plaintiffs' and Plaintiff class members' biometrics to profit, the Complaint sufficiently alleges a § 15(c) violation. *See Flores v. Motorola Solutions, Inc.*, No. 1:20-cv-01128, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021) (Norgle, J.) (denying motion to dismiss § 15(c) claim where biometrics were a necessary element to the defendants' business model).

According to Macy's, allowing Plaintiffs' § 15(c) claim to proceed would somehow "nullify Sections 15(a), (b) and (d) of BIPA." Dkt. 112-1 at 20. Further, Macy's contends that it "would be nonsensical to interpret Section 15(c) as prohibiting all third parties from using biometric information to their profit or benefit." *Id.* However, as discussed above, the Seventh Circuit already has held that § 15(c) has a standalone purpose of preventing a market in biometrics. *See Thornley*, 984 F.3d at 1247. Moreover, whether a hypothetical interpretation of § 15(c) that the Court need not make here would be "nonsensical" is of no import. Plaintiffs' § 15(c) claim alleges specific conduct engaged in by Macy's vis-à-vis Plaintiffs' and Plaintiff class members' unique biometrics that directly resulted in profits for Macy's. Those allegations do not seek to prohibit all third parties from using biometrics to their profit or benefit.

*Vance v. Microsoft Corp.,* No. C20-1082JLR, __F.Supp.3d__, 2021 WL 1401634 (W.D. Wash. Apr. 14, 2021) (Dkt. 112-1 at 21), is not binding on this Court, and Plaintiffs' respectfully submit was wrongly decided. In dismissing the plaintiffs' claims, the court in *Microsoft* failed to give proper weight to the fact that BIPA seeks to prevent biometric privacy violations before they occur. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36 (Ill. 2019). As the Illinois Supreme Court has held, BIPA must be interpreted in a manner consistent with its "preventative

11

and deterrent purposes." *Id.* ¶ 37. To that end, § 15(c) furthers BIPA goals by disincentivizing the unlawful obtainment, possession and dissemination of biometrics. *See Thornley*, 984 F.3d at 1247. That disincentive would evaporate if, as Macy's contends, § 15(c) does not apply to a private entity's direct use of Illinois residents' biometrics to generate profits. Indeed, under Macy's interpretation, a private entity would merely weigh the cost of a § 15(a), (b) or (d) violation against the profits that could be generated and decide whether to violate BIPA. Section 15(c) seeks to prevent such a callous business decision. The Court should not disturb the careful crafting and harmonic nature of BIPA's statutory provisions.

C. **Plaintiffs Vestrand and Hurvitz Have Adequately Pled Their Non-BIPA Claims.**

1. **Plaintiff Vestrand Sufficiently Alleges a Violation of California's Unfair Competition Law ("UCL") (Count Ten).**

In conclusory fashion, Macy's contends Plaintiff Vestrand fails to adequately plead a UCL claim because she neither alleges that she "lost money or property because of Macy's actions" nor that Macy's conduct was anti-competitive. Dkt. 112-1 at 22. Not so. Ms. Vestrand alleges that, as a result of Macy's multiple unlawful and unfair business practices and acts (*see* Dkt. 116 ¶¶ 153, 158-59): (a) she and members of the California Subclass "have suffered an injury-in-fact and have lost money and property" (Dkt. 116 ¶ 161); and (b) Macy's "caused substantial injury to Plaintiff Vestrand and members of the California Subclass; this substantial injury *outweighed any benefits to competition or the purpose of such conduct*[.]" *Id.* ¶ 160 (emphasis added).

Moreover, Macy's contention fails as a matter of law. Lost money is but one way a plaintiff can establish economic injury for a UCL claim. As the California Supreme Court has held:

> [t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which

12

he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset Corp. v. Superior Ct*., 51 Cal.4th 310, 323, 246 P.3d 877, 886 (Cal. 2011).

Here, Ms. Vestrand specifically alleges that "Plaintiffs and Class Members are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation." Dkt. 116 ¶ 64. This is a specific, identifiable injury with inherent economic consequences. Ms. Vestrand has specifically averred that Defendants' conduct (including Macy's) has caused her and members of the California Subclass to have to opt out of biometrically mediated transactions. As these types of technologies proliferate, increased costs to Ms. Vestrand and class members are all but certain. Those costs themselves would be entirely avoidable but for the conduct of Macy's, among other Defendants. As such, Plaintiff Vestrand has sufficiently pled entitlement to relief under the UCL.

> **2.** **Plaintiffs Vestrand and Hurvitz Have Sufficiently Pled Their Respective California Commercial Misappropriation and Common Law Right of Publicity Claims (Counts Eleven and Twelve) and New York Civ. Rights Law § 51 Claim (Count Fourteen).**

Macy's next claims Plaintiff Vestrand's § 3344(a) claim for commercial misappropriation (Count Eleven) and common law right of publicity claim (Count Twleve) are non-cognizable because Macy's did not use Clearview's technology for "advertising, selling, or soliciting anything to anyone." Dkt. 112-1 at 22-23. Macy's myopic view of these California consumer-protection laws is at odds with that of California's courts and with the plain language of § 3344(a).

