**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| *In re: Clearview AI, Inc. Consumer* | ) | Case No. 1:21-cv-00135 |
| *Privacy Litigation* | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| | ) | |

**<u>CLEARVIEW DEFENDANTS' MOTION TO QUASH NONPARTY SUBPOENAS</u>**

Pursuant to Federal Rules of Civil Procedure 26(b)(2) and 45(d)(3), Defendants Clearview AI, Inc. ("Clearview"), Rocky Mountain Data Analytics LLC ("Rocky Mountain"), Hoan Ton-That, Richard Schwartz, and Thomas Mulcaire (collectively, the "Clearview Defendants"), by and through their counsel, respectfully move this Court for an order quashing the nonparty subpoenas issued by Plaintiffs to three financial institutions, JPMorgan Chase & Co., JPMorgan Chase Bank N.A., and The Bank of America Corporation (collectively, the "Banks").

Plaintiffs have made vast, deeply personal and extremely intrusive document requests to the Banks regarding the financial histories of Mr. Ton-That (Clearview's CEO), Mr. Schwartz (Clearview's President), and Mr. Mulcaire (Clearview's General Counsel) (collectively, the "Individual Defendants") that serve no purpose related to this litigation, and will result only in harassment and annoyance to the Individual Defendants and their families.  The fact that Plaintiffs have improperly named the CEO, President, and General Counsel of Clearview as defendants in this litigation does not mean that Plaintiffs are entitled to such highly confidential information such as individual tax returns and credit cards statements.  The Individual Defendants' credit card histories have nothing to do with this case, which centers on Clearview's allegedly improper collection of biometric data.  Plaintiffs' abusive discovery tactics should not be tolerated.

1

Plaintiffs have also subpoenaed a sweeping array of financial documents related to Clearview and Rocky Mountain (collectively, the "Entity Defendants") and various nonparties. These requests are overbroad and seek irrelevant documents, but regardless, the Clearview Defendants have already agreed to produce similar financial information in response to Plaintiffs' discovery requests served through party discovery. For example, Clearview has agreed to produce tax returns, bank account statements, annual statements, business valuations, and other similar documents. There is no reason for expansive and unnecessary nonparty discovery of a wide variety of irrelevant documents, or duplicative productions of the same documents that will be produced in party discovery.

Accordingly, the Clearview Defendants respectfully request that Plaintiffs' subpoenas to the Banks be quashed in full. In support of this motion, the Clearview Defendants state as follows:

## FACTUAL BACKGROUND

1.     On September 13, 2021, counsel for Plaintiffs informed the Clearview Defendants that Plaintiffs would serve nonparty subpoenas on the Banks with a return date of October 1, 2021,[1] seeking the production of financial documents related to the Clearview Defendants and nonparties affiliated with Clearview. *See* Exhibit 1 (subpoena to JPMorgan Chase & Co.), Exhibit 2 (subpoena to The Bank of America Corporation), and Exhibit 3 (subpoena to JPMorgan Chase Bank N.A.). Each subpoena demands the production of the following documents "related to" "any and all accounts" held by each of the Clearview Defendants and nonparties Smart Checker (and variant spellings), Insight Camera LLC, Standard International Technologies, S.A., and Standard International Technologies PLC (collectively, the "Nonparty Affiliates"):

(a)     All account opening documents;

---

[1] Clearview was notified of the subpoena to JP Morgan Chase N.A. on September 20, 2021, which has a return date of October 11, 2021.

(b)     All correspondence;

(c)     All signature cards;

(d)     All corporate resolutions;

(e)     All LLC, Partnership, Articles of Incorporation, or other business formation documents;

(f)     All deposit and withdrawal slips;

(g)     All tax returns;

(h)     All documents concerning loans, leases, and/or lines of credit, including but not limited; to loan and lease applications, loan and lease documents, and line of credit documents;

(i)     All credit card application and statements;

(j)     All cancelled checks; and

(k)     All account transfer requests.

*See* Exhibits 1, 2, and 3, Rider to Subpoena.

2.     Plaintiffs have also propounded dozens of document requests on the Clearview Defendants in this proceeding. Among other things, Plaintiffs have sought—and the Clearview Defendants have agreed to produce—a wide assortment of corporate and financial documents concerning the Clearview Defendants and the Nonparty Affiliates. Even though much of the requested information has no relation to the claims or defenses in this litigation, the Clearview Defendants have agreed to produce documents in response to the following requests:

Request 33: All documents and communications related to the formation and organization of Clearview; Rocky Mountain; Smartcheckr; Insight Camera LLC; Standard International Technologies SA – Panama; Standard International Technologies PLC – Singapore or any other predecessor, successor, subsidiary or affiliate of any those entities, including documents and communications related to: (a) each entity's purpose; (b) the officers of each entity; (c) the initial capitalization of each company; and (d) the bank accounts of each entity.

