**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Case No.: 1:21-cv-00135 |
| | Judge Sharon Johnson Coleman |
| | Magistrate Judge Maria Valdez |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS STEVEN RENDEROS, VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, AND NORCAL RESIST FUND'S MOTION TO REMAND**</u>

Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee ("Mijente"), and NorCal Resist Fund ("NorCal Resist") (collectively hereinafter, "Plaintiffs") respectfully submit this memorandum in support of their Motion to Remand this action to Alameda County Superior Court.

## INTRODUCTION

Clearview's attempt to assert diversity jurisdiction fails on its face. Plaintiffs include individuals who are Alameda County residents and community-based organizations with hundreds of California members. They brought this state-law action to enjoin the Alameda Police Department and District Attorney, Antioch Police Department, El Segundo Police Department (collectively hereinafter, "California Defendants"), and Clearview AI, Inc. ("Clearview") from deploying an illicit domestic surveillance database created by illegally acquiring, storing, and exploiting the likenesses of millions of Californians. This software places all California residents in a perpetual police lineup without their authorization, and subjects people of color to a substantially higher danger of being misidentified by law enforcement. For these reasons, several cities in Alameda County passed legislation banning Clearview's facial recognition technology. The Alameda Police Department and District Attorney continued to use it anyway. Plaintiffs' claims arise under California common law, California statutes, and the California Constitution and involve parties that do business, operate, and reside in California. Clearview's removal of this case from state court was improper and undertaken in bad faith to delay and obstruct the prosecution of Plaintiffs' claims.

Under longstanding law in both this Circuit and the Ninth Circuit, "any doubt" regarding federal jurisdiction should be resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Here, complete diversity does not exist because citizens of California appear on both sides of the "*v.*" Clearview's Notice of Removal also fails to establish any other legitimate grounds for removing this case to federal court:

*First*, Clearview argues that California Defendants—none of which consented to removal—were fraudulently joined. This assertion is baseless. All of these entities have deployed Clearview's domestic surveillance technology and are accountable for aiding and abetting Clearview's unlawful activities under basic common law principles. Under the guise of fraudulent joinder, Clearview seeks to litigate misguided state-law legal theories that should be tested by demurrer in state court, especially since they involve arguably novel applications of state law.

*Second*, Clearview ignores actual fraudulent joinder jurisprudence and, instead, curiously attempts to apply the standard for permissible joinder articulated in 28 U.S.C. § 1447(e), asserting that § 1447(e) provides the relevant test because Plaintiffs dismissed and re-filed their lawsuit. This ill-conceived theory has never been applied by any court and directly contravenes the plain text of § 1447(e).

*Third*, Clearview proposes that the efficient way to proceed would be to "sever" Plaintiffs' claims for aiding and abetting Clearview's illegal conduct and litigate them in state court in Clearview's absence, while the claims against Clearview proceed in Illinois. This is legally and practically untenable. Further, the doctrine of "procedural misjoinder" is not a ground for removal, only fraudulent joinder is. *See, e.g.*, *J.T. Assocs., LLC v. Fairfield Dev., L.P.*, No. 15-CV-04913-BLF, 2016 WL 1252612, at *3 (N.D. Cal. Mar. 31, 2016). In any event, there is no misjoinder here because it is routine and efficient to sue tortfeasors jointly with those who aid and abet them.

Because the Notice of Removal does not come close to overcoming the "strong presumption" against removal, this case should be remanded to Alameda County Superior Court.

## FACTUAL BACKGROUND

### A. The Parties

#### 1. Plaintiffs

The four individual Plaintiffs are all activists who live in or have ties to Alameda County, California. Steven Renderos is the Executive Director of the Center for Media Justice.

(Declaration of Ellen V. Leonida ("Leonida Decl."), Ex. 1 ("Compl.") ¶ 12.) Plaintiff Valeria Thais Suárez Rojas has worked as an advocate for immigrants' rights at the California Immigrant Youth Justice Alliance. (*Id*. ¶ 13.) Plaintiff Lisa Knox is the Legal Director of the California Collaborative for Immigrant Justice. (*Id*. ¶ 14.) And Plaintiff Reyna Maldonado is an immigrant, business owner, and former immigrants' rights community organizer. (*Id*. ¶ 15.)

Plaintiff NorCal Resist is a California organization that advocates for immigration reform and immigrants' rights. It has 7,000 members in Northern California. (*Id*. ¶ 16.) Plaintiff Mijente is a corporation that organizes around surveillance issues in the immigrant community and has more than 300 California members, including 50 members in Alameda County. (*Id.* ¶ 17)

### 2. Defendants

Defendant Clearview is a Delaware corporation with its principal place of business in New York, New York. Clearview is registered as a data broker in, and conducts business throughout, California. (Compl. ¶¶ 19, 21.) Multiple people associated with Clearview, including co-founder Hoan Ton-That, have longstanding ties to the alt-right, a far-right ideology espousing the belief that white identity is under attack. (*Id.* ¶ 20.) People associated with Clearview have expressed animosity toward immigrants and endorsed racism and violence. (*Id.*)

Defendants El Segundo and Antioch Police Departments have purchased licenses from Clearview and have run searches on its database in California, targeting California residents. (*Id.* ¶¶ 21, 24-25.) Defendants Alameda County District Attorney and Alameda Police Department have also run hundreds of searches on Clearview, despite the City of Alameda's ban on facial recognition technology. (*Id.* ¶¶ 22-23, 73.) Each time these agencies upload an image to Clearview's database to run a search, Clearview retains the images and corresponding biometric information in its database for future searches. (*Id.* ¶¶ 37, 73.)

### B. Plaintiffs' Claims

Clearview engages in the widespread collection of California residents' images and biometric information (including Plaintiffs'), without notice or consent, by illicitly scraping images from websites and platforms owned and operated by California companies, such as

Facebook. (Compl. ¶ 21.) It continues to do so despite numerous cease and desist letters from those companies. (*Id.* ¶ 32.) Clearview has promoted and sold licenses for its faceprint database throughout the State, in part by offering trial uses to government entities (including California Defendants). (*Id.* ¶¶ 21-25.)

Plaintiffs have posted pictures of themselves on social media and frequently express views critical of police and ICE practices. (*Id.* ¶¶ 12-17.) As a result of Defendants' unlawful actions, Plaintiffs have suffered multiple injuries, including, at least: expenditure of resources to understand the extent of Clearview's misappropriation of their and their members' identities, images, likenesses, and biometric data; loss of their property rights in their own identities, images, likenesses, and biometric data; mental anguish as a result of the invasions of their privacy; and fear that they and their communities and families will be targeted for their political speech, associations, affiliations, and/or immigration status. (*Id.* ¶ 70.) Further, when Plaintiffs learned that the Alameda County District Attorney and Alameda City Police Department have used Clearview in violation of Alameda's ban on use of facial recognition technology, Plaintiffs were distressed, anxious about their ability to speak out about social issues, and concerned about their increased risk of being targeted, harassed, and surveilled as a result of their advocacy efforts. (Declaration of Reyna Maldonado ¶¶ 6-7; Declaration of Lisa Knox ¶¶ 7-8.)

Plaintiffs bring three causes of action against Clearview: (1) common law appropriation of likeness, for collecting, using, and selling Plaintiffs' identities without their knowledge or consent; (2) violation of Plaintiffs' right to privacy under California Constitution art. 1, section 1; and (3) unfair and unlawful business practices, in violation of California Business & Professions Code §§ 17200 et seq. Plaintiffs bring two causes of action against California Defendants: (1) aiding and abetting Clearview's tortious conduct; and (2) violating the liberty of speech guaranteed to Plaintiffs by Article I, section 2(a) of the California Constitution.

### C. Procedural History

Plaintiffs filed a lawsuit against Clearview in Alameda County Superior Court on March 9, 2021, alleging appropriation of Plaintiffs' likenesses, violation of their rights to privacy, and unlawful and unfair business practices. (*See Renderos et al. v. Clearview AI, Inc. et al.*, RG21091138 (Alameda Sup. Ct.).) On April 6, 2021, a month after that lawsuit was filed, BuzzFeed News published an investigative report revealing that California Defendants were among over 1,800 public agencies that had run searches on Clearview. The article publicly revealed for the first time that individuals employed by the City and County of Alameda continued to use Clearview even after the City of Alameda had banned the use of facial recognition. (*See Renderos et al. v. Clearview AI, Inc. et al.*, Case No. 21-cv-04572 (N.D. Cal), Dkt. No. 1-4, ¶ 10.)

Two days later, on April 8, 2021, Plaintiffs filed an amended complaint adding causes of action against California Defendants based on the Buzzfeed News article that had been published two days before. (*Id.* at ¶¶ 10, 73.) On April 8, 2021, the same day that Plaintiffs filed the amended complaint, but before they were able to serve Defendants with the amended complaint, Clearview filed a notice of removal—removing the case to the Northern District of California. (*Renderos et al. v. Clearview AI, Inc. et al.*, Case No. 4:21-cv-02567-DMR (N.D. Cal), Dkt. No. 1.) On April 13, 2021, Clearview filed a Notice of Potential Tag-Along with the United States Judicial Panel on Multidistrict Litigation ("JPML") to add the lawsuit to the consolidated consumer class action against Clearview pending in this Court (the "MDL"). On April 15, 2021, Plaintiffs dismissed that lawsuit without prejudice.

Plaintiffs filed their present lawsuit against Clearview and California Defendants in Alameda County Superior Court on April 22, 2021. (*See* Compl., *Renderos et al. v. Clearview AI, Inc. et al.*, RG21096898 (Alameda Sup. Ct.).) Clearview filed the Notice of Removal on June 14, 2021, removing the lawsuit to the Northern District of California. (Leonida Decl., Ex. 2 ("Notice")). Clearview did this without contacting or obtaining the consent of California Defendants. (Leonida Decl., Ex. 3). On June 16, 2021, Clearview again filed a Notice of

Potential Tag-Along Action. (MDL No. 2967, Dkt. No. 63.) Plaintiffs objected to the JPML's subsequent Conditional Transfer Order on several grounds, including Clearview's improper removal of Plaintiffs' state-court action and Plaintiffs' pending motion for remand in the Northern District of California. (*Id.*, Dkt. No. 86). On October 5, 2021, the JPML overruled Plaintiffs' objections, noting among other things that this Court could hear Plaintiffs' remand motion. (Dkt. No. 184 at 2.)

## ARGUMENT

The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, there is a "strong presumption" against removal and in favor of remand. *Asperger v. Shop Vac Corporation*, 524 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). "[A] case should be remanded if there is doubt as to the right of removal in the first instance." *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976); *see also Doe*, 985 F.2d at 911 ("Any doubt regarding jurisdiction should be resolved in favor of the states."); *Zimmer as Tr. for Nelson v. Trinity Med. Ctr., Inc.*, No. 18-CV-2987, 2018 WL 11219941, at *1 (N.D. Ill. June 29, 2018) (Coleman, J.) ("Removal statutes . . . are to be construed narrowly and against removal."); *PIRC, LLC v. Qorvis Commc'ns, LLC*, No. 10-CV-08298, 2011 WL 245581, at *1 (N.D. Ill. Jan. 25, 2011) (Coleman, J.) (noting that "doubts concerning removal are resolved in favor of remand"); *Majewski v. Dick's Sporting Goods, Inc.*, No. 20-CV-6906, 2021 WL 76819, at *3 (N.D. Ill. Jan. 8, 2021) (Seeger, J.) ("'[A] plaintiff's choice of forum is presumed valid, and the [c]ourt must resolve any doubts about jurisdiction in favor of remand.' [] If in doubt, the case will go back to state court.") (citations omitted).

## I. CALIFORNIA DEFENDANTS ARE NOT FRAUDULENTLY JOINED

Clearview's argument that California Defendants were fraudulently joined is meritless. (*See* Notice ¶¶ 21-26.) As the Seventh Circuit has explained, a "defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (citation omitted); *Majewski*, 2021 WL 76819 at *3 ("The climb is

steep, and the burden is heavy."). Fraudulent joinder is "difficult to establish" because "a defendant must demonstrate that, 'after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Schur*, 577 F.3d at 764 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)); *see also Hauck v. ConocoPhillips Co.*, Civ. No. 06-135-GPM, 2006 WL 1596826, at *4 (S.D. Ill. 2006) (defendant bears the burden of "affirmative proof of fraudulent joinder" that must be "clear and convincing") (citations omitted). "Framed a different way, the district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (citing *Poulos*, 959 F.2d at 73).

Clearview falls far short of meeting its heavy burden here. Clearview cannot prove that there is no "reasonable possibility" that Plaintiffs could prevail on either their aiding and abetting or constitutional claims against California Defendants, particularly because the claims involve complex questions of state law. *See id.* (explaining that the court must look to state law to determine whether the plaintiff has "any reasonable possibility" of success). On the contrary, California Defendants are liable to Plaintiffs on multiple theories, including aiding and abetting Clearview's tortious conduct and violating Plaintiffs' rights under the California Constitution.

### A. Clearview Cannot Prove that No State Court Could Find the California Defendants Liable for Aiding and Abetting Clearview's Tortious Conduct

Clearview cannot meet its heavy burden of proving that California Defendants were fraudulently joined. The Complaint alleges that Clearview engaged in tortious conduct through, *inter alia*, its unauthorized access, use, and sale of Plaintiffs' photographs and biometric data, which infringes on Plaintiffs' privacy interests and interests in control of their identities, likenesses, and personal data, and violates their right to privacy under the California Constitution. (*See, e.g.*, Compl. ¶¶ 63-72). The Complaint further alleges that California Defendants aided and abetted Clearview's unlawful activities. (*See, e.g.*, Compl. ¶¶ 73-75, 93-95.)

While Clearview argues at length that the aiding and abetting claims against California Defendants are not meritorious because Plaintiffs fail to state an underlying claim against Clearview (*See* Notice ¶¶ 37-54), it points to no California decision in support of this assertion. Moreover, Clearview's argument invites the Court to conduct a more "searching" inquiry into the merits of Plaintiffs' claim than is permissible here. *See Schur*, 577 F.3d at 764. Clearview's voluminous arguments serve only to demonstrate that the issues in this case are novel, complex questions of state law that should be adjudicated in state court. (*See* Notice ¶¶ 52-54 (acknowledging novel state-law questions).) Finally, Clearview is simply incorrect that Plaintiffs have failed to state an underlying claim against Clearview.

Under California common law, the right against appropriation of likeness has four elements: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (1983) (citations omitted). These elements are easily met here because Clearview has captured Plaintiffs' identities and biometric information without Plaintiffs' consent, and is selling its database to others, including California Defendants, causing Plaintiffs' economic loss and mental distress. (Compl. ¶¶ 63-75.)

Because it is the home of the movie industry, California courts have applied common law misappropriation of likeness claims broadly, and—contrary to Clearview's assertion—have not limited them to "merchandising" cases. (*See* Notice ¶¶ 41-43.) Rather, this cause of action protects a person's name and likeness against "appropriation, for the defendant's advantage." *Eastwood*, 149 Cal. App. 3d at 416 (citations omitted). None of the cases relied upon by Clearview is to the contrary. *Timed Out, LLC v. Youabian, Inc.*, the sole state court case cited by Clearview for this proposition, holds only that California's right of privacy is assignable; while that case involved "merchandising," the court did not address, much less hold, that this common law right is **limited** to merchandising cases. 229 Cal. App. 4th 1001, 1006-1008 (2014). Clearview also misstates the holding of *Maloney v. T3Media*, 853 F.3d 1004 (9th Cir. 2017).

(*See* Notice ¶ 42.) *Maloney* held that the plaintiffs' state-law claims were preempted by the Copyright Act; it did not, as Clearview claims, hold that merchandising is the "core" of California's right of publicity.[1] At best, Clearview's merchandising argument demonstrates that the reach of California's misappropriation of likeness tort is unsettled and should thus be decided by a California court.

Plaintiffs separately state a claim against Clearview for violating Plaintiffs' privacy rights under Article 1, § 1 of the California Constitution. A cause of action under the California Constitution for invasion of privacy requires: "(1) the identification of a specific, legally protected privacy interest," (2) a reasonable expectation of privacy under the circumstances presented, and (3) a "sufficiently serious" intrusion upon the privacy interest by the defendant. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35-37 (1994). California has recognized two broad categories of legally protected privacy interests: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Id.* at 35.

Plaintiffs have a legally protected informational privacy interest in precluding Clearview from permanently storing their sensitive information—such as their associations, participation in protests, political advocacy, and critiques of law enforcement—in its database and disseminating it to the police and prosecutors. Plaintiffs also have a reasonable expectation of privacy under these circumstances. Clearview's data harvesting violates the terms of use of many websites from which it collects data. (Compl. ¶ 32.) Moreover, Clearview obtains and sells data captured in private social media postings and in the background of photos taken by others. (Compl. ¶¶ 31, 39.)

---

[1] The language quoted by Clearview from *Maloney* was actually attributable to *Hilton v. Hallmark Cards*, 599 F.3d 894, 910. *See Maloney*, 853 F.3d at 1010. *Hilton* also does not hold that merchandising is necessary for a misappropriation of likeness claim. 599 F.3d at 910.

Because Plaintiffs' claims against Clearview are viable, so are Plaintiffs' aiding and abetting claims against California Defendants. Under California law, a party is liable for aiding and abetting a tort if it "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) (citation and internal alterations omitted).

The City of Alameda banned law enforcement from using facial recognition technology, including Clearview, in 2019. That same year, California instituted a moratorium on police use of facial recognition technology in body cameras. The reasoning of the California Legislature mirrors the concerns of the Plaintiffs in this case:

- Facial recognition and other biometric surveillance technology pose unique and significant threats to the civil rights and civil liberties of residents and visitors.
- The use of facial recognition and other biometric surveillance is the functional equivalent of requiring every person to show a personal photo identification card at all times in violation of recognized constitutional rights.
- This technology also allows people to be tracked without consent. It would also generate massive databases about law-abiding Californians, and may chill the exercise of free speech in public places.

2019 California Assembly Bill No. 1215, California 2019-2020 Regular Session.

California Defendants can be held liable to Plaintiffs for aiding and abetting Clearview's tortious conduct, especially in light of the State of California and City of Alameda prohibitions of facial recognition software. California Defendants provided substantial assistance to Clearview's tortious conduct by uploading photographs to Clearview's database, subscribing to Clearview, paying for Clearview, and promoting the use of Clearview by their employees. (Compl. ¶¶ 10, 73-74, 93-95.) Because there is at least a "reasonable possibility" that a California state court would find that a cause of action for aiding and abetting an intentional tort

exists against California Defendants, Clearview cannot meet the heavy burden of proving fraudulent joinder. *See Schur*, 577 F.3d at 764.

### B. California Defendants Infringed on Plaintiffs' Liberty of Speech

Clearview cannot meet its heavy burden of proving fraudulent joinder for the separate and independent reason that it cannot show that there is no possibility that a state court would hold the California Defendants liable for infringement of Plaintiffs' liberty of speech. Article I, section 2(a) of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." "In the domain of these indispensable liberties, whether of speech, press, or association, the decisions of [the California Supreme] Court recognize that abridgement of such rights, even though unintended, may inevitably follow from varied forms of governmental action." *White v. Davis*, 13 Cal. 3d 757, 767 (1975) (*quoting NAACP v. Alabama* 357 U.S. 449, 461 (1958)). "Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Id.* at 767 (*quoting Healy v. James*, 408 U.S. 169, 183 (1972)). California Defendants violated and continue to violate these rights because "covert police surveillance and intelligence gathering may potentially impose a significant inhibiting effect on the free expression of ideas." *Id.* at 768.

Clearview's arguments that Plaintiffs cannot state a claim for violating Article 1, section 2(a) are incorrect. It first argues that there is no private right of action for damages without compliance with the California Tort Claims Act ("CTCA"). (Notice ¶ 39.) The CTCA does not apply where, as here, Plaintiffs seek injunctive relief, not money damages. *Harris v. State Pers. Bd.*, 170 Cal. App. 3d 639, 643 (1985), *disapproved of on other grounds by Coleman v. Dep't of Pers. Admin.*, 52 Cal. 3d 1102 (1991).

Clearview further argues that Plaintiffs' claim for injunctive relief is not viable because Plaintiffs fail to allege that California Defendants "literally restrain or abridge" their free speech.

(Notice at ¶ 56.) A violation of section 2(a) does not, however, require a "literal" restraint on speech. *See, e.g., White*, 13 Cal. 3d at 772 (stating that police surveillance activity is likely to chill speech under both federal and state constitutions). Moreover, Clearview's argument relies on a misinterpretation of *McAllister v. Los Angeles Unified School Dist.*, 216 Cal. App. 4th 1198, 1217. The Court of Appeal in *McAllister* merely held that a violation of section 2(a) did not warrant reinstatement of a government employee. *Id.* ("The Constitution, section 2(a) cannot be read to support a cause of action for injunctive relief where an individual is seeking to be rehired by her employer. Without specific precedent that the Constitution, section 2(a) supports a cause of action for such an employment-related injunction, we decline to create authority for such an action."). *McAllister*'s holding is thus inapposite here because Plaintiffs seek an injunction outside of the employment context.

In contrast, the California Supreme Court has expressly recognized the "potentially grave threat to freedom of expression" and "a substantial probability that . . . alleged covert police surveillance [would] chill the exercise of" freedom of speech. *White*, 13 Cal. 3d at 761. Clearview's actions here—*i.e.*, selling Plaintiffs' biometric information to law enforcement agencies who may use it to identify and locate them, their families, and others with whom they associate—have a significant and unconstitutional chilling effect on Plaintiffs' liberties of speech and association that the California Constitution protects.

### C. California Defendants Did Not Assent to Removal

Clearview's Notice is also defective because it does not represent that all (or any) California Defendants consented to removal, and in at least one case, Clearview even failed to provide notice of its intent to remove. (Leonida Decl., Ex. 3.) It is well established that in a case involving multiple defendants, "it may not be removed unless all the defendants consent to removal." *Denton v. Universal Am-Can, Ltd.*, No. 12 C 3150, 2012 WL 3779315, at *2 (N.D. Ill. Aug. 30, 2012); *see also* 28 U.S.C § 1446(b)(2)(A) (when a case is removed under section 1441(a), "all defendants who have been properly joined and served ***must*** join in or consent to the

removal of the action") (emphasis added). To the extent Clearview contends that its misguided fraudulent joinder argument relieved it of complying with this requirement, this argument fails. As discussed above, no California Defendants are, in fact, fraudulently joined; Clearview's failure to obtain the consent of California Defendants provides a separate and independent reason why removal was improper here.

