IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' MOTION TO COMPEL THE CLEARVIEW DEFENDANTS
TO RESPOND TO PLAINTIFFS' WRITTEN DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs, by interim lead class counsel, respectfully request that this Court enter an order directing Defendants Clearview AI, Inc. ("Clearview"); Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics LLC ("Rocky Mountain"); and Thomas Mulcaire (collectively, "Defendants") to: (a) provide proper responses to Plaintiffs' written discovery as identified herein; and (b) produce all documents responsive to such discovery within fourteen days of any order. Plaintiffs also seek all relief to which they are entitled under Fed. R. Civ. P. 37(a)(5). In support of this motion, Plaintiffs state as follows:

## INTRODUCTION

Plaintiffs allege that Defendants scraped over ten billion images from the Internet, including images of Plaintiffs and class members, and then unlawfully collected and obtained the biometric data of the individuals in the photos to create a massive biometric database (the "Database"). Defendants used, and continue to use, the Database to unlawfully distribute the unlawfully obtained biometric data for personal gain. At relevant times, Defendants failed to implement appropriate security measures to protect Plaintiffs' and class members' sensitive biometric data from further unauthorized access.

The operative complaint seeks to hold Defendants liable for their egregious violations of Plaintiffs' and class members' privacy rights. Plaintiffs allege that: (a) the individual Clearview Defendants (Ton-That, Schwartz and Mulcaire) are liable for the actions of the corporate Clearview Defendants (Clearview and Rocky Mountain); and (b) Clearview is liable for Rocky Mountain's wrongdoing.

In May 2021, Plaintiffs propounded interrogatories and document requests on Defendants. Through various tactics, Defendants failed to properly respond to numerous discovery requests. Defendants did not even produce the most basic information – *e.g.*, information regarding

1

Plaintiffs or the URLs from which Defendants scraped the photos in the Database. Worse, after the parties met and conferred and reached a documented agreement regarding Defendants' financial documents, Defendants reneged. Defendants did so even after representing to the Court that it should quash various subpoenas based, in part, on the agreement. The Court should put an end to Defendants' games and compel them to provide proper responses to the discovery requests at issue and produce all relevant documents within fourteen days of any order.

## FACTUAL BACKGROUND

*Plaintiffs' Claims*

Plaintiffs are individuals from Illinois, New York, California and Virginia who have brought statutory, constitutional and common law privacy claims on behalf of members of a nationwide class and Illinois, California, New York and Virginia subclasses (collectively, "class members"). Dkt. 116 ¶¶ 5-13, 65. In summary, Plaintiffs allege as follows: Without providing notice or obtaining consent, Defendants: (a) scraped from the Internet three billion (now known to be approximately ten billion) photos – including photos of Plaintiffs and class members; (b) scanned the face geometry of each depicted individual to obtain their unique biometric identifiers and information (collectively "biometric data"); and (c) created the Database to allow third parties to pay a fee to identify unknown individuals by uploading a probe photo for comparison of the biometric data therein to the biometric data in the Database. *Id.* ¶¶ 1, 30, 53, 58-59; Exhibit 1 (Def. Second Supp. Ans. to Interrogatories) at 3.[1] Based on the above-described conduct, Defendants unlawfully obtained, distributed, sold and otherwise profited from Plaintiffs' and class members' biometric data, while also unjustly enriching themselves and otherwise unlawfully invading Plaintiffs' and class members' privacy. *See, generally,* Dkt. 116. In addition to seeking direct

---

[1] Exhibit and docket citations are to the CM/ECF-stamped page numbers at the top of the page.

liability, Plaintiffs seek to hold: (a) the individual Clearview Defendants liable for the unlawful actions of the corporate Clearview Defendants; and (b) Clearview liable for Rocky Mountain's alleged misconduct. *See* Dkt. 116 ¶¶ 37-39; Dkt. 134 at 12-15.

