# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Clearview AI, Inc. Consumer Privacy Litigation | ) ) Case No. 1:21-cv-00135 ) ) Judge Sharon Johnson Coleman ) ) Magistrate Judge Maria Valdez ) |

**PLAINTIFFS' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendants Clearview AI, Inc. ("Clearview"); Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics LLC ("Rocky Mountain"); Thomas Mulcaire; and Macy's Retail Holdings, LLC ("Macy's") (collectively, "Defendants" or "you") respond to the following Interrogatories, in writing and under oath, within thirty (30) days from receipt of service.

**DEFINITIONS**

1. "Action" means the above-captioned putative class action.

2. "Affirmative Defenses" mean any affirmative defenses that you assert in any answer to any complaint filed by Plaintiffs in this matter, including the Consolidated Class Action Complaint.

3. "Answer to the Complaint" means the answer you make to any complaint filed by Plaintiffs in this matter, including the Consolidated Class Action Complaint.

4. "Biometric Data" means any measurement, pattern or other data relating to the physical biological features or characteristics of an individual that is capable of being used to identify the individual, regardless of the source of any such measurement, pattern or data.

1

5. "Biometric Identifier" means or refers to a retina or iris scan, fingerprint, voiceprint, scan of hand or face geometry, or a person's face geometry.

6. "Biometric Information" means or refers to any information, regardless of how it is captured, converted, stored, or shared, based on a Person's Biometric Identifier that is used to identify a Person.

7. "BIPA" means or refers to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

8. "Clearview Facial Recognition App or Software" means the software or software application provided or offered by Clearview that allows users to upload probe images to Clearview's Face Template Database to determine or help determine the identity of the person(s) in the probe images through the use of Face Recognition.

9. "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes original and all non-identical copies of all documents, as defined herein, sent by you or received by you from any person, as well as any documents reflecting or recording the content of any oral communications in any form (including, without limitation, inter-office and intra-office memoranda, e-mail and other communications). The term "communication(s)" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements understandings, meetings, notices, requests, responses, demands, complaints, press, publicity or trade releases by any manner or means whatsoever, including but not limited to by speech, writing, language (machine, foreign or otherwise), computer electronics of any kind (including e-mail and/or instant messaging), magnetic tape, videotape, graphs, symbols, signs, magnetic and/or optical disks, floppy disks, compact discs, CD-

ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types, and/or media of any kind.

10. "Concerning" means relating to, referring to, describing, evidencing, or constructing.

11. "Describe," when used in relation to any process, policy, act, agreement, object, or event, seeks an explanation of the process, policy, act, agreement, object, or event in complete and reasonable detail, stating the time, date, and location, identifying all persons participating or present, and Identifying all documents and communications relating thereto. When used in any other context, "Describe" means to explain in complete and reasonable detail.

12. "Document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include electronic or computerized data compilations, as well as, without limitation, all original writings of any nature whatsoever, copies and drafts which, by reason of notes, changes, initials, or identification marks are not identical to the original and all non-identical original copies thereof. In all cases where original or non-original copies are not available, "document" also means identical copies of original documents and copies of non-identical copies. The term thus includes, but is not limited to, any kind of written or graphic matter, however provided or reproduced, of any kind or description, whether sent or received or neither, including but not limited to papers, books, book entries, correspondence, telegrams, cables, telex messages, memorandum, notes, data, notations, work papers, inter-office communications, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of committee meetings, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, formulae, plans, specifications, evaluations, contracts, licenses, agreements, offers, ledgers, journals, books of records of account, summaries of accounts,

bills, service invoices, receipts, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, lists, tabulations, charts, graphs, maps, surveys, sound recordings, computer tapes, magnetic tapes, computer printouts, data processing input and output, e-mails, text messages, instant messages, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, however, denominated, whether currently in existence or already destroyed. A draft or non-identical copy is a separate document within the meaning of this term.

