**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | ) ) ) ) ) ) ) | Case No. 1:21-cv-00135<br><br>Hon. Sharon Johnson Coleman |

**<u>CLEARVIEW DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL</u>**

Defendants Clearview AI, Inc. ("Clearview"), Rocky Mountain Data Analytics LLC, Hoan Ton-That, Richard Schwartz, and Thomas Mulcaire (collectively, the "Clearview Defendants"), by and through their counsel, respectfully submit this memorandum of law in opposition to Plaintiffs' motion to compel (Dkt. 213) (the "Motion").

## INTRODUCTION

The Motion results from Plaintiffs serving improperly overbroad discovery requests on the Clearview Defendants, failing to timely object to the Clearview Defendants' discovery responses, and refusing to meet and confer with the Clearview Defendants on many of the identified issues. The Motion should be stricken, or, in the alternative, denied.

Before considering the merits of the Motion, the Court should strike the Motion for failing to comply with the Local Rules, which require Plaintiffs to meet and confer with the Clearview Defendants on discovery disputes before seeking relief from the Court. Specifically, in response to a discovery letter received from Plaintiffs, the Clearview Defendants sent a detailed letter on November 9, 2021 (Dkt. 213-16) that offered to meet and confer on Plaintiffs' identified issues. Rather than engage in that process, Plaintiffs filed their Motion six days later. Had Plaintiffs conferred with the Clearview Defendants, the parties very likely could have narrowed the issues for the Court. Thus, the Court should strike the Motion and order Plaintiffs to meet and confer with the Clearview Defendants to allow the parties to do just that.

If the Court does consider Plaintiffs' Motion on the merits, the Motion should be denied because Plaintiffs have failed to demonstrate that the information they seek is non-privileged, relevant information proportional to the needs of this case. Plaintiffs' requests are exceptionally overbroad, seeking information with little or no relevance to the alleged privacy issues in dispute. Any minimal relevance that could result from information produced in response to these requests

1

would not overcome the unreasonable burden that they would place on the Clearview Defendants. For example, Plaintiffs have requested "[a]ll documents" concerning Clearview's "Face Template Database," "Facial Recognition App or Software," and "Facial Recognition technology." As written, that request essentially seeks every single document in Clearview's possession. When Clearview pointed this out to Plaintiffs, they refused to narrow the request. As another example, Plaintiffs request information that the Clearview Defendants do not possess and that would require them to develop custom code to generate. Rule 26 imposes no such obligation on the recipient of discovery requests. As detailed below, the Motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs' version of events mischaracterizes the parties' discovery disputes and omits key facts. As the following chronology makes clear, Plaintiffs served burdensome and improper discovery requests, the Clearview Defendants responded promptly to attempt to narrow the requests to relevant documents and information, and Plaintiffs delayed in engaging with the Clearview Defendants about their responses. The Clearview Defendants nonetheless produced responsive documents and information throughout this period.

On May 24, 2021, Plaintiffs served 50 individual requests for production (the "RFPs") and 20 interrogatories with multiple subparts (the "Interrogatories"). (Dkt. 213-3, 213-2.)

On July 1, the Clearview Defendants timely served responses and objections to the RFPs and Interrogatories by the agreed deadline. (Dkt. 213-5, 213-4.) For the vast majority of Plaintiffs' requests, the Clearview Defendants agreed either to produce documents or information or to meet and confer. Even for unreasonably broad requests, such as, for example, requests for all documents concerning Clearview's database (RFP No. 3) and Clearview's facial recognition technology (RFP No. 6), the Clearview Defendants stated they would meet and confer. (Dkt. 213-5 at 6-7, 8.)

On July 26, almost a month after receiving the Clearview Defendants' responses and objections, Plaintiffs sent a letter raising supposed issues with 23 of the Clearview Defendants' RFP responses and five of their Interrogatory responses. (Dkt. 213-6.) Plaintiffs' July 26 letter requested to meet and confer by phone on August 9, and the Clearview Defendants agreed.

