IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL THE CLEARVIEW DEFENDANTS TO RESPOND TO PLAINTIFFS' WRITTEN DISCOVERY**

**INTRODUCTION**

Defendants' response (Dkt. 219) is notable for what it omits:

*First,* nowhere in the response do Defendants acknowledge or defend their decision to renege on their explicit agreement to produce the "full universe of documents requested" in RFP 34. Nor do they explain why they misrepresented to the Court in connection their now-stricken motion to quash (Dkt. 179) that the "[financial] documents Plaintiffs seek from the Banks . . . . *are ones that the Clearview Defendants have already agreed to produce.*" *See id.* at 4-5[1] (emphasis added). While Defendants now contend the Court should stay discovery into their finances, they omit that they have not moved for such a stay.

*Second,* Defendants omit any evidentiary support for their conclusory claims of "burden." Indeed, Defendants make no attempt to describe how their documents are maintained or to estimate how long it would take to gather the requested information or the cost of doing so.

*Third*, Defendants omit that their claimed inability to produce information regarding Blocked Illinois Photos or Illinois-based IP addresses seemingly conflicts with their previous assertions regarding that information. In opposing Plaintiffs' preliminary injunction motion, Defendants represented that: (a) they would "not collect facial vectors stored on servers that are displaying Illinois IP addresses" (Dkt. 56 at 4; *see also* Dkt. 43-1 ¶ 39 (Mulcaire Decl.)); (b) Blocked Illinois Photos are subject to a document-retention program (Dkt. 43-1 ¶ 36); and (c) certain employees "have signed documentation stating that they understand that Clearview is storing the Blocked Illinois Photos solely for purposes related to ongoing litigation, and stating that they are not permitted to use the Blocked Illinois Photos for any other purpose." *Id.* ¶ 37.

---

[1] Citations to docketed entries are to the CM/ECF-stamped page numbers at the top of the page.

*Fourth*, Defendants omit any discussion of the fact that since the time Plaintiffs filed their respective lawsuits, Defendants have added approximately 7 billion photos and corresponding biometric data to the Database, more than tripling its size. Ignoring their ongoing unlawful conduct, Defendant advocate for a relevant time period that ends on the date the first complaint was filed.

*Fifth*, while Defendants reference that they have produced approximately 110,000 pages of documents, they omit that this is a case involving biometric data collected from *billions* of images. If anything, the number of pages referenced by Defendants shows the paucity of their production.

*Sixth*, while Defendants seemingly assert the work product privilege over post-litigation efforts to locate Plaintiffs' photos and biometric data, they omit that they have not produced a privilege log.

*Seventh*, Defendants omit key details regarding the efforts Plaintiffs made to meet and confer with Defendants and to otherwise resolve discovery disputes.

Defendants' willingness to omit critical information is telling. Indeed, when the omissions are combined with Defendants' above-described misrepresentations, Defendants' unmistakable willingness to do or say anything becomes clear. The actual facts show that Defendants have not satisfied their burden of showing why they do not have to provide complete and proper responses to the discovery at issue. Accordingly, the Court should grant Plaintiffs' motion, including awarding Plaintiffs all relief to which they are entitled under Fed. R. Civ. P. 37(a)(5).

# ARGUMENT

## I. Plaintiffs Have Satisfied Their Local Rule 37.2 Obligations.

Defendants contend that Plaintiffs made no attempt to meet and confer with Defendants regarding the issues raised in Plaintiffs' motion to compel. *See* Dkt. 219 at 6. The facts belie the contention:

- **October 12, 2021**: The parties met and conferred regarding Plaintiffs' subpoenas on Bank of America and JPMorgan Chase, NA. *See* Dkt. 213-9. During the meeting, Defendants stated their belief that their production of corporate financial documents may alleviate the need for the subpoenas. *Id.* at 2-3. Defendants referred Plaintiffs "to their *prior agreement to produce specific corporate and financial documents that Plaintiffs asked for in their Requests for Production.*" *Id.* at 2 (emphasis added).

