IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | ) ) ) Case No. 1:21-cv-00135 ) ) Hon. Sharon Johnson Coleman ) ) |

**CLEARVIEW DEFENDANTS'
RENEWED MOTION TO QUASH NONPARTY SUBPOENAS**

Pursuant to Federal Rules of Civil Procedure 26(b)(2) and 45(d)(3), Defendants Clearview AI, Inc. ("Clearview"), Rocky Mountain Data Analytics LLC ("Rocky Mountain"), Hoan Ton-That, Richard Schwartz, and Thomas Mulcaire (collectively, the "Clearview Defendants"), by and through their counsel, respectfully move this Court for an order quashing the nonparty subpoenas issued by Plaintiffs to three financial institutions, JPMorgan Chase & Co., JPMorgan Chase Bank N.A., and The Bank of America Corporation (collectively, the "Banks").

Plaintiffs have made vast, personal, and extremely intrusive document requests to the Banks regarding the financial histories of Mr. Ton-That (Clearview's CEO), Mr. Schwartz (Clearview's President), and Mr. Mulcaire (Clearview's General Counsel) (collectively, the "Individual Defendants"). These requests serve no purpose related to this litigation and will result only in harassment and annoyance to the Individual Defendants and their families. Plaintiffs are not entitled to such highly confidential information as individual tax returns, bank statements, and credit cards statements over a seven-year period even though they have improperly named as defendants the CEO, President, and General Counsel of Clearview.

Plaintiffs have also subpoenaed the Banks for a sweeping array of financial documents related to Clearview and Rocky Mountain (collectively, the "Entity Defendants") and various

1

nonparties. These requests are similarly overbroad and seek information that is not relevant to any claim or defense. Moreover, Plaintiffs have moved to compel the Clearview Defendants to produce various financial documents that substantially overlap with the financial documents sought in the Bank subpoenas. (Dkt. 213 at 12-13.) The Clearview Defendants have opposed the motion to compel those financial documents because they are not relevant to the litigation and fall outside the scope of discovery. (Dkt. 219 at 12-14.)

After moving to compel the production of the Clearview Defendants' highly-sensitive financial documents, Plaintiffs refused to wait for the Court to determine whether the Clearview Defendants' financial information is subject to discovery under Rule 26. Instead, Plaintiffs tried to work around the Court to obtain the documents from the nonparty Banks before the Court ruled on Plaintiffs' motion to compel—indeed, before the motion was even fully briefed. The Clearview Defendants objected to Plaintiffs' improper conduct and notified the Banks of their objections and the existence of the pending motion to compel, the outcome of which would guide whether the Clearview Defendants' financial documents are within the scope of Rule 26.

Despite making these objections clear to both Plaintiffs and the Banks, on December 15, 2021, Plaintiffs belatedly notified the Clearview Defendants of a document production from Bank of America. That production largely consists of the personal details of Mr. Mulcaire's financial history, including from years before he had any association with Clearview. The Court should not tolerate Plaintiffs' abusive discovery tactics and their efforts to conduct a harassing personal audit of the Individual Defendants' personal finances. The Court should quash the Bank subpoenas in their entirety. In support of this motion, the Clearview Defendants state:

**FACTUAL BACKGROUND**

1. On September 13, 2021, counsel for Plaintiffs informed the Clearview Defendants that Plaintiffs would serve nonparty subpoenas on the Banks with a return date of October 1, 2021, seeking the production of financial documents related to the Clearview Defendants and various nonparties affiliated with Clearview. (*See* Ex. 1 (subpoena to JPMorgan Chase & Co.); Ex. 2 (subpoena to The Bank of America Corporation); and Ex. 3 (subpoena to JPMorgan Chase Bank N.A.).) Each subpoena demands the production of the following documents "related to" "any and all accounts" held by each of the Clearview Defendants and nonparties Smart Checker (and variant spellings), Insight Camera LLC, Standard International Technologies, S.A., and Standard International Technologies PLC (collectively, the "Nonparty Affiliates"):

   (a) All account opening documents;
   (b) All correspondence;
   (c) All signature cards;
   (d) All corporate resolutions;
   (e) All LLC, Partnership, Articles of Incorporation, or other business formation documents;
   (f) All deposit and withdrawal slips;
   (g) All tax returns;
   (h) All documents concerning loans, leases, and/or lines of credit, including but not limited to loan and lease applications, loan and lease documents, and line of credit documents;
   (i) All credit card application and statements;
   (j) All cancelled checks; and
   (k) All account transfer requests.

