**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Case No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS STEVEN RENDEROS,**</u>
<u>**VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE**</u>
<u>**SUPPORT COMMITTEE, AND NORCAL RESIST FUND'S OMNIBUS REPLY IN**</u>
<u>**SUPPORT OF MOTION TO REMAND**</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................I

TABLE OF AUTHORITIES ................................................................................... III

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.      DEFENDANTS CANNOT MEET THEIR HEAVY BURDEN OF
SHOWING THAT THE MUNICIPAL DEFENDANTS ARE
FRAUDULENTLY JOINED........................................................................ 3

A.      28 U.S.C. § 1447(e) Does Not Apply ................................................ 3

B.      Plaintiffs Have a Reasonable Possibility of Prevailing on At Least One of Their
Claims Against the Municipal Defendants ........................................... 4

1.      The California Tort Claims Act does not apply to Plaintiffs' claims
seeking injunctive relief against the Municipal Defendants ..................... 5

2.      Plaintiffs have a reasonable possibility of prevailing on their infringement
of liberty of speech claim............................................................... 6

3.      Plaintiffs have a reasonable possibility of prevailing on their aiding and
abetting a tort claim ..................................................................... 9

a.      Plaintiffs have a reasonable possibility of prevailing on their
appropriation of likeness claim against Clearview.................10

b.      Plaintiffs have a reasonable possibility of prevailing on the aiding
and abetting invasion of privacy claim against the Municipal
Defendants…………………………………………………………11

c.      Plaintiffs have a reasonable possibility of prevailing on the aiding
and abetting claims against the Municipal Defendants………….12

II.      THE COURT SHOULD REJECT CLEARVIEW'S ATTEMPT TO
INVOKE THE "PROCEDURAL MISJOINDER" DOCTRINE, WHICH
THE SEVENTH CIRCUIT HAS NEVER ADOPTED AND DISTRICT
COURTS ROUTINELY REJECT................................................................. 14

III.    DEFENDANTS' FIRST AMENDMENT AND ARTICLE III
        STANDING ARGUMENTS HAVE NO BEARING ON DIVERSITY
        JURISDICTION ........................................................................................................... 19
CONCLUSION ............................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alegre v. Aguayo*,
  2007 WL 141891 (N.D. Ill. Jan. 17, 2007) ........................................................ 16, 17

*Ambrose v. Backpage.com, LLC*,
  No. 1:17-cv-05081-MSS, 2017 WL 11559787 (N.D. Ill. Nov. 21, 2017) .............................. 17

*Anderson v. Bayer*,
  No. 3:09-cv-00988-GPM-CJP, 2010 WL 148633 (S.D. Ill. Jan. 13, 2010) ........................... 16

*Anglin v. Bristol-Myers Squibb Co.*,
  No. 3:12-cv-00060-GPM, 2012 WL 1268143 (S.D. Ill. Apr. 13, 2012) ............................... 16

*Aranda v. Walgreen Co.*,
  No. 3:11-cv-00654-JPG-DGW, 2011 WL 3793648 (S.D. Ill. Aug. 24, 2011) ....................... 16

*Baker v. Johnson & Johnson*,
  709 F. Supp. 2d 677 (S.D. Ill. 2010) ................................................................ 17

*Bavone v. Eli Lilly & Co.*,
  No. 3:06-cv-00153-GPM-CJP, 2006 WL 1096280 (S.D. Ill. Apr. 25, 2006) ....................... 16

*Boyer v. Bristol-Myers Squibb Co.*,
  No. 3:12-cv-00061-GPM, 2012 WL 1253177 (S.D. Ill. Apr. 13, 2012) ............................... 16

*Branciforte Heights, LLC v. City of Santa Cruz*,
  138 Cal. App. 4th 914 (2006) ........................................................................ 5

*Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*,
  No. 00-55283, 2001 WL 1563913 (9th Cir. Dec. 5, 2001) ....................................... 19

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ................................................................................. 12

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) .................................................................................... 15

*Collier v. SP Plus Corp.*,
  889 F.3d 894 (7th Cir. 2018) ........................................................................ 20

*Creighton v. Bristol-Myers Squibb & Co.*,
  No. 1:13-cv-00629-JZL, 2013 WL 12333214 (N.D. Ill. May 10, 2013) ..................... 16, 17, 19

*Davidson v. Bristol-Myers Squibb Co.*,
    No. 3:12-cv-00058-GPM, 2012 WL 1253165 (S.D. Ill. Apr. 13, 2012) ................................. 16

*Degrassi v. Cook*,
    Cal. 4th 333, 343 (2002) .................................................................................................... 6

*Dice v. X17, Inc.*,
    No. B282448, 2019 WL 4786064 (Cal. App. Sept. 27, 2019)........................................ 10, 11

*Douthit v. Janssen Rsch. & Dev., LLC*,
    No. 3:17-cv-00439-DRH, 2017 WL 2492661 (S.D. Ill. June 9, 2017) .................................. 18

*Evans v. Bristol-Myers Squibb Co.*,
    No. 1:12-cv-05005-GWL, 2012 WL 4956460 (N.D. Ill. Oct. 16, 2012)..................... 14, 16, 17

*Feeley v. Bayer Corp.*,
    No. 3:18-cv-02090-NJR-GCS, 2019 WL 4261545 (S.D. Ill. Sept. 9, 2019)........................... 14

*Garbie v. DaimlerChrysler Corp.*,
    211 F.3d 407 (7th Cir. 2000) ......................................................................................... 14, 15

*Hart v. Alameda County*,
    76 Cal. App. 4th 766 (1999) ................................................................................................ 5

*In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*,
    No. 3:12-MD-02385-DRH-SCW, 2014 WL 257831, (S.D. Ill. Jan. 23, 2014)...................... 18

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    779 F. Supp. 2d 846 (S.D. Ill. 2011).............................................................................. 16, 18

*Katzberg v. Regents of University of California*,
    29 Cal. 4th 300 (2002) ........................................................................................................ 6

*Knudsen v. Liberty Mut. Ins. Co.*,
    411 F.3d 805 (7th Cir. 2005) ....................................................................................... 14, 17

*Livingston v. Hoffmann-La Roche Inc.*,
    293 F. Supp. 3d 760 (N.D. Ill. 2018) .................................................................................. 17

*Livingston v. Hoffmann-La Roche, Inc.*,
    No. 1:09-cv-02611-MEA, 2009 WL 2448804 (N.D. Ill. Aug. 6, 2009)............................ 14, 18

*Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Res.*,
    876 F.2d 1051 (1st Cir. 1989)............................................................................................. 20

*McAllister v. Los Angeles Unified School Dist.*,
   216 Cal. App. 4th 1198 (2013) ................................................................. 6

*McIntyre v. Fallahay*,
   766 F.2d 1078 (7th Cir. 1985) ................................................................ 20

*Minsky v. City of Los Angeles*,
   11 Cal. 3d 113 (1974) ............................................................................ 5

*Morris v. Nuzzo*,
   718 F.3d 660 (7th Cir. 2013) ........................................................... 4, 8, 9

