IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' REPLY IN SUPPORT OF FED. R. CIV. P. 72(a) OBJECTIONS TO THE DECEMBER 20, 2021 DISCOVERY ORDER ON PLAINTIFFS' MOTIONS TO COMPEL AND FOR PROTECTIVE ORDER**

**INTRODUCTION**

The response of Defendants Clearview AI, Inc. ("Clearview"); Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics LLC; and Thomas Mulcaire (collectively, "Defendants") does not rebut the clearly erroneous nature of the Magistrate Judge's December 20, 2021 Order (the "Order") with respect to the discovery requests at issue. As a threshold matter, Defendants' contention that Plaintiffs' waived arguments regarding the relevance of their discovery requests and the harmful nature of Defendants' requests lacks merit. It is Defendants who waived any challenge to the relevance of Plaintiffs' requests. Defendants solely objected to those requests on proportionality grounds, and that is what the Order addressed. Defendants cannot now claim that Plaintiffs failed to develop relevance arguments when that was not the basis of Defendants' objections. Notably, even had Defendants objected on relevance grounds, Plaintiffs' motion to compel addressed the relevance of the requests at issue and provided examples of how the requests related to the claims, defenses and issues in the case.

As for Defendants' requests, Defendants misstate that Plaintiffs' motion for protective order did not address how compliance with those requests could result in sensitive, private and

1

irrelevant information about Plaintiffs' sexual orientation being disclosed. Indeed, that was a focal point of the motion and related briefs.

Defendants' merits-based arguments fare no better. The Order was clearly erroneous in that it improperly shifted the burden to Plaintiffs to prove the propriety of their discovery requests, instead of requiring Defendants to justify their opposition to those requests. Notably, Defendants did not satisfy their burden. Rather, Defendants merely relied on boilerplate claims that Plaintiffs' requests were burdensome and overly broad. But they failed to provide documentation that corroborated or otherwise supported the naked claims.

The Order was also clearly erroneous because it was not based on a proper analysis of the proportionality of Plaintiffs' discovery requests to the needs of the case. Properly considered, the proportionality factors demonstrate the propriety of Plaintiffs' requests.

Regarding Plaintiffs' motion for protective order, the Order was clearly erroneous in that it failed to recognize the harmful nature of the information sought and was premised on an incorrect understanding of Plaintiffs' claims. Contrary to the conclusion in the Order, the heart of Plaintiffs' claims is not Defendants' collection of Plaintiffs' online photos, generally. Rather, as Your Honor recently found, Plaintiffs' claims revolve around the unlawful collection of Plaintiffs' biometric data (Dkt. 279 at 4[1]) which Defendants happened to have obtained from photos scraped from the internet. Thus, the only relevant photos are those that Defendants already possess (but have yet to disclose). Yet, the Order requires Plaintiffs to disclose information far beyond that related to the photos at issue, even though such disclosure can reveal highly sensitive personal information about Plaintiffs. If Plaintiffs' Objections are not sustained, the Order would have far-reaching consequences beyond this case, as future privacy victims would be chilled from pursuing claims, knowing that such pursuit would result in even further privacy intrusions for no relevant purpose.

---

[1] Citations to docketed entries are to the CM/ECF-stamped page numbers at the top of the page.

Because the Order is clearly erroneous, the Court should sustain Plaintiffs' objections and grant them the relief requested in their motions to compel and for protective order.

## ARGUMENT

**I. The Rulings With Respect to Interrogatories 8-9 and RFPs 7 and 11 Were Clearly Erroneous.**

    **A. Defendants' Waiver Argument Lacks Merit.**

        **1. It Is Defendants Who Have Waived Any Challenge to the Relevance of the Four Discovery Requests.**

Defendants contend that Plaintiffs have waived various arguments regarding the relevance of the four discovery requests at issue. *See* Dkt. 273 at 8. Defendants ignore that they are the ones who have waived any argument regarding relevance.

While waiver is a flexible doctrine, "arguments not made before a magistrate are normally waived." *U.S. v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000). Defendants did not object to any of the four discovery requests on relevance grounds. *See* Dkt. 213-4 (Interrogatory Ans.) at Nos. 8-9 (objecting as "overbroad, unduly burdensome, and impracticable"); Dkt. 213-5 (RFP Resp.) at Nos. 7, 11 (objecting as overbroad, unduly burdensome, not proportional to the needs of the case and/or impracticable). In denying Plaintiffs' motion to compel with respect to the four requests, the Magistrate Judge solely addressed those actual objections. *See* Dkt. 237 at 10, 12-14.

Because Defendants did not put the relevance of the requests at issue, the Court should preclude Defendants from raising the issue at this late date. This is especially true given that Defendants had the burden of proving the irrelevance of the requests. *See Pavarti v. Oak Forest*, No. 08 C 702, 2010 WL 2836739, at *1 (N.D. Ill. Jul. 19, 2010). Defendants may not shift that burden to avoid Plaintiffs' valid Rule 72(a) objections.

