IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **In re: Clearview AI, Inc., Consumer Privacy Litigation** ) ) ) ) ) ) ) ) ) ) | No. 21 C 135<br><br>**Magistrate Judge Maria Valdez** |

## ORDER

This matter is before the Court on the Clearview Defendants' Renewed Motion to Quash Nonparty Subpoenas [Doc. No. 235]. Also pending before the Court is the portion of Plaintiffs' Motion to Compel the Clearview Defendants to Respond to Plaintiffs' Written Discovery [Doc. No. 213] dealing with Plaintiffs' requests for financial information. For the reasons that follow, the Clearview Defendants' motion to quash is granted and the outstanding portion of Plaintiffs' motion to compel is denied.

## BACKGROUND

The instant motions involve discovery disputes between Plaintiffs and Defendants Clearview AI, Inc. ("Clearview"), Rocky Mountain Data Analytics LLC ("Rocky Mountain") (Clearview and Rocky Mountain, collectively, the "Entity Defendants"), Hoan Ton-That (Clearview's CEO), Richard Schwartz (Clearview's President), and Thomas Mulcaire (Clearview's General Counsel) (Ton-That, Schwartz, and Mulcaire, collectively, the "Individual Defendants") (the Entity

Defendants and the Individual Defendants, collectively, the "Clearview Defendants").

Plaintiffs are individuals from Illinois, New York, California, and Virginia who have brought statutory, constitutional, and common law privacy claims on behalf of members of a nationwide class and Illinois, California, New York, and Virginia subclasses. Plaintiffs allege that, without providing notice or obtaining consent, Defendants: (a) scraped from the internet three billion photos, including photos of Plaintiffs and class members; (b) scanned the face geometry of each depicted individual to obtain their unique biometric identifiers and information; and (c) created a database to allow third parties to pay a fee to identify unknown individuals by uploading a probe photo for comparison of the biometric data therein to the biometric data in the database. Based on this conduct, Plaintiffs allege that Defendants unlawfully obtained, distributed, sold, and otherwise profited from Plaintiffs' biometric data.

The Clearview Defendants' motion to quash is directed to nonparty subpoenas issued by Plaintiffs to three financial institutions: JPMorgan Chase & Co., JPMorgan Chase Bank N.A., and The Bank of America Corporation (collectively, the "Banks"). Each subpoena requests that, with respect to any accounts held by each of the Clearview Defendants, the respective Banks produce:

(a) All account opening documents;
(b) All correspondence;
(c) All signature cards;
(d) All corporate resolutions;

(e) All LLC, Partnership, Articles of Incorporation, or other business formation documents;

(f) All deposit and withdrawal slips;

(g) All tax returns;

(h) All documents concerning loans, leases, and/or lines of credit, including but not limited to loan and lease applications, loan and lease documents, and line of credit documents;

(i) All credit card application [sic] and statements;

(j) All cancelled checks; and

(k) All account transfer requests.

[*See* Doc. No. 235-1.]

Pertinent to Plaintiffs' motion to compel, Plaintiffs have also propounded discovery requests to the Clearview Defendants seeking their financial information. Specifically, Plaintiffs' Request for Production No. 36 asks the Clearview Defendants to produce their federal and state income tax returns; Interrogatory No. 15 asks the Clearview Defendants to state their revenues and expenses related to their technology; and Interrogatory No. 19 asks the Clearview Defendants to identify financial institutions they have used. The instant motions raise the question of whether Plaintiffs are entitled to the financial information they seek via their nonparty subpoenas and discovery requests.

## **DISCUSSION**

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

3

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 34; Fed. R. Civ. P. 37(a)(3)(B). "The party requesting discovery bears the initial burden of establishing its relevancy." *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *4 (N.D. Ill. Nov. 15, 2019) (citations omitted); *see also Art Akiane LLC v. Art & SoulWorks, LLC*, No. 19 C 2952, 2020 WL 6509228, at *3 (N.D. Ill. Nov. 5, 2020) (collecting cases). If the requesting party meets its burden, "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 U.S. Dist. LEXIS 132847, at *7 (N.D. Ill. July 16, 2021) (citation omitted). Rule 45 "authorizes the court to quash, modify, or condition a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosure of confidential information." Fed. R. Civ. P. 45, Advisory Committee Notes (1991). Further, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A).

