IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' FED. R. CIV. P. 12(f) MOTION TO STRIKE CERTAIN ALLEGATIONS IN THE COUNTERCLAIM OF DEFENDANT CLEARVIEW AI, INC.**

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiffs, by and through Plaintiffs' interim lead class counsel, respectfully move the Court for an order striking: (a) portions of Paragraphs 17 and 20 of the Counterclaim for Declaratory Judgment (the "Counterclaim") filed by Defendant Clearview AI, Inc. ("Clearview"); and (b) in their entirety Paragraphs 18-19 and 21 of the Counterclaim. *See* Dkt. 310 at 91-94.[1] In support of this motion, Plaintiffs state as follows:

**INTRODUCTION**

On March 15, 2022, Defendants Clearview; Hoan Ton-That; Richard Schwartz; and Rocky Mountain Data Analytics LLC (collectively, the "Clearview Defendants") filed the Clearview Defendants' Answer and Affirmative Defenses to Plaintiffs Complaint and Counterclaim for a Declaratory Judgment.[2] Therein, Clearview seeks a declaration that its *current* operations fall within a provision of Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1, *et seq.*, that provides that BIPA does not apply to the conduct of certain actors. Before Plaintiffs answer the Counterclaim, the Court should first strike numerous immaterial and impertinent allegations that have no relation to the sought-after relief and serve no purpose other

---

[1] Citations to docketed entries are to the CM/ECF-stamped page numbers.
[2] Defendant Thomas Mulcaire has not filed an answer.

than to prejudice Plaintiffs by confusing the issues and delaying the matter. Accordingly, Plaintiffs respectfully request that the Court strike pursuant to Fed. R. Civ. P. 12(f): (a) portions of Paragraphs 17 and 20 of the Counterclaim; and (b) in their entirety Paragraphs 18-19 and 21 of the Counterclaim.

## BACKGROUND FACTS

According to Clearview, BIPA § 25(e) exempts Clearview's current operations from BIPA. *See* Dkt. 310 at 89 (Counterclaim ¶¶ 1-4). BIPA § 25(e) provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency of local unit of government." 740 Ill. Comp. Stat. 14/25(e). In a transparent effort to be able to present evidence in this matter that has no bearing on any claim, counterclaim or defense, while also inflaming the passions of the trier of fact, Clearview includes in the Counterclaim various allegations regarding purportedly positive uses of its privacy-infringing biometric technology. The allegations at issue are set forth below with the information sought to be struck italicized:

> 17. Clearview's customers are government agencies, none of which are located in Illinois. *Clearview has been instrumental in helping these government agencies solve heinous crimes, including child rape and child sexual exploitation. See, e.g., U.S. Gov't Accountability Office, GAO-21-526, Facial Recognition Technology: Current and Planned Uses by Federal Agencies (Aug. 2021), at 61 ("DOJ uses Clearview AI to identify unknown individuals of interest in state, federal, and international cases such as child exploitation. DOJ may submit photos (e.g., surveillance photos) or receive requests to match photos against the Clearview AI database."); see also Dkt. No. 43-6 ¶ 19 (affidavit from Kevin Metcalf, the Chief Executive Officer of the National Child Protection Task Force, testifying that "[w]ithout Clearview's facial recognition technology, hundreds of children would continue to be raped, and the recordings shared on the Internet for the world to see"); Dkt. No. 43-7 ¶ 7 (affidavit from James Webb, a Sergeant at the East Metro Area Crime Center in Oxford, Alabama, testifying that: "Put simply, the harm from sexual crimes committed against children can never be taken away. Clearview prevents these crimes from happening."); Dkt. No. 43-8 ¶¶ 7-12 (affidavit from Michael Williams, a retired Group Supervisor/Supervisory Special Agent at Homeland Security Investigations, detailing Clearview's role in rescuing a*

*prepubescent child from "brutal sexual abuse" at the hand of her father, when all other investigative tools failed).*

18. *The Federal Bureau of Investigation has stated that by using Clearview's technology, its Victim Identification Unit, which locates and rescues children from sexual abuse, "went from locating approximately 50 children per year, to 150." Bryan Carney (@bpcarney), Twitter (Apr. 16, 2020, 3:48 AM), https://mobile.twitter.com/bpcarney/status/1250692551176261637.*

19. *After the January 2021 riot at the U.S. Capitol, law-enforcement agencies across the country used Clearview's app to identify and investigate several of the suspected perpetrators. See The Facial-Recognition App Clearview Sees a Spike in Use After Capitol Attack, The New York Times (Jan. 9, 2021), https://www.nytimes.com/2021/01/09/technology/facial-recognition-clearview-capitol.html; Local Police Force Uses Facial Recognition to Identify Capitol Riot Suspects, Wall Street Journal (Jan. 8, 2021), https://www.wsj.com/articles/local-police-force-uses-facial-recognition-to-identify-capitol-riot-suspects-11610164393.*

20. *Among the other agencies that reported using Clearview AI are the Department of Health and Human Services, the Department of Homeland Security, and the Department of Defense. See U.S. Gov't Accountability Office, GAO-21-526, Facial Recognition Technology: Current and Planned Uses by Federal Agencies (Aug. 2021), at 20 ("HHS's Office of the Inspector General reported it began a pilot of Clearview AI in September 2020 to assist with identifying subjects of a criminal investigation. Similarly, DHS reported the U.S. Secret Service and U.S. Immigration and Customs Enforcement piloted Clearview AI in fiscal year 2020, to identify individuals in federal criminal investigations, and to identify perpetrators and victims in domestic and international child exploitation cases, respectively. DHS also reported that, since June 2019, U.S. Customs and Border Protection agents had direct, albeit temporary, access to a Clearview AI through their participation with the New York State Intelligence Center. These agents used Clearview AI to identify criminals, as well as subjects who have been arrested previously, were deported, and attempted to re-enter the United States at the border."); id. at 28 ("DOD's Air Force Office of Special Investigations reported it began an operational pilot using Clearview AI in June 2020, which supports the agency's counterterrorism, counterintelligence, and criminal investigations.").*

