IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

## JOINT STATUS REPORT ON DISCOVERY

Pursuant to the Court's May 10, 2022 Order (Dkt. 341), Plaintiffs; Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC ("Rocky Mountain"), and Thomas Mulcaire[1] (collectively, the "Clearview Defendants"); and Defendant Macy's, Inc.[2] ("Macy's"), by and through their respective counsel, file this Joint Status Report addressing the effects on the present lawsuit of the settlement agreement (the "Settlement Agreement") submitted to the Circuit Court of Cook County in *ACLU v. Clearview AI, Inc.* (the "*ACLU Matter*"), No. 2020 CH 04353.

---

[1] The Clearview Defendants object to the inclusion of Thomas Mulcaire as a defendant because they believe he was dismissed from this case on February 14, 2022. (Dkt. No. 279 at 9 n.1.) The parties have sought clarification from the Court about Mr. Mulcaire's status.

[2] Macy's contends that the proper party is Macy's Retail Holdings, LLC and reserves all rights on the issue.

I. **Plaintiffs' Position.**[3]

Plaintiffs do not believe the Settlement Agreement materially affects the present lawsuit because, as discussed below: (a) it only applies to the specific parties to the Settlement Agreement; (b) it does not provide for monetary relief; (c) it only addresses claims brought pursuant to § 15(b) of Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/15(b); and (d) the actual nature and scope of the injunctive relief is unclear.

To the extent the Settlement Agreement has any impact on the present case, the impact would be limited to whether the injunctive relief sought in the present case may overlap with the injunctive relief provided in the Settlement Agreement. Unresolved factual issues preclude such a determination at this time.

A. **Parties to the Settlement Agreement.**

The Settlement Agreement is entered into between six plaintiff organizations – namely, American Civil Liberties Union, American Civil Liberties Union of Illinois, Chicago Alliance Against Sexual Exploitation, Sex Workers Outreach Project Chicago, Illinois State Public Interest Group, Inc., and Mujeres Latinas en Accion – and a single defendant, Clearview AI, Inc. ("Clearview"). The Settlement Agreement makes clear that it "shall not confer any rights or remedies upon any person or entity other than the Parties to the Settlement Agreement . . . ." Settlement Agreement § 11. As such, the Settlement Agreement does not bind Plaintiffs or the

---

[3] At Plaintiffs' request, the Clearview Defendants and Plaintiffs met and conferred regarding the Settlement Agreement on May 17, 2022. At that time, Plaintiffs asked what impact the Clearview Defendants believed the Settlement Agreement had on this case. The Clearview Defendants merely stated they thought the Settlement Agreement would have some overlap with the injunctive relief sought in this case and asked Plaintiffs' position. Plaintiffs stated that, based on an initial review, it did not appear that the Settlement Agreement had any significant impact on this case but would further consider the issue. Plaintiffs provided the Clearview Defendants and Macy's with an initial draft of the Joint Status Report on May 24, 2022 that set forth Plaintiffs' position and requested the Clearview Defendants' and Macy's respective positions by May 26, 2022, due to the upcoming holiday weekend. The Clearview Defendants and Macy's did not provide their respective positions until the morning of May 31, 2022.

millions of putative class members in the present action. Moreover, the Settlement Agreement is not binding on any Defendant in the present matter other than Clearview. Specifically, the Settlement Agreement is not binding on: (a) Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC or Thomas Mulcaire; (b) Macy's, Inc; or (c) any of the putative defendant class members.

Given the individual nature of the Settlement Agreement, it does not limit, release or otherwise preclude Plaintiffs' claims here. Moreover, the Settlement Agreement does not enjoin the conduct of anyone but Defendant Clearview.

**B. The Relief.**

The Settlement Agreement is mostly limited to injunctive relief solely applicable to Defendant Clearview for its alleged violation of BIPA § 15(b). The Settlement Agreement provides no monetary relief to the millions of putative class members whose privacy rights were violated by each of the Defendants in the present action. Further, the Settlement Agreement does not address Plaintiffs' claims that the Clearview Defendants: (a) violated BIPA §§ 15(c), (d) and (e); (b) violated California, New York and Virginia privacy laws; or (c) unjustly enriched themselves via their unlawful conduct.

