IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' MOTION TO MODIFY THE RELEVANT TIME PERIOD FOR DISCOVERY AND TO COMPEL THE CLEARVIEW DEFENDANTS TO RESPOND TO PLAINTIFFS' WRITTEN DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs, by interim lead class counsel, respectfully request that this Court enter an order: (a) modifying the end date for the relevant time period for discovery from January 22, 2020 to the present; (b) requiring the immediate verified production of all previously compelled documents; and (c) compelling Defendants Clearview AI, Inc. ("Clearview"); Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics LLC ("Rocky Mountain"); and Thomas Mulcaire (collectively, "Defendants") to (i) search for and produce responsive ESI, (ii) search for and produce documents from key engineering staff, (iii) produce documents responsive to Plaintiffs' Fourth Set of Requests for Production ("Fourth Requests"[1]) 1-3, 6, 8-13, 15-16, and (iv) produce non-privileged documents currently being withheld on improper claims of privilege. In support of this motion, Plaintiffs state as follows:

## INTRODUCTION

Despite Plaintiffs' significant efforts to gain Defendants' compliance with their discovery obligations, Defendants are intent on obstructing the discovery process. To wit: (a) after Defendants asserted various affirmative defenses and Clearview asserted a counterclaim (the "Counterclaim"), Defendants have refused to fully respond to targeted discovery requests related thereto; (b) Defendants have violated this Court's previous order compelling the production of documents (the "Order"); (c) as of March 2022, Defendants largely decided they no longer needed to search for and produce ESI; (d) Defendants failed to timely disclose key engineering staff and have yet to produce documents of key engineers; and (e) Defendants have improperly withheld non-privileged documents on the basis of privilege. Moreover, while Clearview's Counterclaim seeks relief based on its *current operations*, Defendants will not agree to modify the relevant time period to correspond with the allegations.

---

[1] Plaintiffs refer to their various sets of requests for production as the "First Requests," "Second Requests," "Third Requests" and "Fourth Requests."

Prior to bringing this motion, Plaintiffs engaged in extensive efforts to resolve the disputes. Defendants viewed those efforts as opportunities to delay. With the disputes still not being fully resolved, and given Defendants' history of verifiable misrepresentations, Plaintiffs seek a Court Order compelling Defendants' compliance with their discovery obligations and modifying the relevant time period.

## FACTUAL BACKGROUND

As set forth more fully in the Court's Order on Plaintiffs' first motion to compel (the "Order"), Plaintiffs are Illinois, New York, California and Virginia residents who have brought statutory, constitutional and common law privacy claims on behalf of a putative nationwide class and Illinois, New York, California and Virginia subclasses. Dkt. 237 at 1.[2] Plaintiffs allege Defendants unlawfully collected, captured and obtained Plaintiffs' and class members' biometric data and subsequently unlawfully used that biometric data. *Id.* at 1-2. In March 2022, after the Court largely denied Defendants' motion to dismiss (Dkt. 279), Defendants filed their answer and affirmative defenses, and Clearview filed the Counterclaim. Dkt. 310.

Plaintiffs have timely served four sets of requests for production on Defendants. Exs. 1-4.[3] Defendants served their respective responses to Plaintiffs' production requests on July 1, 2021; March 7, 2022; March 11, 2022; and April 15, 2022. Exs. 5-8. The responses do not comply with Defendants' discovery obligations, namely:

- The Court previously compelled Defendants to produce within 60 days "all photographs and other data in their possession concerning the named Plaintiffs," as well documents sufficient to identify whether Plaintiffs' images were used in connection with the training of Defendants' technology (Dkt. 237 at 6, 10), but Defendants have not done so (Drury Decl. ¶ 2);

---

[2] Citations to docketed entries are to the CM/ECF-stamped page numbers.
[3] All exhibits are exhibits to the Declaration of Scott R. Drury, filed contemporaneously with this motion.

