# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Case No. 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br>Magistrate Judge Maria Valdez |

**THE CLEARVIEW DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND AMENDED COUNTERCLAIM FOR A DECLARATORY JUDGMENT**

Defendants Clearview AI, Inc. ("Clearview"), Rocky Mountain Data Analytics LLC ("Rocky Mountain"), Thomas Mulcaire, Hoan Ton-That, and Richard Schwartz (collectively, the "Clearview Defendants"),[1] by their undersigned counsel, respectfully submit this Answer and Defenses to the Second Amended Consolidated Class Action Complaint (the "Complaint") filed by Plaintiffs David Mutnick, Steven Vance, Mario Calderon, ~~Jennifer Rocio~~, Anthony Hall, Isela Carmean, Shelby Zelonis Roberson, Andrea Vestrand, and Aaron Hurvitz (collectively, the "Plaintiffs") and this Amended Counterclaim for a Declaratory Judgment as follows:

**THE CLEARVIEW DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES**[2]

**FIRST DEFENSE**
**(GOVERNMENT CONTRACTOR EXCEPTION)**

1. Plaintiffs' and the putative class members' BIPA claims are barred, in whole or in part, because BIPA includes an exemption for "a contractor, subcontractor, or agent of a State

---

[1] ~~Former Defendant Thomas Mulcaire was dismissed from this litigation in the Court's order of February 14, 2022. (Dkt. No. 279 at 9 n.1.)~~

[2] The Clearview Defendants hereby incorporate by reference all of the defenses raised in their May 24, 2021 motion to dismiss (Dkt. 88) and July 30, 2021 reply in support of their motion to dismiss (Dkt. 149).

1

agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25.  To the extent Plaintiffs and the putative class members allege that Clearview's contracts with government ~~agencies~~ entities, contractors, or subcontractors violate BIPA, those BIPA claims fail because Clearview is a contractor for government ~~agencies~~ entities, contractors, and subcontractors within the scope of those relationships and is thus exempt from BIPA.  *See Thornley v. CDW-Government, LLC*, 2020 CH 04346, at *4 (Cir. Ct. Cook Cnty. June 25, 2021) (finding that BIPA's government-contractor exemption applies to anyone "a state agency or local unit of government engages to furnish materials or provide services concerning biometric identifiers").

**SECOND DEFENSE**
**(EXTRATERRITORIALITY DOCTRINE)**

2. Plaintiffs' and the putative class members' BIPA ~~claims and California and Virginia state law~~ claims are barred, in whole or in part, by the extraterritoriality doctrine.  BIPA does not apply extraterritorially to regulate out-of-state conduct.  This means a valid BIPA claim must be based on alleged violations that occurred in Illinois.  Plaintiffs' and the putative class members' BIPA claims fail because Plaintiffs and the putative class members do not allege that the majority of the conduct giving rise to their claims took place in Illinois.

~~3. Likewise, Plaintiffs' and the putative class members' California and Virginia constitutional, statutory, and common law claims do not apply extraterritorially to regulate out-of-state conduct, and those constitutional, statutory, and common law claims must be based on alleged violations that occurred in California and Virginia, respectively. Thus, Plaintiffs' and the putative class members' California and Virginia constitutional, statutory, and common law claims also fail because Plaintiffs and the putative class members do not allege that the majority of the conduct giving rise to their claims took place in California or Virginia.~~

## THIRD DEFENSE
## (DORMANT COMMERCE CLAUSE)

4̶3. Plaintiffs' and the putative class members' BIPA claims are barred, in whole or in the part, because Plaintiffs' and the putative class members' proposed application of BIPA to Clearview would violate the Dormant Commerce Clause. Likewise, Plaintiffs' and the putative class members' California and Virginia constitutional, statutory, and common law claims fail because Plaintiffs' and the putative class members' proposed application of California and Virginia law to Clearview would also violate the Dormant Commerce Clause.

5̶4. Applying BIPA and California and Virginia constitutional, statutory, and common law to Clearview's conduct in New York, where Clearview is headquartered, would subject Clearview to liability under Illinois, California, and Virginia law merely because some small percentage of Clearview's alleged database of "three billion" publicly-available photographs contain images of Illinois, California, and Virginia residents.

