IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Case No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

# PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS
# AGAINST THE CLEARVIEW DEFENDANTS

*"The Court cautions the Clearview Defendants that, if they provide a verification that is untrue, they do so at their own peril."* Aug. 18, 2022 Court Order at 6.

\* \* \*

Pursuant to Federal Rule of Civil Procedure 37(b)(2) and the Court's inherent authority to supervise the discovery process, Plaintiffs, by interim lead class counsel, respectfully request that this Court enter an order sanctioning Defendants Clearview AI, Inc.; Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics, LLC; and Thomas Mulcaire (collectively, the "Clearview Defendants"), along with their counsel, for their failure to obey the Court's discovery orders. In support of this motion, Plaintiffs state as follows:

## INTRODUCTION

Plaintiffs file this motion for discovery sanctions as a result of the repeated violations of the Clearview Defendants and their counsel of this Court's discovery orders. In the Court's August 18, 2022 Discovery Order (the "August 2022 Order"), the Court directed the Clearview Defendants to verify the completeness of document productions regarding, *inter alia*, Plaintiffs and contracts. Dkt. 425 at 5-7, 11. With respect to the production of documents regarding Plaintiffs, the Court warned that if the Clearview Defendants "provide a verification that is untrue, they do so at their own peril." Dkt. 425 at 6.[1]

The Clearview Defendants did not heed the Court's warning. Instead, on September 1, 2022, the Clearview Defendants served a verification that falsely represented that various document productions were complete when, indisputably, they were not. Indeed, as recently as October 7, 2022, the Clearview Defendants produced additional documents regarding Plaintiffs and additional contract documents.

---

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers.

Beyond the incomplete nature of the verified productions, the Clearview Defendants have also failed to comply with other aspects of the August 2022 Order. For instance, despite the Court finding that the Clearview Defendants' "extraterritoriality defense puts at issue their scraping of internet websites in the relevant states," the Clearview Defendants have not searched their database containing the URLs of scraped websites for relevant documents. They refuse to do so.

Given the number of times the Clearview Defendants and their counsel have misrepresented that the Clearview Defendants have complied with their discovery obligations, it is clear that sanctions are appropriate. While the Court will ultimately fashion the proper sanctions, Plaintiffs respectfully submit that the following sanctions are appropriate:

- An Order precluding the Clearview Defendants from pursuing defenses based on § 25(e) of Illinois' Biometric Information Privacy Act (the "BIPA § 25(e) defense"), 740 Ill. Comp. Stat. 14/25(e), or extraterritoriality;

- An Order permitting Plaintiffs' experts and/or a special master to conduct text and image searches of the Clearview Defendants' databases to ensure that all relevant documents compelled to be produced by the Court have, in fact, been produced; and

- An Order requiring the Clearview Defendants and/or their counsel to pay Plaintiffs' reasonable expenses, including attorneys' fees, incurred in connection with Plaintiffs' extensive efforts to try to gain the Clearview Defendants' compliance with their discovery obligations and to identify the Clearview Defendants' failures to produce documents compelled by the Court.

## FACTUAL BACKGROUND

*Documents Regarding Plaintiffs*

On December 20, 2021, the Court ordered the Clearview Defendants to "produce all photographs and other data in their possession concerning the named Plaintiffs within 60 days of this Order" (the "December 2021 Order"). Dkt. 237 at 6. As discussed in Plaintiffs' Motion to Modify the Relevant Time Period and to Compel the Clearview Defendants to Respond to Plaintiffs' Written Discovery (the "Second Motion to Compel"), the Clearview Defendants failed

2

to comply with the December 2021 Order, despite representations to the contrary. *See* Dkt. 383 at 6-7; *see also* Dkt. 410 at 3.

In response to the Second Motion to Compel, the Clearview Defendants represented to the Court that they had completed their production of documents regarding Plaintiffs. *See* Dkt. 402 at 6 ("the Clearview Defendants have completed their production of documents concerning Plaintiffs"); *id.* at 8 (the "Clearview Defendants have produced all documents relating to Plaintiffs that they were able to identify based on a reasonable search . . . ."). While the Court accepted the Clearview Defendants' representations (which are now known to have been untrue), it also ordered the Clearview Defendants to "provide Plaintiffs with a verification that their production of documents concerning the named Plaintiffs is fully completed." Dkt. 425 at 5. In requiring the verification, the Court noted that the Clearview Defendants had conceded that "there have been lapses in their productions on two occasions" and acknowledged Plaintiffs concerns that the Clearview Defendants had not, in fact, produced all documents regarding Plaintiffs. *Id.* at 5-6. The Court concluded, however, that:

> the verification the Court has ordered the Clearview Defendants to provide should assuage Plaintiffs' fears in that respect. In providing the verification, the Clearview Defendants will be swearing that they have produced all data for each photo. *The Court cautions the Clearview Defendants that, if they provide a verification that is untrue, they do so at their own peril.*

*Id.* at 6 (emphasis added).

