IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

# MOTION FOR AN ORDER CLARIFYING THAT THE COURT INTENDED TO APPOINT LOEVY & LOEVY AS LEAD CLASS COUNSEL, AS OPPOSED TO THE INDIVIDUAL LAWYERS WHO AT THE TIME WORKED AT THE FIRM

Jonathan Loevy<br>
Michael Kanovitz<br>
LOEVY & LOEVY<br>
311 N. Aberdeen, 3rd FL<br>
Chicago, IL 60607<br>
(312) 243-5900

## Introduction

The Court's original order appointing interim lead class counsel appointed Mike Kanovitz and Scott Drury of the firm Loevy & Loevy ("L&L"). R.90. The motion that had served as the basis for that order demonstrated the Loevy firm's extensive experience and expertise, and its impressive track record in class action litigation and trials. On that basis, the Court made the appointment.

L&L proceeded to litigate the case diligently and effectively for nearly two years, vindicating the Court's trust in our firm as lead class counsel. Then, with discovery winding down and settlement negotiations picking up, Mr. Drury resigned from the firm and sent notices directing L&L to immediately withdraw from the case. This was presumably so that any resulting attorneys' fee would come to his new firm rather than to L&L. When L&L lawyers urged Mr. Drury to allow them to finish their trial that was ongoing before Judge Kennelly so they could bring the matter to this Court's attention in an orderly way, Mr. Drury responded that if L&L lawyers did not all withdraw within 48 hours, he would accuse them and proceed against them for disobeying a client directive.

The conclusion that Mr. Drury is putting his own economic self-interest above that of the class is unavoidable. Put simply, there is no universe where the class is better served by firing L&L. In addition to all of our other qualifications on which the Court relied in appointing us, our firm just won a $228 million judgment in the first BIPA case to go to trial. And some of the same defense law firms from Clearview represented witnesses in that trial, such that our continued role as lead class counsel can only benefit the class. Mr. Drury's ill-conceived power-grab should be rejected.

## Summary of Relief Sought

By this motion, L&L seeks an order clarifying that the Court intended to appoint the L&L firm as lead class counsel, not the individual lawyers who at the time worked at the firm. *E.g., Hodges v. Bon Secours Health Sys., Inc.,* CV RDB-16-1079, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016) (appointing a law firm as class counsel, not individual lawyers).

To be clear, in seeking a declaration that L&L remains lead class counsel, L&L is not asking that Mr. Drury be forced off the case altogether. Mr. Drury is a skilled attorney, who has been very involved in the litigation to date. If he is willing, L&L hopes that he will continue to play the same

role in the same relationship that has essentially characterized the staffing of the case for the past two years: specifically, as an associate and employee of L&L, Mr. Drury took direction from and was under supervision of the senior partners at L&L. While serving in that capacity, there is no dispute that Mr. Drury was very involved in this litigation, and hopefully he will decide to remain so. The class' best interests, in other words, would be best served if the Court entered an order affirming that L&L remains lead class counsel, and continues to be responsible for supervising and directing.

## Discussion

As the Court is aware, this case involves allegations that the Clearview Defendants were sweeping mug shot photos from the internet into a database that ran afoul of Illinois' Biometric Information Privacy Act ("BIPA"). The relevant background for the present dispute is as follows.

### A. L&L Files This Lawsuit

The case was conceived by an associate in L&L's privacy practice area, Andrew Miller, who had been investigating the issue since at least November 2019 based on documents obtained under FOIA. Senior L&L Partner Mr. Kanovitz was also instrumental in creating the complaint. He was the one who included the novel and creative civil rights claims. *See* Exhibit B.

In January 2020, the *New York Times* published a front-page article describing Clearview's actions. Because L&L attorneys had been working on the case for months, L&L was in position to promptly file a lawsuit, the first firm to do so. After the *New York Times* broke the story and L&L filed its lawsuit, a number of other class action law firms subsequently filed similar cases in the Northern District and other jurisdictions around the country. Those cases were consolidated before this Court by order of the Judicial Panel on Multidistrict Litigation.

