**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135 <br><br> Judge Sharon Johnson Coleman <br><br> Magistrate Judge Maria Valdez |

**OPPOSITION TO LOEVY & LOEVY'S MOTION FOR AN ORDER
CLARIFYING THAT THE COURT INTENDED TO APPOINT LOEVY & LOEVY
AS LEAD CLASS COUNSEL, AS OPPOSED TO THE INDIVIDUAL LAWYERS WHO
AT THE TIME WORKED AT THE FIRM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.     The Court Should Summarily Deny the Improper Motion. ................................... 4

    II.    The Court Unambiguously Designated Drury as Interim Class Counsel. .............. 5

    III.   The Court Should Retain Drury in His Leadership Position. ................................. 7

         A.    Drury has Been the Driving Force Behind the MDL, and His
               Depth of Knowledge Is Irreplaceable at This Stage. ................................... 7

         B.    To Allay Any Staffing or Financing Concerns, Drury Respectfully
               Requests that Leadership Team Members Arisohn and Hedin
               Be Designated as Interim Co-Lead Counsel with Drury. ........................... 9

    IV.   The Court Should Reject L&L's Effort to Be Designated Interim
         Lead Counsel. ...................................................................................................... 10

         A.    L&L Does Not Represent Any Plaintiff in the MDL. ............................. 10

         B.    L&L Has Demonstrated Its Inadequacy in Myriad Ways. ....................... 12

               1.    L&L Does Not Know What the Case Is About. ............................ 12

               2.    L&L Has Violated Its Duties to Plaintiffs and Class
                    Members. .................................................................................... 12

               3.    L&L Sought to Thwart Drury's Successful Interim Lead
                    Counsel Application to Serve Its Own Self Interests .................... 13

               4.    L&L Rejected an Offer to Work Collaboratively with
                    Drury Legal, Bursor and Hedin Hall ............................................ 14

    V.    Drury Departed L&L Due to Various Ongoing Disputes. ................................... 15

CONCLUSION .................................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Birchmeier v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069 (N.D. Ill.) ............................13, 14

*Dowd and Dowd, Ltd. v. Gleason*, 693 N.E.2d 358 (Ill. 1998) ................................15, 16

*In re: Navistar Maxxforce Engines Mkt'ing Sales Practices and Products Liability Litig.*,
No. 14-cv-10318, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015) ..................................9, 10

*In re: TikTok, Inc., Consumer Privacy Litig.*, No. 1:20-cv-04699 (N.D. Ill.) ..............................13

*In re: Zoom Video Comm'ns, Inc. Privacy Litig.*, No. 5:20-cv-02155-LHK (N.D. Cal.)..............13

*Mutnick v. Clearview AI, Inc.*, No. 1:20-cv-512 (N.D. Ill.)........................................................7, 14

*Simmons v. Motorola Solutions, Inc.*, No. 1:20-cv-1128 (N.D. Ill.)................................................1

*U.S. v. Misc. Firearms, Explosives, Destructive Devices and Ammunition*,
376 F.3d 709 (7th Cir. 2004) ........................................................................................12

### **STATUTES AND RULES**

Fed. R. Civ. P. 5.2.............................................................................................................4

Fed. R. Civ. P. 23(g) ........................................................................................10, 11, 16

Fed. R. Civ. P. 24.........................................................................................................1, 4, 5

Ill. R. Prof. Cond. 1.16(a)(3)..............................................................................................11

Ill. R. Prof. Cond. 5.6(a) ..................................................................................................15

Local Rule 7.1...................................................................................................................4

### **OTHER AUTHORITIES**

Mary F. Andreoni, *Leaving a Law Firm: A Guide to Ethical Obligations
in Law Firm Departure*, Illinois ARDC (Jan. 2020) ....................................................11

Fed. R. Civ. P. 23, advisory committee's notes................................................................11

*Merriam-Webster Online Dictionary*,
https://www.merriam-webster.com/dictionary/designate ......................................11, 12

ii

1 Newberg and Rubenstein on Class Actions § 3:82 (6th ed.) .......................................................11

*Manual for Complex Litig.* (4th), § 21.11 .......................................................................................12

