IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Clearview AI, Inc., Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**DECLARATION OF SCOTT R. DRURY**

Scott R. Drury declares and states as follows:

1. My name is Scott R. Drury. I am a licensed attorney and have personal knowledge of the facts set forth in this Declaration and am competent to testify as to its contents.

2. I am the owner of Drury Legal, LLC. Between 2003 and 2011, I was an Assistant United States Attorney for the Northern District of Illinois. In addition to my work as a practicing attorney, I am an adjunct professor at the Northwestern Pritzker School of Law, where I teach trial advocacy. I have been in that position since 2011. I also am a member of this Court's Trial Bar and a former Illinois State Representative. I have continuously practiced law since 1998.

3. In September 2018, I went to work for Loevy & Loevy ("L&L"). When I started at the firm, I did not have a formal title but was told by Loevy that I was being compensated at the partner level. I eventually was given the title of "Counsel." **Exhibit 5**, hereto, is a true and correct copy of a declaration I submitted in connection with a fee petition in *T.K. v. ByteDance Technology Co., Ltd.*, No. 1:19-cv-7915 (N.D. Ill.). The declaration, which Mike Kanovitz

1

("Kanovitz") was aware of and viewed before filing, accurately describes my position as "Counsel." *See* Ex. 5 ¶ 3.

4. While interviewing for a position at L&L, I pitched the formation of a privacy practice. Once I joined L&L, I ultimately founded and led that practice, which was formally called the "Data Privacy and Cyber-Intelligence Group." I largely worked independently in the privacy practice and was not supervised in my day-to-day activities. **Exhibit 7**, hereto, is a true and correct copy of my "biography" posted on L&L's website during the time I worked there. The biography describes me as the "founder and leader of Loevy and Loevy's Data Privacy and Cyber-Intelligence Group." I obtained Exhibit 7 from archive.org.

5. During my time at L&L, the only attorney/law clerk consistently assigned to the privacy practice besides me was Andrew Miller, an inexperienced but, in my opinion, extremely bright individual. Until April 2021, Miller was akin to a law clerk because he was not yet licensed to practice law.

6. In connection with the Application of Scott R. Drury of Loevy & Loevy for Appointment as Lead Counsel Pursuant to Fed. R. Civ. P. 23(g) filed in the above-captioned matter (Dkt. 10), I submitted the Declaration of Scott R. Drury (Dkt. 10-1), as well as a L&L Firm Resume. In the declaration, I stated that L&L was financially committed to the above-captioned matter. The L&L Firm Resume contains L&L's class action experience. None of that experience involved data privacy class actions beyond those filed as part of the privacy practice that I founded and led.

7. Based on my knowledge and experience working at L&L through September 23, 2022, no remaining attorney at that firm has experience working up a case alleging violations of

2

Illinois' Biometric Information Privacy Act or other data privacy violations. Andrew Miller left the firm in December 2021.

8. I resigned from L&L on September 23, 2022. Since then, named Plaintiffs Aaron Hurvitz, David Mutnick, Steven Vance and Andrea Vestrand (the "Drury Plaintiffs") have terminated L&L and retained Drury Legal, LLC to represent them. The Drury Plaintiffs' Representation Directives and Notices of Termination are filed on the docket of the above-captioned matter at Docket Nos. 484-8 and 489. I provided the Representation Directives and Notices of Termination to L&L and informed L&L of its obligations to comply with the directives therein. I did not threaten to seek sanctions if L&L failed to comply.

9. After L&L's termination but before it raised the challenge set forth in its pending motion for clarification (Dkt. 484), I informed Jon Loevy ("Loevy") that L&L was not responsible for pending invoices from various experts who had been retained in the above-captioned matter. I have arranged for those invoices to come due in November 2022, hopefully after resolution of L&L's motion.

10. In January 2020, the *New York Times* published an article about the conduct of Clearview AI, Inc. ("Clearview"). At the time, I was on vacation with my son. Upon learning of the article, I sprung into action. While my son slept, I organized a late-night conference call with Kanovitz and Miller to begin working on a complaint. David Mutnick, the named plaintiff in the complaint, was a client of mine from before I joined L&L. I subsequently oversaw and led the drafting of the complaint, which I signed. I also came up with the idea and led the effort to draft and file a preliminary injunction motion, which I also signed. Additionally, I was solely responsible for establishing contact with plaintiffs' counsel in the numerous other cases filed against Clearview. Ultimately, I organized conference calls among plaintiffs' counsel to discuss

the case and, for those who could not attend, I provided summaries of the calls. The relationships formed then have served putative class members ("Class Members") well by largely avoiding the infighting that can plague litigation of this magnitude. The fruits of my coalition-building efforts have been reflected in my multiple leadership positions throughout this litigation.

