**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| In re: Clearview AI, Inc. Consumer Privacy Litigation | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

**LOEVY & LOEVY'S REPLY REGARDING
MOTION FOR AN ORDER CLARIFYING THAT THE COURT
INTENDED TO APPOINT LOEVY & LOEVY AS LEAD CLASS COUNSEL,
AS OPPOSED TO THE INDIVIDUAL LAWYERS
<u>WHO AT THE TIME WORKED AT THE FIRM</u>**

Jonathan Loevy
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900

L&L's motion made a reasonable proposal for moving forward. Everyone would work together to advance the interests of the putative Class. L&L would remain as lead Class counsel, and the Class would continue to receive the benefit of the efforts of both L&L's lawyers and Mr. Drury. Because all of Mr. Drury's work to date has been at L&L under the supervision of Mr. Kanovitz and Mr. Loevy anyway, nothing would really change.

Mr. Drury proposes a different arrangement. Having resigned from L&L, not only would this case follow him to his new firm (Drury Law) but L&L's lawyers should all be kicked off the case and stop assisting the Class. Mr. Drury takes umbrage at the suggestion that his proposed solution is driven by a desire to control the attorneys' fees, but it is difficult to see it any other way.

L&L's position makes far more sense for the Class. There is no reason whatsoever to remove L&L as Class counsel, much less show them the door. More importantly, L&L respectfully submits that this Court should not simply compromise and put both law firms in charge together. Mr. Drury's actions and positions amply demonstrate his unsuitability for that leadership role.

I.   **L&L Should Not Be Removed As Lead Class Counsel**

This Court selected L&L from other law firms for good reason. The firm is very good at what it does. Mr. Drury does not (and cannot) suggest otherwise. Nearly 50 lawyers with outstanding credentials and accomplishments have chosen to work at our firm because of its dedication to civil rights. The resulting team has amassed a track record that ranks among the most successful law firms in the nation. Mr. Loevy alone has more than 20 jury verdicts in the seven-figures, and the firm has resolved several very significant class actions, with multiple massive successes in this District alone.

Our efforts in this litigation have vindicated the Court's trust. As set forth in our initial motion without contradiction, numerous L&L lawyers have been involved and contributed to the Clearview case along with Mr. Drury. The Response acknowledges (at 9) that Mr. Miller alone put in at least 350 hours,[1] in addition to Mr. Kanovitz, Mr. Loevy, Mr. Rauscher, Ms. Wang and others. Any

---

[1] Mr. Drury's description of attorney Miller as "akin to a law clerk," R.494 ¶ 5, is unfair and inaccurate. Miller graduated from Harvard (magna cum laude), the London School of Economics (with distinction) and Yale Law School, clerked for Judge Diane Wood of the Seventh Circuit, and then spent two years at L&L before returning to Yale to be a Clinical Lecturer in Law.

suggestion that the Class should lose the benefit of the L&L's attorneys' skill, effort, and knowledge of the case makes no sense at all.[2]

Mr. Drury recently issued a media "statement" declaring that his Response would set the record straight. *See https://news.bloomberglaw.com/privacy-and-data-security/clearview-biometric-privacy-case-delayed-by-attorney-infighting-1* (referencing Mr. Drury's "emailed statement to Bloomberg Law"). Now that the response has been filed, however, Mr. Drury offers no real explanation for why the Class would be better off if L&L is pushed aside.

Indeed, the only reasons Mr. Drury offers to remove L&L are that (1) there is no table of contents in L&L's 16-page motion, R.494 at 4; (2) L&L's motion references settlement negotiations, negotiations that L&L sought and received permission from defense to reference, R.494 at 12[3]; (2) one of the exhibits to L&L's motion referenced a forthcoming expert witness, R.494 at 12[4]; and (4) "no remaining attorney at L&L" supposedly has relevant BIPA experience, R.494 at 6.

Only the latter argument warrants further attention, and it is particularly inaccurate. L&L has been litigating BIPA cases, including this one, for at least as long as Mr. Drury has. The argument

---

[2] In seeking to downplay the contributions of others at the firm, the Response tells a story of how after the *New York Times* story broke, Mr. Drury "sprung into action [w]hile his son slept [and] organized a late-night conference call with Kanovitz and Miller to begin working on a complaint." R.494 at 7. While true, this version ignores that other members of the firm had also *already spent months* working on the Clearview case, analyzing volumes of records received through Freedom of Information Act (FOIA) requests, as well as conducting technical research into facial recognitions, the origins of Clearview's biometric database, and the lack of proper security measures. *See* R.10-1 ¶ 11 (L&L's motion for Interim Appointment); *see also* R.484 ¶ 3.

