IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS AGAINST THE CLEARVIEW DEFENDANTS

## INTRODUCTION

While the Clearview Defendants' (collectively, "Clearview") Memorandum of Law in Opposition to Plaintiffs' Motion for Discovery Sanctions (Dkt. 539) (the "Response") argues that Plaintiffs' discussion of the facts underpinning this motion "is neither accurate nor complete" *id.* at 2, the Response itself lays out the pattern of non-compliance that has characterized Clearview's approach to discovery in this matter. Clearview admits that its initial production of documents relating to Plaintiffs was incomplete, which mistake was discovered by Plaintiffs. Clearview blames a "vendor error." *Id.* at 3. Clearview admits that its supplemental production was incomplete – again, as discovered by Plaintiffs – because responsive documents were "mistakenly not produced." *Id.* And Clearview admits that even after it provided the Court-ordered verification "that their production of documents concerning the named Plaintiffs is fully completed," (Dkt. 425 at 5), its production of documents relating to Plaintiffs was *still* not completed. This time the non-compliance – once again, discovered by Plaintiffs – was attributed to Clearview's counsel. (Dkt. 539 at 5-6.)

And Clearview admits that it has never run a keyword search on its database for Plaintiffs' names or other identifiers, or for "Illinois" to enable Plaintiffs to rebut Clearview's extraterritoriality defense. Astoundingly, Clearview asserts that it is not required to perform keyword searches because "[t]here is no Court order even mentioning this issue that could form the basis for Rule 37(b) sanctions." (Dkt. 539 at 2.) In other words, Clearview purports to excuse its failure to search its database for information relating to Plaintiffs (as well as scraped websites in Illinois) because it has never been specifically ordered to do so.

This Court's Orders did not place limitations on Clearview's discovery obligations. The Court twice ordered Clearview to produce all documents relating to Plaintiffs, first on December 20, 2021 (Dkt. 237), and again on August 18, 2022 (Dkt. 425). In the latter order, the Court also agreed with Plaintiffs that "the Clearview Defendants' extraterritoriality defense puts at issue their scraping of internet websites in [Illinois]" and ordered Clearview to "run ESI searches using [Illinois] as search terms and produce documents responsive to Plaintiffs' Request for Production No. 6." (Dkt. 425 at 9-10.) By its own admission, Clearview has not done so on the database that contains the URLs from which Plaintiffs' biometrics were obtained.

In short, after multiple Court orders, multiple untrue representations to the Court as to compliance, and a false verification that was intended to assuage concerns that Clearview's production was complete, Clearview still hasn't complied with its fundamental obligation to produce all documents relating to Plaintiffs and as to its extraterritoriality defense. Clearview has run out of excuses; sanctions are appropriate.

# ARGUMENT

## I. Clearview Has Repeatedly Violated this Court's Orders

### A. Documents Relating to Plaintiffs

Clearview's assertion that it has not violated the Court's orders is flat-out wrong. With respect to the documents relating to Plaintiffs, Clearview's first, second, and third attempts to comply with the order to produce all documents were all incomplete. Moreover, Clearview's own affidavit – in addition to failing to meet the Court's requirement that it verify that Clearview's "production of documents concerning the named Plaintiffs is fully completed" as of September 1, 2022 (Dkt. 425 at 5) – shows that even today Clearview cannot affirm that its production is complete. Mr. Mulcaire's declaration detailed a process which demonstrated that Clearview's probe image search method does not return all documents relating to the plaintiff in question. To the contrary, Mr. Mulcaire testified that when he first ran Plaintiff Hall's image, the search returned 41 results. He then ran further searches using the results of the first search, and ultimately identified 78 images of Plaintiff Hall in Clearview's database. In other words, the initial search resulted in only an approximate 50% hit rate at best. Tellingly, Mr. Mulcaire did not assert that those 78 images were the sum total of all of the documents relating to Plaintiff Hall in Clearview's database. Nor could he, because his description of the search process itself demonstrates that the probe image searches do not capture all of the images associated with the person being searched.

A reasonable search process under the circumstances would include not only the probe image search described by Mr. Mulcaire, but also a standard ESI keyword search of Clearview's database for Plaintiffs' names and other identifying information. According to Clearview, such a search cannot be run on the SpeedyDB database, but there is no dispute that such a search can be run on the PostgreSQL database. Clearview has simply refused to do it.

In short, just with respect to the documents relating to the named Plaintiffs, Clearview has violated this Court's Orders of December 20, 2021 (Dkt. 237) and August 22, 2022 (Dkt. 425). Clearview was ordered to produce all documents in its database relating to Plaintiffs, and it was ordered to provide verification that its production was complete. Clearview has done neither.

