**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135 |
| | Judge Sharon Johnson Coleman |
| | Magistrate Judge Maria Valdez |

**<u>PLAINTIFFS' *UNOPPOSED* MOTION AND MEMORANDUM IN SUPPORT OF PRELIMNARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Jon Loevy
Michael Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 4

       A.     The New York Times Report Triggers a Wave of Litigation Ultimately
              Consolidated into this MDL.................................................................... 4

       B.     The Litigation.......................................................................................... 5

       C.     The Settlement Negotiations ................................................................... 6

III.   TERMS OF THE PROPOSED SETTLEMENT ............................................... 7

       A.     The Settlement Class and Subclasses ..................................................... 7

       B.     A Unique Structure ................................................................................. 8

       C.     Monetary Relief ...................................................................................... 9

       D.     Notice Plan and Settlement Administration.......................................... 11

       E.     Exclusion and Objection Procedure....................................................... 13

       F.     Release of Liability ................................................................................ 14

       G.     Attorneys' Fees and Incentive Awards .................................................. 14

IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL......... 14

       A.     The Strength of the Plaintiffs' Case Compared to the Amount of the
              Settlement Offer Favors Preliminary Approval ..................................... 16

       B.     The Potential Length, Complexity, and Expense of Further Litigation
              Favor Preliminary Approval .................................................................. 21

       C.     The Opinion of Competent Counsel Supports Preliminary Approval ................. 22

              1.     Loevy + Loevy has Extensive Experience in Litigating and Settling
                     Large Class Actions ................................................................... 22

              2.     Interim Lead Class Counsel has Sought Input from and Given Due
                     Consideration to Co-Counsel ..................................................... 23

       D.     The Stage of the Proceedings and the Amount of Discovery Completed
              Support Preliminary Approval............................................................... 24

V.     THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED ....................... 24

VI.     CONCLUSION ................................................................................................................ 25

## **TABLE OF AUTHORITIES**

### **RULES**

Fed. R. Civ. P. 23(c)(2)(B)(i)– (vii) ........................................................................ 25

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 24, 25

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 14

Fed. R. Civ. P. 23(e)(4) ............................................................................................ 25

### **STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................................... 25

### **CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727
   (N.D.    Ill. Feb. 28, 2012) ............................................................................ 16, 24

*American Civil Liberties Union, et al. v. Clearview AI, Inc.*, Cook Cty. Cir. Ct. No.
   2020 CH 04353 ..................................................................................................... 6

*Ameritech Benefit Plan Comm. v. Communication Workers of Am.*, 220 F.3d 814 (7th
   Cir.    2000) ........................................................................................................ 18

*Armstrong v. Bd. Of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ............ 14

*Barnett v. Apple*, 469 Ill.Dec. 759, 225 N.E.3d 602 (Ill. 2022) ................................... 20

*Bhavilai v. Microsoft Corp.,* No. 22 C 3440, 2024 WL 992928 (N.D. Ill. Feb. 8, 2024) ............ 20

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ............................. 22

*Boone v. Snap Inc.*, Cir. Ct. DuPage Cty. Ill. No. 2022-LA-708 .................................. 21

*Carmean v. Macy's Retail Holdings, Inc.* 20-cv-04589 (N.D. Ill.) ............................... 19

*Cothron v. White Castle Systems, Inc.*, 23 IL 128004, ¶ 42, 216 N.E.3d (2023) ..................... 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................... 25

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ............................................. 15, 16

*Felzen v. Andreas*, 124 F.3d 873 (7th Cir. 1998) ...................................................... 14

*Flood v. Dominguez*, Case No. 08-cv-153 (N.D. Ind.) .................................................. 23

*In re AT&T Mobility Wireless Data Svcs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................... 15, 16, 17, 25

*In re Facebook Biometric Information Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018) ........... 17

*In re Facebook Biometric Information Privacy Litigation*, N.D. Cal. No. 15-cv-3747-JD ............................................................................................ 20

*In re Northfield*, 2012 WL 366852 ............................................................................... 25

*In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................................................................ 16

*In re TikTok, Inc. Consumer Privacy Litig.,* N.D. Ill. No. 20-cv-4699 ........................................ 21

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ........................................ 24

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ....................................................... 15, 17, 22

*Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679 ........................................................ 20

*Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ........................................................................................ 15

*Moffat v. UniCare Midwest Plan Group 31451*, No. 04-C-5685, 2006 WL 897918 (N.D. Ill. Apr. 5, 2006) ................................................................. 18

*Rivera v. Google, LLC*, Cook Cty. Cir. Ct. No. 2019-CH-990 ...................................... 21

*Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) .................................. 22

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................ 21

*Sheppard v. Fantasia Trading LLC*, __ F. Supp. 3d __, 2024 WL 1916763 (C.D. Cal. Apr. 25, 2024) ............................................................................... 20

*Solis v. Hilco Redevelopment LLC*, N.D. Ill. No. 20-cv-2348 ..................................... 23

*Stauffer v. Innovative Heights Fairview Heights, LLC,* No. 3:20-CV-00046-MAB, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) .......................................... 20

*Svoboda v. Amazon.com, Inc.*, No. 21-C-5336, 2024 WL 1363718 (N.D. Ill. Mar. 30, 2024) ............................................................................... 17

*Synfuel Techs. Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .......... 14, 15, 16, 24

*Thillens, Inc. v. Community Currency Exch. Assoc. Of Ill. Inc.*, 97 F.R.D 668 (N.D. Ill. 1983) ........................................................................................ 18

*Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) .............. 22

## I.    INTRODUCTION

The Settlement Agreement before the Court, if approved, will resolve twelve class

actions filed in five different districts, all of which have been consolidated into this action by the

Judicial Panel on Multidistrict Litigation.[1] Each of the consolidated cases was brought on behalf

of individuals who allege that their privacy rights were violated under state and federal law.