Contrary to Macy's selective quotation of § 3344(a) (Dkt. 112-1 at 23), the statute applies where "[a]ny person who knowingly uses another's . . . photograph, or likeness, *in any manner, on or in products, merchandise, or goods, or* for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . .

13

shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a) (emphasis added); *see also Pfeiffer v. CompUSA.com, Inc.*, No. CV 10-95-GW(PJWX), 2010 WL 11597810, at *4 (C.D. Cal. Feb. 18, 2010) (elements of common law right of publicity include elements of statutory claim). Thus, by its plain terms § 3344(a) applies (and a common law claim accrues) where an individual's photograph or likeness is used in a product or good without the individual's prior consent.

Here, Ms. Vestrand's allegations satisfy the pleading standard. She has alleged that, without consent, Macy's used her biometrics and the biometrics of California Subclass members all of which were harvested from photographs scraped from the Internet by Clearview to prevent losses and/or improve the customer's experience." Dkt. 116 ¶¶ 52-53, 57.

Because it cannot credibly deny using the Database, Macy's portrays that use as innocuous, claiming the use was for the "non-profit" purpose of "loss prevention." Dkt. 112-1 at 23. That argument is of no moment for two reasons. First, § 3344(a) seeks to safeguard an individual's privacy interest, not just to preserve that individual's economic monopoly on the monetization of that interest. As set forth in the statute's legislative analysis: "The gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings *without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community . . . ." Miller v. Collectors Universe, Inc.*, 159 Cal.App.4th 988, 1002, 72 Cal.Rptr.3d 194, 204–05 (Cal. Ct. App. 2008) (quoting excerpted legislative history of Cal. Civ. Code § 3344(a)) (emphasis added).[6] Thus, § 3344(a) seeks to preserve an individual's inherent ability to control one's

---

[6] Macy's citations to *Blazheiv v. Ubisoft Toronto Inc.*, No. 17-CV-07160-EMC, 2018 WL 3417481, at *7 (N.D. Cal. July 13, 2018), *Renier v. Eringer*, No. CV 18-243 DSF (JPRX), 2018 WL 6844717, at * 4 (C.D. Cal July 6, 2018), *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5

photograph or likeness, not just one's ability to profit from his or her photograph or likeness. The non-consensual use of an individual's image or likeness for a commercial purpose (as Ms. Vestrand has alleged against Macy's) is a discrete harm to the victim, regardless of the particulars of the commercial purpose.

Second, even if Macy's commercial purpose in using the biometrics in the Database mattered (which it does not), it strains credulity to characterize "loss prevention" as "a non-profit purpose." As alleged, Macy's used the relevant biometrics to profit by preventing losses and improving the customer's experience. Dkt. 116 ¶ 57. Both loss prevention and customer satisfaction further a commercial purpose – especially when the alleged purpose is to profit. *See id.* Counts Eleven and Twelve adequately plead privacy causes of action under California law.

Macy's arguments as to Plaintiff Hurvitz's New York Civil Rights Law § 51 claim in Count Fourteen (Dkt. 112-1 at 25-26) fare no better. Macy's makes the flawed contention that its "use of surveillance cameras to deter shoplifters clearly does not involve an 'advertising or trade purpose.'" *Id.* at 25. As an initial matter, Plaintiff Hurvitz's allegations against Macy's are based on upon Macy's use of Clearview's Database and the biometrics therein, not on Macy's use of in-store surveillance cameras.[7] *See* Dkt. 116 ¶¶ 51, 53, 55-60, 184-92. Second, and similar to California law, New York Civ. Rights Law § 51 applies where an individual's likeness is used for "purposes of trade." N.Y. Civ. R. Law § 51. Under New York law, "purposes of trade" means "the

---

(N.D. Cal. Dec. 3, 2013), and *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 783524, at * 5 (N.D. Cal. Mar. 1, 2021) (Dkt. 112-1 at 23-24), are inapposite. In those cases, courts found that the plaintiffs' allegations in support of their § 3344(a) claims were not sufficiently particularized, not that § 3344(a) only applies to "advertising, selling, or soliciting."

[7] By contrast, *Otero v. Houston Street Owners Corp.*, No. 104819/2010, 2012 WL 692037 (N.Y. Sup. Ct. Feb. 28, 2012), cited by Macy's (Dkt. 112-1 at 25), concerned only the use of a surveillance camera, not the use of a sophisticated, biometrically-based facial recognition system to which the defendants maintained a paid subscription.

commercialization of [plaintiff's] personality through a form of treatment distinct from the dissemination of news or information." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 131 (2d Cir. 1984). Macy's commercialized Plaintiff Hurvitz's and New York Subclass members' personalities by paying for access to Clearview's Database containing their biometrics. As such, Macy's violated New York Civ. Rights Law § 51.