Request 34: All documents and communications related to the assets, debts and expenses of Clearview; Rocky Mountain; Smartcheckr; Insight Camera; Standard International Technologies SA – Panama; Standard International Technologies

PLC – Singapore or any other predecessor, successor, subsidiary or affiliate of any those entities, including: (a) loan documents; (b) each company's financial transactions, including bank statements, wire or electronic transfers, deposit tickets and withdrawal slips; (c) money or other consideration provided to any of the above-described entities by Hoan Ton-That and/or Richard Schwartz; (d) leases and/or mortgages; (e) accounts payable documents and documents showing how the payments were made; (f) accounts receivable documents; (g) any intellectual property owned the entity; (h) documents showing capital contributions by Hoan Ton-That or Richard Schwartz; and (i) financial statements.

Request 35:  All corporate meeting minutes, annual statements, corporate minute books and other documents related to the corporate formalities of Clearview; Rocky Mountain; Smartcheckr; Insight Camera; Standard International Technologies SA – Panama; Standard International Technologies PLC – Singapore or any other predecessor, successor, subsidiary or affiliate of any those entities.

Request 36:  All federal and state income tax returns (and accompanying forms and schedules) for Hoan Ton-That and Richard Schwartz, as well as Clearview; Rocky Mountain; Smartcheckr; Insight Camera; Standard International Technologies SA – Panama; Standard International Technologies PLC – Singapore or any other predecessor, successor, subsidiary or affiliate of any those entities.[2]

Request 37. All documents and communications relating to any past, current or prospective value, profit, loss, financial metric or business valuation or service offering derived from or otherwise related to Biometric Data, Biometric Identifiers, Biometric Information or Face Templates collected, generated or extracted from photographs, images, and/or facial scans.

Request 13:  All documents and communications concerning your past, current or prospective monetization or other financial impact of: (a) your Face Template Database; (b) the Clearview Facial Recognition App or Software; and/or (c) the Rocky Mountain Facial Recognition App or Software. This request includes contracts or other documents governing your relationship with any user of the Clearview and/or Rocky Mountain Facial Recognition App or Software.

*See* Exhibit 4 (Clearview Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents); Exhibit 5 (August 10, 2021 email memorializing the Clearview Defendants' agreement to produce documents in response to Requests 33-35); Exhibit 6 (August

---

[2] The Clearview Defendants agreed to produce tax returns for Clearview and advised Plaintiffs that Rocky Mountain does not have any tax returns.  The Clearview Defendants objected to the production of the Individual Defendants' tax returns.  Exhibit 6.

19, 2021 letter memorializing the Clearview Defendants' agreement to produce documents in response to Requests 13, 36, and 37).

3.      Thus, the documents Plaintiffs seek from the Banks that are even arguably relevant to this case are ones that the Clearview Defendants have already agreed to produce.  Among other things, the Clearview Defendants have agreed to produce documents related to any capital contributions made by Mr. Ton-That and Mr. Schwartz, and any transfers between the Individual Defendants and the Entity Defendants will be apparent in the Entity Defendants' account statements.  In short, transactions involving the Individual Defendants and the Entity Defendants will be apparent from the Entity Defendants' financial records, which the Clearview Defendants have agreed to produce.

4.      Notwithstanding Clearview's agreement to produce these documents, Plaintiffs have embarked on a campaign to extract various financial records from the Banks, including the personal financial information of the Individual Defendants.  The Banks are nonparties that have financial relationships with the Clearview Defendants, but have no other involvement in the case. The subpoenas sweep far beyond potentially relevant documents to ones relating to personal information about each of the Individual Defendants as well as Nonparty Affiliates that include almost the entirety of the Individual Defendants' financial  records from credit card statements to cancelled checks from January 1, 2015 (years before Clearview was founded) to the present.  This is a clear abuse of the discovery rules.