### D. The Standard for Fraudulent Joinder, Not 28 U.S.C. § 1447(e), Applies Here

Because Clearview cannot satisfy the removal standards under longstanding law in both this Circuit and the Ninth Circuit, it argues that 28 U.S.C. § 1447(e) provides the relevant standard for analysis of joinder under the ill-conceived theory that the Complaint is "constructively an amendment." (Notice ¶¶ 12, 23.) Clearview cites no case that has applied such a theory, which is plainly contrary to the statute upon which Clearview relies.

Section 1447(e) provides that "[i]f *after* removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). Section 1447(e) is plainly inapplicable here because Plaintiffs do not seek to join any additional defendants to this case; the Complaint already includes claims against four California Defendants. (*See* Compl.)

The two primary cases cited by Clearview lend no support to its argument. (S*ee* Notice ¶¶ 23-24.) Tellingly, the court in *Welk v. GMAC did not* apply § 1447(e) in its analysis of whether the plaintiffs' addition of a non-diverse defendant defeated diversity jurisdiction; it applied the fraudulent joinder doctrine. *See* 850 F. Supp. 2d 976, 995 (D. Minn. 2012) ("The joinder of a nondiverse defendant is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'") (citation omitted). Likewise, *Greer v. Lockheed Martin* did not involve a motion to remand, but a plaintiff's motion to amend the complaint after the case had already been removed to federal

court. *See* No. CV 10-1704 JF HRL, 2010 WL 3168408, at *1 (N.D. Cal. Aug. 10, 2010). In sum, Clearview's own authorities demonstrate the inapplicability of § 1447(e) here.

## II.     "PROCEDURAL MISJOINDER" PROVIDES NO BASIS FOR REMOVAL

Clearview's argument that California Defendants were "procedurally misjoined" and that this provides a basis for removal (Notice ¶¶ 63-66) is incorrect for at least two reasons. First, this doctrine does not apply in the context of removal. Second, even if it did apply, no parties have been misjoined here.

As a threshold matter, only the doctrine of fraudulent joinder—rather than "procedural misjoinder" or "fraudulent misjoinder"—can provide an exception to the diversity requirement. *Reeves v. Pfizer, Inc.*, 880 F. Supp. 2d 926, 927 (S.D. Ill. 2012) (discussing the difference between fraudulent joinder and "fraudulent misjoinder" and noting that "[n]either the Seventh Circuit nor the United States Supreme Court have considered the validity of the fraudulent misjoinder doctrine"). Clearview's argument to the contrary goes against the weight of authority in this District and sister districts. *See Creighton v. Bristol-Myers Squibb & Co.*, No. 13 C 629, 2013 WL 12333214, at *3-4 (N.D. Ill. May 10, 2013) (noting that "numerous other district courts in this Circuit have refused to apply the *Tapscott* fraudulent misjoinder doctrine" and similarly declining to follow it) (collecting cases); *Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at *5 (N.D. Ill. Jan. 17, 2007) (declining to follow *Tapscott* or apply the doctrine of fraudulent misjoinder); *Reeves*, 880 F. Supp. 2d at 928 (finding that fraudulent misjoinder "is an improper expansion of the scope of federal diversity jurisdiction by the federal courts") (citing *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006)). This Court should likewise reject this fringe theory.

The sole case that Clearview cites, *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008), is inapposite. In *Sutton*, the plaintiffs brought strict products liability claims against the manufacturers of a medical device, and medical malpractice claims against the healthcare providers for implanting a previously recalled medical device. *Id.* at 502. The court found that the two sets of claims did not overlap because the malpractice claims were not (and could not be)

based on the "allegedly negligent testing and manufacture" of the device, and instead, involved unique factual and legal issues. *Id.* at 505.

Here, in contrast, Plaintiffs' claims against California Defendants are inextricably linked with Plaintiffs' claims against Clearview and are thus properly joined under Rule 20. Indeed, Clearview dedicates over four pages of its Notice to arguing that Plaintiffs' aiding and abetting claims against California Defendants must be premised on underlying claims against Clearview, thereby acknowledging that the claims against California Defendants cannot be decided without deciding the Clearview claims. Thus, even if the Court were to consider Clearview's misjoinder theory, it would plainly fail. Because Clearview has failed to establish that removal was proper under any theory, this case should be remanded.

## CONCLUSION

For the reasons articulated above, Plaintiffs respectfully request that the Court grant their Motion to Remand this action to Alameda County Superior Court.

Dated: October 20, 2021

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

Ellen V. Leonida, Esq. (Admitted *Pro Hac Vice*)
leonida@braunhagey.com
Tracy O. Zinsou, Esq. (Admitted *Pro Hac Vice*)
zinsou@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

Kevin Herrera (IL SBN: 6324045)
kevin@justfutureslaw.org
JUST FUTURES LAW
P.O. Box 32194
Chicago, IL 60632
Telephone: (919) 698-5015

*Attorneys for Plaintiffs Steven Renderos,
Valeria Thais Suárez Rojas, Reyna
Maldonado, Lisa Knox, Mijente Support
Committee, and Norcal Resist Fund*

## Assembly Bill No. 1215

### CHAPTER 579

An act to add and repeal Section 832.19 of the Penal Code, relating to law enforcement.

[Approved by Governor October 8, 2019. Filed with Secretary
of State October 8, 2019.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1215, Ting. Law enforcement: facial recognition and other biometric surveillance.

Existing law states the intent of the Legislature to establish policies and procedures to address issues related to the downloading and storage of data recorded by a body-worn camera worn by a peace officer, and requires that those policies and procedures be based on best practices. Existing law requires law enforcement agencies, departments, or entities to consider certain best practices regarding the downloading and storage of body-worn camera data when establishing policies and procedures for the implementation and operation of a body-worn camera system, as specified.

This bill would prohibit a law enforcement agency or law enforcement officer from installing, activating, or using any biometric surveillance system in connection with an officer camera or data collected by an officer camera. The bill would authorize a person to bring an action for equitable or declaratory relief against a law enforcement agency or officer who violates that prohibition.

The bill would repeal these provisions on January 1, 2023.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) Californians value privacy as an essential element of their individual freedom, and are guaranteed a right to privacy in Section 1 of Article I of the California Constitution.

(b) Facial recognition and other biometric surveillance technology pose unique and significant threats to the civil rights and civil liberties of residents and visitors.

(c) The use of facial recognition and other biometric surveillance is the functional equivalent of requiring every person to show a personal photo identification card at all times in violation of recognized constitutional rights. This technology also allows people to be tracked without consent. It would also generate massive databases about law-abiding Californians, and may chill the exercise of free speech in public places.

93

(d) Facial recognition and other biometric surveillance technology has been repeatedly demonstrated to misidentify women, young people, and people of color and to create an elevated risk of harmful "false positive" identifications.

(e) Facial and other biometric surveillance would corrupt the core purpose of officer-worn body-worn cameras by transforming those devices from transparency and accountability tools into roving surveillance systems.

(f) The use of facial recognition and other biometric surveillance would disproportionately impact the civil rights and civil liberties of persons who live in highly policed communities. Its use would also diminish effective policing and public safety by discouraging people in these communities, including victims of crime, undocumented persons, people with unpaid fines and fees, and those with prior criminal history from seeking police assistance or from assisting the police.

SEC. 2. Section 832.19 is added to the Penal Code, immediately following Section 832.18, to read:

832.19. (a) For the purposes of this section, the following terms have the following meanings:

(1) "Biometric data" means a physiological, biological, or behavioral characteristic that can be used, singly or in combination with each other or with other information, to establish individual identity.

(2) "Biometric surveillance system" means any computer software or application that performs facial recognition or other biometric surveillance.

(3) "Facial recognition or other biometric surveillance" means either of the following, alone or in combination:

(A) An automated or semiautomated process that captures or analyzes biometric data of an individual to identify or assist in identifying an individual.

(B) An automated or semiautomated process that generates, or assists in generating, surveillance information about an individual based on biometric data.

(4) "Facial recognition or other biometric surveillance" does not include the use of an automated or semiautomated process for the purpose of redacting a recording for release or disclosure outside the law enforcement agency to protect the privacy of a subject depicted in the recording, if the process does not generate or result in the retention of any biometric data or surveillance information.

(5) "Law enforcement agency" means any police department, sheriff's department, district attorney, county probation department, transit agency police department, school district police department, highway patrol, the police department of any campus of the University of California, the California State University, or a community college, the Department of the California Highway Patrol, and the Department of Justice.

(6) "Law enforcement officer" means an officer, deputy, employee, or agent of a law enforcement agency.

**Ch. 579**

(7)  "Officer camera" means a body-worn camera or similar device that records or transmits images or sound and is attached to the body or clothing of, or carried by, a law enforcement officer.

(8)  "Surveillance information" means either of the following, alone or in combination:

(A)  Any information about a known or unknown individual, including, but not limited to, a person's name, date of birth, gender, or criminal background.

(B)  Any information derived from biometric data, including, but not limited to, assessments about an individual's sentiment, state of mind, or level of dangerousness.

(9)  "Use" means either of the following, alone or in combination:

(A)  The direct use of a biometric surveillance system by a law enforcement officer or law enforcement agency.

(B)  A request or agreement by a law enforcement officer or law enforcement agency that another law enforcement agency or other third party use a biometric surveillance system on behalf of the requesting officer or agency.

(b)  A law enforcement agency or law enforcement officer shall not install, activate, or use any biometric surveillance system in connection with an officer camera or data collected by an officer camera.

(c)  In addition to any other sanctions, penalties, or remedies provided by law, a person may bring an action for equitable or declaratory relief in a court of competent jurisdiction against a law enforcement agency or law enforcement officer that violates this section.

(d)  This section does not preclude a law enforcement agency or law enforcement officer from using a mobile fingerprint scanning device during a lawful detention to identify a person who does not have proof of identification if this use is lawful and does not generate or result in the retention of any biometric data or surveillance information.

(e)  This section shall remain in effect only until January 1, 2023, and as of that date is repealed.

O

2007 WL 141891

Only the Westlaw citation is currently available.

United States District Court,

N.D. Illinois,

Eastern Division.

Ines ALEGRE, Individually and as Legal Guardian of David Alegre, Plaintiff,

v.

Jorge N. AGUAYO, M.D., Norwegian American Hospital, Inc.,

Merck & Co. Inc., and Medco Health Solutions, Defendants.

No. 06 C 5744.

|

Jan. 17, 2007.

**Attorneys and Law Firms**

Edward Anthony Wallace, Wexler Toriseva Wallace LLP, Chicago, IL, for Plaintiff.

Brian Alan Sher, Dmitry Shifrin, Jena M. Valdetero, Bryan Cave LLP, Chicago, IL, Stephen G. Strauss, Bryan Cave, LLP, St. Louis, MO, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

AMY J. ST. EVE, District Court Judge.

**\*1** Before the Court is Defendant Merck & Co.'s Motion to Stay and Plaintiff Ines Alegre's Motion for Remand. For the following reasons, Defendant's Motion to Stay is denied, and Plaintiff's Motion for Remand is granted.

### *BACKGROUND*

On September 29, 2004, Plaintiff Ines Alegre filed her Complaint in this matter in the Circuit Court of Cook County, Illinois, naming Merck & Co. ("Merck"), Dr. Jorge N. Aguayo, Norwegian American Hospital, Inc. ("Norwegian") and Medco Health Solutions as defendants. Ms. Alegre filed the Complaint both on her own behalf (specifically, through a loss of consortium claim (R. 1–1, Compl. at ¶¶ 167–170)) and as legal guardian of her husband, Mr. Alegre. (*Id.* at ¶ 1.) Plaintiff alleges that Mr. Alegre was harmed by taking Merck's prescription pain medication—Vioxx. Specifically, Plaintiff alleges that Merck failed to fully disclose health risks, and particularly the risk of "thromboembolic adverse events, such as heart attacks and strokes" associated with use of Vioxx. (*Id.* at ¶ 21.)

Plaintiff alleges that Dr. Aguayo (and through *respondeat superior,* his employer, Norwegian) are liable not only because Dr. Aguayo prescribed Vioxx, but because he prescribed Vioxx "for chronic pain at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the medical community." (*Id.* at ¶ 61.) Plaintiff also claims, on information and belief, that "Dr. Aguayo actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre at high doses for long durations, at the expense of the health and safety of Mr. Alegre, and in conscious disregard of the foreseeable harm caused by Vioxx." (*Id.* at ¶ 66.)

2007 WL 141891

Plaintiff and Dr. Aguayo are citizens of Illinois (*id.* at ¶¶ 1–2), Norwegian is incorporated and located in Illinois (*id.* at ¶ 3), and Merck is a citizen of New Jersey. (R. 14–1, Am. Notice of Removal at ¶ 12.) On October 23, 2006, Merck filed a Notice of Removal removing Plaintiff's action to this Court pursuant to this Court's diversity jurisdiction and 28 U.S.C. § 1332 (R. 1–1), which they amended one week later, on October 30, 2006. (R. 14–1.) The citizenship of the parties would normally render Merck's removal improper. *See* 28 U.S.C. § 1441(b) (a defendant may remove an action not founded on a claim or right arising under the Constitution, treaties or laws of the United States "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"); 28 U.S.C. § 1332(a) (district courts do not have diversity jurisdiction over suits between citizens of the same state). Merck's notice argued that even though Dr. Aguayo and Norwegian are Illinois citizens, removal is proper in this case because Plaintiffs, in an effort to defeat diversity jurisdiction, improperly named Dr. Aguayo and Norwegian as defendants under both the doctrine of fraudulent joinder (R. 14–1, Am. Notice of Removal at ¶¶ 16–20) and the similarly named but distinct doctrine of fraudulent misjoinder. (*Id.* at ¶¶ 21–24.)

**\*2** Merck has moved the Court to stay all proceedings in this action pending its anticipated transfer pursuant to 28 U.S.C. § 1407 to the multidistrict litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana (*In re Vioxx Products Liability Litigation,* MDL No. 1657) to coordinate federal product liability actions related to Vioxx. (R. 12–1.) Plaintiff has both opposed Merck's motion and has filed a motion to remand this action to the Cook County Circuit Court. (R. 19–1.)

## LEGAL STANDARD

Defendants may remove civil suits filed in state court to federal court pursuant to 28 U.S.C. § 1441 and related statutes. "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). The burden of establishing federal jurisdiction falls on the party seeking removal. *Boyd v. Phoenix Funding Corp.,* 366 F.3d 524, 529 (7th Cir.2004).

## ANALYSIS

### I. Timing of Consideration of Motion to Remand

The first question confronting the Court is whether to address Plaintiff's remand motion now or to stay all proceedings, which could result in the MDL judge ruling on the remand motion if the case is transferred to the Eastern District of Louisiana. The Court will consider Plaintiff's remand motion now.

Merck's stay motion argues that because resolution of all similar remand motions serves the interests of judicial economy and uniformity of decision, and because a stay will not unduly prejudice Plaintiff, this Court should order a stay of all proceedings. (R. 12–1, Merck's Mot. to Stay at 4–7.) In response, Plaintiff argues that because federal jurisdiction is in doubt, this Court has both the ability and the duty to consider its jurisdiction over this matter prior to ruling on Merck's motion to stay. (R. 19–1, Opp. to Merck's Mot. to Stay and Mot. for Remand at 6–8.)

This Court "retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district." *Rutherford v. Merck & Co.,* 428 F.Supp.2d 842, 845 (S.D.Ill.2006) (citing *Illinois Mun. Retirement Fund v. Citigroup, Inc.,* 391 F.3d 844, 850 (7th Cir.2004)). "A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions." *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1046 (E.D.Wis.2001) (citing Rules of Procedure of the J.P.M.L. R. 1.5; *General Elec. Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir.1979)). Given that to this point Merck has merely identified this action on a "tag-along letter," meaning that a Conditional Transfer Order has not yet issued (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 1), the Court clearly has the discretion to first rule on either the remand motion or the motion to stay. Courts have reached both conclusions on this question, often without providing a great deal of guidance on how they reached their decision. *See Meyers,* 143 F.Supp.2d at 1047–48 (citing cases). The *Meyers* court, recognizing this

2007 WL 141891

deficit, formulated a compelling and logical framework for deciding whether to first address a remand motion or a motion to stay. *See id.* at 1048–49. The Court adopts the *Meyers* framework set forth below. *See, e.g., Rutherford,* 428 F.Supp.2d at 845–46; *Riddle v. Merck & Co.,* Civil No. 06–172–GPM, 2006 WL 1064070 at *2 (S.D.Ill. Apr.21, 2006); *Martin v. Merck & Co.,* No. S–05–750 LKK/PAN, 2005 WL 1984483 at *1–2 (E.D.Cal. Aug.15, 2005); *Chinn v. Belfer,* No. Civ. 02–00131–ST, 2002 WL 31474189 at * 3 (D.Or. June 19, 2002).

**\*3** In support of its view that the Court should stay proceedings prior to considering Plaintiff's remand motion, Merck correctly stresses that "[t]he pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in [MDL] proceedings," and that remand motions in this matter "can be presented to and decided by the transferee judge." *In re Vioxx Prods. Liab. Litig.,* 360 F.Supp.2d 1352, 1354 (J.P.M.L.2005). Nothing in this language, however, *requires* this Court to stay proceedings prior to consideration of Plaintiff's remand motion. Furthermore, the primary policy justification for Merck's view —specifically, that an MDL judge can consider similar remand motions together more efficiently than other district judges can by considering such motions on an individual basis, while also producing more uniform results—does not apply in this case.

Plaintiff's allegations that Dr. Aguayo prescribed an excessive amount of Vioxx to Mr. Alegre distinguish this case from the more common scenario in which a plaintiff names a physician as a defendant for merely prescribing a drug and failing to warn of its risks. As explained further below, this factual difference significantly impacts the analysis of Merck's fraudulent joinder argument. Despite its extensive reference to the number and type of cases previously transferred to the MDL judge in Louisiana as well as to the characteristics of individual cases, Merck fails to point to any remand motion pending in the MDL requiring analysis of this issue. As a result, there is no indication that any efficiency or uniformity gain will result from transfer of this case to the MDL judge.

The benefits of consideration of the remand motion at this stage, on the other hand, are clear. The *Meyers* court explained that the constitutional significance of jurisdiction, concerns of judicial efficiency, and the importance of allowing plaintiffs to choose their forum, together with the language of 28 U.S.C. § 1447(c), which directs that "[i]f at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added), dictate that "a court's first step should be to make a preliminary assessment of the jurisdictional issue." *Meyers,* 143 F.Supp.2d at 1048. Then, "[i]f this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Id.* at 1049. The *Meyers* court went on to explain the course of action that should follow if the preliminary assessment indicates that the jurisdictional issue at hand is "factually or legally difficult," including the circumstances in which the Court should consider addressing a motion to stay. *Id.* The Court, however, need not discuss later steps in the process. The Court finds, as explained further below, that a preliminary review of Plaintiff's remand motion establishes—without any need to resort to difficult factual or legal issues—that removal was improper in this case. This approach is consistent with the Seventh Circuit's clear directive that "a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey,* 141 F.3d 322, 325 (7th Cir.1998). "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' " *Id.* (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

## II. Fraudulent Joinder of Dr. Aguayo and Norwegian

**\*4** Merck argues that Plaintiffs do not have a legitimate claim against Dr. Aguayo and Norwegian, and that Plaintiffs joined them in their complaint in a fraudulent attempt to destroy the Court's diversity jurisdiction. If this is correct, Merck's removal of this case is proper, because fraudulent joinder of parties does not destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999). A party arguing fraudulent joinder must demonstrate that there is "no reasonable possibility that a state court would rule against the in-state defendant." *Id.* (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992)). Merck contends that there is no possibility that an Illinois court would rule against Dr. Aguayo (and, as a result of *respondeat superior,* against Norwegian) because Plaintiff's allegations against Dr. Aguayo are internally inconsistent with those against Merck. Specifically, Merck claims that Plaintiff's allegation that Dr. Aguayo decided to prescribe Vioxx despite his awareness of the increased risks for cardiovascular events associated with the drug is inconsistent with Plaintiff's claim that

2007 WL 141891

Merck concealed the alleged risks of Vioxx from everyone, including the medical community and Dr. Alegre. (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10.)

Merck's fraudulent joinder argument fails for two reasons. First, allegations that Merck concealed the risks of Vioxx and allegations that doctors were aware of the risks of Vioxx are not necessarily inconsistent. Merck is not the only source of information on its drug, and indeed, Plaintiff's Complaint specifically discusses independent sources of information on Vioxx, such as studies and journal articles, that could have educated physicians about the drug. *See, e.g.,* R. 1–1, Compl. at ¶ 37 (discussing an August 2001 article in the *Journal of the American Medical Association* that "highlighted the dangerous cardiovascular adverse event profile of COX–2 inhibitors, particularly VIOXX"). Merck's argument has failed in at least one other case for this reason. *See Melton v. Merck & Co.,* Civil Action No. 7:06–45–JMH, 2006 WL 1543036 at *3 (E.D.Ky. June 1, 2006)* (finding that Merck's "inconsistent pleading" argument fails because "[i]t is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that reasonable Health Care Providers would still have known of the risks from the information that had come out").

Second, Merck simply ignores allegations regarding Dr. Aguayo's prescription of Vioxx that are critical to the fraudulent joinder analysis. Merck points to a number of cases in which a court found fraudulent joinder when a plaintiff (1) alleges that a pharmaceutical company concealed the risks associated with a drug; and (2) includes a claim against a physician based on the physician's decision to prescribe a drug despite knowledge of its risks. (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10–11.) The nature of Plaintiff's allegations against Dr. Aguayo, however, differ from this more common factual scenario because Plaintiff claims that Dr. Aguayo not only prescribed Vioxx to Mr. Alegre, but that he prescribed Vioxx "at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the medical community." (R. 1–1, Compl. at ¶ 61.) This allegation, and others like it, provide the basis for an Illinois law negligence claim against Dr. Aguayo independent of his mere prescription of Vioxx to Mr. Alegre, foreclosing application of the fraudulent joinder doctrine. *See Jones v. Chicago HMO Ltd. of Ill.,* 191 Ill.2d 278, 246 Ill.Dec. 654, 730 N.E.2d 1119, 1130 (Ill.2000) (in professional negligence cases, "professionals are expected to use the same degree of knowledge, skill, and ability as an ordinarily careful professional would exercise under similar circumstances").