Defendants have moved for dismissal contending, *inter alia*, that Plaintiffs' claims under Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1, *et seq.*, are barred by Illinois' extraterritoriality doctrine, the dormant Commerce Clause and the First Amendment. *See* Dkt. 88 at 15-26. In *American Civil Liberties Union v. Clearview AI, Inc.* ("*ACLU*"), No. 20 CH 4353 (Cir. Ct. Cook Cnty.), a case involving similar allegations as those here, the court recently denied Clearview's motion to dismiss that asserted the same legal theories. *See* Dkt. 167-1 (*ACLU* motion to dismiss order).

In their motion to dismiss, Defendants also contest the individual Clearview Defendants' liability for the corporate Clearview Defendants' conduct and Clearview's liability for Rocky Mountain's conduct. Dkt. 88 at 13-15. In their opposition brief, Plaintiffs detail the legal and factual impropriety of Defendants' contention. *See* Dkt. 134 at 12-15.

***Plaintiffs' Discovery Requests, Defendants' Responses and LR 37.2 Compliance***

On May 24, 2021, Plaintiffs served Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production on Defendants. *See* Exhibit 2 (Interrogatories); Exhibit 3 (Requests for Production ("RFPs")). Defendants served their responses on July 1, 2021. *See* Exhibit 4 (Interrogatory Answers); Exhibit 5 (RFP Responses). Those responses are materially deficient for many reasons, as exemplified in the non-exhaustive list below:

- Defendants have improperly defined the "relevant time period" to limit the production of responsive documents (*see* Exs. 4-5 at Gen. Obj. 19);

- Defendants invoke, but fail to comply with, Fed. R. Civ. P. 33(d) (*see* Ex. 4 at Interrogatories 3-4, 6, 10-11, 13);

3

- Defendants fail to produce their own records regarding Plaintiffs (Ex. 5 at RFP 1);

- Defendants fail to provide relevant information regarding the Database and Defendants' related app, software and technology (*Id.* at RFPs 2-9, 11, 16, 30, 41; Ex. 4 at Interrogatories 8-9, 17-18);

- Defendants fail to provide relevant information regarding security breaches (Ex. 5 at RFP 32; Ex. 4 at Interrogatory 14);

- Defendants fail to provide relevant information regarding their finances (Ex. 5 at RFPs 34, 36; Ex. 4 at Interrogatories 15, 19-20);

- Defendants fail to provide relevant information regarding their compliance/non-compliance with BIPA (Ex. 5 at RFPs 21, 38); and

- Defendants fail to provide relevant information regarding their customers/users (Ex 5 at RFP 14).[2]

Plaintiffs made repeated and documented efforts to resolve the numerous disputes, including meeting and conferring, seeking to meet and confer and sending correspondence. *See* Exhibits 6-17 (LR 37.2 correspondence). Despite those efforts, many disputes remain. *See id.* As the record shows, in certain instances, Defendants dodged meeting and conferring (*see* Exs. 11, 14, 17, 20), while in another instance, Defendants reneged on an agreement reached during a meet and confer. *See* Exs. 14-15.

## ARGUMENT

### I. Legal Standards.

The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 234 F.R.D. 447, 450 (N.D. Ill. 2006). "Plaintiffs are . . . the 'masters of their complaint' . . . . Pleadings shape the

---

[2] Plaintiffs note that the parties have not yet agreed on an ESI search protocol but continue to meet and confer. As such, this motion does not seek relief regarding the search protocol.

4

litigation, including the scope and ultimately the cost of discovery." *Generation Brands, LLC v. Decor Selections, LLC*, No. 19 C 6185, 2021 WL 780485, at *3 (N.D. Ill. Mar. 1, 2021), quoting *Amgen Inc. v. Harris*, 136 S.Ct. 758, 760, (2016).

> Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on" or "reasonably could lead to other matter that could bear on" any material facts or issue in the action. *Oppenheimer*, 437 U.S. at 351. A party resisting discovery has the burden of showing "why a particular discovery request is improper." *Parvati v. Oak Forest*, No. 08 C 702, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010).