13. Electronically Stored Information ("ESI") means all potentially discoverable electronically stored information, whether real, virtual or cloud-based, and refers to the parties' ESI that contains or potentially contains information relating to facts at issue in this litigation. ESI includes all electronically stored documents. ESI further includes the following: (i) information or data that is generated, received, processed, and recorded by computers and other electronic devices, including Metadata (*e.g.*, author, recipient, file creation date, file modification date); (ii) internal or external web sites or apps; (iii) output resulting from the use of any software program or social media application, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, BlackBerry® Messenger, AOL Instant Messenger (or similar programs or files), bulletin board programs, operating systems, source code of all types, Outlook Profile Files or PRF files, Palm Resource Code or PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; (iv) activity listings of electronic mail receipts and/or transmittals; and (v) any and all items stored on computer memories, hard disks, floppy disks, CDROM, magnetic tape, microfiche, DVDs, CDs, external hard drives, flash drives, memory cards or on any other media for digital data storage or transmittal, including personal digital assistants

(e.g., Palm Pilots), hand-held wireless devices (e.g., BlackBerrys), cell phones, iPods, iPads or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

14. "Face Recognition" or "Facial Recognition" means any automated, algorithmic or other computational process or analysis through which an individual's face can be detected and a determination as to the likely identity of the individual can be made, including but not limited to processes through which Face Templates are used to compare known faces against a new face and see if there is a probable match or similarity.

15. "Face Template" means any set of Biometric Data or Biometric Identifiers, including without limitation any scan, graphical or other algorithmic representation of measurements or patterns, relating to an individual's facial features and characteristics, regardless of the source of any such measurement, pattern or data.

16. "Face Template Database" or "Database(s)" means the stored collection or database containing all previously collected Face Templates.

17. "Identify" when used in reference to a document means to state its formal and informal title(s); subject matter or nature; date(s) of preparation; date(s) of use; and to identify the person(s) who signed it or under whose name the document was issued, the author(s), addressee(s) and recipient(s) of the document and its present or last known custodian.

18. "Identify" when used in reference to a natural person means to state the person's full name, present or last known business and home address, phone number(s) and employment title or position. When used in reference to an entity other than a natural person, "identify" means to state the full name of the entity, the type of entity and the address and phone number of the entity's principal place of business.

19. "Identify" when used in reference to a product means to provide its trade name, model number, firmware version, and software version.

20. "Identify" when used with respect to an event, transaction or occurrence means to describe the act in complete and reasonable detail; state the time, date, and location of the event, transaction or occurrence; identify all persons participating or present; and identify all documents relating thereto.

21. "IP" means Internet Protocol.

22. "Metadata" means or refers to data providing information about one or more aspects of data, including a geo-tag and information embedded in a native file or other data that may not be viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and validity of the electronic file as well as information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

23. "Native Data Format" means or refers to the format of ESI, whether structured or unstructured, as originally generated or used by the producing party in the usual course of its business and in its regularly conducted activities.

24. "Person(s)" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, research institutions, academic institutions, organizations, and all other entities.

25. "Probe Image" means or refers to a photograph, video frame or other image uploaded by a user of software or an app offered by Clearview and/or Rocky Mountain to Clearview's and/or Rocky Mountain's Face Template Database to determine or help determine the

identity of the person in the photograph, video frame or other image through the use of Face Recognition.

26. "Proposed Class Member" means or refers to any person described in paragraph 63 of the Consolidated Class Action Complaint.

27. "Related To" or "Relating To" means to consist of, concern, discuss, evidence, mention, regard, refer to, reflect, rely upon, use, or reference the matter described.

28. "Rocky Mountain Facial Recognition App or Software" means the software or software application provided or offered by Rocky Mountain that allows users to upload probe images to Rocky Mountain's Face Template Database to determine or help determine the identity of the person(s) in the probe images through the use of Face Recognition.

29. "Security Breach" means any unauthorized access to stored information and/or data regardless of whether such data and/or information was altered, copied or changed.

30. "Testimony" means any recorded statements, written or oral, provided informally or under oath, as evidence or for fact-finding purposes, before any court, agency, legislative body, arbiter or other authority, including without limitation, at a deposition, hearing, trial, investigation, or arbitration.

## RULES OF CONSTRUCTION

1. The terms "all" and "each" should be construed as "all and each." The word "all" means "any and all," and the word "any" means "any and all."

2. The term "including" means "including, but not limited to." The term "include(s)" means "include(s), without limitation."

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. The use of the singular form of any word includes the plural and vice versa.

5. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6. Defined terms shall have the meanings assigned to them whether or not they are capitalized.

7. For any term used herein, which is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these Interrogatories shall be resolved so as to construe these Interrogatories as broadly as possible.