During the August 9 meet-and-confer, the parties discussed each of the issues that Plaintiffs raised in their letter. For each issue, the Clearview Defendants either agreed to produce some of the requested documents or information, explained why they could not produce the full scope of requested documents or information, or agreed to further consider any remaining requests and report back with their position. With respect to the timing of the Clearview Defendants' document production, Plaintiffs requested that a production of "hard documents," such as insurance policies and financial documents, be made promptly. The Clearview Defendants agreed to make that production, and stated that they would continue to make rolling document productions thereafter.

A day later, on August 10, Plaintiffs emailed the Clearview Defendants to memorialize the meet-and-confer. (Dkt. 213-7.) On August 19, the Clearview Defendants responded. (Dkt. 213-8.) Plaintiffs did not reply to the Clearview Defendants' August 19 letter. In fact, as detailed below, Plaintiffs raised no other issues with the Clearview Defendants' discovery responses until over two months later.

In the meantime, on August 20, the Clearview Defendants made an initial production of "hard documents," consistent with the request Plaintiffs made at the August 9 meet-and-confer. (Ex. A.) The same day, the Clearview Defendants also provided Plaintiffs with a list of their proposed search terms. (Ex. B.) On September 2, Plaintiffs proposed an overbroad list of terms that included generic terms, such as "internet," "web," "photo," "account," "access," and "login."

3

(Ex. C.) On September 10, the Clearview Defendants proposed a modified list of terms as a compromise. (Ex. D.)

Based on the parties' existing agreements regarding the Clearview Defendants' discovery responses and the Clearview Defendants' September 10 search terms, the Clearview Defendants have produced over 20,000 documents and over 110,000 pages.[1] (Exs. A, E, F.)

Plaintiffs delayed six weeks, until October 25, to send their proposed revisions to the Clearview Defendants' September 10 search terms. (Ex. G.) The following day, October 26, Plaintiffs sent the Clearview Defendants another communication about the Clearview Defendants' discovery responses—over two months after the last communication between the parties on the subject. (Dkt. 213-12.) In their October 26 letter, Plaintiffs raised objections related to 21 RFP responses, 10 interrogatory responses, and the general objections in the Clearview Defendants' July 1 discovery responses. (*Id.*) Notably, Plaintiffs' October 26 letter raised numerous issues for the first time. At the same time Plaintiffs sent their October 26 letter, they asked to meet and confer with the Clearview Defendants about the letter on a call that had been previously scheduled for October 27. (Dkt. 213-13.) The Clearview Defendants responded that they needed time to consider the letter and respond in writing, given the length of Plaintiffs' letter (10 pages) and the number of issues raised, but the Clearview Defendants agreed they would meet and confer thereafter. (*Id.*)

---

[1] Given the extensive effort the Clearview Defendants have gone through to keep the discovery process moving forward, it would be unduly burdensome to force the Clearview Defendants to re-review the document universe they have already collected and reviewed simply because Plaintiffs belatedly sent their October 26 letter, which attempts to increase the scope of the Clearview Defendants' discovery obligations over two months after the parties met and conferred about the Clearview Defendants' discovery responses. Plaintiffs' claim that the Clearview Defendants "have run unspecified ESI searches" and "unilaterally chose to run searches while the parties were negotiating the proper search terms" (Mot. at 9) is misleading. As detailed above, Plaintiffs did not respond to the Clearview Defendants' search term proposal for over six weeks, so the Clearview Defendants reasonably applied those search terms in the interim in the interest of moving the discovery process forward. Had the Clearview Defendants not done so, we have no doubt that Plaintiffs would have complained about delays in making additional document productions.

On November 9, the Clearview Defendants addressed, in writing, each of the issues raised in Plaintiffs' letter. (Dkt. 213-16.) In their letter, the Clearview Defendants offered to consider several of Plaintiffs' requests if Plaintiffs narrowed the requests or articulated the relevance of the requests (RFP Nos. 4, 5, 6) and offered to meet and confer regarding other requests (RFP Nos. 7, 8, 14, 16, 21, 32, 36, 38, 41; Interrogatory Nos. 3, 14, 17). (*Id.*) Without ever responding to the Clearview Defendants' November 9 letter or attempting to schedule a time to meet-and-confer, Plaintiffs filed the instant motion to compel. Many of the issues raised by Plaintiffs in the Motion are included in the list of issues about which Clearview offered to meet and confer.