- **October 20, 2021**: Plaintiffs' counsel sought to meet and confer with defense counsel regarding the production of Defendants' financial documents. *See* Dkt. 213-10 at 3. Plaintiffs' counsel noted that during the parties' August 9, 2021 meet and confer, Defendants "committed to producing documents on a rolling basis but have only made a single document production that did not include financial documents." *Id.* at 2. Plaintiffs' counsel requested that the documents be produced by October 21, 2021 or, alternatively, defense counsel provide a date certain by which the documents would be produced. The parties agree to further meet and confer on October 22, 2021. *Id.* at 2.

- **October 22, 2021**: The parties met and conferred "regarding the Clearview Defendants' document production" and discussed the "Clearview Defendants production of financial documents, as well as the status of the Clearview Defendants' overall document production." *See* Dkt. 213-11 at 2. Plaintiffs' counsel reminded defense counsel of their previous agreement to produce the "full universe of documents requested" in RFP 34. *See id.* Defendants committed to producing certain financial documents on October 29, 2021 and bank and credit card records on November 5, 2021. *Id.* The parties agreed to further meet and confer on Defendants' discovery responses, among other things, on October 27, 2021. *Id.*

- **October 26, 2021**: In connection with the parties scheduled October 27, 2021 meet and confer, Plaintiffs' counsel sent defense counsel a letter describing Defendants' numerous outstanding discovery deficiencies. *See* Dkt. 213-12. The letter provided Defendants with specific dates by which to comply with their discovery obligations in order to avoid an impasse. *See id.*

- **October 26, 2021**: Defense counsel indicated that they would not be prepared to discuss Plaintiffs' discovery letter on October 27, 2021. *See* Dkt. 213-13. Defense counsel stated that they would "review the letter and respond in due course." *Id.* Further, defense counsel sought to limit the scope of their previous agreement to produced documents responsive to RFP 34. *See* Dkt. 213-14 at 6.

3

- **October 27, 2021:** The parties met and conferred, but defense counsel would not discuss Defendants' discovery deficiencies. *See* Dkt. 213-14 at 2. Defense counsel also would not agree at that time to meet on October 28 or 29, 2021 – or any other date – to discuss Defendants' discovery deficiencies. However, defense counsel was available to meet and confer on October 28, 2021 to discuss issues they had raised with Plaintiffs' discovery responses. *See id.* Based on Defendants' unwillingness to meet and confer, Plaintiffs' counsel stated that the parties had reached an impasse. *See id.* However, Plaintiffs' counsel again offered to further meet and confer on October 28, 2021. *Id.*

- **November 5, 2021**: Defense counsel sent a letter reneging on its previous agreement to produce bank and credit card records by November 5, 2021. *See* Dkt. 213-15. The letter implicitly reneged on Defendants' agreement with respect to RFP 34, attempting to explain why Plaintiffs are not entitled to the financial records at issue. *See id.* Defense counsel unilaterally imposed a *de facto* stay of discovery of financial information, pending the Court's ruling on Defendants' motion to dismiss. *See id.*

- **November 9, 2021**: Defense counsel sent a letter addressing Defendants' discovery deficiencies. Dkt. 213-16.

- **November 10, 2021**: The parties met and conferred and discussed ESI. *See* Dkt. 213-17. Plaintiffs' counsel sought to discuss defense counsel's November 9, 2021 letter. *See id.* However, as had become routine, defense counsel would not discuss Defendants' discovery deficiencies. *See id.*

Based on the actual record, Plaintiffs clearly satisfied their Local Rule 37.2 obligations. The record demonstrates Defendants' disinterest in resolving the issues with their discovery responses and willingness to renege on agreements.

Notably, while Defendants repeatedly contend in their response that various issues raised in the motion to compel could have been resolved during a meet and confer (*see, e.g.,* Dkt. 219 at 6-7, 10-12, 16), they omit the above-described history and the fact that during the time between the filing of the motion to compel and the present, they have not sought to discuss any of the issues in this motion. Thus, Defendants' contentions ring hollow.