(*See* Exhibits 1, 2, and 3, Rider to Subpoena.)

2. The Banks are all nonparties with financial relationships with the Clearview Defendants. The Bank subpoenas seek documents relating to personal information about each of the Individual Defendants and the Nonparty Affiliates, and demand almost the entirety of the Individual Defendants' financial records—from credit card statements to cancelled checks—from January 1, 2015 (years before Clearview was founded) to the present. The documents sought by

3

these subpoenas have no conceivable relevance to Plaintiffs' claims regarding biometric data. These subpoena requests are a clear abuse of the discovery rules.

3. On September 27, 2021, the Clearview Defendants moved to quash the Bank subpoenas as overbroad and oppressive. (Dkt. 179.) On October 6, Plaintiffs moved to strike the motion, on the grounds that the Clearview Defendants did not meet and confer with Plaintiffs under Local Rule 37.2. (Dkt. 186.) On October 7, the Court granted Plaintiffs' motion to strike without prejudice, directing the parties to meet and confer regarding the Bank subpoenas. (Dkt. 187.)

4. On October 12 and 22, 2021, the parties met and conferred regarding the Bank subpoenas and Plaintiffs' requests for sensitive financial documents. The parties also corresponded about this issue several times over the following weeks.[1] During this meet and confer process, Plaintiffs stated that the financial information requested in the Bank subpoenas is related to their theory that the Clearview Defendants are alter egos. The Clearview Defendants responded that the Complaint fails to plead a theory of alter ego liability or state a claim against the Individual Defendants, and as a result, the financial information at issue is not discoverable under Rule 26. The Clearview Defendants explained that, given the highly sensitive nature of the financial documents at issue, a short delay on further discovery relating to Plaintiffs' alter ego theory was appropriate pending the Court's forthcoming decision on the Clearview Defendants' motion to dismiss, which would determine whether alter ego liability remained a live issue in the case, or whether discovery of financial documents would become moot. (*See* Ex. 4, Nov. 5, 2021 Letter from A. Lichtman.)

---

[1] In the course of this discussion, the Clearview Defendants produced a number of sensitive corporate financial documents, including corporate tax returns for the years 2017-2019. In their reply in support of their motion to compel, Plaintiffs inaccurately state that the Clearview Defendants only produced tax returns for the years 2017 and 2018. (Dkt. 225 at 14.) The Clearview Defendants cannot produce any tax returns for prior years, as Clearview did not exist as a corporate entity before 2017. Plaintiffs have also provided no basis to discover tax returns or other sensitive financial documents of the Nonparty Affiliates.

5.	Following these discussions, on November 15, 2021, Plaintiffs moved to compel the Clearview Defendants to produce a wide assortment of financial documents, including tax returns, credit card statements, and bank statements. (Dkt. 213 at 12-13.) On December 3, the Clearview Defendants filed a memorandum in opposition to Plaintiffs' motion as the financial information sought is not relevant to any claim or defense. (*See* Dkt. 219 at 12-14.) As of December 10, Plaintiffs' motion to compel is fully briefed.

6.	Also on November 15, 2021, Plaintiffs informed the Clearview Defendants that while the motion to compel was pending before the Court, they would renew their efforts to obtain the disputed financial documents from the Banks, including the personal financial information of the Individual Defendants. (*See* Ex. 5, Nov. 15, 2021 Email from S. Drury.) On November 18, 2021, the Clearview Defendants responded by objecting to Plaintiffs' continued pursuit of the Bank subpoenas in the midst of an ongoing dispute between the parties over the discovery of sensitive financial documents, and before the Court had an opportunity to rule on whether the Clearview Defendants' financial documents are properly within the scope of Rule 26. (*See* Ex. 6, Nov. 18, 2021 Email from A. Lichtman.)

7.	The Clearview Defendants also notified the Banks of the parties' dispute regarding the discovery of financial documents, including Plaintiffs' motion to compel, and the Banks represented that they would await the Court's order on the motion before producing the Clearview Defendants' financial documents in response to the Bank subpoenas. To be clear, the Clearview Defendants did nothing more than request that the Banks allow the parties to resolve the dispute over the financial documents, which was already pending before the Court through Plaintiffs' motion to compel, before making any production.