*Perl v. Laux/Arnold, Inc.*,
   864 F. Supp. 2d 731 (N.D. Ind. 2012) ................................................. 19

*Poulos v. Naas Foods, Inc.*,
   959 F.2d 69 (7th Cir. 1992) .................................................................... 4

*Reeves v. Pfizer*,
   880 F. Supp. 2d 926 (S.D. Ill. 2012) .................................................... 16

*Rice v. Panchal*,
   65 F.3d 637 (7th Cir. 1995) .................................................................. 19

*Robinson v. Ortho-McNeil Pharm., Inc.*,
   533 F. Supp. 2d 838 (S.D. Ill. 2008) .................................................... 17

*Roland v. Janssen Rsch. & Dev., LLC*,
   No. 3:17-cv-00582-DRH, 2017 WL 3033786 (S.D. Ill. July 18, 2017) ................................................. 18

*Rutherford v. Merck & Co., Inc.*,
   428 F. Supp. 2d 842 (S.D. Ill. 2006) ......................................... 16, 17, 18

*Sabo v. Dennis Techs., LLC*,
   No. 3:07-cv-00283-DRH-PMF, 2007 WL 1958591 (S.D. Ill. July 2, 2007) .......................... 16

*Schur v. L.A. Weight Loss Centers, Inc.*,
   577 F.3d 752 (7th Cir. 2009) .............................................................. 4, 9

*Simon v. Marriott Int'l, Inc.*,
   No. 8:19-cv-01792-PWG, 2019 WL 4573415 (D. Md. Sept. 20, 2019) ................................... 3

*Smith v. Phillip Morris USA Inc.*,
   No. 1:18-cv-06397-EEC, 2019 WL 4750119 (N.D. Ill. Sept. 30, 2019) ......................... 4, 8, 12

*Snipes v. City of Bakersfield*,
   145 Cal. App. 3d 861 (1983) ............................................................... 5

*Stueve Bros. Farms, LLC v. Berger Kahn*,
   222 Cal. App. 4th 303 (2013) ............................................................ 13

*Taking Offense v. State*,
   66 Cal. App. 5th 696 (2021) ............................................................... 7

*Tapscott v. MS Dealer Serv. Corp.*,
   77 F.3d 1353, 1360 (11th Cir. 1996) ................................................. 15

*Thornley v. Clearview AI, Inc.*,
   No. 1:20-cv-03843-SJC, 2020 WL 6262356 (N.D. Ill. Oct. 23, 2020) .......................... 1, 15, 20

*Thornley v. Clearview AI, Inc.*,
   984 F.3d 1241, 1248 (7th Cir. 2021) ...................................... 1, 15, 20

*Tobais v. Merck Sharpe & Dohme Corp.*,
   No. 3:11-cv-00982-DRH-SCW, 2012 WL 293511 (S.D. Ill. Jan. 31, 2012) .......................... 16

*White v. Davis*,
   13 Cal. 3d 757, 761 (1975) ................................................................. 7

*Wilson v. Pfizer, Inc.*,
   No. 3:11-cv-01078-GPM, 2012 WL 1036824 (S.D. Ill. Mar. 27, 2012) ........................... 16

*Wolf v. Kennelly*,
   540 F. Supp. 2d 955 (N.D. Ill. 2008) ................................................ 17

## Statutes

28 U.S.C. § 1447(e) ................................................................................ 2, 3
article I, section 1 of the California Constitution................................... 11
article I, section 2 ...................................................................................... 7
article I, section 2(a) of the California Constitution ........................... 5, 6, 7
Cal. Gov. Code § 814.............................................................................. 6

## Rules

Federal Rule of Civil Procedure 20(a) ................................................... 14
Federal Rule of Civil Procedure 21 ........................................... 14, 16, 18

Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee ("Mijente"), and NorCal Resist Fund ("NorCal Resist") (collectively, "Plaintiffs") respectfully submit this omnibus reply in support of their Motion to Remand (Dkt. No. 192) and in opposition to City of El Segundo's Motion to Remand ("El Segundo Mot.") (Dkt. No. 209), Defendant County of Alameda's Motion to Remand ("Alameda Mot.") (Dkt. No. 210), Defendant City of Antioch's Motion to Remand ("Antioch Mot.") (Dkt. No. 211), and Defendant Clearview AI, Inc.'s Opposition to Plaintiffs' Motion to Remand ("Clearview Opp.") (Dkt. No. 223). Defendants City of El Segundo, County of Alameda, and City of Antioch ("Municipal Defendants") and Clearview AI, Inc. ("Clearview") are hereafter referred to collectively as "Defendants."

## INTRODUCTION

Defendants' briefs do not actually address the "fraudulent joinder" of any party in this case. Plaintiffs are civil rights activists and organizations who bring claims against Clearview and police agencies that use Clearview's products for illegally surveilling Plaintiffs and their constituents. Defendants cannot seriously contend that it is fraudulent for Plaintiffs to seek to hold these parties—who worked together to injure Plaintiffs—accountable. As this Court previously recognized in rejecting Clearview's removal of state law claims against it, "[d]espite Clearview's arguments that plaintiffs are attempting to manipulate their claims, as with all lawsuits, a plaintiff is the master of her own complaint." *Thornley v. Clearview AI, Inc.*, No. 1:20-cv-03843-SJC, 2020 WL 6262356, at *2 (N.D. Ill. Oct. 23, 2020) (remanding action for lack of Article III standing), *aff'd*, 984 F.3d 1241, 1248 (7th Cir. 2021).

Under the guise of fraudulent joinder, Defendants seek to litigate the merits of their defenses. But a remand motion is not a motion to dismiss; it merely resolves which court will decide the motion to dismiss. In addition to being incorrect, Defendants' arguments ignore the legal standard for fraudulent joinder—they must prove that there is no reasonable possibility that a California court would allow any relief against any of the Municipal Defendants. Defendants cannot surmount that high bar here. Instead, they improperly ask this Court to rule on state law

1

issues of first impression. Such state law claims are not "fraudulent"—they must be determined on the merits in state court.

Defendants also seek to avoid the fraudulent joinder rules by asking the Court to apply the legal standard in 28 U.S.C. § 1447(e). (Clearview Opp. at 2.) That statute is irrelevant because it only applies where "*after removal* the plaintiff seeks to join additional defendants." 28 U.S.C. § 1447(e) (emphasis added). None of the parties here was joined "after removal." No rule of statutory construction allows ignoring the plain language of a statute to expand the scope of federal jurisdiction, and Defendants cannot cite any authority to support this novel theory.

Finally, Rule 21 does not permit "severing" the Municipal Defendants from the MDL, as Clearview argues. (Clearview Opp. at 13.) The Seventh Circuit has never endorsed the procedural misjoinder theory that Clearview advances, and numerous courts in this District have repeatedly rejected this argument. There are many reasons for this, including that a court that lacks subject-matter jurisdiction over an action in the first instance may not artificially create diversity jurisdiction by invoking the Rules of Civil Procedure to sever nonfraudulent, nondiverse parties. Doing so would constitute an improper expansion of the limited jurisdiction that Congress granted the federal courts.