The authority cited by Defendants (Dkt. 273 at 7-8) is distinguishable. Unlike those cases, this is not a case where Plaintiffs withheld an argument from the Magistrate Judge only to later

claim the judge erred in its ruling. Because Defendants did not raise a relevance objection, Plaintiffs had no reason to fully develop a relevance argument.

### 2. Defendants' Waiver Argument Is Otherwise Misplaced.

Even if Defendants had not waived any objection to the relevance of the four requests, Plaintiffs addressed the requests' relevance in their motion to compel briefs. *See* Dkt. 213 at 11-12, 16; Dkt. 225 at 12-13. For instance, in their opening brief, Plaintiffs asserted that the information sought in Interrogatories 8 and 9 was "relevant to, *inter alia*, class size, Defendants' extraterritoriality and government contractor defenses, and their ability to comply with an injunction." Dkt. 213 at 12. Regarding RFPs 7 and 11, Plaintiffs asserted that the requests sought information that was indisputably relevant "such as the URLs associated with the photos Defendants scraped, the dates on which Defendants obtained biometric data . . . [and] how Defendant's technology functions in terms of producing biometric data . . . ." *Id.* at 11; *see also* Dkt. 225 at 12-13.

Because Defendants did not put relevance at issue, the non-exhaustive list of examples set forth above served to demonstrate the requests' connection to the issues in the case. Based on those examples, it was clear that the discovery related to, among other things: (a) class issues; (b) Defendants' defenses, including their extraterritoriality defense and their claimed government contractor exemption under Illinois' Biometric Information Privacy Act ("BIPA"); and (c) information that could be derived from the URLs, which would include the terms of service associated with the websites from which Defendants scraped photos and information about the entities who published the websites, including whether they were located in Illinois. As Your Honor recently found, "the application of the extraterritoriality doctrine is a fact intense inquiry." Dkt. 279 at 6.

4

### B. It Was Clear Error Not to Hold Defendants to Their Burden.

While Defendants had the burden of showing why each of the four requests at issue was improper, *see Pavarti*, 2010 WL 2836739, at *1, they were not held to that burden. Defendants' response underscores this conclusion. Therein, Defendants' simply rehash their boilerplate objections regarding undue burden and overbreadth without providing supporting evidence. *See* Dkt. 273 at 9, 11-12; *see also Rawat v. Navistar Int'l Corp.*, No. 08 C 4305, 2011 WL 3876957, at *11 (N.D. Ill. Sept. 1, 2011) (discussing defendant's failure to provide evidence of undue burden).

Defendants' generic references to "billions of datapoints," alterations to their databases and the creation of "custom source code" (*see* Dkt. 273 at 9, 11-12) do not change this conclusion. The generic references failed to provide the Court with evidence of what burden, if any, would be placed on Defendants if they were required to produce those datapoints, make those alterations or write that code. *See Rawat*, 2011 WL 3876957, at *11. Thus, on the record before the Magistrate Judge, it was unknown if: (a) producing those datapoints was as simple as copying them to a storage device or the cloud; or (b) altering the databases or writing code would take five minutes.

Even if Defendants would be required to expend a considerable amount of time, effort and expense in providing the requested information, that is not a sufficient reason to preclude discovery. *See id.* Defendants cannot avoid complying with Plaintiffs' discovery requests based on overly general claims of hardship. *See id.* This is especially true when it is the massive scale of Defendants' unlawful conduct that has resulted in Defendants having a lot of responsive documents to produce.

Instead of holding Defendants to their burden and placing the consequences of the failure to carry the burden on Defendants, the Order does the opposite. It penalized Plaintiffs by disallowing essential discovery based on generic claims of burden. That was clearly erroneous.

5

### C. It Was Clear Error Not to Conduct a Proportionality Analysis.

The failure to hold Defendants to their burden was just one aspect of a broader issue with the Order – namely, its denial or limitation of the requested discovery without proper consideration of the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1); *see also* Dkt. 263 at 10-12. In their response, Defendants also avoid such an analysis and, instead, focus on waiver and burden to no avail. *See* Dkt. 273 at 9-13.

Proper consideration of the proportionality factors reveals that the requested discovery is proportional to the needs of the case and, thus, it was clearly erroneous for a different determination to have been reached. There is no question that: (a) the amount in controversy in this case is likely in the billions based on available statutory damages and the number of class members; (b) the information at issue is uniquely within Defendants' possession, custody and control; (c) Defendants have far more resources than Plaintiffs; and (d) the issues – *e.g.*, Defendants' unlawful collection and dissemination of Plaintiffs' and class members' sensitive biometric data – are vitally important. *See* Fed. R. Civ. P. 26(b)(1); *see also* Dkt. 213 at 15. Further, as discussed above, Defendants have failed to provide evidence supporting their naked claim of undue burden. Finally, the discovery is essential to resolving the parties' claims and defenses, as well as class certification issues. *See* Dkt. 213 at 11-12, 16; Dkt. 225 at 12-13; Dkt. 263 at 9-12.