### A. <u>Standing and Timeliness</u>

As an initial matter, the Court rejects Plaintiffs' contention that the Clearview Defendants lack standing to challenge the nonparty subpoenas to the Banks. Given that the subpoenas seek the Clearview Defendants' financial records, the subpoenas implicate their privacy interests, thus granting them standing to

4

move to quash the subpoenas. *See Morelli v. Alters*, No. 1:19-cv-10707, 2020 U.S. Dist. LEXIS 207362, at *13-14 (S.D.N.Y. Nov. 5, 2020) ("Because the subpoenas seek financial records that implicate Morelli's personal privacy interest, he has standing to challenge the non-party subpoenas."); *Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs.*, No. 19-12756, 2020 U.S. Dist. LEXIS 189170, at *14 (D.N.J. Oct. 13, 2020) ("Defendant claims that the documents sought from the Lenders implicate Defendant's private financial affairs, and thus confers standing upon Defendant to move to quash the subpoenas based on relevancy and confidentiality. The Court agrees and finds that Defendant has standing to challenge the subpoenas to the Lenders since it encompasses their private financial affairs.") (citations omitted); *Spuhler v. STTE Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 233399, at *3 (E.D. Wis. Apr. 14, 2017) ("Defendant has a personal right with respect to the disclosure of the financial statements, contracts, and tax returns that are being sought from the non-parties. Thus, Defendant has standing to challenge the non-party subpoenas."); *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016) ("The Plaintiff certainly has a personal right or privilege with respect to her financial records and thus has standing to challenge the subpoenas here."). The fact that there is a confidentiality order in place does not obviate the Clearview Defendants' privacy interests in that regard. *See DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 U.S. Dist. LEXIS 225808, at *22 n. 4 (N.D. Ill. Dec. 2, 2020 (Rule 45 "empowers – and under some circumstances

5

requires – a court to quash a subpoena that infringes on protected or confidential matters, regardless of whether there is a protective order in place").

The Court further finds that the Clearview Defendants' instant motion to quash is timely, as they originally filed a motion to quash within the subpoena compliance date (which motion was initially stricken for failure to comply with Local Rule 37.2). The parties have been involved in ongoing conferences and disputes regarding the subpoenas since that time. In light of the Clearview Defendants' initial, timely-filed motion and the parties' ongoing disagreements, deeming the Clearview Defendants' instant motion to quash as untimely would defy common sense.

### B. Plaintiffs' Alter Ego Theory

Plaintiffs assert that the financial information they seek is relevant to their theories that the Clearview Defendants are liable for the acts of one another. According to Plaintiffs, "[t]he requested financial information is relevant to Plaintiffs' personal participation and alter ego theories of liability." [Doc. No. 213 at 12.] The Court recently addressed Plaintiffs' alter ego theory in ruling on the Clearview Defendants' motion to dismiss. On that topic, the Court held as follows:

> Although there are some allegations in plaintiffs' first amended complaint that corporate formalities were not always observed at Clearview, such as Clearview directing its customers to send payments to Schwartz's personal residence and that Schwartz paid for the servers and other costs necessary to carry out Clearview's scraping and biometric scanning operations, plaintiffs have not adequately alleged any other veil piercing factors. For instance, viewing the allegations in their favor, plaintiffs have not provided sufficient factual detail that Clearview simply functioned as Ton-That's and Schwartz's façade. Furthermore, plaintiffs' complaint lacks detailed allegations supporting

6

> their argument that Ton-That and Schwartz undercapitalized Clearview. In the end, plaintiffs' allegations supporting their alter ego theory of individual liability as to Ton-That and Schwartz do not withstand defendants' motion to dismiss, especially because piercing the corporate veil is disfavored under both Delaware and Illinois law. . . . The Court grants defendants' motion in relation to these alter ego allegations.

[Doc. No. 279 at 11 (citations omitted).] Given the Court's ruling in that respect, Plaintiffs' alter ego theory does not provide relevance grounds for the financial information Plaintiffs seek. As such, Plaintiffs' arguments for discovery vis-à-vis their alter ego theory ultimately fail.[1]

### C. Plaintiff's Personal Participation Theory

Plaintiffs also claim an entitlement to the Clearview Defendants' financial information based on their personal participation theory of liability – *i.e.*, that the Individual Defendants can be liable for Clearview's acts because they personally participated in the alleged tortious activity. In its motion to dismiss ruling, the Court also addressed that theory, reasoning as follows:

> Plaintiffs allege that Ton-That, the co-founder and Chief Executive Officer of Clearview, and Schwartz, the co-founder and Clearview's President, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in the complaint. Further, plaintiffs state that Ton-That and Schwartz authorized and directed the scheme to collect and distribute biometrics, executed agreements on Clearview's behalf, and treated the biometric database as their own. Plaintiff's allegations – viewed in their favor – plausibly suggest that Ton-That

---

[1] In its decision on the motion to dismiss, with respect to Plaintiffs' theory that Clearview is liable for the actions of Rocky Mountain, the Court explained that parent "liability may be permissible under either of two distinct theories: (1) the alter ego theory, or (2) the agency theory." [Doc. No. 279 at 12 (citation omitted).] The Court ruled in Plaintiffs' favor as to the agency theory, but not the alter ego theory, finding that "Plaintiffs have plausibly alleged that Rocky Mountain acted as an agent of Clearview." [*Id.*] Given the Court's focus on the agency theory, the Court's ruling in that regard does not justify discovery pursuant to an alter ego theory.