21. *Clearview's facial recognition search engine is also currently being used by the Ukrainian government to defend against Russia's invasion of Ukraine and save civilian lives. See Ukraine Has Started Using Clearview AI's Facial Recognition During War, Reuters (Mar. 13, 2022), https://www.reuters.com/technology/exclusive-ukraine-has-started-using-clearview-aisfacial-recognition-during-war-2022-03-13/.*

Dkt. 310 at 91-93 (Counterclaim ¶¶ 17-21). Notably, most of the allegations are based on occurrences that took place in 2020 or 2021 (*see id.* at 91-92 (Counterclaim ¶¶ 17-20)) and, thus, have nothing to do with Clearview's *current* operations. The only allegation involving conduct in relates to Clearview's purported interaction with a foreign government. *See id.* at 93 (Counterclaim ¶ 21).

## ARGUMENT

**I.  Legal Standards.**

Federal Rule of Civil Procedure provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Anderson v. Bd. of Educ. of City of Chicago*, 169 F.Supp.2d 864, 867 (N.D. Ill. 2001). Matter that has no possible bearing on the subject matter of the litigation should be stricken, provided that the matter prejudices the moving party. *Id.* at 867-68. "Prejudice results when the matter complained of has the effect of confusing the issues . . . ." *Id.* at 868. Allegations that are "not probative of any issue in the case" are properly stricken under Rule 12(f). *See Stop Illinois Health Care Fraud, LLC v. Sayeed*, 12 CV 9306, 2016 WL 4479542, at *3 (N.D. Ill. Aug. 25, 2016)(Coleman, J.).

**II.  The Allegations at Issue in Paragraphs 17-21 are Immaterial, Impertinent and Inflammatory and Will Prejudice Plaintiffs.**

BIPA § 25(e) provides that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 Ill. Comp. Stat. 14/25(e). According to the Counterclaim, Clearview is entitled to a declaratory judgment because its all of its *current* operations fall within BIPA § 25(e). Dkt. 310 at 89 (Counterclaim ¶ 4).

The Court should strike portions of Paragraphs 17 and 20 and the entirety of Paragraphs 18-19 and 21 of the Counterclaim because the allegations at issue are immaterial and impertinent

4

to the Counterclaim and will result in prejudice to Plaintiffs. In *Stop Illinois Health Care Fraud, LLC*, a *qui tam* action alleging health care fraud against a number of defendants, one defendant moved to strike, as immaterial and inflammatory, allegations related to "certain luxury vehicles, airplanes, and real property owned by [defendant]," as well as allegations regarding defendant's "lengthy and notorious history of healthcare related fraud." 2016 WL 4479542, at *3. Finding that "there was no question the allegations are irrelevant," the court struck all of the offending paragraphs.

As in *Stop Illinois Health Care Fraud, LLC*, the allegations at issue in paragraphs 17-21 of the Counterclaim are immaterial, impertinent and inflammatory. The allegations have no bearing on Clearview's current operations or whether those operations demonstrate that Clearview falls within BIPA § 25(e). On the other hand, the allegations are designed to inflame the passions of the trier of the fact, confuse the issues and cause delay.

While this is a case about the Clearview Defendants' egregious invasion of Plaintiffs' and class members' privacy, the allegations are untethered to that issue. Rather, the allegations reference "child rape," child sexual exploitation, "brutal sexual abuse," an attack on the U.S. Capitol, and a brutal war in Ukraine and try to paint the impression that Clearview's surveillance database can help prevent such atrocities, "save civilian lives" or otherwise serve a useful purpose. *See* Dkt. 310 at 91-93 (Counterclaim ¶¶ 17-19, 21). As discussed above, most of the allegations date back to 2020 and 2021, and the only recent allegation relates to a foreign government. Thus, the allegations do not even support Clearview's Counterclaim.

The true purpose of the allegations is clear – Clearview wants to "confuse the issues in the case" by presenting material that is meant to evoke an emotional response rather than support its request for a declaratory judgment. *See Stop Illinois Health Care Fraud, LLC*, 2016 WL 4479542,

at *3. In essence, through its Counterclaim, Clearview seeks to present an improper nullification defense.

If the allegations are not stricken, Clearview undoubtedly will seek to introduce evidence supporting the allegations. This would result in a needless mini-trial that would not serve to advance the issues in the case. Moreover, it would result in a needless drain of government resources, as government witnesses would need to testify in discovery and at trial regarding matters that have no bearing on the issues in the case.

## CONCLUSION

The Court should strike: (a) portions of Paragraphs 17 and 20 of the Counterclaim; and (b) in their entirety Paragraphs 18-19 and 21 of the Counterclaim. The allegations in those paragraphs are impertinent and immaterial to any matter and will result in prejudice to Plaintiffs by confusing the issues and causing delay.

WHEREFORE, Plaintiffs respectfully request this Court enter an order striking portions of Paragraphs 17 and 20 of the Counterclaim and striking in their entirety Paragraphs 18-19 and 21 of the Counterclaim.

Dated: April 14, 2022

Respectfully submitted,

By: /s/ Scott R. Drury
SCOTT R. DRURY
*Interim Lead Class Counsel for Plaintiffs*

Mike Kanovitz
Scott R. Drury
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOKK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
stw@websterbook.com

*Other Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I, Scott R. Drury, an attorney, hereby certify that, on April 14, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

      /s/ Scott R. Drury
      Counsel for Plaintiffs