While the Settlement Agreement allows Illinois residents to opt out of Defendant Clearview's biometric database, it does not provide the same relief to non-Illinois residents. Moreover, the Settlement Agreement does not require Defendant Clearview to proactively delete the biometric identifiers and information of Illinois residents that Clearview obtained without written consent. Rather, the Settlement Agreement merely requires Defendant Clearview to delete what are described as "Old Facial Vectors" – defined as "facial vectors in the Clearview App that existed before Clearview ceased providing or selling access to the Clearview App to private

3

individuals and entities (Settlement Agreement § 6). However, the Settlement Agreement does not resolve the disputed issues of whether Clearview: (a) in fact, has ceased providing or selling access to the Clearview App to private individuals and entities; or (b) falls within the protection provided by BIPA § 25(e) related to work performed by a contractor, subcontractor or agent of a State agency or local unit of government when working for that State agency or local unit of government. *See* 740 Ill. Comp. Stat. 14/25(e). As discussed below, the parties continue to litigate these disputes in the present case.

With respect to the Settlement Agreement's injunctive relief, it: (a) limits who can use Defendant Clearview's software application (the "App") (Settlement Agreement § 1); (b) prohibits Illinois state and local government agencies and contractors from using the App for a period of five years (Settlement Agreement § 2); and (c) as discussed above, requires the deletion of "Old Facial Vectors." Settlement Agreement § 6. The extent to which the injunctive relief overlaps with injunctive relief sought here is unknown. This is because the injunctive relief presupposes the applicability of BIPA § 25(e) to Defendant Clearview's current operations. The Settlement Agreement is silent as to what confirmatory discovery, if any, was conducted. Here, the parties do not agree on the meaning and scope of § 25(e) or whether Defendant Clearview falls within the protections provided by § 25(e).

C. **Discovery Is Ongoing Regarding the Applicability of BIPA § 25(e).**

In its counterclaim, Defendant Clearview seeks a declaration that its current operations are allowable pursuant to BIPA § 25(e). Dkt. 310 at 89-95. Importantly, the counterclaim relates to the injunctive relief in the *ACLU Matter* because, like the injunctive relief, the counterclaim also presupposes that Defendant Clearview's current operations are permissible under BIPA § 25(e). Contrary to the Clearview Defendants' contention (*see* § II, *supra*), factual disputes underlie the

4

applicability of BIPA § 25(e) to this case. These factual disputes are separate from any legal inquiry into the meaning of BIPA § 25(e).

The Clearview Defendants' contention that BIPA § 25(e) applies in this case is based on a factual foundation that is in dispute – namely, whether the Clearview Defendants currently operate solely as government contractors. Moreover, whether the Clearview Defendants no longer use "Old Facial Vectors" is not a proven fact, and even if true, it remains to be seen when the Clearview Defendants ceased using the purported "Old Facial Vectors" in relation to providing services to any current government entity. Additionally, the Clearview Defendants have not yet produced their purported government contracts. Thus, Plaintiffs do not know if the purported government contracts comply with government contracting provisions and followed necessary government procurement procedures – *i.e.*, it is unknown if the Clearview Defendants are government contractors or agents, as they claim.

Plaintiffs have issued fact discovery regarding the above-described issues. Moreover, Plaintiffs have met and conferred with the Clearview Defendants' counsel regarding the Clearview Defendants' deficient responses. At present, the discovery disputes have not been resolved.[4]

The Clearview Defendants' contention that the order in the *ACLU Matter* regarding the Settlement Agreement is somehow dispositive of the legal and factual issues in this case (*see id.*) is meritless. As the title of the order indicates, it is a "Consent Order." The order expressly states that the "Court makes no final determination on the merits of either Parties' arguments."

---

[4] The Clearview Defendants now indicate that the discovery issues can be resolved and the discovery completed within four weeks (*see* § II, *supra*). This position is inconsistent with the Clearview Defendants' positions in discovery responses, during meet and confers and in discovery correspondence. Based on the parties' discussions and correspondence, it seems likely that motion practice will be required, in part, because the Clearview Defendants have unilaterally decided that they need not search for and produce relevant documents "at this late stage of discovery." Fact discovery presently does not close until September 26, 2022, and Plaintiffs' discovery requests are dated May 24, 2021; February 3, 2022; February 25, 2022; and March 16, 2022.

Settlement Agreement at Ex. A (Findings ¶ 4). Moreover, the order acknowledges that the parties have not admitted to fault, liability or wrongdoing. *Id.* The court did not make any legal findings regarding the scope of BIPA § 25(e) or whether the Settlement Agreement precludes any possible violation of BIPA by Defendant Clearview. The court did not resolve any factual disputes.

Notably, the order does not give the Clearview Defendants or Macy's permission to violate BIPA or otherwise absolve them of liability for past, current or future BIPA violations. Rather, the order merely sets forth the agreed-upon relief and the limits of that relief. As such, the order does not infringe on the rights of others.