- Defendants largely refuse to search for and produce responsive ESI (*see, e.g.,* Ex. 6 at Responses ("Resp.") 1-3, 9-12, 14-15; Ex. 7 at Resp. 1-5; Ex. 8 at Resp. 1-16);

- Defendants have failed to produce the documents of key engineering staff;

- Defendants refuse to search for and produce all documents responsive to targeted requests regarding specified affirmative defenses and the Counterclaim (*see* Ex. 8 at Resp. 1-3, 6, 8-13, 15-16); and

- Defendants have improperly withheld documents on the basis of privilege.

Pursuant to LR 37.2 and this Court's Orders strongly encouraging the parties to continue meeting and conferring (*see* Dkt. 329, 358), Plaintiffs made extensive – but unsuccessful – efforts to fully resolve the discovery disputes. Drury Decl. ¶ 5.

## ARGUMENT

I.  **Legal Standards.**

The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 234 F.R.D. 447, 450 (N.D. Ill. 2006). Relevance under Rule 26 is broader than even the expansive definition of relevance under Fed. R. Evid. 401. *Kelley v. Bd. of Educ. of City of Chi.*, 2012 WL 1108135, at *1 (N.D. Ill. Apr. 2, 2012). "[I]f there is any possibility that the information sought may be relevant to the subject matter of the action," discovery should be permitted. *In re Aircrash Disaster*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). As the parties resisting discovery, Defendants bear the burden of demonstrating why the discovery at issue is improper. *See United Auto Ins. v. Veluchamy*, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010).

3

**II.     The Court Should Modify the Relevant Time Period.**

In the Order, the Court determined that "at this juncture," the end date for the relevant time period for discovery should be January 22, 2020. Dkt. 237 at 4. Based on subsequent events, the Court should revisit that ruling and extend the relevant time period to the present.

On March 14, 2022, Clearview filed its Counterclaim seeking a "declaratory judgment that *its current operations* are exempt from" Illinois' Biometric Information Privacy Act because "its only licensed users/customers are governmental entities." Dkt. 310 at 89 ¶¶ 3-4 (emphasis added). Clearview further alleged that "[a]ll of the facial vectors *that are currently used by the Clearview app* were created at a time when Clearview acted *solely* as an agent of government entities . . . ." *Id.* at 93-94 ¶ 25 (emphasis added). Clearview also alleged that "[e]very customer that uses the Clearview app" agrees to terms and conditions authorizing Clearview to act as its agent. *Id.* at 93 ¶ 23.

Further, since the Court entered the Order, Defendant Macy's, Inc. ("Macy's") has informed Plaintiffs that it spoliated relevant evidence. *See* Ex. 25 (7/7/2022 Drury letter) at 2-3. Moreover, Plaintiffs anticipate that their upcoming class certification motion will seek to certify a class covering a time period that extends beyond January 22, 2020 and may extend to the present.[4] *See* Dkt. 357 at 4; *see also* Drury Decl. ¶ 6.

It is blackletter law that matters put at issue by the parties' claims and defenses are appropriate subjects for discovery. *Browner v. Amer. Eagle Bank*, 2019 WL 1037833, at *2 (N.D. Ill. Nov. 22, 2019) (allegations in complaint "open[ed] the door to discovery" related to the allegations); *Brodsky v. HumanaDental Ins. Co.*, 2015 WL 1347766, at *3 (N.D. Ill. Feb. 24, 2015) (denials of plaintiffs' allegations opened the door to discovery). Here, Clearview's Counterclaim

---

[4] At the Court's direction, Plaintiffs are holding off on filing the class certification motion until after the Court rules on Plaintiffs' pending motion for leave to amend the operative complaint. *See* Dkt. 357 at 4.

4

has opened the door to discovery regarding their alleged current operations and conduct related to those operations. Yet, as discussed *infra,* § V.B, Defendants have obstructed Plaintiffs' efforts to obtain discovery regarding the Counterclaim. Clearview cannot at once assert a Counterclaim based on its alleged current operations while also refusing to modify the relevant time period.