6̶5. Because Clearview cannot determine which individuals shown in the photographs in its database reside in Illinois, California, or Virginia, if Clearview were ordered to remove all images and facial vectors of Illinois, California, and Virginia residents from its database, Clearview would not be able to do so. To comply with such an order, Clearview would likely have to cease using its database altogether, which would effectively shut down Clearview's operations nationwide—even in states that permit Clearview's activities. Illinois, California, and Virginia state law would de facto regulate and restrict the development and use of facial recognition technology involving online images nationwide, in violation of the Dormant Commerce Clause.

## FOURTH DEFENSE
## (UNCONSTITUTIONAL ABRIDGEMENT OF FREE SPEECH)

7̶6. Plaintiffs' and the putative class members' claims are barred, in whole or in part, by the First Amendment, Article One Section Four of the Illinois Constitution, Article One Section

Two of the California Constitution, Article One Section Twelve of the Virginia Constitution, and Article One Section Eight of the New York Constitution. Clearview's creation and use of its app constitutes "creation and dissemination of information," which are "speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *accord People v. Austin*, 2019 IL 123910, ¶ 31 (2019).

## FIFTH DEFENSE
## (INAPPLICABILITY OF BIPA)

~~8~~7. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because Plaintiffs inaccurately allege that the facial vectors used by Clearview constitute biometric identifiers within the meaning of BIPA because they are "scans of facial geometry." Contrary to Plaintiffs' contentions, the facial vectors that Clearview generates and uses in the functioning of its search engine do not encode or represent a "scan of face geometry," as is required to state a valid claim under BIPA.

## SIXTH DEFENSE
## (STANDING)

~~9~~8. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because they have not suffered a substantial grievance and accordingly do not have standing under BIPA. Further, Plaintiffs' and the putative class members' claims are barred because they lack standing with respect to their claims under California, Virginia, and New York law, as they fail to allege an actual injury that is both plausible and causally linked to the conduct complained of.

## SEVENTH DEFENSE
## (STATUTE OF LIMITATIONS AND LACHES)

~~10~~9. Plaintiffs' and the putative class members' claims are barred, in whole or in part, by the statute of limitations or laches. The statute of limitations for Plaintiffs' and the putative class members' claims arising under sections 15(a) and 15(b) of BIPA is five years. *See Tims v.*

*Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563 ¶ 33 (Sept. 17, 2021). The statute of limitations for Plaintiffs' and the putative class members' claims arising under sections 15(c) and 15(d) of BIPA is one year. *See id.* The statute of limitations for an unjust enrichment claim under Illinois law is five years. 735 ILCS 5/13-205.

~~11~~10. Under California law, both the statutory and common law right of publicity claims are subject to a two-year statute of limitations. *Christoff v. Nestle USA, Inc.*, 213 P.3d 132, 135, 141 (Cal. 2009). Further, the statute of limitations for an unjust enrichment claim under California law is two years. *See id.*; *Coachella Valley Water Dist. v. Superior Court of Riverside Cnty.*, 276 Cal. Rptr. 3d 61, 72-73 (Cal. Ct. App. 2021). The statute of limitations for right of privacy claims under California Constitution Article 1, § 1 is two years. *See* Cal. Code Civ. P. § 335.1; *Coachella*, 276 Cal. Rptr. 3d at 72-73; *cf. Cain v. State Farm Mut. Auto Ins. Co.*, 132 Cal. Rptr. 860, 313 (Cal. Ct. App. 1976).

~~12~~11. Under New York law, claims under Section 51 of the Civil Rights Law are subject to a one-year statute of limitations. N.Y. Civ. Prac. Law & Rules, § 215(3).

~~13~~12. Under Virginia law, a statutory right of publicity claim under Va. Code § 8.01-40 is subject to a five-year statute of limitations. Va. Code § 8.01-243(B); *Lavery v. Automation Mgmt. Consultants, Inc.*, 360 S.E.2d 336, 339 (Va. 1987). Further, the statute of limitations for a violation of the Virginia Computer Crimes Act is "the earlier of (i) five years after the last act in the course of conduct constituting a violation of the Computer Crimes Act or (ii) two years after the plaintiff discovers or reasonably should have discovered the last act in the course of conduct constituting a violation of the Computer Crimes Act." Va. Code § 8.01-40.1. In addition, the statute of limitations to bring a claim for unjust enrichment under Virginia law is three years. *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012).