As discussed in more detail below, the Clearview Defendants ultimately provided a verification (the "Verification") that was untrue. After verifying the completeness of their production of documents concerning Plaintiffs, upon inquiry by Plaintiffs, the Clearview Defendants produced further documents regarding Plaintiffs. *See* Exhibit 1 (Drury Decl.) ¶ 2.

3

Further, as discussed in more detail below, it still does not appear that the Clearview Defendants have produced all documents regarding Plaintiffs.

*Contract Documents*

In the August 2022 Order, the Court found that the "Clearview Defendants are obligated to produce their contracts with the governmental entities, the terms of service for Clearview's work for governmental entities, and documents showing the termination of Clearview's contracts with non-governmental entities." Dkt. 425 at 6-7. The Court ordered the Clearview Defendants to produce "any outstanding contract documents within 14 days of this Order" and further ordered the Clearview Defendants to "provide a verification that the production of contract documents is complete." *Id.* at 7.

As with the documents regarding Plaintiffs, and as discussed in more detail below, the Clearview Defendants failed to comply with the August 2022 Order. After issuing the Verification and attesting that the production of contract documents was complete, the Clearview Defendants, conceded that the production, in fact, was incomplete. Exhibit 2 (9/30/2022 Lichtman letter) at 4. On October 7, 2022, the Clearview Defendants produced additional contract documents. Ex. 1 ¶ 3.

*Scraping of Internet Websites*

In the August 2022 Order, the Court agreed with Plaintiffs that "the Clearview Defendants' extraterritoriality defense puts at issue their scraping of internet websites in relevant states . . . ." Dkt. 425 at 9. The Court then ordered the Clearview Defendants to "run ESI searches using the relevant state names as search terms and produce documents responsive to Plaintiffs' Request for Production No. 6." *Id.* at 9-10.

Notwithstanding the August 2022 Order, the Clearview Defendants have not performed text searches of their database of URLs to identify and produce documents related to their scraping of internet websites in Illinois. *See* Exhibit 3 (email chain) at 2. They refuse to do so. *See id.*

***The Clearview Defendants' September 1, 2022 Document Production***

On September 1, 2022 – after the Clearview Defendants had represented to the Court in their response to Plaintiffs' Second Motion to Compel that their production of documents regarding Plaintiffs was complete – the Clearview Defendants produced approximately four dozen separate documents regarding Plaintiffs, including native image files, results of probe image searches and spreadsheets containing the biometric facial vectors the Clearview Defendants obtained from various Plaintiffs' images. Ex. 1 ¶ 3.

***The Verification***

On September 1, 2022, the Clearview Defendants also produced the Verification of Thomas Mulcaire (previously defined as the "Verification"). Rather than simply verifying that the document productions ordered by the Court were complete, the Verification spans eight pages. Exhibit 4 (Verification). Those eight pages reveal material defects in the Clearview Defendants' search for the ordered documents.

For instance, with respect to documents regarding Plaintiffs, the Verification reveals that probe image searches cannot be relied upon to comprehensively search for documents related to Plaintiffs. *See id.* ¶ 12. According to the Verification, Mulcaire initially used a single probe image of each Plaintiff to identify information the Clearview Defendants possessed regarding Plaintiffs. *Id.* To find more information regarding Plaintiffs, Mulcaire then used the results of the initial searches as probe images to conduct additional searches. *Id.* Those additional searches resulted in Mulcaire finding new information regarding Plaintiffs, confirming that a probe image search does

not necessarily return all information the Clearview Defendants possess regarding the person in the probe image. *Id.*

Notably, the Clearview Defendants did not perform text searches on their databases to identify information regarding Plaintiffs. Those searches can be performed, and Plaintiffs have provided the Clearview Defendants with proposed code to run the searches. *See* Exhibit 5 (email chain) at 2. While the Clearview Defendants claimed that performing the searches would be burdensome – a proposition Plaintiffs disagreed with – in August 2022, Plaintiffs informed the Clearview Defendants that Plaintiffs would consider taking on the burden of performing the searches. *See* Exhibit 6 (email chain) at 2. Plaintiffs are willing to conduct the searches and, indeed, have suggested that an appropriate sanction is to permit Plaintiffs and/or a special master to conduct the searches at issue at the Clearview Defendants' expense.