### B. L&L's Motion To Be Appointed Class Counsel

Multiple class action law firms sought the honor of being appointed lead class counsel. L&L's motion made a very strong case that our firm was uniquely positioned to lead in this important case. The firm's resume, Exhibit 1 to that motion (R.88-1), is worth reviewing. *See* Exhibit A. In nine pages, the firm justifies why its experience and track record justify the appointment. *Id*.

In sum, with more than 40 extremely-qualified lawyers fighting for civil rights and consumer protection, the firm has extensive experience with class actions, BIPA claims, and related privacy issues. L&L has massive class action verdicts and settlements, totally more than $200mm (before *Rogers* doubled that amount). The representative case results on pages 2-9 speaks for themselves. The firm's resume also demonstrates that its trial experience is of the highest caliber. We have won scores of jury trials and secured hundreds of millions in recoveries for our clients. This extraordinary record of success in difficult cases will help the Clearview class achieve the best possible result. *Id.*

Notably, there is not a single reference to Mr. Drury in the entire supporting exhibit, nor to a single case he had ever worked on. *Id.*

On August 14, 2020, the Court granted L&L's motion. R.90. Per the motion's request, attorneys Mike Kanovitz and Scott Drury of the firm Loevy & Loevy were appointed interim lead class counsel pursuant to FRCP 23(g). See R.90.

### C. L&L Associate Scott Drury

Mr. Drury joined L&L in 2019, having served the prior six years as a full-time member of the Illinois House of Representatives. Thereafter, Mr. Drury (who prior to politics was criminal prosecutor with the U.S. Attorneys' Office) rejoined the practice of law. Despite his lack of experience with either civil litigation or class actions, Mr. Drury had worked on privacy issues as a politician, and was thus a good fit to lead L&L's newly founded privacy practice. One of his first assignments was the firm's Clearview case.

### D. L&L And The Clearview Litigation

The firm proceeded to litigate. Mr. Drury was assigned the case in terms of responsibility for the day-to-day litigation, but that said, it was a team effort.

For example, co-lead class counsel and L&L Senior Partner, Mr. Kanovitz, has been involved since the earliest stages of L&L's evaluation, beginning in November 2019, supervising Mr. Miller as well as Mr. Drury. When the *New York Times* article came out unexpectedly in January 2020, Mr. Kanovitz drafted sections and edited the complaint so we could be the first to file two days later. *Id.*

3

Mr. Kanovitz stayed involved thereafter as a supervisor, advisor, and hands-on participant. By way of examples, Mr. Kanovitz participated in: locating and adding additional defendants; identifying sources for discovery; reviewing FOIA documents; strategizing and litigating the multidistrict conflicts among firms vying to represent the class in New York and elsewhere; working with opposing counsel once they appeared; working on the preliminary injunction motion; briefing on the original motion to appoint L&L; drafting the firm's resume to establish the firm's class action credentials; responding to the competing firms' efforts to be appointed in other venues; briefing on motion to transfer; intervening in the New York venue; decision making on adding and dismissing additional defendants; mediation efforts in late 2020, and continuing through 2021; evaluating insurance policies; strategizing for the MDL proceedings; drafting portions of plaintiff's mediation statement and formulating viable programmatic relief as part of a potential resolution; negotiation of the joint prosecution agreement between L&L on the one hand and the Bursor and Hedin firms on the other; research regarding Clearview's patents and its Singapore subsidiaries; formulating information requests in the context of settlement; litigating the lead counsel motions following the JPML ruling; researching the injunction of state court proceedings in aid of the federal court's jurisdiction; and addressing conflict issues and staffing, among other matters. *See* Exhibit B (Kanovitz Declaration).