## INTRODUCTION

Loevy & Loevy ("L&L") agrees that "[Scott R.] Drury is a skilled attorney, who has been very involved in this litigation to date." *See* Dkt. 484 at 2.[1] It further agrees that Drury "is the lawyer with the most hours in the case" who has "value to add." *Id.* at 15. Indeed, it is striking that as L&L makes false claims regarding Drury's character and intent, it emphasizes its hope that Drury will continue working with L&L on the case. *Id.* at 2-3, 15. Underlying L&L's irreconcilable positions is its knowledge that it cannot lead this multidistrict litigation (the "MDL") on its own. As counsel for each of the *non-Drury* Plaintiffs attests, removal of Drury from his leadership position will prejudice the named Plaintiffs ("Plaintiffs") and putative class members ("Class Members"). *See* Ex. 1[2] (Arisohn Decl.) ¶ 6; Ex. 2 (Hedin Decl.) ¶ 6; Ex. 3 (Drew Decl.) ¶ 12; Ex. 4 (Webster Decl.) ¶ 12. The unanimous support for Drury to continue leading this MDL (*see* Exs. 1-4) is a testament to his leadership to date and his ability to work harmoniously with others.

In contrast, L&L does not even know what this case is about, incorrectly describing it as involving the "sweeping of *mug shot* photos from the internet." *Id.* at 3 (emphasis added). While Drury previously led litigation at L&L involving the scraping of mug shot photos, *see Simmons v. Motorola Solutions, Inc.*, No. 1:20-cv-1128 (N.D. Ill.), *that is not this case*.

Indeed, L&L's motion itself should disqualify it from consideration as interim lead counsel. While Jon Loevy ("Loevy") sought and was granted leave to file a "motion to intervene," having claimed that L&L had class members seeking its representation, L&L filed a completely different "motion for clarification" brought on its own behalf. In fact, L&L does not appear to actually represent *any* putative class members. As such, L&L makes no effort to address Fed. R. Civ. P. 24. The Court should find L&L has forfeited any ability to intervene at a later date.

---

[1] Citations to docketed entries are to the CM/ECF-stamped page numbers.
[2] Exhibit references are to exhibits to the Declaration of Scott R. Drury filed contemporaneously herewith.

In addition, the motion has prejudiced Plaintiffs by disclosing one of Plaintiffs' consulting experts (*see* Dkt. 484-13) and publicly disclosing confidential settlement communications. Further, the motion misrepresents facts about Drury and about L&L's role in this MDL. Finally, the motion is procedurally defective in myriad ways. In short, L&L has failed its audition for interim lead counsel.

Recognizing the motion fails on the merits, L&L uses it as a vehicle to muddy-up Drury. To be clear, Drury did not leave L&L to "maximize his own personal stake" in this case or any other, as discussed more fully below. At all times, Drury has acted in the best interests of Plaintiffs and Class Members.

Based on the actual facts, it is evident that Class Members' interests will be best served by having Drury continue in his role as interim lead counsel with the continued support of co-counsel. Drury has spearheaded this litigation from the beginning, and he has proven to be a zealous advocate for the putative class. Removing him from the case at this late date would prejudice Plaintiffs' and Class Members' position going forward. Meanwhile, L&L wants to take over this case even though its remaining attorneys have hardly been involved, it has limited data-privacy class action experience, and it does not even know what this case is about.

For all of these reasons, as detailed below, the Court should deny L&L's motion and grant L&L's various pending motions to withdraw (Dkt. 462-67). At the same time, Drury respectfully requests that the Court modify the order designating Drury as sole interim lead counsel and designate Joshua D. Arisohn of Bursor & Fisher, P.C. ("Bursor") and Frank S. Hedin of Hedin Hall LLP ("Hedin Hall") as interim co-lead counsel along with Drury to allay any concerns the Court may have regarding resources. Arisohn and Hedin have worked on the case from the outset.

## FACTUAL BACKGROUND

L&L's motion misrepresents Drury's background, the circumstances of his hiring and his role at the firm. As these matters are relevant to Drury's designation as interim lead counsel, he corrects the record here.

Drury is a former Assistant U.S. Attorney for the Northern District of Illinois, an adjunct professor at the Northwestern Pritzker School of Law, a member of this Court's Trial Bar and a former Illinois State Representative. Drury Decl. ¶ 2. Drury has continuously practiced law since 1998 (never taking a six-year break, as alleged in the motion). *Id.*

Drury joined L&L in 2018. *Id.* ¶ 3. When Drury started at the firm, he did not have a formal title but was told by Loevy that he was being compensated at the partner level. *Id.* Drury eventually was given the title of "Counsel." *Id.*; *see* Ex. 5 (Fee Petition Decl.) ¶ 3. Drury was a prized recruit for L&L, as Loevy himself acknowledged when Drury accepted L&L's offer: "It's truly a compliment to all of us that people with all kinds of options to work anywhere they choose are deciding to join our team." Ex. 6 (8/6/2018 Loevy email).