11. Since the formation of the above-captioned matter, I have aggressively acted on behalf of the named Plaintiffs and Class Members. I have played a leading role in: (a) drafting all versions of the consolidated complaint; (b) the investigation and development of the newly-added California and New York claims; (c) developing the successful legal theories and factual allegations as to the liability of the individual Clearview Defendants, Rocky Mountain Data Analytics, LLC, the Macy's Defendants and putative defendant class members; (d) drafting and overseeing the preparation of Plaintiffs' responses to Defendants' motions to dismiss and related post-ruling motions; (e) preparing Plaintiffs' written discovery requests; (f) responding to Defendants' written discovery; (g) retaining and overseeing Plaintiffs' experts; (h) reviewing and organizing Defendants' document productions, which collectively contain over 315,000 pages; (i) preparing Plaintiffs' two largely successful motions to compel against the Clearview Defendants (Dkt. 213, 383); (j) preparing Plaintiffs' pending motion for discovery sanctions against the Clearview Defendants (Dkt. 474); (k) defeating the Clearview Defendants' motion to compel (Dkt. 438); (l) preparing Plaintiffs' forthcoming motion for class certification (Plaintiffs' class); and (m) overseeing the preparation of Plaintiffs' forthcoming motion for certification of a defendant class.

12. The above list is not intended to convey that I have been the only lawyer working on the above-captioned matter. Throughout, I have worked with Joshua D. Arisohn of Bursor & Fisher, P.C. and Frank S. Hedin of Hedin Hall LLP. (collectively, the "Leadership Team").

Further, prior to Miller leaving L&L in December 2021, he helped prepare drafts of documents, performed legal research and participated in strategy discussions. Given Miller's inexperience, he did not play a leading role, and, on information and belief based on available records, he billed less than 350 hours to the matter. Others at L&L assisted with spot projects but not to the extent that would have allowed them to gain the institutional knowledge of the case needed to lead the case.

13. The above-captioned matter is the only one in which L&L has claimed that the Representation Directives issued by clients who have terminated L&L in favor of Drury Legal, LLC may be flawed. L&L has already been granted leave to withdraw or otherwise withdrawn from numerous other matters based on the same form directives.

14. In July 2022, I met with counsel for Defendants Clearview AI, Inc.; Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics, LLC; and Thomas Mulcaire (collectively, the "Clearview Defendants"). Prior to the meeting, I advised members of the Leadership Team that the meeting was taking place. I did not know the purpose of the meeting prior to it taking place because the Clearview Defendants' counsel did not reveal it. After the meeting, I further updated members of the Leadership Team. **Exhibit 12**, hereto, is a true and correct copy of email correspondence between Lee Wolosky, counsel for the Clearview Defendants, and me related to the meeting.

15. In preparing the successful interim lead counsel application in the above-captioned matter, I looked to: (a) an unsuccessful joint application Kanovitz and I had submitted in *In re: Zoom Video Comm'ns, Inc. Privacy Litig.* ("*Zoom*"), No. 5:20-cv-02155-LHK (N.D. Cal.); (b) Judge Lee's then recent lead counsel designation in *In re: TikTok, Inc., Consumer Privacy Litig.* ("*TikTok*"), No. 1:20-cv-04699 (N.D. Ill.); and (c) the lead counsel application

submitted by Scott Rauscher of L&L and Jay Edelson in *Birchmeier v. Caribbean Cruise Line, Inc.* ("*Birchmeier*"), No. 1:12-cv-04069 (N.D. Ill.). I ultimately followed L&L's strategy in *Birchmeier* and prepared an application seeking the appointment of a single L&L attorney, which I believed provide the best opportunity for success. **Exhibits 13-16**, hereto, respectively, are true and correct copies of: (a) the application for interim lead counsel submitted by Rauscher and Edelson in *Birchmeier*; (b) the order in *Zoom* designating interim lead counsel; (c) the order in *TikTok* designating interim lead counsel; and (d) the order in *Birchmeier* designating interim lead counsel.

16. Loevy and Kanovitz took no interest in the interim lead counsel application I had been preparing in the above-captioned matter until shortly before it was due, at which time they demanded it be changed for varying reasons that had nothing to do with what gave the application the best chance of success. For instance, ignoring *Birchmeier*, Kanovitz contended firm policy required seeking appointment of the firm or multiple attorneys within the firm. Kanovitz also referenced the application in *Mutnick v. Clearview AI, Inc.*, No. 1:20-cv-00512 (N.D. Ill.), ignoring that the application in that matter was agreed upon due to my coalition-building efforts. Ultimately, Loevy made it clear that the demand was based on a pretextual fear that I may someday leave L&L, and the belief that a joint application may make it more difficult for me to do so. Loevy even threatened to sue me if I ever left the firm and clients followed me. I rejected the unsupported demand, which was not made in the best interests of the case, clients and Class Members.