[3] This topic will be discussed further below, but for now suffice it to say that the fact of settlement negotiations is not a secret. Undersigned counsel sought and received permission from Clearview's counsel to include these references in L&L's motion before including them. No substance was disclosed. Lawyers frequently put on the record that they are engaged in settlement discussions, and Courts routinely request that information. Indeed, "Status of Settlement Discussion" is a section in the template for this Court's New Case Joint Status Report, and nearly all other courts' templates too. Mr. Drury's wild accusation that L&L did something wrong in disclosing discussions is unfounded.

[4] In making (but definitely not supporting) his point that naming the expert supposedly "prejudiced Plaintiffs," Mr. Drury's Response at 12 proceeds to *provide a precise citation to exactly where in the record* that disclosure could be found -- an email buried in one among dozens of exhibits -- in case anyone missed it. Mr. Drury's zeal to try to score a point, in other words, comes at the expense of the very interests of the Class he claims to be defending.

also fails to account for L&L's recent $228 million verdict in *Rogers,* the first BIPA case to go to trial and the largest BIPA verdict ever. Mr. Drury's Response characterizes L&L lawyers' role in *Rogers* as having "recently assisted with trying a BIPA case," R.494 at 6, but that is understatement. Mr. Loevy and Mr. Kanovitz tried the entire case before Judge Kennelly, from start to finish.

Mr. Drury also makes the point that L&L got brought into *Rogers* to try the case after another firm had worked it up for three years. *Id.* While true, that only undercuts Mr. Drury's position: despite having no involvement in the earlier phases of the *Rogers* litigation, Mr. Loevy and Mr. Kanovitz were able to step in, absorb all of the discovery, work with the experts, and successfully try the case. It also demonstrates that L&L's experience, accomplishments, and abilities are such that other attorneys with BIPA practices picked L&L to do the thing that class needed most: win the case. That reality certainly undermines Mr. Drury's point that only he and he alone can take the case home, particularly where he does not dispute that he has never tried a civil case in his entire career.

## II.     Mr. Drury Should Not Be Co-Lead Counsel

L&L should remain as lead counsel, but Mr. Drury should not. This is so for several reasons.

### A.     Mr. Drury Is Putting His Own Economic Self-Interest Above That Of That Of The Class To An Extraordinary Degree

Whatever else is true, there can be no serious dispute that the Class would benefit from L&L's continued participation. Unlike Mr. Drury's position, L&L's motion just made clear that it wants to assist the Class in whatever capacity the Court decides is appropriate. Mr. Drury's suggestion that the Class would somehow be better off if the Court kicked L&L off the case over L&L's objections is itself *prima facie* evidence that Mr. Drury's judgment and ability to look out for the Class is being fundamentally compromised by his desire to control the attorneys' fee for himself.

### B.     Mr. Drury's Admission That He Withheld Critical Settlement Information From His Own Law Firm Further Demonstrates His Unsuitability To Lead

Mr. Drury's lengthy response does not deny what happened in July of 2022. As L&L's motion pointed out, he had a settlement meeting with defense counsel and did not even tell any of the other L&L's attorneys about it, before or after.

In response, Mr. Drury suggests that he advised the "Leadership Team" about the meeting

3

and updated them afterward, suggesting he acted properly. R.494 at 13. However, five pages earlier in the Response, Mr. Drury *had defined the term "Leadership Team" to exclude any L&L attorneys.* R.494 at 8. It is unclear if he was being intentionally misleading, but it sure appears that way. At least one press report summarizing Mr. Drury's response got fooled, reporting that "the firm [L&L] knew he was meeting with Lee Wolosky, a top Jenner & Block partner... and that [Mr. Drury] 'updated' the firm afterwards." *See* reuters.com/legal/litigation/lawyer-says-ex-firm-is-not-equipped-to-lead-clearview-ai-lawsuit-2022-11-02/. Reuters, in other words, got tricked by Mr. Drury's "Leadership Team" definition. Hopefully this Court was not similarly misled.

Creative advocacy notwithstanding, Mr. Drury does not dispute that he kept L&L in the dark. Nor does he even attempt to justify it. Because he cannot. L&L staffed, funded, and supported the case for three years; it required this information to fulfill its obligations to the Court and the Class. Mr. Drury's inexplicable decision to keep L&L in the dark renders him unfit to continue as lead.