## B.     Contract Documents

Clearview's Response also admits that it violated the Court's order that it produce "any outstanding contract documents within 14 days" of the Court's August 18, 2022 Order. (Dkt. 425 at 7.) Mr. Mulcaire's declaration purported to verify that Clearview's "production of the relevant contract documents [wa]s complete" as of September 1, 2022. Following inquiry from Plaintiffs, Clearview discovered and produced additional contract documents after providing the verification, and well outside the Court's 14-day deadline. Thus, as with the documents relating to Plaintiffs, Clearview's violation of the Court's Order to produce all contract documents is not capable of dispute.

Moreover, Clearview's explanation as to why it had falsely verified the completeness of its production inspires no confidence in its current assertion that it "produced all responsive contract documents by October 7, 2022." (Dkt. 539 at 9.) As detailed in Mr. Mulcaire's declaration offered in support of the Response, he discovered additional contract documents by (a) searching for draft termination letters and (b) discovering that some contract documents were contained in a workspace he had not previously searched. (Dkt. 539-1, ¶ 11-12.) Given that Mr. Mulcaire apparently neither searched for drafts nor searched in all of the workspaces in which contract documents might be located prior to first verifying that all contract documents had been produced, even today neither Plaintiffs nor the Court can have any confidence that all such documents have been produced.

4

### C. ESI Search for "Illinois" in the PostgreSQL Database

As with the documents relating to Plaintiffs and contract documents, Clearview's Response admits noncompliance with this Court's Order. In its August 2022 Order, the Court agreed with Plaintiffs that "the Clearview Defendants' extraterritoriality defense puts at issue their scraping of internet websites in relevant states. …" (Dkt. 425 at 9.) The Court then ordered Clearview to "run ESI searches using the relevant state names as search terms and produce documents responsive to Plaintiffs' Request for Production No. 6." *Id.* at 9-10. Clearview later confirmed that the extraterritoriality defense was limited to Illinois, and thus was obligated to run ESI searches for only one state name.

Although Clearview contends that following the Court's Order it "reviewed and produced thousands of documents that hit on the keyword 'Illinois'," (Dkt. 539 at 11), Clearview does not explain what, exactly, it ran the search on. What is clear, however, is that Clearview did not run this search on its PostgreSQL database of URLs, which is apparently the only database which can provide information as to the "scraping of internet websites in" Illinois. Again, Clearview's failure to comply with the Court's Order is clear.

Clearview attempts to sidestep its noncompliance by suggesting that performing a keyword search on the PostgreSQL database is a "new" issue that has never been addressed by the Court. As noted above, however, the Court did not place limitations on Clearview's obligations to run ESI searches to produce information relating to Clearview's scraping of websites in Illinois. While Clearview has belatedly brought a motion for protective order on this subject,[1] it sought no such protection prior to purporting to comply with the Court's Order, much

---

[1] Clearview's motion for protective order is without merit for the reasons set forth in Plaintiffs' Response to Clearview Defendants' Motion for Protective Order. (Dkt. 540.)

less as a basis for limiting the Court's Order when opposing Plaintiffs' Motion to Compel. (*See* Dkt. 402.)

Simply put, Clearview has a database of scraped URLs that is searchable by keyword. The Court ordered Clearview to run ESI searches using the word "Illinois" to provide information relating to its scraping of websites in Illinois. If Clearview scraped Plaintiffs' images from websites maintained in Illinois, Plaintiffs and the Court are entitled to know that. If Clearview is unwilling to undertake that search despite the Court's order that it do so, the sanction of striking the defense requested in Plaintiffs' Motion for Discovery Sanctions is wholly appropriate.

## II.   Plaintiffs Seek Compliance with the Court's Orders, not Perfection

Having effectively admitted its noncompliance with the Court's Orders, Clearview argues that its noncompliance should be excused because the discovery rules do not call for "perfection." Plaintiffs have never suggested that perfection is the standard; to the contrary, Plaintiffs agree that Clearview should be judged by a reasonableness standard. The facts here show Clearview has fallen far short.

It is not reasonable for a party to represent – repeatedly, both to Plaintiffs and the Court – that its production is complete *after* an order compelling production has been issued, only for Plaintiffs to repeatedly discover those representations to be false. It is not reasonable for a party to provide a Court-ordered verification that its production is complete, only to once again have Plaintiffs discover the verification is false. It is not reasonable for a party's General Counsel to aver that all contract documents have been produced, only to find afterward that he did not know where all of such documents are kept. It is not reasonable for a party to flatly refuse to run keyword searches of the only database available for such searches – *after* being compelled to do

so by Court order – based solely on vague complaints that such searches would be costly and time-consuming.

Plaintiffs did not move for sanctions after the first time they discovered that Clearview had failed to comply with the Court's orders. Nor the second. Nor the third. Indeed, Plaintiffs did not even seek sanctions after they discovered that Mr. Mulcaire's court-ordered verification of completeness was false. Rather, Plaintiffs continued to try to work with Clearview, including offering various solutions for searching the PostgreSQL database, and even offering to conduct the searches itself.