Specifically, Plaintiffs allege that Defendant Clearview AI, Inc. ("Clearview") unlawfully

collected their biometric facial geometry by "scraping" their photos from publicly available

websites and processing them into a massive biometric database. Clearview's customers are

entities which have an image of an individual whom they want to identify – for example, an

image from a security camera of an individual suspected of theft or assault. Clearview's

proprietary software allows it to "probe" the image of the unidentified individual against its

database and, using facial recognition, potentially identify the individual in question.

The litigation of these consolidated cases – both before and after consolidation – included

multiple rounds of pleadings motions, extensive discovery and expert analysis, and numerous

discovery motions. Plaintiffs' claims survived dismissal, leading the parties to conduct written

discovery substantiating certain facts asserted in Plaintiffs' claims against Clearview but

---

[1] The original MDL transfer order dated January 8, 2021 included the following cases: *Mutnick v. Clearview AI, Inc.*, N.D. Ill. No. 20-512; *Hall v. CDW Government* LLC, N.D. Ill. No. 20-846; *Marron v. Clearview AI, Inc.*, N.D. Ill. No. 20-2989; *Calderon v. Clearview AI, Inc.*, S.D.N.Y. No. 20-1296; *Broccolino v. Clearview AI, Inc.*, S.D.N.Y. No. 20-2222; *McPherson v. Clearview AI, Inc.*, S.D.N.Y. No. 20-3053; *Burke v. Clearview AI, Inc.*, S.D.N.Y. No. 20-3104; *John v. Clearview AI, Inc.*, S.D.N.Y. No. 20-3481; *Roberson v. Clearview AI, Inc.*, S.D.N.Y. No. 20-3705. Dkt. 1. Two additional cases were transferred to the MDL on June 21, 2021: *Vestrand v. Clearview AI, Inc.*, C.D. Cal. No. 21-4360 and *Hurvitz v. Clearview AI, Inc.*, E.D.N.Y. No. 21-2960. Dkt. 108. An additional case was transferred on October 5, 2021: *Renderos v. Clearview AI, Inc.*, N.D. Cal. No. 21-4572.

undermining Plaintiffs' claims against Macy's and the prospect of certifying a defendant class of Clearview's customers.

On March 6, 2023, Plaintiffs and Clearview engaged in mediation with the Honorable Wayne Anderson (ret.). While they made significant progress toward resolution, settlement of the matter was complicated by three factors: First, the sheer number of people in the class – virtually anyone in the United States whose face appears on the internet – meant that whatever relief was afforded to the class would have to be significant. Second, in settling a separate lawsuit,[2] Clearview had already agreed to extensive injunctive relief pursuant to which it had ceased several of the allegedly violative practices challenged in this matter; accordingly, further injunctive relief would not provide meaningful additional consideration for the Classes. And third, Clearview was a start-up company with few assets that could not possibly pay the amount of money needed to provide meaningful relief to the Class. Indeed, Clearview was unlikely to stay in business while paying attorneys to defend it.

Thus, Clearview and the Class members were trapped together on a sinking ship: the potential liability was massive, there was no money for a substantial settlement, and the costs of litigation itself would bankrupt Clearview before the case ever got to trial, leaving nothing for the Class members.

To address this state of affairs the sides worked together – with significant and ongoing assistance from Judge Andersen – to forge a creative settlement structure, one that could obtain meaningful consideration for the Class members by giving Clearview the breathing room needed

_____

[2] *American Civil Liberties Union, et al. v. Clearview AI, Inc.*, Cook Cty. (Ill.) Cir. Ct. Chancery Div. No. 2020 CH 04353.

to become valuable and make a go of its business (with its practices modified to address the legal concerns raised by the Class). The agreement the sides eventually reached awards the Class members a significant stake in Clearview's future value – a monetary amount equal to the value of 23% of Clearview's capitalization as of September 6, 2023 – upon an initial public offering (IPO), sale or other liquidation event.

While it is unknown what valuation Clearview can ultimately achieve, operating legally and without the threat of ruinous litigation hanging over it, the company was valued at over $130 million in 2021, raised funds in a January 2022 convertible note offering with a valuation of as much as $201.75 million, and in early 2024 was valued by a third party at $225 million.[3] Even if that most recent valuation and Clearview's market capitalization remained the same until an IPO (Clearview certainly intends to work to massively increase its value and seek additional investment to fuel its growth), after a reasonable incentive award to the Class Representatives and any attorneys' fees awarded by the Court are paid, a net common fund in excess of $31 million would be available to satisfy class members' claims.

This is an extraordinary result given the challenges of the litigation and the lack of funds for a settlement. Indeed, when measured as a percentage of Clearview's value or revenue, this proposed settlement *dwarfs the highest privacy violation awards ever achieved*, such as those against Facebook, Google, TikTok and Snapchat, all of which settled for a fraction of a percent of those defendants' values.