### 3. Plaintiff Vestrand Has Sufficiently Pled a Right of Privacy Claim Under the California Constitution (Count Thirteen).

Macy's contends that Plaintiff Vestrand has failed to sufficiently plead a Right of Privacy claim under the California Constitution. Dkt. 112-1 at 24-25. In support of the contention, Macy's makes the incredible assertion that the biometrics of Ms. Vestrand and California Subclass members are not "sensitive" or "confidential" because "any reasonable person would know that they could be subject to surveillance when entering a modern retail store." *Id.* at 25. As discussed throughout, the Complaint's allegations against Macy's are not based on simple surveillance by a store security camera. Rather, the Complaint arises out of Macy's obtainment, access and use of the sensitive biometrics in the Database. Specifically, Plaintiff Vestrand (and each representative Plaintiff) has alleged that Clearview: (a) obtained the biometrics at issue by performing scans of each person's unique facial geometry; and (b) made those biometrics available to Macy's and others. Dkt. 116 ¶¶ 30-34. Both the Seventh Circuit and the Illinois General Assembly have found that biometrics are significantly more sensitive than other identifying information. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020) ("In contrast, this case is about biometric identifiers, which are meaningfully different because they are immutable, and once compromised, are compromised forever—as the legislative findings in BIPA reflect."); 740 ILCS 14/5(c) (same).

16

Macy's, again, attempts to escape liability by contending it did not take Ms. Vestrand's photograph. Dkt. 112-1 at 25. The contention is of no import. Through its repeated access, use and obtainment of Plaintiff Vestrand's and California Subclass members' sensitive biometrics, Macy's infringed on their privacy interests. Neither Ms. Vestrand, nor anyone else, could have reasonably expected that someone would have the means and motive to obtain and use her biometrics from photographs shared on the Internet, especially given that she alleges that Defendants did so covertly and without her consent. *See Kyllo v. United States* 533 U.S. 27, 34 (2001) (Scalia, J.) (homeowner had a reasonable expectation of privacy in her home despite ability of technology to invade it).  Ms. Vestrand has adequately alleged her Right of Privacy claim under the California Constitution

### 4.  Plaintiffs Have Sufficiently Pled Unjust Enrichment (Count Fifteen).

Macy's challenge to Plaintiffs' unjust enrichment claim (Dkt. 112-1 at 26) is meritless. While California law is "unsettled on the availability of a cause of action" for unjust enrichment, *see ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing cases on both sides), even cases finding no such cause of action recognize an essentially identical one for restitution, where (*inter alia*) the "defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370 (Cal. Ct. App. 2010). The Complaint alleges that Macy's obtained such a benefit here. *See* Dkt. 116 ¶¶ 193-200. Macy's argument as to Illinois law (Dkt. 112-1 at 26) relies on their incorrect contention that no legal violations have been alleged, and so fails. (Macy's also improperly contends that Plaintiffs have not alleged "facts demonstrating that Macy's was enriched," given the Complaints allegations that Macy's profited from its unlawful conduct. Dkt. 116 ¶ 57). Finally, Plaintiff Hurvitz's New York claim is not preempted by or duplicative of the right of publicity claim, given

17

the allegations in the Complaint. *See*, *e.g.,* Dkt. 116, ¶ 195 (harvested biometrics were an unjustly obtained benefit).

## CONCLUSION

For the foregoing reasons, the Court should deny Macy's motion to dismiss in its entirety. To the extent the Court grants any portion of the motion, Plaintiffs respectfully request that the denial be without prejudice and with leave to replead.

Dated: August 6, 2021

Respectfully submitted,

By:     /s/ Scott R. Drury
        SCOTT R. DRURY
        *Interim Lead Class Counsel for Plaintiffs*

        Mike Kanovitz
        Scott R. Drury
        Andrew C. Miller
        **LOEVY & LOEVY**
        311 N. Aberdeen, 3rd Floor
        Chicago, Illinois 60607
        312.243.5900
        drury@loevy.com

        Scott A. Bursor
        Joshua D. Arisohn
        **BURSOR & FISHER, P.A.**
        888 Seventh Avenue
        New York, NY 10019
        646.837.7150
        scott@bursor.com
        jarisohn@bursor.com

        Frank S. Hedin (to be admitted *pro hac vice*)
        **HEDIN HALL LLP**
        Four Embarcadero Center, Suite 1400
        San Francisco, California 94104
        415.766.3534
        fhedin@hedinhall.com

18

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOKK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
swebster@websterbook.com

*Other Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Scott R. Drury, an attorney, hereby certify that, on August 6, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
*Interim Lead Class Counsel for Plaintiffs*