## ARGUMENT

## I.      THE CLEARVIEW DEFENDANTS HAVE STANDING TO BRING THIS MOTION TO QUASH.

5.      As a threshold matter, the Clearview Defendants have standing to object to the subpoenas issued to the Banks because they have personal rights related to the documents sought

by Plaintiffs. *See, e.g.*, *Chaikin v. Fid. & Guar. Life Ins. Co.*, No. 02 C 6596, 2003 WL 22715826, at *1 (N.D. Ill. Nov. 17, 2003) (holding that an investor had standing to object to nonparty subpoenas because they requested his investment and financial documents); *Arias-Zeballos v. Tan*, 06-CV-1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (collecting cases and recognizing that "courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution."). Plaintiffs have subpoenaed the Banks for an expansive sweep of documents that are "related to" "any and all accounts" held by the Clearview Defendants and the Nonparty Affiliates. Accordingly, the Clearview Defendants have standing to challenge the subpoenas based on their legitimate privacy interests in the corporate and financial records that Plaintiffs seek from the Banks.

## II. THE SUBPOENA REQUESTS ARE OVERBROAD AND OPPRESSIVE UNDER RULES 26 AND 45.

6. Plaintiffs' expansive document requests to the Banks are vexatious, overbroad, and not reasonably tailored to lead to the discovery of admissible evidence, particularly as they relate to the Individual Defendants. A party is only entitled to seek the discovery of documents that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). These limitations on the scope of discovery apply with even greater force in the context of nonparty discovery. "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Morelli v. Alters*, 1:19-CV-10707, 2020 WL 6508858, at *4 (S.D.N.Y. Nov. 5, 2020). "On a motion to quash, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id*.; *see also Heckler & Koch, Inc. v. German Sport Guns GmbH*, 111-CV-01108, 2014 WL 12756174, at *2 (S.D. Ind. Sept. 12, 2014).

7.      The court may "quash . . . a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information." Fed. R. Civ. P. 45 Advisory Committee's Note (1991).  Further, the court shall limit discovery if "the discovery sought is unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information by discovery," or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  And the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).

8.      Plaintiffs seek nearly every document that relates to the Banks' relationships with the Clearview Defendants and Nonparty Affiliates, including a wide array of account information. The subpoena requests are not limited to business accounts, but include the personal accounts and financial histories of the Individual Defendants.  The Individual Defendants' financial information is not relevant to the subject matter of this lawsuit, which consists of claims that the Clearview Defendants violated certain state privacy laws.  Because the subpoenas are a fishing expedition into the Individual Defendants' private and sensitive bank accounts, and are not likely to yield relevant or admissible information, the requests concerning the Individual Defendants should be quashed.  Further, the subpoena requests related to the Entity Defendants and Nonparty Affiliates should also be quashed because the Clearview Defendants have already agreed to produce relevant and responsive financial records related to those entities in party discovery.  *See supra* ¶ 2.

**A.      The Subpoenas Should be Quashed as Related to the Individual Defendants.**

9.      "When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion

into the affected individual's privacy interests." *In re Glitnir Banki hf.*, 08-14757, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011). Applying the Rules that govern discovery, it is evident that the Bank subpoenas should be quashed with respect to the Individual Defendants, because the information sought is not relevant to the litigation, and will result in significant and unwarranted intrusion into the Individual Defendants' privacy and confidential financial information.

### 1. The subpoena requests are not relevant to the litigation.

10. Plaintiffs' sweeping demands seek to require the Banks to produce virtually every scrap of information pertaining to the personal and professional finances of the Individual Defendants over the past seven years. This is intolerable since there is no claim or defense in the case that could possibly justify giving Plaintiffs such unfettered access to all of the Individual Defendants' financial histories—particularly where the subpoenas predominately cover irrelevant material, and whatever small amount of relevant information there may be will be addressed in party discovery, as already agreed. *See supra* ¶¶ 2–3. These requests are not appropriate within the scope of discovery, and even less so within the realm of nonparty discovery. *See, e.g.*, *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

11. For example, in *Ocean Atlantic*, the copyright owner of real estate development plans sued a developer for infringement with respect to one of its development sites. The plaintiff sought discovery of "all of the defendants' financial records relating to their entire business and professional activities, on all construction projects throughout the country" over a six-year period. *Id.* at 926. Posing the question of whether "anything remotely relevant to the claims and defenses . . . [can] justify this massive body of discovery," the court answered, "[w]e hardly think so." *Id.*

"This court perceives an improper motive and purpose to this broad discovery. We cannot conceive of any relevance to the claims or defenses asserted in this . . . case, or of any legitimate purpose of this massive discovery demand. The production of virtually the entirety of defendants' business books and records . . . could not lead to any admissible evidence." *Id*. at 927.