**\*5** Other courts in recent cases involving allegations against physicians as well as against drug companies for their failure to warn of side effects or dangers of drugs—including the MDL judge in another case involving allegations "different" from the standard case involving claims against doctors for mere prescription of Vioxx—have similarly refused to find fraudulent joinder. *See* Tr. of Proceedings Before Hon. Eldon E. Fallon at 3–6, *Tallas v. Merck & Co.,* MDL Docket No. 1657 (E.D.La. Aug. 30, 2006) (finding that plaintiff did not fraudulently join physician when plaintiff alleged not only that physician prescribed drug, but that physician did not examine or monitor plaintiff); *K.B. v. Janssen Pharm., L.P.,* No. 4:05CV1914 HEA, 2006 WL 544015 at *3 (E.D.Mo. Mar.3, 2006)* (finding that plaintiffs did not fraudulently join physicians when plaintiffs alleged not only that physicians prescribed drug, but that they failed to monitor plaintiffs after prescribing the drug and failed to properly follow drug packaging when prescribing drug); *Storlien v. Weigand,* No. 05–1283–JTM, 2006 WL 3068878 at *3 (D.Kan. Oct.25, 2006)* (holding that while a fraudulent joinder argument "might have legs" if plaintiff's complaint was limited to allegations of prescribing medication without adequate warning, plaintiff did not fraudulently join physician when plaintiff "also advanced a general claim of medical malpractice against [the physician] ). The same conclusion is warranted here.

### III. Fraudulent Misjoinder of Dr. Aguayo and Norwegian

In addition to their fraudulent joinder argument, Merck also contends that Dr. Aguayo and Norwegian were fraudulently misjoined because the claims against Dr. Aguayo and Norwegian do not arise from the same transaction or occurrence as those against Merck. The doctrine of fraudulent misjoinder arose from the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), in which the court held that while "mere misjoinder" will not destroy diversity jurisdiction, "egregious" misjoinder of claims is tantamount to fraudulent joinder and may consequently destroy diversity. Merck, stressing that this doctrine has also been adopted in the Fifth Circuit[1] and in several district courts, argues that the Court

2007 WL 141891

should apply the doctrine here and sever or dismiss Plaintiff's claims against Dr. Aguayo and Norwegian without prejudice. (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12–15.)

The Court declines to follow *Tapscott* or apply the doctrine of fraudulent misjoinder here. Following a thorough and persuasive analysis of fraudulent misjoinder and the case law examining the doctrine, the Southern District of Illinois recently declined to follow *Tapscott. See Rutherford*, 428 F.Supp.2d at 850–55. The *Rutherford* court detailed the rationale for its conclusion at length, noting, *inter alia,* that (1) no Supreme Court authority suggests that joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court; (2) federal courts have traditionally held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case; and (3) the pronounced lack of clarity in fraudulent misjoinder jurisprudence renders its application a violation of the Seventh Circuit's "first virtue of any jurisdictional rule," specifically, its "clarity and ease of implementation" (citing *Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805, 806 (7th Cir.2005)). *Id.* With particular stress on the currently muddled state of fraudulent misjoinder jurisprudence and the resulting impact on ease of application of jurisdictional rules, the Court will follow *Rutherford's* well-reasoned lead in this case.

 *6  Merck argues that the Court should apply the doctrine of fraudulent misjoinder, despite the lack of binding authority on the question, to preclude what they call Plaintiff's "blatantly improper scheme to prejudice Merck and attempt to evade federal jurisdiction." (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 13.) Even if the Court were to recognize the doctrine of fraudulent misjoinder in this case, however, Plaintiff has not misjoined any defendants here. Illinois law, similar to federal law, allows plaintiffs to join defendants "against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions." 735 ILCS 5/2–405(a); *compare* Fed.R.Civ.P. 20(a) (allowing joinder of parties as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"). "The objective of joinder is the economy of actions and trial convenience." *Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 272 (Ill.1995). "The determining factors are that the claims arise out of closely related 'transactions' and that there is in the case a significant question of law or fact that is common to the parties." *Id.*

Merck argues that there is no connection between Plaintiff's claims against Merck, which focus on inadequate disclosure of the risks associated with use of Vioxx, and Plaintiff's claims against Dr. Aguayo, which focus in large part on his prescription of an excessive dose of Vioxx to Mr. Alegre. (R. 27–1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12–13.) Merck, which appears to focus on the disparate nature of the relevant transactions, reads the "same transaction" requirement too strictly. The Illinois Supreme Court has clearly indicated that relevant transactions need not have much in common to allow for joinder of defendants, so long as the transactions are "closely related." *See Boyd,* 209 Ill.Dec. 727, 652 N.E.2d at 272–73 (finding the explosion of a water heater and the subsequent loss of the heater by an insurance company closely related, allowing for joinder of claims against water heater manufacturer and insurance company, because "[the insurance company] assumed possession of the heater for the sole purpose of determining the cause of the explosion").

Here, Vioxx's alleged failure to disclose the dangers of Vioxx and Dr. Aguayo's alleged prescription of an excessive amount of the drug are closely related in that they are the two factors that led to the ingestion of Vioxx that Mr. Alegre claims caused his heart attack. The acts are further interrelated in that Plaintiff's Complaint alleges upon information and belief that "Dr. Aguayo actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre ... in conscious disregard of the foreseeable harm caused by Vioxx." (R. 1–1, Compl. at ¶ 66.) The transmittal of information (or lack thereof) from Merck or independent sources such as journal articles to Dr. Aguayo to Mr. Alegre provides another common series of transactions and a question of fact common to the defendants. *See Copeland v. Eli Lilly & Co.,* No. 05–04318–CV–C–NKL, 2005 WL 3533394 at *5 (finding in a factually similar case that "the chain of communication—and any breaks in it—from the drug manufacturer to the patient is a common issue of fact"). These interrelations between Plaintiff's claims against Merck and those against Dr. Aguayo (and Norwegian) support that joinder here will lead to the intended benefits

2007 WL 141891

of joinder of defendants—economy of actions and trial convenience—outlined by the Illinois Supreme Court in *Boyd.* In sum, regardless of whether Merck's burden is to establish "egregious misjoinder" or "mere misjoinder," it cannot carry its burden here.

### IV. Plaintiff's Request for Costs

**\*7** In her reply brief, Plaintiff argues that because Merck's briefs ignored relevant case law and the allegations against Dr. Aguayo in the Complaint, the Court should award Plaintiff the costs she incurred in briefing the issues before the Court. Plaintiff points to *Kuperstein v. Hoffman–Laroche, Inc.,* 457 F.Supp.2d 467, 474 (S.D.N.Y.2006), in which the court awarded costs based on a pharmaceutical defendant's "failure to address the governing law or accurately represent the factual allegations of the Complaint." The Court does not find that Merck ignored relevant law or misrepresented any allegations in the Complaint, and as the *Kuperstein* court itself noted, "the mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff." *Id.* at 472. As a result, Plaintiff's request for costs is denied.

### *CONCLUSION*

Plaintiff did not fraudulently join or fraudulently misjoin Defendants Dr. Jorge N. Aguayo and Norwegian American Hospital, Inc. in this matter, and they are proper defendants in this case. Their presence both destroys the complete diversity necessary for the Court's jurisdiction over this matter and renders removal improper under 28 U.S.C. § 1441(b). Accordingly, the Court remands the case to the Circuit Court of Cook County, Illinois. All remaining pending motions are transferred to the Circuit Court of Cook County with this case. Plaintiff's request for costs is denied.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 141891

### Footnotes

1    It is not entirely clear that the Fifth Circuit has "adopted" the *Tapscott* test. The portion of the Fifth Circuit case that Merck cites merely notes that it *might be* concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir.2002) (emphasis added). A subsequent Fifth Circuit opinion from this same litigation declined to reach the fraudulent jurisdiction issue for reasons unrelated to the doctrine itself, but added that it was making its decision "without detracting from the force of the *Tapscott* principle ...." *In re Benjamin Moore & Co.,* 318 F.3d 626, 630 (5th Cir.2002). Neither of these statements provides a clear adoption of *Tapscott,* and the Fifth Circuit has yet to apply the *Tapscott* doctrine in any case.

---

End of Document                                                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 12333214
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Rose CREIGHTON et al., Plaintiffs,

v.

BRISTOL-MYERS SQUIBB & COMPANY, et al., Defendants.
Geraldine Jackson et al., Plaintiffs,

v.

Bristol-Myers Squibb & Company, et al., Defendants.
Terrance Parks et al., Plaintiffs,

v.

Bristol-Myers Squibb & Company, et al., Defendants.
Samuel D. Tolbert et al., Plaintiffs,

v.

Bristol-Myers Squibb & Company, et al., Defendants.

No. 13 C 629
|
No. 13 C 633
|
No. 13 C 639
|
No. 13 C 647
|
Signed 05/10/2013

**Attorneys and Law Firms**

Marc Jay Bern, Napoli Bern Ripka Shkolnik and Associates, New York, NY, Steven M. Aroesty, Steven M. Aroesty, LLC, St. Louis, MO, for Plaintiffs.

Daniel S. Pariser, Kevin Cline, Arnold & Porter LLP, Washington, DC, Daniel Adam Spira, Sara J. Gourley, Tamar B. Kelber, Sidley Austin LLP, Chicago, IL, for Defendants.

**ORDER**

JOHN Z. LEE, U.S. District Judge

 **\*1** Plaintiffs initiated these four lawsuits, *Creighton*, *Jackson*, *Parks*, and *Tolbert*, in the Illinois Circuit Court of Cook County against Defendants who are manufacturers and marketers of Plavix, a prescription drug. Plaintiffs alleged that they suffered injury because Plavix was defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to its use. Defendants subsequently removed the four lawsuits to the U.S. District Court for the Northern District of Illinois, asserting diversity jurisdiction. Plaintiffs now move to remand. For the reasons provided herein, the Court grants the motion.

Creighton v. Bristol-Myers Squibb & Company, Not Reported in Fed. Supp. (2013)

2013 WL 12333214

## Discussion

As a foundational matter, "the federal courts are courts of limited jurisdiction, and we have an obligation at each stage of the proceedings to ensure that we have subject matter jurisdiction over the dispute." *Ne. Rural Elec. Membership v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013). The removal statute provides that, "except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Seventh Circuit has cautioned, however, that "courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

Removal based on diversity jurisdiction requires the existence of complete diversity of citizenship among the parties and the amount in controversy to exceed $75,000.00. 28 U.S.C. §§ 1332, 1441. Complete diversity requires that no defendant shares citizenship with any plaintiff. *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267 (1806). The rules governing citizenship for diversity purposes are straightforward. An individual is a citizen of the state in which he or she is domiciled, which is "the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). Corporations "are citizens both of the state of incorporation and the state in which the corporation has its principal place of business." *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006). As for limited liability companies, "the citizenship for diversity purposes ... despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members." *Id.* Finally, "it is axiomatic that the propriety of removal is determined on the basis of Plaintiffs' pleading as it existed at the time of removal." *Momans v. St. John's Nw. Military Acad.*, 2000 WL 33976543, at *2 (N.D. Ill. Apr. 20, 2000); *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Plaintiff, as master of the complaint, has the privilege of adding non-diverse plaintiffs to prevent removal. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

**\*2** Defendants Bristol-Myers Squibb Co. and Sanofi-Synthelabo, Inc. are citizens of New York and Delaware. Defendants Sanofi-Aventis U.S. L.L.C. and Sanofi-Aventis U.S., Inc. are citizens of New Jersey and Delaware. The question then is whether any of the Plaintiffs are citizens of these states.

With regard to the *Creighton* action, Plaintiffs Marvin E. DePuy, Laureen DePuy, and Thomas E. Gilliam are citizens of New York, and Plaintiff Catherine Parson is a citizen of New Jersey; therefore, complete diversity is lacking. As to the *Jackson* action, Plaintiffs Geoffrey Hildreth and Anne Caffyn are citizens of New York, thereby destroying complete diversity. In the *Parks* action, because Plaintiff George Anesgart is a citizen of New York and Plaintiff Dorothy Andrews is a citizen of New Jersey, there is likewise no complete diversity. Lastly, as to the *Tolbert* action, Plaintiffs Kimberly Scirocco and Richard W. Begandy are citizens of New York, and Plaintiff Norma Ostolaza is a citizen of New Jersey, and complete diversity is also lacking.

Defendants nevertheless argue that complete diversity exists because the non-diverse plaintiffs have been procedurally or fraudulently misjoined. The procedural or fraudulent misjoinder doctrine was first recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The Eleventh Circuit is the only circuit that has explicitly adopted the doctrine. *Cf. Lafalier v. State Farm Fire & Cas. Co.*, 391 Fed.Appx. 732, 739 (10th Cir. 2010) (declining to reach the application of fraudulent misjoinder doctrine); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (mentioning but not applying the doctrine); *In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002) (same); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, No. 00-55283, 2001 WL 1563913 (9th Cir. Dec. 5, 2001) (assuming, without deciding, whether the Ninth Circuit would accept the fraudulent misjoinder doctrine, and holding that even if the doctrine were to apply, joinder was not fraudulent or egregious because there seemed to be "some connection or nexus between the claims of the non-diverse plaintiff and the claims of the diverse plaintiffs").

Case: 1:21-cv-00135 Document #: 193 Filed: 10/20/21 Page 29 of 66 PageID #:3832
Creighton v. Bristol-Myers Squibb & Company, Not Reported in Fed. Supp. (2013)
2013 WL 12333214

In *Tapscott*, plaintiffs brought a putative class action in state court against diverse and non-diverse automobile dealer defendants alleging fraud and conspiracy based on the dealers' sale of service contracts for automobiles. *Id.* at 1355. The plaintiffs added class representatives who alleged fraud against diverse defendant Lowe's, a national retail company specializing in home improvement products, based on the sale of extended service contracts for retail products. *Id.* Lowe's removed the case to federal court arguing that because there was no connection between the putative class action against the automobile dealerships and the putative class action against Lowe's, the claims had been procedurally misjoined. *Id.* The trial court agreed and retained jurisdiction over the claims against Lowe's and remanded the claims against the automobile dealers. *Id.* On appeal, the Eleventh Circuit held that the automobile dealership claims and the home improvement retail store claims were not properly joined because they did not arise out of the same transaction, occurrence, or series of transactions or occurrences and did not involve a common question of law or fact under Federal Rule of Civil Procedure 20(a). *Id.* at 1360. In so holding, the Eleventh Circuit stated, "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempts to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

**\*3** Since the *Tapscott* decision, the Eleventh Circuit has had one other opportunity to analyze the procedural or fraudulent misjoinder doctrine. In *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1288-89 (11th Cir. 1998), the lead plaintiff brought a putative class action against a diverse automobile lessor and a non-diverse automobile dealership as well as other unnamed dealerships alleging that the dealerships had inflated the price of automobiles sold to the lessor, which then sold the automobiles at inflated prices to members of the plaintiff class. The *Triggs* court declined to bifurcate the plaintiff class and sever their claims because all of the members of the putative class had claims for relief which would impose joint liability upon defendants. *Id.* at 1289. The *Triggs* court held that *Tapscott* was distinguishable because in *Triggs*, there was "a real connection between the claims of the named plaintiff and the claims which defendants seek to bifurcate and sever." *Id.* at 1290.

Although the Seventh Circuit has yet to address whether it would adopt the fraudulent misjoinder doctrine, the Court finds *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000), a case notably decided after *Tapscott*, instructive. In *Garbie*, six plaintiffs filed an action in Illinois, seeking to represent a class of auto buyers and lessees whose vehicles had not been painted properly. Two of the plaintiffs were residents of Illinois, four were residents of Michigan. One of the defendants, Chrysler Corporation, which had its principal place of business in Michigan, sought to remove the case, arguing that the Michigan plaintiffs had been fraudulently joined. The Seventh Circuit disagreed, holding that "[r]emoval was unjustified under settled law." *Id.* In so doing, the *Garbie* court stated: "Four of the named plaintiffs hale from Michigan, so the litigants are not completely diverse. Even if the Michiganders were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." *Id.* (citing *Caterpillar*, 482 U.S. at 392). The *Garbie* court went on to emphasize that "[n]either § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal." *Id.*

Pointing to the reasoning in *Garbie*, numerous other district courts in this Circuit have refused to apply the *Tapscott* fraudulent misjoinder doctrine. *See, e.g., Evans v. Bristol-Myers Squibb Co.*, No. 12 C 5005, 2012 WL 4956460, at \*2 (N.D. Ill. Oct. 16, 2012) (rejecting fraudulent misjoinder doctrine and remanding case); *Reeves v. Pfizer*, 880 F. Supp. 2d 926, 928 (S.D. Ill. 2012) (same); *Davidson v. Bristol-Myers Squibb Co.*, No. 12-58-GPM, 2012 WL 1253165, at \*4 (S.D. Ill. Apr. 13, 2012) (same); *Boyer v. Bristol-Myers Squibb Co.*, No. 12-61-GPM, 2012 WL 1253177, at \*4 (S.D. Ill. Apr. 13, 2012) (same); *Anglin v. Bristol-Myers Squibb Co.*, No. 12-60-GPM, 2012 WL 1268143, at \*4 (S.D. Ill. Apr. 13, 2012) (same); *Wilson v. Pfizer, Inc.*, No. 11-1078-GPM, 2012 WL 1036824, at \*2 (S.D. Ill. Mar. 27, 2012) (same); *Tobias v. Merck Sharpe & Dohme Corp.*, No. 11–0982–DRH, 2012 WL 293511, at \*2 (S.D. Ill. Jan. 31, 2012) (same); *Aranda v. Walgreen Co.*, No. 11-cv-654-JPG-DGW, 2011 WL 3793648, at \*2 (S.D. Ill. Aug. 24, 2011) (same); *In re Yasmin*, 779 F. Supp. 2d 846, 847-48. (S.D. Ill. 2011) (same); *Anderson v. Bayer*, No. 09–988–GPM, 2010 WL 148633, at \*6 (S.D. Ill. Jan. 13, 2010) (same); *Sabo v. Dennis Techs., LLC*, No. 07-cv-283-DRH, 2007 WL 1958591, at \*8 (S.D. Ill. July 2, 2007); *Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at \*5 (N.D. Ill. Jan. 17, 2007); *Bavone v. Eli Lilly & Co.*, No. 06–cv153–GPM, 2006 WL 1096280, at \*1 (S.D. Ill. Apr. 25, 2006) (same); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842 (S.D. Ill. 2006) ("Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court.").

Creighton v. Bristol-Myers Squibb & Company, Not Reported in Fed. Supp. (2013)

2013 WL 12333214

 **\*4**  Like our sister courts, this Court also declines to follow *Tapscott* or apply the doctrine of procedural or fraudulent misjoinder. The Court is persuaded by the Court's thorough and detailed analysis of the doctrine and case law in *Rutherford* and its rejection of the doctrine. 428 F. Supp. 2d at 850-55. First, no Supreme Court authority indicates that joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court. *Id.* at 851 (citing *S. Ry. Co. v. Lloyd*, 239 U.S. 496, 500 (1916), and *Chi., Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915)). Second, federal courts have traditionally held that matters of state civil procedure have no bearing on whether federal subject matter jurisdiction exists in a given case. *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941), and *Chi., R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954)). Third, the doctrine violates the tenet that "the first virtue of any jurisdictional rule is clarity and ease of implementation." *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005). Indeed, as the Court in *Rutherford* recognized, *Tapscott* has created a morass of confusion surrounding the proper application of the doctrine, including whether state or federal joinder rules apply; whether egregious, less-than-egregious-but-more-than-ordinary, or ordinary misjoinder justifies severance of claims; and whether dismissal or remand of severed claims is appropriate. *See* E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 573-75 (2006).

That said, even if the Court were to follow *Tapscott* and apply the procedural or fraudulent misjoinder doctrine, which it does not, the Court would still remand these cases to state court. In contrast to *Tapscott* and similar to *Triggs* and *Garbie*, each Plaintiff here alleges that Defendants defectively designed and inadequately tested *Plavix* and failed to warn him or her about the dangers associated with its use. Such allegations regarding the improper design, manufacturing, and marketing of the drug are sufficient for joinder under the Fed. R. Civ. P. 20(a). *See In re Young*, Nos. 98 L 6684, 98 L 13465, 99 L 5628, 2001 WL 34136070, at \*20 (Ill. Cir. Ct. Jan. 17, 2001) (holding that joinder of multiple unrelated plaintiffs suing defendants that engaged in the practice of marketing and distributing handguns is proper); *see also Gorence v. Eagle Food Ctrs., Inc.*, No. 93 C 4862, 1996 WL 734955, at \*3 (N.D. Ill. Dec. 19, 1996) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (Under Rule 20(a), "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.")). Furthermore, each Plaintiff's claim gives rise to common questions of fact regarding Defendants' design, testing, and marketing of *Plavix*. Accordingly, even if the procedural or fraudulent misjoinder doctrine were to be adopted and applied, Plaintiffs' claims cannot be said to be misjoined under either 735 Ill. Comp. Stat. 5/2-404 or Federal Rule of Civil Procedure 20(a).

Having rejected the procedural or fraudulent misjoinder doctrine, the Court finds that complete diversity is lacking in each of the four cases before the Court. Accordingly, the Court need not reach the issue of whether the cases meet the amount-in-controversy requirement. Because jurisdiction is lacking, the Court remands these cases to state court.

## Conclusion

For the reasons provided in this Order, because diversity jurisdiction is lacking in each of these cases, the Court grants Plaintiffs' consolidated motion to remand in *Creighton* [33 in 13C629], *Jackson* [28 in 13C633], *Parks* [22 in 13C639], and *Tolbert* [27 in 13C647]. The Clerk of the Court is ordered to remand these cases forthwith to the Circuit Court of Cook County. To the extent that, in their brief in response to Plaintiffs' motion to remand, Defendants have requested to stay these actions pending transfer to the *Plavix* multi-district litigation, the Court denies Defendants' request as moot.

 **\*5**  **SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2013 WL 12333214

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3779315
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

James DENTON and Theresa Denton, Plaintiffs,
v.
UNIVERSAL AM–CAN, LTD.; Universal Truckload Services, Inc.; OMG, Inc.; RFX,
Inc.; David Lee Johnson; Louis Broadwell, LLC; and Michael Twardak, Defendants.

No. 12 C 3150.
|
Aug. 30, 2012.

## Attorneys and Law Firms

Christopher Thomas Theisen, Theisen And Roche, Ltd., Wheaton, IL, for Plaintiffs.