**II.     The Court Should Order Defendants to Provide Proper Discovery Responses.**

    **A.     Plaintiffs Seek Relevant Information.**

        **1.     The Relevant Time Period.**

Plaintiffs and Defendants have proposed competing relevant time periods: (a) Plaintiffs proposed January 1, 2015 to the present (Ex. 2 at 9; Ex. 3 at 11); and (b) Defendants countered with August 3, 2017 to January 22, 2020. Exs. 4-5 at Gen. Obj. 19. Plaintiffs' proposal will result in the production of relevant documents needed to prosecute their claims, while Defendants' proposal will thwart such prosecution.

Specifically, on the front end, Plaintiffs' relevant time period corresponds to the five-year statute of limitations for BIPA §§ 15(b) and (e) claims, *see Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563, 2021 WL 4243310, at *6 (Ill. App. Ct. Sept. 17, 2021), and allows for the discovery of

5

information relevant to Defendants' misuse of Plaintiffs' and class members' biometric data during that time period. This is important because Defendants claim they are exempt from BIPA under its government contractor exception, *see* 740 Ill. Comp. Stat. 14/25(e). To the extent Defendants ever engaged in their unlawful activity at the request of a "State agency or local unit of government," it is necessary to know when the request was made and the exact nature of the request. Plaintiffs' relevant time period allows for discovery of that information.

Similarly, on the backend, it is crucial that the relevant time period continues through the present. When this litigation began, Defendants had scraped three billion photos and unlawfully obtained the related biometric data. *See* Dkt. 116 ¶ 1. The number of photos has since ballooned to approximately ten billion. *See* Ex. 1 at 3. Defendants' ongoing unlawful conduct has undoubtedly expanded the size of the class and subclasses, and Plaintiffs are entitled to obtain information relevant to that issue. Further, Defendants' ongoing unlawful conduct is relevant to Plaintiffs' unjust enrichment and BIPA § 15(c) (profiting from biometric data) claims because Defendants' use the size of the Database as a marketing tool. *See* Will Knight, *Clearview AI Has New Tools to Identify You in Photos*, Wired, https://www.wired.com/story/clearview-ai-new-tools-identify-you-photos/ (Oct. 4, 2021) (last viewed on Nov. 1, 2021). Moreover, Plaintiffs seek injunctive relief and are entitled to discovery showing the ongoing nature of the conduct they seek to enjoin. Relatedly, Defendants have represented to the Court that they have ceased engaging in various activities violative of BIPA and will continue to do so. *See, e.g.,* Dkt. 43 at 11-13. Plaintiffs are entitled to discovery related to the alleged changes and their effectiveness.

### 2. Documents Defendants Misrepresented They Would Produce (RFP 34).

RFP 34 seeks documents related to the assets, debts and expenses of Clearview, Rocky Mountain and specified predecessors, affiliates and/or subsidiaries. Ex. 3 at RFP 34. During an

6

August 9, 2021 meet and confer, Defendants unequivocally agreed to produce the "full universe of documents requested." Ex. 7 at 3; Ex. 8 at 3. Defendants again confirmed the agreement in their motion to quash various subpoenas Plaintiffs served on Defendants' banks. *See* Dkt. 179 at 4-5 ("[financial] documents Plaintiffs seek from the Banks . . . . *are ones that the Clearview Defendants have already agreed to produce.*") (emphasis added). Despite the clear agreement, Defendants now improperly seek to: (a) limit its scope (*see* Ex. 14 at 5-8); and (b) hold responsive documents hostage pending the outcome of their motion to dismiss. *See* Ex. 15 at 2.