8. If your answer to any Interrogatory relies on your reference to any documents you have produced, indicate which pages of your production you are referencing. You may do so by referencing document numbers (*i.e.*, Bates stamp numbers).

9. Unless otherwise stated, the Relevant Time Period for all requests is January 1, 2015 to the present.

## INTERROGATORIES

*TO ALL DEFENDANTS:*

**INTERROGATORY NO. 1:**

Identify each Person answering, assisting, or participating in preparing the answers to these Interrogatories.

**INTERROGATORY NO. 2:**

Identify each Person who has knowledge or claims to have knowledge of any allegation contained in the Consolidated Class Action Complaint, your answer to the Consolidated Class Action Complaint, or your Affirmative Defenses, and for each such person, describe the subject matter of his or her knowledge.

**INTERROGATORY NO. 3:**

Describe all efforts you made to comply with BIPA, including efforts made in connection with the creation, development, operation and use of the Clearview and/or Rocky Mountain Facial Recognition App or Software, including: (a) the dates of the efforts; (b) any efforts you made to inform any Plaintiff or Proposed Class Member that you were collecting, capturing or otherwise obtaining his or her Biometric Data, Biometric Identifiers and/or Biometric Information; (c) any efforts you made to obtain a written release from any Plaintiff or Proposed Class Member regarding your collection, capture or obtainment of his or her Biometric Data, Biometric Identifiers and/or Biometric Information; (d) any efforts you made to obtain the consent of any Plaintiff or Proposed Class Member prior to your disclosure, redisclosure or dissemination of his or her Biometric Data, Biometric Identifiers and/or Biometric Information; and (e) any efforts you made to store, transmit and protect from disclosure all Biometric Data, Biometric Identifiers and/or Biometric Information using the standard of care within your industry and in a manner that is the same or more protective than the manner in which you store, transmit and protect other confidential and sensitive information.

**INTERROGATORY NO. 4:**

Describe all information, including but not limited to all Biometric Data, Biometric Identifiers, Biometric Information, metadata, hyperlinks, or residencies, that you obtained from photographs, video frames or other images included in the Face Template Database.

**INTERROGATORY NO. 5:**

If you contend that Plaintiffs and Proposed Class Members were informed of or consented to your collection, capture, obtainment, distribution, redistribution, use and dissemination of their Biometric Data, Biometric Identifiers and/or Biometric Information, describe all information that supports or otherwise relates to your contention, including whether you informed Plaintiffs and Proposed Class Members of your collection, capture, obtainment, distribution, redistribution, and dissemination of the above-described information and received their consent to engage in those activities prior to you engaging any such activities.

**INTERROGATORY NO. 6:**

Identify each and every written policy you made available to the public that established a retention schedule and guidelines for permanently destroying Face Templates, Biometric Data, Biometric Identifiers and/or Biometric Information.

***TO DEFENDANTS CLEARVIEW, TON-THAT, SCHWARTZ, ROCKY MOUNTAIN AND MULCAIRE***

**INTERROGATORY NO. 7:**

Identify all Persons involved with your development, marketing, sales, distribution, or use of the Clearview Facial Recognition App or Software or the Rocky Mountain Facial Recognition App or Software and describe each person's involvement.

10

**INTERROGATORY NO. 8:**

Identify with specificity all sources from which you have obtained any image included in your Face Template Database and the date range during which you obtained images from each source.

**INTERROGATORY NO. 9:**

State the total number of images in your Face Template Database and the total number of images constituting "Blocked Illinois Photos" as that term is used in paragraph 36 of the Declaration of Thomas Mulcaire in Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. 43-1).

**INTERROGATORY NO. 10:**

Identify all persons who have used the Clearview Facial Recognition App or Software or the Rocky Mountain Facial Recognition App or Software or who have received a license or other permission or authorization to access or use those apps or software to perform Facial Recognition and, for each such person, state whether the person was a State agency or local unit of government (as those terms are used in BIPA) or worked for or was otherwise affiliated with a State agency or local unit of government. To the extent a person worked for or was otherwise affiliated with a State agency or local unit of government, please describe the nature of the work or affiliation.