## ARGUMENT

### I. THE COURT SHOULD STRIKE PLAINTIFFS' MOTION TO COMPEL FOR FAILURE TO COMPLY WITH THE LOCAL RULES.

Plaintiffs filed the Motion in violation of the Local Rules, which required Plaintiffs to meet and confer with the Clearview Defendants before moving to compel. L.R. 37.2. Although the Clearview Defendants offered to meet and confer on the very issues raised in the Motion (*see* Dkt. 213-16), Plaintiffs made no such attempt to do so. Plaintiffs' assertion that the Clearview Defendants "dodged meeting and conferring," (Mot. at 4), is simply untrue. As detailed above, on October 26, Plaintiffs raised numerous issues for the first time in a 10-page letter (Dkt. 213-12), after over two months of silence on discovery issues. Plaintiffs asked to discuss their letter with the Clearview Defendants the very next day. (Dkt. 213-13.) The Clearview Defendants promptly informed Plaintiffs that they needed time to consider the letter and respond in writing. (*Id.*) On November 9, the Clearview Defendants did so, responding to each issue discussed in Plaintiffs' October 26 letter, and offering to meet and confer. (Dkt. 213-16.) Instead, without even attempting to schedule a meet-and-confer with the Clearview Defendants about those issues, Plaintiffs filed the instant Motion. While many of the issues raised in Plaintiffs' Motion likely

5

could have been resolved in a meet-and-confer, the parties never had an opportunity to do so. The Court therefore should strike the Motion for failure to comply with the Local Rules and give the parties an opportunity to narrow the disputed issues without unnecessarily consuming judicial resources.

## II. THE MOTION SHOULD BE DENIED BECAUSE IT SEEKS INFORMATION OUTSIDE THE SCOPE OF DISCOVERY PERMITTED UNDER RULE 26.

If the Court does not strike the Motion, it should deny the Motion. The Federal Rules of Civil Procedure limit discovery to "nonprivileged matter that is relevant to [a] party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information Plaintiffs seek to compel does not meet the requirements of Rule 26 because it is neither relevant to the claims and defenses, nor proportional to the needs of this case.

### A. Relevant Time Period.

Plaintiffs seek to apply an overbroad time period to every one of their discovery requests, and their Motion ignores the Clearview Defendants' attempt to reach a compromise on this issue.

Plaintiffs insist that they are entitled to documents dating back to January 1, 2015 (Mot. at 5-6), even though the Clearview Defendants informed Plaintiffs that Clearview did not exist for much of that period, and counter-proposed a start date of August 3, 2017, when Clearview was founded. (Dkt. 213-16 at 2.) The Clearview Defendants should not be forced to search for documents from before Clearview was formed. Accordingly, Plaintiffs' motion to compel the production of documents prior to August 3, 2017 should be denied.

6

The Clearview Defendants also initially proposed producing electronically stored information for the period up until the date litigation commenced (*i.e.*, January 22, 2020). Consistent with standard litigation practice, this approach is reasonable because the likelihood of privileged documents increases after litigation is filed, and there is a "diminishing relevance of after-the-fact evidence." *Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 467677, at *5 (N.D. Ill. Feb. 3, 2017). Nonetheless, as a compromise, in their November 9 letter, the Clearview Defendants invited Plaintiffs to identify specific discovery requests that they believed would adduce relevant documents or information for the time period after they launched this litigation. (Dkt. 213-16 at 2.) Plaintiffs never responded to this invitation. In their Motion, without citation, Plaintiffs assert that they need discovery through the present because of the Clearview Defendants' unspecified "ongoing unlawful conduct" (Mot. at 6), but Plaintiffs have not even attempted to articulate how their 50 RFPs and 20 Interrogatories are relevant to issues going through the present. Accordingly, the Court should limit the responsive time period as the Clearview Defendants have proposed: August 3, 2017 until January 22, 2020.