**II. Defendants Provide No Evidence of the Purported Burden of Responding to the Discovery Requests.**

In the response, Defendants make varying claims regarding the purported burden of responding to Plaintiffs' discovery requests. *See, e.g.*, Dkt. 219 at 3 ("unreasonable burden";

4

"Plaintiffs' served burdensome . . . requests"), 5, n.1 ("unduly burdensome"), 11 (producing information would be "hugely burdensome"; "It would be . . . burdensome" to produce the requested documents), 14-15 (requiring Defendants to produce financial records "will cause burden and expense that ultimately may not be necessary . . . ."), 16 (the Court should deny the "burdensome" request). As the party resisting Plaintiffs' discovery requests, Defendants have the burden of showing why the particular discovery requests at issue are improper. *Parvati v. Oak Forest*, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010). Defendants have failed to demonstrate that the discovery at issue would impose any undue burden them.

In determining the proper scope of discovery, a court may consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As the Committee Notes to the 2015 Amendment to Rule 26(b) provide, if a discovery dispute is brought before the Court, "the parties' responsibilities would remain as they have been since 1983. A party claiming *undue burden or expense* ordinarily has far better information – perhaps the only information – with respect to that part of the determination." Fed. R. Civ. P. 26(b)(1) advisory committee's notes. (emphasis added). "Merely because thousands of documents must be reviewed and the records are not well-organized does not amount to undue burden." *Brown v. Sheahan*, 1994 WL 148659, at *2 (N.D. Ill. Apr. 21, 1994).

Here, Defendants provide nothing more than conclusory assertions that responding to Plaintiffs' discovery will be burdensome. In most instances, Defendants do not even describe the burden as "undue." Nowhere do Defendants provide actual evidence of any purported burden, nor do they even describe it. Defendants do not disclose the number of documents at issue, where the documents are located, how the documents are organized, whether the documents have been gathered and/or reviewed or the amount of resources that would be needed to complete the

collection and review process. The closest Defendants come to describing any burden is a statement in a footnote regarding their unilateral decision to run ESI search terms without Plaintiffs' agreement that claims it "would be unduly burdensome to force the Clearview Defendants to re-review the document universe they have already collected and reviewed . . . ." Dkt. 219 at 5, n.1. Even there, Defendants provide no details or evidence of the "document universe" or why anything related to the review of that universe would be "unduly burdensome."

Plaintiffs note that Defendants chose to pursue an unlawful business model premised on the collection and use of biometric data obtained from billions of photos. Based on that business model, it is not surprising that discovery into Defendants' unlawful conduct may require the review of numerous documents. However, that does not amount to an undue burden, and Defendants have come forward with no evidence to show otherwise. *See Brown*, 1994 WL 148659, at *2.

## III. Plaintiffs Have Properly Defined the Relevant Time Period.

Defendants contend the relevant time period should begin on August 3, 2017 because that is when "Clearview was founded." Dkt. 219 at 7. The contention ignores Clearview's history and that Clearview is not the only defendant in this case. Clearview's founders – Hon Ton-That and Richard Schwartz – are also defendants. Based on publicly-available information, Schwartz and Ton-That began engaging in their alleged unlawful conduct prior to Clearview's formation. *See* Luke O'Brien, *The Far-Right Helped Create the World's Most Powerful Facial Recognition Technology Company*, HuffPost, Apr. 9, 2020, https://www.huffpost.com/entry/clearview-ai-facial-recognition-alt-right_n_5e7d028bc5b6cb08a92a5c48 (last viewed Dec. 10, 2021); Ryan Mac, *et al.*, *Clearview AI Says Its Facial Recognition Software Identified a Terrorism Suspect. The Cops Say That's Not True*, BuzzFeed News, https://www.buzzfeednews.com/article/ryanmac/clearview-ai-nypd-facial-recognition (last viewed Dec. 10, 2021). As set forth in the

above-cited articles: (a) by no later than 2016, Ton-That was developing the primary tools underlying the unlawful conduct alleged in this case, namely, tools to scrape images from the internet and a facial recognition algorithm; and (b) Ton-That and Schwartz met in 2016 and, by early 2017, registered the predecessor of Clearview:

HuffPost

- Ton-That was working on facial recognition as early as 2016;

- "In 2016, the Australian hacker [Ton-That] brought on two unnamed engineers to help him on the project [that would become Clearview] . . . . One helped design a program to scrape images of faces from a range of sites and social media platforms . . . . The other created a facial recognition algorithm.";

- "by early 2017 at the latest, [Ton-That and another – Charles Johnson] were in contact about scraping social media platforms for the facial recognition business";

BuzzFeed News

- "Originally known as Smartcheckr, Clearview was the result of an unlikely partnership between Ton-That . . . and Richard Schwartz . . . ."