8. The Clearview Defendants were transparent with Plaintiffs about their communications with the Banks. On November 18, 2021, the Clearview Defendants advised Plaintiffs: "The Clearview Defendants have notified the banks that there is an ongoing dispute between the parties regarding the discovery of the Clearview Defendants' financial documents, and that there is a pending motion to compel, the outcome of which will guide the parties' positions on the bank subpoenas. The Clearview Defendants will oppose any actions that Plaintiffs take to enforce the bank subpoenas." (Ex. 6.)

9. On December 15, 2021, Plaintiffs informed the Clearview Defendants that Bank of America had made a document production in response to Plaintiffs' subpoena, despite Bank of America's representations to the Clearview Defendants. (*See* Ex. 7, Dec. 15, 2021 Email from M. Thibodeau.) The Clearview Defendants were not notified before Bank of America disclosed their sensitive financial information. The production largely consists of the personal financial history of Mr. Mulcaire dating back to 2015, four years before Mr. Mulcaire was even employed at Clearview (and years before Clearview was even founded).

10. The Clearview Defendants contacted Bank of America on December 15, 2021 to inquire about Plaintiffs' subpoena. A bank employee informed the Clearview Defendants that this production of financial documents was made on November 30—which means that Plaintiffs took over two weeks to notify the Clearview Defendants that they had received a production consisting of Mr. Mulcaire's personal financial history and other highly sensitive information. While the Clearview Defendants were unaware of the production, the financial documents had no confidentiality designation and could have been distributed to anyone without the Clearview

Defendants' knowledge.[2] And, Plaintiffs have refused to treat the production as highly confidential pursuant to the Amended Confidentiality Order in this case. (*See* Ex. 8, Dec. 16-17, 2021 Emails Between A. Lichtman and S. Drury.)

11. To illustrate the overbreadth and invasiveness of the Bank subpoenas, Bank of America's production includes payroll checks that Mr. Mulcaire received in the years before he was employed at Clearview, checks for tax refunds from before Mr. Mulcaire was employed at Clearview, checks from Mr. Mulcaire's relatives from before he was employed at Clearview, and numerous bank statements with transaction-level detail from before Mr. Mulcaire was employed at Clearview. The only documents that reference Clearview at all are: (1) Mr. Mulcaire's bank statements from September 2019 onward, reflecting bimonthly direct deposit compensation from Clearview and (2) a single small reimbursement check. The intrusive nature of this production and its complete irrelevance to this litigation make clear that Plaintiffs intend to use the Bank subpoenas as a fishing expedition and to harass, embarrass, and intimidate the Clearview Defendants.

12. This renewed motion to quash is necessary and appropriate to prevent further unwarranted and invasive productions of irrelevant documents by any of the Banks. And, the prior production by Bank of America should be destroyed. Pursuant to Local Rule 37.2, the Clearview Defendants met and conferred with Plaintiffs regarding the Bank subpoenas on October 12 and 22, 2021, and again on December 17, 2021, and have exchanged numerous written communications concerning the Bank subpoenas. Plaintiffs refuse to withdraw the subpoenas. The parties are at an impasse.

---

[2] Plaintiffs stated in their reply in support of their motion to compel that they "continued to pursue" the Bank of America subpoena, but omitted that they had already received a substantial production of Mr. Mulcaire's private financial documents. (Dkt. 225 at 14 n.4.)

**ARGUMENT**

**I.     The Clearview Defendants Have Standing to Bring This Motion to Quash.**

14.     As a threshold matter, the Clearview Defendants have standing to object to the subpoenas issued to the Banks because they have personal rights related to the documents sought by Plaintiffs. *See, e.g.*, *Chaikin v. Fid. & Guar. Life Ins. Co.*, No. 02 C 6596, 2003 WL 22715826, at *1 (N.D. Ill. Nov. 17, 2003) (holding that an investor had standing to object to nonparty subpoenas because they requested his investment and financial documents); *Arias-Zeballos v. Tan*, 06-CV-1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (collecting cases and recognizing that "courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution"). Plaintiffs subpoenaed the Banks for an expansive sweep of documents that are "related to" "any and all accounts" held by the Clearview Defendants and the Nonparty Affiliates. Accordingly, the Clearview Defendants have standing to challenge the subpoenas based on their legitimate privacy interests in the corporate and financial records that Plaintiffs seek from the Banks.