Because the parties are not diverse and because Defendants have failed to prove that there is no reasonable possibility that Plaintiffs could prevail against any nondiverse Municipal Defendant on any claim, this action must be remanded to Alameda County Superior Court.

## ARGUMENT

**I.  DEFENDANTS CANNOT MEET THEIR HEAVY BURDEN OF SHOWING THAT THE MUNICIPAL DEFENDANTS ARE FRAUDULENTLY JOINED**

Contrary to Defendants' assertion, 28 U.S.C. § 1447(e), which governs a plaintiff seeking to add a defendant ***after removal***, is inapplicable here. Rather, to show fraudulent joinder, Defendants bear the heavy burden of demonstrating that that there is no reasonable possibility of Plaintiffs prevailing on any of their claims against any of the Municipal Defendants. Defendants fall far short of meeting that substantial burden.

### A.  28 U.S.C. § 1447(e) Does Not Apply

Clearview contends that the Court should apply the permissive joinder standard in 28 U.S.C. § 1447(e), rather than the fraudulent joinder doctrine, in assessing the propriety of Clearview's removal. (Clearview Opp. at 6.) Section 1447(e), however, applies only to cases where, "***after removal*** the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction." 28 U.S.C. § 1447(e) (emphasis added). Clearview removed this action with nondiverse Municipal Defendants as named parties, and Plaintiffs have not sought to add any parties after removal; as such, § 1447(e) plainly does not apply.

Clearview cites a single case from Maryland in support of its argument that § 1447(e) could somehow apply where, as here, the complaint was not amended "after removal": *Simon v. Marriott Int'l, Inc.*, No. 8:19-cv-01792-PWG, 2019 WL 4573415 (D. Md. Sept. 20, 2019). (*See* Clearview Opp. at 6.) Clearview claims that the *Simon* court "concluded that plaintiffs' counsel's dismissal and refiling of the complaint was 'analogous' to an 'amendment[] to a complaint *post*-removal' and therefore subject to the fraudulent joinder analysis under § 1447(e)." (Clearview Opp. at 6 (citing *Simon*, 2019 WL 4573415, at *5).) That is simply incorrect. Although the word "analogous" and the phrase "amendment[] to a complaint *post*-removal" both appear in the *Simon* opinion, the *Simon* court does not apply—or even discuss—§ 1447(e). Rather, *Simon* dealt with a party that tried to gerrymander a damages class to avoid CAFA. That also has nothing to do with this case.

Clearview's request that the Court ignore the language of the statute lacks any legal support. Clearview's removal can be evaluated only under the fraudulent joinder doctrine.

### B. Plaintiffs Have a Reasonable Possibility of Prevailing on At Least One of Their Claims Against the Municipal Defendants

Defendants also attempt to evade their burden by conflating the fraudulent joinder standard with the standard governing motions to dismiss under Rule 12(b)(6). (*See* Clearview Opp. at 7; El Segundo Mot. at 7; Alameda Mot. at 9; Antioch Mot. at 9.) The fraudulent joinder doctrine, however, is not a mechanism for a state-court defendant to litigate a motion to dismiss in federal court. As the Seventh Circuit has noted, a defendant's "heavy burden" to demonstrate that joinder is fraudulent "is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under [Rule] 12(b)(6)." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (citations omitted). Indeed, "a removing defendant 'must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)). In other words, if the Court finds that Plaintiffs have "a ***reasonable possibility*** of success on ***even one*** of [their] claims" against any of the Municipal Defendants, then remand is required. *Smith v. Phillip Morris USA Inc.*, No. 1:18-cv-06397-EEC, 2019 WL 4750119, at *2 (N.D. Ill. Sept. 30, 2019) (nondiverse defendants were not fraudulently joined because plaintiffs had reasonable possibility of prevailing on one of two claims against nondiverse defendants, and remanding case) (emphasis added); *see also Schur*, 577 F.3d at 764. Defendants have failed to negate all of Plaintiffs' claims against the Municipal Defendants and improperly ask the Court to determine novel questions of California law in the context of a fraudulent joinder argument.

Defendants fall far short of carrying their heavy burden to prove that there is no reasonable possibility a California court might grant Plaintiffs any relief against any of the Municipal Defendants. ***First***, Defendants' argument that Plaintiffs have failed to allege compliance with the California Tort Claims Act is misplaced; the California Tort Claims Act

does not apply to claims for injunctive relief, which Plaintiffs seek against the Municipal Defendants here. ***Second***, as the California Supreme Court has expressly recognized, an infringement of liberty of speech claim under article I, section 2(a) of the California Constitution supports a private right of action for injunctive relief and need not involve a literal restraint on speech. ***Third***, Defendants have failed to show that California law forecloses Plaintiffs' appropriation of likeness claims. ***Fourth***, after resolving relevant legal questions in Plaintiffs' favor (a necessary step that Defendants repeatedly disregard), Plaintiffs demonstrate a cognizable privacy right in the data gathered and disseminated by Clearview and utilized by the Municipal Defendants. And ***fifth***, Defendants simply ignore the portions of the Complaint alleging that the Municipal Defendants substantially assisted Clearview in its appropriation of Plaintiffs' likenesses and its invasion of Plaintiffs' privacy.

### 1. The California Tort Claims Act does not apply to Plaintiffs' claims seeking injunctive relief against the Municipal Defendants

Defendants argue that the California Tort Claims Act ("CTCA") bars Plaintiffs' claims against the Municipal Defendants. (Clearview Opp. at 7, 10; El Segundo Mot. at 4-5; Alameda Mot. at 4-5; Antioch Mot. at 4-5.) None of the Defendants addresses, let alone refutes, Plaintiffs' opening argument that the "CTCA does not apply where, as here, Plaintiffs seek injunctive relief, not money damages" against government entities. (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Remand ("Plaintiffs' Mot.") (Dkt. No. 193.) at 11.)

The CTCA "does not apply to nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief." *Branciforte Heights, LLC v. City of Santa Cruz*, 138 Cal. App. 4th 914, 928 (2006) (citing *Minsky v. City of Los Angeles*, 11 Cal. 3d 113 (1974)); *see also Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 868 (1983) (holding that the CTCA does not apply to "an action which seeks principally injunctive relief"). This rule is reiterated in the cases upon which Defendants rely. (*See, e.g.*, Alameda Mot. at 5; Antioch Mot. at 5 (citing *Hart v. Alameda County*, 76 Cal. App. 4th 766, 782 (1999) (holding that the CTCA "applies only to claims for

money or damages" and not to claims for declaratory or equitable relief)). Here, because Plaintiffs seek injunctive relief against the Municipal Defendants, the CTCA does not apply.

Nor is there any legal support for Defendants' contention that any claims brought against government entities (like the Municipal Defendants) must be based on a California statute. (Clearview Opp. at 7-10.) The statutory basis requirement that the Municipal Defendants assert is a provision of the CTCA, which is inapplicable to Plaintiffs' equitable claims. *See* Cal. Gov. Code § 814 (stating that the CTCA does not affect "the right to obtain relief other than money or damages against a public entity or public employee").