That Defendants do not even attempt to present the proportionality factors in a light favorable to them is damning. If Defendants believed there was any way to analyze the factors in a way that supported limiting or excluding the requested discovery, they undoubtedly would have done so. Instead, Defendants are silent.

### D. Plaintiffs Only Seek Information Defendants Already Have.

Without actual evidence or facts to support the Orders' findings with respect to Plaintiffs' discovery requests, Defendants seek to muddy the waters – *i.e.*, Defendants attempt to make it appear as though Plaintiffs seek documents and information Defendants do not have. *See* Dkt. 273 at 11-13. That is not the case.

Contrary to Defendants' contention, Plaintiffs do not seek the creation of "custom source code" or the "restructure and alter[ation]" of databases. *See id.* Plaintiffs merely seek the number of "Blocked Illinois Photos" (Interrogatory 9) and the dates on which Defendants collected, captured or obtained facial vectors (RFP 11). Importantly, by acknowledging they could provide the requested information by writing code or making adjustments to their databases (*see* Dkt. 273 at 11-13), Defendants admit they have the information. Thus, the real issue seems to be Defendants' unwillingness to look for or provide it. That is not a valid basis to withhold discovery, and it was clear error for the Order to conclude otherwise. Defendants' position is no different than a party with a lot of paper documents stored in a warehouse claiming it should not have to produce requested documents because it would have to buy a ladder to retrieve them.

While Defendants try to reimagine Thomas Mulcaire's declaration as not supporting their ability to determine the number of Blocked Illinois Photos (*see* Dkt. 273 at 13), the declaration's plain language tells the true story. The declaration makes clear that various people have access to the Blocked Illinois Photos and can use them in connection with this litigation:

> No Clearview employees can search Clearview's database for the Blocked Illinois Photos, and *the limited number of employees with access to the photo and facial-vector databases have signed documentation stating that they understand that Clearview is storing the Blocked Illinois Photos solely for purposes related to ongoing litigation, and stating that they are not permitted to use the Blocked Illinois Photos for any other purpose.*

*See* Dkt. 43-1 ¶ 37 (emphasis added). It is axiomatic that Clearview employees cannot use the Blocked Illinois Photos for purposes of this litigation if those photos cannot be identified. Given that Defendants can identify the Blocked Illinois Photos, they have no valid basis for claiming they cannot provide Plaintiffs with the number of all such photos.

II.     **The Order Was Clearly Erroneous Because It Did Not Grant the Needed Protective Order.**

Neither the Order nor Defendants' response addresses the fact that the only photos of Plaintiffs' images that can have any possible relevance to this litigation are those from which Defendants unlawfully obtained Plaintiffs' biometric data – photos Defendants already possess. While the Order compels Defendants to produce those photos by February 18, 2022, Defendants recently represented that they do not intend to timely comply.[2] *See* Dkt. 277 at 5, n.3.

Plaintiffs have repeatedly stated that once Defendants reveal the relevant photos, the parties likely can reach agreement on what underlying information regarding the photos should be produced. *See* Dkt. 215 at 2; Dkt. 224 at 4; Dkt. 263 at 15-16. By refusing to embrace this commonsense and legally sound resolution, Defendants reveal their true purpose in propounding the discovery at issue. The requested discovery is not to obtain to relevant information about the limited photos at issue, but rather to harass, embarrass and intimidate Plaintiffs (and potential future privacy litigants) by seeking disclosure of their overall online activities and any sensitive personal information revealed therefrom.

As set forth in their Objections, the Order overlooked the invasive nature of Defendants' sweeping requests. *See* Dkt. 263 at 6-8, 13-16. While the Order stated that merely requiring Plaintiffs to "*identify* social media accounts and websites they have patronized is proportional to

---

[2] According to Defendants, it is somehow Plaintiffs' fault that Defendants cannot comply with an order to produce information within their own files. *See, generally,* Dkt. 277 (arguing that Defendants' cannot produce documents regarding Plaintiffs without collecting Plaintiffs' biometric data anew).

8

the needs of the case" (Dkt. 237 at 20) (emphasis in original), it did not address the fact that it is the identification of the sites and accounts that could result in the harm – *e.g.*, identification of the sites could reveal a person's sexual orientation or curiosity. Notably, Defendants do not dispute this. Instead, Defendants ignore the record and claim Plaintiffs waived any argument that the requested information could reveal such sensitive information. *See* Dkt. 273 at 8. But the record is clear. Throughout, Plaintiffs have maintained the requested information could reveal details about things such as a person's use of a "dating website" or "special interest forum" (Dkt. 215 at 8) or "all manner of [a person's] social, romantic, sexual, political, and expressive activities." Dkt. 224 at 3.