> and Schwartz acted outside of their corporate capacities because these corporate officers personally participated in the privacy tort by directing, ordering, ratifying, approving, or consenting to the tortious act. . . . Because plaintiffs have adequately alleged that Ton-That and Schwartz acted outside of their corporate capacities when they personally violated BIPA and plaintiffs' other privacy claims, the Court denies defendants' motion to dismiss individual defendants Ton-That and Schwartz.

[Doc. No. 279 at 9-10 (citations omitted).]

So, the Court has determined that Plaintiffs' personal participation theory is potentially viable. Nonetheless, the Court finds that that theory does not support Plaintiffs' broad requests for the Clearview Defendants' financial information, Per the above-quoted passage, the Court has focused on whether the Individual Defendants participated in the privacy torts, which question is untethered from the Clearview Defendants' financial information. Plaintiffs creatively maintain that "the Individual Defendants' financial information is relevant to . . . whether they personally participated in and/or authorized the Corporate Defendants' unlawful conduct by, for instance, *funding* that activity." [Doc. No. 251 at 12 (emphasis added); *see also* Doc. No. 225 at 14 ("information related to the individual Defendants' *financing of* the corporate Defendants' torts is relevant to their personal participation") (emphasis added).] However, Plaintiffs have not cited any supporting cases dealing with discovery in relation to a personal participation theory, nor cases dealing with "funding" as a basis for personal participation liability. Moreover, Plaintiffs have not cited any decisions standing for the proposition that a personal participation theory can underpin a sweeping request for a defendant's financial information. Furthermore, as stated above, the Court has

8

found that even if the Individual Defendants "paid for the servers and other costs necessary to carry out Clearview's scraping and biometric scanning operations," that would not provide a sufficient basis to hold the Individual Defendants liable for the acts of Clearview. Ultimately, the Court concludes that Plaintiffs' personal participation theory – though potentially viable – does not provide a proper basis for the broad financial discovery Plaintiffs seek.

### C. Punitive Damages

Plaintiffs broadly assert that the Clearview Defendants' financial information is "relevant and discoverable in connection with Plaintiffs' punitive damages claims." [Doc. No. 213 at 13; *see also* Doc. No. 251 at 13 ("The requested bank records are also relevant to Plaintiffs' punitive damages claims, as Plaintiffs are entitled to learn Defendants' assets and liabilities.").] However, "[a]lthough information of a defendant's wealth is relevant" in the context of punitive damages claims, "the plaintiff's interest in proving the amount of wealth must be balanced against the defendant's right to privacy." *Stafford v. Purofied Down Prods. Corp.*, No. 88 C 10205, 1992 U.S. Dist. LEXIS 9441, at *5-6 (N.D. Ill. June 26, 1992) (citation omitted). Further "[b]ecause claims for punitive damages are easily made yet infrequently granted . . . it may be preferable to defer discovery of financial information until some likelihood of punitive damages has been established." *Id.* (citations omitted). Along those lines, courts have held that "financial information for purposes of punitive damages generally needs to be produced only if the punitive damages claim[] survives summary judgment and will be presented at trial."

9

*Swanson v. Murray Bros., LLC*, No. 19-cv-3220, 2021 U.S. Dist. LEXIS 5848, at *10 (C.D. Ill. Mar. 26, 2021).

Under this legal framework, the Court concludes here that discovery into the Clearview Defendants' finances should be deferred until Plaintiffs have more concretely established that the Clearview Defendants' may in fact be liable for punitive damages. *See Lanigan v. Babusch*, No. 11 C 3266, 2011 U.S. Dist. LEXIS 124416, at *9 (N.D. Ill. Oct. 27, 2011) ("[T]he Court finds it more appropriate to postpone such discovery until it appears that Defendants will be liable for punitive damages."). Accordingly, Plaintiffs' entitlement to discovery of financial information in relation to their punitive damages claims can be revisited at a later date, if warranted.

## CONCLUSION

For the foregoing reasons, the Clearview Defendants' Renewed Motion to Quash Nonparty Subpoenas [Doc. No. 235] is granted and Plaintiffs' nonparty subpoenas to the Banks are hereby quashed. Further, the pending portion of Plaintiffs' Motion to Compel the Clearview Defendants to Respond to Plaintiffs' Written Discovery [Doc. No. 213] is denied.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez* (signature)

**DATE:   February 18, 2022**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**