## II.     The Clearview Defendants' Position.[5]

The Clearview Defendants believe that the Settlement Agreement moots the injunctive relief sought in this case because the Settlement Agreement limits Clearview's operations but allows Clearview to continue to operate within the government contractor exemption in 740 Ill. Comp. Stat. 14/25(e). This provides Plaintiffs with the injunctive relief they seek, rendering the issue moot.

Plaintiffs, however, read the governmental contractor exemption in Section 25(e) extraordinarily narrowly — apparently far more narrowly than the ACLU or Cook County Circuit Court Judge Pamela McLean Meyerson appear to do. As the filings in this case make clear, Plaintiffs read Section 25(e) as excluding contractors, subcontractors, or agents of the federal government or of state governments outside of Illinois from its protection and as applying only to

---

[5] Plaintiffs point out that they did not receive drafts of the Clearview Defendants' portion of this status report until May 31. But they neglect to inform the Court that the Clearview Defendants met and conferred with Plaintiffs about the impact of the ACLU Settlement Agreement on this case on May 17, 2022. During that meet and confer, the Clearview Defendants stated their position on this issue, and Plaintiffs agreed to further examine the issue and revert with Plaintiffs' position. Plaintiffs first provided the Clearview Defendants and Macy's with an initial draft of the Joint Status Report on May 24, 2022, one full week after the meet and confer. In any event, Plaintiffs had sufficient time to provide several rounds of edits to this report after seeing the Clearview Defendants' draft submission.

contractors, subcontractors, or agents of Illinois government agencies or local units of government. *See, e.g.*, Dkt. 46 at 3 (stating that Section 25(e) "applies to contractors, subcontractors and agents ***of the State of Illinois or local units of government***") (emphasis added); Dkt. 137 at 44:17-23 (stating that Section 25(e), by using "State, Capital S," ***applies only to "the State of Illinois"***) (emphasis added).

The Settlement Agreement in the ACLU case and the related Consent Order make plain that both the ACLU and Judge Meyerson, along with Clearview, reject Plaintiffs' limited reading of Section 25(e). The very first paragraph of the Settlement Agreement makes this plain. It grants a nationwide injunction prohibiting Clearview "from granting paid or free access to the Clearview database of alleged facial vectors" to:

> (1) any private entity or private individuals, ***except (a) as consistent with 740 ILCS 14/25 (and applicable law referred to therein)*** or (b) in compliance with the requirements of 740 ILCS 14/15; and (2) any individual governmental employee who is not acting in their official capacity on behalf of a State or federal government agency, or local unit of government. ***For the avoidance of doubt, this Private Entity Ban in no way limits Clearview's ability to work with federal government agencies (or State government agencies outside of Illinois) and contractors engaged in authorized support for and under contracts with such government agencies at all levels and locations.***

Settlement Agreement, Par. 1 (emphasis added) (attached as Exhibit 1).

The Consent Order, which has been "So Ordered" by Circuit Court Judge Meyerson, contains identical language. *See ACLU v. Clearview AI, Inc.*, No. 2020 CH 04353, Consent Order at Par. 2 (attached as Exhibit 2). In fact, three of the nine paragraphs of the Consent Order expressly emphasize that Clearview will be permitted to continue to provide its facial recognition app and databases to the federal government and to state and local government agencies outside of Illinois. *Id.* at Par. 2; *see also id.* at Par. 4 ("For a period of five (5) years from the date of the entry of this Order, Clearview is enjoined from granting either paid or free access to Illinois state,

county, local, or other government agencies (***but is not restricted from permitting such access for federal other State government agencies and contractors engaged in authorized support for and under contracts with such federal and other State government agencies at all levels and locations***). . .") (emphasis added); *id.* at Par. 6 ("Outside of the injunctive relief described in Paragraphs 2, 4, and 5, ***this Consent Order does not restrict Clearview's ability to contract with third parties, including with any and all federal government agencies (even those in Illinois), and any other State or local government agencies, or contractors engaged in authorized support for and under contracts with such government agencies.***") (emphasis added).

In other words, the Consent Order repeatedly and expressly authorizes Clearview to do exactly what the Plaintiffs in this case claim that they cannot do under Plaintiffs' reading of Section 25(e).