The Court should extend the relevant time period for the additional reason that Plaintiffs need the ability to obtain discovery regarding Macy's spoliation of evidence. Whether Plaintiffs seek to amend their complaint to add a negligent spoliation of evidence of count, *see Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 193 (Ill. 1995), and/or seek discovery sanctions based on the spoliation, *see DR Distr., LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 956-65, 979-83 (N.D. Ill. 2021), Plaintiffs will need discovery into the spoliation.

Finally, based on a summary spreadsheet produced by Defendants on July 15, 2022, it appears that Defendants do not currently operate solely as a government contractor – *i.e.*, Defendants' unlawful conduct is ongoing. Drury Decl. ¶ 7. Based on that and other evidence, Plaintiffs anticipate seeking to certify a class covering a time period that extends beyond January 22, 2020 and may extend to the present. *Id.* ¶ 4.

### III. The Court Should Order the Immediate Verified Production of All Documents It Previously Compelled Defendants to Produce.

The Court previously ordered Defendants to produce all photos and data regarding Plaintiffs, including documents "sufficient to identify whether Plaintiffs' images were used in connection with the training of Defendants' technology" within 60 days. Dkt. 237 at 6, 10. Even if the clock did not start ticking until Plaintiffs produced their photos to Defendants on February 22, 2022, Defendants were required to fully comply with the Order by April 25, 2022. They have not done so. Drury Decl. ¶¶ 2-4.

Defendants have yet to produce all documents regarding Plaintiffs. *See* Ex. 24 (Email chain) at 3. Further, Plaintiffs are unaware of produced documents sufficient to show whether Plaintiffs' images were used in conjunction with the training of Defendants' technology. Drury Decl. ¶ 4. Specifically, Plaintiffs are unaware of documents showing what images Defendants used in connection with their training or how the images were selected. *Id.*

When Plaintiffs informed Defendants they had failed to produce all documents regarding Plaintiffs, Defendants initially would only commit to producing the compelled documents by the close of fact discovery. *See* Ex. 17 (5/9/2022 Drury letter) at 3-4. Since then, Defendants have falsely claimed to be in full compliance with their obligation to produce Plaintiff-related documents, only to later produce more documents after Plaintiffs challenged the claim. *See* Ex. 20 (5/27/2022 Lichtman letter) at 3-4; Ex. 22 (6/29/2022 Lichtman letter) at 5. As recently as July 15, 2022, Defendants produced another document regarding two of the named Plaintiffs. Drury Decl. ¶ 3. And, on July 20, 2022, Defendants conceded even more documents have not been produced. Ex. 24 (Email chain) at 3.

Given Defendants' violation of the Order and their above-described misrepresentations, the Court should order Defendants to immediately produce all documents covered by the Order, along with a sworn verification from Defendants and their counsel that the production is complete.

## IV. The Court Should Order Defendants to Search for and Produce ESI.

Disregarding the fact discovery cutoff date, beginning in March 2022 and continuing to the present, Defendants largely decided they no longer needed to search for and produce ESI. *See* Ex. 6 at Resp.1-3, 9-12, 14-15; Ex. 7 at Resp. 1-5; Ex. 8 at Resp. 1-16.[5] According to Defendants,

---

[5] Plaintiffs list each of these responses to show the breadth of Defendants' refusal to search for and produce ESI. In this motion, Plaintiffs seek production of ESI related to the specific requests for which Plaintiffs seek to compel responses.

6

Plaintiffs' requests for documents were objectionable "to the extent [they] purport[] to require the Clearview Defendants to undertake an extremely burdensome ESI review at this late stage in fact discovery after the Clearview Defendants have already substantially completed their production." *See, generally, id.* In other words, Defendants objected on the grounds that one ESI production was enough, notwithstanding the ongoing nature of fact discovery.

Even when Defendants have nominally agreed to conduct additional ESI searches, in one instance, after Plaintiffs proposed search terms, Defendants refused to conduct the proposed searches and have not made any counterproposals. Ex. 18 (5/20/2022 Drury letter) at 5; Ex. 20 (5/27/2022 Lichtman letter) at 5. Instead, without providing hit counts, the amount of data returned by the terms, or whether the hits were relevant, Defendants demanded that Plaintiffs propose new terms. *Id.* Defendants did not make any proposals of their own.