~~14~~13. As a result, Plaintiffs' and the putative class members' claims are barred to the extent the claims were raised outside of the statute of limitations to assert such claims and/or were asserted after an unreasonable amount of time.

### EIGHTH DEFENSE
### (CONSENT, RATIFICATION, ACQUIESCENCE, ESTOPPEL, WAIVER, UNCLEAN HANDS, AND ASSUMPTION OF THE RISK)

~~15~~14. At all relevant times, Plaintiffs and the putative class members were informed of the fact that Clearview or any third party could collect their photographs and information from those photographs by posting them on the public Internet for anyone to view and collect, and by agreeing and consenting to the terms and conditions of the websites on which the photographs were posted.

~~16~~15. Individuals whose photographs have appeared on the public Internet have consented (either expressly or implicitly) to their public use because they have no expectation of privacy in those photographs. Further, those individuals assume the risk that their publicly posted photographs will be used by third parties.

~~17~~16. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because they ratified, acquiesced to, approved and participated in, and/or did not object to the conduct of which they now complain, even after they knew or should have known of the conduct alleged in the Complaint, and are now estopped from complaining of that conduct.

### NINTH DEFENSE
### (PHOTO EXCEPTION)

~~18~~17. Plaintiffs' and the putative class members' BIPA claims are barred, in whole or in part, because Clearview's alleged conduct is not subject to BIPA regulation, as it involves information derived from photographs. BIPA expressly excludes both photographs and information derived from photographs. 740 ILCS 14/10.

6

## TENTH DEFENSE
### (NO NEGLIGENT, INTENTIONAL, OR RECKLESS CONDUCT)

~~19~~18.  Plaintiffs' and the putative class members' claims are barred, in whole or in part, by the Clearview Defendants' good faith, and the absence of negligent, intentional, or reckless conduct.  To the extent that Plaintiffs' and the putative class members' BIPA and other state law claims apply to the Clearview Defendants' conduct, the Clearview Defendants are not liable because they relied in good faith upon a reasonable interpretation of BIPA's statutory language and the requirements of California, Virginia, and New York law, and any alleged violation was not negligent, intentional, or reckless.  Further, the Clearview Defendants acted at all times in good faith and without malice, willfulness, or reckless indifference, barring any recovery of punitive or exemplary damages by Plaintiffs and the putative class members.

## ELEVENTH DEFENSE
### (FAILURE TO MITIGATE DAMAGES)

~~20~~19.  Plaintiffs' and the putative class members' claims are barred, in whole or in part, by their failure to mitigate their damages, if any, and any recovery should therefore be reduced or denied accordingly.

## TWELFTH DEFENSE
### (NO ACTUAL OR PROXIMATE CAUSE)

~~21~~20.  Plaintiffs' and the putative class members' claims are barred, in whole or in part, because any purported injury is not fairly traceable to the alleged conduct of the Clearview Defendants, and so any relief sought would not redress any such injury.  Further, Plaintiffs' and the putative class members' claims are barred, in whole in part, because the Clearview Defendants' actions were not the actual or proximate cause of any loss suffered by Plaintiffs and the putative class members.

## THIRTEENTH DEFENSE
### (ACTS OF OTHERS)

~~22~~21. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because all or part of the damages alleged, if any, were caused by the acts or omissions of persons or entities other than the Clearview Defendants (including, without limitation, the acts or omissions of Plaintiffs and the putative class members or persons who acted on their behalf), for whose conduct the Clearview Defendants are not legally responsible.

**FOURTEENTH DEFENSE**
**(UNCONSTITUTIONAL VAGUENESS)**

~~23~~22. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because BIPA's provisions, including but not limited to the statute's "government contractor" exemption and definitions of "biometric identifier" and "biometric information," are vague in violation of the Illinois Constitution.

**FIFTEENTH DEFENSE**
**(SPECIAL LEGISLATION)**

~~24~~23. Plaintiffs' and the putative class members' claims are barred, in whole or in part, because the requirements of BIPA constitute special legislation in violation of the Illinois Constitution.