Performing the text searches is not an academic exercise. Results of probe image searches produced by the Clearview Defendants reveal that the Clearview Defendants possess data containing Plaintiffs' names and other unique identifiers – such as user IDs and account profile names. *See* Exhibit 7 (Clearview search results showing Plaintiff Vance's name); Exhibit 8 (screenshot showing Plaintiff Vance's Flickr ID – ▬▬▬▬); Exhibit 9 (Clearview search results containing Plaintiff Vance's Flickr ID); Exhibit 10 (Clearview search results showing Plaintiff Vestrand's name); Exhibit 11 (Clearview search results showing "harebraineddesign," Plaintiff Hall's Instagram profile name); Exhibit 12 (Clearview search results showing Plaintiff Mutnick's name); Exhibit 13 (Clearview search results showing Plaintiff Hurvitz's name); Exhibit 14 (Clearview search results showing Plaintiff Zelonis Roberson's name); Exhibit 15 (Clearview search results showing Plaintiff Calderon's name); Exhibit 16 (Clearview search results showing a portion of Plaintiff Carmean's hyphenated name – "Guzman"). Given the Clearview Defendants'

6

tacit concession that a probe image search will not necessarily return all information the Clearview Defendants possess regarding the person in the probe image, text searches are necessary to ensure all such information has been located and produced.

The Verification also revealed that the Clearview Defendants failed to search for and produce various ordered contract documents. A review of the Verification readily reveals that, while the Clearview Defendants searched for contracts, they did not search for documents showing the termination of contracts, as ordered by the Court. *See* Exhibit 4 ¶¶ 17-23. As discussed below, upon inquiry by Plaintiffs, the Clearview Defendants admitted their failure to search for and produce the contract termination documents, among other contract documents they failed to produce.

***Plaintiffs' Challenge to the Verification and the Completeness of the Clearview Defendants' Document Productions***

On September 15, 2022, Plaintiffs challenged the propriety of the Verification and questioned whether the Clearview Defendants' document productions were complete. *See* Exhibit 17 (9/15/2022 Drury letter). In the letter, Plaintiffs raised the various issues with the Verification described above. *See id.*

The Clearview Defendants waited fifteen days to respond to Plaintiffs' letter. *See* Ex. 2. In their September 30, 2022 response, the Clearview Defendants incorrectly asserted that Plaintiffs could not identify any information regarding Plaintiffs that the Clearview Defendants supposedly failed to produce. *Id.* at 2. Further, the Clearview Defendants expressly admitted that: (a) they failed to produce documents showing the termination of the Clearview Defendants' contracts with non-governmental entities; and (b) they had found "a small number of additional contract documents" they failed to produce. *Id.* at 4.

On October 4, 2022, Plaintiffs' counsel again wrote to the Clearview Defendants regarding the Verification and their incomplete document production. Exhibit 18 (10/4/2022 Drury letter). Among other things, the letter rebutted the claim that Plaintiffs could not identify any documents regarding Plaintiffs that the Clearview Defendants failed to produce. *Id.* at 3. In the letter, Plaintiffs identified specific documents regarding Plaintiffs that the Clearview Defendants seemingly had failed to produce. *Id.* at 3.

On October 6, 2022, Plaintiffs' counsel met and conferred with the Clearview Defendants' counsel. During the meeting, the Clearview Defendants confirmed their failure to produce all contract documents and stated they would produce additional documents the following week. Exhibit 19 (10/8/2022 Drury email) at 2. The Clearview Defendants further stated that they were inquiring into whether they had failed to produce all documents regarding Plaintiffs. *See id.* Plaintiffs made clear that they should not be in the position of having to disprove the Clearview Defendants' representations of completeness. *Id.* Indeed, Plaintiffs have only been able to identify that certain documents are missing when they can cross reference other documents. Plaintiffs have no way of knowing whether documents for which there is no cross reference have been withheld.