Former L&L associate Mr. Miller's work at the firm was almost entirely dedicated to the privacy cases. Beyond conceiving/developing the Clearview case, he helped draft the complaint and other pleadings, including a lead role in drafting the motion and the reply in support of preliminary injunction, as well as a lead role in drafting the response to Defendants' motion to dismiss. *Id.*

Scott Rauscher, a L&L partner with class action experience, also drafted pleadings in the Clearview case, including the initial draft of the motion to appoint the firm as lead counsel. When Mr. Drury was too busy with other matters, Mr. Rauscher provided other support, including drafting responses to multiple sets of written discovery. *Id.*

Jon Loevy, too, has worked on the case, including this pleading. While he typically gets involved after discovery and closer to trial, Mr. Loevy is excited to play a bigger role in this important

case now that Mr. Drury's departure has created a void just as the case gets closer to the end stages.[1]

In sum, while L&L does not dispute that the case was assigned to Mr. Drury and that he was more of the public face and had more interactions with co-counsel and the Court, it would be wrong for him to try to grab all the credit. Like all of the firm's cases, this one was assigned to a firm attorney with primary responsibility, but the firm took seriously its appointment as lead class counsel and very much considered it a case of the firm. And in any event every hour Mr. Drury billed while on the firm's payroll is an hour that belongs on the firm's side of the ledger, not Mr. Drury's.

In addition to attorney resources, the firm also made a financial commitment. Exhibit C (Declaration of Andy Thayer). Before Mr. Drury tried to fire us, we spent $32,390 to pursue the class' interests, and are on the hook for another $50,000+ in expert fees that are quickly coming due. *Id.*

### E. July of 2022

Unbeknownst to L&L attorneys at the time, the Clearview Defendants reached out to Mr. Drury about trying to resolve the case through settlement. L&L has since learned that one of the defense attorneys flew to Chicago to meet with Mr. Drury in July 2022 about a framework to settle.

Mr. Drury never mentioned the Defendants' settlement overtures to anyone else at L&L -- despite their express requests to Mr. Drury to inform them if there were any settlement negotiations. Mr. Drury did not share anything with any L&L attorneys at the time or after. In fact, no L&L attorney learned about the meeting or any of the recent settlement overtures until speaking with opposing counsel after Mr. Drury resigned and tried to fire L&L.

### F. September of 2022

In mid-September, L&L senior partners Mr. Loevy and Mr. Kanovitz began preparing for trial in *Rogers v. BNSF Railroad,* Case No. 19-3083, the first BIPA case ever to be tried. The case had been litigated by a law firm called McGuire Law, and when it became clear that the case was not going to settle, McGuire Law sought out recommendations for which law firm to bring in to try the

---

[1] Other firm attorneys who made contributions on L&L's privacy/BIPA practice area as needed included Julia Rickert, Frank Newell, Liz Wang, Megan Pierce, and Sam Heppell, among others.

5

case. Though McGuire Law and L&L no prior relationship and did not even know each other, McGuire Law chose to bring in L&L (based on recommendations that included a former federal judge) as the firm singularly best positioned to try a complex class action BIPA case. *See* Exhibit D (Declaration of Evan Meyers of McGuire Law).

At the close of business on Friday September 23, as Mr. Loevy and Mr. Kanovitz were preparing for trial, Mr. Drury sent an email resigning from the firm. See Exhibit E. (Just a few hours earlier, he had directed the firm's bookkeeper to pay a Clearview expert invoice. *See* Exhibit M.)

Based on our understanding of the appropriate way to handle these things, Mr. Loevy promptly sent an email to Mr. Drury requesting "that we mutually reach out to your former clients in written form or conference call (with us and you) to inform them of your departure and their options." *See* Exhibit F ("Please advise if that is acceptable."). Mr. Drury ignored the email. L&L sent a follow up the following day, Saturday, reiterating the request to contact the client together so the process would be orderly and there would not be competing narratives. *Id.* ("Are you amenable to reaching out the clients together as previously proposed? We would like to do that tomorrow or on Monday, but if that is going to be religious observance for you, Tuesday works for us too.").

Mr. Drury again ignored the email. Instead he sent an email letter on September 26 informing L&L that the client had hired his newly-formed law firm. See Exhibit G. The letter further instructed that "as Loevy & Loevy's representation of the above-named individuals has now been terminated, please immediately withdraw the appearances of all [L&L] attorneys..." *Id.* The letter, which created a barrier to calling the clients, contained no proof that L&L had been fired.