During the interview process, Drury pitched the formation of a privacy practice, and he ultimately founded and led that practice at L&L. Drury Decl. ¶ 4; Ex. 7 (L&L website – Drury biography). Drury largely worked independently in the privacy practice and was not supervised in his day-to-day activities. Drury Decl. ¶ 4. The only attorney/law clerk consistently assigned to the privacy practice besides Drury was Andrew Miller, an inexperienced but extremely bright individual who until April 2021 was akin to a law clerk because he was not yet licensed to practice law. *Id.* ¶ 5.

**ARGUMENT**

**I.      The Court Should Summarily Deny the Improper Motion.**

During the October 14, 2022 status hearing, Loevy represented: (a) that L&L had "been in contact with other members of the class who have raised concerns that they don't want to be represented by [Drury] . . . and that they want [L&L] to remain"; and (b) sought the opportunity to submit a brief. Dkt. 484-14 at 7:12-16, 8:7-10. When the Court asked what Loevy specifically wanted to file, he stated a "*motion to intervene on behalf of other class members who want [L&L] to be lead class counsel*, and we will be asking that Your Honor appoints us as the lead counsel . . . ." *Id.* 13:5-15 (emphasis added). The Court ordered L&L to "file a motion to intervene by 10/21/2022." Dkt. 481.

But L&L did not file any motion on October 21, 2022 and never filed a motion to intervene. Instead, on October 22, 2022, L&L filed the present motion, purportedly seeking clarification of this Court's order designating interim lead counsel (the "Designation Order"). *See* Dkt. 484. Further, the motion violates Local Rule 7.1 in that it: (a) exceeds 15 pages without prior court approval; and (b) does not have the necessary tables. L.R. 7.1. And, as originally filed, the motion violated Fed. R. Civ. P. 5.2, because it disclosed Drury's birthdate, as well as logins and passwords. Fed. R. Civ. P. 5.2; Ex. 8 (10/27/2022 Drury email).

L&L's disregard for the Court's Order and procedural rules is not academic. Instead of filing a motion to intervene and confronting the exacting standards of Fed. R. Civ. P. 24, L&L filed the instant motion, which wholly seeks to sidestep Rule 24. Indeed, without addressing Rule 24 at all, in the motion's last sentence, L&L asks the Court to simply grant it "leave to permit new Class Members to intervene . . . as additional named Plaintiffs represented by L&L." Dkt. 484 at 18. L&L does not identify the purported "Class Members" or state what type of intervention they

4

seek (as of right or permissive). *See id.* L&L makes no effort to explain how it knows that the as-of-yet unidentified "Class Members" actually are in any alleged class. *See id.*

As demonstrated by the two motions to compel and the motion for discovery sanctions Drury filed against the Clearview Defendants (Dkt. 213, 383, 474), obtaining information from the Clearview Defendants regarding the existing Plaintiffs has been tortuous and lengthy. There is no reason to believe the process would be any different for a new plaintiff. By failing to file a motion to intervene, L&L prevented consideration of this threshold issue (*i.e.*, whether any putative intervenor is in the class) and every other Rule 24 factor. Rather than give L&L an opportunity to further delay this matter, the Court should deny the motion and find that L&L has forfeited any opportunity to intervene. As the Court previously stated, "for the class [the decision as to interim lead counsel] has to be sooner rather than later." Dkt. 484-14 at 11:24-12:1.

## II.     The Court Unambiguously Designated Drury as Interim Lead Counsel.

While L&L claims to seek clarification, the Designation Order is unambiguous – it "appoints Scott R. Drury as sole interim lead counsel." Dkt. 25 at 1. In the Order, the Court found that "from the outset, Drury has taken the lead in aggressively moving this litigation forward," including filing a motion for preliminary injunction "which resulted in defendants changing many of their business practices to avoid court-mandated changes." *Id.* at 2. The Court also highlighted Drury's successful efforts to consolidate the various cases filed against Clearview AI, Inc. ("Clearview") in this District and his efforts to organize and build coalitions amongst plaintiffs' counsel. *Id.* The Court further found that "Drury's background and experience in bringing BIPA cases far surpasse[d] [his challenger]" and that "Drury's superior knowledge of BIPA weigh[ed] heavily in favor of appointing Drury as interim lead counsel." *Id.* at 3. After describing the

widespread support for Drury, the Court found that "it is abundantly clear that Drury will best be able to represent the interests of all of the class members." *Id.*

It is undisputed that Drury worked at L&L at the time of the Designation Order. However, the Designation Order gives no indication that Drury's affiliation with L&L was a significant factor, if a factor at all, in its decision. *See, generally,* Dkt. 25.