17. Compensation and other significant disputes permeated my time at L&L.[1] **Exhibits 18-20**, hereto, respectively, are true and correct copies of email correspondence relating to disputes over my compensation for the years 2019, 2020 and 2021.[2] Exhibits 18 and 19 address retroactive payments L&L agreed to make to me in connection with the disputes regarding my 2019 and 2020 compensation, respectively. In an effort to avoid future disputes, during summer 2021, I asked Loevy and Kanovitz if we could explore a modified compensation structure. No new agreement was reached and, as in years past, a dispute arose regarding my 2021 (and later – 2022) compensation. When I left L&L, it owed me hundreds of thousands of dollars that had been withheld on the pretextual claim that I would resign once paid. Again, Loevy was the one who raised the idea of me leaving. Based on the pretextual claim, Loevy told me that to be paid I had to promise: (a) not to leave the firm with the privacy clients; and (b) to pay to L&L any fees earned on any privacy case I took with me – less an offset for what I would have earned had I stayed. *See* Ex. 20. Loevy also made the baseless contention that my request for my earned compensation created concern that I had somehow engaged in tortious conduct, which I had not.

18. I rejected the proposal described in the preceding paragraph (made in varying ways over time), believing, *inter alia*, the proposal was (and any subsequent agreement would be) violative of Illinois Rule of Professional Conduct 5.6(a).

19. On September 10, 2022, with the above-described dispute, among others, ongoing, I learned that Kanovitz had surreptitiously contacted a privacy client with whom he had

---

[1] In this Declaration, I focus on the compensation disputes because L&L contends the economic issue behind my resignation was a desire to "maximize [my] personal economic stake" in the above-captioned matter (Dkt. 484 at 9), whereas, in fact, the actual economic issue was the fact that L&L owed me hundreds of thousands of dollars, comprising a substantial portion of my compensation.

[2] Exhibits 19 and 20 contain redactions of case-related information and information regarding L&L's finances. Upon the Court's request, I can provide non-redacted copies of the exhibits.

almost no prior contact to discuss a privacy case Kanovitz was not working on. Then, on September 12, 2022, I learned for the first time that Loevy and Kanovitz had been working on a BIPA case since at least July 2022 and were preparing to try it. Given that I led L&L's privacy practice, each of the above-described revelations made clear that L&L had no intention to resolve the various disputes. Thus, beginning on September 10, 2022 (*before* learning about the trial), I set about leaving L&L and did so on September 23, 2022. After resigning, I so advised various clients with whom I had a relationship, and they followed me. **Exhibit 21**, hereto, contains true and correct copies of correspondence informing clients of my departure from L&L. I have redacted the clients' email addresses.

20. When I left L&L, the firm owed me (and still owes me) hundreds of thousands of dollars in earned compensation.

21. At the Court's request, I can provide additional documentation supporting the statements made herein and/or provide additional details regarding the compensation and/or other disputes.

22. **Exhibit 1**, hereto, is a true and correct copy of the Declaration of Joshua D. Arisohn.

23. **Exhibit 2**, hereto, is a true and correct copy of the Declaration of Frank S. Hedin.

24. **Exhibit 3**, hereto, is a true and correct copy of the Declaration of Michael Drew.

25. **Exhibit 4**, hereto, is a true and correct copy of the Declaration of Steven Webster.

26. **Exhibit 6**, hereto, is a true and correct copy of an email sent by Jon Loevy regarding my acceptance of the offer to join L&L. I received Exhibit 6 pursuant to a request for my personnel records. The document was produced to me in redacted form.

27.     **Exhibit 8**, hereto, is a true and correct copy an email that I sent to the Court advising it that my personal information had been disclosed in a public filing.

28.     **Exhibit 9**, hereto, is a true and correct copy of the LinkedIn profile of Thomas Hanson that I obtained from the internet.

29.     **Exhibit 10**, hereto, is a true and correct copy of the docket from *Rogers v. BNSF Railroad*, No. 1:19-cv-03083 (N.D. Ill.), that I obtained via PACER.

30.     **Exhibit 11**, hereto, is a true and correct copy of select pages from the Illinois ARDC's publication guiding attorneys on leaving a law firm – *i.e.*, Mary F. Andreoni, *Leaving a Law Firm: A Guide to Ethical Obligations in Law Firm Departure*, Illinois ARDC that I obtained online.

31.     **Exhibit 17**, hereto, is a true and correct copy of the CM/ECF email notification of the filing of my application for interim lead counsel that I prepared in the above-referenced matter.

I declare and state under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on November 1, 2022

                                                                                    _____
                                                                                    SCOTT R. DRURY