As it turns out, the situation was worse than L&L understood. After L&L filed its motion, L&L received the following email on October 26, 2022, from defense counsel in this case (who gave permission to share it, just as they had given permission to share the information in L&L's motion):

> Jon,
> I read your brief in connection with your motion for clarification. I was surprised to read that you knew nothing about our incipient settlement dialogue, and that [our] recent discussions following Scott's withdrawal from your firm were the source of that information for you.
> At the conclusion of my lunch meeting in Chicago with Scott on July 13, Scott told me he would download our discussion with his team (which I interpreted to mean the Loevy and other MDL Plaintiff's lawyers) and then get back to me. Are you saying that never happened?
> Clearview reserves its rights in connection with the motion to intervene.
> Regards.
> Lee

*See* Exhibit A.

Put simply, how can the Court have confidence in any attorney as co-lead if that attorney does not share critical information with the other attorneys who the Court intended to represent the Class? Mr. Drury's response brief does not explain why he did that. Or apologize. Or pledge that things would be different next time. Co-leadership is inappropriate on that ground alone.

4

### C. The False Urgency Underlying Mr. Drury's Demand For L&L's Withdrawal Undermines Any Suggestion He Acts In The Class' Best Interests

As L&L's motion explained without contradiction, the moment Mr. Drury believed he had secured the upper hand, he tried to strong-arm his former colleagues out the door. He deliberately timed his moves while Mr. Kanovitz and Mr. Loevy were on trial, and then refused to relax his demand that they immediately withdraw to provide more time for discussion of the situation or an orderly transition or compromise arrangement that would better serve the Class. His uncompromising strong-arm tactics are not the "play nice with others" actions of an attorney fit to be co-leader.

Mr. Drury's Response disputes that he threatened sanctions if L&L did not immediately withdraw, R.494 at 11, but the Court can be the judge of what Mr. Drury meant by his statement that: "If Loevy & Loevy does not move to withdraw by the close of business on October 4, 2022, I will be forced to assume that it has chosen to disregard the Client's directives." R.484-10. If Mr. Drury was not threatening to seek sanctions, what exactly was he saying he would do? Go to the ARDC? Whatever he meant, baseless threats against co-counsel do not militate toward being co-lead.

### D. As A Practical Matter, Co-Leadership Is No Longer A Realistic Or Tenable Option

This Court obviously should not have to deal with disputes like this. It has every right to expect the attorneys to conduct themselves more professionally, as opposed to fighting about control. While L&L has done nothing to cause the present situation, there is some concern the Court will throw up its hands and tell everyone to get along and work it out.

That would not be a good result for the Class. Under the circumstances, co-leadership is no longer realistic. If decision-making is shared, then every decision, big or small, will become a struggle. There is no reason to believe, for example, that Mr. Drury would defer to the far more experienced Loevy trial lawyers if and when the case proceeds to trial; everything from trial tactics to who should examine which witnesses would generate conflict. The same is true for summary judgment and expert witness strategy. Leadership with a single firm is the only practical solution.

5

Mr. Drury's attitude only reinforces this conclusion. After L&L's motion acknowledged that Mr. Drury is a good lawyer with much to add should he decide to stay involved even if he does not get his way, Mr. Drury distorted that into a characterization that L&L "almost begs for him to remain on the case." R.494 at 9. He all but threatens the Court that he will quit if he does not get his way. R.494 at 2 (informing the Court that "[r]emoving him from the case at this late date would prejudice" the Class, even though no one -- other than himself -- is talking about "removing him"). If the last three years have shown anything, this is not someone who is oriented to team play.

To be clear, L&L will continue to work on behalf of the Class in whatever capacity and with whoever the Court decides should lead. But L&L respectfully submits that as a practical matter, allowing our firm to remain lead Class counsel by itself is the best way to move forward.

## II.   Mr. Drury's "Coalition-Building" Does Not Change The Result

L&L argued that the Court should not remove L&L from a case defended by multiple huge law firms in favor of a solo practitioner who is already litigating at least eight other class actions against Google, Microsoft, IBM, etc. L&L clarified that it was not denigrating solo practitioners (L&L started as a solo practitioner too) but made the point that if Mr. Drury got his wish, the imbalance in attorneys/resources would be unfair to the Class. Mr. Drury, too, "recogniz[es] the Court may have concerns about Drury's ability to finance and staff the MDL..." R.494 at 9.[5]

Attempting to neutralize that problem, Mr. Drury has evidently formed an alliance with some of the other law firms who originally tried and failed to persuade the Court to appoint them Class counsel. As L&L already noted, class action litigation does not always bring out the best in the

---

[5] After trying to fire L&L more than a month ago, Mr. Drury still has not paid the outstanding $40,000+ case-associated invoices. And Mr. Drury is trying to have it both ways. His Response at 6-7 points out that he "informed Loevy that L&L was not responsible for the payments" (despite L&L's name on the invoices) but he has not paid them himself. Mr. Drury explains that he has "arranged for the bills to come due in November 2022, hopefully after resolution of this dispute" -- an implicit admission that he is insufficiently confident that paying them himself will make sense once the Court decides this motion. R.494 at 7.