But sanctions are now appropriate. Clearview has not only failed to comply with multiple court orders, but it has refused to conduct the searches ordered by the Court, despite Plaintiffs' offers of assistance. Plaintiffs do not expect perfection, but they and the Court are entitled to reasonable and good faith efforts to conduct discovery and comply with the Court's orders. Clearview has done neither.

### III. Clearview's Noncompliance is not Excused by Good Faith or Lack of Prejudice

Clearview's citation to cases denying imposition of sanctions due to the "good faith" of the offending party are inapplicable here. As the Response notes, the court in *Radiologix, Inc. v. Radiology & Nuclear Medicine, LLC*, 2019 WL 354972 (D. Kan. Jan. 29, 2019) declined to award sanctions due to a single issue of noncompliance that was caused by a technical issue which was quickly rectified. Similarly, *Sapia v. Bd. Of Educ. Of City of Chi.*, 2020 WL 12139021 (N.D. Ill. Nov. 30, 2020) arose from a single late production for which the defendant provided an adequate explanation.

Here, in contrast, Clearview has – due to mistakes purportedly made by its vendor, its counsel, its General Counsel – repeatedly misrepresented that its production was complete. The Court ordered it to provide a verification that its production was complete, which verification

was false. And now it simply refuses to conduct keyword searches on the PostgreSQL database, all but guaranteeing that its production remains incomplete. Unlike the offending parties in its cited cases, Clearview's lack of compliance has been persistent and long-standing, and Clearview remains out of compliance with the Court's orders even today.

Clearview's lack of prejudice argument fares no better. Plaintiffs' counsel has invested hundreds of hours in repeatedly having to review Clearview's faulty productions, bring multiple motions to compel, and explain to Clearview *ad nauseum* why its production was incomplete. This prejudice alone justifies awarding Plaintiffs their attorneys' fees caused by Clearview's lack of compliance.

But far more prejudicial is Clearview's outright refusal to run keyword searches on the PostgreSQL database. Without those searches, Plaintiffs are severely handicapped in establishing both the extent of Clearview's BIPA violations for each Plaintiff, as well as rebutting Clearview's assertion of its extraterritoriality defense. As Clearview itself notes, the sanction of striking defenses is justified by willful or repeated disobedience of a court order. (Dkt. 539 at 15.) There can scarcely be a more vivid example of willful disobedience than Clearview's refusal to run keyword searches after being ordered by the Court to do so.

Courts in the Seventh Circuit agree. In *Logan v. Gary Community School Corp.*, 2009 WL 187811 (N.D. Ind. Jan. 23, 2009), the court (like here) ordered the defendants to comply with discovery obligations by a date certain, and to provide a verification that the production of documents was complete. Like Clearview here, the defendants had "a long history of noncompliance with Court Orders" relating to discovery. *Id.* at * 1. While the court considered entry of default judgment as an appropriate sanction, it determined that the less harsh remedy

8

was to strike the defendants' affirmative defenses which "directly relate[d] to the substance of the discovery sought by Plaintiff." *Id.* at 2. The same analysis is appropriate here.

Clearview also complains that Plaintiffs provided no authority for the suggestion that an appropriate sanction would be to appoint a Special Master to conduct the searches or permit Plaintiffs to do so. Federal Rule of Civil Procedure 53, however, authorizes the use of a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of this district." Fed. R. Civ. P. 53 (a)(1)(C). Assuming that there is not an available district judge or magistrate judge with the ability to timely conduct the necessary searches, appointment of a Special Master to conduct such an *in camera* review is wholly appropriate.

## CONCLUSION

Time after time, the Court has granted Clearview the opportunity to cure its discovery missteps in this case. Time after time, Clearview has averred that it has done so. Time after time, Plaintiffs have discovered that Clearview's averments were false. And now, Clearview simply refuses to conduct the searches that would locate additional documents relating to Plaintiffs and determine which websites, if any, have been scraped in Illinois. Sanctions are appropriate, and Plaintiffs respectfully request that the Court grant this motion, enter sanctions against Clearview, and award Plaintiffs all such further relief the Court deems just and proper.

Dated: May 5, 2023          Respectfully submitted:

By: */s/ Jon Loevy*
Jon Loevy
jon@loevy.com
Michael Kanovitz
mike@loevy.com
Thomas M. Hanson
hanson@loevy.com

9

                                        **LOEVY & LOEVY**
311 N. Aberdeen St.
Chicago, Illinois
312.243.5900

Counsel for Other Plaintiffs:

Frank Hedin
Joshua Arisohn
Scott Drury
Steven Webster
Michael Drew
Michael Wood

## **CERTIFICATE OF SERVICE**

I, Thomas M. Hanson, an attorney, hereby certify that, on May 5, 2023, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Thomas M. Hanson
Thomas M. Hanson