---

[3] As set forth in the Declaration of Hon. Wayne R. Andersen (ret.) attached hereto as Exhibit B, Clearview provided confidential financial information to Interim Lead Class Counsel and Judge Andersen throughout the course of the settlement negotiations. Clearview has requested that those materials remain confidential but has indicated it will provide them for the Court's *in camera* review upon request.

As a result, the Settlement is plainly fair, adequate, and reasonable. Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval to the Class Settlement, (ii) approving the proposed notice plan, and (iii) scheduling a final fairness hearing.

## II.    BACKGROUND

### A.    The New York Times Report Triggers a Wave of Litigation Ultimately Consolidated into this MDL

On January 18, 2020, the New York Times published a story with the headline, "The Secretive Company that Might End Privacy as We Know It." The story described how Clearview's founder, Defendant Hoan Ton-That, had designed a tool that used facial recognition to match photos against a database of three billion images[4] Clearview had scraped from Facebook, Venmo, and millions of other websites. According to the report, more than 600 law enforcement agencies had started using Clearview in the preceding year, as well as a handful of private companies for security purposes.

The article set off a wave of lawsuits filed against Clearview, alleging violations of not only the Illinois Biometric Privacy Act – the sole state law expressly prohibiting collection of individuals' biometric information such as facial geometry without consent – but also a host of other state privacy laws. The first such lawsuit – filed by Interim Lead Class Counsel ("Lead Counsel") – was filed in this District on January 22, 2020.[5]

On August 18, 2020, Clearview moved to consolidate ten existing actions into a multidistrict litigation pursuant to 28 U.S.C. 1407. *In re Clearview AI, Inc. Privacy Litigation*,

---

[4] According to Clearview's discovery responses in this matter, its database contained approximately 10 billion images as of October 29, 2021. *See* Ex. E, No. 8

[5] Undersigned counsel were in position to file so soon because our firm had already been investigating Clearview's practices well in advance of the article being published.

MDL No. 2967, Dkt. 1. Following briefing and oral argument, on December 15, 2020 the Judicial Panel on Multidistrict Litigation ordered that nine of the pending actions be consolidated into this action. *Id.*, Dkt. 50. The JPML ordered two additional cases transferred to this MDL on June 21, 2021, *Id.*, Dkt. 66, and another on October 5, 2021. *Id.*, Dkt. 95.

### B. The Litigation

Since consolidation into this MDL on January 8, 2021, this matter has been hotly contested and heavily litigated. Plaintiffs filed their Consolidated Class Action Complaint on April 9, 2021, naming as defendants Clearview, its co-founders Hoan Ton-That and Richard Schwartz, Clearview's affiliate Rocky Mountain Data Analytics LLC, and Clearview's general counsel, Thomas Mulcaire. Dkt. 29. Also named as a defendant was Macy's, Inc., individually and on behalf of a defendant class comprised of private entities who had used Clearview for security purposes. *Id.* On the same day, Plaintiffs moved for a preliminary injunction, Dkt. 30, which ultimately resulted in a stipulation that Clearview would cease certain BIPA-violating practices. Dkt. 97. Each Defendant filed a motion to dismiss, Dkts. 87, 111, which triggered voluminous briefing not only by the parties but by various advocacy groups as *amici curiae*.

The Court ultimately granted in part and denied in part the motions to dismiss in orders dated January 27, 2022, and February 14, 2022. Dkts. 272 & 279. Defendants sought reconsideration and interlocutory appeal, to no avail. Dkts. 283, 307. Meanwhile, even with the motions to dismiss pending, Plaintiffs forged ahead with written discovery and third-party subpoenas. Plaintiffs filed their first motion to compel discovery on November 18, 2021, Dkt. 215, triggering a dispute with Clearview that would ultimately lead to competing motions for sanctions against Clearview and for a protective order which were still pending when the matter was stayed for settlement discussions. Plaintiffs' motion to compel against Macy's was less successful. The Court denied Plaintiffs' initial motion to compel Macy's to provide Rule 26(a)(1)

disclosures and discovery responses, and their subsequent motion to compel Macy's to provide further responses to Plaintiffs' written discovery. Dkts. 165, 388.

### C. The Settlement Negotiations

Plaintiffs and Clearview first discussed settlement in mid-2022, engaging Hon. Wayne Andersen (ret.) to explore a potential resolution. Ex. B, Andersen Decl. ¶ 6, While the parties held extensive discussions facilitated by Judge Andersen at that time, no resolution was reached. In late December of 2022, Plaintiffs and the Clearview Defendants again expressed interest in exploring settlement. Plaintiffs and Clearview re-engaged Judge Andersen as a mediator, and conducted mediation on March 7, 2023. From the outset, it was clear that the case would not be settled with an adequate cash payment. The size of the proposed plaintiff class and subclasses – encompassing virtually any individual whose face has been posted on the internet – mandates that any monetary settlement be substantial. And Clearview simply does not have the means to make such a payment. Clearview is a startup with few unencumbered assets, and the pendency of this litigation also meant that it could not attract additional funding rounds necessary for its growth. The company provided convincing evidence of its financial condition demonstrating that it could not even survive to continue paying to fight the litigation.