12. Similarly, in a case involving fraud claims between former business partners, the defendant and counter-claimant subpoenaed three nonparty financial institutions for "information regarding Plaintiffs' finances over an extended period of time" that had "little, if any, relevance to the single loan at issue in Plaintiff's case." *Morelli*, 2020 WL 6508858, at *6. The court concluded that:

> given the sweeping nature of their request for information of tangential relationship to Plaintiff's claims in this case, the three subpoenas to financial institutions are the epitome of the classic 'fishing expedition.' They seem to be issued for the purpose of harassment, and, to the extent they seek any relevant information, are disproportionate to the needs of the case. They should be quashed.

*Id*. The Court should reach the same conclusion in this case.

13. Here, Plaintiffs have no legitimate litigation purpose to discover the Individual Defendants' personal financial records from the last seven years, which cannot be reasonably linked to any claim or defense in this case. To the extent Plaintiffs argue that they are entitled to documents reflecting the Individual Defendants' financial relationships with the Entity Defendants that would bear on their theory of alter ego liability, Plaintiffs will have access to any relevant documents during the course of party discovery. For example, Clearview has already agreed to produce its account statements, which will show its transactions with the Individual Defendants, if any. *See supra* ¶¶ 2–3. Clearview has also agreed to produce documents related to any money or capital contributions provided by Mr. Ton-That or Mr. Schwartz, as Plaintiffs have already requested in party discovery. *Id*.

14. But there is no reason why Plaintiffs would need, for example, all of the Individual Defendants' credit card applications and statements, canceled checks, or tax returns. *See, e.g.*, *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 15 MISC. 319, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (holding that a request for "every financial transaction [adverse parties] have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper for [the] limited purpose" of adjudicating "alter ego status" and instead "has every indication of being an archetypal fishing expedition."); *Fort Washington Resources, Inc. v. Tannen*, 858 F. Supp. 455, 463 (E.D. Pa. 1994) (denying motion to compel production of individual defendant's tax returns in veil piercing case). As a result, the motion to quash requests for the Individual Defendants' financial documents should be granted. *See Chaikin*, 2003 WL 22715826, at *2; *Cohn v. Taco Bell Corp.*, 92 C 5852, 1994 WL 383975, at *3 (N.D. Ill. July 20, 1994); *see also U.S. ex rel. Pool v. NMC, Inc.*, 2:09-CV-66, 2010 WL 4668790, at *2 (S.D. Ind. Nov. 9, 2010).

## 2. The subpoenas intrude upon the Individual Defendants' privacy.

15. The absence of any substantive connection between the documents requested by the subpoenas and the subject matter of the litigation calls into question Plaintiffs' motives. Indeed, the Plaintiffs are abusing the subpoena power to intimidate the Individual Defendants by attempting to force the disclosure of the Individual Defendants' personal and sensitive financial records. It is clear that the Bank subpoenas serve only to harass, oppress, and embarrass the Individual Defendants. A complete production of the Individual Defendants' transactional histories would lay bare the intimate details of the Individual Defendants' financial and personal lives. The discovery rules do not permit this invasive and overly broad intrusion. And the fact

that Plaintiffs chose to seek this information from nonparty Banks, rather the Individual Defendants themselves, only underscores the impropriety of their conduct.

16.     The Individual Defendants have a right to protect against disclosure of their private information (and in the case of joint accounts, their family members' private information) from Plaintiffs.  For example, Mr. Schwartz has a joint account with his spouse, who has a very serious medical condition.  Plaintiffs' abusive discovery tactics and requests for extensive financial records thus involve Mr. Schwartz's spouse and her medical history, and are deeply concerning for her physical and mental well-being.  Indeed, providing this intimate information about Mr. Schwartz's wife's lengthy history of medical payments raises potential Health Insurance Portability and Accountability Act (HIPAA) concerns.  Due to these types of significant concerns, when a party subpoenas an adverse party's financial information, courts are vigilant in limiting the scope of discovery so that irrelevant financial information is not produced.  *See, e.g.*, *Ocean Atlantic*, 262 F. Supp. 2d at 927; *Morelli*, 2020 WL 6508858, at *6; *Glitnir Banki*, 2011 WL 3652764, at *5.

17.     Additionally, Plaintiffs have subpoenaed the Banks for the Individual Defendants' tax returns, which courts have recognized as "confidential communications between a taxpayer and the government." *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972) (holding that there is a policy against the disclosure of tax returns, and thus tax returns are discoverable only where the litigant raises the issue of the amount of his or her income); *see also Cohn*, 1994 WL 383975, at *4 (rejecting request to discover individual's tax returns); *Tannen*, 858 F. Supp. at 463 (denying motion to compel production of individual defendant's tax returns and noting "the strong public policy concerns favoring nondisclosure of tax returns").  The Individual

Defendants thus have a strong interest in protecting their tax returns and other sensitive financial information from disclosure.