Carlton Dean Fisher, Cecilia Anne Horan, Hinshaw & Culbertson, Jennifer Ann Moriarty, Patrick Joseph Fanning, Grant & Fanning, Joseph John Wilson, Maisel & Associates, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

JOHN W. DARRAH, District Judge.

**\*1** On March 21, 2012, Plaintiffs James Denton and Theresa Denton filed a Complaint in Cook County Circuit Court against Universal Am–Can, Ltd. ("Universal Am–Can"); Universal Truckload Services, Inc. ("Universal Truckload"); OMG, Inc. ("OMG"); RFX, Inc. ("RFX"); David Johnson, Louis Broadwell, LLC ("Broadwell"); and Michael Twardak. Defendants filed a Notice of Removal on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(c). Before the Court is Plaintiffs' Motion to Remand.

## BACKGROUND

The factual allegations in the Complaint are accepted as true, and all reasonable inferences from those facts are drawn in favor of Plaintiffs in considering the Motion to Remand. *See Sheridan v. Flynn,* No. 03–cv–5170, 2003 WL 22282378, at \*3 (N.D.Ill. Sept.30, 2003).

On February 8, 2011, James Denton was traveling south bound on Interstate 65 at mile marker 225 in Demotte, Indiana. (Compl. ¶ 3.) Johnson, driving a semi-tractor trailer, rear-ended Denton and caused Denton to be injured. (*Id.* ¶ 6.) Johnson was driving with a suspended license. (*Id.*) Twardak was traveling south bound on Interstate 65 at mile marker 222 in Demotte, Indiana. (*Id.,* Count X ¶ 2.)[1] Twardak's failure to keep control of his vehicle at mile marker 222 proximately caused Denton's accident at mile marker 225. (*Id.* ¶ 7.)

James Denton is a resident of Illinois. (Compl.¶ 1.) Johnson is a resident of South Carolina. (*Id.* ¶ 2.) Twardak is a resident of Illinois. (*Id.,* Count X ¶ 2.)

Denton v. Universal Am-Can, Ltd., Not Reported in F.Supp.2d (2012)

2012 WL 3779315

Johnson operated the truck under the Department of Transportation number of Universal Am–Can. (*Id.* Count II ¶ 4.) Johnson was an agent of Universal Truckload and Broadwell. (*Id.* Count III ¶ 6, Count IV ¶ 6.) RFX and OMG entered into a joint venture with Universal Am–Can, Universal Truckload, Broadwell, and Johnson to transport roofing supplies. (*Id.,* Count VIII, ¶ 8.) Johnson operated the truck pursuant to this joint venture. (*Id.* ¶ 9.)

## LEGAL STANDARD

Defendants removed this case on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Section 1332 requires complete diversity between the parties plus an amount in controversy exceeding $75,000, exclusive of interest and costs. The removal statute, 28 U.S.C. § 1441, is construed narrowly and doubts concerning removal are resolved in favor of remand. *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). The removing party bears the burden of proving by a preponderance of the evidence that the elements of the Court's jurisdiction are met. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006). If the district court lacks subject-matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c).

## ANALYSIS

Plaintiffs' Complaint is silent on the citizenship of the corporate Defendants or Broadwell. Defendants' Notice of Removal states that Universal Am–Can is a Michigan corporation, Universal Truckload is a Michigan corporation, OMG is a Delaware corporation, RFX is a Massachusetts corporation, and Broadwell is a South Carolina LLC. (Dkt. No. 1 at 4–5.) [2] Plaintiffs do not dispute the citizenship of these parties.

**\*2** Plaintiffs assert three objections to Defendants' Notice of Removal: (1) lack of consent by all Defendants from whom consent was required at the time the Notice of Removal was filed; (2) the amount in controversy is not demonstrated in the pleadings to be higher than $75,000; and (3) the only Illinois Defendant was properly joined. In their reply, Plaintiffs effectively concede that the amount in controversy exceeds $75,000 because they fail to address Defendants' argument. Therefore, the argument is not addressed.

### Consent

28 U.S.C. § 1446(b)(2)(A) provides that, "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." A defendant has thirty days from the service of the summons to remove the case to federal court. 28 U.S.C. § 1446(b). "If the suit names multiple defendants, it may not be removed unless all the defendants consent to removal." *Save–A–Life Found., Inc. v. Heimlich,* 601 F.Supp.2d 1005, 1007 (N.D.Ill.2009) (*Heimlich* ); *see also Phoenix Container, L.P. v. Sokoloff,* 235 F.3d 352, 353 (7th Cir.2000) (joinder by all defendants in a notice of removal is an "essential step"). The Seventh Circuit has held:

> A petition for removal is deficient if not all defendants join in it. To 'join' a motion is to support it in writing. However, the requirement that all defendants join in the motion may not be necessary if, for example, the non-joining party had not yet been served. But all served defendants still have to support the petition in writing, i.e., sign it.

2012 WL 3779315

*Gossmeyer v. McDonald,* 128 F.3d 481, 489 (7th Cir.1997) (*Gossmeyer* ) (holding that removal notice was deficient because even though the removing defendant "noted that all properly served defendants agreed to the removal, ... not all of these defendants joined in the petition because not all of them signed it.").

Defendants Universal Am–Can, Universal Truckload, Broadwell, and Johnson (the "Moving Defendants") filed their original Notice of Removal on April 27, 2012. On May 5, 2012, Plaintiffs filed the Motion to Remand, arguing that OMG and RFX did not sign the removal petition. (Mot. at 3.) The Moving Defendants, in their original Notice of Removal, state that:

> Counsel for the removing defendants, [Universal Am–Can, Universal Truckload], Broadwell, and Johnson have contacted the two remaining properly-joined defendants, OMG, Inc. and RFX, Inc. for their consent to removal. Based on communications that the removing defendants' counsel have had with OMG and RFX, OMG and RFX have provided their consent to the removal of this action.

(Notice of Removal ¶ 31.) [3] However, OMG and RFX did not sign the removal petition. Thus, the Moving Defendants' original removal petition is deficient under *Gossmeyer*.

On May 23, 2012, Defendants filed an Amended Notice of Removal, attaching two exhibits to demonstrate OMG and RFX's consent. The Amended Notice of Removal is still only signed by the Moving Defendants' counsel. The Moving Defendants attach an e-mail, dated May 14, 2012, from Jim Morse, the CEO of RFX, to the Removing Defendants' counsel, stating, "Following up on our conversation, I had spoken with you on 4/9/12 and advised you of our consent to transfer the case." (Dkt. No. 8–1.) Another is an e-mail from RFX's counsel to removing Defendants' counsel, stating that she agrees to consent to removal and stating that she will sign the necessary consent form. (Dkt. No. 8–2.)

 **\*3** There are two problems with the Amended Notice of Removal. First, OMG and RFX still have not signed the removal petition. The exhibits now presented by Moving Defendants do not cure this deficiency. In *Holliday v. DMJ Mortg. Capital, Inc.,* No. 07–cv–3068, 2007 WL 3085897, at \*2–3 (C.D.Ill. Oct.19, 2007), two defendants (DLJ and Old Canal Financial Corp.) did not sign the original removal petition. Defendants presented a proposed amended notice of removal. DLJ provided a written notice of consent. As to Old Canal Financial Corp., the amended notice merely stated that defendant's counsel did not object to removal. The court held that the amended notice of removal was deficient: "In the instant case, Old Canal Financial Corp. has never indicated its consent to removal to the Court. [Old Canal's counsel's] e-mail was provided to counsel for Fisher & Shapiro, not to the Court. The e-mail is not sufficient to constitute official notice, and there is no indication as to [Old Canal's counsel's] authority to give consent on Old Canal's behalf." *Id.* at \*2. In *Bertrand v. Federal Pacific Elec. Co.,* No. 07–cv–3068, 2007 WL 2477373, at \*1 (E.D.Wis. Aug.29, 2007), the court addressed a similar situation and held that "[t]he provision of oral consent is clearly deficient under the law of this circuit, and a promise that procedural rules would eventually be fulfilled does not relieve the duty of [e]ach defendant [to] communicate his consent to the court by way of an official filing or voicing of consent in a timely fashion." *Id.* at \*2.

As these cases demonstrate, the Moving Defendants' Amended Notice of Removal is still deficient because OMG and RFX have not signed the amended removal petition. However, even if they had, the Amended Notice is deficient because it was filed past the 30–day period for filing a notice of removal under 28 U.S.C. § 1446(b). Defendants argue that when written consent is required of all defendants, they may correct an oversight in their original petition, even though the 30–day period for filing a notice of removal has passed. Defendants' reliance on *Heimlich* to support its position is misplaced. There, the court addressed whether a later-served defendant could obtain consent from an earlier-served defendant. *See Heimlich,* 601 F.Supp.2d at 1009 ("the Court concludes that each defendant in a case is entitled to remove an action from state to federal court, regardless of whether earlier-served defendants declined to do so, so long as all defendants consent to removal.").

2012 WL 3779315

Courts in this circuit have held that the failure to include a written consent in a removal petition may only be cured by filing the written consent *within* the 30–day time period. *See Boruff,* 2011 WL 1296675, at \*4; *Miller v. Federal Int'l, Inc.,* No. 09–cv–105, 2009 WL 535945, at \*1 (S.D.Ill. Mar.4, 2009); *Shedelbower v. Brinkman,* No. 08–cv–692, 2008 WL 4602469, at \*1 (S.D.Ill. Oct.16, 2008).

\*4  Because Defendants have failed to meet the consent requirements of 28 U.S.C. § 1446, Plaintiffs' Motion to Remand is granted on this basis. Moreover, as discussed below, Defendants' Notice of Removal is deficient for an additional reason.

### *Fraudulent Joinder*

Twardak is an Illinois resident; therefore, there is no complete diversity among the parties. *See Smart v. Local 702 Int'l Broth. of Elec. Workers,* 562 F.3d 798, 803 (7th Cir.2009) (holding that complete diversity means that "no plaintiff may be from the same state as any defendant."). Defendants argue that Twardak was fraudulently joined in order to defeat diversity jurisdiction.

Fraudulent joinder occurs when a nondiverse defendant is named as a party, but there is no reasonable possibility that a state court would rule against the nondiverse defendant. *Walton v. Bayer Corp. .,* 643 F.3d 994, 999 (7th Cir.2011) (*Walton* ). "The 'fraudulent joinder' doctrine ... permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction. *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 763 (7th Cir.2009) (*Schur* ) (emphasis added). Defendants are required to submit "proof that the claim against the nondiverse defendant is utterly groundless." *Walton,* 643 F.3d at 999.

Defendants argue that there is no possible causal connection between Twardak's negligence and Denton's injuries. In response, Plaintiffs argue that their Complaint demonstrates that Twardak's collision occurred at the same time as Denton's collision and occurred between mile marker 222 and 225, while Denton's collision occurred at mile marker 225. (Reply at 10.) In support of their argument, Defendants cite various cases, contending that courts have considered similar fact patterns and concluded there was no legal basis for asserting liability against a motorist like Twardak. (Resp. at 13–16.)

However, "[a] defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent, and some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur,* 577 F.3d at 764. Defendants have not satisfied their "heavy burden." Defendants have not submitted affidavits or other evidence to show that there is "no possibility that [Plaintiffs] can state a cause of action against nondiverse defendants in state court." *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir.1993); *Veugeler v. Gen. Motors Corp.,* No. 96 C 7278, 1997 WL 160749, at \*2 (N.D.Ill. Apr.2, 1997) (noting that in determining whether fraudulent joinder has occurred, the "limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case.") (internal citation omitted). Accordingly, Defendants have failed to establish complete diversity.

### CONCLUSION

\*5  For the reasons set forth above, Plaintiffs' Motion to Remand [5] is granted. This case is remanded to Cook County Circuit Court. Civil case terminated.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3779315

## Footnotes

1  Rather than consecutively numbering the paragraphs in their Complaint, Plaintiffs have restarted the numbering at each Count.

2  Twardak is an Illinois resident but, as discussed below, Defendants contend that he has been fraudulently joined as to defeat complete diversity.

3  There is no mention of Twardak in the Notice of Removal. However, Defendants argue that Twardak is fraudulently joined. Fraudulently joined parties need not join notices for removal. *See* *Boruff v. Transervice, Inc.,* No. 10–cv–322, 2011 WL 1296675, at *3 (N.D.Ind. Mar.30, 2011) (*Boruff* ).

End of Document                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3168408
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, N.D. California,
San Jose Division.

Jean Elise GREER, Plaintiff,

v.

LOCKHEED MARTIN, Esis Inc., and Does 1 through 20 inclusive, Defendants.

No. CV 10–1704 JF (HRL).
|
Aug. 10, 2010.

**Attorneys and Law Firms**

M. Alieu Iscandari, Lakeisha Kristina Poole, Iscandari & Associates, Oakland, CA, for Plaintiff.

Michael W. Foster, Emily R. Epstein, Foster Employment Law, Oakland, CA, for Defendants.

ORDER [1] **DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND TO REMAND ACTION TO STATE COURT**

JEREMY FOGEL, District Judge.

 *1  Plaintiff seeks leave to file a first amended complaint and to remand the instant action to the Santa Clara Superior Court for lack of diversity jurisdiction pursuant to 28 U.S.C. § 1332, et seq. (2006). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on July 16, 2010. For the reasons discussed below, the motion will be denied without prejudice.

## I. BACKGROUND

**A. Factual History**
Plaintiff Jean Elsie Greer ("Plaintiff") is a resident of Alameda County, California. (Pl.'s Am. Compl., ¶ 1.) Defendant Lockheed Martin Corporation ("Lockheed") is a Delaware corporation doing business in Santa Clara County, California. (Pl.'s Am. Compl., ¶ 2.) Defendant Enterprise Information Services ("EIS") is a Florida corporation also doing business in Santa Clara County, California (Pl.'s Am. Compl., ¶ 3); its principal place of business is Orlando, Florida. (Pl.'s Am. Compl., ¶ 3.)

Plaintiff began working for Lockheed in 1962. In 1991, Lockheed retained EIS as a subcontractor for the technical support tasks performed by Plaintiff and other employees in Plaintiff's department. (Pl.'s Am. Compl., ¶ 4.) From 1991 until Plaintiff's termination on April 7, 2009, Lockheed continued to pay Plaintiff's salary directly (Pl.'s Am. Compl., ¶¶ 4–6), and Plaintiff worked at Lockheed's Sunnyvale facility. (Pl.'s Am. Compl., ¶ 4.) At the time of her termination, Plaintiff was seventy-seven years old and was employed as a Computer Operator Specialist. (Pl.'s Am. Compl,. ¶¶ 5–6.) After being terminated, Plaintiff filed charges against Lockheed with the United States Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12100, et seq., and the Age Discrimination in Employment

2010 WL 3168408

Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (Def.'s Opp'n 1.) Plaintiff obtained a right-to-sue letter from the EEOC within a year of commencing the instant action in Santa Clara Superior Court on March 29, 2010. Defendants removed the action to this Court on April 21, 2010.

Plaintiff now seeks leave to amend her complaint to include three additional claims for relief and to add two individual defendants: Lee Bandettini and Jeanine Reed. (Reply 4.) Bandettini is a resident of the California who was and is employed as a manager at Lockheed's Sunnyvale facility. (Pl.'s Am. Compl., ¶ 8.) Bandettini was Plaintiff's manager from approximately 1994 until Plaintiff's termination on April 7, 2009. (Pl.'s Am. Compl., ¶ 8.) Reed also is a resident of the California. (Pl.'s Am. Compl., ¶ 9 .) Reed was Plaintiff's immediate supervisor from approximately 2006 until Plaintiff's termination. (Pl.'s Am. Compl., ¶ 9.) Reed directed Plaintiff's daily work activities. (Pl.'s Am., Compl., ¶ 9.)

Plaintiff alleges that from approximately 1994 until approximately 2006, she maintained a good working relationship with Bandettini and Reed. (Pl.'s Am. Compl., ¶ 13.) During this time, she received performance bonuses and satisfactory performance reviews and was rarely criticized. (Pl.'s Am. Compl., ¶¶ 13–14.) Plaintiff claims that at some point in or around late 2006, Bandettini and Reed began discriminating against and harassing her because of her age. (Pl.'s Am. Compl., ¶ 15.) Plaintiff claims that Bandettini repeatedly asked her when she would retire to "make way for younger people," (Pl.'s Am. Compl., ¶ 15), and that Bandettini began to make derogatory comments about Plaintiff's age, including references to Plaintiff in the presence of coworkers as "old" and "tired." (Pl.'s Am. Compl., ¶ 15.) Other employees of Lockheed and EIS allegedly made similar age-based comments. (Pl.'s Am. Compl., ¶ 15.) Plaintiff alleges that she complained about the discriminatory treatment and harassment to both Lockheed and EIS throughout 2006, but that to her knowledge Defendants never conducted an investigation, nor did they reprimand any employees for their actions. (Pl.'s Am. Compl., ¶¶ 15–16.)

**\*2** On January 11, 2007, Plaintiff fell on a damaged raised tile located in the back room area of Lockheed's Sunnyvale facility. (Pl .'s Am. Compl., ¶ 18.) The fall caused Plaintiff to tear ligaments in her left leg. (*Id.*) Bandettini and Reed were notified of Plaintiff's injury later that day. (Pl.'s Am. Compl., ¶ 19.) The following day, Plaintiff received medical treatment for her injuries and did not come to work. (Pl.'s Am. Compl., ¶ 20.) On Saturday, January 13, 2007, Bandettini called Plaintiff and threatened to terminate her if she did not return to work by the following Tuesday. (Pl.'s Am. Compl., ¶ 21.) Because she could not come to work and feared that she would be terminated, Plaintiff called Cynthia McShan, Human Resources Manager for Lockheed and EIS, and explained her medical condition. (Pl.'s Am. Compl., ¶ 21.) McShan informed Plaintiff that she did not have to report to work the following Tuesday as demanded by Bandettini. (Pl.'s Am. Compl., ¶ 21.) The following week, Plaintiff sought legal representation. (Pl.'s Am. Compl., ¶ 21.)

After Plaintiff's then-counsel contacted Lockheed and EIS regarding Plaintiff's injuries, Plaintiff went on disability leave. (Pl.'s Am. Compl., ¶ 22.) Plaintiff remained on disability leave from January 2007 to March 2007. (Pl.'s Am. Compl., ¶ 22.) Plaintiff alleges that when she returned from disability leave, Bandettini and Reed once again harassed and discriminated against her. (Pl.'s Am. Compl., ¶ 23.) She claims that both Bandettini and Reed asked her regularly about retirement (Pl.'s Am. Compl., ¶ 25), continued to make harassing comments about her in the presence of her coworkers (Pl.'s Am. Compl., ¶ 26), and that although the accident in January 2007 had left her with a physical disability, made no efforts to accommodate her. (Pl.'s Am. Compl., ¶ 27.) Instead, Bandettini and Reed assigned Plaintiff additional manual work for which Plaintiff did not have primary responsibility. (Pl.'s Am. Compl., ¶ 27.) Plaintiff alleges that Reed repeatedly threatened to terminate her and insisted that she deliver heavy stock items to internal clients. (Pl.'s Am. Compl., ¶ 29.)

In March 2008, Bandettini told Plaintiff to go back on disability leave. (Pl.'s Am. Compl., ¶ 33.) On or about March 11, 2008, Lee Saigon, an employee of EIS, told Plaintiff that Bandettini was at her cubicle and was going to terminate her employment. (Pl.'s Am. Compl., ¶ 33.) After escorting Plaintiff to his office, Bandettini and an unidentified Human Resources employee told Plaintiff that she had to go on leave and leave the premises. (Pl.'s Am. Compl., ¶ 33.) Bandettini attempted to make Plaintiff sign a letter taking disability leave, which she refused to do. (Pl.'s Am. Compl., ¶ 33.) After her legal counsel intervened, Plaintiff was allowed to continue to work. (Pl.'s Am. Compl., ¶ 33.)

2010 WL 3168408

Plaintiff alleges that prior to her termination on April 7, 2009, Defendants changed the classifications of two other employees who worked in her department, and that the classifications of these employees were higher than her own. (Pl.'s Am. Compl., ¶ 35.) Both employees are younger than Plaintiff. (Pl.'s Am. Compl., ¶ 35.) On April 7, 2009, Plaintiff was told that she was being laid off because of re-organization. (Pl.'s Am. Compl., ¶ 36.; Def.'s Opp'n 1.) After the termination, Reed told Plaintiff that she was fortunate to have been selected for termination because she could "enjoy the last years of her life." (Pl.'s Am. Compl., ¶ 37.) Plaintiff alleges that she was the only employee in her department who was terminated. (Pl.'s Am. Compl., ¶ 36.) Plaintiff also alleges that the two younger employees took over her job duties following her termination. (Pl.'s Am. Compl., ¶ 39.)

## II. DISCUSSION

### A. Legal Standard

**\*3** Federal courts are courts of limited jurisdiction. That jurisdiction includes civil actions between "citizens of different States" in which the amount in controversy exceeds $75,000. 28 U.S .C. § 1332(a)(1) (2006). Any moving party asserting diversity jurisdiction bears the burden of showing that diversity exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In this case, the Court has jurisdiction only if citizenship of all Defendants is diverse from the citizenship of Plaintiff. *See Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 88, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (stating that diversity jurisdiction requires "complete diversity of citizenship"). Similarly, when an action has been removed from state court to federal court under 28 U.S.C. § 1441, there is an equally "strong presumption" against removal jurisdiction, unless the defendant can establish that removal was proper. *Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir.1992). Any such doubt as to removability must be resolved in favor of remand. *Id.*

There is an exception to the requirement of complete diversity in cases of fraudulent joinder. *See Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001) (citing *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)). A plaintiff cannot defeat diversity jurisdiction simply by joining a non-diverse defendant. *McCabe,* 811 F.2d at 1339 ("fraudulent joinder is a term of art"). In order to prove fraudulent joinder, the defendant must show that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious, according to the settled rules of the state." *Mercado v. Allstate Ins. Co.,* 340 F.3d 824, 826 (9th Cir.2003) (citing *McCabe,* 811 F.2d at 1339); *see also Kruso v. International Telephone & Telegraph Corp.,* 872 F.3d 1416, 1426 (9th Cir.1989); *Maffei v. Allstate Cal. Ins. Co.,* 412 F.Supp.2d 1049, 1053 (E.D.Cal.2006) ( "Joinder of a defendant is fraudulent if the defendant cannot be liable to the plaintiff on *any* theory alleged in the complaint." (emphasis added)). The court may go outside the pleadings, and the defendant may present facts showing the joinder is fraudulent. *See Ritchy v. Upjohn Drug. Co.,* 139 F.3d 1313, 1318 (9th Cir.1998). However, there is "a heavy burden on the defendant as fraudulent joinder must be proven by clear and convincing evidence and all disputed questions of fact and all ambiguities in the controlling law are to be resolved in the plaintiff's favor." *Leung v. Sumitomo Corp. of Am.,* No. 09–5825 SI, 2010 U.S. Dist LEXIS 29039, at \*6, 2010 WL 816642 (N.D.Cal. Mar. 9, 2010).