### 3. Improper Use of Rule 33(d) (Interrogatories 3, 4, 6, 10-11, 13).

In response to numerous Interrogatories, Defendants stated that pursuant to Fed. R. Civ. P. 33(d), they "will produce relevant business records . . . ." *See* Ex. 2 at Interrogatories 3-4, 6, 10-11, 13. However, in contravention of Rule 33(d), Defendants have not provided any details that would allow Plaintiffs "to locate and identify [the documents] as readily as the responding party could." *See* Fed. R. Civ. P. 33(d). In a recent letter, Defendants: (a) walked back their commitment to produce documents (stating that they "may" produce responsive documents); and (b) state that they would not identify any documents by Bates number until Defendants' productions are complete. *See* Ex. 16 at 3. Notably, Defendants have not committed to a date by which they will complete their document production. *See id.* at 2.

To the extent Defendants decide not to respond to the relevant Interrogatories with documents, they have failed to answer the Interrogatories at issue. To the extent Defendants produce relevant records, Plaintiffs should not have to wait until some unspecified date in the future to learn which records are intended to be responsive. Rule 33(d) commands otherwise. *See* Fed. R. Civ. P. 33(d).

7

### 4. Documents Regarding Plaintiffs (RFP 1).

RFP 1 simply seeks documents regarding Plaintiffs. Ex. 3 at 11. In response, Defendants have contended they "lack the technology necessary to identify specific photographs and facial vectors based only on an individual's name" (Ex. 5 at 6-7) and have only agreed to search for relevant documents by Plaintiffs' last names.[3] *See* Ex. 16 at 4. When asked if Defendants had taken steps to locate Plaintiffs' images, Defendants initially refused to provide a response (*see* Ex. 12 at 4-5) and later contended that any such information is somehow privileged and was created outside of their restrictive definition of the "relevant time period." *See* Ex. 16 at 4.

The requested information is indisputably relevant, and it appears that Defendants may have already located responsive documents but will not produce them. Thus, their claim that they lack the ability to search their own records rings hollow. Moreover, Defendants' complaint that it would be difficult for them to locate documents within their own records is not a valid basis for them to disregard their discovery obligations. *See Briddell v. St. Gobain Abrasives Inc.,* 233 F.R.D. 57, 61 (D. Mass. 2005) ("Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery"); *see also Batchelor v. City of Chi.*, No. 18-cv-8513, Dkt. 162 (discovery order) at 13-14 (N.D. Ill. Nov. 17, 2020) (collecting cases) (attached hereto as Exhibit 19).

### 5. Information Regarding Defendants' Database, Technology, Software and Apps (RFPs 2-9, 11, 16, 30, 41; Interrogatories 8-9, 17-18).

This case centers on Defendants' Database, technology and related software and apps. Yet, Defendants have thwarted Plaintiffs' efforts to obtain information and documents regarding these topics. Beyond not providing proper responses to the various requests, in a self-serving maneuver,

---

[3] Defendants initially claimed they needed Plaintiffs' consent to search for their biometric data but seemingly have decided that BIPA § 25(a) negates the need for consent during this litigation. *See* Ex. 5 at 6-7; Ex. 16 at 4.

Defendants claim to have run unspecified ESI searches and now assert they "do not agree to re-review documents to identify documents responsive" to various requests.[4] *See* Ex. 16 at 4-9 (addressing RFPs 2, 4-8, 16, 41). That Defendants unilaterally chose to run searches while the parties were negotiating the proper search terms and custodians (*see, e.g.,* Ex. 17) is not a basis for Defendants to withhold relevant discovery.

Defendants have also sought to avoid their discovery obligations by claiming the requests seek discovery of *proprietary* source code. *See* Ex. 8 at 2-3. If true, the requests would activate burdensome requirements of the Amended Agreed Confidentiality Order. *See, e.g.,* Dkt. 183 at 3, 5-13 (addressing "Highly Confidential – Source Code" protocols). Defendants ignore that the requests at issue (RFPs 3-4, 6) seek information related to whether any source code is, in fact, proprietary (*e.g.*, the requests seek non-disclosure agreements and access restrictions). *See* Ex. 3 at 12-13; Ex. 12 at 5-6. Moreover, beyond seeking source code, the requests seek the production of non-source code documents related to Defendants' Database, software, apps and technology (*e.g.*, photos and associated URLs and non-source code documents within the Database). *See id.* Defendants have no valid basis to withhold these relevant, non-proprietary documents.