**INTERROGATORY NO. 11:**

Describe all efforts made by you to market the Clearview Facial Recognition App or Software or the Rocky Mountain Facial Recognition App or Software, including: (a) training seminars offered; (b) webinars offered; (c) demonstrations provided at conventions, forums or other locations; (d) marketing materials; and (e) renting/obtaining booths or tables at conventions, forums or other similar types of events.

**INTERROGATORY NO. 12:**

Describe all information, including all Biometric Data, Biometric Identifiers, Biometric Information, metadata, hyperlinks, URLs, and places of residence, that you provided to users of the Clearview Facial Recognition App or Software and/or the Rocky Mountain Facial Recognition App or Software regarding the persons whose images were in your Face Template Database.

**INTERROGATORY NO. 13:**

Describe in detail the process by which you obtained Biometric Data, Biometric Identifiers and/or Biometric Information for each image in your Face Template Database and describe the specific information, annotations and quantitative measures related to intrinsic characteristics of faces obtained, collected, extracted, or derived from such images.

**INTERROGATORY NO. 14:**

State whether you have suffered or otherwise have been made aware of any Security Breach or other unauthorized access or other breach of: (a) your Face Template Database; (b) any Biometric Data or Biometric Identifiers extracted or derived from images in your Face Template Database; or (c) any server or other electronic equipment on which any of the images or data described in (a) and (b), above, were stored in whole or in part and, if such unauthorized access or other breach has occurred, describe when the Security Breach or other unauthorized access or breach occurred and provide all details regarding the Security Breach or other unauthorized access or breach.

**INTERROGATORY NO. 15:**

State all revenue generated by the: (a) Clearview Facial Recognition App or Software and all expenses specifically attributable to the Clearview Facial Recognition App or Software, individually identified to the extent possible; and (b) the Rocky Mountain Facial Recognition App

or Software and all expenses specifically attributable to the Clearview Facial Recognition App or Software, individually identified to the extent possible.

**INTERROGATORY NO. 16:**

Identify (including their title title and department) every current or former: (a) employee, officer, contractor or agent of Clearview AI, Inc. and/or Rocky Mountain; or (b) current or former employee, contractor or agent of any third-party company retained by Clearview AI, Inc. and/or Rocky Mountain with responsibility for the development, design, or implementation of the Clearview Facial Recognition Software or App or the Rocky Mountain Facial Recognition Software or App.

**INTERROGATORY NO. 17:**

State the total number of photographs or images that include faces that have been uploaded to your Face Template Database from IP addresses in the State of Illinois during each calendar year.

**INTERROGATORY NO. 18:**

State by name and location any database or server on which you store or have stored Biometric Data, Biometric Identifiers and/or Biometric Information generated by or from photographs or images.

**INTERROGATORY NO. 19:**

Identify all banks or other types of financial institutions held in your name and used by you in connection with the operations of Clearview and/or Rocky Mountain and any of their predecessors, successors, subsidiaries or affiliates and for each bank or financial institution identified provide: (a) the signatories on each account; (b) the account number for each bank

account at each bank or financial institution; (c) the date(s) on which each account was opened and/or closed; and (d) the name under which each account is held.

**INTERROGATORY NO. 20**

Identify all addresses (including employee addresses) from which work for Clearview and/or Rocky Mountain has been conducted, including addresses from which work was performed related to: (a) Clearview's finances; (b) the collection of client payments; (c) the development and maintenance of your Face Template Database, the Clearview Facial Recognition App or Software and/or the Rocky Mountain Facial Recognition App or Software; (d) sales and marketing; (e) obtaining investors and/or investor relations; (f) security; and (g) operations.

*TO DEFENDANT MACY'S*

**INTERROGATORY NO. 21:**

Identify all locations (including retail store locations) from which you captured, collected or otherwise obtained a probe image that subsequently was uploaded to Clearview's Face Template Database using Clearview's Facial Recognition App or Software.

**INTERROGATORY NO. 22:**

State the purpose(s) or reason(s) for which you used Clearview's Facial Recognition App or Software.

Dated: May 24, 2021

By:   /s *Scott R. Drury*
      SCOTT R. DRURY
      *Plaintiffs' interim lead class counsel*

Mike Kanovitz
Scott R. Drury
Andrew Miller
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  Scott R. Drury, an attorney, certifies that on May 24, 2021, he served a true and correct copy of the foregoing document by email on counsel of record for Defendants.

              /s/ Scott R. Drury
              SCOTT R. DRURY