**B.      Responses to Interrogatories Pursuant to Rule 33(d).**

The Clearview Defendants responded to six interrogatories by agreeing to produce documents in lieu of written answers, consistent with Rule 33(d). Plaintiffs contend that the Clearview Defendants "walked back their commitment," (Mot. at 7), but the Clearview Defendants have done no such thing. The Clearview Defendants committed to produce documents in their interrogatory responses, and in reply to Plaintiffs' letter regarding those interrogatory responses, the Clearview Defendants stated that they are continuing to identify responsive documents, will make rolling productions, and will produce at log of the documents responsive to specific interrogatories after the rolling productions are complete. (Dkt. 213-16 at 2.)

7

Plaintiffs contend that they "should not have to wait until some unspecified date in the future to learn which records are intended to be responsive." (Mot. at 7.) But the Clearview Defendants are making rolling productions and cannot identify all documents responsive to specific interrogatories until their productions are complete. As a result, the Clearview Defendants have agreed, pursuant to Rule 33(d), to provide Plaintiffs with a log of the relevant documents upon the completion of the Clearview Defendants' rolling document productions. (Dkt. 213-16 at 2.) Plaintiffs will not be prejudiced by receiving a complete response to the Interrogatories at that time.

### C. Documents Regarding Plaintiffs.

The Clearview Defendants have agreed to produce all non-privileged documents that include the names of the Plaintiffs. (Dkt. 213-5 at 5-6; Dkt. 213-16 at 3.) But Plaintiffs appear to want more—the images and facial vectors of Plaintiffs. (Mot. at 8.) As the Clearview Defendants have explained to Plaintiffs—and as the Motion fails to mention—the only way for Clearview's technology to identify photographs of Plaintiffs is by using an image of each Plaintiff as a probe image. (Dkt. 213-16 at 3.) Plaintiffs have not consented to such a search. (*Id.*) The Clearview Defendants will not use Plaintiffs' images to search for responsive documents unless Plaintiffs consent to those searches and provide the relevant images, which to date Plaintiffs have not done.

To the extent Plaintiffs seek documents about Plaintiffs that post-date the filing of this lawsuit, those are not discoverable because they are work product created in preparation for litigation. Rule 26 does not allow Plaintiffs to obtain such work product. Accordingly, Plaintiffs' motion to compel the production of all documents concerning the Plaintiffs that post-date the filing of this lawsuit should be denied.

### D. Requests Regarding Clearview's Database, Technology, and Software (RFPs 2-9, 11, 16, 30, 41; Interrogatories 8-9, 17-18).

Plaintiffs have sought all documents related to Clearview's database and technology, including, for example, "[a]ll documents" concerning Clearview's "Face Template Database" (RFP No. 3), "Facial Recognition App or Software" (RFP No. 4), and "Facial Recognition technology" (RFP No. 6). These requests are unreasonably overbroad and could—quite literally—encompass every document in Clearview's possession, as Clearview's entire business is centered on the Clearview App. The Clearview Defendants have offered to meet and confer regarding these requests, but Plaintiffs have refused to do so. Plaintiffs assert that the requested discovery is "highly relevant" (Mot. at 11), but they do not explain how the information they seek is relevant to disputed facts at issue in this case. For example, they assert that "[t]his case centers on Defendants' Database, technology and related software and apps," (*id.* at 8), but that does not entitle Plaintiffs to *every document* in Clearview's possession. Rather, Plaintiffs must narrow their requests to cover specific claims and defenses. The specific requests discussed in the Motion have no relevance to the claims or defenses in this action, as set forth below.

**RFP No. 5:** This request seeks "[a]ll documents related to the way in which you trained Clearview's Facial Recognition App . . . for reliability and/or accuracy, or tested its reliability and/or accuracy." In their November 9 letter, the Clearview Defendants said that they would consider this request if Plaintiffs could articulate its relevance. (Dkt. 213-16 at 4.) Instead of responding, Plaintiffs filed their Motion, in which they argued for the first time that this request is relevant to determining "whether Plaintiffs' and class members' images were used in connection with the training." (Mot. at 9-10.) But if the purpose of this request is only to determine information about potential class members, the parties could negotiate a more targeted way to obtain that information, and, in any event, it can wait until a later stage in the litigation. *See Dixon*

9

*v. Jefferson Cap. Sys., LLC*, No. 119CV02457JMSDML, 2021 WL 2026521, at *3 (S.D. Ind. Feb. 16, 2021) (holding that it "was appropriate—and proportional to the needs of the case—to delay production by the defendants of class-member specific data until it is determined whether the class is very small in size . . . or very large").