- "Ton-That told the [New York] Times that [he and Schwartz] met at a 2016 event . . . after which they decided to build a facial recognition company."

- In February 2017 "Smartcheckr LLC was registered in New York, with Ton-That telling the [New York] Times that he developed the image-scraping tools while Schwartz covered the operating costs."

Because it is unknown at this time exactly when Ton-That and/or Schwartz began unlawfully collecting biometric data, Plaintiffs have defined the relevant time period as beginning on January 1, 2015 – which coincides with the applicable statute of limitations. In all events, the relevant time period should begin no later than January 1, 2016. As set forth in Plaintiffs' opening brief, the date on which Defendants began obtaining biometric data is relevant to Defendants' contention that they are exempt from BIPA under BIPA § 25(e) because they engaged in that conduct when working as a contractor for a State agency of local unit of government. There is no indication that

7

Defendants were working as government contractors in 2015 or 2016 (and Plaintiffs do not believe that Defendants have ever falling within the exemption).

Defendants further contend that the relevant time period should end on January 22, 2020. Dkt. 219 at 8. They also state that "as a compromise, in their November 9 letter, the Clearview Defendants invited Plaintiffs to identify specific discovery requests that they believed would adduce relevant documents or information for the time period after they launched this litigation." *Id.* In actuality, Defendants' November 9, 2021 letter states that "if Plaintiffs can identify specific requests that relate *to allegations that post-date the filing of the complaint*, we will consider those requests." *See* Dkt. 213-16 at 3 (emphasis added). It was and is unclear what Defendants mean by "allegations that post-date the filing of the complaint." Nevertheless, as set forth in Plaintiffs' motion to compel, Defendants continue to engage in their alleged unlawful conduct, as evidenced by the fact that the number of photos in the Database has increased by approximately seven billion since this litigation began (*see* Dkt. 213 at 7). At minimum, the ongoing nature of the conduct is relevant to: (a) a determination of class size; (b) the need for injunctive relief and the type of injunctive relief needed; and (c) damages and Defendants' unjust enrichment.

## IV. Defendants Have Failed to Comply with Fed. R. Civ. P. 33(d) (Interrogatories 3, 4, 6, 10-11, 13).

Defendants' response shows that they have chosen to ignore the requirements of Fed. R. Civ. 33(d). *See* Dkt. 219 at 8-9. According to Defendants' argument, even though Rule 33(d) requires that a party invoking its provisions specify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," Fed. R. Civ. P. 33(d), Plaintiffs will just have to wait until Defendants decide to disclose that information. *See* Dkt. 219 at 8-9. Based on the response, it appears that Defendants do not even know what documents may be responsive to the Interrogatories at issue

(*see id.* at 8 (Defendants "are continuing to identify responsive documents")), begging the question of how Defendants could even invoke Rule 33(d).

Defendants' contention that their failure to comply with Rule 33(d) does not prejudice Plaintiffs (Dkt. 219 at 9) lacks merit. At present, Defendants have not provided complete answers to various Interrogatories, and Plaintiffs do not know if they ever will. As a result, Defendants are actively interfering with Plaintiffs' pursuit of their claims and preventing Plaintiffs from determining whether whatever documents Defendants intend to produce in response to the Interrogatories at issue are, in fact, responsive. Rule 33(d) is not intended to be used as a delay tactic, and the Court should not permit Defendants to use it in that way here.