**II.    The Subpoena Requests Are Overbroad and Oppressive under Rules 26 and 45.**

14.     Plaintiffs' expansive document requests to the Banks are vexatious, overbroad, and not reasonably tailored to lead to the discovery of admissible evidence, particularly as they relate to the Individual Defendants. A party may only seek the discovery of documents that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). These limitations on the scope of discovery apply with even greater force in the context of nonparty discovery. "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Morelli v. Alters*, 1:19-CV-10707, 2020 WL 6508858, at *4 (S.D.N.Y. Nov. 5, 2020). "On a motion to quash, the party issuing the subpoena must demonstrate that the information

8

sought is relevant and material to the allegations and claims at issue in the proceedings." *Id.*; *see also Heckler & Koch, Inc. v. German Sport Guns GmbH*, 111-CV-01108, 2014 WL 12756174, at *2 (S.D. Ind. Sept. 12, 2014).

15. The court may "quash . . . a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information." Fed. R. Civ. P. 45 Advisory Committee's Note (1991). Further, the court shall limit discovery if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). And the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

16. Plaintiffs seek nearly every document that relates to the Banks' relationships with the Clearview Defendants and Nonparty Affiliates, including a wide array of account information. The subpoena requests seek documents related to the personal accounts and financial histories of the Individual Defendants, even though the financial information is not relevant to the subject matter of this lawsuit, which consists of claims that the Clearview Defendants allegedly violated certain state privacy laws. Bank of America's actual production—of Mr. Mulcaire's personal financial history—confirms that the documents sought by the subpoenas have no possible relevance to this litigation, but will harass, annoy, and intimidate Mr. Mulcaire and his family members. The Court should quash the subpoenas and put an end to this fishing expedition.

17. Further, the subpoena requests related to the Entity Defendants and Nonparty Affiliates (as opposed to the Individual Defendants) should also be quashed because they are irrelevant to the litigation for the reasons stated in the Clearview Defendants' opposition to

9

Plaintiffs' motion to compel.[3]  (Dkt. 219 at 12-14.)  Moreover, many of these financial documents are the subject of Plaintiffs' pending motion to compel, the outcome of which will guide whether Plaintiffs' requests for financial documents are properly within the scope of Rule 26.[4]

### A. The Subpoenas Should be Quashed as Related to the Individual Defendants.

18. "When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion into the affected individual's privacy interests."  *In re Glitnir Banki hf.*, 08-14757, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011).  Applying the discovery rules, it is clear that the Bank subpoenas should be quashed with respect to the Individual Defendants because the information sought is not relevant to the litigation and will result in significant and unwarranted intrusion into the Individual Defendants' privacy and their sensitive financial information.

#### 1. The Subpoena Requests Are Not Relevant to the Litigation.

19. Plaintiffs' sweeping subpoenas seek virtually every scrap of information pertaining to the personal and professional finances of the Individual Defendants over the past seven years—long before Clearview was founded in 2017.  This is intolerable since there is no claim or defense in the case that could possibly justify giving Plaintiffs access to the Individual Defendants' sensitive and confidential financial histories.  These requests are not within the appropriate scope

---

[3] In their motion to compel briefing, Plaintiffs claim they are also entitled to the Clearview Defendants' financial documents under a "personal participation" theory and because they seek punitive damages. Plaintiffs fail to plead a personal participation theory of liability against the Individual Defendants, and their briefing is devoid of any explanation of how the broad sweep of information sought in the Bank subpoenas, including the transaction-level detail in bank statements and credit card statements, is relevant to this ill-founded theory.  The same is true for Plaintiffs' allegations regarding punitive damages. (Dkt. 225 at 14.)  Indeed, none of the documents produced by Bank of America concerning Mr. Mulcaire has any relation to any of Plaintiffs' theories.

[4] In the event the Court grants Plaintiffs' motion to compel and orders the Clearview Defendants to produce the requested financial documents, Plaintiffs should review those documents produced in party discovery before pursuing additional financial documents from the nonparty Banks.

of discovery, and even less so within the realm of nonparty discovery. *See, e.g.*, *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003). Bank of America's production of Mr. Mulcaire's sensitive and confidential personal financial history—which contains no information relevant to the litigation—only underscores the overbroad and oppressive nature of the Bank subpoenas and Plaintiffs' inappropriate discovery tactics.

20. For example, in *Ocean Atlantic*, the copyright owner of real estate development plans sued a developer for infringement with respect to one of its development sites. The plaintiff sought discovery of "all of the defendants' financial records relating to their entire business and professional activities, on all construction projects throughout the country" over a six-year period. *Id*. at 926. Posing the question of whether "anything remotely relevant to the claims and defenses . . . [can] justify this massive body of discovery," the court answered, "[w]e hardly think so." *Id*. "This court perceives an improper motive and purpose to this broad discovery. We cannot conceive of any relevance to the claims or defenses asserted in this . . . case, or of any legitimate purpose of this massive discovery demand. The production of virtually the entirety of defendants' business books and records . . . could not lead to any admissible evidence." *Id*. at 927.