### 2. Plaintiffs have a reasonable possibility of prevailing on their infringement of liberty of speech claim

Defendants also argue that Plaintiffs' claim against the Municipal Defendants for violation of article I, section 2(a) of the California Constitution is not viable because section 2(a) does not create a private right of action. (Clearview Opp. at 10.) In support of this argument, the Municipal Defendants rely on *Degrassi v. Cook*, in which the California Supreme Court ruled that "article I, section 2(a) does not afford a right *to seek money damages* in the circumstances presented." 29 Cal. 4th 333, 343 (2002) (emphasis added).[1] Defendants omit, however, *Degrassi's* corollary holding: that article I, section 2(a) of the California Constitution "supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction." *Id.* at 338 (citing *Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 307 (2002)). Accordingly, Plaintiffs' claims for injunctive relief against the Municipal Defendants are permissible under article I, section 2(a).

Relying on *McAllister v. Los Angeles Unified School Dist.*, 216 Cal. App. 4th 1198, 1217 (2013), Defendants also argue that Plaintiffs' article I, section 2(a) claim is not viable because Plaintiffs do not allege that the Municipal Defendants "literally restrained or abridged their

---

[1] Defendant City of El Segundo misquotes *Degrassi* as stating that "'Article I, Section 2 of the California Constitution does not create a private right of action.'" (El Segundo Mot. at 9.) This language quoted by El Segundo appears nowhere in the *Degrassi* opinion. To the contrary, the *Degrassi* court expressly held that article I, section 2(a) of the California Constitution *does* support a private right of action for injunctive relief. 29 Cal. 4th at 338.

speech in any way." (Clearview Opp. at 10-11.) Defendants neglect to address Plaintiffs'
argument that *McAllister* is inapposite here because merely it held that a violation of section 2(a)
did not warrant reinstatement of a government employee. (Plaintiffs' Mot. at 12.) Outside of the
specific context of the reinstatement of a government employee, California courts have allowed
claims brought under article I, section 2 based on the chilling of constitutionally-protected
speech. *See, e.g.*, *Taking Offense v. State*, 66 Cal. App. 5th 696, 718 (2021) (holding that in
evaluating the constitutionality of government conduct under section 2(a) "it is important to
ensure that legitimate speech is not chilled or punished" and imposing no requirement for a
literal restraint on speech). Indeed, the California Supreme Court in *White v. Davis* expressly
acknowledged that government surveillance could unconstitutionally chill speech even if it did
not involve a literal restraint on speech. 13 Cal. 3d 757, 761 (1975) (recognizing the "substantial
probability" that "alleged covert police surveillance will chill" protected speech and reversing
demurrer decision in light of plaintiff's allegations).

　　The Municipal Defendants' alleged conduct here is precisely the type of "covert police
surveillance" that the court warned of in *White* as tending to chill protected speech. As Plaintiffs
have alleged, the Municipal Defendants' continuing use of and contribution to Clearview's
software allows them to access the biometric data[2] of millions of California residents. (Plaintiffs'
Complaint ("Compl.") (Dkt. No. 193-2) ¶ 65.) Plaintiffs have further alleged that the mass
surveillance by the Municipal Defendants "chills Plaintiffs from engaging in protected speech
critical of the police [...] [for] fear [of] being identified and targeted for retaliation." (Compl. ¶
75.) Applying *White* to these allegations makes clear that Plaintiffs have a reasonable possibility

---

[2] Clearview quibbles with whether facial images, allegedly delivered without facial vectors,
qualify as "biometric" data. (Clearview Opp. at 1 n.2, 11). While this argument is well beyond
the scope of the matter before the Court, Plaintiffs clarify that biometrics "are unique physical
characteristics, such as fingerprints, that can be used for automated recognition." Homeland
Security, https://www.dhs.gov/biometrics (last visited Dec. 28, 2021). Facial images, including
the capacity to match them, clearly fall within this definition.

of prevailing on their article I, section 2 infringement of speech claim; indeed, this is the exact type of application of state law that a state court should be making.

In addition to arguing for an incorrect legal standard, Defendants improperly ask the Court to make factual inferences against Plaintiffs. For example, Defendants argue that Plaintiffs' infringement of speech allegations are "baseless" and that Clearview's "app does not 'surveil' anyone." (Clearview Opp. at 11-12; Alameda Mot. at 12-13; Antioch Mot. at 12-13.) This argument has nothing to do with the fraudulent joinder of any party; instead, it improperly seeks to litigate Clearview's purported defense under state law. Regardless, Plaintiffs allege that Clearview's software does indeed surveil, and Plaintiffs provide factual support for this allegation by citing Canada's request to Clearview to remove the faces of Canadian residences from its database because "what Clearview does is mass surveillance." (Compl. ¶ 7.) Plaintiffs allege that the Municipal Defendants "have active Clearview subscriptions" (Compl. ¶ 10), and "have also run searches using Clearview" (*id.*), both of which are facts relevant to the ongoing harm imposed by Defendants on Plaintiffs seeking "to continue their engagement in political speech critical of the police and immigration policy." (Compl. ¶ 11.) Plaintiffs further allege that Clearview's practices "chill[] their ability to exercise various constitutional rights—including the right to protest and to travel—without being instantaneously identified and tracked." (Compl. ¶¶ 16-17.) Defendants' attempts to dispute these factual allegations with unsubstantiated assertions are improper in the context of a fraudulent joinder analysis, where Defendants must show that Clearview has no reasonable possibility of prevailing on its claim "after resolving all issues of fact *and law* in favor of the plaintiff." *Morris*, 718 F.3d at 666; *see also Smith*, 2019 WL 4750119, at *3 (stating that "the Court must give the benefit of factual and legal inferences to the plaintiff" because, "[a]fter all, the standard is whether there is any reasonable possibility of [the plaintiff] winning—not whether he has adequately stated a claim").

Moreover, Plaintiffs have alleged that "the City of Alameda banned the use of facial recognition technology in 2019." (Compl. ¶ 10.) In response, Clearview makes the semantic argument that the City of Alameda issued "a nonbinding resolution that simply states a policy

preference of the Alameda City Council." (Clearview Opp. at 4.) This assertion misses the mark; the enforceability of the resolution is irrelevant to Plaintiffs' liberty of speech claim. What Defendants do not, and cannot, dispute is that the City of Alameda did, in fact, pass a resolution stating that "[n]o city staff shall obtain, retain, access, or use any face recognition technology nor any information obtained from face recognition technology." (City of Alameda Resolution No. 15625 (Dkt. No. 210-4) at 10.) Regardless of whether the resolution is binding or enforceable, the City Council's passage of it demonstrates the City's concern that this particular type of mass surveillance could result in the chilling of speech. Moreover, even if Defendants had provided any evidence undermining the practical effect of this resolution, the question of whether the resolution is "binding" on the Municipal Defendants is a disputed factual question that must be resolved in Plaintiffs' favor at this stage. *See Morris*, 718 F.3d at 666. After resolving all factual and legal issues in Plaintiffs' favor, it is clear that there is a reasonable possibility that Plaintiffs may prevail against at least one of the Municipal Defendants on its infringement of speech claim.