Underlying the Order's clearly erroneous oversight was a misconception of the nature of Plaintiffs' lawsuit. *See* Dkt. 237 at 20. According to the Order, "the heart of Plaintiffs' lawsuit is their assertion that Defendants unlawfully harvested Plaintiffs' images from the internet." *Id.* However, that is not the heart of Plaintiffs' lawsuit. As Your Honor recently recognized, "plaintiffs assert that the Clearview Defendants' business model *is not based on the collection of public photographs from the internet*, some source code, and republishing information via a search engine, *but the additional conduct of harvesting nonpublic, personal biometric data.*" Dkt. 279 at 4 (emphasis added). The "additional conduct of harvesting nonpublic, personal biometric data" could only have happened with respect to the specific photos that Defendants scraped and possess. No valid basis exists for Defendants to seek information about websites and social media sites from which Defendants did not scrape Plaintiffs' photos.

Defendants' alternative arguments (*see* Dkt. 273 at 14-16) fare no better. Contrary to Defendants' contention (*id.* at 14-15), Plaintiffs established good cause for the requested protective order. The Supreme Court has recognized that discovery abuses "may seriously implicate privacy interests of litigants," necessitating a protective order. *See Seattle Times Co. v.*

9

*Rhinehart*, 467 U.S. 20, 34-35 and n.21 (1984). Here, Plaintiffs have satisfied their burden of establishing good cause by providing information from which the Court could reasonably conclude the nature and magnitude of Plaintiffs' interest. *See Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). As discussed above, the protective order is necessary to protect Plaintiffs' from Defendants' sweeping discovery requests that improperly seek disclosure of wide-ranging information no matter how sensitive or private and without regard to its relevance to the case. The requests will not only harm Plaintiffs but will have a chilling effect on future litigants, as discussed further below.

As for Defendants' "vicarious consent" defense (*see* Dkt. 273 at 16), even if the defense was legally sound, Defendants could only have received such vicarious consent via the terms of service of those social media or websites from which they scraped Plaintiffs' photos. Thus, Defendants' own defense supports Plaintiffs' view that, at most, Defendants are entitled to disclosure of the websites and/or social media sites from which Defendants obtained Plaintiffs' photos and collected the biometric data therein. Defendants' refusal to disclose the photos of Plaintiffs they possess or any other information about Plaintiffs is, thus, inexcusable.

Defendants contend they are entitled to information about Plaintiffs far beyond that related to the photos Defendants already possess because "it is Plaintiffs who have made their social media use as a core factual issue." *Id.* at 15, n.1. The contention is absurd. Plaintiffs are victims of Defendants' massive scheme to scrape billions of photos from the internet and harvest therefrom Plaintiffs' and others' sensitive biometric data. By lawfully seeking to protect their privacy rights in their biometric data, Plaintiffs did not make their overall social media use a core factual issue in this case. Indeed, Defendants' argument underscores one of the critical points of Plaintiffs' protective order motion – namely, that Defendants' requests, if allowed, will have a chilling effect

10

on future plaintiffs' willingness to protect their privacy rights. If the only way to hold a bad actor accountable for its violation of a victim's privacy rights is to further allow the bad actor to needlessly invade the victim's privacy, victims will be unwilling to litigate. It cannot be the right result to implement a system where bad actors know they can violate people's privacy with impunity. By fostering such a system, the Order was clearly erroneous.

Finally, Defendants' reliance on authority regarding the use of a confidentiality order to address privacy concerns (Dkt. 273 at 15) is misplaced. Plaintiffs seek protection from the disclosure of information that has no relevance to this case and, therefore, should not be produced. Requiring Plaintiffs to disclose the information pursuant to a confidentiality order does not ameliorate or address the issue.

## CONCLUSION

For the foregoing reasons, the Court should sustain Plaintiffs' objections to the Magistrate Judge's Order with respect to: (a) Plaintiffs' Interrogatories 8- 9 and Requests for Production 7 and 11; and (b) Defendants' Interrogatories 1 and 3 and Requests for Production 3-6 and 9-10. Further, the Court should grant Plaintiffs the relief requested in their motions to compel and for protective order.

Dated: February 15, 2022

Respectfully submitted,

By: /s/ Scott R. Drury
SCOTT R. DRURY
*Interim Lead Class Counsel for Plaintiffs*

Mike Kanovitz
Scott R. Drury
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

11

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOKK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
swebster@websterbook.com

*Other Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Scott R. Drury, an attorney, hereby certify that, on February 15, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                                                        /s/ Scott R. Drury
                                                        Counsel for Plaintiffs