While the Court in the ACLU case made no findings about the meaning or scope of Section 25(e), the Clearview Defendants respectfully submit that the Settlement Agreement and Consent Order could not have expressly authorized Clearview to engage in conduct that either the ACLU (and other plaintiffs) or Judge Meyerson thought violated BIPA. If there were even a colorable argument that Clearview's contracting with the federal government and non-Illinois state governments violated BIPA, then the ACLU would never have agreed to this relief and Judge Meyerson would not have signed off on it. *See Kasper v. Bd. of Election Comm'rs of the City of Chicago*, 814 F.2d 332, 338 (7th Cir. 1987) ("Before entering a consent decree the judge must satisfy himself that the decree is consistent with the Constitution and laws, does not undermine the rightful interests of third parties, and is an appropriate commitment of the court's limited resources.").

8

Thus, in response to the question asked by this Court — namely, what are the effects of the Settlement Agreement on this case (Dkt. No. 341) — it is clear that the Settlement Agreement and Consent Order provide strong persuasive authority that Plaintiffs' strained reading of the governmental contractor exception in Section 25(e) is wrong as a matter of law.

The legal dispute between Clearview and Plaintiffs about the meaning of the government contractor exception in Section 25(e) remains the only reason that the injunctive relief in this case and Clearview's counterclaim — which asks for a declaratory judgment about the applicability of Section 25(e) to Clearview's current operations — remain live issues. While Plaintiffs suggest that there are factual questions that remain about "whether the Clearview Defendants currently operate solely as government contractors" and mischaracterize the Clearview Defendants' position on these issues in order to suggest that discovery disputes will require motion practice to resolve, the reality is that most, if not all, of the discovery on this discrete issue can be done expeditiously and can be completed in less than 4 weeks. Defendants will promptly be producing information to Plaintiffs about the nature and timing of their contractual relationships and a targeted deposition about this topic would quickly reveal all relevant facts bearing on the government contractor issue.

The Clearview Defendants respectfully submit that expedited summary judgment briefing on this narrow question of law has the potential to substantially narrow the issues that remain. If the Court agrees with the Clearview Defendants' interpretation of Section 25(e) — which is the same interpretation endorsed by both the ACLU and Judge Meyerson in the Settlement Agreement and Consent Order — then both the injunctive relief and Clearview's counterclaim will be fully resolved. Accordingly, we urge the Court to permit the parties to brief summary judgment motions focused on this narrow issue on an expedited basis. *See Imagecube LLC v. Boeing Co.*, 2009 WL

703171, at *2 (N.D. Ill. 2009) (parties permitted briefing and a hearing on a partial motion for summary judgment where it presented an opportunity to narrow the issues in the case).

### III. Macy's Position.

As Plaintiffs concede, the Settlement Agreement requires that Clearview undertake certain steps that relate to the injunctive relief Plaintiffs seek in this case. In the First Amended Complaint, Plaintiffs seek:

**Declaratory Relief:** Judgment declaring that Macy's and the putative defendant class:

- "continue to owe a legal duty to not collect, obtain, purchase, trade, disclose, sell or otherwise misuse the photographs and Biometrics of Plaintiffs and members of the Plaintiff Classes under, inter alia, the state statutes and constitutional provisions described in this Consolidated Class Action Complaint and the common law;"
- "continue to breach their legal duties to Plaintiffs and members of the Classes by continuing to collect, obtain, purchase, trade, disclose, sell and otherwise misuse the photographs and Biometrics of Plaintiffs and members of the Plaintiff Classes;" and
- "continue to cause harm to Plaintiffs and members of the Plaintiff Classes."

First Am. Complaint, Dkt. 116, ¶ 205(a) – (c).

**Injunctive Relief**: An order enjoining Macy's and the putative defendant class from: (a) "engaging in the unlawful conduct alleged in this claim," (b) requiring them to "delete all photographs and Biometrics of Plaintiffs and members of the Plaintiffs classes," and (c) ordering them to "cease further collection of photographs and Biometrics of Plaintiffs or members of the Putative Classes or engaging in any activities that would result in the purchase, obtainment, disclosure, trade, sale or misuse of the photographs and Biometrics of Plaintiffs and members of the Plaintiff Classes." *Id.*, ¶ 206.

As a result of the Settlement Agreement, there is no actual case or controversy and no threat of future harm that Plaintiffs can address through the issuance of declaratory or injunctive relief in this lawsuit. Voluntary compliance moots a case where "the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013); *Equal Employment Opportunity Comm'n v. Flambeau, Inc.,* 846 F.3d 941, 949–51 (7th Cir. 2017). A case becomes "inarguably moot" where the cessation of conduct is "less voluntary" due to a "binding, judicially enforceable agreement." *In re Residential Capital, LLC*, No. 11 CIV. 5201 DLC, 2013 WL 1285430, at *3 (S.D.N.Y. Mar. 29, 2013), quoting *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 563 (2d Cir.1991).