Defendants have cited to *In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *5 (N.D. Ill. July 12, 2018), for the proposition that they do not have to conduct further ESI searches. *See* Ex. 20 (5/27/2022 Lichtman letter) at 2. Unlike here, that case involved the defendants' attempted use of Rule 45 subpoenas to obtain previously-denied discovery. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *1. Here, Plaintiffs have made proper discovery requests, many of which relate directly to Defendants' affirmative defenses and the Counterclaim. Defendants filed the defenses and Counterclaim *after* they purportedly "substantially completed" their ESI review.

## V. The Court Should Order Defendants to Produce Discoverable Information.

### A. Defendants Must Search for and Produce Their Engineers' Documents.

In February 2022, Plaintiffs raised concerns that Defendants had failed to disclose their engineering staff in response to an interrogatory seeking the disclosure and that the failure tainted

7

Defendants' document production. Ex. 9 (2/24/2022 Drury letter) at 2-3; *see also* Ex. 15 (4/26/2022 Drury letter) at 2-3. Relatedly, Plaintiffs asserted that Defendants had failed to search for and produce the documents of their Chief of Technology, Terence Liu. Ex. 9 (2/24/2022 Drury letter) at 2-3; Exhibit 18 (5/20/2022 Drury letter) at 3.

Defendants waited until May 6, 2022 to supplement the interrogatory answer, at which time they disclosed Scott Fowler, Noah Gitalis and Justin Godesky. Ex. 28 (Clearview Def. Eighth Supp. Resp. to Pl. First Rogs) at 2-3. Defendants then waited until June 29, 2022 to agree to search for and produce relevant documents of Liu, Gitalis and Godesky.[6] Ex. 22 (6/29/2022 Lichtman letter) at 6.

At the same time Defendants agreed to treat Liu, Gitalis and Godesky as document custodians, they refused to use ESI search terms proposed by Plaintiffs. *Id.* On July 8, 2022, Defendants retreated from that position and agreed to use all but two of the search terms. Ex. 24 (Email chain) at 8. The two search terms only yielded 9,300 pages of documents (*id.* at 4) – a small amount in comparison to the nature and magnitude of this case. Defendants still have not produced the engineers' documents and will not commit to a production date. *Id.* Based on Defendants' position on the relevant time period, the production likely will only cover up to January 22, 2020. The Court should compel Defendants to produce all responsive documents within seven days of any order.

### B. Defendants Must Produce Documents Regarding the Counterclaim (Fourth Requests 1-3, 13, 15 and 16).

As discussed above, Clearview's Counterclaim alleges that: (a) its only current "licensed users/customers" are governmental entities; (b) those licensed users/customers have agreed to certain terms and conditions; and (c) all facial vectors currently in use were created at a time when

---

[6] According to Defendants, Fowler no longer works for them.

Clearview acted solely as a government agent. Dkt. 310 at 89 ¶¶ 3-4, 91 ¶ 17, 93-94 ¶¶ 23, 25. The Fourth Requests seek the following information regarding the Counterclaim:

(a) Non-government entities' use of and access to Defendants' technology and the timing of that use and/or access (Ex. 4 at Requests 1-3);

(b) Whether Clearview's current customers are solely government agencies located outside of Illinois who can only use the app for legitimate law-enforcement purposes (*id.* at Requests 13, 16); and

(c) Whether all facial vectors collected and currently used by Defendants from online photos were created after Clearview acted solely as a government agent and pursuant to its work with those government agencies (*id.* at Request 15).