**SIXTEENTH DEFENSE**
**(UNCONSTITUTIONAL DAMAGES)**

~~25~~24. Plaintiffs and the putative class members seek improper damages in violation of the United States Constitution and other applicable law. Any award of statutory or punitive damages would constitute an unconstitutional penalty under the circumstances of this case, in violation of the due process and equal protection guarantees, and other substantive and procedural safeguards afforded by the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and comparable provisions of the Illinois, California, Virginia, and New York Constitutions.

**SEVENTEENTH DEFENSE**

**(ADEQUATE REMEDY AT LAW)**

~~26~~25.  Plaintiffs' and the putative class members' claims for unjust enrichment are barred because Plaintiffs and the putative class members have an adequate remedy at law.

**EIGHTEENTH DEFENSE**
**(UNJUST ENRICHMENT)**

~~27~~26.  Plaintiffs' and the putative class members' claims are barred, in whole or in part, because any recovery would result in them being unjustly enriched.

**NINETEENTH DEFENSE**
**(CLASS ALLEGATIONS)**

~~28~~27.  The putative class members' claims are barred, in whole or in part, because the requirements for class certification are not met.

**TWENTIETH DEFENSE**
**(FAILURE TO STATE A CLAIM)**

~~29~~28.  Plaintiffs' and the putative class members claims are barred because they have failed to state a claim upon which relief can be granted.

**AMENDED COUNTERCLAIM FOR A DECLARATORY JUDGMENT**[32]

1.      Clearview AI, Inc. ("Clearview") brings this declaratory relief action under 735 ILCS 5/2-701 to resolve a controversy regarding Clearview's status as a government contractor under Illinois' Biometric Information Privacy Act ("BIPA").

2.      Plaintiffs David Mutnick, Steven Vance, Mario Calderon, ~~Jennifer Rocio~~, Anthony Hall, and Isela Carmean (collectively, "Plaintiffs" or "Counterclaim-Defendants") have commenced a lawsuit against Clearview, alleging that Clearview's use of photographs violates BIPA. However, BIPA includes an exemption for "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25.

3.      Clearview is a technology company that provides its ~~licensed users/customers~~ users with access to an application that searches Clearview's proprietary database of photographs. Clearview's only ~~licensed users/customers~~ users are governmental entities, contractors, and subcontractors. In other words, Clearview is a government contractor. *See, e.g., Thornley v. CDW-Government, LLC*, 2020 CH 04346, at *4 (Cir. Ct. Cook Cnty. June 25, 2021) (finding that BIPA's government-contractor exemption applies to anyone "a state agency or local unit of government engages to furnish materials or provide services concerning biometric identifiers").

4.      Accordingly, Clearview seeks a declaratory judgment that its current operations are exempt from BIPA.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a) because this proceeding is a civil action where the matter in controversy exceeds the value of

---

[32] This counterclaim is being asserted without waiver of Clearview's personal jurisdiction defense.

$75,000, exclusive of interest and costs, and Clearview and the Counterclaim-Defendants are, respectively, citizens of different states.

6. This Court has jurisdiction over the Counterclaim-Defendants because they purport to reside in the State of Illinois and they have submitted to jurisdiction herein.

7. Venue is proper under 18 U.S.C § 1391(b)-(c) because each of the Counterclaim-Defendants purports to be a resident of the state of Illinois, residing in the Northern District of Illinois.

## PARTIES

8. Clearview is a Delaware corporation with its headquarters and principal place of business in New York.

9. On information and belief, Plaintiff David Mutnick is a resident of Illinois, residing in the Northern District of Illinois.

10. On information and belief, Plaintiff Steven Vance is a resident of Illinois, residing in the Northern District of Illinois.

11. On information and belief, Plaintiff Mario Calderon is a resident of Illinois, residing in the Northern District of Illinois.

12. ~~On information and belief, Plaintiff Jennifer Rocio is a resident of Illinois, residing in the Northern District of Illinois.~~

~~13~~12. On information and belief, Plaintiff Anthony Hall is a resident of Illinois, residing in the Northern District of Illinois.