On October 7, 2022, the Clearview Defendants made a supplemental document production. *See* Ex. 1 ¶ 3. The supplemental production contained additional documents regarding Plaintiffs (including native images and search results), as well as previously withheld contract documents. *Id.*

On October 10, 2022, Plaintiffs' counsel sent an email to the Clearview Defendants' counsel regarding the Clearview Defendants' failure to search their databases for documents regarding the scraping of internet websites in Illinois. Exhibit 3 (email chain) at 2-3. Therein, Plaintiffs' counsel questioned whether the Clearview Defendants had run text searches on their

8

database of URLs. *Id.* at On October 12, 2022, the Clearview Defendants confirmed that they had not run the text searches. *Id.* at 2.

On October 12, 2022, the Clearview Defendants also sent a letter to Plaintiffs in which they represented that various document productions were complete, while conceding that they previously had failed to produce all documents regarding Plaintiffs. *See* Exhibit 20 (10/12/2022 Lichtman letter). According to the letter, "after reviewing Plaintiffs' October 4, 2022 letter, [the Clearview Defendants] investigated and discovered that a limited amount of information [regarding Plaintiffs] was inadvertently omitted from our September 1, 2022 production." *See id.* at 3.

### *Local Rule 37.2*

As set forth above, Plaintiffs have made numerous efforts to bring the Clearview Defendants into compliance with their discovery obligations, including filing motions to compel, sending written correspondence and meeting and conferring with the Clearview Defendants' counsel on numerous occasions, including, most recently, on October 8, 2022.

## ARGUMENT

**I.  Legal Standards.**

Fed. R. Civ. P. 37(b)(2) allows for discovery sanctions where a party "fails to obey an order to provide . . . discovery." Fed. R. Civ. P. 37(b)(2). District courts have wide latitude in determining what sanctions to impose. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). The Rule itself provides that a court may impose sanctions "prohibiting the disobedient party from supporting . . . designated . . . defenses, or from introducing designated matters in evidence," among other things. Fed. R. Civ. P. 37(b)(2)(A)(ii). Further, "the court must order the disobedient party, the attorney advising the party, or both, to pay the reasonable expenses,

9

including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A court may impose sanctions where a party fails to meet a discovery deadline by a single day. *See Wine and Canvas Develop. LLC v. Muylle*, 868 F.3d 534, 539 (7th Cir. 2017). Further, a court may impose sanctions even absent willfulness, bad faith or fault, unless the imposed sanction is dismissal or default. e*360 Insight*, 658 F.3d at 642. Negligence suffices for the imposition of sanctions. *Id.* at 642-43.

In determining whether to award sanctions, a court can take into account the recalcitrant party's prior dilatory conduct, including previously missed deadlines and motions to compel filed against the party. *Muylle*, 868 F.3d at 539. "In other words, [the court] weigh[s] not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight*, 658 F.3d at 643. Thus, regardless of whether the straw that finally breaks the camel's back is merely a negligent mistake, a court may conclude that the latest misdeed "is just another example of a party's demonstrated inability to take his discovery obligations seriously." *Id.*

**II.     The Clearview Defendants' Repeated Failures to Comply with the Court's Discovery Orders Require Sanctions.**

In this case, the Clearview Defendants have broken the camel's back. Plaintiffs filed their first motion to compel in November 2021, which the Court granted, in large part, on December 20, 2021. Dkt. 213, 237. At that time, the Court directed the Clearview Defendants to produce "all photographs and other data in their possession concerning the named Plaintiffs within 60 days of this Order." Dkt. 237 at 6.

Nevertheless, as recently as October 7, 2022, the Clearview Defendants continued to produce documents concerning Plaintiffs. The Clearview Defendants' conduct is particularly

egregious given that: (a) between December 20, 2021 and October 7, 2022, the Clearview Defendants repeatedly misrepresented to Plaintiffs that they had complied with the Court's order and completed the required production; (b) in defending against Plaintiffs' Second Motion to Compel, the Clearview Defendants misrepresented to the Court that they had completed their production of documents regarding Plaintiffs; (c) the Clearview Defendants' falsely verified on September 1, 2022 the completeness of the ordered production; and (d) in the Court's August 2022 Order, the Court explicitly warned the Clearview Defendants that if they falsely verified the completeness of their production, they would be doing so at their own peril. Combined, the Clearview Defendants' conduct demonstrates their inability and unwillingness to take their discovery obligations seriously. *See e360 Insight*, 658 F.3d at 643.