The next day, as the L&L partners were all-consumed preparing for the *Rogers* trial, Mr. Drury sent them an email letter attaching executed "Representation Directives." See Exhibit H. L&L has no idea what Mr. Drury told the clients, but the "Representation Directives" are flawed in that they fail to inform the clients that they could be represented by both firms. *Id.* Mr. Drury's latest letter repeated his instruction that L&L immediately withdraw, and demanded that L&L provide him immediate access to the Goldfynch case database that L&L has been paying to maintain. *Id.*

6

Upon further review, it is hardly clear that Mr. Drury's gambit in having clients "fire" L&L was even legally valid. The Court has already appointed L&L. Clients cannot override Court orders. Indeed, as explained by the leading treatise, *Newberg on Class Actions,* Rule 23 appears to have been drafted to prevent exactly what Mr. Drury is doing here by having the clients "fire" our firm:

> The class representatives do not have an unfettered right to fire class counsel. **** Standing alone, Rule 23(a)(4)'s requirement that the class representative be adequate and Rule 23(a)(g)'s insistence that class counsel be adequate say nothing about the relationship between those provisions. But in the Advisory Committee note [], the Committee suggests that *class counsel, once appointed, is now the paramount representative of the class, not the class representatives:* class counsel's obligations are to the class, not the representative; the representative cannot fire class counsel; and class counsel can settle a case over the representative's objections. The Advisory Committee note implies, quite strongly, that it is class counsel who speaks for the class, not the class representatives.

*See* 1 *Newberg and Rubenstein on Class Actions,* § 3:82, "Rule 23(g) Emphasizes Counsel's Duty To The Class A Whole" (6th ed.).

Leaving aside its legal invalidity, Mr. Drury's demand that L&L withdraw their assistance also made no practical sense. L&L partners are good at what they do, they have extensive history with the case, and their withdrawal is hardly in the best interests of the class.

However, because the L&L lawyers were on trial, they sent Mr. Drury back a series of emails asking what the urgency was, and asking to meet as soon as the *Rogers* trial was over. *See* Group Exhibit I ("I do think you and I have very good reasons to speak to each other, but Mike and I are fully consumed with trial preparation and trial, and the conversation is going to have to wait a week or so."). Mr. Drury responded on October 2 that if L&L did not immediately file a motion to withdraw within 24 hours, he would proceed against the firm for disregarding the client's directive. Exhibit J ("If L&L does not move to withdraw by the close of business on October 4, 2022 [*i.e.,* during the *Rogers* trial], I will be forced to assume that it has chosen to disregard the Clients' directives.").[2]

---

[2] Curiously, Mr. Drury's September 30 email for the first time forwarded what Mr. Drury called "Notices of Termination" from the Clearview clients, suggesting that the prior "Representation Directives" were not actually the demands to withdraw that he had been claiming they were. Exh. L.

7

With Mr. Drury threatening to pursue sanctions for disobeying a clients' wishes, Mr. Loevy wrote a long summary of their position, stating in conclusion that "[w]e start trial tomorrow, and have no more time to spend on this. Here is where it stands as we see it. You should wait one week until we can have a discussion before doing anything. If you communicate to us that you simply cannot wait a week, let us know, and we will file the requested withdrawals tomorrow. Copy [others], as Mike and I will be on trial." Exhibit K.

For reasons that cannot be justified, Mr. Drury proceeded to insist that withdrawals had to be done immediately, without any reasonable opportunity for a meeting or orderly consideration by the Court. Per Mr. Drury's demands, that is what occurred.

Based on the foregoing, there was no time to fully apprise the Court of the circumstances. L&L fully intended to do so as soon as the *Rogers* trial ended. But even before the trial ended and L&L had the chance, this Court set a status to get to the bottom of what was going on.

**G.  What Is Going On?**

What was going on was this. With the prospect of a Clearview settlement on the horizon, and cognizant that a *Rogers* victory by L&L would complicate his plan, Mr. Drury decided to start his own firm and try to take the Clearview case (and others) with him. Mr. Drury is obviously under the impression that if he can fire L&L and keep any financial recovery for himself, he will maximize his personal economic stake.