Relatedly, Drury readily acknowledges that the materials he submitted in support of his interim lead counsel application contain L&L's class action experience and its financial commitment to the case. *See* Dkt. 10-1 ¶ 21, Dkt. 10-2 at 3-9. Importantly, none of that experience involved privacy class actions beyond those filed as part of the privacy practice *Drury* founded and led. Drury Decl. ¶ 6; Dkt. 10-2 at 5. Moreover, based on Drury's knowledge and experience at L&L, no remaining attorney at L&L has experience working up a case alleging violations of Illinois' Biometric Information Privacy Act ("BIPA") or other data privacy violations.[3] Drury Decl. ¶ 7. This is critical given that the cases comprising this MDL were transferred to this Court for "coordinated and consolidated *pretrial* proceedings." *See* Dkt. 1 at 2 (emphasis added). While L&L recently assisted with trying a BIPA case, by the time it got involved, the case had been pending for over three years, summary judgment had been denied and a trial date had been set. Ex. 10 (*Rogers* docket); Dkt. 484-4 ¶ 3. Further, that case involved fingerprints, not the more technical issue of scans of face geometry, as is the case here. *See Rogers* Dkt. 103 (2d Am. Compl.).

As for L&L's financial commitment, it has expended less than $33,000. *See* Dkt. 484-3 ¶ 5. While the motion mentions approximately $50,000 in pending expert invoices (*see* Dkt. 484 at 6), after L&L's termination but before it decided to bring this challenge, Drury informed Loevy

---

[3] The LinkedIn profile of L&L's new recruit, Thomas Hanson, makes no mention of BIPA or any background in data privacy. Ex. 9 (Hanson Linked In profile).

that L&L was not responsible for the payments. Drury Decl. ¶ 9. Drury has arranged for the bills to come due in November 2022, hopefully after resolution of this dispute. *Id.*

Importantly, to address any concerns regarding the financing and staffing of the case now that Drury has resigned from L&L, as discussed below, Drury has made arrangements with Bursor and Hedin Hall to help litigate and cover the costs of this case. *See,* § III.B, below. Over the last two years, those firms have actively worked with Drury to prosecute Plaintiffs' claims and, unlike L&L, have extensive experience with privacy class actions. *See id.* L&L has previously approved of those firms by entering into a joint prosecution agreement with them. *See* Dkt. 484 at 5.

**III.    The Court Should Retain Drury in His Leadership Position.**

**A.    Drury Has Been the Driving Force Behind the MDL, and His Depth of Knowledge Is Irreplaceable at This Stage.**

The same above-described facts the Court relied on in designating Drury interim lead counsel continue to support Drury's retention – even if Drury is compared to L&L. Drury has been the driving force behind the MDL and *Mutnick v. Clearview AI, Inc.* ("*Mutnick*"), No. 1:20-cv-512 (N.D. Ill.). When news of Clearview's conduct was published in the *New York Times*, Drury, who was on vacation with his son, sprung into action. While his son slept, Drury organized a late-night conference call with Kanovitz and Miller to begin working on a complaint. Drury Decl. ¶ 10. The client, David Mutnick, was a client of Drury's from before Drury joined L&L. *Id.*

Drury subsequently oversaw and led the drafting of the complaint, which he signed. *Id.*; *Mutnick* Dkt. 1 at 30. Drury also came up with the idea and led the effort to draft and file a preliminary injunction motion. *Id.* Drury signed the motion. *Mutnick* Dkt. 32 at 1.

Further, Drury was solely responsible for establishing contact with plaintiffs' counsel in the numerous other cases filed against Clearview. *Id.* Ultimately, Drury organized conference calls among plaintiffs' counsel to discuss the case and, for those who could not attend, Drury provided

summaries of the calls. *Id.* The relationships formed then have served Class Members well by largely avoiding the infighting that can plague litigation of this magnitude. The fruits of Drury's coalition-building efforts have been reflected in his multiple leadership positions throughout this litigation. *Id.* Drury continues to enjoy unanimous support among the named Plaintiffs and their counsel for him to lead this matter. *See* Exs. 1-4.