6

plaintiff's bar. The sharp-elbowed jostling for positioning can be unseemly, and is often the least pleasant aspect of the job. Getting appointed class counsel sometimes can be more about politics and deal-making (and L&L sometimes stays away from class action cases on that ground alone).

But in this case, L&L decided to get involved. And this litigation has already progressed beyond the stage of who will be lead Class counsel. The Court appointed L&L under Rule 23.

To salvage his position, Mr. Drury has offered a deal to two firms that were on the outside looking in. If they support his bid, Mr. Drury will allow each of them to share the fee equal to his share. L&L knows this because after L&L filed its motion, one of them reached out to L&L and offered a similar deal: they would support L&L remaining in the case if L&L allowed these two new firms to join as co-lead so that any attorneys' fees would be split four ways. *See* Exhibit B (email to Mike Kanovitz from Joshua Airsohn, dated 10/19/22).

L&L said no. Mr. Drury said yes. These other two firms therefore now support Mr. Drury, and have submitted affidavits in support of his bid to be lead counsel and remove L&L. Mr. Drury claims this support is a "testament to his leadership to date" (R.494 at 1) but the only "testament" here is to his ability to play politics and broker deals favorable to his economic self-interest.

Under the circumstances, the Court should give the support that these firms are throwing in favor of Mr. Drury the weight it deserves, which is very little. They are undoubtedly very fine law firms with plenty of relevant experience. But this Court did not choose them. It already chose L&L. There is no reason to revisit that decision.

Quite the opposite, there is no way the Class would be best served by a four-headed monster of a leadership team, particularly where the attorneys have built up so many reasons to distrust each other. Football teams, political subdivisions, and courtrooms have one leader at the top of the pyramid, and for good reasons. Someone has to be empowered to make decisions. This is often the best model for leadership, and it certainly is under the present circumstances.

### IV. Contrary To Mr. Drury's Suggestion, This Court Is Not Somehow Bound By Its Prior Order Appointing Lawyers, Not Law Firms

Surprisingly, Mr. Drury's Response reverts to his contention that L&L should be withdrawn from the case because in his mind, he alone was appointed Class counsel. See R.494 at 5 ("II. The Court Unambiguously Designated Drury As Interim Lead Counsel"); *see also id.* at 5 ("the Designation Order is unambiguous"). Mr. Drury tried that argument at the October 14 hearing, and the Court made clear that was not what it intended (R.484-14 at Exhibit N):

Mr. Drury: Like I said, I've been appointed interim lead class counsel, and I remain --

The Court: You were, but you were -- wait. Let's just be real clear. You were as a member of Loevy & Loevy. I mean that's --

Mr. Drury: Yes, Your Honor. I --

The Court: -- that's the truth of it, so --

Mr. Drury: No. No. I'm not, I'm not trying to change history at all, Your Honor. I know I was with Loevy & Loevy at the time. I was with Loevy & Loevy until September 23rd.

The Court: All right.

Despite telling the Court on October 14 that he was not trying to "change history at all," Mr. Drury now tries to change history. Citing the motion to appoint Class counsel, Mr. Drury insists that he alone was appointed, and suggests that the Court's decision was based on his own personal qualifications, rather than those of the Loevy firm. R.494 at 5.

This argument distorts reality. L&L's motion already explained (without contradiction) the circumstances. The original motion by which the Court selected L&L to be interim lead Class counsel was based entirely on L&L's resume, and submitted both Mr. Kanovitz and Mr. Drury. When it came time to seek the same for the MDL, Mr. Drury at the very last minute before a very real deadline showed L&L a draft motion that was tailored around himself, and sought to appoint only himself and not Mr. Kanovitz (an attorney with far more class action experience than he). When L&L tried to push back, Mr. Drury literally refused to agree to ask the Court to appoint anyone other than himself. As his boss, Mr. Kanovitz directed him to include both, but Drury refused, all contemporaneously documented by email (R.484-15, Exhibit O). Dueling motions by the same firm were out of the

8

question. Short of wresting the keyboard from Mr. Drury, there was nothing for the firm to do but trust him. Mr. Kanovitz confirmed as much in the email quoted in full in L&L's motion. R.484 at 12.