Nor would it have made sense to give up on financial relief in order to secure an injunction. Collateral litigation, brought after these consolidated cases were filed, sought and settled for injunctive-only relief that addressed the landscape of needed changes to the company's practices as well as programmatic accommodations for Class members. *See American Civil Liberties Union, et al. v. Clearview AI, Inc.*, Cook Cty. Cir. Ct. No. 2020 CH 04353. It also ended any ongoing violations by the putative defendant class. Among other matters, that settlement permanently bans Clearview from granting free or paid access to its database to private companies, unless explicitly exempt under BIPA, thereby primarily limiting it

6

to government customers with legal authority to use the database, and also allows Class members to remove themselves from the database.

These realities led the sides to seek a creative solution by obtaining for the class a percentage of the value Clearview could achieve in the future, operating legally. Over the ensuing months, with the help of Judge Andersen as well as securities and tax experts retained by Interim Lead Class Counsel, the Parties developed the structure and negotiated the terms of this novel approach.

## III.     TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are summarized here and are set forth in full in the Settlement Agreement attached as Exhibit A. The expertise of the proposed claims administrator is described in the Declaration of Cameron R. Azari, Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), attached as Exhibit C.

### A.     The Settlement Class and Subclasses

The proposed Settlement will establish a Nationwide Settlement Class and various state Settlement Subclasses as follows:

(a)     **The Nationwide Class**: All individuals who resided in the United States of America between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database;

(b)     **The Illinois Subclass**: All individuals who resided in the state of Illinois between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database;

(c)     **The California Subclass**: All individuals who resided in the state of California between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data were or are contained in the Biometric Database;

(d)     **The New York Subclass**: All individuals who resided in the state of New York between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database; and

(e)     **The Virginia Subclass**: All individuals who resided in the state of Virginia between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

**B.     A Unique Structure**

The Parties have agreed to Clearview's payment of substantial monetary relief to the Class and Subclasses.  As described in more detail below, the Settlement Fund will be based upon either a monetary amount equal to a 23% stake in Clearview as of September 6, 2023 (the stake is subject to the same dilution by future investments as for the founders), or alternatively on 17% of Clearview's GAAP recognized revenue for the period commencing on the date of final settlement approval and ending with the election of this latter option, which expires on September 30, 2027. The Class has the right to elect which of these payments it prefers.

To exercise this right and to protect the interests of the Class and Subclasses overall, the Parties have agreed to the appointment of Hon. Sidney I. Schenkier (ret.) to act as a Settlement Master. As such, Judge Schenkier will have the right, (i) upon reasonable notice, to inspect the books and records of Clearview, (ii) to request and receive bi-annual interviews with the

Clearview management team, and (iii) to receive information regarding the price and terms of any secondary sales of Clearview stock. In addition to holding the 23% stake until an IPO, or exchanging it for the 17% of revenues, the Special Master will also have the authority to sell the Class's rights to a third-party (immediately distributing the proceeds to the Class) if he deems it in the Class's best interests.

This structure both provides meaningful relief to the Class and flexibility in how to best realize value from its stake in Clearview.

### C.   Monetary Relief

The Settlement Fund will be funded through one of four ways, summarized below:

(1) An IPO. If Clearview consummates an IPO, the Settlement Payment will be determined by multiplying the number of shares equaling 23% of Clearview's capitalization as of September 6, 2023, calculated on a fully-diluted basis (the "Settlement Stake") by the public offering price. As noted above, Clearview's current estimated enterprise value may be as high as approximately $225,000,000.00. If this value were reflected in the IPO price with Clearview's current capitalization, the Settlement Fund would total $51,750,000.00.

(2) A "Deemed Liquidation Event." [6] Generally speaking, if Clearview enters into a merger or consolidation, or sells its assets, it will make a cash payment equal to what the Class

---

[6] A "Deemed Liquidation Event" means: (a) a merger or consolidation in which (i) Clearview is a constituent party or (ii) a subsidiary of Clearview is a constituent party and Clearview issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving Clearview or a subsidiary in which the shares of capital stock of Clearview outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital stock that represent, immediately following such merger or consolidation, at least a majority, by voting power, of the capital stock of (1) the surviving or resulting entity; or (2) if the surviving or resulting entity is a wholly owned subsidiary of another entity immediately following such merger or consolidation, the parent corporation of such surviving or resulting entity; or (b) the sale, lease, transfer, exclusive

and Subclasses would have received had they been issued stock equivalent to the Settlement

Stake immediately prior to the liquidation event. Again, the gross relief to the Class and

Subclasses would total $51,750,000.00 if the deemed liquidation event was based on Clearview's

current capitalization and a recent, estimated valuation.

(3) A "Cash Demand." At any point on or before September 30, 2027, if he deems it in

the best interest of the Class and Subclasses, the Settlement Master may elect to require

Clearview to pay a cash demand payment equal to 17% of Clearview's GAAP recognized

revenue for the period commencing on the date of final approval and ending on the date of the

cash demand. Although it is difficult to estimate the amount of settlement proceeds from the cash

demand option, the Settlement Master would only elect it if he deemed it a better deal for the

class than the potential equity-based payments described above.

(4) The sale of the right to receive the settlement payment. At any time after Final

Judgment, if he deems it in the best interests of the Class and Subclasses, the Settlement Master

has the right to elect to sell the right to receive the settlement payment to a single third party for a

commercially reasonable price, subject to certain conditions. Again, while the settlement

proceeds from such a sale are difficult to estimate, the benefits to the Class and Subclasses would

necessarily exceed the equity-based options set forth above in the Settlement Master's

estimation.