18.     Similar privacy concerns extend to other records of the Individual Defendants that are in the Banks' possession: "subpoenas for bank records most often evoke privacy claims" and "the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take." *Glitnir Banki*, 2011 WL 3652764, at *5 (citation omitted).  In this instance, the records sought are unquestionably confidential and highly sensitive: they consist of a vast array of personal documents including, among other things, *all* correspondence, deposit and withdrawal slips, documents concerning loans and lines of credit, credit card applications and statements, and canceled checks, in the Banks' possession—all of which is deeply private and nonpublic information.  Plaintiffs' requests "are plainly designed to get financial information about the [Individual Defendants] without regard to any connection between that information" and this litigation.  *Id*. at *9.

19.     The Court should bar Plaintiffs from discovering the Individual Defendants' confidential and sensitive financial information from the Banks.  There is no claim or defense in this case that is tied to the Individual Defendants' entire financial history, and documents such as "all" of their tax returns, deposit and withdrawal slips, and canceled checks are not reasonably calculated to lead to the discovery of admissible evidence.  "In short, the documents sought in the subpoena have little or no relevance to the claims and defenses in this action. . . . Weighing this against [the Individual Defendants'] legitimate interest in maintaining the confidentiality of proprietary documents bearing on [their] assets and financial plans, . . . the motion to quash the subpoena should be granted."  *Solow v. Conseco, Inc.*, 06 CIV. 5988, 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008).

**B.     The Subpoenas Should be Quashed as Related to the Entity Defendants and Nonparty Affiliates.**

20.     Further, numerous documents Plaintiffs request of the Banks relating to the Entity Defendants and Nonparty Affiliates are duplicative of documents the Clearview Defendants have already agreed to produce in discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (limiting discovery if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").  Of the documents that Plaintiffs seek from the Banks, the Clearview Defendants have agreed to produce corporate resolutions, business formation documents, tax returns, loan and lease documentation, deposit and withdrawal slips, and financial and account statements.  *See supra* ¶¶ 2–3.  The Clearview Defendants have also agreed to produce a wealth of corporate and financial information outside the scope of the Bank subpoenas.  *See id.*

21.     Accordingly, if Plaintiffs seek additional corporate or financial records of the Entity Defendants and Nonparty Affiliates, they can request those documents in party discovery.  And the few subpoena requests for documents that may be solely in the Banks' possession—such as account opening documents, signature cards, and credit card applications—have no possible bearing on the claims or defenses in this action.  *See Ocean Atlantic*, 262 F. Supp. 2d at 927; *Morelli*, 2020 WL 6508858, at *6; *Glitnir Banki*, 2011 WL 3652764, at *5.  There is no reason to unduly burden nonparties like the Banks with expansive requests for such records when those materials are either irrelevant or are properly the subject of party discovery.  As a result, the Bank subpoenas should be quashed in their entirety.

**CONCLUSION**

WHEREFORE, the Clearview Defendants respectfully request that the Court grant this Motion to Quash Nonparty Subpoenas.

13

September 27, 2021                    Respectfully submitted,


By:   _/s/ Precious S. Jacobs-Perry_ _____

        Precious S. Jacobs-Perry (ARDC No.
        6300096)
        Howard S. Suskin (ARDC No.
        6185999)
        JENNER & BLOCK LLP
        353 North Clark Street
        Chicago, Illinois 60654
        Phone: (312) 222-9350
        pjacobs-perry@jenner.com
        hsuskin@jenner.com

        Andrew J. Lichtman (pro hac vice)
        JENNER & BLOCK LLP
        919 Third Avenue
        New York, New York 10022-3908
        Phone: (212) 891-1600
        alichtman@jenner.com

        Floyd Abrams
        Joel Kurtzberg
        CAHILL GORDON & REINDEL LLP
        32 Old Slip
        New York, NY 10005
        Phone: (212) 701-3000
        fabrams@cahill.com
        jkurtzberg@cahill.com

        Attorneys for Defendants Clearview
        AI, Inc., Hoan Ton-That, Richard
        Schwartz, Rocky Mountain Data
        Analytics LLC, and Thomas Mulcaire

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

By:   */s/ Precious S. Jacobs-Perry*