Plaintiff contends that the instant motion is governed by Fed. R. Civ. Pro. 15(a), which requires that leave to amend pleadings be given freely. (Reply 4.) Lockheed argues that because the addition of Bandettini and Reed would destroy diversity, the appropriate standard in the present context is set forth in 28 U.S.C. § 1447(e). (Defs.' Opp'n 3 (quoting *Bakshi v. Bayer Healthcare, LLC,* No. C07–00881 CW, 2007 U.S. Dist. LEXIS 33801, \*4, 2007 WL 1232049 (N.D.Cal.2007) ("[A] district court must scrutinize a proposed diversity-destroying amendment to ensure that it is proper; in other words, 28 U.S.C. § 1447(e) applies and the logic and policy of Rule 15(a) do not apply.")).) Lockheed contends specifically that Plaintiff's post-removal amendment under Rule 15(a) is an impermissible attempt to destroy complete diversity by adding two California citizens as defendants.

**\*4** Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, other courts in this district have recognized that "the permissive amendment under Rule 15(a) does not apply when a plaintiff amends her complaint after removal to add a diversity destroying defendant." *Chan v. Bucephalus Alternative Energy Group, LLC,* No. C 08–04537, 2009 WL 1108744, at

*3 (N.D.Cal.2009) (citing *Bakshi v. Bayer Healthcare, LLC,* No. C07–00881 CW, 2007 WL 1232049, at *2 (N.D.Cal.2007)); *see also Clinco v. Roberts,* 41 F.Supp.2d 1080, 1086–87 (C.D.Cal.1999) ("To apply the permissive standard of Rule 15(a) in this situation would allow a plaintiff to improperly manipulate the forum of an action."). Thus, when a plaintiff amends her complaint after removal to add a diversity-destroying defendant, this Court will scrutinize the amendment pursuant to 28 U.S.C. § 1447(e). *Chan,* 2009 WL 1108744, at *3.

Under 28 U.S.C. § 1447(e), "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court *may* deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). The Ninth Circuit has recognized that the "permissive terms" of § 1447(e) grant the district court discretion when determining whether to permit joinder that will destroy diversity jurisdiction. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 691 (9th Cir.1998); *see also Chan,* 2009 WL 1108744, at *3 ("Whether to permit an amendment that will destroy diversity jurisdiction remains in the sound discretion of the court."). Courts in this district generally consider five factors when determining whether to allow joinder under § 1447(e): (1) whether the party sought to be joined is needed for just adjudication and would be joined under Fed. R. Civ. Proc. 19(a); (2) whether the statute of limitations would prevent the filing of a new action against the new defendant in state court; (3) whether there has been an unexplained delay in seeking to join the new defendant; (4) whether plaintiff seeks to join the new party solely to defeat federal jurisdiction; and (5) the strength of the claims against the new defendant. *Id.* (citing *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.,* 125 F.Supp.2d 1008, 1011 (N.D.Cal.2000)); *see also Clinco,* 41 F.Supp.2d at 1082.

**1. Whether Joinder of Bandettini and Reed Is Necessary for "Just Adjudication"**

A necessary party under Rule 19(a) is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *IBC Aviation Servs. Inc.,* 125 F.Supp.2d at 1011 (quoting *CP Nat'l. Corp. v. Bonneville Power Admin.,* 928 F.2d 905, 912 (9th Cir.1991)). The necessary party standard is met when "failure to join will lead to separate and redundant actions." *Id.* "Although courts consider whether a party would meet Fed. R. Civ. Proc. 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19." *Id.* at 1011–12 (citing *Trotman v. United Parcel Service,* No. C–96–1168–VRW, 1996 WL 428333, at *1 (N.D.Cal.1996)). Moreover, "Congress gave the courts broad discretion to allow joinder, even though remand may result." *Chan,* 2009 WL 1108744, at *3 (citing *Righetti v. Shell Oil Co.,* 711 F.Supp. 531, 535 (N.D.Cal.1989)). Thus, courts generally have held that the first factor "favors joinder and remand 'when failure to join will lead to separate and redundant actions,' but not when 'defendants are only tangentially related to the cause of action or would not prevent complete relief.' " *Chan,* 2009 WL 1108744, at *3 (quoting *Boon v. Allstate Ins. Co.,* 229 F.Supp.2d 1016, 1022 (C.D.Cal.2002)).

*5 In *IBC Aviation Servs., Inc.,* the plaintiff brought a claim in the superior court, alleging breach of contract and other related torts. *IBC Aviation Servs., Inc.,* 125 F.Supp.2d at 1009. The defendant removed the case to the district court pursuant to 28 U.S.C. § 1332(a)(2). *Id.* Thereafter, the plaintiff moved for leave to amend its complaint to add a non-diverse individual defendant—the vice-president of one of the corporate defendants—to the action. *Id.* at 1009–10. Because the added defendant was "the principal person responsible for the acts underlying [the plaintiff's] claim," the court found that the diversity-destroying amendment was proper. *Id.* at 1012. The court reasoned that "disallowing the amendment would hinder [the plaintiff] from asserting its rights against an employee directly involved in the alleged breach of the Cargo Handling Agreement and related causes of action." *Id.*

Here, Lockheed claims that joinder of Bandettini and Reed is unnecessary for just adjudication. (Defs.' Opp'n 7.) It argues that Bandettini and Reed "are not related to *eleven* of the fourteen causes of action at all because those claims can only be made against an employer: claims for failure to provide reasonable accommodation under the FEHA, to engage in the interactive process under the FEHA, or to take corrective action to prevent discrimination under the FEHA; tree wrongful termination claims, and four wage and hour claims." (Defs.' Opp'n 6 (emphasis in original) .) Plaintiff asserts, however, that Bandettini and Reed not only were "active participants in the harassment based on age and harassment based on disability" but also were "the primary actors involved in Plaintiff's intentional infliction of emotional distress claims." (Reply 5.)

Plaintiff's proposed first amended complaint alleges that Bandettini and Reed "discriminated against Plaintiff on the basis of her age, harassed Plaintiff on the basis of her age, and terminated Plaintiff's employment because of her age in violation of the California Fair Employment and Housing Act." (Pl.'s Am. Compl. ¶ 42.) As in *IBC Aviation Servs., Inc.,* the named individual defendants are alleged to have been the principal actors on behalf of the employer, and their conduct is the primary basis for Plaintiff's first, second, and fourteenth claims for relief. Their alleged actions also bear more than a tangential relationship to several of Plaintiff's other claims. The Court concludes that they properly could be joined under Rule 19(a), and that their joinder is necessary for just adjudication of at least some of Plaintiff's claims.

### 2. Statute of Limitations

California Government Code § 12960 provides that a charge of wrongful termination must be filed with the Department of Employment and Housing ("DFEH") within "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." Cal. Gov.Code § 12960. Lockheed contends that because Plaintiff did not file a charge with the DFEH within this period, her claims against Bandettini and Reed are barred by the statute of limitations .[2] (Defs.' Opp'n 7.)

**\*6** Plaintiff acknowledges that she did not file a timely charge with the DFEH that names Bandettini or Reed. (Reply 6.) However, she contends that her failure to file such a charge resulted from an error made on the part of the EEOC's Oakland, California office. *Id.* She claims that she did file a timely charge against Bandettini and Reed with the EEOC, but that the EEOC erroneously notified the corresponding state agency in Florida rather than the DFEH. Plaintiff's counsel represents that she is in the process of seeking relief from this error.

### 3. Timeliness of the Amendment

When determining whether to allow an amendment to add a non-diverse party, "courts consider whether amendment was attempted in a timely fashion." *Chan,* 2009 WL 1108744, at *5 (finding amendment occurring approximately seven weeks after the filing of the original complaint timely); *see also Clinco,* 41 F.Supp.2d at 1083 (finding amendment occurring approximately six weeks after the filing of the original complaint timely).

Plaintiff filed the instant motion approximately seven weeks after Defendant removed the instant action to federal court. (Defs.' Opp'n 9.) The motion is timely.

### 4. Motive for Joinder

Courts in this district have recognized that "the motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." *Chan,* 2009 WL 1108744, at *5 (citing *Clinco,* 41 F.Supp.2d at 1083). Thus, "a trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Id.*

Lockheed contends that Plaintiff's motive in seeking joinder of Bandettini and Reed is "simply a transparent attempt to defeat diversity jurisdiction." (Defs.' Opp'n 9.) It argues that Plaintiff's motion should be denied because "Plaintiff cannot maintain either FEHA cause of action as she has failed to exhaust her administrative remedies [by filing any FEHA claims against Defendants Lockheed, Bandettini, and Reed] and the intentional infliction of emotional distress claim is preempted by worker's compensation law." (Defs.' Opp'n 10.) On the present state of the record, the Court agrees with Defendants. However, should Plaintiff obtain relief from the administrative agency, the analysis would favor Plaintiff.

### 5. Strength of the Claims

Under § 1447(e), "courts consider whether the claims against the new party sought to be added seem meritorious." *Chan,* WL 1108744, at *5 (citing *Clinco,* 41 F.Supp.2d at 1083). The primary inquiry is "whether a new claim sought to be added seems to have merit. *Goodman v. Travelers Ins. Co.,* 561 F.Supp. 1111, 1113–14 (N.D.Cal.1983). For instance, in *Chan,* the plaintiff, a

potential investor, filed a motion to join an individual non-diverse defendant and remand an action for breach of oral contract, fraud, and conversion. *Chan,* 2009 WL 1108744, at *1. Joinder of the non-diverse defendant destroyed diversity. *Id.* The court found that claims against the individual non-diverse defendant were meritorious because the claims were "potentially valid" under California law. *Id.* at *6.

**\*7** Here, as in *Chan,* Plaintiff's claims against Bandettini and Reed are potentially meritorious. Although Plaintiff has failed to exhaust her administrative remedies, it appears that Plaintiff yet may be able to do so in light of the alleged administrative error on the part of the EEOC. Because Plaintiff alleges conduct by Bandettini and Reed that arguably falls outside the scope of their duties as her supervisors, Plaintiff's first and second claims for relief are at least "potentially valid" under California law. *See id.*

### III. CONCLUSION

Because Plaintiff has failed to exhaust her administrative remedies, the instant motion for leave to file a first amended complaint and remand to state court will be denied without prejudice. Should Plaintiff obtain a right-to-sue letter with respect to Bandettini and Reed, counsel shall notify the Court and Defendants forthwith.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3168408

### Footnotes

1       This disposition is not designated for publication in the official reports.
2       Lockheed points out that because Plaintiff's employment was terminated on April 7, 2009, she was required to file her administrative charge against Bandettini and Reed not later than April 7, 2010.

**End of Document**                                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1596826
Only the Westlaw citation is currently available.
United States District Court,
S.D. Illinois.

Paul HAUCK, Plaintiff,

v.

CONOCOPHILLIPS COMPANY, a corporation, et al., Defendants.

Civil No. 06–135–GPM.
|
June 6, 2006.

**Attorneys and Law Firms**

Ben L. Beyers, II, Bilbrey & Hylla, Edwardsville, IL, for Plaintiff.

Michael Patrick Murphy, Burroughs, Hepler et al.—Edwardsville, Michael Reda, Burroughs, Hepler et al., Edwardsville, IL, Kenneth M. Burke, Brown & James—Belleville, Belleville, IL, for Defendants.

*MEMORANDUM AND ORDER*

MURPHY, Chief District Judge.

**\*1** This matter is before the Court on the "Motion to Remand, and Award Attorney Fees" brought by Plaintiff Paul Hauck (Doc. 15). For the following reasons, the motion is **GRANTED in part and DENIED in part.** The Court **GRANTS** remand of this case to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction; the Court **DENIES** an award of attorney fees pursuant to 28 U.S.C. § 1447(c).

*INTRODUCTION*

Plaintiff brings this action for personal injuries he allegedly suffered while a business invitee at a refinery owned and operated by Defendant ConocoPhillips Company ("ConocoPhillips") in Hartford, Illinois, on December 17, 2003. *See* Complaint ("Compl .") ¶¶ 3–1 1.[1] Plaintiff alleges that on that date he drove a tanker truck to the refinery to pick up a load of odorized mineral spirits ("OMS"). *See id.* ¶¶ 4–5. While walking on a loading dock at the refinery, Plaintiff slipped and fell, breaking his wrist. *See id.* ¶ 4, ¶ 6, ¶ 7, ¶ 11. Plaintiff alleges that the accident was caused by inadequate lighting on the loading dock, together with a defective fuel-loading system that caused the loading dock to become oily and slippery. *See id.* ¶ 4, ¶ 7, ¶ 10. Plaintiff alleges that at the time of the accident maintenance and safety on the loading dock were the responsibility of Defendant Washington Group International, Inc. ("WGI"), by whom Defendant William Blechinger was employed at the time as safety manager at the refinery. *See id.* ¶¶ 12–17, ¶¶ 18–22.

Plaintiff filed this action originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois. Thereafter the action was removed to this Court by Defendant WGI and Defendant Blechinger, with the timely consent of Defendant ConocoPhillips. Defendants WGI and Blechinger contend that the latter has been fraudulently joined to defeat federal diversity jurisdiction because Plaintiff has no possibility of establishing a claim for relief against Blechinger under Illinois law.[2] Plaintiff has moved for remand of this action to state court for lack of subject matter jurisdiction.

Hauck v. ConocoPhillips Co., Not Reported in F.Supp.2d (2006)

2006 WL 1596826

*DISCUSSION*

### A. Legal Standard

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441. *See also* *Rubel v. Pfizer Inc.,* 361 F.3d 1016, 1017 (7th Cir.2004); *Littleton v. Shelter Ins. Co.,* No. 99–912–GPM, 2000 WL 356408, at *1 (S.D.Ill. Mar. 9, 2000). The party seeking removal has the burden of establishing federal jurisdiction. *See* *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id.* Put another way, there is a strong presumption in favor of remand. *See* *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976).

**\*2** In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See* *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999). A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir.1993). A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992).

### B. Plaintiff's Motion for Remand

#### 1. Possibility of Establishing a Claim for Relief under Illinois Law

WGI's asserted grounds for fraudulent joinder in this case are premised on the familiar rule of agency law that an agent's breach of a duty to his or her principal, that is, a nonfeasance, is not ipso facto a breach of a duty to third persons, that is, a misfeasance, unless the agent owes a duty to an injured third person. In *Adkins v. Chicago, Rock Island & Pacific Railroad Co.,* 274 N.E.2d 507 (Ill.App.Ct.1971), the court set out the traditional rule as follows: "The agent is ... personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general ..., liable to third persons for his own nonfeasances or omissions of duty, in the course of his employment. His liability, in these latter cases, is solely to his principal." *Id.* at 512. WGI argues that, because the conduct by William Blechinger complained of in this case comprises only a breach of Blechinger's duty to WGI, his principal, Blechinger has been fraudulently joined to defeat diversity. The Court disagrees.

The controlling principle of law in this instance is that "[a] person is not absolved of personal liability to a third person on account of his negligence or other wrongful act merely because at the time he was acting as an employee within the scope of his employment." 17 Illinois Law and Practice *Employment* § 256 (collecting cases). *See also* *Joseph J. Legat Architects, P.C. v. U.S. Development Corp.,* 625 F.Supp. 293, 300 (N.D.Ill.1985) (applying Illinois law). Further, the negligence of an employee in the scope and course of employment is imputed to his or her employer. *See* *Ferrari v. Brannock,* 270 N.E.2d 281, 285 (Ill.App.Ct.1971) ("The negligence of the servant is imputable to the master where it was committed within the scope of the employment contract."); *Watson v. Taylor,* 256 N.E.2d 474, 474 (Ill.App.Ct.1970) ("As a general rule an injured party must seek his redress from the person who caused the injury. A recognized exception to the general rule is applicable where the person causing the injury is an agent or servant in which event his misconduct may be imputed to the principal or master."). In this instance, the clear import of the allegations of Plaintiff's complaint is that Blechinger, as safety manager at the refinery where Plaintiff was injured, was negligent in discharging his duties, with the proximate result that Plaintiff was injured.

**\*3** The Court's conclusion that Blechinger can be liable to Plaintiff is bolstered by Restatement (Second) of Agency § 352 (1958), which has been adopted in Illinois, *see* *Cahill v. Eastern Benefit Sys., Inc.,* 603 N.E.2d 788, 793 (Ill.App.Ct.1992); *People v. Community Hosp. of Evanston,* 545 N.E.2d 226, 234 (Ill.App.Ct.1989); *Bescor, Inc. v. Chicago Title & Trust Co.,* 446 N.E.2d 1209, 1212–13 (Ill.App.Ct.1983), and which is cited approvingly in WGI's brief in opposition to Plaintiff's motion for

remand. Section 352 of the Restatement says, "An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things." Restatement (Second) of Agency § 352. Importantly, the commentary to section 352 explains, "[I]f the principal who is under a duty to keep property in repair ... entrusts the repair to an agent and the agent fails to make the repairs, as a result of which a third person is harmed by the defective condition, the agent should be subject to liability to the third person[.]" *Id.* reporter's notes.

The commentary to section 352 of the Restatement instructs that "if the agent promises or knowingly causes a third person to believe, that he will perform his duty to the principal and thereafter fails to perform, he should be liable under the circumstances just stated." Restatement (Second) of Agency § 352 reporter's notes. Significantly, "[t]his promise need not be express but can be inferred in many situations, as where the agent has continuously performed duties, knowing that other persons are relying upon his continued performance." *Id.* The commentary goes on to say that "the agent may be liable to third persons even though the principal is not liable to them and even though there has been no reliance by the third person upon the performance by the agent." *Id.* The commentary offers a useful illustration:

> The defendant, a railroad servant, agrees to guard a railroad crossing to prevent harm to pedestrians. By undertaking this he creates a danger to pedestrians if he does not do what he promised his principal to do. If the railroad is under a duty to guard the crossing, it is clear that the only faulty person in the undertaking is the crossing tender and that the railroad is liable in such a case because of the crossing tender's default. To make the railroad responsible without making the crossing tender liable would seem obviously unjust.... But even if the railroad is under no duty to guard the crossing, the crossing tender should be responsible to the injured traveler for failure to perform his duty, since but for his assumption of a duty and his subsequent failure, it may be rationally assumed that a more faithful employee would have prevented the harm to the plaintiff.

**\*4** *Id. See also* Restatement (Second) of Agency § 354 cmt. a, illus. 1. In sum, "where physical harm to the person or tangible things of another is caused[,] ... the agent may become personally responsible for his failures in performing his undertaking to the principal." Restatement (Second) of Agency § 352 reporter's notes. [3]

In this instance, Plaintiff alleges that WGI entrusted responsibility for safety at the ConocoPhillips refinery in Hartford, Illinois, to William Blechinger. Plaintiff's allegations support an inference that third persons, like Plaintiff, would rely on Blechinger to perform his duty. Plaintiff alleges further that Blechinger failed to perform his duty, proximately resulting in injury to Plaintiff. These allegations are adequate to assert a claim for relief against Blechinger under Illinois law, thus defeating WGI's contention that Blechinger has been fraudulently joined. *See* Riddle v. Merck & Co., Civil No. 06–172–GPM, 2006 WL 1064070, at *2 (S.D.Ill. Apr. 21, 2006); *Rabe v. Merck & Co.,* No. Civ. 05–363–GPM, Civ. 05–378–GPM, 2005 WL 2094741, at *2 (S.D.Ill. Aug. 25, 2005). *See also* Katonah v. USAir, Inc., 876 F.Supp. 984, 987 (N.D.Ill.1995) (to withstand a claim of fraudulent joinder, "Plaintiffs need only plead a cause of action which might survive a motion to dismiss in the state court."). *Cf.* Benincasa v. Flight Sys. Auto. Group, L.L.C., 242 F.Supp.2d 529, 535 (N.D.Ohio 2002) ("Under the doctrine of fraudulent joinder, the inquiry is whether there is at least a colorable claim against the non-diverse parties in state court.").

The Court agrees with WGI that, in all likelihood, Plaintiff's allegations against Blechinger could be pleaded with greater specificity. However, it is the burden of a defendant claiming fraudulent joinder to prove it by "put[ting] forward evidence that would negate a possibility of liability on the part of" a non-diverse defendant, not by "simply pointing to the plaintiff's lack of evidence" to show federal jurisdiction, *Travis v. Irby,* 326 F.3d 644, 650–51 (5th Cir.2003), and this affirmative proof of fraudulent joinder must be clear and convincing. *See* Voors v. National Women's Health Org., Inc., 611 F.Supp. 203, 208 (N.D.Ind .1985). *See also* Grassi v. Ciba–Geigy, Ltd., 894 F.2d 181, 186 (5th Cir.1990); *Brooks v. Paulk & Cope, Inc.,* 176

Hauck v. ConocoPhillips Co., Not Reported in F.Supp.2d (2006)

2006 WL 1596826

F.Supp.2d 1270, 1274 (M.D.Ala.2001); *Willis v. Life Ins. Co. of Ga.,* No. Civ.A. 400CV323PB, 2001 WL 34403088, at *4 (N.D.Miss. May 31, 2001). A defendant's stringent burden of proof in establishing a claim of fraudulent joinder is not met merely by pointing to supposed defects in a plaintiff's pleading. *See Duffin v. Honeywell Int'l, Inc.,* 312 F.Supp.2d 869, 871 (N.D.Miss.2004) (a removing defendant cannot allege vague and inconclusive pleadings as a basis for finding that plaintiffs have no claim against non-diverse defendants); *Rosamond v. Garlock Sealing Techs., Inc.,* No. 3:03CV235, 2004 WL 943924, at *2 (N.D.Miss. Apr. 5, 2004) (the fact that a plaintiff's complaint makes "vague and conclusory allegations" does not mean defendants have demonstrated fraudulent joinder). "The burden of establishing fraudulent joinder is a heavy one, resting with the out-of-state defendant seeking to remove the cause to federal court." *County of Cook v. Mellon Stuart Co.,* 812 F.Supp. 793, 796 (N.D.Ill.1992) (citing *Poulos,* 959 F.2d at 73). The Court does not shift the burden of proof on a claim of fraudulent joinder to plaintiffs.