Set forth below are the specific discovery requests for which Plaintiffs seek to compel responses:

RFP 5 seeks documents related to the way in which Defendants "trained" their software to reliably match a probe image uploaded by a user to images in the Database. Ex. 3 at 12; Ex. 12 at 5-6. Because facial recognition software is trained with training datasets of images, the request is relevant to determine whether Plaintiffs' and class members' images were used in connection with

---

[4] Defendants take the same position with respect to RFPs 21, 32 and 38, which are also the subject of this Motion. The Court should order Defendants to produce all documents responsive to each RFP addressed herein, not just the ones they unilaterally chose to search for and review.

9

the training. Further, because Defendants market their technology based on a claimed high identification accuracy rate (*see* Exhibit 20 (Accuracy Test Report)), the request is relevant to Plaintiffs' unjust enrichment and BIPA § 15(c) claims.

RFPs 7-8, 11, 16 and 41 seek documents related to Defendants' obtainment of biometric data, the addition and removal of that data into and out of the Database and searches performed using Defendants' technology. *See* Ex. 3 at 13-15, 21; Ex. 12 at 6-8. These requests – which seek information such as the URLs associated with the photos Defendants scraped, the dates on which Defendants obtained biometric data and the reasons for obtaining it, how Defendant's technology functions in terms of producing biometric data from an image, searches performed with Defendants' software, and whether the search or result involved any Plaintiff or class member – indisputably seek relevant information. Thus, Defendants' objections and cryptic responses are improper.

For instance, regarding RFP 11, Defendants have vaguely and inadequately stated that "*our current understanding* is that the Clearview Defendants do not have documents showing the date on which *Clearview created specific facial vectors.*" Ex. 8 at 3 (emphasis added); Ex. 16 at 6. Moreover, they have only agreed to produce responsive documents to the "extent they can be identified using [ESI] search terms." Ex. 16 at 6. Importantly, information regarding the dates on which data was collected may be contained in metadata that does not show up in response to an ESI search term. Defendants should not be permitted to avoid producing responsive documents through the use of clever wording.

RFP 30 and Interrogatory 17 seek documents and information sufficient to identify the number of biometric images in the Database that were uploaded from an Illinois IP address. Ex. 2 at 14; Ex. 3 at 18; Ex. 12 at 7, 10. These requests directly relate to, *inter alia*, class size and

10

Defendants' extraterritoriality defense. As with RFP 1, Defendants contend they lack the "technology necessary to identify the precise number of facial vectors that were generated from 'assigned Illinois-based IP addresses." Ex. 5 at 17. Defendants' answers are non-responsive. To the extent Defendants have possession, custody or control of responsive documents or information, they must search for and produce it.

Interrogatories 8 and 9 seek the sources from which Defendants obtained any image in the Database, the date ranges during which the images were obtained, the total number of images in the Database, and the total number of images Defendants claim to have blocked from search results because they are connected to Illinois ("Blocked Illinois Photos"). Ex. 2 at 12; Ex. 12 at 9-10. This information is relevant to, *inter alia*, class size, Defendants' extraterritoriality and government contractor defenses, and their ability to comply with an injunction. In response, Defendants only estimate the number of URLs from which they have collected photos and state the approximate number of images in the Database. Ex. 1 at 2-3. According to Defendants, because they have scraped a lot of images from the Internet, they do not believe they have to respond to these highly relevant requests. *See* Ex. 16 at 10-11. Moreover, they claim that they cannot determine the number of Blocked Illinois Photos without creating custom code. *Id.* Notably, Defendants do not deny that the requested information is in their possession, custody and control. They simply do not want to make the effort to provide it, even though they relied on it in opposing Plaintiffs' preliminary injunction motion. *See* Dkt. 43 at 10. Merely because Defendants engaged in their alleged unlawful behavior on a mass scale should not allow them to avoid their discovery obligations.