**RFPs 7-8, 16, and 41:** Plaintiffs also seek "the URLs associated with the photos Defendants scraped." (Mot. at 10.) In their interrogatory responses, the Clearview Defendants verified that the Clearview App includes between eight and twelve billion URLs. (Dkt. 213-1.) Plaintiffs have not demonstrated why every URL from which Clearview collected images is relevant to this case. In any event, producing that amount of information would be hugely burdensome and not proportional to the needs of this case. *See Beam v. Watco Companies, L.L.C.*, No. 318CV02018SMYGCS, 2021 WL 3054971, at *5 (S.D. Ill. Jan. 20, 2021) (denying motion to compel production of billions of underlying data points). It would be similarly irrelevant and burdensome to produce "all documents" concerning "the dates on which Defendants obtained biometric data and the reasons for obtaining it, how Defendant's technology functions in terms of producing biometric data from an image, [and] searches performed with Defendants' software." (Mot. at 10.) Plaintiffs state that they also seek information about "whether the search or result involved any Plaintiff or class member" (*id.*), but Plaintiffs have refused to engage with the Clearview Defendants' efforts to work with Plaintiffs to identify photographs of Plaintiffs, which cannot be done by using their names as search terms. Indeed, the Clearview Defendants offered to meet and confer regarding all of these discovery requests, but Plaintiffs refused.

**RFP No. 11:** In response to this request, the Clearview Defendants stated that they do not believe they have responsive documents but would attempt to identify them using ESI search terms. (Dkt. 213-16 at 5.) Plaintiffs contend that this response is insufficient (Mot. at 11), but

10

provide no justification for why the Clearview Defendants should be compelled to produce documents that they are not aware exist and that are not identifiable with search terms. In any case, had Plaintiffs attempted to meet and confer with the Clearview Defendants about their request for metadata, the parties likely could have resolved this dispute without Court intervention.

**RFP No. 30; Interrogatory 17:** Plaintiffs also seek the number of images uploaded from Illinois IP addresses, refusing to accept the Clearview Defendants' response that they do not know which images were uploaded from Illinois IP addresses. (*Id.* at 10-11.) Plaintiffs cannot compel production of this information just because they have a "feeling" that the documents exist. *Metcalf v. Ross*, No. 19 C 4623, 2021 WL 1577799, at *2 (N.D. Ill. Apr. 22, 2021) ("[A] feeling is never enough. Courts do not accept mere speculation in a vague motion to compel.").

**Interrogatories 8, 9:** Similarly, Plaintiffs seek the precise number of images in Clearview's database, and the number of blocked Illinois photos. (Mot. at 11.) The Clearview Defendants have provided an approximate number of images in its database, and stated that the number is constantly changing as Clearview collects more images. (Dkt. 213-16 at 9; Dkt. 213-1.) Likewise, the Clearview Defendants do not possess documents showing the number of blocked Illinois photographs. (Dkt. 213-16 at 9-10.)

### E. Security Breaches (RFP 32; Interrogatory 5).

Plaintiffs seek all documents concerning any security breach at Clearview. Plaintiffs seek this information because they have alleged that Clearview violated the Illinois Biometric Privacy Act's ("BIPA") requirement to "store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry."[2] 740 ILCS 14/15(e). Instead of responding to Plaintiffs' overbroad request, the

---

[2] The Clearview Defendants deny that they collect, store, or use "biometric identifiers" or "biometric information" as those terms are defined in BIPA. Solely for the purposes of this Opposition, the Clearview Defendants understand

11

Clearview Defendants have agreed to provide a narrower scope of documents based on the statutory text concerning safeguards for "biometric identifiers and biometric information." Specifically, because Plaintiffs contend that the Clearview Defendants do not have sufficient security measures to protect facial vectors, the Clearview Defendants agreed to produce reports concerning security incidents involving Clearview's database that resulted in known data exfiltration, *i.e.* where data was actually copied or transferred. (Dkt. 213-8 at 2.) Plaintiffs' request for all documents related to all "security breaches"—regardless of whether such breaches relate to alleged "biometric identifiers and biometric information"—is overbroad and their motion to compel production of those documents should be denied.