V.     **Plaintiffs Are Entitled to the Requested Documents and Information.**

**RFP 1**: RFP 1 simply seeks documents regarding Plaintiffs. 213-3 at 11. In their response, and without support, Defendants contend that the "only way for Clearview's technology to identify photographs of Plaintiffs is by using an image of each Plaintiff as a probe image." Dkt. 219 at 9. Defendants further state that they will not conduct such searches without Plaintiffs' consent. *See id.* Defendants do not explain why they cannot simply locate photographs and other data regarding Plaintiffs (whether manually or through the use of technology) and produce that information. To claim their record-keeping practices do not allow the records to be found would be insufficient. *See* Dkt. 213 at 9 (citing authority). Plaintiffs should not have to consent to allowing Defendants to obtain and use Plaintiffs' images and biometric data in order to obtain documents to which they are entitled. This is especially true in this case about the misuse of Plaintiffs' biometric data.

While Defendants state they will not search for Plaintiffs' images and biometric data without Plaintiffs' consent (*see* Dkt. 291 at 9), they also indicate they have conducted those searches as work product. *See id.* Because Defendants have failed to produce a privilege log as

9

required by Rule 26(b)(5)(ii) and specifically requested by Plaintiffs (*see* Dkt. 213-12 at 5), Plaintiffs do not know the exact nature of any withheld documents. To the extent Defendants have been able to identify documents with Plaintiffs photos and/or biometric data, Defendants' claims that they are unable to locate and produce that information lacks merit.

**RFPs 2-4, 6:** RFPs 2-4 and 6 seek information concerning: (a) the extraction, generation, transmission, storage and use of biometric data (RFP 2); (b) the Database (RFP 3); (c) Defendants' facial recognition apps or software (RFP 4); and (d) Defendants' facial recognition technology (RFP 6). Defendants' contention that these requests "have no relevance to the claims or defenses in this action" (Dkt. 219 at 10) is incredible. Indeed, the requested information is at the heart of the claims and defenses. Plaintiffs allege that Defendants: (a) unlawfully collected Plaintiffs' and class members' biometric data from photos scraped from the internet without obtaining consent; (b) created a Database of that data that they then made available to third parties via an app or software so that the third parties could identify unknown persons via facial recognition; and (c) profited from their unlawful conduct and unjustly enriched themselves. Dkt. 116 ¶¶ 1, 30-35, 53-56, 58-59, Counts One – Sixteen. Defendants dispute those allegations and contend they did not collect biometric data and that BIPA runs afoul of Illinois' extraterritoriality doctrine. *See, e.g.,* Dkt. 213-5 at 7 (denying that Clearview's facial vectors constitute biometric data); Dkt. 88 at 14-15.

Based on the above, the requested information is relevant to, *inter alia*: (a) whether Defendants collected and distributed biometric data; (b) Defendants' extraterritoriality defense; (c) Defendants' alleged profiteering and unjust enrichment from their alleged unlawful conduct; (d) which photographs of Plaintiffs are at issue in the case; and (e) damages. Plaintiffs do not dispute that the requests may result in the production of a lot of information. But, as discussed above that

does not make the requests overly broad. Relatedly, Plaintiffs note that Defendants previously have agreed to "provide Plaintiffs' counsel with access to Clearview's database and source code in a controlled environment."[2] *See* Dkt. 213-8 at 2. Given that the Database contains the information related to billions of images, it would seem that the production of the other requested information would not impose any burden not seen in a typical civil lawsuit.

**RFP 5:** RFP 5 seeks documents related to the way Defendants trained or tested the accuracy and/or reliability of their facial recognition apps or software. The information is relevant to whether Defendants used Plaintiffs' and class members' images in connection with the training/testing of the Database and Plaintiffs' unjust enrichment and BIPA § 15(c) (profiteering) claims. The extent to which Defendants' used Plaintiffs' and class members' biometric data relates not only to class size, as Defendants suggest (Dkt. 219 at 10-11), but also to damages. Defendants make no response to the fact that the requested information is relevant to Defendants' profits and unjust enrichment, as set forth in Plaintiffs' opening brief. *See* Dkt. 213 at 11. *Dixon v. Jefferson Corp. Sys., LLC*, 2021 WL 2026521, at *3 (S.D. Ind. Feb. 16, 2021) is distinguishable. Unlike that case, there is no issue here as to whether the class size will be as small as 51 people or as large as 113,000. Here, the class sizes are likely in the millions.