21. Similarly, in a case involving fraud claims between former business partners, the defendant and counterclaimant subpoenaed three nonparty financial institutions for "information regarding Plaintiffs' finances over an extended period of time" with "little, if any, relevance to the single loan at issue in Plaintiff's case." *Morelli*, 2020 WL 6508858, at *6. The court concluded:

> given the sweeping nature of their request for information of tangential relationship to Plaintiff's claims in this case, the three subpoenas to financial institutions are the epitome of the classic 'fishing expedition.' They seem to be issued for the purpose of harassment, and, to the extent they seek any relevant information, are disproportionate to the needs of the case. They should be quashed.

*Id*. This case is no different.

11

22. Plaintiffs have identified no legitimate litigation purpose for the discovery of the Individual Defendants' personal financial records from the last seven years. Plaintiffs claim they are entitled to these financial documents to support their theory of alter ego liability. (*See* Dkt. 213 at 12-13.) However, the Complaint fails to allege a theory of alter ego liability, and as a result, the financial documents are outside the scope of discovery. (*See* Dkt. 219 at 12-14.)

23. But even if Plaintiffs had properly alleged a theory of alter ego liability, there is no reason Plaintiffs would need, for example, the Individual Defendants' credit card applications and statements, canceled checks, or tax returns. *See, e.g.*, *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 15 MISC. 319, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (holding that a request for "every financial transaction [adverse parties] have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper for [the] limited purpose" of adjudicating "alter ego status" and instead "has every indication of being an archetypal fishing expedition."); *Fort Washington Resources, Inc. v. Tannen*, 858 F. Supp. 455, 463 (E.D. Pa. 1994) (denying motion to compel production of individual defendant's tax returns in veil piercing case). As a result, these requests are improper and the motion to quash the Bank subpoenas for the Individual Defendants' financial documents should be granted. *See Chaikin*, 2003 WL 22715826, at *2; *Cohn v. Taco Bell Corp.*, 92 C 5852, 1994 WL 383975, at *3 (N.D. Ill. July 20, 1994); *see also U.S. ex rel. Pool v. NMC, Inc.*, 2:09-CV-66, 2010 WL 4668790, at *2 (S.D. Ind. Nov. 9, 2010).

**2. The subpoenas intrude upon the Individual Defendants' privacy.**

24. The Bank subpoenas will harass, oppress, and embarrass the Individual Defendants, as a complete production of the Individual Defendants' sensitive transactional histories would

contain the details of the Individual Defendants' financial and personal lives. The discovery rules do not permit this invasive and overly broad intrusion.

25. The Individual Defendants have a right to protect against disclosure of their private information (and their family members' private information) from Plaintiffs. For example, Mr. Schwartz has a joint account with his spouse, who has a very serious medical condition. Plaintiffs' discovery tactics and requests for extensive financial records thus involve Mr. Schwartz's spouse and her medical history. Providing this intimate information about Mr. Schwartz's wife's lengthy history of medical payments raises potential Health Insurance Portability and Accountability Act (HIPAA) concerns. When a party subpoenas an adverse party's financial information, courts are vigilant in limiting the scope of discovery so irrelevant financial information is not produced. *See, e.g.*, *Ocean Atlantic*, 262 F. Supp. 2d at 927; *Morelli*, 2020 WL 6508858, at *6; *Glitnir Banki*, 2011 WL 3652764, at *5. Plaintiffs have made no attempt to appropriately limit the scope of the requests here, as the law requires.

26. Additionally, Plaintiffs have subpoenaed the Banks for the Individual Defendants' tax returns, which courts have recognized as "confidential communications between a taxpayer and the government." *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972) (holding that there is a policy against the disclosure of tax returns and that tax returns are discoverable only where the litigant puts at issue the amount of his or her income); *see also Cohn*, 1994 WL 383975, at *4 (rejecting request to discover individual's tax returns); *Tannen*, 858 F. Supp. at 463 (denying motion to compel production of individual defendant's tax returns and noting "the strong public policy concerns favoring nondisclosure of tax returns"). The Individual Defendants thus have a strong interest in protecting their tax returns and other sensitive financial information from disclosure.