### 3. Plaintiffs have a reasonable possibility of prevailing on their aiding and abetting a tort claim

Defendants argue that Plaintiffs cannot prevail on their aiding and abetting claim against the Municipal Defendants because (1) Plaintiffs do not state a claim for appropriation of likeness against Clearview, and (2) Plaintiffs do not state a claim for aiding and abetting a tort against the Municipal Defendants. (Clearview Opp. at 7-10.) Once again, Defendants rely upon the wrong standard. *See Schur* 577 F.3d at 764. The question is not whether Plaintiffs have stated a claim against Defendants, but whether Defendants have shown that there is no reasonable possibility that Plaintiffs will prevail on at least one of their aiding and abetting claims against at least one Municipal Defendant. Defendants have not satisfied this heavy burden.

With respect to Plaintiffs' appropriation of likeness claim, Defendants have pointed to no California case limiting such claims to the advertising and merchandising contexts. As for Plaintiffs' invasion of privacy claim, Defendants ignore recent Supreme Court privacy jurisprudence rejecting the third-party doctrine in circumstances involving technological

innovations like Clearview's software. Plaintiffs have alleged that the Municipal Defendants substantially assisted Clearview in both its appropriation of Plaintiffs' likenesses and its invasion of Plaintiffs' privacy by contributing to, for example, the pattern recognition functionality of Clearview's technology. Because the Court must resolve all factual issues and open legal questions in Plaintiffs' favor, Defendants cannot show that Plaintiffs' aiding and abetting claims against the Municipal Defendants are foreclosed as a matter of law.

<blockquote>

a. **Plaintiffs have a reasonable possibility of prevailing on their appropriation of likeness claim against Clearview**
</blockquote>

Clearview argues that Plaintiffs' appropriation of likeness claim "is foreclosed because Plaintiffs concede that they cannot allege that Clearview used their names and likenesses for advertising or merchandising purposes." (Clearview Opp. at 7-8.) California law, however, has never limited appropriation of likeness claims to the advertising or merchandising context. Notably, Defendants have not cited a single California case that imposes this requirement.

Clearview argues that "[t]he law is settled" and that "Plaintiffs fail to point to any support for their misappropriation of likeness claim." (Clearview Opp. at 8.) This argument stands Clearview's heavy fraudulent joinder burden on its head. It is Defendants—not Plaintiffs—who must establish that the law entirely forecloses Plaintiffs' appropriation of likeness theory. Defendants have not shown that California courts uniformly and unequivocally limit common law appropriation of likeness claims to the advertising and merchandising contexts. To the contrary, California courts *do* allow common law appropriation of likeness claims outside the advertising and merchandising contexts; *Dice v. X17, Inc.*, is one such example. No. B282448, 2019 WL 4786064 (Cal. App. Sept. 27, 2019). In *Dice*, a celebrity media company, X17, disseminated a video of the plaintiff with commentary that falsely made it appear as if the plaintiff was in possession of illicit substances. *Id.* The plaintiff brought an appropriation of likeness claim against X17, alleging that the video caused the plaintiff reputational harm and mental distress. *Id.* The plaintiff ultimately prevailed in his claim for appropriation of likeness, despite the claim having nothing to do with advertising or merchandising. *Id.*

As in *Dice*, Plaintiffs have a viable appropriation of likeness claim against Clearview and a viable aiding and abetting claim against the Municipal Defendants notwithstanding these claims falling outside of the advertising and merchandising contexts. Plaintiffs allege that Clearview has captured Plaintiffs' identities and biometric information without consent, and is selling its database to customers, including the Municipal Defendants, causing Plaintiffs' economic loss and mental distress. (Compl. ¶¶ 63-75.) Because Defendants have failed to demonstrate that the California common law appropriation of likeness claim is limited to the advertising and merchandising contexts, Defendants certainly cannot show that there is "no reasonable possibility" that Plaintiffs will prevail on this claim.

> **b.    Plaintiffs have a reasonable possibility of prevailing on the aiding and abetting invasion of privacy claim against the Municipal Defendants**

Defendants argue that Plaintiffs cannot prevail on their claim for invasion of privacy pursuant to article I, section 1 of the California Constitution because "Plaintiffs cannot establish that they had a reasonable expectation of privacy in their photographs that were voluntarily and publicly posted on the Internet." (Alameda Mot. at 10, Antioch Mot. at 10.) But Plaintiffs' photographs are only one aspect of their invasion of privacy claim. Plaintiffs also allege that they have a reasonable expectation of privacy "in their names," "biometric information, and other identifiers" because third-party use of such data is prohibited by social media platforms "in their terms of service." (Compl. ¶ 86.) Plaintiffs also have a reasonable expectation of privacy in their biometric information (which Clearview extracts and enters into its database) because it can be used to identify them based on their unique and immutable physical and biological characteristics. It is both Clearview's collection *and* its use of Plaintiffs' biometric data that creates the privacy violation. Notably, Defendants cite no California decision holding that an individual does not have a reasonable expectation of privacy in their biometric data. No such authority exists, and this presents an issue of first impression in California.

Although privacy rights and legal doctrine related to metadata and biometric data are still in flux, courts are beginning to recognize that individuals have privacy rights over such data,

even data voluntarily given to and collected by third parties. In *Carpenter v. United States*, the Supreme Court recognized that individuals have a reasonable expectation of privacy in their cell-site location information gathered by their cell phones' wireless carriers. 138 S. Ct. 2206 (2018). The Supreme Court refused to blindly extend the antiquated third-party doctrine, which originated decades prior in the context of pen registers and bank statements, to the "novel circumstances" of emerging technologies collecting metadata like cell-site location information. *Id.* at 2216. The Court determined that the fact that cell-site location information is held by a third party did not "overcome the user's claim to Fourth Amendment protection." *Id.* at 2217.

Here, Plaintiffs likewise assert that Clearview's surreptitious collection of their biometric data over time (and the Municipal Defendants' use of that data) is a violation of their privacy interests, even if some of the photographs used to compile that biometric data were initially disclosed by Plaintiffs to third parties voluntarily. *Id.* Following the Supreme Court's departure from the third-party doctrine in *Carpenter*, a court could very well determine that Clearview's technology in scraping biometric data from all corners of the Internet is more akin to cell-site location information than bank records and pen registers, and that Plaintiffs therefore have a cognizable privacy right in the data gathered and disseminated by Clearview and utilized by the Municipal Defendants. Particularly given the lack of clarity in this area of the law, Defendants have not shown that Plaintiffs have no reasonable possibility of prevailing on their invasion of privacy claim. *See Smith*, 2019 WL 4750119, at *4 (acknowledging that the relevant legal questions "remain[ed] open" and concluding that "at this stage of the case—assessing fraudulent joinder—any ambiguity in the law must be decided in [the plaintiff's] favor").