As an initial matter, Macy's stopped using the Clearview platform several years ago, mooting the declaratory and injunctive relief that Plaintiffs seek.[6] Even if Macy's had not voluntarily ceased using the platform, the declaratory and injunctive relief would still be "inarguably moot" because of the Settlement Agreement. Under the Settlement Agreement, Clearview agreed to the entry of an injunction prohibiting it from providing access to the Clearview platform to any private entity located in Illinois for the next five years (the "Private Entity Ban"). *See* Exhibit A to Settlement Agreement, ¶ 5. Thereafter, any access that is provided to a private entity must comply Section 15 and 25 of BIPA. *Id*. ¶ 2.

Moreover, Plaintiffs seek to certify a defendant class pursuant to Rule 23(b)(2), comprised of defendants who are allegedly similarly situated to Macy's. First Am. Complaint, Dkt. 116, ¶ 67. To meet their burden under Rule 23(b)(2), Plaintiffs must establish that Macy's and the putative

---

[6] The requested declaratory and injunctive relief is also exceedingly broad, as it purports to apply to any use of biometrics (legal or illegal) and purports to extend to any biometric technology, not just the Clearview platform. Further, an order mandating that Macy's "comply with the law" does not satisfy Federal Rule of Civil Procedure 65(d)(1) and should be disregarded as an "empty injunction." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.").

11

defendant class have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs also seek certification of Rule 23(b)(2) plaintiff classes. Because the requested declaratory and injunctive relief is moot, Plaintiffs cannot satisfy Rule 23(b)(2)'s requirement that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *See, e.g., Healey v. Int'l Bhd. of Elec. Workers, Loc. Union No. 134*, 296 F.R.D. 587, 591 (N.D. Ill. 2013). Accordingly, the Court should strike the requested declaratory and injunctive relief and Plaintiffs' allegations that certification of either a defendant or plaintiff class under Rule 23(b)(2) is proper, and deny any motion Plaintiffs may seek to file for plaintiff or defendant class certification pursuant to Rule 23(b)(2).

### A. The Settlement Agreement Establishes that Macy's Reasonably Relied on Clearview's Representations That It Would Not, While Providing Services to Macy's, Include any Biometric Data Results of Illinois Residents.

Another key component of the ACLU Settlement Agreement is the Illinois Photo Screening requirement, which provides:

> Clearview shall maintain for five (5) years from the date of the entry of the Consent Order Clearview's filter program of screening out, to the best of Clearview's ability, Illinois-based photographs from the Clearview App. Specifically, Clearview shall filter photographs that are geotagging as having been uploaded in Illinois or that have metadata associating them with a geolocation within Illinois from search results in the Clearview App.

ACLU Settlement Agreement, ¶ 8. This requirement is identical to one of the representations that Clearview made to Macy's in the parties' contract wherein it represented that "it shall not, while providing Services to Macy's, include any biometric data results of Illinois residents." The inclusion of the same Illinois Photo Screening requirement in the ACLU Settlement Agreement, and the court's approval of same, demonstrates that Macy's reasonably relied on Clearview's covenant, warranty and representation that it would not include any biometric data results of

12

Illinois residents when providing services to Macy's, thus ensuring that Macy's use of the Clearview platform would not (and did not) impute the rights of any Illinois resident or the laws of the state of Illinois.

Dated: May 31, 2022

Respectfully submitted,

By: /s/ Scott R. Drury
    SCOTT R. DRURY

Scott R. Drury
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

*Plaintiffs' interim lead class counsel*


By: /s/ Daniel R. Saeedi
    DANIEL R. SAEEDI

Daniel R. Saeedi
Rachel Schaller
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, 28th Floor
Chicago, Illinois 60601
312.527.4000
dsaeedi@taftlaw.com
rschaller@taftlaw.com

*Counsel for Defendant Macy's, Inc.*

By: /s/ Joel Kurtzberg
    JOEL KURTZBERG

Floyd Abrams
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
212.701.3621
jkurtzberg@cahill.com

Precious Jacobs-Perry
Howard S. Suskin
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
312.222.9350

Lee Wolosky
Andrew L. Lichtman
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
212.891.1600

*Counsel for Defendants Clearview AI, Inc.; Hoan Ton-That; Richard Schwartz; and Rocky Mountain Data Analytics LLC*

13

**CERTIFICATE OF SERVICE**

    I, Scott R. Drury, an attorney, hereby certify that, on May 31, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                                                     /s/ Scott R. Drury
                                                     SCOTT R. DRURY