Even though the information sought goes to the heart of the Counterclaim, Defendants have not agreed to produce – or have otherwise failed to produce – all responsive documents. To date, Defendants have not even produced the contracts or agreements with the governmental entities they contend underlie the Counterclaim. Ex. 19 (5/24/2022 Drury letter); Ex. 24 (Email chain) at 3. Notably, back on May 31, 2022, Defendants represented to the Court that discovery related to the Counterclaim "can be completed in less than 4 weeks. Defendants will promptly be producing information to Plaintiffs about the nature and timing of their contractual relationships." Dkt. 345 at 9. Yet, it was not until July 20, 2022, with this motion being imminent, that Defendants first agreed to perform a "targeted search for contract documents that post-date January 22, 2020." Ex. 24 (Email chain) at 3. Defendants now indicate that they "expect" to make an "additional production" of the documents "this week." *Id.*

Defendants have not described the nature or scope of their "targeted search." *See id.* This is important because Defendants have represented that their agreements with government entities are based on Defendants' terms of service, not necessarily contracts. *See* Dkt. 310 at 93 ¶¶ 22-23. Defendants have not produced documents showing that each of their current users has agreed to those terms. Significantly, the terms of service produced by Defendants have a form cover page

9

titled "Purchase Order Form" that includes spaces for the "Customer" and the "Term of Service." Ex. 29 (Terms of Service) at 2. Defendants have not produced completed Purchase Order Forms or other documents showing users' acceptance of the Terms of Service. Drury Decl. ¶ 8.

Regarding non-government users, in lieu of producing documents showing when Defendants no longer had non-government users – *i.e.*, when they *terminated* their contracts or relationship with those users and/or permanently denied them access to Defendants' technology – Defendants merely have produced a summary spreadsheet purporting to show when customers last performed searches. Ex. 26 (Summary Spreadsheet). But the date on which a user last used Defendants' technology does not necessarily equate to the date on which a contractual relationship ends or when an account is permanently disabled.

Notably, when Plaintiffs sought information about specific user accounts (*see* Ex. 4 at Request 3), Defendants would not provide the requested information, stating that Plaintiffs can obtain the information at depositions. Ex. 20 (5/27/2022 Lichtman letter) at 4. The specified accounts include accounts for a non-government entity – Securiport, as well as accounts for "test users," accounts titled "demo accounts," and numerous internal accounts on which thousands of searches have been run. *See* Ex. 4 at Request 3. Information about these accounts is critical to determining whether and when non-governmental users used these accounts to perform searches.

While Plaintiffs may ultimately depose witnesses regarding these accounts, Fed. R. Civ. P. 34 does not contain an exception to producing documents where the information may also be obtained at a deposition. *See* Fed. R. Civ. P. 34. Indeed, the documents are necessary to an effective deposition.

Finally, while Defendants agreed to produce documents purportedly showing when they began creating the facial vectors they contend are currently used, they have not produced

documents showing when, if ever, they stopped using the previous set of facial vectors. Drury Decl. ¶ 9. Further, without knowing when Defendants began working solely as a government contractor or agent, if ever, documents purportedly showing when new facial vectors were created are meaningless.

Importantly, the document Plaintiffs believe Defendants produced regarding the facial vectors is nothing more than an email chain generally describing a "Rollout Update for New Algorithm," as opposed to providing detailed information regarding the alleged new vectors. Ex. 30 (Rollout Update). Defendants should not be permitted to cherry-pick what responsive documents to produce.

The Court should compel Defendants to produce documents directly related to the Counterclaim.

### C. Defendants Must Produce Documents Regarding Their Affirmative Defenses (Fourth Requests 6, 8-12).

Defendants have asserted the following affirmative defenses, among others:

- **Extraterritoriality (Second Defense):** Alleging that Plaintiffs' Illinois, California and Virginia claims violate the extraterritoriality doctrine because Plaintiffs do not allege that a majority of the conduct giving rise to the claims took place in those states (Dkt. 310 at 81-82 ¶¶ 2-3);

- **Consent, Ratification, Acquiescence, Estoppel, Waiver, Unclean Hands and Assumption of Risk (Eighth Defense):** Alleging, *inter alia*, that: (a) Plaintiffs consented to Defendants' collection of data from their publicly-posted photos via the terms and conditions on unspecified websites; and (b) Plaintiffs' claims are barred because they ratified and acquiesced to Defendants' conduct (*id.* at 85 ¶¶ 15-17);

- **Good Faith (Tenth Defense):** Alleging that Plaintiffs' claims are barred by Defendants' good faith (*id.* at 86 ¶ 19); and

- **Acts of Others (Thirteenth Defense):** Alleging that Plaintiffs' claims are barred because the acts or omissions of others caused the alleged damages (*id.* at 87 ¶ 22).