~~14~~13. On information and belief, Plaintiff Isela Carmean is a resident of Illinois, residing in the Northern District of Illinois.

**FACTUAL ALLEGATIONS**

~~15~~14. Clearview collects publicly-available images on the public Internet and organizes them into a database that can be searched remotely by ~~licensed users/customers~~ users of the Clearview app.

~~16~~15. To collect these images, Clearview automatically searches for and downloads the images and associated webpage URLs from the Internet and stores them in a database. Anyone with access to the public Internet can obtain the images Clearview downloads into its database.

~~17~~16. Clearview's customers are government ~~agencies~~entities, contractors, and subcontractors none of which are located in Illinois. Clearview has been instrumental in helping these government ~~agencies~~ entities, contractors, and subcontractors solve heinous crimes, including child rape and child sexual exploitation. *See, e.g.*, U.S. Gov't Accountability Office, GAO-21-526, Facial Recognition Technology: Current and Planned Uses by Federal Agencies (Aug. 2021), at 61 ("DOJ uses Clearview AI to identify unknown individuals of interest in state, federal, and international cases such as child exploitation. DOJ may submit photos (e.g., surveillance photos) or receive requests to match photos against the Clearview AI database."); *see also* Dkt. No. 43-6 ¶ 19 (affidavit from Kevin Metcalf, the Chief Executive Officer of the National Child Protection Task Force, testifying that "[w]ithout Clearview's facial recognition technology, hundreds of children would continue to be raped, and the recordings shared on the Internet for the world to see"); Dkt. No. 43-7 ¶ 7 (affidavit from James Webb, a Sergeant at the East Metro Area Crime Center in Oxford, Alabama, testifying that: "Put simply, the harm from sexual crimes committed against children can never be taken away. Clearview prevents these crimes from happening."); Dkt. No. 43-8 ¶¶ 7-12 (affidavit from Michael Williams, a retired Group Supervisor/Supervisory Special Agent at Homeland Security Investigations, detailing Clearview's

role in rescuing a prepubescent child from "brutal sexual abuse" at the hand of her father, when all other investigative tools failed).

~~18~~17. The Federal Bureau of Investigation has stated that by using Clearview's technology, its Victim Identification Unit, which locates and rescues children from sexual abuse, "went from locating approximately 50 children per year, to 150." Bryan Carney (@bpcarney), Twitter (Apr. 16, 2020, 3:48 AM), https://mobile.twitter.com/bpcarney/status/1250692551176261637.

~~19~~18. After the January 2021 riot at the U.S. Capitol, law-enforcement agencies across the country used Clearview's app to identify and investigate several of the suspected perpetrators. *See The Facial-Recognition App Clearview Sees a Spike in Use After Capitol Attack*, The New York Times (Jan. 9, 2021), https://www.nytimes.com/2021/01/09/technology/facial-recognition-clearview-capitol.html; *Local Police Force Uses Facial Recognition to Identify Capitol Riot Suspects*, Wall Street Journal (Jan. 8, 2021), https://www.wsj.com/articles/local-police-force-uses-facial-recognition-to-identify-capitol-riot-suspects-11610164393.

~~20~~19. Among the other agencies that reported using Clearview AI are the Department of Health and Human Services, the Department of Homeland Security, and the Department of Defense. *See* U.S. Gov't Accountability Office, GAO-21-526, Facial Recognition Technology: Current and Planned Uses by Federal Agencies (Aug. 2021), at 20 ("HHS's Office of the Inspector General reported it began a pilot of Clearview AI in September 2020 to assist with identifying subjects of a criminal investigation. Similarly, DHS reported the U.S. Secret Service and U.S. Immigration and Customs Enforcement piloted Clearview AI in fiscal year 2020, to identify individuals in federal criminal investigations, and to identify perpetrators and victims in domestic and international child exploitation cases, respectively. DHS also reported that, since June 2019,

13

U.S. Customs and Border Protection agents had direct, albeit temporary, access to a Clearview AI through their participation with the New York State Intelligence Center. These agents used Clearview AI to identify criminals, as well as subjects who have been arrested previously, were deported, and attempted to re-enter the United States at the border."); *id.* at 28 ("DOD's Air Force Office of Special Investigations reported it began an operational pilot using Clearview AI in June 2020, which supports the agency's counterterrorism, counterintelligence, and criminal investigations.").