Notably, the Clearview Defendants continue to be in violation of the Court's December 2021 and August 2022 Orders requiring the production of all documents in their possession regarding Plaintiffs. To date, the Clearview Defendants have refused to run text searches on their databases to locate documents concerning Plaintiffs. As discussed above, without running those searches, the Clearview Defendants cannot be certain they have produced all required documents.

While the Clearview Defendants' misconduct with respect to documents concerning Plaintiffs is enough to justify the imposition of sanctions, the Clearview Defendants' pattern of discovery violations is more widespread. Just as the Clearview Defendants falsely verified that they had produced all documents concerning Plaintiffs, they also falsely verified that they had completed their production of contract documents. Only after Plaintiffs questioned the veracity of the Verification did the Clearview Defendants admit that they had not actually produced all such documents. Further, notwithstanding the Court's finding that the Clearview Defendants' "extraterritoriality defense puts at issue their scraping of internet websites in the relevant states"

11

(Dkt. 425 at 9), the Clearview Defendants have not run text searches on their database of URLs to identify and produce documents regarding Illinois websites they scraped.

As Plaintiffs have maintained throughout, they should not be in the position of having to disprove the Clearview Defendants' representations that they have completed their document productions or of having to police the Clearview Defendants' constant violations of this Court's discovery orders. The constant discovery violations have forced Plaintiffs to direct significant time and effort towards trying to gain the Clearview Defendants' compliance with the discovery rules. Notwithstanding Plaintiffs' constant policing, it has become clear that, without more, merely calling attention to the Clearview Defendants' discovery violations and gaining a Court order requiring compliance is not enough to deter the Clearview Defendants or to otherwise convert them into rule-following litigants. Neither the Court nor Plaintiffs can take the Clearview Defendants at their word when they state they adhered to a Court order or have complied with their discovery obligations. The Clearview Defendants have broken the camel's back, and sanctions are required.

### III. Barring Certain Defenses, Requiring Text Searches and Awarding Expenses Are Appropriate Sanctions.

While it is up to the Court to fashion the appropriate sanctions, Plaintiffs note that, under the circumstances, the following sanctions are justified: (a) barring the Clearview Defendants from pursuing their BIPA § 25(e) and extraterritoriality defenses; (b) requiring text and image searches of the Clearview Defendants' databases to be performed by Plaintiffs' experts and/or a special master at the Clearview Defendants' expense; and (c) awarding Plaintiffs' counsel their reasonable expenses, including attorney's fees.

**Barring Defenses:** While the Clearview Defendants seek to pursue defenses BIPA § 25(e) and extraterritoriality defenses, their discovery violations have interfered with Plaintiffs' ability to

rebut the defenses. A key aspect of the BIPA § 25(e) defense is the Clearview Defendants' contracts with private and non-private entities and the timing of those contracts. Yet, when the Court ordered the Clearview Defendants to produce all relevant contracts and documents showing the termination of relevant contracts, the Clearview Defendants failed to do so. Worse, they falsely verified that they had fully complied with the Court's directive.

While the Clearview Defendants now claim they have fully complied with the Court's Order, the Clearview Defendants' history of discovery violations and misrepresentations in this case makes clear that the Clearview Defendants cannot be taken at their word. In short, the Clearview Defendants have manufactured a situation where the Court and Plaintiffs cannot be sure that the Clearview Defendants have produced all documents relevant to their BIPA § 25(e) defense and to Plaintiffs' rebuttal of that defense. In this situation, the just result is to preclude the Clearview Defendants from pursuing the BIPA § 25(e) defense. Given that the Court warned the Clearview Defendants of the peril of falsely verifying the completeness of their productions, they cannot cry foul or otherwise claim unfairness. Indeed, the Clearview Defendants – not Plaintiffs – should suffer the consequences of the Clearview Defendants' wrongdoing.