The Court should not allow that. As the Court indicated at the October 14 hearing, its operating assumption was that it appointed L&L as class counsel. When Mr. Drury suggested "[l]ike I said, I've been appointed interim lead class counsel, and I remain…," the Court made clear:

The Court: You were, but you were -- wait. Let's just be real clear. You were as a member of Loevy & Loevy. I mean that's --

Mr. Drury: Yes, Your Honor. I --

The Court: -- that's the truth of it, so --

8

> Mr. Drury: No. No. I'm not, I'm not trying to change history at all, Your Honor. I know I was with Loevy & Loevy at the time. I was with Loevy & Loevy until September 23rd.
>
> The Court: All right.

Exhibit N, 10/14/22 Tr. at 14; *see also id.* at 12 (The Court: "But yes, the Court, did appoint the firm, and Mr. Drury was at the firm at that time.").

### H. The Court Should Clarify That It Appointed L&L To Represent The Class And Allow L&L To Remain Serving In That Role

In a class context, the fact that individual class members (albeit named class members) wish to have Mr. Drury continue to represent them is far less relevant than in other, non-class cases involving disputes over who represents the "client." The client here is the class, so the desires of Mr. Mutnick and a few others (as expressed through Mr. Drury) should not trump those of every other class member whose interests would be better served by having L&L remain in its role. This is true for at least several reasons.

Most basically, this Court already chose L&L from among many other amply-qualified national class action law firms because the firm's attributes justify that appointment. L&L has proceeded to litigate the case aggressively and effectively. Roughly a half-dozen of the firm's lawyers have worked on the case at one time or another, and there is no good reason to remove us.

If anything, L&L's ability to obtain the best results for the class have only improved. The aforementioned *Rogers* trial ended in a jury verdict on October 12, 2022. The jury was out for only an hour, and the verdict was $228 million.

The *Rogers* verdict changes the BIPA landscape dramatically. Multiple giant law firms defending BIPA cases were involved on the defense side, and the rest of the defense bar followed the case closely. The reason it was the only BIPA case ever to go to trial rather than settle was because those defendants believed they would win. They were mistaken. L&L's involvement ensured that the *Rogers* class got full value for their claims as opposed to selling them short. For these reasons, the Clearview class would be very well-served by continuing to be represented by a law firm that has proved it can win these trials.

9

Conversely, it is difficult to see how the class' interests would truly be maximized by being represented by Mr. Drury as a solo practitioner. To be clear, L&L by no means intends disrespect to solo practitioners. Twenty-five years ago, L&L was itself started by a solo practitioner who practiced law out of his Chicago apartment for the first several years of the firm's existence. If anything, that experience makes L&L even more cognizant of the very real resource constraints facing small firms battling against giant law firms in complex litigation.

In Mr. Drury's case, the problem is magnified. When he resigned, Mr. Drury also persuaded a second L&L client (Steven Vance) to follow him and fire our firm.[3] That other client is the lead class member in seven different other class actions filed against IBM, Google, Amazon, Microsoft, and others. By any fair accounting, that is a lot of complex class action law suits for a single lawyer to litigate against some of the biggest defense firms in the country. It would hardly be optimal for the Clearview class to be represented by a single lawyer whose attention will be so divided.[4]

Most troubling about the situation was Mr. Drury's attempt to force L&L off the case. It might be different if Mr. Drury had started his own firm and discussed with L&L an arrangement to work on the case together, but instead he simply tried to fire L&L from the case so he can try to claim a fee that L&L would have received. How is the latter even remotely in the class' best interests? The inference that Mr. Drury is pursuing his personal interests at the expense of the class is unavoidable.

Also disturbing is the timing. Other than the fact that the prospect of a big victory for our firm at a landmark BIPA trial might have complicated Mr. Drury's attempts to persuade the clients to follow him out the door, what was the urgency try to fire us? Again, the only possible conclusion is that Mr. Drury is committed to his own economic interests to the exclusion of the class.

---

[3] Mr. Drury was able to build the two personal relationships that allowed this to happen because the firm trusted him with its clients.

[4] If there were any doubt, Mr. Drury distributed a press release declaring that he will also be focusing on not one but three "core" practice areas, including education rights.