Regarding the MDL, Drury has aggressively acted on Plaintiffs' and Class Members' behalf throughout. He has played a leading role in: (a) drafting all versions of the consolidated complaint; (b) the investigation and development of the newly-added California and New York claims; (c) developing the successful legal theories and factual allegations as to the liability of the individual Clearview Defendants, Rocky Mountain Data Analytics, LLC, the Macy's Defendants and putative defendant class members; (d) drafting and overseeing the preparation of Plaintiffs' responses to Defendants' motions to dismiss and related post-ruling motions; (e) preparing Plaintiffs' written discovery requests; (f) responding to Defendants' written discovery; (g) retaining and overseeing Plaintiffs' experts; (h) reviewing and organizing Defendants' document productions, which collectively contain over 315,000 pages; (i) preparing Plaintiffs' two largely successful motions to compel against the Clearview Defendants (Dkt. 213, 383); (j) preparing Plaintiffs' pending motion for discovery sanctions against the Clearview Defendants (Dkt. 474); (k) defeating the Clearview Defendants' motion to compel (Dkt. 438); (l) preparing Plaintiffs' forthcoming motion for class certification (Plaintiffs' class); and (m) overseeing the preparation of Plaintiffs' forthcoming motion for certification of a defendant class. Drury Decl. ¶ 11.

The above list is not intended to convey that Drury has been the only lawyer working on the MDL. Throughout, Drury has worked with Arisohn and Hedin (collectively, the "Leadership Team"). *Id.* ¶ 12. Further, prior to Miller leaving L&L in December 2021, he helped prepare drafts

of documents, performed legal research and participated in strategy discussions. *Id.* Given Miller's inexperience, he did not play a leading role, and, on information and belief based on available records, he billed less than 350 hours to the matter. *Id.* Others at L&L assisted with spot projects (Dkt. 484 at 4-5) but not to the extent that would have allowed them to gain the institutional knowledge needed to lead the case. *Id.* The various spot activities Kanovitz performed (Dkt. 484 at 4-5) early on do not change this conclusion. Indeed, his allegedly "instrumental" contribution to the case – novel civil rights claims (*id.* at 3) – is not even part of the MDL.

As set forth in the declarations of counsel for the various non-Drury Plaintiffs, they strongly support Drury remaining in his leadership role and maintain that removing Drury from that role will prejudice Plaintiffs and Class Members. Ex. 1 ¶¶ 3-6; Ex. 2 ¶¶ 3-6; Ex. 3 ¶ 12; Ex. 4 ¶ 12. The Court may consider this unanimous support in designating interim lead counsel as it "suggests that plaintiffs' counsel ha[s] acquired the confidence and trust of [his] colleagues." *In re: Navistar Maxxforce Engines Mkt'ing Sales Practices and Products Liability Litig.* ("*Navistar*"), No. 14-cv-10318, 2015 WL 1216318, at *2 (N.D. Ill. Mar. 5, 2015).

Significantly, L&L has conceded Drury's indispensable value to the case. *See* Dkt. 484 at 2-3, 13-15. Notwithstanding L&L's spurious attacks on Drury's character, L&L is careful to compliment Drury's legal skills and almost begs for him to remain on the case. *See id.* L&L's concession self-rebuts its baseless attacks and is fatal to its position.

**B.      To Allay Any Staffing or Financing Concerns, Drury Respectfully Requests that Leadership Team Members Arisohn and Hedin Be Designated as Interim Co-Lead Counsel with Drury.**

Recognizing the Court may have concerns about Drury's ability to finance and staff the MDL, Drury respectfully requests that the Court modify the Designation Order to include

Leadership Team members Arisohn and Hedin as interim co-lead counsel.[4] Arisohn's submission in support of Drury's leadership application (Dkt. 11), as well as the Arisohn and Hedin Declarations, highlight their impressive individual and firmwide credentials that qualify them for interim co-lead counsel designations. *Id.* at 3-7; *see also* Ex. 1 ¶¶ 8-16; Ex. 2 ¶¶ 8-16. Further, Bursor and Hedin Hall can provide the financial and staffing resources needed to prosecute the MDL. *See* Dkt. 11 at 4-5 (judicial findings regarding Bursor's resources); *see also* Ex. 1 ¶ 16 (describing resources); Ex. 2 ¶ 16 (same). Moreover, Bursor and Hedin Hall bring far more data privacy and BIPA experience to the table than L&L, including a recent $100 million BIPA settlement with Google in a case involving scans of face geometry from photos. *See* Dkt. 11 at 4-7 (describing BIPA and privacy experience); Ex. 1 ¶¶ 8-10; Ex. 2 ¶¶ 9-11. Counsel for Plaintiffs Hall, Carmean and Roberson support Arisohn and Hedin for interim co-lead counsel positions (Ex. 3 ¶ 9; Ex. 4 ¶ 9), showing that they, too, have earned the confidence and trust of their colleagues. *See Navistar* 2015 WL 1216318, at *2.