Having imposed his will by stubbornly refusing to compromise, Mr. Drury now cites the Court's resulting order as supporting his position. He does so despite the Court having told him its true intention. Mr. Drury is essentially saying that having tricked the Court, the Court is now stuck with him. That cannot be.

Mr. Drury also has nothing to say about the irony in his position. He had insisted that the motion seeking the original appointment had to be for only one attorney because that was the only result that advanced the "best opportunity for success." R.494 at 14. Even now, his latest Response insists that he was right about that, and that his actions in demanding that it had to be one and only one attorney (himself) were the only way to protect the Class' interests. *Id.* Bizarrely, he even goes so far as to suggest that L&L tried to hurt the Class by suggesting that Mr. Kanovitz should be appointed too. R.494 at 13-14 (arguing that by seeking to appoint more than one attorney, "L&L sought to thwart Drury's successful interim lead counsel application to serve its own self interests").

That position, of course, cannot be reconciled with his latest attempt to salvage his leadership role by building a coalition with two other law firms who he is now asking to be appointed with him. The hypocrisy is glaring. According to Mr. Drury, L&L jeopardized the Class by contending that Mr. Kanovitz and Mr. Drury should be Class counsel (even though this Court had previously appointed *both* as Interim Class lead counsel) yet he now suggests that the Class be led by no fewer than three attorneys as co-lead. All of this proves not only Mr. Drury's inability to compromise when the situation demanded it, but his willingness to make whatever argument suits his interests at the time.

**V.     There Are No Procedural Defects In L&L's Motion, And L&L Has Not "Forfeited" The Right To Be Lead Class Counsel**

Mr. Drury falls back on a tortured argument that L&L is supposedly foreclosed from seeking to remain Class counsel because Mr. Loevy suggested at the hearing that the relief L&L would seek was along the lines of intervention. To call this objection overly technical would be charitable.

When L&L subsequently conducted the research for this motion, they discovered that Mr. Drury's friendly client (his declaration acknowledges a prior relationship with Mr. Mutnick from

9

before Mr. Drury joined L&L, R.494 at R.495 ¶ 10) does not speak for the Class. The Court formally appointed L&L under Rule 23, and the client cannot override a Court order. *See* Motion, R.484 at 7, citing 1 Newberg & Rubenstein on Class Actions. Under the law, there is thus no need for L&L to formally intervene in order to remain lead Class counsel. L&L has not "forfeited" anything.[6]

It remains the case that if deemed procedurally necessary, L&L will enter appearances for other putative Class members, some of whom L&L has already been in contact with. Representing qualifying Class members is hardly a problem. The putative Class consists of just about anyone in Illinois who had a Facebook account during the relevant time period. Mr. Drury also fails to explain why his new proposed coalition partner law firms are immune from this same issue, as the Court unquestionably never appointed them previously. *See* R.494 at 16 (asking the Court to "modify the Designation Order to designate Drury, Arisohn, and Hedin as interim co-lead counsel or, alternatively, grant them leave to submit an application for interim co-lead counsel pursuant to Fed. R. Civ. P. 23(g)"). Again, Mr. Drury's willingness to make whatever argument suits his interests at the time does not speak well to his qualifications to serve in this important case.[7]

## Conclusion

The Court should clarify that it appointed L&L as lead Class counsel. The Court should also decline to modify that appointment to name Drury Legal as co-lead now that he left the firm. To the contrary, because his appointment was made as a member of L&L, and because he no longer works at the firm, the order should be modified to remove him as Class counsel, without prejudice to his ability to continue to work with lead counsel on behalf of the Class.

---

[6] Although Mr. Drury argues that the law is somehow different here because this case has not yet been certified, he cites no authority, and it would make little sense. Interim Class counsel is a formal appointment under Rule 23, made under the same legal standards as appointment of Class counsel after certification, and interim class counsel "must act in the best interests of the class as a whole." *See* 2003 Advisory Committee Notes to FRCP 23 ("Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole."). Here, L&L *was* formally designated as interim counsel by the Court. After appointment, "class representatives do not have an unfettered right to 'fire' class counsel." *Id*.

[7] Both sides have informed the Court that the other disputes between them do not concern the Court, and need not be part of this Motion. If Mr. Drury chooses to bring up compensation issues at the hearing, L&L will be happy to address them.

DATED: November 7, 2022                                    Respectfully submitted,

                                                                                            s/ Jonathan Loevy


Jonathan Loevy
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900

11

## CERTIFICATE OF SERVICE

      I, Jonathan Loevy, an attorney, certify that I filed the foregoing Reply on November 7, 2022, via CM/ECF, thereby delivering it to counsel of record via CM/ECF.

s/ Jonathan Loevy