---

license or other disposition, in a single transaction or series of related transactions, by Clearview
or any subsidiary of Clearview of all or substantially all the assets of Clearview and its
subsidiaries taken as a whole, or the sale or disposition (whether by merger, consolidation or
otherwise, and whether in a single transaction or a series of related transactions) of one or more
subsidiaries of Clearview if substantially all of the assets of Clearview and its subsidiaries taken
as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer,
exclusive license or other disposition is to a wholly owned subsidiary of Clearview.

Regardless of how the Settlement Fund is established, that Fund will be the source of all attorneys' fees and incentive payments to the named Plaintiffs as approved by the Court.[7] The remainder will be distributed to Class and Subclass Members who submit an Approved Claim on a pro rata share based on each claimant's state of residence as follows: Approved claimants who resided in Illinois during the relevant time period will be entitled to 10 shares of the Net Settlement Fund; those who resided in California, New York or Virginia during the relevant time period will be entitled to 5 shares of the Net Settlement Fund, and those who did not reside in any of the four subclass states will be entitled to 1 share of the Net Settlement Fund.

### D. Notice Plan and Settlement Administration

The parties have selected Epiq as the settlement administrator. Epiq is an industry leader in class administration, having implemented more than a thousand successful class action notice and settlement administration matters, including some of the most complex and significant notice programs in recent history. As set forth in detail in Exhibit C, Epiq has particular expertise in privacy and data breach class actions. For its own part, Epiq has the necessary privacy and security protocols to ensure data and personal privacy of the class members.

Epiq has proposed a detailed Notice Plan to address the unique circumstances of this case, in which direct notice will be unavailable for almost the entire Class.[8] Accordingly, Epiq

---

[7] Settlement administration fees are solely Clearview's responsibility and will not diminish the recovery available to the Class.

[8] As Interim Lead Class Counsel learned through the discovery process in this matter, Clearview does not collect nor know the actual identity of persons in the biometric database. Rather, it provides its customers with the images, if any, that match a photo of an unidentified individual submitted by the customer, together with the internet location(s) from which Clearview obtained the matching image(s). The customer is then able to visit those websites to conduct their own research in an effort to determine the subject's identity. This process was demonstrated during discovery in this matter: in order to determine whether any particular individual's images were included in the database, that individual was required to submit a photo so that Clearview could

will undertake a large-scale media notice campaign, including digital/internet notice and social media, internet sponsored search listings, and an informational release. The combined measurable reach of the proposed Notice Plan is 70% of adults aged 18+ in the United States, an average of 2.6 times each.

The proposed Notice Plan includes targeted digital advertising on the selected advertising networks *Google Display Network, Yahoo Audience Network*, *Outbrain Network,* and *Taboola Network* which together represent thousands of digital properties across all major content categories, including major photo-sharing sites. Digital Notices will be targeted to selected target audiences and are designed to encourage participation by Settlement Class Members—by linking directly to the Settlement Website, allowing visitors easy access to relevant information and documents. Consistent with best practices, the Digital Notices will use language from the Class Notice, which will allow users to identify themselves as potential Settlement Class Members. Digital Notices will be in both English and Spanish. The Digital Notices will also be placed on Facebook, Instagram, and X (Twitter), as well as photo-sharing sites such as Flickr, Imgur, Tumblr, and others – of particular importance here, given the frequent use of those platforms to post facial images collected in Clearview's database. All told, Epiq expects the Digital Notices to generate 362 million impressions during the Notice period. The Digital Notices will link directly to the Settlement Website, which will include relevant pleadings, FAQs, contact information for the Settlement Administrator, and information on how to opt out or object to the proposed settlement.

---

conduct probe searches against the database to determine whether any matching photos existed, and if so whether their identity could be determined from the hyperlinks that accompanied the matching photos.

The proposed Notice Plan also calls for sponsored search listings on the three most frequently visited internet search engines: Google, Yahoo, and Bing. Epiq will also issue a press release over PR Newswire's US1 and Hispanic newlines in English and Spanish to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States, as well as approximately 4,500 websites, online databases, internet networks, and social networking media.

The draft of the long-form notice that will appear on the Settlement Website is attached as Exhibit D. The long-form notice will contain a detailed summary of the relevant information about the Settlement, including the Settlement Website address and how Settlement Class Members can file a Claim Form online or by mail. With any method of filing a successful Claim Form, Settlement Class Members will receive direct, digital payments. Epiq will maintain a vigorous, multi-layered fraud detection process to prevent, detect, and provide in-depth analysis regarding possible fraudulent claim submissions.

### E. Exclusion and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections are set forth in the Class Notice, which also informs Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The Class Notice also informs Settlement Class Members that they will be bound by the Release contained in the Settlement Agreement unless they exercise their right to exclusion in a timely manner.

### F. Release of Liability

In exchange for the relief described above, the Settlement Class Members who do not exclude themselves will provide the Released Parties (including the Macy's Defendants) a full release of all Released Claims, arising from or relating to the subject matter of the Litigation and all claims that were brought or could have been brought in the Litigation, by Plaintiffs and/or the Settlement Class Members.