### 2. Piercing the Pleadings

**\*5** "In evaluating a claim of fraudulent joinder a court may in some circumstances 'pierce the pleadings.' " *Rutherford v. Merck & Co.,* Civil. No. 06–159–GPM, 2006 WL 1064071, at *4 (S.D.Ill. Apr. 21, 2006) (quoting *CC Indus., Inc. v. ING/ ReliaStar Life Ins. Co.,* No. 03 C 2075, 2003 WL 21360905, at *3 (N.D. Ill. June 11, 2003)). *See also Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir.1995) ("[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."). "[T]his ... is a strictly circumscribed inquiry limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law." *Rutherford,* 2006 WL 1064071, at *4.[4]

WGI urges the Court to pierce the pleadings in evaluating its claim of fraudulent joinder, pointing to various items of summary judgment-type evidence in the record, including an affidavit by William Blechinger which states, in pertinent part,

On or about December 17, 2003, Washington Group International, Inc. was not performing work at the OMS loading facility in Hartford, Illinois.

\* \* \* \*

On or about December 17, 2003, I was not present at the OMS loading facility in Hartford, Illinois referred to in plaintiff's complaint.

\* \* \* \*

In December of 2003 my normal work hours were from 7:30 a.m. until 3:30 p.m. and I would not have been present at the scene of plaintiff's alleged accident.

Doc. 10, Ex. 1. Also before the Court is an accident report apparently prepared by ConocoPhillips which shows that on December 17, 2003, Plaintiff was injured at approximately 5:30 a.m., outside Blechinger's regular hours of work. *See id.,* Ex. 3. Finally, WGI points to an affidavit by James Brummett, a safety manager for the company, who attests:

The OMS loading facility referred to in plaintiff's Complaint is not owned, operated or maintained by Washington Group International, Inc. and was not owned, operated or maintained by Washington Group International, Inc. in December of 2003 at the time of plaintiff's alleged accident.

\* \* \* \*

Washington Group International, Inc. performs construction maintenance under contract with ConocoPhillips, Inc. At or near the time of plaintiff's alleged accident, Washington Group International, Inc. was engaged in performing turnaround work at the Hartford distilling unit and coker facility inside the plant proper and was not working at or near the OMS loading facility referred to in plaintiff's Complaint.

*Id.,* Ex. 2.

The fact that Blechinger likely was not on the premises of the refinery when Plaintiff was injured does not seem to the Court to be dispositive of whether Plaintiff could establish a claim for relief against the diversity-defeating Defendant in state court. Plaintiff has alleged that his fall was caused by "a defective scully system, leaking fueling arm, defective access box, broken scully light, by-passed scully light, inadequate lighting, improperly hung loading arm, defective gasket on fueling arm, and hole in the scully bucket and other defects in the fueling hose and nozzle which [led] to the ... oily and slippery area on the OMS loading dock." Compl. ¶ 4. These defective conditions of the premises are extensive and serious and obviously did not arise overnight. In other words, if true, Plaintiff's allegations suggest conditions that had been in place a sufficiently long time before Plaintiff's injury occurred so that a reasonable safety manager could have or should have known about them. *See Kocot v. Alliance Mach. Co., 651 F.Supp. 226, 227 (S.D.Ill.1986)* (in evaluating a claim of fraudulent joinder, a court must construe all of a plaintiff's factual allegations in the light most favorable to the plaintiff). *See also Augustine v. Target Corp., 259 F.Supp.2d 919, 922 (E.D.Mo.2003)* (a plaintiff in a slip-and-fall case suing a non-resident store sufficiently alleged a resident store manager's personal negligence under Missouri law; the plaintiff alleged that the manager was responsible for maintaining the store's parking lot, that he knew or should have known of a dangerous sewer grate where the plaintiff's injury occurred, and that he had negligently failed to repair it or warn customers of the danger).

**\*6** As to whether WGI was or was not performing work at the OMS loading facility when Plaintiff was injured, as William Blechinger has attested WGI was not, or whether at that time the facility was or was not owned, operated, or maintained by WGI, as James Brummett has attested it was not, this clearly is not a matter the Court can decide on a claim of fraudulent joinder to defeat diversity jurisdiction. The Court cannot resolve the liability of WGI, a diverse Defendant, in addressing whether Blechinger, a non-diverse Defendant, has been fraudulently joined. The Court, relying upon binding precedent of the Supreme Court of the United States, has held that a claim of fraudulent joinder that "indicate[s] that the plaintiff's case [is] ill-founded as to all the defendants" is one which "manifestly [goes] to the merits of the action as an entirety, and not to the joinder" and is "not such as to require the state court to surrender its jurisdiction." *Simmons v. Norfolk S. Ry. Co., 324 F.Supp.2d 914, 917 (S.D.Ill.2004)* (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 153–54 (1914)*). [5] *See also Rutherford, 2006 WL 1064071, at \*6* ("[T]he Court expresses considerable skepticism about whether the learned intermediary doctrine is a proper basis for a claim of fraudulent joinder ..., given that the defense implicates issues about foreseeability and causation germane to the liability of both [the removing defendant] and the diversity-defeating defendants.").

For the Court to hold that Blechinger cannot be liable to Plaintiff because WGI was not in fact performing work at the OMS loading facility in Hartford, Illinois, at the time Plaintiff was injured would of course establish the law of the case as to WGI's liability, requiring the Court to enter judgment for WGI at a later stage in these proceedings. *See Messinger v. Anderson, 225 U.S. 436, 444 (1912)* (explaining that "the law of the case ... as applied to the effect of previous orders on the later action of the court rendering them in the same case ... expresses the practice of courts generally to refuse to reopen what has been decided[.]"); *Moore v. Anderson, 222 F.3d 280, 284 (7th Cir.2000)* ("Under the law of the case doctrine, ... when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."). *See also Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir.2004)* (explaining that, when a finding of fraudulent joinder will have law-of-the-case effect as to the liability of diverse defendants, the "jurisdictional" issue is in fact an attack on the merits of a plaintiff's claim that must be resolved in state court). Perhaps more to the point, were the Court at a later stage in this case to hold that WGI in fact owned, operated, or maintained the facility where Plaintiff was injured, this in turn would require the Court to revisit a ruling that Blechinger was fraudulently joined because of WGI's lack of control over the facility. *See McKee v. Kansas City S. Ry. Co., 358 F.3d 329, 335–37 (5th Cir.2004)* (in a case arising from a car-train collision, reversing a finding of fraudulent joinder as to the non-diverse train crew on the grounds that the crew had not been negligent where the trial court later denied summary judgment as to the negligence of the railroad, the liability of which depended of course upon that of the crew).

Hauck v. ConocoPhillips Co., Not Reported in F.Supp.2d (2006)

2006 WL 1596826

**\*7** WGI and ConocoPhillips, relying upon *Boone v. Citigroup, Inc.,* 416 F.3d 382 (5th Cir.2005), and *Rainwater v. Lamar Life Insurance Co.,* 391 F.3d 636 (5th Cir.2004), insist that the Court is free to resolve the liability of WGI in deciding whether Blechinger is fraudulently joined. They argue that a district court can make rulings dispositive as to the liability of diverse defendants in resolving a claim of fraudulent joinder provided the court leaves standing at least one claim for relief asserted solely against a diverse defendant. *See Boone,* 416 F.3d at 390–91; *Rainwater,* 391 F.3d at 638. It is true that under Supreme Court precedent a claim of fraudulent joinder is improper if "it indicate[s] that the plaintiff's case [is] ill founded as to *all* the defendants." *Cockrell,* 232 U.S. at 153 (emphasis added). However, the Court does not believe that the correct interpretation of this language from *Cockrell* is that the Court is at liberty to make rulings dispositive of the liability of both WGI and Blechinger in deciding whether Blechinger has been fraudulently joined merely because, having done so, Plaintiff's claim against ConocoPhillips will remain unscathed. Therefore, the Court respectfully declines to follow *Boone* and *Rainwater. See Bavone v. Eli Lilly & Co.,* Civil No. 06–153–GPM, 2006 WL 1096280, at *3 (S.D.Ill. Apr. 25, 2006).

Under the reasoning of *Boone* and *Rainwater,* the Court is free to adjudicate the merits of Plaintiff's "case" against both WGI and Blechinger in ruling on fraudulent joinder, so long as the Court does not decide the liability of "all" Defendants in this action. This position fundamentally misapprehends what is meant by a "case." A plaintiff's "case" is not all of the claims for relief asserted in a complaint. Instead, a "case" is *any* claim for relief asserted in a complaint, although modern rules of civil procedure permit a plaintiff to join freely in a single complaint numerous claims for relief that arise from a common nexus of operative fact. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966) (construing FED. R. CIV. P. 20). Thus, a claim of fraudulent joinder that challenges the merits of even one of a plaintiff's claims for relief asserted in a single complaint is improper. "In no case can the right of removal be established by a petition to remove which amounts simply to a traverse of the facts alleged in plaintiff's petition, and in that way undertaking to try the merits of a cause of action, good upon its face." *Simmons,* 324 F.Supp.2d at 916 (quoting *Southern Ry. Co. v. Lloyd,* 239 U .S. 496, 500 (1916)).[6] A "cause of action" is of course the "group of operative facts giving rise to one or more bases for suing" or, differently put, "a factual situation that entitles one person to obtain a remedy in court from another person." Black's Law Dictionary (8th ed.2004). It is the common-law ancestor of the modern "claim for relief." FED. R. CIV. P. 8(a). *See also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 1998 & Supp.2005). In other words, allegations of fraudulent joinder are improper if they attack the merits of any of a plaintiff's claims for relief.

**\*8** Moreover, the argument that a claim of fraudulent joinder that resolves the merits of fewer than all of the claims of relief asserted in a complaint is not supported by Supreme Court precedent. In *Illinois Central Railroad Co. v. Sheegog,* 215 U.S. 308 (1909), the Court addressed a claim of fraudulent joinder in a wrongful death suit. In *Sheegog* the estate of a railroad engineer killed in a train derailment accident brought suit for negligence in state court against the Illinois Central Railroad Company ("Illinois Central"), the engineer's employer. *See id.* at 315. Also named as defendants were the Chicago, St. Louis, and New Orleans Railroad Company, from which Illinois Central leased the track where the derailment occurred, and the conductor of the train on which the engineer was working when he was killed. *See id.* The Court detailed the plaintiff's allegations as follows:

> It was alleged that through the negligence of [the defendant railroad companies] the roadbed, track, etc., were in an improper condition; that through the negligence of the Illinois Central the engine and cars were in an improper condition; and that the death was due to these causes acting jointly, the negligence of the Illinois Central in permitting its engine, cars, and road to be operated while in such condition, and the negligence of the conductor in ordering and directing the management of the train.

*Id.* Illinois Central sought to remove the case to federal court in diversity jurisdiction, contending that the lessor railroad and the conductor, both of whom defeated diversity, had been fraudulently joined. According to the Court, "the petition [for removal] alleged that the plaintiff had joined [the lessor railroad and the conductor] as defendants solely for the purpose of preventing the removal." *Id.* The petition for removal "admitted the lease [between Illinois Central and the lessor railroad], and averred

2006 WL 1596826

that [Illinois Central] operated the road exclusively, and alone employed the deceased. It went on to allege that the charge of joint negligence against the lessor and lessee in causing the wreck, as stated, was made only for the above purpose, and was fraudulent and knowingly false." *Id.*

The Court concluded that, because the applicable substantive law in the case held a lessor to be jointly liable for injury caused by a lessee, Illinois Central had failed to show fraudulent joinder. "If the legal effect of the declaration in this case is that [Illinois Central] was guilty of certain acts and omissions by reason of which a joint liability was imposed upon it and its lessor, the joinder could not be fraudulent in a legal sense on any ground except that the charge against the alleged immediate wrongdoer, [Illinois Central], was fraudulent and false." *Sheegog*, 215 U.S. at 316. [7] Importantly, the Court noted that the plaintiff's claim against the conductor likely was barred by the "fellow-servant" rule, the common-law doctrine that an employer is not liable for an employee's injuries caused by a negligent co-worker, although the Court did not decide the issue because, having concluded the plaintiff had not fraudulently joined the lessor railroad, there was no need to do so. *See id.* at 317. *See also* 30 C.J.S. *Employers' Liability* § 167 (1955 & Supp.2005) (discussing the fellow-servant rule). The point is significant because it shows that the Court's decision in *Sheegog* did not turn on whether the removing defendant's allegations of fraudulent joinder would have resolved the plaintiff's claims against all or fewer than all of the defendants in the case; the plaintiff likely had no claim, under the fellow-servant rule, against the diversity-defeating co-employee.

**\*9** This Court's conclusion that the claim of fraudulent joinder in this case is improper is supported also by *In re New England Mutual Life Insurance Co. Sales Practices Litigation*, 324 F.Supp.2d 288 (D.Mass.2004). In *New England Mutual* a removing defendant argued that alleging fraudulent joinder on grounds dispositive of the liability of both diverse and non-diverse defendants did not violate the strictures on fraudulent joinder set out by the Supreme Court in *Cockrell*, provided resolution of the allegations of fraudulent joinder left untouched certain claims asserted only against the removing defendant. *See* 324 F.Supp.2d at 305–06. The *New England Mutual* court disagreed. The court observed that "these circumstances are similar to, but not exactly the same as, the circumstances under which *Cockrell* precludes a finding of fraudulent joinder. The arguments offered to prove fraudulent joinder do not show that *no case* can be made against the diverse defendant." *Id.* (emphasis in original). However, the court concluded, "the difference is irrelevant":

> The Court in *Cockrell* concluded that fraudulent joinder does not exist when an argument offered to prove fraudulent joinder of non-diverse defendants simultaneously shows that no case can be made against the diverse defendants. The explanation for this conclusion was that such an argument "does not engender or compel the conclusion that the [non-diverse defendants] were wrongfully brought into a controversy which did not concern them." Stated differently, if an argument offered to prove fraudulent joinder of non-diverse defendants also shows that no case exists against the diverse defendants, no legitimate reasons exist to set apart the non-diverse defendants as fraudulently joined.

*Id.* at 306 (quoting *Cockrell*, 232 U.S. at 153). The *New England Mutual* court said, "The concerns that underlie Cockrell also apply to arguments offered to prove fraudulent joinder that simultaneously show that *some claims* against the diverse defendant or defendants must fail." *Id.* (emphasis in original). "Such arguments do not engender or compel the conclusion that the non-diverse defendants were wrongfully brought into a controversy that did not concern them. They do not offer a legitimate reason to set apart the non-diverse defendants as fraudulently joined." *Id.*

It is this Court's view that, in every case in which a federal court is asked to find fraudulent joinder on grounds dispositive of the liability of diverse and non-diverse defendants alike, the court is being asked to exercise jurisdiction it does not possess. Where "[t]here is nothing more than a traverse of the cause of action .... the plaintiff has a right of action under the law of the state and to insist upon [a non-diverse defendant's] presence as a real defendant." *Simmons*, 324 F.Supp.2d at 916 (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915)). To find that William Blechinger cannot be liable to Plaintiff because WGI was not in control of the loading dock where Plaintiff was injured at the time of the accident giving rise to this case is simply a traverse of Plaintiff's claims against both WGI and Blechinger, not an inquiry into subject matter jurisdiction. Moreover, the Court notes that any resolution of Blechinger's liability necessarily operates to discharge the liability of WGI as well because, as has been discussed, the liability of WGI in this case is, at least in part, derivative of that of its agent. *See Jenkins v. Union Nat'l Life Ins. Co.*, No. Civ.A. 4:03CV0034–P–B, 2004 WL 555250, at \*2 (N.D.Miss. Mar. 15, 2004) (refusing to find

2006 WL 1596826

fraudulent joinder as to agents of the removing defendants based on a defense of the statute of limitations common to both the agents and the diverse defendants: "[I]f the Court deems that the statute of limitations has run against the resident defendants, then the statute of limitations has also run against the non-resident defendants given that the claims against the latter are tied to those of the former."); *Polk v. Lifescan, Inc.*, No. Civ.A. 4:03CV020–P–B, 2003 WL 22938056, at *3 (N.D.Miss. Sept. 22, 2003)* (noting that in cases removed on the basis of alleged fraudulent joinder in which the liability of the removing defendant is derivative of the liability of a non-diverse defendant, "a ruling on the claims against the local-agent defendant necessarily involves a decision on the merits of the claims against the diverse principal defendant given *respondeat superior* doctrine."). The Court concludes that this case is due to be remanded to state court.

### C. Costs and Expenses under 28 U.S.C. § 1447(c)

**\*10** Plaintiff requests an award of costs and expenses pursuant to 28 U.S.C. § 1447, which provides, in pertinent part, "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 126 S.Ct. 704 (2005), the Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 711. The Court concludes in its discretion that an award pursuant to section 1447(c) is not appropriate in this case. There is no evidence here that this case was removed for the purpose of prolonging litigation or increasing Plaintiff's costs in prosecuting the case. Although the Court ultimately found unpersuasive the arguments and evidence offered in support of removal, the removal was not objectively unreasonable. *See Orbitz, LLC v. Worldspan, L.P.*, No. 05 C 5972, 2006 WL 903251, at *3 (N.D.Ill. Apr. 3, 2006); *Impact Gel Corp. v. Rodeen*, No. 05–C–223–C, 2005 WL 3555422, at *2 (W.D.Wis. Dec. 27, 2005). Therefore, an award of costs and expenses, including attorney fees, will be denied.

*CONCLUSION*

For the foregoing reasons, Plaintiff's "Motion to Remand, and Award Attorney Fees" (Doc. 15) is **GRANTED in part and DENIED in part.** The Court **GRANTS** remand of this case to state court for lack of federal subject matter jurisdiction; the Court **DENIES** an award of attorney fees pursuant to 28 U.S.C. § 1447(c). Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1596826

### Footnotes

1   Plaintiff's complaint alleges in at least one place that the subject refinery is located in Roxana, Illinois. *See* Compl. ¶ 3. The Court judicially notices that Hartford, Illinois, and Roxana, Illinois, are towns in Madison County, Illinois, that are situated closely adjacent to one another, so that it is possible the refinery is partly located in both towns. *See* FED. R. EVID. 201; *United States v. Bello*, 194 F.3d 18, 23 (1 [st] Cir.1999); *United States v. Luck*, 560 F.Supp. 258, 271–72 (N.D.Ga.1983). The parties seem to be in agreement that the refinery is located in Hartford.

2   The record shows that, for diversity purposes, Plaintiff is a citizen of Illinois, while Defendant ConocoPhillips is a citizen of Delaware and Texas, Defendant WGI is a citizen of Ohio and Idaho, and Defendant William Blechinger is

a citizen of Illinois. The Court notes that the parties do not dispute that an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006). *See also Andrews v. E.I. Du Pont De Nemours & Co.,* No. 04–2882, 2006 WL 1191518, at *3 (7th Cir. May 5, 2006) (the amount in controversy in a truck driver's action against a shipper for negligently loading a truck, allegedly resulting in an accident, was at least $75,000, as required for the exercise of diversity jurisdiction, where the truck driver's complaint sought damages "in excess of $50,000," the driver alleged "severe and permanent" injuries resulting from the accident, discussion with the driver's counsel led the shipper to believe that the driver's medical and rehabilitation expenses alone would exceed $75,000, and the driver did not challenge the shipper's estimate of his potential damage).

3   It should be noted that, under the Restatement, "an agent is not liable to a third person for undertaking and later failing to perform a duty to the principal to pay money or otherwise deal with the purely economic interests of such person, in the absence of a promise made for his benefit," Restatement (Second) of Agency § 352 reporter's notes, a rule with which Illinois law is in accord. *See Cahill,* 603 N.E.2d at 793 (quoting Restatement (Second) of Agency § 352) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed."); *Community Hosp. of Evanston,* 545 N.E.2d at 233–34 (a hospital director failed to state a claim against a bank for implied indemnification for breach of fiduciary duty based upon the law of agency in connection with a suit by the Illinois Attorney General against the director and the bank for alleged mishandling and dissipation of a restricted endowment fund donated to the hospital where the bank's role under an advisory agreement between the bank and the hospital was to act as an agent of the hospital, and there was nothing in the agreement to show that the bank's duty was also to protect individual members of the board of directors from personal liability for malfeasance); *Bescor, Inc.,* 446 N.E.2d at 1212–13 (a pleading in an action by a subcontractor against a construction loan escrowee, alleging that the escrowee had failed to exercise the highest degree of care in accordance with authority extended by a project owner, with the result that a disbursement was made to one not authorized to receive it, failed to state a cause of action in negligence, in that it did not allege facts establishing a duty owing from the escrowee to the subcontractor, as apart from a duty owing from the escrowee to the owner). Of course the injuries at issue in this case are not purely economic.

4   Importantly, a removing defendant's submission of summary evidence in support of a claim of fraudulent joinder does not impose on a plaintiff a burden to submit summary evidence of his or her own to disprove fraudulent joinder. *See Phillips Petroleum Co. v. AIG Tech. Servs., Inc.,* 99 F.Supp.2d 787, 791 (S.D.Tex.2000) (although plaintiffs, on a motion to remand, could have submitted affidavits and deposition transcripts in order to rebut a removing defendant's allegation of fraudulent joinder, the plaintiffs were not required to do so and could rely on allegations verified by their attorney); *Rogers v. Modern Woodmen of Am.,* No. CIV.A.1:97CV10–D–D, 1997 WL 206757, at *2 (N.D.Miss. Apr. 10, 1997) ("While not required to do so, plaintiffs may submit affidavits and deposition transcripts to supplement the factual allegations in their complaint."). Although a court may utilize a "summary judgment-like procedure for disposing of fraudulent joinder claims," *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990), this procedure is not to be confused with summary judgment. A party asserting federal jurisdiction bears the burden of proving that a case is properly in federal court and may not "be relieved of his burden by any formal procedure," *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189 (1936), just as a federal court in resolving a claim of fraudulent joinder is required to construe both the facts and the law in the light most favorable to the plaintiff. *See Rutherford,* 2006 WL 1064071, at *4 (quoting *Valentine v. Ford Motor Co.,* No. 2:03–CV–090–JDT–WGH, 2003 WL 23220758, at *4 (S.D.Ind. Nov. 21, 2003)) (explaining that "[t]he test for fraudulent joinder ... is a less searching test than the test under Rule 12(b)(6) ... of the Federal Rules of Civil Procedure[.]").