    **6. Information Regarding Security Breaches (RFP 32; Interrogatory 14).**

RFP 32 and Interrogatory 14 seek information concerning security breaches experienced by Defendants. Ex. 2 at 13; Ex. 3 at 18; Ex. 12 at 8, 10. The requests are directly relevant to

11

Plaintiffs' BIPA § 15(e) claim (Count Seven) regarding Defendants' failure to maintain proper security standards. Defendants have improperly limited their response to "security incident reports" related to breaches that resulted in "known data exfiltration." *See* Ex. 8 at 3; Ex. 16 at 8. BIPA § 15(e) is not written in terms of breaches resulting in "known data exfiltration." *See* 740 Ill. Comp. Stat. 14/15(e). Rather, it requires private entities to employ a reasonable standard of care in protecting biometric data and to store and protect the data in at least the same manner as it stores and protects other sensitive data. *See id.* As such, Plaintiffs are entitled to discover information regarding any security breach, as that information is relevant to how Defendants store and protect (or fail to protect) their sensitive data generally and the response Defendants made to any such breaches. Moreover, merely because a hacker who breached Defendants' servers chose not to "exfiltrate data" does not negate the fact that Defendants failed to keep the information secure.

### 7. Defendants' Financial Information (RFP 36; Interrogatories 15 and 19-20).

Plaintiffs seek to hold: (a) the individual Clearview Defendants liable for the corporate Clearview Defendants' conduct; and (b) Clearview liable for Rocky Mountain's conduct. Dkt. 116 ¶¶ 37-39; Dkt. 134 at 12-15. Moreover, Plaintiffs seek: (a) to recover for Defendants' unlawful profiteering (Dkt. 116 at Count Seven); (b) disgorgement of the proceeds with which Defendants unjustly enriched themselves (*id.* at Count Eight); and (c) punitive damages. *See id.* at Prayer.

RFP 36 (and RFP 34 – discussed above) and Interrogatories 15, 19 and 20 seek financial information directly related to the above-described issues – namely, tax returns, revenue and expenses related to Defendants' software and apps, and banking information. The requested financial information is relevant to Plaintiffs' personal participation and alter ego theories of liability. *See* Dkt. 134 at 12-15. The information will provide key details regarding the highly

factual inquiries of the various Defendants' liability for the conduct of other defendants, such as the intermingling of funds, whether "loans" were properly documented, whether income was properly accounted for on tax returns and whether corporate formalities otherwise were adhered to. Moreover, tax returns are relevant and discoverable in connection with Plaintiffs' punitive damages claims. *See Mader v. Motorola Inc.*, No 92 C 8089, 1994 WL 535125, at *8 (N.D. Ill. Sept. 30, 1994).

### 8. Documents Related to BIPA (RFPs 21 and 38).

RFPs 21 and 38 seek documents related to BIPA, including Defendants' compliance/noncompliance therewith, the technological feasibility of such compliance and efforts to change the law. Ex. 3 at 16, 20; Ex. 12 at 7-8. The requests are relevant to, *inter alia*: (a) the liquidated damages available to Plaintiffs – *i.e.*, whether Defendants acted recklessly or negligently, *see* 740 Ill. Comp. Stat. 14/20(1)-(2); and (b) Defendants' claim that compliance with BIPA would be unduly onerous. *See* Dkt. 43 at 17. To the extent Defendants' records show they had knowledge of BIPA or actively sought to amend BIPA, Plaintiffs likely would be entitled to liquidated damages in the amount of $5,000 per violation, as opposed to $1,000 per violation. *See* 740 Ill. Comp. Stat. 14/20(1)-(2). Moreover, to the extent Defendants' records show the feasibility of complying with BIPA, that would directly rebut their claim to the contrary.