### F. Financial Information (RFPs 34 and 36 and Interrogatories 15, 19, and 20).

The Court should also deny Plaintiffs' motion to compel the Clearview Defendants (and various nonparty affiliates) to produce intrusive financial information that falls outside the scope of discovery under Rule 26. Plaintiffs argue that they are entitled to this sensitive financial information because it relates to Plaintiffs' theory that the Clearview Defendants are "alter egos." (Mot. at 12-13.) Plaintiffs, however, fail to plead a theory of alter ego liability.[3] The Complaint contains only limited and conclusory allegations that Clearview was undercapitalized, that Clearview customers occasionally sent payments to Richard Schwartz's residence, and that Mr.

---

the terms "biometric identifiers" and "biometric information" to refer to the facial vectors created from the photographs Clearview obtains from the public internet.

[3] Plaintiffs also argue, without citation or explanation, that they are entitled to financial information under the so-called "personal participation" doctrine. (Mot. at 12.) However, this theory fails for the reasons described in the Clearview Defendants' motion to dismiss briefing. (*See* Dkt. 149 at 4-5.) Additionally, the "personal participation" doctrine does not provide a basis for discovery of financial information: Plaintiffs explain that they seek evidence of "intermingling of funds" and a lack of "corporate formalities"—factors that relate only to an alter ego theory, and not personal participation by the individual defendants. (Mot. at 13.) And, as for Plaintiffs' argument that the Clearview Defendants' tax returns are discoverable to support their claims for punitive damages, Plaintiffs fail to mention that Clearview has already produced its tax returns over a multi-year period, or that courts routinely deny motions to compel the production of individual tax returns. *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972) (holding that there is a policy against the disclosure of tax returns); *see also Cohn v. Taco Bell Corp.*, 92 C 5852, 1994 WL 383975, at *3 (N.D. Ill. July 20, 1994) (rejecting request to discover individual's tax returns).

Schwartz paid for some of Clearview's startup costs. (Compl. ¶¶ 36-39.) These allegations do not come close to showing that Clearview is "a sham and exist[s] for *no other purpose than as a vehicle for fraud*." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (emphasis added); *see also Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d 883, 896 (N.D. Ill. 2014) (courts "must find an element of fraud to pierce the corporate veil"). Indeed, the Complaint does not contain a single, specific allegation of fraud—to the contrary, it acknowledges that Clearview is a genuine business that collects and uses publicly-available images to create a searchable database that is available to its authorized users.

Plaintiffs' theory of alter ego liability is particularly weak and subject to dismissal. (*See* Dkt. 88 at 4-5.) It is reasonable for the parties to await the Court's forthcoming decision on the motion to dismiss before engaging in discovery relating to Plaintiffs' alter ego theory. The order on the motion to dismiss will determine whether the individual defendants will remain in the case at all, and whether alter ego liability remains a live issue. In deciding whether to compel discovery pending a motion to dismiss, the Court may consider whether a denial will "(1) . . . unduly prejudice or tactically disadvantage the non-moving party, (2) . . . simplify the issues in question and streamline the trial, and (3) . . . reduce the burden of litigation on the parties and on the court." *Sadler as Tr. of Larry R. Sadler Irrevocable Tr. v. Retail Properties of Am., Inc.*, 12 C 5882, 2013 WL 12333447, at *1 (N.D. Ill. Sept. 27, 2013). In this case, each factor favors denying Plaintiffs' motion to compel. First, a stay of discovery on the alter ego issue will not prejudice Plaintiffs "because they may obtain the documents at a later date, if necessary and permissible." *Id*. Second, the motion to dismiss is "not frivolous" and is "potentially dispositive": should the Clearview Defendants prevail on the alter ego portion of the motion to dismiss, discovery of the disputed financial information will be moot. *Id*. And third, compelling the Clearview Defendants to

13

respond to this intrusive discovery into their sensitive financial information will cause burden and expense that ultimately may not be necessary at all. This Court reached a similar conclusion in this matter when it denied Plaintiffs' motion to compel discovery from Macy's and granted the motion to stay. (*See* Dkt. 166.)