**RFPs 7-8, 11, 16 and 41:** Defendants' seeming contention that the information sought in RFPs 7-8, 16 and 41 is irrelevant (Dkt. 219 at 10) lacks merit. At minimum, the URLs are relevant to: (a) Defendants' extraterritoriality defense (whether Defendants scraped images from sites in Illinois and whether the subjects in the images are from Illinois); (b) class size (the URLs likely lead to images of photos with information about the people in the photos); and (c) the nature of

---

[2] The parties dispute whether Defendants can designate the Database and source code as "Highly Confidential – Source Code." This issue is also relevant to Plaintiffs' unjust enrichment claim, given that the value of proprietary information would be greater than non-proprietary information. The requests at issue encompass documents such as non-disclosure agreements, which Defendants have yet to produce.

11

any injunctive relief needed. Moreover, having access to the URLs would allow Plaintiffs to determine which photos of Plaintiffs are in the Database.[3]

The dates on which Defendants obtained biometric data and their reasons for doing so are relevant to the validity of Defendants' contention that it is exempt from BIPA because it engaged in its conduct when working as a government contractor. Information as to how Defendants produce biometric data from an image is relevant to Defendants' defense that they do not collect biometric data. Information regarding the searches performed with Defendants' software is relevant to whether Plaintiffs or class members have been involved in any search or search result – an issue that goes to damages and is the subject of Defendants' interrogatories. *See* Dkt. 220-2 (Def. Interrogatories to Plaintiff Mutnick) at Nos. 4-5.

With respect to RFP 11, it remains unclear whether Defendants know they have no responsive documents or merely believe that to be the case. *See* Dkt. 219 at 11-12. From the response, it appears that they may have responsive metadata. To the extent Defendants have responsive information or may have it, they are required to search for it and produce it.

**RFP 30/Interrogatory 17:** RFP 30 and Interrogatory 17 seek documents sufficient to identify the number of images in the Database that were uploaded from an Illinois IP address. While Defendants now claim they do not know this information (*see* Dkt. 219 at 12), as discussed above, they previously have indicated they are able to identify servers displaying Illinois IP addresses. Based on that fact, Defendants certainly have the capability to identify Illinois IP addresses and, to the extent they have documents or information containing this information, they should be ordered to produce it.

---

[3] Without any support, Defendants state that producing the URLs would be "hugely burdensome." Dkt. 219 at 11. The mere fact that there are a lot of URLs does not mean that producing them would be a huge burden.

**Interrogatories 8-9:** Defendants inaccurately state that these interrogatories merely request the "precise number of images in Clearview's database, and the number of blocked Illinois photos." *See* Dkt. 219 at 12. While the requests seek that information, they also seek the sources from which Defendants obtained the images and the dates on which the images were obtained. As discussed above, the Court should require Defendants to provide this relevant information. While Defendants estimate the number of sources (*i.e.*, URLs) to be between 8 and 12 million (Dkt. 213-1 at 3), they ignore that the difference between the two is *4 billion.* As to the request for the number of images, Defendants should be able to set forth an exact number of images in the Database as of the time they prepared the initial Interrogatory answers and the supplemental Interrogatory answers. Finally, Defendants' claim that they do not have information regarding the number of Blocked Illinois Photos is contradicted by the above-described representations that certain people have can access the photos and that there are limits on the ways in which those photos can be used.

**RFP 32/Interrogatory 14:** These requests relate to security breaches Defendants have experienced. As Defendants note, BIPA requires Defendants to store and protect biometric data using the "reasonable standard of care within" their industry. *See* Dkt. 219 at 12, citing 740 ILCS 14/15(e). Information regarding any security breaches is relevant to the way in which Defendants protect their data, generally, and whether that security is on par with others in the industry. Similarly, any breach could reveal flaws in a company's overall security. Moreover, merely because a security breach may not have targeted biometric data does not mean that biometric data was not subject to the attack. The hacker may have been looking for something else. Relatedly, Defendants' proposal to merely provide reports of security breaches where there was known data exfiltration falls far short of information that is relevant to Defendants' compliance/non-compliance with BIPA § 15(e).