27. Similar privacy concerns extend to other records of the Individual Defendants in the Banks' possession: "subpoenas for bank records most often evoke privacy claims" and "the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take." *Glitnir Banki*, 2011 WL 3652764, at *5 (citation omitted). In this instance, the records sought are unquestionably confidential and highly sensitive: they consist of a vast array of personal documents including, among other things, *all* correspondence, deposit and withdrawal slips, documents concerning loans and lines of credit, credit card applications and statements, and canceled checks, in the Banks' possession—all of which is deeply private and nonpublic information. Plaintiffs' requests "are plainly designed to get financial information about the [Individual Defendants] without regard to any connection between that information" and this litigation. *Id.* at *9. And, Plaintiffs' refusal to treat the records produced by Bank of America as highly confidential pursuant to the Amended Confidentiality Order in this case further demonstrates the bad faith in their pursuit of this information.

28. The Court should bar Plaintiffs from any further discovery of the Individual Defendants' confidential and sensitive financial information from the Banks. There is no claim or defense in this case tied to the Individual Defendants' entire financial history, and documents such as their tax returns and deposit and withdrawal slips are not reasonably calculated to lead to the discovery of admissible evidence. "In short, the documents sought in the subpoena have little or no relevance to the claims and defenses in this action. . . . Weighing this against [the Individual Defendants'] legitimate interest in maintaining the confidentiality of proprietary documents bearing on [their] assets and financial plans, . . . the motion to quash the subpoena should be granted." *Solow v. Conseco, Inc.*, 06 CIV. 5988, 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008).

### B. The Subpoenas Should be Quashed with Respect to the Entity Defendants and Nonparty Affiliates.

29. The Bank subpoenas should also be quashed with respect to the Entity Defendants and Nonparty Affiliates. As discussed above, the parties are currently litigating the question of whether any additional financial documents of these entities are relevant to this action. (*See* Dkt. 219 at 12-14.) The Clearview Defendants submit that these documents are not within the scope of Rule 26. But even if they were, the Bank subpoenas are not an appropriate means for Plaintiffs to seek the production of the financial information of the Entity Defendants and Nonparty Affiliates.[5] Plaintiffs are attempting to subvert the Court's authority by obtaining disputed financial documents that are the subject of their motion to compel through the Banks, while the motion to compel remains pending. Such tactics should not be tolerated. *See McKinny v. ICON Transp. Co., Inc.*, No. 4:04 cv 81, 2005 WL 8178477, at *2 (N.D. Ind. Aug. 9, 2005); *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*, 14 Misc. 59, 12 (S.D.N.Y. Apr. 18, 2014).

### CONCLUSION

WHEREFORE, the Clearview Defendants respectfully request that the Court grant this Motion to Quash Nonparty Subpoenas; and direct Plaintiffs to destroy the Bank of America production.

---

[5] There is ample authority holding that litigants cannot burden nonparties with discovery when the information sought is available from the parties to the action. *See, e.g.*, *A&R Security Service Inc. v. Service Employee Int'l Union Local 1*, No. 06 C 2446, 2016 WL 8460631, at *3 (N.D. Ill. July 28, 2006); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 111-CV-01108, 2014 WL 12756174, at *3 (S.D. Ind. Sept. 12, 2014).

December 17, 2021

Respectfully submitted,

By:   */s/ Precious S. Jacobs-Perry*

    Precious S. Jacobs-Perry (ARDC No. 6300096)
    Howard S. Suskin (ARDC No. 6185999)
    JENNER & BLOCK LLP
    353 North Clark Street
    Chicago, Illinois 60654
    Phone: (312) 222-9350
    pjacobs-perry@jenner.com
    hsuskin@jenner.com

    Andrew J. Lichtman (pro hac vice)
    JENNER & BLOCK LLP
    919 Third Avenue
    New York, New York 10022-3908
    Phone: (212) 891-1600
    alichtman@jenner.com

    Floyd Abrams
    Joel Kurtzberg
    CAHILL GORDON & REINDEL LLP
    32 Old Slip
    New York, NY 10005
    Phone: (212) 701-3000
    fabrams@cahill.com
    jkurtzberg@cahill.com

    Attorneys for Defendants Clearview AI, Inc., Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC, and Thomas Mulcaire

**CERTIFICATE OF SERVICE**

    I certify that on December 17, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

By:   <i>/s/ Precious S. Jacobs-Perry</i>