**c.**     **Plaintiffs have a reasonable possibility of prevailing on the aiding and abetting claims against the Municipal Defendants**

Clearview argues that Plaintiffs have not stated a claim for aiding and abetting the commission of a tort because "Plaintiffs do not allege that the Municipal Defendants participated in" Clearview's appropriation of Plaintiffs' biometric data. (Clearview Opp. at 10.) Clearview and the Municipal Defendants ignore the many allegations in the Complaint that illustrate

instances where the Municipal Defendants substantially assisted in Clearview's appropriation of the Plaintiffs' likeness and the invasion of Plaintiffs' privacy. Plaintiffs allege that the City of Alameda "uploaded probe images to Clearview so that Clearview's facial recognition software could analyze them for biometric information and search for other photos with matching biometric information." (Compl. ¶ 73.) Plaintiffs also allege that "[p]olice officers employed by the City of El Segundo and the City of Antioch have also used and continue to use Clearview in the same manner: [t]hey upload probe images to Clearview so that Clearview can analyze them for biometric information and search for other photos with matching biometric information." (Compl. ¶ 74.) While Clearview attempts to minimize the importance of the Municipal Defendants' uploading of images to Clearview's database, Plaintiffs have alleged that such conduct is in fact essential to the algorithm upon which Clearview relies to create a purported "faceprint," which serves as "a key for recognizing that individual in other images." (Compl. ¶ 4.) Without assistance from Clearview customers such as the Municipal Defendants in feeding the algorithm additional images for its pattern recognition function, Clearview's software would not be able to function as it does.

As a result, Plaintiffs have alleged that the Municipal Defendants (1) knew Clearview was committing a tort against Plaintiffs (Compl. ¶ 93), (2) substantially assisted or encouraged them to commit a tort (Compl. ¶¶ 72-73), and (3) played a substantial factor in causing Plaintiffs' harm (Compl. ¶¶ 72-73); *see* Judicial Council of California Civil Jury Instructions (2020), No. 3610, Aiding and Abetting Tort (listing elements); *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 324 (2013) ("Aiding-abetting [the commission of a tort] focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct") (citation omitted). The Municipal Defendants' continued use of Clearview's product and their uploading of biometric data critical to the continued pattern recognition function of Clearview's algorithm give rise to a reasonable possibility that Plaintiffs will prevail on their aiding and abetting a tort claims against at least one of the Municipal Defendants. The more searching inquiry that Defendants advance is impermissible in a fraudulent joinder analysis.

13

## II. THE COURT SHOULD REJECT CLEARVIEW'S ATTEMPT TO INVOKE THE "PROCEDURAL MISJOINDER" DOCTRINE, WHICH THE SEVENTH CIRCUIT HAS NEVER ADOPTED AND DISTRICT COURTS ROUTINELY REJECT

Clearview contends that even if the nondiverse Municipal Defendants are not fraudulently joined, the Court should nonetheless find them misjoined under Federal Rule of Civil Procedure 20(a), and sever them from this action under Federal Rule of Civil Procedure 21. (Clearview Opp. at 13-15.) What Clearview neglects to mention is that courts have almost universally refused to apply the severance procedure that it espouses (which courts refer to as the "fraudulent misjoinder" or "procedural misjoinder" doctrine). In particular, district courts in this Circuit have rejected the procedural misjoinder doctrine for three reasons: *First*, the spirit of the doctrine contradicts binding Seventh Circuit precedent holding that there is nothing fraudulent or procedurally improper about a plaintiff intentionally choosing to include nondiverse parties in order to avoid a federal forum. *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000). *Second*, the doctrine improperly relies upon state or federal procedural rules to expand the scope of federal subject-matter jurisdiction, manufacturing diversity where it otherwise does not exist. And *third*, the doctrine is unnecessarily confusing and difficult to apply in practice, running afoul of Seventh Circuit precedent favoring simple and straightforward jurisdictional rules. *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005). There is no rule that would permit severing the Municipal Defendants from this action, and the Court should remand the entire case.

The procedural misjoinder doctrine has never been adopted by the Seventh Circuit, and "'has been highly criticized and rejected by other courts in the Northern and Southern District of Illinois and by courts in other districts of the Seventh Circuit.'" *Evans v. Bristol-Myers Squibb Co.*, No. 1:12-cv-05005-GWL, 2012 WL 4956460, at *2 (N.D. Ill. Oct. 16, 2012) (quoting *Livingston v. Hoffmann-La Roche, Inc.*, No. 1:09-cv-02611-MEA, 2009 WL 2448804, at *8 (N.D. Ill. Aug. 6, 2009)); *see also Feeley v. Bayer Corp.*, No. 3:18-cv-02090-NJR-GCS, 2019 WL 4261545, at *4 (S.D. Ill. Sept. 9, 2019) (declining to apply the doctrine, observing that

"courts in this district consistently reject application of the doctrine of fraudulent or procedural misjoinder," and listing cases).

The notion of procedural misjoinder originated in *Tapscott v. MS Dealer Serv. Corp.*, wherein the Eleventh Circuit reasoned that while "mere misjoinder" of defendants—*i.e.*, where the claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences, and do not involve a common question of law or fact—does not destroy diversity jurisdiction, "egregious" misjoinder is tantamount to fraudulent joinder, and therefore, such egregious misjoinder may destroy diversity. 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

While the Seventh Circuit has not expressly rejected the fraudulent misjoinder doctrine, its reasoning in *Garbie*, which was decided after *Tapscott*, is instructive. In *Garbie*, the plaintiffs filed a putative class action in Illinois state court against a defendant with its principal place of business in Michigan. 211 F.3d at 409. Two of the plaintiffs were from Illinois, and four were residents of Michigan. *Id.* The defendant sought to remove the case, arguing that the Michigan plaintiffs had been fraudulently joined to evade federal jurisdiction. *Id.* In affirming that the defendant's removal was improper, the Seventh Circuit stated: "Four of the named plaintiffs hale from Michigan, so the litigants are not completely diverse. Even if the Michiganders were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." *Id.* at 410 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The *Garbie* court went on to emphasize that "[n]either § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal." *Id.* (citations omitted); *see also Thornley*, No. 1:20-cv-03843-SJC, 2020 WL 6262356, at *2; *Thornley*, 984 F.3d at 1248 ("It is no secret to anyone that [the plaintiffs] took care in their allegations, and especially in the scope of the proposed class they would like to represent, to steer clear of federal court. But in general, plaintiffs may do this. As long as their allegations are in good faith, they may include non-diverse parties as defendants.").