In direct connection with the affirmative defenses, the Fourth Requests seek the following information:

    (a)    *Extraterritoriality*: Documents showing acts or conduct performed by Defendants in Illinois, California and/or Virginia. *See* Ex. 4 at Request 6.

    (b)    *Consent/Ratification/Acquiescence*: Documents showing Plaintiffs' and class members' alleged consent to, ratification of, acquiescence to and/or participation in the various agreements and conduct alleged by Defendants. *Id.* at Requests 8-10.

    (c)    *Good Faith:* Documents related to Defendants' claim they acted in good faith. *Id.* at Request 11.

    (d)    *Acts of Others:* Documents related to Defendants' allegation that Plaintiffs' and class members' damages were caused by entities other than Defendants. *Id.* at Request 12.

Despite the requests seeking information directly related to Defendants' affirmative defenses – even quoting language from those defenses – Defendants have refused to produce all responsive documents. Ex. 8 at Resp. 6, 8-12.

Regarding extraterritoriality, Defendants have only agreed to produce "contracts involving third parties" in the relevant states and "marketing materials sent to third parties" in those states. *Id.* at Resp. 6. This ignores Defendants' representation that "during the relevant time period, Clearview often had informal relationships with clients that *were not governed by a written contract*." Ex. 22 (6/29/2022 Lichtman letter) at 5 (emphasis added). Moreover, even though Defendants have an employee in Illinois, they will not produce documents related to him because he allegedly began his employment after the relevant time period. Ex. 10 (3/9/2022 Lichtman letter) at 3.

Further, when Plaintiffs proposed search terms regarding extraterritoriality, Defendants rejected the proposals without making any counterproposals. Ex. 16 (5/3/2022 Lichtman letter) at 6; Ex. 18 (5/20/2022 Drury letter) at 4-5; Ex. 20 (5/27/2022 Lichtman letter) at 5. One of the bases for the rejection was that the terms "Illinois" and "California" "hit on tens of thousands of documents." Ex. 20 (5/27/2022 Lichtman letter) at 5. In the context of an extraterritoriality

defense, that large number of hits on documents involving Illinois and California undercuts the defense and commands production of the documents.

With respect to Requests 8-12, while Defendants represented they would produce non-privileged responsive documents (Ex. 8 at Resp. 8-12), the representations were disingenuous. When Plaintiffs asked what terms would be used to search for responsive documents, Defendants would not agree to conduct ESI searches. *See* Ex. 15 (4/26/2022 Drury letter) at 5; Ex. 16 (5/3/2022 Lichtman letter) at 7; Ex. 17 (5/9/2022 Drury letter) at 5) Instead, Defendants claimed they already had produced all responsive documents – falsely asserting they already had produced all documents regarding Plaintiffs, *see, supra,* § III, and claiming that the affirmative defenses did not raise new issues. Ex. 16 (5/3/2022 Lichtman letter) at 7. Instead of producing documents, Defendants obstructed by only committing to consider "discrete follow-up requests." *Id.*; *see also* Ex. 18 (5/20/2022 Drury letter) at 5; Ex. 20 (5/27/2022 Lichtman letter) at 5.

It is inconceivable that Defendants asserted affirmative defenses without first identifying supporting documents – unless they asserted the defenses in bad faith. *See* Ex. 17 (5/9/2022 Drury letter) at 5; Ex. 18 (5/20/2022 Drury letter) at 5. Nevertheless, Defendants have only agreed to search for "'terms of service' from third parties that support our affirmative defenses that were in our possession, custody and control during the relevant time period." Ex. 20 (5/27/2022 Lichtman letter) at 5. Defendants have not yet produced the documents. Drury Decl. ¶ 9.