~~21~~20. Clearview's facial recognition search engine is also currently being used by the Ukrainian government to defend against Russia's invasion of Ukraine and save civilian lives. *See Ukraine Has Started Using Clearview AI's Facial Recognition During War*, Reuters (Mar. 13, 2022), https://www.reuters.com/technology/exclusive-ukraine-has-started-using-clearview-ais-facial-recognition-during-war-2022-03-13/.

~~22~~21. Clearview's Servicing Agreement states that Clearview collects photos from the public Internet, uses an algorithm on certain of the photos to generate facial vectors, and returns search results to ~~licensed users/customers~~ users of its product exclusively as an agent of government ~~agencies~~entities, contractors, and subcontractors.

~~23~~22. Every customer that uses the Clearview app agrees to the following term of the Servicing Agreement:

> "By entering into this agreement with Clearview AI, you expressly authorize Clearview AI to act as an agent on your behalf for the purpose of (i) collecting and compiling publicly available images from the Internet and (ii) producing facial vectors from those images for the purpose of providing the Service to you."

~~24~~23. Accordingly, Clearview's customers have appointed Clearview as their agent for purposes of collecting publicly-available images from the public Internet and producing facial vectors from those images.

14

~~25~~24. All of the facial vectors that are currently used by the Clearview app were created at a time when Clearview acted solely as an agent of governmental entities~~ ~~, contractors, and subcontractors for the purpose of (i) collecting and compiling publicly available images from the Internet and (ii) producing facial vectors from those images for the purpose of providing the app to governmental entities, contractors, and subcontractors.

~~26~~25. Clearview's ~~licensed users/customers~~ users can use Clearview's product only for legitimate law-enforcement and investigative purposes. Each ~~licensed user/customer~~ users that uses the Clearview app must be authorized to do so by a governmental entity, contractor, or subcontractor.

~~27~~26. A customer may search Clearview's app only if the ~~licensed user/customer~~ user enters a case number and crime type, which can be reviewed by that organization's administrative users to ensure that the app is being used in accordance with Clearview's Servicing Agreement.

~~28~~27. Plaintiffs/Counterclaim-Defendants brought the instant lawsuit against Clearview alleging that Clearview's operations, including its contracts with governmental entities, contractors, and subcontractors violate BIPA.

~~29~~28. An actual and legal controversy has arisen and now exists between Clearview and the Counterclaim-Defendants concerning their respective rights and duties.

**CLAIM FOR RELIEF**

**FIRST CAUSE OF ACTION—DECLARATORY JUDGMENT**
**Pursuant to 28 U.S.C. § 2201**

~~30~~29. Clearview incorporates and realleges each of its allegations set forth in Paragraphs 1 through 29 as if fully set forth herein.

~~31~~30. Counterclaim-Defendants have brought a lawsuit against Counterclaimant for purported BIPA violations.

15

3231. BIPA provides an exemption for "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25.

3332. Counterclaimant operates as a contractor of governmental entities, contractors, and subcontractors.

3433. An actual, justiciable controversy exists between the parties concerning whether Clearview is exempt from BIPA as a result of its status as a government contractor.

3534. The claim is ripe for judicial decision. A judicial declaration is necessary and appropriate at this time under the circumstances so that Clearview may ascertain its rights and duties.

3635. As a result of this controversy, Clearview seeks a declaration from the Court that Clearview is exempt from BIPA because it is a government contractor.

WHEREFORE, Defendant-Counterclaimant Clearview respectfully requests that the Court declare that Clearview is exempt from BIPA because Clearview is a government contractor, and grant any and all other relief as this Court may deem just and proper.

Dated:  March 14September 12, 2022   Respectfully submitted,

By:   */s/ Precious S. Jacobs-Perry*
Precious S. Jacobs-Perry

Howard S. Suskin
JENNER & BLOCK LLP (05003)
353 North Clark Street Chicago, Illinois
60654 Phone: (312) 222-9350
pjacobs-perry@jenner.com
hsuskin@jenner.com

16