The Court should reach the same conclusion with respect to the Clearview Defendants' extraterritoriality defense. The Clearview Defendants chose not to comply with the Court's August 2022 Order directing them to produce all documents related to their scraping of internet websites in Illinois. That choice necessarily impedes Plaintiffs' ability to rebut the extraterritoriality defense. But, it is the Clearview Defendants – not Plaintiffs – who should bear the brunt of the Clearview Defendants' misguided choice. To prevent Plaintiffs from being prejudiced by the Clearview Defendants' recalcitrance, the Court should bar the Clearview Defendants from pursuing their extraterritoriality defense.

**Text Searches:** As discussed throughout, the Clearview Defendants have failed to run text searches on their repositories of data. As a result, the Clearview Defendants have failed to search for data regarding Plaintiffs in any manner other than using probe images. Further, the Clearview Defendants have failed to search their database of URLs to identify websites in Illinois from which they scraped photos. The Clearview Defendants could have performed the searches but chose not to. As Plaintiffs have shown, the Clearview Defendants definitively possess searchable text data regarding each Plaintiff. Notably, Plaintiffs have provided simple code for running the searches.

Given the Clearview Defendants' steadfast refusal to perform the relevant searches and given the fact that they cannot be trusted to perform the searches on their own, the Court should permit Plaintiffs' experts and/or a special master to conduct text and image searches at the Clearview Defendants' expense. In this way, Plaintiffs can finally be assured that they have obtained all information the Clearview Defendants possess regarding Plaintiffs, as well as information related to websites the Clearview Defendants scraped in Illinois. Of course, should the Court bar the Clearview Defendants' extraterritoriality defense, there would be no need to search the Clearview Defendants' databases for information related to Illinois websites in connection with that defense.

**Expenses:** Fed. R. Civ. P. 37(b)(2)(C) provides that a court "must" require the disobedient party and/or the party's counsel to pay the reasonable expenses, including attorney's fees, incurred as a result of a party's discovery violations. Fed. R. Civ. P. 37(b)(2)(C). Here, Plaintiffs have been incurring expenses related to the Clearview Defendants' failure to honor their discovery obligations since before Plaintiffs filed their first motion to compel. Moreover, beyond filing their two motions to compel, Plaintiffs have also spent a significant amount of time: (a) reviewing and analyzing the Clearview Defendants' document productions to determine whether they complied

with the Court's discovery Orders; (b) drafting discovery correspondence; (c) meeting and conferring with the Clearview Defendants' counsel; and, most recently, (d) preparing this motion.

With respect to Plaintiffs' review of the Clearview Defendants' documents productions, the determination of whether the Clearview Defendants had failed to produce all documents regarding Plaintiffs required an exhaustive analysis of tedious data. Absent such a diligent review, the Clearview Defendants likely would have gotten away with their false representations that they had produced all documents concerning Plaintiffs.

Finally, should the Court award Plaintiffs their reasonable expenses, including attorney's fees, at the Court's request, Plaintiffs' counsel can provide the Court with their time records and billing rates for an *in camera* and *ex parte* review.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court impose discovery sanctions on the Clearview Defendants and: (a) preclude the Clearview Defendants from pursuing their BIPA § 25(e) and extraterritoriality defenses; (b) permit Plaintiffs' experts and/or a special master to conduct text and image searches on the Clearview Defendants' databases at the Clearview Defendants' expense; and (c) award Plaintiffs' counsel their reasonable expenses, including attorney's fees.

Dated: October 13, 2022

                                          Respectfully submitted,

By:   /s/ Scott R. Drury
        SCOTT R. DRURY
        *Interim Lead Class Counsel for Plaintiffs*

Scott R. Drury
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
312.358.8225
scott@drurylegal.com

Scott A. Bursor
Joshua D. Arisohn
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
646.837.7150
scott@bursor.com
jarisohn@bursor.com

Frank S. Hedin (to be admitted *pro hac vice*)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
415.766.3534
fhedin@hedinhall.com

Michael Drew
**NEIGHBORHOOD LEGAL LLC**
20 N. Clark Street #3300
Chicago, Illinois 60602
312.967.7220
mwd@neighborhood-legal.com

Michael Wood
Celetha Chatman
**COMMUNITY LAWYERS LLC**
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
312.757.1880
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

Steven T. Webster
Aaron S. Book
**WEBSTER BOOK LLP**
300 N. Washington, Ste. 404
Alexandria, Virginia 22314
888.987.9991
swebster@websterbook.com

*Other Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I, Scott R. Drury, an attorney, hereby certify that, on October 13, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                /s/ Scott R. Drury
                Counsel for Plaintiffs