I. **Mr. Drury's Arguments Are Unpersuasive**

  1. **Mr. Drury's Name On The Order Appointing Class Counsel Does Not Justify A Different Result**

As summarized above, on August 14, 2020, the Court originally appointed Mike Kanovitz and Scott Drury of L&L as interim lead class counsel in the *Mutnick* litigation. R.90. However, when it came time to file a similar motion in the MDL litigation on February 23, 2021, Mr. Drury pulled a fast one. Near the close of business on the date the motion was due, Mr. Drury made the final draft available to L&L partners Mr. Loevy and Mr. Kanovitz.

Reviewing it for the first time, the L&L lawyers were concerned that Mr. Drury had drafted it in such a way that he, not the firm, was named class counsel. In fact, the whole motion was about himself. R.10. There was much back and forth, with Mr. Drury demanding that his name only be on the proposed order. He insisted that it had to be done this way to protect the class, because if our motion included multiple attorneys, the firm would risk not being appointed at all. *See* Exhibit O.

Mr. Kanovitz literally directed Mr. Drury to include Mr. Kanovitz' name too, but Mr. Drury refused, confirmed in writing. *See* Exhibit O. Moreover, Mr. Drury's purported reason (courts would not grant applications from more than one attorney from the same firm) was exposed as pretext: Mr. Kanovitz offered to allow just Mr. Drury's name if the Court for some reason balked at appointing more than one attorney, but Mr. Drury still refused. Nearing 10:00 p.m. on the date the motion was due -- a deadline that could not be extended[5] -- Mr. Kanovitz realized there was not enough time to redraft the motion Mr. Drury had drafted (a motion that largely referred to Mr. Drury to the near total exclusion of the firm, which somehow merited only one paragraph at the very end). R10. Any lack of unanimity within our own ranks obviously would have risked losing the appointment given the vigorous competition from other firms, so Mr. Kanovitz decided he had to capitulate and trust Mr. Drury. Mr. Kanovitz's confirming email, dated February 23, 2021, at 9:54 p.m., stated as follows:

---

[5] This deadline could not be missed. All firms seeking to be lead class counsel had the same deadline, and were filing simultaneously.

Scott,

As we discussed tonight, Jon and I are very concerned to have learned today that you are seeking to get yourself appointed instead of both you and I. The fact that you have refused my suggestion we ask the Court to appoint both of us (and to tell the Court it should be just you if she insists on only one of us) did not inspire confidence either, especially coming on the heels of you telling us again just yesterday that you do not feel you have been treated fairly. We also hear you saying that you are unwilling to accept any compromise and that the only outcome whatsoever must be a motion seeking you as the sole lead counsel.

Accurately or not, all of this feeds a concern on our part that if we acquiesce to your way of doing this, you could decide to leave the firm and use your lead counsel role to take this case with you. When we expressed that to you, you represented that you have no intention of doing that.

Trust is vital to our continued ability to work together and I very much want to be able to trust you. So that is what I am going to do. I accept your word as a gentleman.
    --Mike

See Exhibit O.[6]

As stated, at the October 14 hearing, this Court explained its belief and understanding that its resulting order, R.25, had granted a class counsel motion appointing L&L as a firm. See Exhibit N. It turned out, in other words, that the L&L was not the only one misled by Mr. Drury.

### 2. Mr. Drury's Prior Litigation Role Does Not Justify A Different Result

Based on his recent statements, Mr. Drury apparently intends to try to claim all of the credit for the case's progress. This is overstatement. Mr. Drury has been the lead attorney and public face, but as described above, this has been a team effort. And to replace Mr. Drury's role in day-to-day leadership of the firm's privacy practice, L&L has also already hired another extremely- qualified lawyer, Tom Hanson, who has 20+ years of relevant complex litigation experience.

Nor is it especially relevant that Mr. Drury has billed more of the hours to date. The firm put Mr. Drury in charge of the case for the discovery phase. That is a standard model for litigation at our

---

[6] Mr. Drury responded by claiming that he was seeking appointment of just himself for one reason only: because it "allows for the best chance of being appointed.... I believe the dual-appointment approach described in your email would have jeopardized our application for the reasons we discussed." *See* Exhibit O. In hindsight, Mr. Drury was less than candid.

firm, and all others. Someone other than the most senior partners has to be assigned the day-to-day responsibility. That Mr. Drury was very involved in the litigation does not make this "Mr. Drury's case" as opposed to a case of the firm. Moreover, now that the case is proceeding to settlement discussions, summary judgment, and trial, L&L's senior partners -- Mr. Loevy and Mr. Kanovitz -- will assume an ever increasing responsibility, and will be personally involved in the settlement negotiations and trial.