## IV. The Court Should Reject L&L's Effort to Be Designated Interim Lead Counsel.

While L&L claims to seek clarification of the Designation Order (Dkt. 484 at 2), as discussed above, the Order clearly designated Drury (albeit while he worked at L&L). *See* Dkt. 25. Even if the Court did designate L&L, circumstances have changed so significantly since that time that the Court should deny the motion and modify the designation to remove L&L. As discussed below, L&L has demonstrated its inadequacy to represent Class Members in this case.

### A. L&L Does Not Represent Any Plaintiff in the MDL.

The Drury Plaintiffs' Representation Directives and Notices of Termination make clear they terminated L&L. *See* Dkt. 484-8; Dkt. 489 at 6-9, 16-19. As such, L&L can no longer

---

[4] If the Court prefers, Drury, Arisohn and Hedin will submit a Rule 23(g) interim lead counsel application.

represent those clients, and the Court should grant the pending motions to withdraw (Dkt. 462-67). *See* Ill. R. Prof. Cond. 1.16(a)(3) (discharged lawyer shall not represent a client). Relatedly, because L&L could not represent the Drury Plaintiffs once discharged, its contention that it should have been given more time to withdraw (Dkt. 484 at 8-9) lacks merit. Further, L&L's contention that it moved to withdraw under the threat of "sanctions" (*id.* at 9) is unsupported by the factual record. *See* Dkt. 484-11; Drury Decl. ¶ 8.

Without citing any authority, L&L contends the Representation Directives are "flawed in that they fail to inform the clients that they could be represented by both firms." Dkt. 484 at 7. Not so. The options set forth in the Representation Directives closely track the options set forth in the Illinois ARDC's publication guiding attorneys on leaving a law firm. *See* Mary F. Andreoni, *Leaving a Law Firm: A Guide to Ethical Obligations in Law Firm Departure*, Illinois ARDC (Jan. 2020) (relevant pages attached hereto as Exhibit 11). Significantly, this is the only matter in which L&L has contended that the Representation Directives may be flawed, and it already has withdrawn from various matters without contest. Drury Decl. ¶ 13.

Knowing it has no client, L&L contends it does not need one because "the Court has already appointed L&L." Dkt. 484 at 8. But the authority L&L cites is inapposite because it addresses the issue of whether, post-certification, an *appointed* class representative can fire *appointed* class counsel. *See id.* (*citing* 1 Newberg and Rubenstein on Class Actions § 3:82 (6th ed.)); *see also* Fed. R. Civ. P. 23, advisory committee's notes (discussing appointed class counsel). While Fed. R. Civ. P. 23(g)(1) addresses the mandatory *appointment* of class counsel upon certification, Rule 23(g)(3) addresses the discretionary *designation* of interim class counsel at issue here. Fed. R. Civ. P. 23(g)(1), (3). Importantly, the plain meaning of "designate" is "chosen *but not yet installed*." *Merriam-Webster Online Dictionary*, https://www.merriam-

webster.com/dictionary/designate (last accessed on Oct. 27, 2022) (emphasis added); *see also U.S. v. Misc. Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (look to plain meaning of statutory language). Here, no class has been certified, and no class representative or class counsel has been "appointed." Without a client, L&L cannot credibly contend it would seek appointment as class counsel at the certification stage.

### B. L&L Has Demonstrated Its Inadequacy in Myriad Ways.

#### 1. L&L Does Not Know What the Case Is About.

L&L cannot lead this case because it does not even know what the case is about. According to L&L, "this case involves allegations that the Clearview Defendants were *sweeping mug shots* from the internet" in violation of BIPA. Dkt. 484 at 3 (emphasis added). Not so. This case arises out of: (a) the Clearview Defendants' widespread scraping of billions of facial images from throughout the internet in order to collect victims' biometric data; and (b) private entities' subsequent obtainment of the biometric data from the Clearview Defendants. *See* Dkt. 428 ¶¶ 1, 34, 67. Moreover, while Plaintiffs allege BIPA violations, they also allege violations of New York, California and Virginia privacy laws, as well as the common law, on behalf of a nationwide class and various subclasses. *See, generally,* Dkt. 428. That L&L lacks a basic understanding of the case at this late date exposes its lack of involvement and should be disqualifying.