### G. Attorneys' Fees and Incentive Awards

Subject to the Court's approval, attorneys' fees are to be paid out of the Settlement Fund. Under the Settlement Agreement, Class Counsel have agreed, with no consideration from Defendants, to limit their request for attorneys' fees to no more than 39.1% of the Settlement Fund, plus their reasonable litigation costs and expenses. The Class Representatives also intend to move for Incentive Awards, subject to the Court's approval, equal to the lesser of an amount equal to 50 pro rata shares of the Net Settlement Fund or $1,500.00 for their contributions to this litigation.

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Synfuel Techs. Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Application of this standard involves a well-established two-step process. *Armstrong v. Bd. Of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 124 F.3d 873 (7th Cir. 1998). The first step, preliminary approval, assesses whether the proposed settlement falls "within the range of possible approval," in order "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d 314. Once preliminary approval is granted, class

members are notified of the settlement, and the court and parties proceed to the second step, the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Svcs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test must be used to determine whether a proposed settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). At the preliminary approval stage, courts consider the following four factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) the length, complexity, and expense of further litigation; (3) the opinion of competent counsel; and (4) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).[9] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314). Here, each factor supports the Settlement, which this Court should find well within the range of possible approval.[10]

---

[9] One additional factor – the amount of opposition to the settlement – is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT&T*, 270 F.R.D. at 349. Accordingly, it is not addressed here.

[10] In addition to these factors, the Seventh Circuit has identified several "red flags" that may suggest a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-26 (7th Cir. 2014). The only even arguable concern here is the first one. While the total class recovery is in fact established in equity terms, the future dollar value of the equity is not known. This is not a red flag given that the future value cannot be known. Moreover, while Clearview has some control over its future valuation (it could choose to give up and not work to increase its value) its incentives to become as valuable as possible are aligned with those of the Class to recover as much as possible. As detailed in Judge Andersen's declaration, this aspect of the settlement was

A.      **The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted); *see also Eubank.*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement")

However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete

---

not born of collusion or a desire on the part of Class Counsel to "cash in" at the expense of the Class. To the contrary the settlement is structured in this way precisely to provide maximum value to the Class, and the attorneys are in the same boat with the Class in that any fee award is just as contingent and delayed as payment to the Class members.

victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1200) (internal quotations omitted). In terms of tangible monetary relief, the proposed Settlement warrants approval, and that is true both when compared to other similar BIPA class actions, and when viewed in light of the risks of a jury trial, potential appeals, and the ultimate collectability of any judgment.

The Class claims against Clearview asserting Illinois BIPA violations are strong, and highly likely to have been certified and survived summary judgment. There is ample case law under BIPA to support this result. *See, e.g., In re Facebook Biometric Information Privacy Litig.*, 326 F.R.D. 535, 542-49 (N.D. Cal. 2018 (certifying class of Facebook users for whom Facebook created and stored facial geometry); *Svoboda v. Amazon.com, Inc.*, No. 21-C-5336, 2024 WL 1363718 (N.D. Ill. Mar. 30, 2024) (same). Still, putting aside the inherent uncertainty in a jury trial, recent *dicta* from the Illinois Supreme Court in *Cothron v. White Castle Systems, Inc.*, 23 IL 128004, ¶ 42, 216 N.E.3d 918, 929 (2023) has led to a still-unresolved argument as to whether the statutory damages in BIPA are mandatory (as Plaintiffs contend) or discretionary. It is unlikely this issue would have been resolved prior to trial in this matter, and if so, uncertain in who's favor.

The claims under California, New York and Virginia law are less strong in that application of those statutes and common law principles to the unauthorized collection of biometric data is a relatively undeveloped area of law. While this Court denied Clearview's motion to dismiss as to most of those claims, Clearview would have raised those arguments again at summary judgment, at trial, and on appeal.

Moreover, the risk of a pyrrhic victory loomed large. Clearview plainly lacked and lacks sufficient funds for a meaningful settlement and was likely to be bankrupted by its costs of

17

litigation alone. Even the most dead-bang winner claims are worthless when brought against an empty pocket defendant. As Judge Andersen explains:

> I also was convinced that even a 'victory' by the Class after a long and expensive trial would not necessarily lead to a meaningful recovery for the Class. Clearview did not have the funds to pay a multi-million-dollar judgment. Indeed, there was great uncertainty as to whether Clearview would even have enough money to make it through to the end of trial, much less fund a judgment. In addition, Clearview explained, and substantiated, that certain of its convertible note holders possessed security interest in the technology being used by Clearview. This meant that, in the event of a Clearview bankruptcy – during litigation or after trial – the holders of those security interests would have priority to any claim by the Class after a judgment, leaving little to nothing with which to satisfy a judgment. Ex. B, ¶ 13.

The claims against Macy's are being released in the settlement and so should also be considered at the preliminary approval stage along with the claims against the putative defendant class. There were and are multiple problems with these claims. Unlike the certification of plaintiff classes, which are difficult but routine, defendant classes are rarely granted, particularly given courts' "reluctan[ce] to certify [a] Defendant Class based on due process and other related concerns." *Moffat v. UniCare Midwest Plan Group 31451*, No. 04-C-5685, 2006 WL 897918, * 7 (N.D. Ill. Apr. 5, 2006) (citing *Ameritech Benefit Plan Comm. v. Communication Workers of Am.*, 220 F.3d 814, 820 (7th Cir. 2000)); *see also Thillens, Inc. v. Community Currency Exch. Assoc. Of Ill. Inc.*, 97 F.R.D 668, 674-75 (N.D. Ill. 1983) (noting "great judicial reluctance to certify a defendant class when the action is brought by a plaintiff class"). Additionally, discovery showed that certification of a defendant class was questionable because of Macy's unique defenses, which are uncommon and atypical of the putative defendant class. For example, discovery showed that Clearview made a contractual covenant, warranty and representation solely to Macy's – and not other customers – that it would not include any biometric data of Illinois residents while providing services to Macy's.