5   Until 1948 defendants effected removal by petitioning the state court in which an action was pending for leave to remove the action to federal court. *See generally* 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice & Procedure Deskbook* § 42 (2002). This is why in *Cockrell* the Supreme Court spoke of the state court refusing to "surrender" its jurisdiction.

6   *Lloyd* antedates of course the adoption of the Federal Rules of Civil Procedure. In common-law pleading when a defendant denied a plaintiff's allegations this was termed a "traverse" of those allegations. *See McGann v. Kelly,* 891 F.Supp. 128, 131 n. 1 (S .D.N.Y.1995).

7   In common-law pleading, a declaration was "[t]he plaintiff's first pleading in a civil action.... Today ... in most American jurisdictions, it is called a petition or complaint." Black's Law Dictionary. *See also* Jonathan M. Gutoff, *Original*

2006 WL 1596826

*Understandings and the Private Law Origins of the Federal Admiralty Jurisdiction: A Reply to Professor Casto,* 30 J. Mar. L. & Com. 361, 389 n. 120 (1999).

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:21-cv-00135 Document #: 193 Filed: 10/20/21 Page 52 of 66 PageID #:3855
J.T. Associates, LLC v. Fairfield Development, L.P., Not Reported in Fed. Supp. (2016)

2016 WL 1252612

2016 WL 1252612
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

J.T. ASSOCIATES, LLC, Plaintiff,

v.

FAIRFIELD DEVELOPMENT, L.P., et al., Defendants.

Case No. 15-cv-04913-BLF
|
Signed 03/31/2016

**Attorneys and Law Firms**

Daniel Joseph Marsh, Ronald J. Cook, Willoughby, Stuart, Bening & Cook, San Jose, CA, for Plaintiff.

Joshua Nathan Kastan, Tara S. Nayak, Stephen P. Ellingson, Hayes, Scott, Bonino, Ellingson & McLay, LLP, Redwood City, CA, Stephen M. Hayes, Hayes, Scott, Bonino, Ellingson & McLay, LLP, Redwood Shores, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO SEVER AND REMAND

[Re: ECF 9, 12]

BETH LABSON FREEMAN, United States District Judge

**\*1** Plaintiff, a California citizen, brought this action in state court to sue Fairfield Development, L.P., Fairfield Investment Co., and Fairfield Residential Co. ("Fairfield Defendants"), also California citizens, for property damage and Hartford Casualty Insurance Company ("Hartford"), a citizen of Indiana, for improper denial of insurance coverage. *See* First Amended Compl. ("FAC"), ECF 1-1. Hartford removed this action to federal court on the basis of diversity, contending that Plaintiff "procedurally misjoined" Fairfield Defendants and that they should therefore be disregarded for purposes of diversity. *See* Notice of Removal ¶¶ 8-12, ECF 1.

Hartford now moves to sever Plaintiff's claims against Fairfield Defendants and remand those claims back to state court. Def.'s Mot., ECF 9. Plaintiff, in turn, moves to remand the entire case back to state court, arguing that Hartford improperly removed the case and that the Court therefore lacks jurisdiction over it. Pl.'s Mot., ECF 12. The Court has considered both motions and, for the reasons set forth below, GRANTS Plaintiff's motion and DENIES Hartford's motion.

## I. BACKGROUND

Plaintiff alleges the following. On or around August 1, 2012, Fairfield Defendants were engaged in construction—excavation, building, and development—on the property directly adjacent to Plaintiff's property. FAC at 4, ECF 1-1. Through this construction, Fairfield Defendants damaged Plaintiff's property such that Plaintiff lost use of it. *Id.*

Plaintiff then filed a first-party insurance claim with Hartford on the basis of a policy it had with Hartford, which began on or about October 11, 2011 and insures Plaintiff's building for $7,564,400.00. *Id.* at 5. By letter dated September 8, 2014, Plaintiff explained to Hartford why coverage should be extended. *Id.* By letter dated September 23, 2014, Hartford refused to provide

2016 WL 1252612

coverage. *Id.* Plaintiff sent a second letter, dated September 29, 2014, again explaining why coverage was warranted. *Id.* As of September 11, 2015, Hartford continued to deny coverage. *Id.*

On June 15, 2015, Plaintiff filed suit against Defendants in Santa Clara Superior Court alleging negligence against the Fairfield Defendants and breach of contract and bad faith against Hartford. *See* Notice of Removal ¶ 1. Plaintiff amended its complaint in state court on September 11, 2015. *Id.* Hartford removed this action to federal court on October 26, 2015 pursuant to 28 U.S.C. §§ 1441 and 1332 based on diversity jurisdiction between Plaintiff and Hartford only. *Id* ¶¶ 6-12. Hartford requested that the Court disregard the citizenship of the Fairfield Defendants because they had been procedurally misjoined. *Id* ¶¶ 8-12.

Hartford now moves to sever and remand Plaintiff's claims against Fairfield, ECF 9, while Plaintiff moves to remand the entire action, which it asserts was improperly removed for lack of diversity, back to state court, ECF 12.

## II. LEGAL STANDARD

A defendant may remove a state court action to federal court if the action could have been brought there originally. 28 U.S.C. § 1441(b). Removal may be proper on the basis of complete diversity of citizenship between the plaintiffs and defendants and where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). The removing defendant must also obtain consent of all defendants, with the exception of nominal parties, in addition to the requirements of diversity. 28 U.S.C. § 1446(b); *see also Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-1233 (9th Cir. 1986). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

 **\*2** In considering whether removal was proper, the federal court must strictly construe the removal statute. *See Watson v. Gish*, No. C 10-03770 SBA, 2011 WL 2160924, at \*2 (N.D. Cal. June 1, 2011) (quoting *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)). "The presumption against removal means that the defendant always has the burden of establishing that removal is proper." *Id.* (quoting *Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)). "[A]ny doubts regarding the proprietary of the removal favor remanding a case." *Id.*

## III. DISCUSSION

The parties do not dispute the lack of complete diversity in this case, nor do they dispute the fact that Plaintiff's claims against Fairfield Defendants must be remanded back to state court. What they do dispute is the proper place for Plaintiff's claims against Hartford. Hartford argues that those claims belong before this Court because Plaintiff "procedurally misjoined" Fairfield Defendants. Plaintiff, on the other hand, argues that the entirety of this case belongs in state court because the Court lacks jurisdiction over it.

In seeking to sever and remand the claims against Fairfield Defendants back to state court, Hartford asks this Court to apply the doctrine of "procedural misjoinder," a doctrine developed by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp* and not adopted by the Ninth Circuit.

Under this doctrine, a federal court may exercise jurisdiction over a diverse defendant where that defendant "is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Watson v. Gish*, No. C 10-03770 SBA, 2011 WL 2160924, at \*3 (N.D. Cal. June 1, 2011) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996)). Pursuant to *Tapscott*, the doctrine applies if: (1) one defendant has been misjoined with another defendant in violation of the applicable joinder rules; and (2) the misjoinder is sufficiently egregious to rise to the level of a fraudulent misjoinder. *Tapscott*, 77 F. 3d at 1360. The Eleventh Circuit has explained that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id. at 1360*.

Under Ninth Circuit law, the doctrine of fraudulent joinder—rather than procedural misjoinder—provides an exception to the diversity requirement. *See Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Morris v. Princess*

Case: 1:21-cv-00135 Document #: 193 Filed: 10/20/21 Page 54 of 66 PageID #:3857

J.T. Associates, LLC v. Fairfield Development, L.P., Not Reported in Fed. Supp. (2016)

2016 WL 1252612

*Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)). "Joinder is fraudulent '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' " *Id.* (quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).

While acknowledging that the Ninth Circuit has not adopted the procedural misjoinder doctrine, Hartford offers three district court opinions within the Ninth Circuit—not one of which comes from this district—that have adopted and applied the doctrine. Def.'s Mot. 2-3, ECF 9. *See Sutton v. Davol Inc.*, 251 F.R.D. 500, 504 (E.D. Cal. 2008) (remanding medical malpractice claims against a nondiverse doctor and hospital but retaining jurisdiction over products liability claims against diverse medical device manufacturers and developers); *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004) (remanding claims against a non-diverse doctor and sales representatives but retaining jurisdiction over a defendant drug manufacturer and its affiliates); *Anglada v. Bank of Am. Corp.*, No. 3:11-CV-00524-RCJ, 2011 WL 5196710, at *4 (D. Nev. Oct. 27, 2011) (remanding one of the four plaintiffs' claims against a lender that no other plaintiff had challenged). On the basis of these cases, as well as a Fifth Circuit opinion, Hartford urges this Court to sever and remand the claims against the Fairfield Defendants.

**\*3** Plaintiff argues against the adoption of the procedural misjoinder doctrine [1] because its application here would be inconsistent with the removal statute, 28 U.S.C. § 1441(b), which requires narrow construction and the requirement that any doubts be resolved in favor of remand. Pl.'s Mot. at 7, ECF 12. Plaintiff further argues that Hartford's reliance on the procedural misjoinder doctrine is misguided because the Ninth Circuit has clearly not adopted the doctrine, and, contrary to Hartford's contentions, district courts have not widely applied and accepted it. Pl.'s Opp. at 3, ECF 20. Plaintiff urges the Court to remand the action in its entirety back to state court.

Plaintiff counters Hartford's contention that procedural misjoinder has been widely applied by directing the Court to several decisions in this district that have declined to apply the doctrine. Pl.'s Opp. 3, ECF 20. *See Jurin v. Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014) ("The Ninth Circuit 'has not adopted, approved, nor applied,' the theory of fraudulent misjoinder upon which Transamerica relies."); *see Lopez v. Pfeffer*, No. 13-CV-03341 NC, 2013 WL 5367723, at *2 (N.D. Cal. Sept. 25, 2013) ("The Ninth Circuit has not adopted the *Tapscott* rationale, nor has any other court in our district adopted the fraudulent misjoinder theory."); *see Caouette v. Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL 3283858, at *6 (N.D. Cal. Aug. 10, 2012) ("other than the Eleventh and Fifth Circuits, no other circuit court has adopted the fraudulent misjoinder doctrine"); *see also Early*, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013) ("the doctrine of procedural or fraudulent misjoinder is a recent and unwarranted expansion of jurisdiction, one which the Court is not inclined to adopt").

Having reviewed the relevant caselaw, the Court agrees with Plaintiff. "The reasons against the doctrine are many and persuasive." *Thee Sombrero, Inc. v. Murphy*, No. EDCV1501004VAPSPX, 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015). It is well established that § 1441 must be narrowly construed and that any doubts must be resolved in favor of remand. "Fraudulent misjoinder flips this maxim on its head by making cases removable that by § 1441's plain terms should not be." *Early v. Northrop Grumman Corp.*, No. 2:13-CV-3130-ODW MRW, 2013 WL 3872218, at *3 (C.D. Cal. July 24, 2013). Procedural misjoinder would require the Court to sever non-diverse defendants under Federal Rule of Civil Procedure 20, but, Rule 20 "presumes the Court has jurisdiction to act." *Thee Sombrero*, 2015 WL 4399631, at *4. "It makes little sense for a court first to sever part of the case under Rule 20, "and only then find it has jurisdiction." *Id.*

Additionally, courts have recognized the "need for simple and precise jurisdictional rules to spare judges and lawyers from wasted time and resources," and that "enormous judicial confusion" has followed in the ten years since *Tapscott* was decided. *Id.* at *5 ("confusion is not likely to abate after further development" because determining proper joinder is highly discretionary). Applying procedural misjoinder here would contravene judicial efficiency.

Thus, Hartford has failed to meet its burden to show that removal was proper. [2] Hartford fails to offer any Ninth Circuit or even Northern District authority in support of its position. Of the district court opinions Hartford does offer, both *Sutton* and *Greene* acknowledge the uncertainty surrounding the applicability of procedural misjoinder in the Ninth Circuit. *See Sutton*, 251 F.R.D.

Case: 1:21-cv-00135 Document #: 193 Filed: 10/20/21 Page 55 of 66 PageID #:3858
J.T. Associates, LLC v. Fairfield Development, L.P., Not Reported in Fed. Supp. (2016)
2016 WL 1252612

at 504; *see Greene*, 344 F. Supp. 2d at 684–685. "This uncertainty is another reason not to adopt [procedural] misjoinder without proper guidance." *Thee Sombrero*, 2015 WL 4399631, at *4 n.5.

**\*4** Furthermore, the facts of *Sutton*, *Greene*, and *Anglada* differ too greatly from those at issue here to provide even persuasive authority. For example, *Sutton* considered a complex, multidistrict products liability case that was pending transfer to a multidistrict litigation. The court retained jurisdiction over the diverse defendants in order to "preserv[e] the removing Defendants' right to removal in the remaining multidistrict action and [ ] preserv[e] the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Sutton*, 251 F.R.D. at 505. Such considerations are not present in this case. And even where they have been present, courts in this district have refused to apply the procedural misjoinder doctrine. *See Lopez v. Pfeffer*, No. 13-CV-03341 NC, 2013 WL 5367723, at *2 (N.D. Cal. Sept. 25, 2013) (declining to apply *Tapscott* and finding lack of subject matter jurisdiction in medical products liability case that was pending transfer to the Judicial Panel on Multidistrict Litigation).

Therefore, it would be "inappropriate to apply the novel theory of fraudulent misjoinder, especially considering the requirement that federal jurisdiction 'must be rejected if there is any doubt as to the right of removal in the first instance.' " *Jurin*, 2014 WL 4364901, * 4 (quoting *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)). Thus, construing removal under § 1441 narrowly and resolving any doubts in favor of remand, the Court declines to apply the procedural misjoinder doctrine. The Court therefore finds that removal was improper and that the Court lacks subject matter jurisdiction over this case.[3]

Accordingly, the Court GRANTS Plaintiff's motion to remand the action back to state court and DENIES Hartford's motion to sever and remand Plaintiff's claims as to Fairfield.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1252612

## Footnotes

[1] The Court notes that Plaintiff uses the phrase *fraudulent misjoinder* to reference the doctrine. For consistency, the Court uses *procedural misjoinder*.

[2] Hartford makes two additional arguments that the Court finds irrelevant to its analysis: first, that procedural misjoinder should apply because Plaintiff would not suffer prejudice due to severance, Def.'s Mot. 10, ECF 9, and second that Hartford would lose its right to removal in state court due to the voluntary-involuntary rule, Def.'s Mot. 4, ECF 9. The Court finds both arguments unpersuasive. A finding of prejudice to one of the parties is irrelevant and entirely separate from the analysis of subject matter jurisdiction. *See Thee Sombrero*, 2015 WL 4399631, at *5 ("District courts, [ ] should not expand jurisdictional rules on equitable grounds."). Moreover, it is unclear whether the voluntary-involuntary rule would prevent Hartford from removing its case should the state court sever Plaintiff's claims against it from the rest of the case. Under the rule, only a voluntary act by a plaintiff makes the case removable based on diversity. *Id.* at *5 n.5. However, the applicability of procedural misjoinder is an independent analysis. "The reasons against adopting [procedural] misjoinder stand whether or not the voluntary-involuntary rule precludes removal after severance." *Id.*

[3] The parties devote a substantial amount of briefing to what the outcome would be if the Court chose to apply procedural misjoinder. Though the Court need not reach this issue, it finds that, even if it chose to adopt the Eleventh Circuit's doctrine, it would not alter the outcome on these motions. Hartford argues that Plaintiff has impermissibly attempted to join claims against Hartford with separate and discrete claims against unrelated non-diverse defendants because the

**J.T. Associates, LLC v. Fairfield Development, L.P., Not Reported in Fed. Supp. (2016)**

2016 WL 1252612

claims neither arise out of the same transaction or occurrence nor do they involve common questions of law or fact. Def.'s Mot. 9, ECF 9. Plaintiff argues that the common fact between all Defendants is determination of the cause of damage to Plaintiff's building. Pl.'s Opp. 6, ECF 20.

The Court agrees with Plaintiff. Hartford ignores the likelihood that review of its grounds for denial of coverage will be impacted by a finding of what caused damage to Plaintiff's building, which is also central to Plaintiff's claims against Fairfield. Hartford also claims the denial of insurance occurred two years after the alleged damage, constituting a separate occurrence. However, Plaintiff alleges it submitted the insurance claim in October 2011 and Hartford denied the coverage for the damage in May 15, 2014. Pl.'s Opp. 2, ECF 20. Hartford misconstrues the timeline and the dates are not suggestive of separate transactions or occurrences. Thus, even if the Court applied procedural misjoinder here, Hartford would not prevail.

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   5

2021 WL 76819
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Laura MAJEWSKI, Plaintiff,

v.

DICK'S SPORTING GOODS, INC., and Michelle Jurczak, individually, Defendants.

Case No. 20-cv-6906

|

Signed 01/08/2021

**Attorneys and Law Firms**

James M. Roche, Theisen & Roche, Ltd., Wheaton, IL, for Plaintiff.

Adam M. Berger, DeVore Radunsky Miller Berger, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

Steven C. Seeger, United States District Judge

 **\*1**  Plaintiff Laura Majewski filed this slip-and-fall case in state court, and Defendant Dick's Sporting Goods, Inc. removed it to federal court. Plaintiff responded by filing a motion to remand, arguing that this Court lacks subject matter jurisdiction because there is no diversity of citizenship. The motion to remand is granted.

The case is about an injury suffered on a wintery day at a local Dick's Sporting Goods. Plaintiff alleges that she slipped and fell on a patch of ice outside a store in the Chicagoland suburbs last winter. *See* Cplt. (Dckt. No. 1-1, at 2 of 7). According to the complaint, "ice formed due to snow that melted and refroze from a pile of snow out side [sic] Dick's Sporting Good's [sic] store, causing Ms. Majewski to slip and fall while leaving the store." *Id.* at ¶ 5.

Plaintiff advances two claims against Dick's Sporting Goods, including claims for negligence and premises liability. But she didn't simply sue the company. She also brings a negligence claim against Defendant Michelle Jurczak, the store manager. *Id.* at ¶¶ 21–25.

The gist of the claim is that Defendant Jurczak was negligent because she failed to maintain a safe store. Plaintiff claims that Jurczak "had a duty to operate, maintain and control said property in a reasonably safe manner." *Id.* at ¶ 23. According to Plaintiff, Jurczak breached that duty and acted negligently by (1) failing to inspect the property for hazards; (2) allowing ice to form at the entrance/exit of the store; and (3) failing to warn that the slippery ice posed a danger. *Id.* at ¶ 24.

The complaint isn't very specific about the nature and extent of her injuries, or about the amount of damages that she seeks. Plaintiff alleges that she suffered unspecified "severe and permanent injuries," and that she incurred "medical expenses, pain and suffering, wage loss, scarring and disfigurement and loss of normal life." *Id.* at ¶ 8. She demands more than $50,000 in damages, but beyond that, there is no other estimate. *Id.* The Court will assume without deciding that the claims satisfy the amount-in-controversy requirement.

**Majewski v. Dick's Sporting Goods, Inc., Slip Copy (2021)**

2021 WL 76819

Defendant Dick's Sporting Goods promptly removed the case to federal court, invoking this Court's diversity jurisdiction. *See* Notice of Removal (Dckt. No. 1). The notice of removal asserts that Plaintiff is a citizen of Illinois, and that Dick's Sporting Goods is a Delaware corporation with a principal place of business in Pennsylvania. *Id.* at ¶¶ 5, 6.

But Defendant Jurczak – like Plaintiff Majewski – is a citizen of Illinois. *Id.* at ¶ 7. That fact poses a potential problem of jurisdictional proportions, because federal courts have diversity jurisdiction only if there is complete diversity. *See* 28 U.S.C. § 1332; *see also* *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Fid. & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) ("For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be 'complete,' meaning that no plaintiff may be a citizen of the same state as any defendant."). Also, Defendant Jurczak is a citizen of the forum state, which poses a problem even if there were complete diversity. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *see also* *Morris v. Nuzzo*, 718 F.3d 660, 664–65 (7th Cir. 2013) (discussing the "forum defendant rule").

 **\*2** Defendant Jurczak apparently did not consent to removal in a timely manner, either. The removal statute provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." *See* 28 U.S.C. § 1446(b)(2)(A); *see also* *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997) ("A petition for removal is deficient if not all defendants join in it. To 'join' a motion is to support it in writing.") (cleaned up). Jurczak was served with process on October 13, 2020 (Dckt. No. 6-3), meaning 38 days before the filing of the notice of removal on November 20, 2020 (Dckt. No. 1). So Jurczak needed to join in or consent to removal (if she was "properly joined" as a party, that is).

But only Dick's Sporting Goods filed the notice of removal. The first paragraph states that "Defendant, DICK'S SPORTING GOODS, INC.... submits this Notice of Removal." *See* Notice of Removal, at 1 (Dckt. No. 1); *see also id.* ("In support of this petition and grounds for removal, Dick's Sporting Goods states as follows: ...."). The last paragraph and the signature block confirm the same point – only Dick's Sporting Goods filed the notice of removal. *Id.* at 4.

The notice of removal did not include a consent form by Defendant Jurczak, either. Weeks later, on December 18, 2020, Dick's Sporting Goods filed a consent form signed by Defendant Jurczak in its response to the motion to remand (Dckt. Nos. 9, 10-1). But the consent form is undated. There is no indication that Defendant Jurczak consented on the day of removal. The statute requires consent by all defendants who were served and properly joined, but does not specify *when* a defendant must consent.[1] *See* 28 U.S.C. § 1446(b)(2). Suffice it to say that the case arrived in the federal courthouse without any indication that Defendant Jurczak was on board.

 **\*3** Dick's Sporting Goods contends that it can get around all of those problems because the complaint suffers from fraudulent joinder. "Fraudulent joinder occurs when a nondiverse party is added solely to deprive the federal courts of diversity jurisdiction. The citizenship of fraudulently joined, nondiverse parties is disregarded for the purpose of determining diversity." *See* 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.52[4][a] (3d ed. 2020). "Fraudulent-joinder doctrine tries to strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect defendants' statutory right to remove." *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723.1 (4th ed. 2020).

The fraudulent joinder doctrine provides that an "out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has no chance of success." *See* *Morris*, 718 F.3d at 666 (cleaned up). The doctrine "permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.' " *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (citation omitted). The idea is that defendants who didn't belong here in the first place don't count.