### 9. Defendants' Customers and Users (RFP 14).

RFP 14 seeks documents concerning Defendants' customers and users. Ex. 3 at 15; Ex. 12 at 7. While Defendants have agreed to produce documents "sufficient to show the identity and contractual arrangements" for such users or customers (*see* Ex. 5 at 11-12), the response is insufficient. Because of Defendants' extraterritoriality defense, it is important for Plaintiffs to know if users or customers were, among other things, located in Illinois or marketed to in Illinois.

Similarly, it is important to know if Defendants interacted with any users or customers in Illinois. Further, because Defendants intend to invoke BIPA's government contractor exception, it is important to know whether: (a) a user or customer was a State agency or local unit of government; and, if so, (b) whether such a user or customer tasked Defendants with collecting, obtaining, distributing or using Plaintiffs' and class members' biometric data and, if so, when.

**B.     The Discovery Requests at Issue Are Proportional to the Needs of the Case.**

Examination of the proportionality factors demonstrates that the discovery Plaintiffs seek is proportional to the needs of the case.

*First,* the issues in this case are of vital importance. Without consent, Defendants collected, widely distributed and profited from Plaintiffs' and class members' biometric data on a mass scale. In doing so, Defendants violated the laws of multiple states and common law designed to protect victims' privacy rights.

*Second*, the amount in controversy is likely in the billions. Conservatively assuming: (a) Defendants negligently violated BIPA; (b) only 1% of the ten billion images are of Illinois residents, and (c) only one BIPA violation per affected individual, damages would be $100 billion.

*Third*, Plaintiffs have no relative access to the information at issue, as it is uniquely in Defendants' possession, custody and control, and Defendants have sought to quash Plaintiffs' efforts to obtain the information through alternative means. *See* Dkt. 179.

*Fourth*, Defendants have more resources than Plaintiffs. Defendants have raised millions of dollars in equity to fund their unlawful scheme. *See Clearview AI Closes $30 Million Series B Funding Round*, BusinessWire, https://www.businesswire.com/news/home/20210726005315/en/Clearview-AI-Closes-30-Million-Series-B-Funding-Round (July 26, 2021) (last accessed on Nov. 11, 2021). In contrast, Plaintiffs are individuals victimized by Defendants.

*Fifth*, the discovery at issue is critical to Plaintiffs' claims, available damages, and Plaintiffs' ability to rebut Defendants' defenses. Defendants have failed to provide basic information – such as what information they have collected about Plaintiffs, when they collected it and where they collected it from. Plaintiffs' discovery is tailored to uncover this and other relevant information and clearly "bears on" the case's material facts.

*Sixth*, any burden or expense resulting from the discovery requests does not outweigh their likely benefit. Defendants' discovery strategy is designed to obstruct Plaintiffs' ability to prosecute their claims. Notably, Plaintiffs only seek information in Defendants' possession, custody or control. Thus, the discovery should not impose any undue burden, as Defendants merely have to search their own records. As discussed above, that Defendants' unlawfully obtained a massive amount of data that they now claim they cannot efficiently search does not provide them with a free pass to avoid their discovery obligations. Nor is it a valid excuse for Defendants to claim they do not have a document management system that allows them to find their own documents.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to provide proper responses to the following discovery requests: RFPS 1-9, 11, 14, 16, 21, 28, 30, 32, 34, 36, 38 and 41; and Interrogatories 3-4, 6, 8-11, 13, 14-15, 17-20. Plaintiffs also seek all relief to which they are entitled under Fed. R. Civ. P. 37(a)(5).

Dated: November 15, 2021

                                              Respectfully submitted,

By:   /s/ Scott R. Drury
       SCOTT R. DRURY
       *Interim Lead Class Counsel for Plaintiffs*

Mike Kanovitz
Scott R. Drury
Andrew Miller
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

        Steven T. Webster
        Aaron S. Book
        **WEBSTER BOOKK LLP**
        300 N. Washington, Ste. 404
        Alexandria, Virginia 22314
        888.987.9991
        swebster@websterbook.com

*Other Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Scott R. Drury, an attorney, hereby certify that, on November 15, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
Counsel for Plaintiffs