Moreover, courts recognize that parties are not entitled to the type of extensive financial information that Plaintiffs seek to compel based on a threadbare allegation that the Clearview Defendants are alter egos of each other. "[D]iscovery on a claim that [is] not validly alleged [is] nothing more than a 'fishing expedition.'" *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns., Inc.*, CIV.A. 01-5627, 2002 WL 31356302, at *2 & n.2 (E.D. Pa. Oct. 16, 2002) (denying motion to compel because the plaintiff "failed to make sufficient allegations to warrant discovery into an alter-ego/piercing the corporate veil claim" where the complaint contained "no allegation of fraud" and as a result, "piercing the corporate veil is not within the subject matter of this case for purposes of Rule 26"); *see also McCurdy v. Wedgewood Capital Mgmt. Co., Inc.*, 1998 WL 964185, at *9 (E.D. Pa. Nov. 16, 1998) ("The mere allegation that corporations were not operated as independent entities . . . is insufficient to support discovery of the financial information sought by the Plaintiff" and "to compel discovery of the information would be to authorize an unwarranted fishing expedition based on pure speculation."). For all of these reasons, the Motion should be denied with respect to those requests.

### G. BIPA (RFPs 21 and 38).

Plaintiffs seek all documents related to BIPA. In response, the Clearview Defendants have agreed to produce documents concerning Clearview's compliance with BIPA. (Dkt. 213-5 at 19.) Plaintiffs contend that they are also entitled to documents related to efforts to amend BIPA because that information is supposedly relevant to "whether Defendants acted recklessly or negligently."

14

(Mot. at 13.) This is the first time Plaintiffs have advanced this argument, even though the Clearview Defendants offered to meet and confer with Plaintiffs regarding these requests. To the extent that Plaintiffs seek information related to whether the Clearview Defendants were aware of BIPA prior to this lawsuit, the Clearview Defendants could produce a much narrower universe of documents than "all documents" related to BIPA. Plaintiffs' motion to compel production of documents in response to these overbroad requests should be denied.

### H. Customers and Users (RFP 14).

Lastly, Plaintiffs seek "[a]ll documents concerning users or customers of the Clearview . . . App or Software." In response, the Clearview Defendants agreed to produce documents sufficient to show the identity and contractual arrangements for users or customers of Clearview's App. (Dkt. 213-5 at 10-11.) Now Plaintiffs contend—for the first time—that they are also entitled to know if users were located in Illinois, marketed to in Illinois, or interacted with in Illinois. (Mot. at 13-14.) Had Plaintiffs sought to meet and confer with the Clearview Defendants about these narrower requests—which the Clearview Defendants offered to do on November 9 (Dkt. 213-16 at 6)—the parties likely could have come to an agreement. However, to the extent that the Motion seeks documents in response to their original request seeking "all documents" concerning Clearview's users, that overbroad and burdensome request should be denied.

## CONCLUSION

WHEREFORE, the Clearview Defendants respectfully request that the Court deny Plaintiffs' motion to compel.

15

December 3, 2021 Respectfully submitted,

By:    */s/ Precious S. Jacobs-Perry*

Precious S. Jacobs-Perry (ARDC No. 6300096)
Howard S. Suskin (ARDC No. 6185999)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Phone: (312) 222-9350
pjacobs-perry@jenner.com
hsuskin@jenner.com

Andrew J. Lichtman (pro hac vice)
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022-3908
Phone: (212) 891-1600
alichtman@jenner.com

Floyd Abrams
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Phone: (212) 701-3000
fabrams@cahill.com
jkurtzberg@cahill.com

Attorneys for Defendants Clearview AI, Inc., Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC, and Thomas Mulcaire

**CERTIFICATE OF SERVICE**

I certify that on December 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

By:   */s/ Precious S. Jacobs-Perry*