**RFPs 34, 36/Interrogatories 15, 19-20:** These requests relate to Defendants' financial information. As discussed above, omitted from Defendants' response is any discussion of their previous agreement to provide all of the documents requested in RFP 34. If Defendants would simply abide by their representations to Plaintiffs and the Court, the only issue with respect to documents is the production of tax returns. As Defendants note, they have produced some corporate tax returns but only for the years 2017 and 2018 and only for Defendant Clearview and its predecessor Smartcheckr. Defendants should produce the corporate tax returns filed during the relevant time period for each of the requested entities. With respect to the individual tax returns, Defendants are incorrect that they are not discoverable (*see* Dkt. 219 at 13, n.3). *See Commodity Futures Trading Com'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993) (Internal Revenue Code does not block access through discovery of tax returns in litigants' possession); *Raiser v. O'Shaughnessy*, 1992 WL 399541, at *1 (N.D. Ill. Oct. 21, 1992) (ordering disclosure of tax returns where punitive damages were sought).

Defendants incorrectly contend that the personal participation doctrine is unrelated to the individual Defendants' financial records. *See* Dkt. 219 at 13, n.3. As discussed in Plaintiffs' opposition to Defendants' motion to dismiss (Dkt. 134 at 11-12), under the personal participation doctrine, the individual Defendants may be held liable if they actively participated in the companies' torts. *See id.* Certainly, information related to the individual Defendants' financing of the corporate Defendants' torts is relevant to their personal participation.[4]

---

[4] Plaintiffs note that after the Court struck Defendants' motion to quash Plaintiffs' subpoenas on JPMorgan Chase, NA and Bank of America (Dkt. 187) and Defendants reneged on their agreement to produce specified financial records to Plaintiffs, Plaintiffs continued to pursue the subpoenas with prior notice to Defendants. Defendants have not refiled their motion to quash, undercutting their argument that Plaintiffs are not entitled to their financial records.

With respect to Defendants' arguments that Plaintiffs have failed to properly plead alter ego liability (Dkt. 219 at 14-15), they ignore that the Court has not made a determination on that issue or stayed discovery and that Defendants have not moved for a stay of financial discovery. The parties have separately briefed Defendants' motions to dismiss, and this motion for protective order is not the place for a ruling to be made on that issue. *See Witz v. Great Lakes Educational Loan Services, Inc.*, 2020 WL 8254382, at *1 (N.D. Ill. July 30, 2020) (filing of a motion to dismiss does not entitle a defendant to a stay).

**RFPs 21 and 38:** While Defendants state they have agreed to produce documents related to their compliance with BIPA (Dkt. 219 at 15), they have not agreed to produce documents: (a) related to their knowledge of BIPA; or (b) showing the technological feasibility of complying with BIPA. In their response, Defendants seem to indicate a willingness to produce documents related to their knowledge of BIPA, but they do not agree to do so. *See id.* 15-16.

**RFP 14:** Failing to acknowledge their efforts to avoid meeting and conferring, Defendants now contend that had such a meeting taken place, the parties could have negotiated a resolution to Plaintiffs' request for information regarding Defendants' customers and users. *See* Dkt. 219 at 16. As set forth in Plaintiffs' motion, the requested information is relevant for numerous reasons. Given the issues in the case, including Defendants' planned government contractor defense, Plaintiffs are entitled to information about all users or customers of Defendants' products and/or technology – not just those where there are "contractual arrangements." Moreover, Plaintiffs are entitled to information far beyond the mere identity of the users/customers.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in its entirety.

Dated: December 10, 2021

                Respectfully submitted,

By:   /s/ Scott R. Drury
       SCOTT R. DRURY
       *Interim Lead Class Counsel for Plaintiffs*

Mike Kanovitz
Scott R. Drury
Andrew Miller
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOKK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
swebster@websterbook.com

*Other Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

      I, Scott R. Drury, an attorney, hereby certify that, on December 10, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                                                         /s/ Scott R. Drury  
                                                         Counsel for Plaintiffs