15

Relying upon the reasoning in *Garbie*, numerous district courts in this Circuit have expressly refused to recognize procedural misjoinder as a jurisdictional basis for removal. *See, e.g.*, *Creighton v. Bristol-Myers Squibb & Co.*, No. 1:13-cv-00629-JZL, 2013 WL 12333214, at *3-4 (N.D. Ill. May 10, 2013); *Evans*, 2012 WL 4956460, at *2 (rejecting fraudulent misjoinder doctrine and remanding case); *Reeves v. Pfizer*, 880 F. Supp. 2d 926, 928 (S.D. Ill. 2012) (same); *Davidson v. Bristol-Myers Squibb Co.*, No. 3:12-cv-00058-GPM, 2012 WL 1253165, at *4 (S.D. Ill. Apr. 13, 2012) (same); *Boyer v. Bristol-Myers Squibb Co.*, No. 3:12-cv-00061-GPM, 2012 WL 1253177, at *4 (S.D. Ill. Apr. 13, 2012) (same); *Anglin v. Bristol-Myers Squibb Co.*, No. 3:12-cv-00060-GPM, 2012 WL 1268143, at *4 (S.D. Ill. Apr. 13, 2012) (same); *Wilson v. Pfizer, Inc.*, No. 3:11-cv-01078-GPM, 2012 WL 1036824, at *2 (S.D. Ill. Mar. 27, 2012) (same); *Tobais v. Merck Sharpe & Dohme Corp.*, No. 3:11-cv-00982-DRH-SCW, 2012 WL 293511, at *2 (S.D. Ill. Jan. 31, 2012) (same); *Aranda v. Walgreen Co.*, No. 3:11-cv-00654-JPG-DGW, 2011 WL 3793648, at *2 (S.D. Ill. Aug. 24, 2011) (same); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 847-48 (S.D. Ill. 2011) (same); *Anderson v. Bayer*, No. 3:09-cv-00988-GPM-CJP, 2010 WL 148633, at *6 (S.D. Ill. Jan. 13, 2010) (same); *Sabo v. Dennis Techs., LLC*, No. 3:07-cv-00283-DRH-PMF, 2007 WL 1958591, at *8 (S.D. Ill. July 2, 2007) (same); *Alegre v. Aguayo*, No. 1:06-cv-05744, 2007 WL 141891, at *5 (N.D. Ill. Jan. 17, 2007) (same); *Bavone v. Eli Lilly & Co.*, No. 3:06-cv-00153-GPM-CJP, 2006 WL 1096280, at *1 (S.D. Ill. Apr. 25, 2006) (same); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842 (S.D. Ill. 2006) ("Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court.").

In addition to drawing upon the reasoning of *Garbie*, "the position taken by courts that have rejected the doctrine is that procedural misjoinder is an improper expansion of diversity jurisdiction by the federal courts which unnecessarily complicates the removal analysis and is confusing in its application." *In re Yasmin & Yaz*, 779 F. Supp. 2d at 854. In other words, a court cannot sever nondiverse parties under Rule 21 if it lacks subject-matter jurisdiction over the case

in the first instance. *See Creighton*, 2013 WL 12333214, at *4 ("no Supreme Court authority indicates that joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court"); *Rutherford*, 428 F. Supp. 2d at 852 (referring to procedural misjoinder doctrine as "an improper expansion of the scope of federal diversity jurisdiction by the federal courts"); *Robinson v. Ortho-McNeil Pharm.*, *Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008) (declining to adopt the procedural misjoinder doctrine on the basis that it is a judicial innovation that enlarges the scope of federal jurisdiction); *Evans*, 2012 WL 4956460, at *2 ("this court concurs with other courts in this circuit that the matter [of misjoinder] is not a jurisdictional one for this court to resolve"); *Ambrose v. Backpage.com, LLC*, No. 1:17-cv-05081-MSS, 2017 WL 11559787, at *2 (N.D. Ill. Nov. 21, 2017) ("Fraudulent misjoinder is a court-made doctrine that is inconsistent with the basic premise that Congress defines the jurisdiction of the federal courts.").

District courts have also recognized that "the doctrine violates the tenet that 'the first virtue of any jurisdictional rule is clarity and ease of implementation.'" *Creighton*, 2013 WL 12333214, at *4 (quoting *Knudsen*, 411 F.3d at 806). "*Tapscott* has created a morass of confusion surrounding the proper application of the doctrine, including whether state or federal joinder rules apply; whether egregious, less-than-egregious-but-more-than-ordinary, or ordinary misjoinder justifies severance of claims; and whether dismissal or remand of severed claims is appropriate." *Id.*; *see also Livingston v. Hoffmann-La Roche Inc.*, 293 F. Supp. 3d 760, 765 (N.D. Ill. 2018) ("numerous district courts have considered and declined to follow the [procedural misjoinder] doctrine based on its lack of clarity and ease of implementation"); *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 686 (S.D. Ill. 2010) (stating "courts have struggled with virtually every aspect of the meaning and scope of the doctrine"); *Wolf v. Kennelly*, 540 F. Supp. 2d 955, 962 (N.D. Ill. 2008) (observing "the doctrine of procedural misjoinder adds a further level of complexity—and additional litigation—to a federal court's decision regarding removal jurisdiction" (internal citation omitted)); *Alegre*, 2007 WL 141891, at *5 (declining to follow the doctrine and "stress[ing] the currently muddled state of fraudulent misjoinder

jurisprudence and the resulting impact on ease of application of jurisdictional rules"); *Rutherford*, 428 F. Supp. 2d at 850-55 (detailing the "enormous judicial confusion engendered by the doctrine" and concluding that "no clear standards for the application of the doctrine have emerged").

These principles apply with equal force here. The Court should adopt the well-reasoned analysis of these district courts and reject Clearview's attempt to rely upon an unnecessarily complicated and confusing doctrine that improperly expands the subject-matter jurisdiction of the federal courts.[3] Accordingly, contrary to Clearview's suggestion, the Court cannot opt to keep Plaintiffs' claims against Clearview in the MDL while severing and remanding Plaintiffs' claims against the Municipal Defendants under Rule 21 because the Court lacks subject-matter jurisdiction in the first instance. The Court must remand the entire action to state court.

Finally, even if the court were inclined to go against the great weight of authority in this Circuit and apply the procedural misjoinder doctrine here, severance would still not be warranted. As explained above, and as Defendants rightly acknowledge, Plaintiffs' aiding and abetting claims against the Municipal Defendants depend on the viability of their appropriation of likeness and invasion of privacy claims against Clearview. (*See supra* at p. 12; Clearview Opp. at 7-8 ("Plaintiffs have no primary claim against Clearview, which is required for aider-

---

[3] Several decisions rejecting the procedural misjoinder doctrine were decided in the context of an MDL, belying Clearview's assertion that the misjoinder calculus differs here in an MDL for reasons of efficiency and judicial economy, (Clearview Opp. at 15). *See, e.g., In re Yasmin & Yaz*, 779 F. Supp. 2d at 849; *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 3:12-MD-02385-DRH-SCW, 2014 WL 257831, at *3 (S.D. Ill. Jan. 23, 2014) (refusing to apply doctrine notwithstanding "the efficiency and benefits associated with the MDL"); *Livingston v. Hoffmann-La Roche, Inc.*, No. 1:09-cv-02611-MEA, 2009 WL 2448804, at *7-8 (N.D. Ill. Aug. 6, 2009) (remanding case and rejecting procedural misjoinder doctrine while "recogniz[ing] that the Pharmaceutical Defendants will be inconvenienced if they are forced to litigate this case in state court, in light of the pending cases against them in the MDL"); *Douthit v. Janssen Rsch. & Dev., LLC*, No. 3:17-cv-00439-DRH, 2017 WL 2492661, at *1-3 (S.D. Ill. June 9, 2017) (remanding case and rejecting procedural misjoinder doctrine after having previously granted defendant's motion to stay case pending its likely transfer to the MDL); *Roland v. Janssen Rsch. & Dev., LLC*, No. 3:17-cv-00582-DRH, 2017 WL 3033786, at *2 (S.D. Ill. July 18, 2017) (remanding case and rejecting procedural misjoinder doctrine, preventing transfer to MDL).