**D. Defendants Must Produce Non-Privileged Documents Listed on Their Privilege Log.**

After various meet and confers, on May 27, 2022, Defendants produced an amended Privilege Log (the "Log") that asserted privilege over the three below-described documents:

13

| No. | Author | Recipient(s) | Date/Time | Priv. Type | Description |
|---|---|---|---|---|---|
| 4 | Clearview AI | | 2/19/2019 16:37 | Attorney-Client | Document attached to the above privileged email re Clearview's potential patents sent to outside counsel for purposes of seeking legal advice. |
| 75 | media@clearview.ai | Richard Schwartz and Jack Mulcaire[7] | 1/22/2020 19:51 | Attorney-Client; Work Product | Email to *inside counsel* seeking legal advice re pending litigation with two nonprivileged attachments. (Emphasis added) |
| 76 | media@clearview.ai | Richard Schwartz and Jack Mulcaire | 1/22/2020 19:51 | Attorney-Client; Work Product | Email to *inside counsel* seeking legal advice re pending litigation with two nonprivileged attachments. (Emphasis added) |

Ex. 31 (Privilege Log) at Lines 4, 75-76. Line 4 claims as privileged a document prepared by "Clearview AI" with no recipient that was attached to an email sent to legal counsel. The log fails to describe the purported privileged nature of the attachment. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (specific explanation of privilege required for each document). Merely attaching a non-privileged document to a privileged email does not render the attachment privileged. *See id.* Notably, numerous other entries on the privilege log specifically describe the privileged nature of attachments. *See, e.g.,* Ex. 31 at Lines 6, 9-10, 12 (describing outside counsel's connection to attachments).

With respect to Lines 75-76, neither Richard Schwartz nor Thomas "Jack" Mulcaire was Defendants' "inside counsel" in January 2020. *See* Dkt. 310 at 7 ¶ 16; Ex. 32 (Mulcaire Tr.) at 14:10-15:8. While Mulcaire previously misrepresented to the Court that he has "been General Counsel of [Clearview] since September 2019," at his deposition he disclosed that he was not

---

[7] The Log provides the email addresses for these individuals, as opposed to their full names.

sworn in as an attorney until March 2020, which corresponded with the date on which he became Clearview's General Counsel. *See* Dkt. 43-1 (Mulcaire Decl.) ¶ 1; Ex. 32 (Mulcaire Tr.) at 14:10-15:8. Thus, contrary to the descriptions in Line 75 and 76, the documents at issue were *not* sent to Defendants' inside counsel and neither Schwartz nor Mulcaire could provide legal advice.

Recognizing the documents are not covered by the attorney-client privilege, Defendants have claimed the documents are "also protected as work product" because "Rule 26 protects from disclosure 'documents . . . that are prepared in anticipation of litigation *by* or for another *party* or its representative[.]" Exhibit 33 (Priv. Log email chain) at 2 (emphasis in original). According to Defendants, because the documents "were prepared by employees of Clearview AI concerning pending litigation," they are protected work product. *Id.*

As the party claiming protection under the work-product doctrine, Defendants have the burden of showing its applicability. *DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *6 (N.D. Ill. July 22, 2021). Defendants have not met the burden. Indeed, the descriptions they provide do not accurately reflect the nature of the documents, as they were not sent to an attorney and, therefore, did not seek legal advice. Moreover, the descriptions do not allow one to determine if the documents contain opinion work product, ordinary work product or no work product at all. *See Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 408-09 (N.D. Ill. 2001). Because Defendants have failed to show the documents are privileged, the Court should order their production.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and: (a) modify the relevant time period; and (b) compel Defendants to comply with their discovery obligation as described herein.

Dated: July 21, 2022

          Respectfully submitted,

By:   /s/ Scott R. Drury
      SCOTT R. DRURY
      *Interim Lead Class Counsel for Plaintiffs*

Mike Kanovitz
Scott R. Drury
Andrew Miller
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
drury@loevy.com

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
swebster@websterbook.com

*Other Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Scott R. Drury, an attorney, hereby certify that, on July 21, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                                                    /s/ Scott R. Drury
                                                    Counsel for Plaintiffs