### 3. Mr. Drury's Pretextual Excuses For Resigning

The elephant in the room is whether Mr. Drury is going to claim in response that he had "no choice" but to resign and try to take the cases with him. At the hearing, Mr. Drury suggested he does not want to open that door to a public airing at this time:

> Your Honor, I guess we will file something as well related to the circumstances. My concern is, is that, you know, there -- there's a lot of history here, and I'm just hoping that, you know this isn't going to be -- we plan to keep it related to the issues before your Honor. And I hope that Loevy & Loevy will do the same, because I don't think, you know -- there may be a time and place to litigate the issues between myself and Loevy & Loevy. I don't think it's before Your Honor in this Courtroom.

Exhibit N, 10/14/22 Tr. at 13.

If Mr. Drury's response brief does try to claim there were reasons why he had to resign and take the cases with him, our reply will provide the full and true context. But for now, because Mr. Drury is correct that these issues are not technically necessary for the Court's decision, L&L will leave it at this: the firm and Mr. Drury have a difference of opinions about why he did what he did.

### J. What the Court Should Do

L&L should remain lead class counsel. This will maximize the class' best interests in all respects. The class will continue to benefit by being represented by a law firm that does superior legal work, and a firm that Clearview knows will not back down unless the class is treated fairly.

As stated at the outset, however, no one is suggesting that a judicial clarification of L&L's role as lead counsel is incompatible with Mr. Drury's continued involvement. From L&L's

perspective, while there are obviously bad feelings about how this has gone down, L&L is committed to putting all of that to the side and continuing to work with Mr. Drury in the best interests of the class. Just because L&L should continue to serve as lead class counsel, that does not mean Mr. Drury would not continue to contribute assistance as needed. Notwithstanding his improper machinations, there is no dispute that Mr. Drury is a skilled attorney who has value to add. As the lawyer with the most hours in the case, our hope is that he would chose to remain involved in the litigation, assuming he is willing to continue to work under L&L's lead, if that is what the Court decides to do. And L&L assures the Court that all of its attorneys can and will work professionally with Mr. Drury to advance the class' best interests, regardless of how this motion is decided.

      To be clear, however, L&L strongly opposes any request by Mr. Drury for this Court to appoint both firms as a co-lead counsel. While it sometimes makes sense to have co-lead counsel, such an arrangement would be particularly unworkable here. Even if L&L and Mr. Drury can still work together professionally and cooperatively, it is no longer tenable to expect them to share leadership responsibilities. For things to operate optimally, someone needs to be in charge and authorized to make decisions. There is a very real concern that L&L and Mr. Drury are not going to agree on everything -- and quite possibly that they will not agree on anything, depending on how Mr. Drury chooses to respond to the situation.

      To take just one example, if he was appointed co-lead counsel, Mr. Drury would be strongly incentivized not to settle the case at this juncture, regardless of the class' best interests. That is because if the case resolves in the near term, his personal entitlement to attorneys' fees would be nil, as all of the hours he billed on the case were while working for L&L. The longer the litigation dragged on, by contrast, the greater his ability to claim fees under the banner of his new firm, irrespective of the class' best interests. If the two firms were co-lead, there could thus be impasses on this and all manner of other subjects.

Moreover, if Mr. Drury wanted to be co-lead, he could have attempted to negotiate that outcome in a legitimate and orderly way. Instead, Mr. Drury demanded that L&L withdraw completely, despite the undeniable value L&L adds. His own actions (namely, his willingness to put his own economic interests above those of the class) thus demonstrate that co-leadership is not the right result. His own behavior demonstrated his unsuitability to lead when he broke out threats, inflexible hard-ball tactics, and an utter lack of reasonableness (refusing even to wait a week to have a discussion despite no need for any urgency) the very second he believed he had the upper hand.