#### 2. L&L Has Violated Its Duties to Plaintiffs and Class Members.

The *Manual for Complex Litigation* ("MCL") advises that designation of interim class counsel may be appropriate to protect the interests of putative class members during precertification activities. MCL (4th) § 21.11. Here, L&L has done the opposite. In its motion, L&L recklessly and needlessly disclosed one of Plaintiffs' consulting experts (Dkt. 484-13) and confidential settlement information. Dkt. 484 at 6.

12

The latter disclosure was particularly egregious because L&L's purpose in making it was to disparage Drury, not to benefit Class Members. *See id.* at 6. In actuality, the disclosure provides further evidence of L&L's lack of involvement in the case. Prior to the meeting at issue, Drury advised Leadership Team members that the meeting was taking place. Drury Decl. ¶ 14. Notably, Drury did not know the purpose of the meeting because the Clearview Defendants' counsel did not reveal it. *Id.*; Ex. 12 (email chain) at 2-3 (referencing "getting a beer" and no specific agenda). Drury further updated Leadership Team members after the meeting. Drury Decl. ¶ 14.

While L&L contends Drury resigned due to the prospect of a settlement (*see* Dkt. 484 at 2), that is not the case, as discussed in § V, below. Indeed, L&L ignores that the meeting at issue took place in July, but Drury remained at L&L until late September. Further, in direct conflict with its claim that settlement prospects drove Drury's decision, L&L also claims Drury cannot lead this case because he "is strongly incentivized not to settle."[5] *Id.* at 15. L&L's duplicity is telling.

### 3. L&L Sought to Thwart Drury's Successful Interim Lead Counsel Application to Serve Its Own Self Interests.

In preparing the successful interim lead counsel application, Drury looked to: (a) an unsuccessful joint application he and Kanovitz had submitted in *In re: Zoom Video Comm'ns, Inc. Privacy Litig.* ("*Zoom*"), No. 5:20-cv-02155-LHK (N.D. Cal.); (b) Judge Lee's then recent lead counsel designations in *In re: TikTok, Inc., Consumer Privacy Litig.* ("*TikTok*"), No. 1:20-cv-04699 (N.D. Ill.); and (c) the lead counsel application submitted by Scott Rauscher of L&L and Jay Edelson in *Birchmeier v. Caribbean Cruise Line, Inc.* ("*Birchmeier*"), No. 1:12-cv-04069 (N.D. Ill.). Drury Decl. ¶ 15; Ex. 13 (*Birchmeier* application). The courts in those matters

---

[5] L&L claims Drury will impede settlement to increase his hours. Dkt. 484 at 15. However, Drury will continue looking out for Plaintiffs' and Class Members' best interests, as he has done throughout the case. L&L's premise that Drury needs to bill more hours (Dkt. 484 at 15) rests on the faulty assumption that Drury's hours on the case belong to L&L and ignores that L&L has failed to pay Drury a substantial portion of his compensation (*see* § V, below) and has acted contrary to Class Members' interests.

designated individual attorneys to leadership positions, never appointing more than a single attorney from any firm. Ex. 14 (*Zoom* Order); Ex. 15 (*TikTok* Order); Ex. 16 (*Birchmeier* Order).

Accordingly, Drury followed the strategy L&L used in *Birchmeier* and prepared an application seeking the appointment of a single L&L attorney, which Drury believed provided the best opportunity for success. Drury Decl. ¶ 15. Ultimately, the Court received two applications (including Drury's), each seeking the appointment of an individual attorney. *See* Dkt. 25 at 1.

Loevy and Kanovitz took no interest in the application until shortly before it was due, at which time they demanded it be changed for varying reasons that had nothing to do with what gave the application the best chance of success. *See* Drury Decl. ¶ 16; Dkt. 484-15 at 1. For instance, ignoring *Birchmeier*, Kanovitz contended firm policy required seeking appointment of the firm or multiple attorneys within the firm. *Id.* Kanovitz also referenced the application in *Mutnick*, ignoring that the application in that matter was agreed upon due to Drury's coalition-building efforts. *Id.* Ultimately, Loevy made it clear that the demand was based on a pretextual fear that Drury may someday leave L&L, and the belief that a joint application may make it more difficult for him to do so. *Id.* Loevy even threatened to sue Drury if he ever left the firm and clients followed him. *Id.* Drury ultimately rejected the unsupported demand, which was not made in the best interests of the case, clients and Class Members. *Id.*; Dkt. 484-15 at 3. Far from Drury "pulling a fast one" (Dkt. 484 at 12), Drury did what was best for the case and was transparent about it.[6]