Certification of a defendant class (or a plaintiff class against Macy's) would have been particularly problematic based on the evidence adduced in discovery, which showed that the Clearview customers neither collected nor possessed any information in the biometric database, contrary to what plaintiffs had hoped.[11] This meant that the plaintiff class, defined in the MDL to include all individuals whose biometric information is in Clearview's database, was overbroad as to Macy's or the putative defendant class, containing millions of individuals with no claim against Clearview's customers. Even if it were appropriate to certify a narrower class of individuals whose images the customers sent to or received from Clearview, this theory was abandoned years ago in favor of the broader class definition of the MDL *See Carmean v. Macy's Retail Holdings, Inc.* 20-cv-04589 (N.D. Ill.) Dkts. 1, 30 (entering voluntary dismissal of complaint seeking certification of a class of Illinois residents who visited a Macy's store); *In re Clearview*, 21-cv-00135 (N.D. Ill.) Dkt. 96 (filing appearance on behalf of Carmean in the MDL. This limitation made it not only a vastly smaller class of arguably aggrieved individuals (paling in comparison to the settlement Classes here), the limitation made it nearly impossible even to locate representatives who had standing to attempt such claims.

Moreover, proving liability for either the smaller or larger group faced very significant legal problems. Again, while the Court denied Macy's motion to dismiss because Plaintiffs plausibly alleged that Macy's possessed and collected individuals' biometric data through its use of the Clearview app, further discovery into how the app works[12] indicated that proving such allegations would be difficult. Macy's was merely a subscriber to Clearview's software as a

---

[11] *See, e.g.*, Ex. F, No. 12.
[12] *See* fn. 8, *supra*.

service. Clearview owns its proprietary software, systems and data, and made contractual covenants, warranties and representations to Macy's that while providing its services, it would comply with applicable laws and would not include any biometric data results of Illinois residents. These facts and recent developments in BIPA case law made it difficult to prove that Macy's took an active step to possess or collect the biometric data in Clearview's database. *See, e.g., Bhavilai v. Microsoft Corp.,* No. 22 C 3440, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024) (dismissing BIPA claims under sections 15(a) and (d) because plaintiff failed to allege the defendant "used or exercised any control over her facial scan data in any way.") *Barnett v. Apple*, 469 Ill.Dec. 759, 225 N.E.3d 602, 611 (Ill. 2022) (holding Apple did not "collect" or "possess" biometric information used by Apple users to access their iPhones); *Stauffer v. Innovative Heights Fairview Heights, LLC,* No. 3:20-CV-00046-MAB, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022) (dismissing BIPA claim against franchisor where the plaintiff's allegations failed to raise an inference that franchisor "ever did anything to extract or obtain the biometric information" from another company's system); *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683-85 (granting motion to dismiss on grounds that defendant did not "collect" or "otherwise obtain" biometric data stored on its cloud servers); *Sheppard v. Fantasia Trading LLC,* __ F. Supp. 3d __, 2024 WL 1916763, *8-*9 (C.D. Cal. Apr. 25, 2024) (granting motion to dismiss on grounds that the defendant did not take an active step to collect or possess biometric data).

    Against these uncertainties, recovery of a settlement that may exceed $50 million is a fantastic result for the Class, even if the gratification is necessarily delayed. This is particularly true in light of similar high profile BIPA settlements. In *In re Facebook Biometric Information Privacy Litigation*, N.D. Cal. No. 15-cv-3747-JD, for example, the class obtained a $650 million

settlement, but that amounted to less than 1% of Facebook's market value at that time. The same is true of the $100 million settlement in *Rivera v. Google, LLC*, Cook Cty. Cir. Ct. No. 2019-CH-990, which represented approximately .01% of Google's value. Measured against these benchmarks, obtaining 23% of Clearview's enterprise value is an exceptional result. *See also In re TikTok, Inc. Consumer Privacy Litig.,* N.D. Ill. No. 20-cv-4699 ($92 million settlement, representing less than 1% of TikTok's estimated valuation); *Boone v. Snap Inc.*, Cir. Ct. DuPage Cty. Ill. No. 2022-LA-708 ($35 million settlement representing less than 1% of Snapchat's market capitalization).

For each of these reasons, the most important factor for the Court's consideration weighs heavily in favor of approval of the proposed settlement.

### B. The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). While a massive amount of written discovery had taken place, the Parties were in the process of scheduling depositions when settlement discussions began in earnest, with Plaintiff having noticed 20 depositions (including a 30(b)(6) for both Clearview and Macy's). Expert discovery, class certification, and summary judgment were all yet to occur. While Plaintiffs believe that they would have obtained class certification, defeated motions for summary judgment, and then prevailed at trial, they are also certain that any judgment would have been appealed. Defendants might raise challenges to—among other things—the viability of the liability claims, whether class certification is appropriate, what relief is available to the class members, and the existence

of injuries to the class members. Although Plaintiffs strongly believe in the correctness of their positions, losing these or other issues on appeal could reduce or eliminate a jury award.