Fraudulent, in this context, is a term of art. It is a bit of a misnomer. It does not suggest malfeasance or call into question the subjective intent of the plaintiff. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (citing 14A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3723 (2d ed. 1985)); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723.1 (4th ed. 2020) ("Thus, the plaintiff's intention that the joinder of a particular party or a claim assignment should defeat federal subject-matter jurisdiction is immaterial to the propriety of the removal, as long as the use of one of those devices is not merely colorable or made in bad faith."); 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.52[4][a] (3d ed. 2020) ("The term 'fraudulent joinder' is a bit misleading because the doctrine requires neither a showing of fraud nor joinder."). "[I]n most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73.

Dick's Sporting Goods seeks to litigate in federal court, so it has the burden to show that jurisdiction exists and that joinder was fraudulent. *Id.* "[A] plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand." *D.C. by and through Cheatham v. Abbott Laboratories Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018); *see also Schur*, 577 F.3d at 758. If in doubt, the case will go back to state court.

The climb is steep, and the burden is heavy. The standard is even more plaintiff-friendly than the standard for a motion to dismiss under Rule 12(b)(6). *See Creation Supply, Inc. v. Hahn*, 2020 WL 4815905, at *7 (N.D. Ill. 2020). "An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73 (emphasis in original).

At the end of the day, a district court must "engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant? If a state court has come to judgment, is there any reasonable possibility that the judgment will be reversed on appeal?" *Id.* (citation omitted).

 **\*4**  Dick's Sporting Goods argues that there was no legitimate basis to rope Defendant Jurczak (again, the store manager) into the lawsuit in the first place. In its view, Plaintiff sued Jurczak solely to defeat diversity jurisdiction, and not because Plaintiff has a plausible claim against her. So the store manager's citizenship doesn't count. *See* 28 U.S.C. § 1441(b)(2) (referring to defendants from the forum state who were "properly joined"); 28 U.S.C. § 1446(b)(2)(A) (requiring consent from "all defendants who have been properly joined").

Dick's Sporting Goods has not carried its burden to show that Plaintiff's claim against the store manager has no reasonable chance of success. Plaintiff has an arguable claim against the store manager, so the store manager's citizenship counts.

Dick's Sporting Goods does not argue that a store manager cannot be liable for injuries to customers in stores. That quiet concession was unavoidable. The fact that a person was working may give rise to vicarious liability of the employer. But it does not immunize the employee from personal liability. "A person is not absolved of personal liability to a third person on account of his or her negligence or other wrongful act merely because at the time such person was acting as an employee within the scope of the employment." *Schur*, 577 F.3d at 765 (quoting Romualdo P. Eclaea, Christine M. Gimeo & Thomas Muskus, *Employment* § 202, *in* 17 Illinois Law and Practice (2008)). Being on the clock does not mean that an employee is off the hook.

That is, "[w]hether the employer is held vicariously liable for the agent's conduct ... does not affect the agent's independent tort liability.... Thus, an agent can be individually liable even where his employer is *also* vicariously liable." *Schur*, 577 F.3d at 765 (emphasis in original); *see also* Restatement (Third) of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."). Defendant Jurczak cannot be liable simply for being the store manager – her managerial status does not give rise to strict liability. But she can be held liable if she breached an independent duty running to Plaintiff. *See Behr v. Club Med, Inc.*, 190 Ill. App.

3d 396, 408, 137 Ill. Dec. 806, 546 N.E.2d 751 (1989) ("[A]n agent's liability is based on the duty which he himself owes to the third person.") (internal quotation marks omitted).

A number of cases have recognized the potential liability of managers and employees, and thus granted motions to remand. *See, e.g.*, *Brady v. Menard, Inc.*, 2017 WL 201375, at *2 (N.D. Ill. 2017) (concluding that the store manager was not fraudulently joined, and granting a motion to remand); *Imber v. Home Depot USA, Inc.*, 2018 WL 5977923, at *2–3 (N.D. Ill. 2018) (finding that an employee was not fraudulently joined, and granting a motion to remand); *Lakin v. Casey's Retail*, 2015 WL 5182751, at *2–3 (S.D. Ill. 2015) (concluding that the store manager was not fraudulently joined, and granting a motion to remand); *Knebel v. Wal-Mart Stores, Inc.*, 2009 WL 3124769, at *2–3 (S.D. Ill. 2009) (concluding that the store manager was not fraudulently joined, and granting a motion to remand).

Instead, Dick's Sporting Goods tries a different route. The company argues that Plaintiff has no claim because Defendants weren't responsible for the ice and snow. The argument comes in three varieties.

**\*5** First, Dick's Sporting Goods argues that the injury did not take place on store property. *See* Mem. at 4 (Dckt. No. 10) ("The Complaint alleges that Plaintiff slipped and fell on an icy sidewalk outside the leased premises."). That is, the company argues that Defendants cannot be liable for a fall on property that they didn't control.

The precise location of the accident is not clear in the complaint. But the allegations suggest that Plaintiff fell in an area controlled by Dick's Sporting Goods. Specifically, Plaintiff alleges that she was "lawfully upon defendant's property Dick's Sporting Good's [sic] store." *See* Cplt., at ¶ 4 (Dckt. No. 1-1); *id.* at ¶ 15 (alleging that she was "lawfully upon defendant's premises"). Ice formed "out side [sic] Dick's Sporting Good's [sic] store," causing Plaintiff to fall "while leaving the store." *Id.* at ¶ 5. The injury happened at the "store entrance/exit." *Id.* at ¶ 7(a); *see also id.* at ¶ 7(d) (alleging that the injury took place "in an area where patrons are known to walk"). In sum, she fell "on defendant's property." *Id.* at ¶ 17.

Viewed as a whole, those allegations are more than enough to raise the possibility that Plaintiff suffered an injury while on the property leased by Dick's Sporting Goods. Maybe discovery someday will show otherwise. But that's a merits question for a later day, for another court.

Second, Dick's Sporting Goods contends that snow removal was the responsibility of the property manager, not Dick's Sporting Goods. The company points to a provision in its lease requiring the property manager to "keep such Common Areas within Landlord's Portion of the Shopping Center reasonably ... free of snow and ice." *See* Lease, at ¶ 14.2(d) (Dckt. No. 10-5). But as discussed above, Plaintiff has alleged that she slipped in an area controlled by Dick's Sporting Goods, not a common area controlled by the property manager. Dick's Sporting Goods has not demonstrated that Plaintiff fell on property that Dick's Sporting Goods didn't control.

Maybe the property manager had a contractual duty to shovel all of the snow on the leased property, including the walkways outside Dick's Sporting Goods. But if so, it would not prevent a claim by an injured customer. Plaintiff was not a party to that contract, so the contractual allocation of responsibility between the lessor and the lessee does not impair the tort rights of the customer. A contract between X and Y does not prevent a tort claim by Z against X. A contract might give Dick's Sporting Goods the right to seek indemnification from the property manager, but it does not take away the right of a shopper to recover for her injuries.

Third, Dick's Sporting Goods contends that there is no duty to remove snow or ice due to a natural accumulation. *See* Mem. at 5 (Dckt. No. 10). But the complaint does not allege that there was only a natural accumulation. In fact, it says the opposite. The complaint alleges that Dick's Sporting Goods "carelessly and negligently plowed snow in such a way that an unnatural accumulation of ice was allowed to form." *See* Cplt., at ¶ 7(d) (Dckt. No. 1-1); *see also id.* at ¶ 8 (alleging an "unnatural accumulation of ice"); *id.* at ¶ 16(a) (same); *id.* at ¶ 16(b) (same); *id.* at ¶ 17 (same). The complaint also alleges that there was a "pile" of snow. *Id.* at ¶ 5. Maybe someone piled the snow with a shovel.

Majewski v. Dick's Sporting Goods, Inc., Slip Copy (2021)

2021 WL 76819

**\*6** Dick's Sporting Goods also makes the related argument that the store manager is a nominal party. *See Northern Illinois Gas Co. v. Airco Indus. Gases, 676 F.2d 270, 272 (7th Cir. 1982)* ("Nominal parties, however, are disregarded for removal purposes and need not join in the petition."); *see also Selfix, Inc. v. Bisk, 867 F. Supp. 1333, 1336 (N.D. Ill. 1994)* ("If a party to a suit is merely a nominal party, its presence in the suit will not defeat removal. A nominal party need not join in the removal petition."); 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.42[3][a] (3d ed. 2020) ("Although generally all defendants must join in the notice of removal ... nominal or formal parties are excepted from this rule. This nominal-party exception ensures that only parties with a palpable interest in the outcome determine whether the case will be heard in federal court.").

"A defendant is nominal if there is no reasonable basis for predicting that it will be held liable." *Shaw v. Dow Brands, Inc., 994 F.2d 364, 369 (7th Cir. 1993)*. A defendant also is a nominal party if the plaintiff seeks no real relief against that party, or if the defendant is merely a depository or stakeholder (say, a person who did not commit securities fraud, but yet is holding the proceeds of a fraud, in an SEC case). *See Legal Helpers Debt Resolution, LLC v. Global Client Solutions, 2012 WL 3017886, at \*2 (N.D. Ill. 2012)* ("A nominal party is a party without a real interest in the subject matter being litigated and can be joined merely as a means of facilitating collection of the disputed subject matter."); 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.42[3][a] (3d ed. 2020) ("Those against whom no real relief is sought have also been considered nominal. A party who serves only as a depository or stakeholder may also be considered nominal.").

Dick's Sporting Goods contends Defendant Jurczak is a nominal party because an agent's breach of duty to the principal cannot give rise to a claim by a third party. *See* Mem. at 3 (Dckt. No. 10). But Plaintiff isn't arguing that the store manager breached a duty to Dick's Sporting Goods. Instead, Plaintiff squarely alleges that the store manager breached a duty to her personally. *See Schur, 577 F.3d at 766* ("An agent is liable in tort to a third party harmed by the agent's conduct when the agent breaches an independent duty that she owes *to the third party*.") (emphasis added). She alleges that the store manager breached a duty to her as a customer – that is, a duty to inspect the store, prevent hazards, and warn of dangers. That claim may or may not pan out, but it is a bridge too far to argue that Plaintiff has no reasonable chance of success.

In sum, Dick's Sporting Goods has failed to carry its heavy burden that Plaintiff fraudulently joined the store manager as a party. The company hasn't shown that the store manager is a nominal party, either. Defendant Jurczak's citizenship counts, which means that there is no complete diversity of citizenship. This Court therefore lacks subject matter jurisdiction. The motion to remand is granted.

**All Citations**

Slip Copy, 2021 WL 76819

### Footnotes

1    The Court assumes without deciding that a party can cure a deficient notice of removal that lacks a consent form signed by a defendant. Consent of all defendants is a procedural requirement, not a jurisdictional requirement. Even if a party can cure an incomplete notice of removal, there is an issue about *when* the consent must take place. The statutory text sets a fixed deadline for the *filing* of a notice of removal (*i.e.*, 30 days after service of process). *See* 28 U.S.C. § 1446(b)(2)(B). The statute provides that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons ... to file the notice of removal." *See* 28 U.S.C. § 1446(b)(2)(B). And the statute allows an earlier-served defendant to "consent to the removal" by a later-served defendant, even if the earlier-served defendant did not previously consent to removal. *See* 28 U.S.C. § 1446(b)(2)(C). But the statute does not set a fixed deadline for when, exactly, an earlier-served defendant must consent to removal by a later-served defendant. The text arguably suggests

2021 WL 76819

that all defendants must consent at the time of removal, if they were properly joined and served at that time. "*When* a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served *must* join in or consent to the removal of the action." *See* 28 U.S.C. § 1446(b)(2)(A) (emphasis added); *see also Alston v. Wells Fargo Bank, N.A.*, 2017 WL 2839629, at *2 (D. Md. 2017) ("This temporal language suggests that all defendants must consent to removal, if not within their own 30-day window under § 1446(b)(2)(B), then *when* the case is actually removed, not at some undetermined point afterwards.") (emphasis in original). Some courts have held that the period for consent extends *after* the filing of the notice of removal if an earlier-served defendant removes the case and a later-served defendant is served less than 30 days before the filing of the notice of removal. (Imagine if Defendant A was served on September 1, and removed the case on September 30, but Defendant B was served on September 29.) *See Alston*, 2017 WL 2839629, at *2 (holding that a "removing defendant must secure the consent of other served defendants by the time of the filing of the notice of removal, or within 30 days of when the consenting defendant was first served, whichever is later"). Courts in this District have addressed whether the filing of a consent form after removal must occur within the 30-day period for removal. *See, e.g.*, *Compassionate Pain Mgmt., LLC v. Frontier Payments, LLC*, 2017 WL 4423409, at *4 (N.D. Ill. 2017) (holding that an untimely filing of a co-defendant's consent did not cure its failure to "actually consent[ ] to removal within the thirty-day period for removal"); *Denton v. Universal Am-Can, Ltd.*, 2012 WL 3779315, at *3 (N.D. Ill. 2012) ("Courts in this circuit have held that the failure to include a written consent in a removal petition may only be cured by filing the written consent *within* the 30–day time period.") (emphasis in original); *Detrick v. Home Depot, U.S.A., Inc.*, 2013 WL 3836257, at *2 (N.D. Ill. 2013) (holding that when a defendant orally consented to removal within the 30-day period, but filed an untimely written consent form after the 30-day period, the untimely consent was sufficient to cure the defect); *see also Couzens v. Donohue*, 854 F.3d 508, 513–15 (8th Cir. 2017) (discussing the timeliness of consent); *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012); *Palmeira v. CIT Bank, N.A.*, 2017 WL 4797515, at *3–6 (D. Hawai'i 2017) (same). Here, Dick's Sporting Goods filed Jurczak's consent on December 18, 2020, which is 28 days after the filing of the notice of removal on November 20, 2020, and 53 days after Dick's Sporting Goods (the last-served defendant) was served with process on October 26, 2020. *See* Dckt. No. 6-2. The Court does not need to resolve whether the belated consent cured the defect because there is no jurisdiction even if Defendant Jurczak consented to removal.

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 245581
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. Illinois,
Eastern Division.

PIRC, LLC, Plaintiff,
v.
QORVIS COMMUNICATIONS, LLC, Defendant.

No. 10–cv–08298.
|
Jan. 25, 2011.

**Attorneys and Law Firms**

Arnold H. Landis, Law Office of Arnold H. Landis, Chicago, IL, for Plaintiff.

Alan R. Dolinko, Robinson, Curley & Clayton, P.C., Chicago, IL, for Defendant.

***MEMORANDUM OPINION AND ORDER***

SHARON JOHNSON COLEMAN, District Judge.

**\*1** The Court having reviewed the pleadings to ensure the existence of subject matter jurisdiction issues this *sua spo* nte memorandum opinion and order. A district court must assure itself that it possesses subject matter jurisdiction before it can proceed to take any action respecting the merits of the case. *See e.g., McReady v. White,* 417 F.3d 700, 702 (7th Cir.2005) ( "[e]nsuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit"); *Ex parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868) ("[w]ithout jurisdiction the court cannot proceed at all in any cause").

Defendant removed this case on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Section 1332 requires complete diversity between the parties plus an amount in controversy exceeding $75,000, exclusive of interest and costs.

The removal statute (28 U.S.C. § 1441) must be construed narrowly and doubts concerning removal are resolved in favor of remand. *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.2003). Plaintiff's contention of the amount in controversy will stand unless it "appears to a legal certainty" that the claim is worth more than the jurisdictional amount. *Cf. St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (holding that the plaintiff's estimation of the amount in controversy is afforded deference when it is the party seeking federal jurisdiction). To overcome this presumption, the party seeking federal jurisdiction bears the burden of proving the amount in controversy. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 188–189, 56 S.Ct. 780, 80 L.Ed. 1135; *Meridian v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006) ("a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence."); *see also Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (holding the defendant must offer evidence which proves, to a reasonable probability, that jurisdiction exists). In cases where the plaintiff provides little information about the value of her claim, however, a plausible "good faith" estimate supported by a preponderance of the evidence is acceptable to establish the amount in controversy. *Rubel v. Pfizer, Inc.,* 361 F.3d 1016, 1018 (7th Cir.2004).

Upon review of both the Notice of Removal and the allegations of Plaintiff's Complaint, this Court finds that Defendant has failed to establish an amount in controversy in excess of $75,000 required to establish subject matter jurisdiction. This defect requires the Court to remand this case to state court, pursuant to 28 U.S.C. § 1447(c).

In support of its contention that the amount in controversy in this case meets the jurisdictional minimum, Defendant provides an affidavit submitted by Plaintiff to the state court, pursuant to Illinois Supreme Court Rule 222, stating that Plaintiff is seeking damages in excess of $50,000. While this amount is indeed larger than the amount the Plaintiff sought in its original complaint, it is still less than the jurisdictional minimum of $75,000, and is therefore insufficient to establish federal subject matter jurisdiction. While Defendant speculates that damages in this case might meet the jurisdictional minimum, this is not, in fact, a "reasonable inference" as Defendant alleges in its removal notice. There is no such indication in Plaintiff's complaint or the Rule 222 affidavit that the jurisdictional minimum has been met. Without such an indication, the Court cannot conclude "to a reasonable probability that jurisdiction exists." *Chase,* 110 F.3d at 427.

### *CONCLUSION*

**\*2** For the aforementioned reasons, the Court finds that it lacks subject matter jurisdiction over this case and must remand this case back to state court, pursuant to 28 U.S.C. § 1447(c). Accordingly, the Court hereby REMANDS this case back to the Circuit Court of Cook County.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 245581

---

**End of Document**　　　　　　　　　　　　　　© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 11219941
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Michael A. ZIMMER, AS TRUSTEE FOR the Next of Kin of Prince Rogers NELSON, Deceased, Plaintiff,
v.
TRINITY MEDICAL CENTER, INC., Trinity Regional Health System, Inc., Iowa Health System,
d/b/a Unitypoint Health, Nicole F. Mancha, M.D., Jane Doe 1, R.Ph., Employee of Trinity
Medical Center, Inc., Walgreen Pharmacy, Store #9511, Walgreen Pharmacy, Store # 13853,
Walgreen Company Jane Doe Nos. 2–6, R.Ph., Employees of Walgreens Pharmacies, Defendants.

Case No. 18-cv-2987
|
Signed 06/29/2018

**Attorneys and Law Firms**

Eric J. Parker, Michael S. Baird, Stotis & Baird, Chicago, IL, for Plaintiff.

Brian C. Fetzer, Johnson & Bell, Ltd., Chicago, IL, for Defendant Walgreen Pharmacy, Store 9511.

David Craig Hall, Basile P. Souferis, Daria Ann Porta, Hall Prangle & Schoonveld, LLC, Chicago, IL, for Defendants Trinity Medical Center, Inc., Trinity Regional Health System, Inc., Iowa Health System, Nicole F. Mancha.

Meiko L. Ogura, Valandis Vrakas, Johnson & Bell, Ltd., Chicago, IL, for Defendant Walgreen Company.

## ORDER

SHARON JOHNSON COLEMAN, United States District Court Judge

**\*1** The plaintiff's motion to remand [15] is granted. This case is remanded to the Circuit Court of Cook County.

## STATEMENT

The plaintiff, Michael A. Zimmer, acting as the trustee for the next of kin of Prince Rogers Nelson, filed this case in the Circuit Court of Cook County on April 20, 2018. On April 27, 2018, before the plaintiff had served any of the defendants, defendant Walgreen Co. ("Walgreens") removed the action to this Court based on its diversity jurisdiction under 28 U.S.C. § 1332. It is undisputed that the unserved defendants in this matter are residents of Illinois and Iowa, that the plaintiff is a resident of Minnesota, and that the amount in controversy exceeds $75,000.

Zimmer, however, now seeks to remand this action, which he contends was improperly removed in violation of 28 U.S.C. § 1441. In pertinent part, the "forum defendant rule" of 28 U.S.C. § 1441(b)(2) provides that "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Walgreens, in response, notes that 28 U.S.C. § 1441(b)(2) only applies to defendants "joined and served" and that, here, Walgreens removed this action prior to being served.

2018 WL 11219941

The purpose of federal diversity jurisdiction is protecting out-of-state litigants from prejudicial treatment by local state courts. *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000). When a defendant resides in the same state as the Court hearing the case, this risk of prejudice diminishes and becomes secondary to the plaintiff's interest in litigating in the forum of its choosing. Thus, federal law provides that an action may not be removed if any of the defendants are citizens of the state in which the action is brought.

The "properly joined and served" language of section 1441(b) is designed to stop plaintiffs from exploiting this rule by joining a resident of the forum as a defendant in order to block removal and then failing to serve or otherwise proceed against that defendant. *Holmstrom v. Harad*, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D. Ill. 2005) (Aspen, J.) (quoting *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003)). Defendants, after all, are entitled to act to remove a case based on the circumstances at the time that they are sued, and should not be required to guess whether a named resident defendant will subsequently be served. *Id.* It has been recognized, however, that the purpose of the forum defendant rule can be perverted when a case is removed before any defendant has been served. The forum defendant rule was not intended to create a race to action between the plaintiff seeking to serve defendants and unserved defendants seeking to remove their case before an in-forum defendant is served. *In re Testosterone Replacement Therapy Prods. Liability Litigation*, 67 F. Supp. 3d 952, 961 (N.D. Ill. 2014) (Kennelly, J.) The "joined and served" requirement also serves no purpose when no one has been served, because no defendant is yet obligated to appear in court and the time for removal has not yet begun to run. Although statutes ordinarily are interpreted based on the plain meaning of their words, they must not be interpreted in a manner that would frustrate the purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent. *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). Removal statutes, moreover, are to be construed narrowly and against removal. *Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 576 (7th Cir. 1982). For these reasons, judges in this district have consistently refused to apply the "joined and served" requirement when removal is attempted before any defendant has been served. *See In re Testosterone Replacement therapy Products Liability Litigation*, 67 F. Supp. 3d at 962; *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007) (Lefkow, J.); *Holmstrom*, 2005 WL 1950672, at *2. The argument for this rule is especially apparent here where the party attempting to remove this case prior to service is also the party that, once served, would defeat removal.

 **\*2** Here, Walgreens removed this case seven days after it was filed, and before any defendants had been served. Accordingly, in light of the Court's interpretation of section 1441(b), the removal of this case was improper. The plaintiff's motion to remand is accordingly granted, and this case is ordered remanded to the Circuit Court of Cook County.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 11219941

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.