and-abettor liability."). Accordingly, at the very least, Plaintiffs' aiding and abetting claims and derivative appropriation of likeness and invasion of privacy claims "give[] rise to common questions of fact" and law. *See Creighton*, 2013 WL 12333214, at *4; *see also Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, No. 00-55283, 2001 WL 1563913 (9th Cir. Dec. 5, 2001) (holding that even if the Ninth Circuit were to accept and apply *Tapscott*'s fraudulent misjoinder doctrine, any misjoinder "was not so improper as to be considered egregious" because there seemed to be "some connection or nexus between the claims of the non-diverse plaintiff and the claims of the diverse plaintiffs").

## III.   DEFENDANTS' FIRST AMENDMENT AND ARTICLE III STANDING ARGUMENTS HAVE NO BEARING ON DIVERSITY JURISDICTION

Defendants raise a host of other arguments as to why the Court should deny remand, including that Clearview's defenses implicate the First Amendment, and that Plaintiffs lack Article III standing. (*See* Clearview Opp. at 12-13; Alameda Mot. at 13-14; Antioch Mot. at 13-14.) These arguments are red herrings, wholly irrelevant to the presence or absence of diversity jurisdiction—the sole issue before the Court.

Clearview asserts that the Court "should also retain jurisdiction because Plaintiffs' claims raise First Amendment issues that are appropriate for litigation before a federal court," which are "already being litigated before this Court in Clearview's motion to dismiss briefing." (Clearview Opp. at 12, 13.) As is clear from Clearview's reliance on solely out-of-circuit, non-binding district court decisions, this Circuit has never held that the alleged presence of a First Amendment defense reverses the presumption in favor of remand. Such a holding would be difficult to administer as a practical matter (in terms of what standards would instead apply) and would run contrary to long-settled federal question jurisprudence. *See Perl v. Laux/Arnold, Inc.*, 864 F. Supp. 2d 731, 736 (N.D. Ind. 2012) ("it is . . . well established that a defendant cannot remove a case to federal court 'simply by asserting a federal question in his responsive pleading'") (quoting *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995)).

Moreover, Clearview's First Amendment argument improperly suggests that the Court has discretion to retain this case if it would be prudent and efficient to do so. It does not. If the Court determines that there is a reasonable possibility that Plaintiffs could state a claim against Municipal Defendants, it must remand the case, irrespective of whether it would be more efficient to consolidate the case in the MDL, or whether it would be wiser for a federal court to resolve issues of federal constitutional law. In other words, the Court either has subject-matter jurisdiction over this action, or it does not, but in no way does this inquiry turn on the First Amendment concerns raised by Clearview.

Antioch and Alameda's Article III standing argument is similarly misplaced. (*See* Alameda Mot. at 13-14; Antioch Mot. at 13-14.) According to Antioch and Alameda, Plaintiffs' claims against the Municipal Defendants fail because the Complaint does not plead an injury-in-fact or causation, as required to establish Article III standing. (*Id.* at 14.) This argument, if accepted, would merely provide the Court with an additional reason why remand is required. [4] If the Court determines that Plaintiffs lack Article III standing, it has no discretion to dismiss the case, and instead must remand it to state court. *See Thornley*, No. 1:20-cv-03843-SJC, 2020 WL 6262356, at *2 (granting motion to remand because plaintiffs lacked Article III standing), *aff'd*, 984 F.3d at 1249 (stating that "the court properly remanded the case to the state court" due to lack of standing); *see also Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("§ 1447(c) required the district court to remand this case to state court, because it does not satisfy Article III's requirements.") (citing *McIntyre v. Fallahay*, 766 F.2d 1078, 1082 (7th Cir. 1985) ("[i]f the case did not belong in federal court at all, it should be remanded rather than dismissed" under § 1447(c)); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Res.*, 876 F.2d 1051, 1053-54 (1st Cir. 1989) (concluding § 1447(c) requires district court to remand, not dismiss, for lack of Article III standing)).

---

[4] Plaintiffs reserve the right to address the substance of this issue on a subsequent motion to dismiss, if necessary, and contend that a motion to remand is not the proper vehicle to litigate issues of standing.

In sum, subject-matter jurisdiction is not something that the Court can merely choose to "retain," as Defendants' arguments suggest. (*See* Clearview Opp. at 12.) Defendants' arguments as to the First Amendment, standing, judicial economy, and federal pleading standards are simply orthogonal to the Court's non-discretionary task in determining the presence or absence of diversity jurisdiction. Indeed, because the parties are not diverse, and because Defendants have failed to prove that there is no reasonable possibility that Plaintiffs could prevail against the nondiverse Municipal Defendants, the Court must remand the case.

## CONCLUSION

For the reasons articulated above, Plaintiffs respectfully request that the Court grant their Motion to Remand this action to Alameda County Superior Court.

Dated: December 28, 2021                     Respectfully submitted,

                                             BRAUNHAGEY & BORDEN LLP


                                             _____
                                             Ellen V. Leonida, Esq. (Admitted *Pro Hac Vice*)
                                             leonida@braunhagey.com
                                             Tracy O. Zinsou, Esq. (Admitted *Pro Hac Vice*)
                                             zinsou@braunhagey.com
                                             Pratik K. Raj Ghosh, Esq. (ARDC: 6326943)
                                             ghosh@braunhagey.com
                                             Amy Senia, Esq. (Admitted *Pro Hac Vice*)
                                             senia@braunhagey.com
                                             BRAUNHAGEY & BORDEN LLP
                                             351 California Street, Tenth Floor
                                             San Francisco, CA 94104
                                             Telephone: (415) 599-0210
                                             Facsimile: (415) 599-0210

                                             Kevin Herrera (IL SBN: 6324045)
                                             kevin@justfutureslaw.org
                                             JUST FUTURES LAW
                                             P.O. Box 32194
                                             Chicago, IL 60632
                                             Telephone: (919) 698-5015

                                             *Attorneys for Plaintiffs Steven Renderos, Valeria Thais Suárez Rojas, Reyna Maldonado, Lisa Knox, Mijente Support Committee, and NorCal Resist Fund*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 28, 2021, I electronically transmitted the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS STEVEN RENDEROS, VALERIA THAIS SUÁREZ ROJAS, REYNA MALDONADO, LISA KNOX, MIJENTE SUPPORT COMMITTEE, AND NORCAL RESIST FUND'S OMNIBUS REPLY IN SUPPORT OF MOTION TO REMAND to the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's CM/ ECF system which will automatically transmit requested notice to all parties of record.

Dated: December 28, 2021          _____

                                         Ellen V. Leonida, Esq.