### K. The Court Should Also Reject Any Forthcoming Request For Lead Class Counsel By Committee

After the Court's comments at the October 14 hearing, and in apparent recognition that he was going to have a difficult time persuading the Court to remove L&L from the litigation and appoint only himself, Mr. Drury is now politicking to try to stay on as co-lead counsel as part of a newly-formed coalition. On that point, L&L was contacted this week by another law firm that is plainly trying to leverage the situation to secure appointments for itself and another firm to be co-lead class counsel with Mr. Drury and L&L, for a total of four "lead-counsel" law firms. See Exhibit P.

Specifically, the situation Mr. Drury is apparently trying to orchestrate is to cut deals with two other firms who will support Mr. Drury's motion to be lead class counsel, but if and only if they also get to a share of the class counsel leadership. In other words, these firms who were not appointed lead counsel in the original rounds are hoping for another bite at the apple, supporting Mr. Drury's bid in exchange for a chance at the previously-denied seat the table.

This should be rejected. Mr. Drury's proposed alliance of firms is not even an odd number, thereby inviting stalemates in the event of voting. In any event, having one leader is oftentimes better than four leaders, and this is such a case. *Haynie v. Cornell Univ.,* 3:20-CV-467, 2020 WL 6043947, at *3 (N.D.N.Y. Oct. 13, 2020) ("The Court finds that appointment of a *single lead counsel* best serves the interests of judicial economy while protecting the interests of the putative class.") (citations omitted); *Hodges v. Bon Secours Health Sys., Inc.,* CV RDB-16-1079, 2016 WL 4447047, at *2 (D.

Md. Aug. 24, 2016) ("[A]ppointing a *single law firm* to serve as lead interim counsel in this case would be a more efficient action, saving resources and reducing scheduling burdens").

As is sometimes the case in class action litigation, all of this counter-maneuvering is unseemly and unfortunate and unpleasant. It becomes about the lawyers' interests, not the class members'. The irony, of course, is that it was Mr. Drury who himself insisted when the motion to appoint counsel was being drafted that *only one person* could and should serve as lead counsel. *See supra* at 11 & n.6 and Exhibit O. If that was true back in February 2021 when he was insisting the one lawyer should be him, surely he will not reverse course 180 degrees to a "coalition model" just because that is now his best hope to remain class counsel after resigning from the firm.

### L. The Final Word

In sum, were the Court to grant this motion and affirm L&L as lead class counsel, nothing would actually change. For the past two-plus years that Mr. Drury has worked on the case, he did everything he did under the direction and supervision of the L&L senior partners. Under our proposal, that arrangement would continue. L&L would lead, and Mr. Drury would add value.

Moreover, now that the litigation is entering a mature phase involving settlement negotiations and, if necessary, a trial, the L&L senior partners will become even more involved, and should increasingly lead. Mr. Loevy and Mr. Kanovitz have extensive settlement experience in the class action context, compared to Mr. Drury, who has none. And, if the case does not settle, L&L is far better qualified than Mr. Drury to be lead trial counsel -- a factor which of course increases the likelihood and amount of any settlement.

For all of these reasons, a single lead counsel is thus the right result for this stage of the litigation. Even conceding that the new members of Mr. Drury's apparent coalition are also undoubtedly very experienced, that hardly means that four leads is more optimal than one. Negotiations and trials are particularly ill-suited for co-leadership where, as here, there are trust issues and prospects for power struggles. L&L is well qualified to serve as lead counsel, and based on the Court's comments at the prior hearing, that was the result the Court intended.

WHEREFORE, L&L seeks an order (a) permitting them to withdraw their prior motions to withdraw appearances, R.463-67; (b) clarifying that the Court intended to appoint the L&L firm as lead class counsel, not the individual lawyers who at the time of the prior order worked at the firm; and (c) if deemed procedurally necessary, granting leave to permit new putative class members to intervene in this matter as additional named Plaintiffs represented by L&L.

DATED: October 22, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　s/ Jonathan Loevy

Jonathan Loevy
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

      I, Jonathan Loevy, an attorney, certify that I filed the foregoing Motion on October 22, 2022, via CM/ECF, thereby delivering it to counsel of record via CM/ECF.

                                                           s/ Jonathan Loevy