### 4. L&L Rejected an Offer to Work Collaboratively with Drury Legal, Bursor and Hedin Hall.

As L&L acknowledges (Dkt. 484 at 16), it was offered the opportunity to work collaboratively with Drury, Bursor and Hedin Hall. L&L rejected the proposal, choosing to go-it-

---

[6] Recognizing Drury was right, Loevy and Kanovitz backed down. They now contend they did so because the application was due at 10:00 p.m. Dkt. 484 at 12. That is demonstrably false. The application was timely filed at 10:42 p.m. Ex. 17 (2/23/2022 CM/ECF confirmation); *see also* Dkt. 6 (order setting filing date).

alone. *Id.* at 16. The proposal was made as an effort to seek compromise without having to litigate and delay the case. Now that the motion has exposed L&L's inadequacy in such a profound way, it is clear that L&L's continued participation in the case would be detrimental.

## V. Drury Departed L&L Due to Various Ongoing Disputes.

Despite Loevy representing that Drury's reasons for leaving L&L were not the Court's concern (Dkt. 484-14 at 6:23-7:2), the motion falsely contends Drury left to "maximize his personal economic stake" "to the exclusion of the class. *See* Dkt. 484 at 9, 11. While the false contention should be given no weight, out of an abundance of caution, Drury briefly responds here. *See* Drury Decl. ¶¶ 17-19.

Compensation and other significant disputes permeated Drury's time at L&L. *Id.* ¶ 17; *see, e.g.,* Exs. 18-20 (dispute corresp.). When Drury left L&L, it owed him hundreds of thousands of dollars that had been withheld on the pretextual claim that Drury would resign once paid. *Id.* ¶¶ 17, 20. Again, Loevy was the one who raised the idea of Drury leaving.[7] *Id.* ¶ 17.

Based on the pretextual claim, Loevy told Drury that to be paid Drury had to promise: (a) not to leave the firm with the privacy clients; and (b) to pay to L&L any fees earned on any privacy case Drury took with him – less an offset for what Drury would have earned had he stayed. *Id.*; Ex. 20 (8/25/2022 Loevy email). Drury rejected the proposal (made in varying ways over time), believing, *inter alia*, the proposal was (and any subsequent agreement would be) violative of Illinois Rule of Professional Conduct 5.6(a). Drury Decl. ¶ 18; *see also* Ill. R. Prof. Cond. 5.6(a) (prohibiting offering or making agreements that "restrict[] the right of a lawyer to practice after termination of the relationship . . . ."; *Dowd and Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 369 (Ill.

---

[7] Loevy also made the baseless contention that Drury's request for earned compensation created concern that Drury had somehow engaged in tortious conduct, which he had not. Drury Decl. ¶ 17.

1998) (Rule 5.6 is designed to give clients freedom in choosing counsel and to protect lawyers from "onerous conditions that would unduly limit their mobility").

On September 10, 2022, with the above-described dispute, among others, ongoing, Drury learned that Kanovitz had surreptitiously contacted a privacy client with whom he had almost no prior contact to discuss a privacy case Kanovitz was not working on. Drury Decl. ¶ 19. Then, on September 12, 2022, Drury learned for the first time that Loevy and Kanovitz had been working on a BIPA case since at least July 2022 and were preparing to try it. *Id.*; *see also* Ex. 10 at Dkt. 163-64. Given that Drury led L&L's privacy practice, these revelations made clear that L&L had no intention to resolve the various disputes. Drury Decl. ¶ 19. Thus, beginning on September 10, 2022 (*before* learning about the trial), Drury set about leaving L&L and did so on September 23, 2022. *Id.* After resigning, Drury so informed various clients with whom he had a relationship, and they followed him. *Id.*; *see also* Dkt. 484-8; Ex. 21 (correspondence).

## CONCLUSION

For the foregoing reasons, the Court should: (a) deny L&L's motion; (b) grant L&L's various pending motions to withdraw (Dkt. 462-67); and (c) modify the Designation Order to designate Drury, Arisohn and Hedin as interim co-lead counsel or, alternatively, grant them leave to submit an application for interim co-lead counsel pursuant to Fed. R. Civ. P. 23(g).

Dated: November 1, 2022

Respectfully submitted,

By:     /s/ Scott R. Drury
        SCOTT R. DRURY

Scott R. Drury
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com

16

<u>**CERTIFICATE OF SERVICE**</u>

I, Scott R. Drury, an attorney, hereby certify that, on November 1, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
SCOTT R. DRURY