Regardless of the eventual outcome, those steps would have undoubtedly taken years to complete. Settlement entirely avoids the possibility that class members will not receive a recovery. Thus, even though the proposed settlement calls for a delayed payment, the Class will still likely receive its compensation prior to the time by which the Class could have collected on any judgment, if any such collection actually occurred. This factor therefore strongly supports preliminary approval.

### C. The Opinion of Competent Counsel Supports Preliminary Approval

The third factor this Court considers is the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

### 1. Loevy + Loevy has Extensive Experience in Litigating and Settling Large Class Actions

Here, Interim Lead Class Counsel has extensive experience litigating and settling class actions and other complex litigation of similar size and scope. Aside from this case, Plaintiffs' counsel at Loevy + Loevy have significant experience prosecuting class actions, they are successful trial lawyers, and they have secured large verdicts and settlements in class cases and others. *See, e.g., Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) (trial counsel in the first ever BIPA trial resulting in initial entry of judgment exceeding $220 million and subsequent settlement); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) (class co-counsel in the largest ever TCPA settlement of $76 million); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (class counsel in $55 million

settlement plus an assignment of insurance-related claims following trial on liability and sample

damages trials); *Solis v. Hilco Redevelopment LLC*, N.D. Ill. No. 20-cv-2348 (class counsel in

environmental action achieving $12.5 million settlement); *Flood v. Dominguez*, Case No. 08-cv-

153 (N.D. Ind.) (Loevy & Loevy class counsel in $7.2 million settlement). Based on their

significant experience litigating and trying class actions and other complex cases, Interim Lead

Class Counsel is well-equipped to weigh in on the strength of the settlement, and believe that the

Agreement is fair, reasonable, adequate, and deserving of preliminary approval.

> **2.**     **Interim Lead Class Counsel has Sought Input from and Given Due Consideration to Co-Counsel**

Given the background of Clearview's inability to pay substantial money to settle the case

and the massive potential liability on paper, it is unsurprising that there would be a diversity of

views on whether and how to accomplish a settlement. That was the case here, where co-counsel

(many of whom who previously opposed undersigned counsel's appointment as Interim Lead

Class Counsel) variously proposed settling for injunctive relief only (allocating the available

cash to attorney's fees), bankrupting Clearview by continuing to litigate (gaining bragging rights

but accomplishing nothing for the classes), and/or pursuing the defendant class of Clearview

customers who might be able to pay a larger settlement but against whom the case is shaky to the

point of being valueless, as explained above.  These co-counsel have ultimately declined to

endorse the settlement reached with Judge Andersen's assistance and have absented their clients

from serving as named representatives for the proposed settlement class.

This Court put Interim Lead Class Counsel in charge of evaluating the options and

making the ultimate decisions, subject to court approval, in light of our firm's history, expertise,

stellar record and achievements for other classes, including in privacy litigation. We have done

so and have decided that the settlement we propose for the Court's approval is the best path for the classes the Court appointed us to represent.

### D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval

The last factor to consider concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 WL 3290302, at *8 (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

Fact discovery was near completion prior to being stayed pending the outcome of mediation. All parties had completed their document production (save for a dispute between Plaintiffs and Clearview that was the subject of a pending motion to compel) and the noticed depositions of the named Plaintiffs and some 20 witnesses on the Defendants' side were imminent. Plaintiffs had also retained multiple experts at significant expense to evaluate the documents and data Defendants had produced, and those experts had devoted significant time to developing their anticipated opinions.

In short, Plaintiffs had ample information with which to evaluate all the relevant factors including the likelihood of success and collectability.

## V. THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

When a punitive class action is settled, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); accord *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (requiring "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort" when approving a settlement of a certified class action) (citation and internal quotations omitted); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7.

The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352. As described above, the notice plan calls for a detailed and expansive digital media campaign designed to reach as many as 70% of adults 18 years and older, supplemented by a press release and easy to access Settlement Website. The notice documents are written in plain language that is easy to understand. The notice plan also provides various, easily accessible methods for class members to submit claims.

Additionally, and in compliance with Rule 23(e)(4), the notice will additionally inform class members of their right to object to the Settlement or to exclude themselves from the Settlement within 45 days. Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, the Settlement Administrator will send notice to the required government entities.

Because the proposed notice plan is designed to reach as many putative class members as is reasonably practicable, and fully apprises class members of their rights, it comports with the requirements of due process and Rule 23 and should be approved.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order (1) granting preliminary approval of the Settlement, (2) approving the form and content of

the notice, and ordering that it be effectuated, (3) scheduling a final fairness hearing, and (4)

providing such other and further relief as the Court deems reasonable and just.


Dated: June 12, 2024               Respectfully submitted:


                           By:*/s/ Jon Loevy*
                           Jon Loevy
                           jon@loevy.com
                           Michael Kanovitz
                           mike@loevy.com
                           Thomas M. Hanson
                           hanson@loevy.com
                           **LOEVY & LOEVY**
                           311 N. Aberdeen St.
                           Chicago, Illinois
                           312.243.5900

                           *Interim Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Hanson, an attorney, hereby certify that, on June 12, 2024, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ <u>*Thomas M. Hanson*</u>
Thomas M. Hanson
