# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135 |
|  | Judge Sharon Johnson Coleman |
|  | Magistrate Judge Maria Valdez |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This class action settlement agreement and release (the or this "Agreement" or the or this "Settlement Agreement") is entered into as of June 12, 2024, by and among Plaintiffs Rodell Sanders, Gerard Dache, Eric Gould and Jordan Orlando (collectively, "Plaintiffs"), individually and on behalf of the class of persons they seek to represent (the "Settlement Class" defined in paragraph 2.3, below, that includes the Nationwide Class, the Illinois Subclass, the California Subclass, the New York Subclass, and the Virginia Subclass), and Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, Richard Schwartz, Rocky Mountain Data Analytics LLC, and Thomas Mulcaire (collectively, the "Clearview Defendants"); and Defendants Macy's, Inc., Macy's Retail Holdings, Inc. (n/k/a Macy's Retail Holdings, LLC), and Macy's Corporate Services, Inc (n/k/a Macy's Corporate Services, LLC) (collectively, the "Macy's Defendants") (Plaintiffs, the Clearview Defendants, and the Macy's Defendants are collectively referred to as the "Parties"). This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (defined below), upon and subject to the terms and conditions of the Agreement, and subject to the final approval of the Court.

## RECITALS

A.     Plaintiffs are residents of the fifty United States, including sub-class members in Illinois, California, New York, and Virigina, who allege in this Action that Defendants violated various state laws in their collection, storage and use of Plaintiffs' biometric information in Defendant Clearview's Biometric Database.

B.     In January 2021, the Judicial Panel on Multidistrict Litigation transferred various filed lawsuits against some or all of the Defendants to the Honorable Sharon Johnson Coleman of the Northern District of Illinois, Eastern Division, creating this Action.

C.     On June 29, 2021, Plaintiffs filed their First Amended Consolidated Class Action Complaint, alleging violations of: (1) Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(b) (c) (d) and (e); (2) Virigina statutes addressing the unauthorized use of names or pictures, Va. CODE §§ 8.01-40, and the Virginia Computer Crimes Act, Va. CODE § 18.2-152.1, *et seq.*; (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, California's statute against Commercial Misappropriation, Cal. Civ. Code § 3344(A), California common law protections for right of publicity, and the California state Constitution's protections against invasion of privacy; (4) New York civil rights protections against invasion of privacy, N.Y. CIV. RIGHTS LAW §§ 50-51; (5) for unjust enrichment; and (6) for a judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

D.     After the Court denied most of the arguments in defense motions to dismiss the First Amended Consolidated Class Action Complaint, in March 2022, Defendants filed their respective answers, affirmative defenses, and counterclaims in the Action, denying all allegations of wrongdoing and liability.

E.     After engaging in extensive written discovery and document productions over several months, in early 2023, the Clearview Defendants and Plaintiffs jointly agreed to participate

in a mediation to try to resolve this Action. Over a period of several months from March through August of 2023, the Clearview Defendants and Plaintiffs worked with a neutral Mediator, the Honorable Wayne Andersen (Ret.) of JAMS, to try to resolve the entire Action. In September 2023, the Clearview Defendants and Plaintiffs reached an agreement in principle on the key terms of a class settlement.

F.     Plaintiffs and Class Counsel strongly believe that the claims asserted in the Action have merit. Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action against Defendants through dispositive motions, class certification, trial, any subsequent appeals and, ultimately, collectability of a judgment. Plaintiffs and Class Counsel also have taken into account the uncertainty, difficulties, and delays inherent in litigation, especially in complex actions like this Action. Of particular relevance, Class Counsel has carefully evaluated the current financial condition of Clearview and considered the likelihood that Clearview would not be able to survive as a going concern through the remaining discovery and trial. Therefore, Plaintiffs and Class Counsel believe that it is desirable that Class Members receive the consideration called for by this Agreement and that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. Based on their evaluation, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate for the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Agreement without delay.

G.     Defendants consistently have denied, and continue to deny, all allegations of wrongdoing and liability and all material allegations in the Action. Defendants strongly believe

- 3 -

they would prevail in any trial on the merits. They have concluded, however, that this Settlement Agreement is desirable to avoid the time, risk, and expense of defending protracted litigation, to permit Clearview to focus on its business opportunities (rather than litigation), and to avoid the risk posed by the Settlement Class's claims for substantial damages. Defendants thus desire to resolve finally and completely the pending claims of Plaintiffs and the Settlement Class.

H.      The Parties agree that the Action was resolved in good faith, following arm's-length bargaining presided over by a retired federal judge acting as a neutral Mediator.

I.      Subject to approval by the Court, Defendants conditionally agree and consent to certification of the Settlement Class (the Nationwide Class, and the Illinois, California, New York, and Viriginia Subclasses, as defined below) for settlement purposes only and within the context of this Agreement only, as described in paragraph 2 below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, by and through their respective counsel, subject to final approval by the Court after a hearing or hearings as provided for in this Settlement Agreement, and in consideration of the benefits flowing from the Settlement Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## **AGREEMENT**

**1.      DEFINITIONS**

As used herein, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1      "Action" means the consolidated case captioned *In re: Clearview AI, Inc. Consumer Privacy Litigation*, No.: 1:21-cv-00135 (N.D.Ill.).

1.2    "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release.

1.3    "Approved Claim" means a Claim Form submitted by a Class Member that is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, or that is otherwise accepted by the Court and satisfies the conditions of eligibility for a Settlement Payment as set forth in this Agreement.

1.4    "Biometric Data" means biometric information and biometric identifiers as defined in the Illinois Biometric Privacy Act, 740 ILCS 14/1, *et seq.*

1.5    "Biometric Database" means the databases created and maintained by Clearview containing facial images, facial vector data, and/or Biometric Data.

1.6    "California Subclass" means all individuals who resided in the state of California between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data were or are contained in the Biometric Database.

1.7    "California Subclass Notice Plan" means the plan, as set forth in paragraph 5.7 and as executed and administered by the Settlement Administrator, for disseminating notice of the Settlement Agreement and of the Final Approval Hearing to members of the California Subclass.

1.8    "Cash Demand" means a demand by the Settlement Master, in the Settlement Master's independent judgment, that Clearview make a cash payment in an amount representing seventeen per cent (17%) of Clearview's Generally Accepted Accounting Principles (GAAP) recognized revenue, as reviewed and confirmed by an independent Certified Public Accountant, for the period commencing on the date of Final Judgment and ending on the date of the Settlement Master's demand.

1.9     All Class Members, including Subclass Members, who wish to file a claim for a Settlement Payment must submit a Claim Form which will be available for electronic completion and submission, as provided in the electronically provided Notice to the Nationwide Class, to the Illinois, California, New York, and Virginia Subclasses, and also available on the Settlement Website. The Claim Form will require a claiming Class Member to provide the following information: (i) full name; (ii) current U.S. Mail address or an e-mail address; (iii) a certification that one or more photographs depicting the claiming Class Member's face was posted to a publicly accessible webpage on the internet (such as, by way of example, e.g. Facebook, Instagram, TikTok, Snapfish, Shutterfly, Flickr, Pinterest, Imgur, Smugmug, Photobucket, or Tumblr ; (iv) a certification that the Class member is over the age of 18; and (v) affirm whether the Class Member resided in Illinois, California, New York, or Virginia between July 1, 2017 and the date of Preliminary Approval. The electronic Claim Form will provide Class Members with instructions for receiving their Settlement Payment digitally.

1.10    "Claims Deadline" means the date by which all Claim Forms must be postmarked or submitted electronically to be considered timely, and shall be set as a date no later than ninety (90) calendar days following the Notice Date, subject to Court approval. The Claims Deadline shall be clearly set forth in the order preliminarily approving the Settlement, as well as in the Notice and the Claim Form.

1.11    "Class Counsel" means the law firms of Loevy & Loevy; Bursor & Fisher, P.A; Hedin Hall LLP; Neighborhood Legal LLC; Community Lawyers LLC; Webster Book LLP; and Drury Legal, LLP.

1.12    "Class Member" means a person who falls within the definition of the Settlement Class and who does not submit a valid request for exclusion.

1.13 "Class Representative" means Plaintiffs Rodell Sanders, Gerard Dache, Eric Gould and Jordan Orlando.

1.14 "Clearview" means Defendant Clearview AI, Inc.

1.15 "Clearview Defendants" means Defendants Clearview AI, Inc.; Hoan Ton-That; Richard Schwartz; Rocky Mountain Data Analytics LLC; and Thomas Mulcaire.

1.16 "Clearview Defendants' Counsel" means the law firm of Lynch Thompson LLP.

1.17 "Court" means the United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Sharon Johnson Coleman presiding, or any judge who shall succeed her as the judge assigned to the Action.

1.18 "Current Shareholder Sale" means any sale of one or more shares of Clearview common stock by any person or entity who is a current holder of Clearview common shares as of the date of this Settlement Agreement.

1.19 "Deemed Liquidation Event" means:  (a) a merger or consolidation in which (i) Clearview is a constituent party or (ii) a subsidiary of Clearview is a constituent party and Clearview issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving Clearview or a subsidiary in which the shares of capital stock of Clearview outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital stock that represent, immediately following such merger or consolidation, at least a majority, by voting power, of the capital stock of (1) the surviving or resulting entity; or (2) if the surviving or resulting entity is a wholly owned subsidiary of another entity immediately following such merger or consolidation, the parent corporation of such surviving or resulting entity; or (b) the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by Clearview or any

subsidiary of Clearview of all or substantially all the assets of Clearview and its subsidiaries taken as a whole, or the sale or disposition (whether by merger, consolidation or otherwise, and whether in a single transaction or a series of related transactions) of one or more subsidiaries of Clearview if substantially all of the assets of Clearview and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly owned subsidiary of Clearview.

1.20    "Defendants" means the Clearview Defendants and the Macy's Defendants, collectively.

1.21    "Defendants' Counsel" means Clearview Defendants' Counsel and Macy's Defendants' Counsel, collectively.

1.22    "Effective Date" means the date one (1) business day after which all of the events and conditions specified in paragraph 10.1 have occurred and have been met.

1.23    "Escrow Account" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under the terms described herein, at a bank to be determined by Epiq, which shall be the "Escrow Agent." The Settlement Stake Payment or the proceeds from the exercise of the Sale Option shall be deposited into the Escrow Account and the money shall be invested in the following types of accounts and/or instruments and no other: (a) demand deposit accounts; (b) time deposit accounts and certificates of deposit; (c) United States Treasury bills; or (d) other instruments backed by the full faith and credit of the United States Government. The costs of establishing and maintaining the Escrow Account shall be paid by the Settlement Administrator.

1.24    "Fee Award" means the consideration, representing attorneys' fees and expenses, awarded by the Court to Class Counsel.

1.25    "Final" means one business day after the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

1.26    "Final Approval Hearing" means the hearing before the Court where the Parties will request that the Final Judgment be entered by the Court finally approving the Settlement as fair, reasonable, and adequate, and approving the Fee Award and the incentive awards to the Class Representatives.

1.27    "Final Judgment" means the final judgment to be entered by the Court approving the settlement of the Action in accordance with this Settlement Agreement after the Final Approval Hearing.

1.28    "Illinois Subclass" means all individuals who resided in the state of Illinois between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

1.29    "Illinois Subclass Notice Plan" means the plan, as set forth in paragraph 5.5 and as executed and administered by the Settlement Administrator, for disseminating notice of the Settlement Agreement and of the Final Approval Hearing to members of the Illinois Subclass.

1.30　"IPO" means the consummation of Clearview's first underwritten public offering of its common stock under the Securities Act of 1933, as amended.

1.31　Lead Class Counsel shall mean the law firm of Loevy & Loevy.

1.32　"Macy's Defendants" means Defendants Macy's, Inc., Macy's Retail Holdings, Inc. (n/k/a Macy's Retail Holdings, LLC), and Macy's Corporate Services, Inc (n/k/a Macy's Corporate Services, LLC), collectively.

1.33　"Macy's Defendants' Counsel" means the law firm Blank Rome LLP.

1.34　"Mediator" means the Honorable Wayne R. Andersen (Ret.) of JAMS.

1.35　"Nationwide Class" means all individuals who resided in the United States of America between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

1.36　"Notice Plan" means the plan, as set forth in Section 5 and as executed and administered by the Settlement Administrator, for disseminating notice of the Settlement Agreement and of the Final Approval Hearing to members of the Nationwide Class and the California, Illinois, New York, and Virginia Subclasses.

1.37　"New York Subclass" means all individuals who resided in the state of New York between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

1.38　"New York Subclass Notice Plan" means the plan, as set forth in paragraph 5.9 and as executed and administered by the Settlement Administrator, for disseminating notice of the Settlement Agreement and of the Final Approval Hearing to members of the New York Subclass.

1.39    "Net Settlement Fund" means the Settlement Fund, plus any interest or investment income earned on the Settlement Fund, less any Fee Award, incentive awards to the Class Representatives, and less any Taxes and Tax Expenses.

1.40    "Notice" means the notice of this proposed Settlement and Final Approval Hearing, which is to be disseminated to the Settlement Class substantially in the manner set forth in this Settlement Agreement and approved by the Court, fulfilling the requirements of Due Process and Rule 23, and is substantially in the form of Exhibit 1 attached hereto.

1.41    "Notice Date" means the date by which the Notice is disseminated to the Settlement Class, which shall be a date no later than thirty-five (35) calendar days after entry of Preliminary Approval.

1.42    "Objection/Exclusion Deadline" means the date by which a written objection to the Settlement or a request for exclusion by a person within the Settlement Class must be made, which shall be designated as a date no later than sixty (60) calendar days after the Notice Date and no sooner than fourteen (14) calendar days after the request for the Fee Award is filed with the Court and posted to the Settlement Website, or such other date as ordered by the Court.

1.43    "Parties" means all Plaintiffs and Defendants, collectively.

1.44    "Plaintiffs" means the individuals Rodell Sanders, Gerard Dache, Eric Gould and Jordan Orlando, or any other individual plaintiff which the Court may appoint.

1.45    "Preliminary Approval" means that an order has been issued by the Court ("Preliminary Approval Order") making each of the following rulings: (i) preliminarily approving the Agreement and finding that the Settlement is within the range of potential final approval as fair, reasonable, and adequate; (ii) confirming certification of the Nationwide Class, California Subclass, Illinois Subclass, New York Subclass, and Virginia Subclass, for settlement purposes;

and (iii) approving the form and manner of the Notice and directing that Notice be sent to the Settlement Class.

    1.46    "Released Claims" means any and all claims, theories, or causes of action, whether known or unknown (including "Unknown Claims" as defined below), arising from or related to Defendants' alleged collection, capture, purchase, storage, possession, receipt through trade, obtainment, sale, lease, trade, profiting from and/or dissemination, disclosure or redisclosure of images and/or facial vectors and/or Biometric Data using the Clearview Biometric Database or other Clearview technology, including, without limitation, Clearview's algorithms, facial vectors, or other proprietary technology, to make use of those images and/or biometric data, including all claims and issues that were litigated in the Action or that could have been brought in the Action and claims for any violation of the Illinois Biometric Information Privacy Act ("BIPA") or other Illinois statutory or common law related to facial recognition, as well as any and all state law claims (including, but not limited to claims under the laws of Illinois, California, New York, and Virigina) and federal statutory, constitutional, and common law claims that were, or could have been, advanced regarding the images held in the Biometric Database in any of the cases assigned by the Judicial Panel on Multidistrict Litigation to the Action.

    1.47    "Released Parties" means all Defendants, including all Clearview Defendants, and all Macy's Defendants, and all Defendants' respective present or former administrators, predecessors, successors, assigns, parents, subsidiaries, holding companies, affiliates, investors, divisions, associates, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers,

employee benefit plans, underwriters, shareholders lenders, auditors, investment advisors, and former companies

1.48    "Releasing Parties" means Plaintiffs and the Class Members and their respective present or past heirs, executors, estates, administrators, trustees, assigns, agents, consultants, independent contractors, insurers, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these persons and entities.

1.49    "Sale Option" means the Settlement Master's option under the terms set forth in paragraph 3.4, acting in accordance with the Settlement Master's duties as a fiduciary, to elect to sell the right to receive the Settlement Stake Payment to a single third party for a commercially reasonable price; provided that such third party must be a United States Person (as defined in the Securities Act of 1933), an accredited investor (as defined in Regulation D), and not a competitor of Clearview or then in active litigation with Clearview.

1.50    "Settlement" means the settlement contemplated by this Settlement Agreement.

1.51    "Settlement Administration Expenses," all of which are to be borne exclusively by Clearview, separate from and not taken from the Settlement Fund, means all reasonable expenses incurred by the Settlement Administrator, including the expenses incurred in providing Notice, processing claims, responding to inquiries from members of the Settlement Class, providing Settlement Payments, and related services. Based on assumptions provided by the parties, including an assumed four-year administration period, the Settlement Administrator anticipates the total cost of Settlement Administration to be approximately $338,320 ("Estimated Settlement Administration Expenses"). Settlement Administration Expenses shall also include the fees charged by the Settlement Master, at the Settlement Master's reasonable hourly rate, which fees also are to be borne by Clearview, separate from and not taken from the Settlement Fund. The fees

charged by the Settlement Master are in addition to the Estimated Settlement Administration Expenses outlined above. Settlement Administration Expenses shall not include Taxes incurred on the Settlement Fund, as addressed separately in paragraph 1.61.

1.52    "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., subject to approval by the Court, which will administer the aspects of this Settlement, including sending Notice, maintaining the Settlement Website, processing Approved Claims as Settlement Payments to Class Members, overseeing the Escrow Account, and preparing and submitting certain Class tax filings, as set forth in this Agreement.

1.53    "Settlement Class" means each member of the Settlement Class, as defined in paragraph 2.3 of this Settlement Agreement (pending Court approval), including Plaintiffs, the Nationwide Class, the California Subclass, the Illinois Subclass, the New York Subclass, and the Virginia Subclass.

1.54    "Settlement Fund" means the non-reversionary fund that shall be funded exclusively by the total amount of the Settlement Stake Payment OR the proceeds from the exercise of the Sale Option, to be deposited into the Escrow Account, plus all interest earned thereon. The following shall be paid from the Settlement Fund: All Settlement Payments as a result of Approved Claims submitted by Class Members; all Taxes and Tax Expenses on amounts in the Settlement Fund; any incentive awards approved by the Court and payable to the Class Representatives; and any Fee Award to Class Counsel. The Settlement Fund shall be held in the Escrow Account until such times as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Fund, comprised of the Settlement Stake Payment or the proceeds from the exercise of the Sale Option, along with Settlement Administration Expenses under Section 1.51, represent the

exclusive and total extent of Defendants' monetary obligations under this Agreement. For the avoidance of doubt, the Macy Defendants have no obligation to contribute any amount to the Settlement Fund. In no event shall Defendants' total monetary obligation with respect to this Agreement exceed or be less than the amount of the Settlement Fund and Settlement Administration Expenses (as stated in Section 1.51). The Parties, the Escrow Agent, and the Settlement Administrator agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out this provision, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator and/or Clearview's Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

1.55 "Settlement Master" means Hon. Sidney I. Schenkier (ret.), the individual selected by Lead Class Counsel, and approved by Defendants (approval not to be unreasonably withheld), and appointed by the Court, to oversee the funding of the Settlement Fund by causing Class Members to receive the Settlement Stake Payment, pursuant to paragraph 3.3 below, or by causing the Class Members to receive the proceeds of a Settlement Stake Payment Sale, pursuant to paragraph 3.4 below. The Settlement Master's required qualifications and duties are set out in paragraph 3.5 below.

1.56 "Settlement Payment" means a payment to be made to a claiming Class Member in response to an Approved Claim. Each Class member who submits an Approved Claim will receive

a pro rata portion of the Net Settlement Fund. The pro rata portion will be weighted by settlement class as follows: (a) Each Nationwide Class Member who submits an Approved Claim and who is not a member of any subclass will receive one (1) share of the Net Settlement Fund; (b) Each Nationwide Class Member who submits an Approved Claim who is also a member of the California, New York or Virginia Subclass will receive five (5) shares of the Net Settlement Fund; (c) Each Nationwide Class Member who submits an Approved Claim who is also a member of the Illinois Subclass will receive ten (10) shares of the Net Settlement Fund.

1.57　"Settlement Stake" means a monetary amount equal to the value of the number of shares of Clearview common stock equal to twenty-three percent (23%) of the capitalization of Clearview as of September 6, 2023, calculated on a fully-diluted basis (meaning after all outstanding warrants, employee options, convertible notes and all other outstanding securities are converted to common stock).

1.58　"Settlement Stake Payment" means the cash generated by Clearview via one of the means described in paragraph 3.3, to fund the Settlement Fund, and in so doing pay the Settlement amounts. The Settlement Stake Payment shall be realized under the supervision of the Settlement Master, and, once made, transferred to the Escrow Account and administered by the Settlement Administrator as the Settlement Fund.

1.59　"Settlement Stake Payment Sale" means the proceeds from a sale by the Settlement Master of the right to receive the Settlement Stake Payment to a single third party for a commercially reasonable price, in accord with paragraph 3.4, provided that such third party must be a United States Person (as defined in the Securities Act of 1933), an accredited investor (as defined in Regulation D), and not a competitor of Clearview or then in active litigation with Clearview.

1.60     "Settlement Website" means the website to be created, launched, and maintained by the Settlement Administrator, which will provide access to relevant case documents including the Notice, Claim Form, and other relevant documents.

1.61     "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) tax-related expenses and costs incurred in connection with the operation and implementation of this Settlement Agreement (including, without limitation, expenses of tax attorneys and/or accountants and the costs of mailing and distribution and filing (or failing to file) the returns described in this Settlement Agreement) (together, "Tax Expenses"), shall be paid out of the Settlement Fund. In no event shall the Released Parties or their counsel bear any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund, but one not to be borne by Clearview, but instead shall be timely paid by the Escrow Agent, as instructed by the Settlement Administrator, out of the Settlement Fund without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that

may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and Escrow Account (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.62 "Unknown Claims" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement, or seek exclusion from the Settlement Class. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the

- 18 -

United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this paragraph.

1.63    "Virginia Subclass" means all individuals who resided in the state of Virginia between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

1.64    "Virginia Subclass Notice Plan" means the plan, as set forth in paragraph 5.11 and as executed and administered by the Settlement Administrator, for disseminating notice of the Settlement Agreement and of the Final Approval Hearing to members of the Virginia Subclass.

## 2.    SETTLEMENT CLASS CERTIFICATION

2.1    For the purposes of the Settlement only, the Parties stipulate and agree that: (i) the Settlement Class shall be certified in accordance with the definitions contained in paragraph 2.3 below; (ii) Plaintiffs shall represent the Settlement Class for settlement purposes and shall be the Class Representatives; and (iii) the firm of Loevy & Loevy will be appointed Lead Class Counsel, and the other firms identified in Paragraph 1.10 shall be appointed as additional Class Counsel.

2.2    Defendants do not consent to certification of the Settlement Class or the included Nationwide Class or Settlement Subclasses for any purpose other than to effectuate the Settlement. If the Court does not enter Final Judgment, or if for any other reason Final Judgment does not occur, is successfully objected to, or challenged on appeal, any certification of any Settlement Class will be vacated, and the Parties will be returned to their positions with respect to the Action

as if no Settlement Class had ever been certified and as if the Settlement Agreement had not been entered.

2.3     Subject to Court approval, the Settlement Class shall be comprised of the members of all Classes and Subclasses defined below -- the Nationwide Class; the Illinois Subclass, the California Subclass, the New York Subclass, and the Virginia Subclass --and shall be certified for settlement purposes. The Settlement Class is made up of:

(a)     The Nationwide Class: All individuals who resided in the United States of America between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database;

(b)     The Illinois Subclass: All individuals who resided in the state of Illinois between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database;

(c)     The California Subclass: All individuals who resided in the state of California between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data were or are contained in the Biometric Database;

(d)     The New York Subclass: All individuals who resided in the state of New York between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database; and

(e)     The Virginia Subclass: All individuals who resided in the state of Virginia between July 1, 2017, and the date of Preliminary Approval, and whose facial images, facial vector data, and/or Biometric Data are or were contained in the Biometric Database.

2.4     **Exclusions from Class.  The following are excluded from the Settlement Class and all Settlement Subclasses:**

(a)     any Judge, Magistrate, or Mediator presiding over this Action, members of their immediate families, members of their staff, and members of their staff's immediate families;

(b)     all Defendants;

(c)     any family member, parent, subsidiary, successor, predecessor, or affiliate of any Defendant, or any entity in which any Defendant has a controlling interest;

(d)     the officers, directors, agents, servants, or employees of any Defendant, including of any parent, subsidiary, successor, predecessor, or affiliate of any Defendant;

(e)     persons who properly execute and file a timely request for exclusion from the Settlement Class;

(f)     Class Counsel;

(g)     the Settlement Administrator;

(h)     the Settlement Master; and

(i)     the legal representatives, successors or assigns of any such excluded persons.

2.5     If for any reason the Settlement is not approved, the Court does not enter a Preliminary Approval Order and/or a Final Judgment, or final settlement and resolution of the Action as provided for in this Settlement Agreement is not reached, Defendants' consent to

proceeding in court for the limited purpose of approval of the Settlement and agreement to the certification of the Settlement Class shall not be used or cited for any purpose in the Action, including but not limited to any request for class certification in the Action or any other proceeding. Should this Settlement fail to be finalized in a Final Judgment for any reason, the Parties will return to their pre-settlement litigation positions, and all claims will proceed in court.

**3.    SETTLEMENT RELIEF**

3.1    **Security Interests in IP held by Current Investors**. At the time that the Clearview Defendants and the Settlement Class negotiated this Settlement, certain existing Clearview investors held security interests in Clearview IP with a convertible note.  By the time of Final Judgment, all security interests in Clearview IP held by existing investors will have been released. The 23% stake in Clearview as of September 6, 2023, identified as the Settlement Stake, already was calculated on a fully diluted basis, so that any consideration for the release(s) of the IP security interests in the convertible note will not produce any additional dilution of the Settlement Stake.

3.2    **Payment to Class Members.**  In exchange for the releases and other obligations contained herein, on the Effective Date, the Clearview Defendants agree to provide Class Members with the right to obtain the Settlement Stake pursuant to the terms set out below. On the Effective Date, neither the Class Members nor Class Counsel shall receive, or have the right to receive, any shares of Clearview stock, but shall be entitled to receive payments in exchange for the Settlement Stake in accordance with Paragraphs 3.3 and 3.4 below.

3.3    **Settlement Stake Payment.** Upon the earlier of (1) the consummation of Clearview's first underwritten public offering of its Common Stock under the Securities Act of 1933, as amended (an "**IPO**"), (2) any **Deemed Liquidation Event**, or (3) a **Cash Demand** by

the **Settlement Master**, Clearview will make a payment (the **Settlement Stake Payment**) to the Settlement Class as follows:

      (a)    **Settlement Stake Payment: Deemed Liquidation Event:** In the case of a Deemed Liquidation Event, the Settlement Stake Payment shall be a cash payment equal to what the Settlement Class would have received had it been issued the Settlement Stake immediately prior to the consummation of the Deemed Liquidation Event. The treatment of the Settlement Stake in connection with a Deemed Liquidation Event shall be no less favorable than the treatment of the shares then owned by Hoan Ton-That and Richard Schwartz.

      (b)    **Settlement Stake Payment: IPO:** In the case of an IPO, the Settlement Stake Payment shall be a cash payment equal to the Settlement Stake multiplied by the public offering price set forth on the front cover of the final prospectus for the IPO, as filed with the U.S. Securities and Exchange Commission.

      (c)    **Settlement Stake Payment: Cash Demand:** At any point on or before September 30, 2027, provided that no Settlement Stake Payment event has been triggered, in exercising the Settlement Master's independent judgment, the Settlement Master may elect to require Clearview to pay a Cash Demand payment in an amount representing seventeen (17%) of Clearview's GAAP recognized revenue, as reviewed and confirmed by an independent Certified Public Accountant, for the period commencing on the date of final settlement approval and ending on the date of the Settlement Master's Cash Demand. For the avoidance of doubt, in the event the Settlement Master elects the Cash Demand, neither the Settlement Class nor Class Counsel shall be entitled to receive Clearview stock, the value of Clearview stock, or any other form of Settlement Stake Payment.

3.4 **The Settlement Stake Payment Sale: An Option to Sell the Right to Receive Settlement Stake Payment.** At any time after Final Judgment by the Court, provided that no Settlement Stake Payment event has been triggered, the Settlement Master shall have the right to elect to sell the right to receive the Settlement Stake Payment to a single third party for a commercially reasonable price; provided that such third party must be a U.S. Person (as defined in the Securities Act of 1933), an accredited investor (as defined in Regulation D), and not a competitor of Clearview or then in active litigation with Clearview. In connection with the exercise of the Sale Option to generate a Settlement Stake Payment Sale, the Settlement Master may elect to cause Clearview to issue the Settlement Stake, in lieu of the right to receive the Settlement Stake Payment, to the purchasing third party, the proceeds of such sale to constitute the Settlement Fund, in the same manner as a Settlement Stake Payment would fund the Settlement Fund. For the avoidance of doubt, in the event the Settlement Master consummates a Settlement Stake Payment Sale, neither the Settlement Class nor Class Counsel shall be entitled to receive Clearview stock, the value of Clearview stock, or any other form of Settlement Stake Payment.

3.5 **Appointment of Settlement Master**. Upon the execution of this Settlement Agreement, Lead Class Counsel shall select a candidate for the position of Settlement Master. The Settlement Master candidate must have the following qualifications:

(a) a minimum of ten (10) years of relevant industry experience in or advising the venture capital or private equity industries; or a minimum of ten (10) years of relevant judicial experience, including experience with class actions;

(b) experience with private and public company valuations and/or prior experience with class actions is preferred; and

(c)     no conflicts of interest, including cannot be Class Counsel or an affiliate or family member of Class Counsel or a claiming Class Member.

The selection of the Settlement Master candidate is subject to the approval of the Clearview Defendants, which approval shall not be unreasonably withheld, and the Court. Upon receiving Clearview Defendants' approval of the Settlement Master candidate, Lead Class Counsel shall file a motion with the Court to have the candidate appointed Settlement Master. Upon the Court's granting of this motion, the approved candidate shall be retained as Settlement Master. Upon retention, the Settlement Master will acknowledge a fiduciary duty to the Settlement Class and Class Counsel. The Clearview Defendants shall bear the cost of the Settlement Master's reasonable hourly rate and costs.

To the fullest extent permitted by law, the Settlement Master shall not be liable to the Settlement Class for any loss, damage, or claim incurred by reason of any act or omission performed or omitted by the Settlement Master in good faith on behalf of the Settlement Class and in a manner reasonably believed to be within the scope of the authority conferred on the Settlement Master by this Settlement Agreement or any order of the Court.

Until the Settlement Class is paid the Settlement Stake Payment (whether by Deemed Liquidation Event, IPO, or Cash Demand), or until the Settlement Master has received payment on behalf of the Settlement Class upon a Settlement Stake Payment Sale (following exercise of the Sale Option), the Settlement Master will have the right, (i) upon reasonable notice, to inspect the books and records of Clearview, (ii) to request and receive bi-annual interviews with the Clearview management team, and (iii) to receive information regarding the price and terms of any secondary sales of Clearview stock.

161593.00001/135800788v.1

3.6      **Restrictions on Payment of Dividends**. Upon the execution of this Settlement Agreement, Clearview shall not pay dividends to Clearview shareholders prior to the Settlement Stake Payment or the completion of a Settlement Stake Payment Sale.

3.7      **Current Shareholder Sale**. Upon the execution of this Settlement Agreement, any contemplated sale of shares by any Clearview shareholder (a "Current Shareholder Sale") as of the date of this Settlement Agreement must be submitted to the Settlement Master for review prior to consummation of that Current Shareholder Sale. In the event Clearview chooses not to exercise its right of first refusal to purchase the shares to be sold pursuant to a Current Shareholder Sale, Clearview shall provide to the Settlement Master an explanation as to why Clearview chooses not to exercise its right of first refusal, and the Settlement Master shall have the right to review any information, data or records necessary to assess the explanation provided by Clearview.

3.8      **Transfer of Proceeds to Escrow Account.** Within fourteen (14) days after receipt of payment pursuant to a Settlement Stake Payment OR a Settlement Stake Payment Sale, the proceeds from such transaction representing the Settlement Fund, the Settlement Master will transfer or cause to be transferred the received funds into the separate, interest-bearing Settlement Fund Escrow Account, to be established by the Settlement Administrator under terms acceptable to Lead Class Counsel. The Settlement Fund deposited into the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (a) demand deposit accounts; (b) time deposit accounts and certificates of deposit; (c) United States Treasury bills; or (d) other instruments backed by the full faith and credit of the United States Government. The Escrow

Account will be administered as the Settlement Fund by the Settlement Administrator. The costs of establishing and maintaining the Escrow Account shall be paid by the Settlement Administrator.

      3.9    **Use of the Settlement Fund.** The following shall be paid from the Settlement Fund: All Settlement Payments as a result of Approved Claims made by Class Members; Taxes and Tax Expenses; any incentive awards to the Class Representatives; and any Fee Award to Class Counsel. The Settlement Fund shall be kept in the Escrow Account until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and causing the payment of all Taxes that may be due on such earnings. The Settlement Fund, comprised of the Settlement Stake Payment by Clearview alone, along with the Settlement Administration Expenses, represents the total extent of Defendants' monetary obligations under this Agreement. In no event shall Defendants' total monetary obligation with respect to this Agreement exceed or be less than the Settlement Stake Payment and Settlement Administration Expenses. The Parties, the Escrow Agent, the Settlement Master, and the Settlement Administrator agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out this provision, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

3.10 **Settlement Payments to Class Members.** Within sixty (60) calendar days after the Settlement Fund has been created in the Escrow Account, from the proceeds from a Settlement Stake Payment or a Settlement Stake Payment Sale, or such other date as the Court may set, the Settlement Administrator shall send Settlement Payments from the Settlement Fund by digital payment to each Class Member who has submitted an Approved Claim.

3.11 In the event that a digital payment to a Class Member is unable to be processed, the Settlement Administrator shall attempt to contact the Class Member within forty-five (45) calendar days to correct the problem.

3.12 To the extent that a digital payment is unable to be processed within ninety (90) calendar days of the first attempt, after efforts to contact the Class Member have been made under paragraph 3.11 above, all funds represented by unprocessed digital payments shall remain in the Settlement Fund and shall be apportioned pro rata to participating Class Members in a second distribution, if practicable. To the extent that any second distribution is impracticable, or second-distribution funds remain in the Settlement Fund after 180 calendar days after the first issuance or attempt, such funds shall revert to a privacy-related non-profit to be agreed to by Lead Class Counsel, Clearview, and Macy's, or failing agreement, as ordered by the Court.

3.13 No amount contributed or paid by Clearview via the Settlement Stake, then paid into the Settlement Fund via the Settlement Stake Payment or Settlement Stake Payment Sale, shall revert to Clearview unless the Settlement is terminated in accordance with paragraphs 8.1 or 5.6.

- 28 -

In no event shall any such amount be paid to any Class Counsel except for the amount of an approved Fee and Costs Award as described in paragraphs 9.1-9.2.

## 4. RELEASES

4.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

4.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

4.3     Upon the Effective Date, the Releasing Parties, and each of them, will be forever barred and permanently enjoined from directly, indirectly, representatively or in any other capacity, filing, commencing, prosecuting, continuing, litigating, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from any lawsuit, any arbitration, or any administrative, regulatory, or other proceeding (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) against any of the Released Parties in any jurisdiction based on or relating in any way to the Released Claims, except for claims to enforce the terms of the Settlement.

4.4     Upon the Effective Date, the Released Parties shall by operation of the Final Judgment have, fully, finally, and forever released, relinquished, and discharged all claims, known or unknown, asserted or unasserted, against Plaintiffs, the Settlement Class, and Class Counsel that arise out of or relate in any way to the commencement, prosecution, settlement or resolution of the Action, except for claims to enforce the terms of the Settlement.

5.    **NOTICE TO THE SETTLEMENT CLASS**

5.1    Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice to be disseminated to the Settlement Class. Such Notice shall comport with Rule 23 of the Federal Rules of Civil Procedure, and be effectuated pursuant to the Nationwide Class Notice Plan, Illinois Notice Plan, California Notice Plan, New York Notice Plan, and Virginia Notice Plan, the costs of which shall be Settlement Administration Expenses borne by the Clearview Defendants, and not to be paid out of the proceeds of a Settlement Stake Payment or Settlement Stake Payment Sale.

5.2    **Identification of Class Members: Nationwide Class.** Clearview estimates that its Biometric Database contains several billion captured images. Within fourteen (14) calendar days of the Preliminary Approval Order, Clearview will provide to the Settlement Administrator a list (if any) of the names and addresses (residential addresses and/or email addresses) of all members of the Settlement Class who, based on Clearview's data, (1) appear in facial images held within the Clearview Biometric Database, (2) had a home location reasonably believed to be in the United States of America, for one hundred eighty-three (183) or more consecutive days between July 1, 2017 and the date of the Preliminary Approval Order, and (3) provided information indicating that the Settlement Class Member in the facial image was eighteen years of age or over when their facial image was posted to a publicly accessible webpage (the "Nationwide Class Notice List"). Clearview will conduct a good faith search of the Clearview Biometric Database, but believes that it will have few, if any records, which are sufficient to identify the name, home location, duration of residence, and age of person(s) captured in facial images held within the Clearview Biometric Database. The Settlement Administrator shall keep the Nationwide Class Notice List and all personal information obtained therefrom, including the identity of all Persons, strictly confidential.

The Nationwide Class Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Class Members of their rights, transmitting Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

5.3 **Notice to the Nationwide Class**. Notice to the Nationwide Class shall be disseminated according to the Nationwide Class Notice Plan. The Nationwide Class Notice Plan includes:

(a) Email Notice by Settlement Administrator. For each name on the Nationwide Class Notice List for which an email addresses can be identified, no later than the Notice Date, the Settlement Administrator shall send Notice via email, with a link to a Spanish language version, to each email address on the Nationwide Class Notice List.

(b) Reminder Notice. No later than date fourteen days before the Claims Deadline the Settlement Administrator shall send reminder notice via email to each email address on the Nationwide Class Notice List with a link to a Spanish language version.

(c) Settlement Website. Expeditiously after preliminary approval of the Settlement and the Nationwide Notice Plan, the Settlement Administrator shall cause the Notice to be placed and made available to visitors on a website, which shall be administered and maintained by the Settlement Administrator, and shall include the ability to file Claim Forms online. The Notice provided on the Settlement Website will be in English and Spanish. The content of the Settlement Website and any materials posted on the Settlement Website shall be subject to approval of Lead Class Counsel and Defendants' Counsel.

(d) Digital Notice/Social Media Notice: No later than three days after the Notice date, the Settlement Administrator shall disseminate Digital Notices containing

information regarding the Settlement, including the ability to access Notice and Claim Forms, via targeted digital advertising on the following advertising networks: *Google Display Network, Yahoo Audience Network*, *Outbrain Network,* and *Taboola Network,* which together represent thousands of digital properties across all major content categories. The Digital Notices also will be placed on the social media platforms Facebook, Instagram, and X (Twitter). The Digital Notices will also run on photo-sharing sites, such as Flickr, Imgur, Tumblr, and others.

(e)     CAFA Notice. Clearview will coordinate updated compliance with 28 U.S.C. § 1715 at its own cost.

The Settlement Administrator shall, in support of the Motion for Preliminary Approval, provide attestation that the methods of notice set forth herein are valid and effective means of providing notice pursuant to the requirements of Federal Rule of Civil Procedure 23.

5.4     **Identification of Class Members: Illinois Subclass.** Within fourteen (14) days Clearview will provide to the Settlement Administrator a list (if any) of the names and addresses (residential addresses and/or email addresses), of the names of all members of the Settlement Class who, based on Clearview's data, (1) appear in facial images held within the Clearview Biometric Database, (2) had a home location reasonably believed to be in Illinois for one hundred eighty-three (183) or more consecutive days between July 1, 2017 and the date of the Preliminary Approval Order, and (3) provided information to indicated that the Settlement Class Member in the facial image was eighteen years of age or over when their facial image was posted to a publicly accessible webpage (the Illinois Subclass Notice List). Clearview will conduct a good faith search of the Clearview Biometric Database, but believes that it will have few, if any records, which are sufficient to identify the name, home location, duration of residence, and age of Illinois residents,

or the email addresses of Illinois residents, captured in facial images held within the Clearview Biometric Database. In all instances in which Clearview is able to locate a residential and/or email address for an Illinois Subclass Member, Clearview will include all such residential and email addresses on the Illinois Subclass Notice List. The Settlement Administrator shall keep the Illinois Subclass Notice List and all personal information obtained therefrom, including the identity of all Persons, and any email addresses, strictly confidential. The Illinois Subclass Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

5.5 **Notice to the Illinois Subclass:** Notice to the Illinois Subclass shall be disseminated according to the Illinois Subclass Notice Plan. The Illinois Subclass Notice Plan includes:

(a) Email Notice by Settlement Administrator. For each name on the Illinois Subclass Notice List for which an email addresses can be identified, no later than the Notice Date, the Settlement Administrator shall send Notice via email, with a link to a Spanish language version, to each email address on the Illinois Subclass Notice List.

(b) Reminder Notice. No later than date fourteen days before the Claims Deadline the Settlement Administrator shall send reminder notice via email to each email address on the Illinois Subclass Notice List with a link to a Spanish language version.

(c) Publication Notice. CAFA Notice. Clearview will coordinate updated compliance with 28 U.S.C. § 1715 at its own cost.

5.6      **Identification of Class Members: California Subclass.** Within fourteen (14) days Clearview will provide to the Settlement Administrator a list (if any) of the names and addresses (residential addresses and/or email addresses) of the names of all members of the Settlement Class who, based on Clearview's data, (1) appear in facial images held within the Clearview Biometric Database, (2) had a home location reasonably believed to be in California for one hundred eighty-three (183) or more consecutive days between July 1, 2017, and the date of the Preliminary Approval Order, and (3) provided information to indicated that the Settlement Class Member in the facial image was eighteen years of age or over when their facial image was posted to a publicly accessible webpage (the California Subclass Notice List). Clearview will conduct a good faith search of the Clearview Biometric Database, but believes that it will have few, if any records, which are sufficient to identify the name, home location, duration of residence, and age of California residents, or the email addresses of California residents, captured in facial images held within the Clearview Biometric Database. In all instances in which Clearview is able to locate a residential and/or email address for a California Subclass Member, Clearview will include all such residential and email addresses on the California Subclass Notice List. The Settlement Administrator shall keep the California Subclass Notice List and all personal information obtained therefrom, including the identity of all Persons, and any email addresses, strictly confidential. The California Subclass Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

5.7     **Notice to the California Subclass:** Notice to the California Subclass shall be disseminated according to the California Subclass Notice Plan. The California Subclass Notice Plan includes:

(a)     Email Notice by Settlement Administrator. To the extent the California Subclass Notice List contains email addresses, no later than the Notice Date, the Settlement Administrator shall send Notice via email, with a link to a Spanish language version, to each email address on the California Subclass Notice List

(b)     Reminder Notice. No later than date fourteen days before the Claims Deadline the Settlement Administrator shall send reminder notice to each email address on the California Subclass Notice List, with a link to a Spanish language version.

(c)     CAFA Notice. Clearview will coordinate updated compliance with 28 U.S.C. § 1715 at its own cost.

5.8     **Identification of Class Members: New York Subclass.** Within fourteen (14) days Clearview will provide to the Settlement Administrator a list (if any) of the names and addresses (residential addresses and/or email addresses) of the names of all members of the Settlement Class who, based on Clearview's data, (1) appear in facial images held within the Clearview Biometric Database, (2) had a home location reasonably believed to be in New York for one hundred eighty-three (183) or more consecutive days between July 1, 2017, and the date of the Preliminary Approval Order, and (3) provided information to indicated that the Settlement Class Member in the facial image was eighteen years of age or over when their facial image was posted to a publicly accessible webpage (the New York Subclass Notice List). Clearview will conduct a good faith search of the Clearview Biometric Database, but believes that it will have few, if any records, which are sufficient to identify the name, home location, duration of residence, and age of New

York residents, or the email addresses of New York residents, captured in facial images held within the Clearview Biometric Database. In all instances in which Clearview is able to locate a residential and/or email address for a New York Subclass Member, Clearview will include all such residential and email addresses on the New York Subclass Notice List. The Settlement Administrator shall keep the New York Subclass Notice List and all personal information obtained therefrom, including the identity of all Persons, and any email addresses, strictly confidential. The New York Subclass Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

5.9 **Notice to the New York Subclass:** Notice to the New York Subclass shall be disseminated according to the New York Subclass Notice Plan. The New York Subclass Notice Plan includes:

(a) Email Notice by Settlement Administrator. To the extent the New York Subclass Notice List contains email addresses, no later than the Notice Date, the Settlement Administrator shall send Notice via email, with a link to a Spanish language version, to each email address on the New York Subclass Notice List.

(b) Reminder Notice. No later than date fourteen days before the Claims Deadline the Settlement Administrator shall send reminder notice via email to each email address on the New York Subclass Notice List with a link to a Spanish language version.

(c) CAFA Notice. Clearview will coordinate updated compliance with 28 U.S.C. § 1715 at its own cost.

5.10     **Identification of Class Members: Virginia Subclass.** Within fourteen (14) days Clearview will provide to the Settlement Administrator a list (if any) of the names and addresses (residential addresses and/or email addresses) of the names of all members of the Settlement Class who, based on Clearview's data, (1) appear in facial images held within the Clearview Biometric Database, (2) had a home location reasonably believed to be in Virginia for one hundred eighty-three (183) or more consecutive days between July 1, 2017, and the date of the Preliminary Approval Order, and (3) provided information to indicated that the Settlement Class Member in the facial image was eighteen years of age or over when their facial image was posted to a publicly accessible webpage (the Virginia Subclass Notice List). Clearview will conduct a good faith search of the Clearview Biometric Database, but believes that it will have few, if any records, which are sufficient to identify the name, home location, duration of residence, and age of Virginia residents, or the email addresses of Virginia residents, captured in facial images held within the Clearview Biometric Database. In all instances in which Clearview is able to locate a residential and/or email address for a Virginia Subclass Member, Clearview will include all such residential and email addresses on the Virginia Subclass Notice List. The Settlement Administrator shall keep the Viriginia Subclass Notice List and all personal information obtained therefrom, including the identity of all Persons, and any email addresses, strictly confidential. The Virginia Subclass Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

5.11  **Notice to the Virginia Subclass:** Notice to the Virginia Subclass shall be disseminated according to the Virginia Subclass Notice Plan. The Virginia Subclass Notice Plan includes:

(a)    Email Notice by Settlement Administrator. To the extent the Virigina Subclass Notice List contains email addresses, no later than the Notice Date, the Settlement Administrator shall send Notice via email, with a link to a Spanish language version, to all Virginia Subclass Members to each email address on the Virginia Subclass Notice List.

(b)    Reminder Notice. No later than date fourteen days before the Claims Deadline the Settlement Administrator shall send reminder notice via email to all Virginia Subclass Members to each email address on the Virginia Subclass Notice List, with a link to a Spanish language version.

(c)    CAFA Notice. Clearview will coordinate updated compliance with 28 U.S.C. § 1715 at its own cost.

5.12    The Notice to the Nationwide Class and the Illinois, California, New York, and Virigina Subclasses shall advise the Settlement Class and/or relevant Settlement Subclass of their rights, including the right to be excluded from the Settlement Class or Settlement Subclass, to comment upon, and/or object to the Settlement Agreement, any of its terms, or the request for the Fee Award. The Notice shall specify that any objection to the Settlement Agreement and/or the request for the Fee Award, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if properly filed with the Court, and contain directions for such filing.

5.13    Each Settlement Class Member who wishes to file a claim for a Settlement Payment must submit a Claim Form which will be available for electronic completion and submission, as

provided in the electronically provided Notice to the Nationwide Class or Illinois, California, New York or Virginia Subclass Notice, and also available on the Settlement Website. The Claim Form will require a claiming Class Member to provide the following information: (i) full name; (ii) current U.S. Mail address or an e-mail address; (iii) a certification that one or more photographs depicting the claiming Class Member's face was posted to a publicly accessible webpage on internet (such as, by way of example, e.g. Facebook; Instagram; Flickr; Snapfish etc.); (iv) a certification that the Class Member is over the age of 18; and (v) affirm whether the Class Member was a resident of Illinois, California, New York, or Viriginia at the time(s) when the photograph(s) depicting the claiming Class Member was posted to a publicly available webpage. The electronic Claim Form will provide Class Members with instructions for receiving their Settlement Payment digitally.

5.14     Any member of the Settlement Class who intends to object to this Agreement and/or the request for a Fee Award, must present the objection in writing only to the Court, which must be personally signed by the objector, and must include: (1) the objector's name, address, and email; (2) an explanation of the basis upon which the objector claims to be a Class Member; (3) whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (4) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (5) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, who must enter an appearance with the Court in accordance with the Local Rules; and (6) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel). Any objection to the Settlement Agreement and/or the request for a Fee Award, and any

papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if the Class Member making the objection files copies of such papers with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection and supporting papers through the Court's CM/ECF system.

      5.15    A member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request that is received on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. To exercise the right to be excluded, a Settlement Class member must timely send a written request for exclusion to the Settlement Administrator providing his/her name, home or email address, a signature, the name and number of the Action, and a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. The Settlement Administrator shall create a dedicated e-mail address to receive exclusion requests electronically. A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the person serving such a request remain a member of the Settlement Class and shall be bound as a Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

5.16    The Final Approval Hearing shall be no earlier than one hundred twenty (120) calendar days after the Notice described in paragraphs 5.2 through 5.11 is provided.

6.    **SETTLEMENT ADMINISTRATION**

6.1    The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by providing Notice and processing Claim Forms in a reasonable, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Lead Class Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Without limiting the foregoing, the Settlement Administrator shall:

(a)    Receive requests to be excluded from the Settlement Class and promptly provide Lead Class Counsel and Defendants' Counsel copies thereof. If the Settlement Administrator receives any exclusion forms after the deadline for the submission of such forms, the Settlement Administrator shall promptly provide copies thereof to Lead Class Counsel and Defendants' Counsel;

(b)    Provide weekly reports to Lead Class Counsel regarding the number of Claim Forms received and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator;

(c)    Make available for inspection by Lead Class Counsel the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

6.2    The Settlement Administrator shall be obligated to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or

fraud. The Settlement Administrator shall determine whether a Claim Form submitted by a Class Member is an Approved Claim and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or the terms of this Agreement, (b) provide full and complete information as requested on the Claim Form or (c) are submitted by a Class member who already has submitted an accepted Claim Form. In the event a person submits a timely Claim Form by the Claims Deadline, but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such person reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than twenty-eight (28) calendar days after the Claims Deadline. In the event the Settlement Administrator receives such information more than twenty-eight (28) calendar days after the Claims Deadline, then any such claim shall be denied. The Settlement Administrator may contact any person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form. Lead Class Counsel and Defendants' Counsel shall both have the right to challenge the acceptance or rejection of a Claim Form submitted by a Class Member by the Settlement Administrator. The Settlement Administrator shall follow any joint decisions of Lead Class Counsel and Defendants' Counsel as to the validity of any disputed submitted Claim Form. Where Lead Class Counsel and Defendants' Counsel disagree as to the validity of a submitted Claim Form, the Settlement Administrator will resolve the dispute and the Claim Form will be treated in the manner designated by the Settlement Administrator.

6.3     Clearview shall bear all costs of settlement administration separate and apart from the Settlement Fund, except for Taxes and Tax Expenses, which shall be funded from the Settlement Fund.

7.      **PRELIMINARY APPROVAL AND FINAL APPROVAL**

7.1      Promptly after the execution of this Settlement Agreement, Lead Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for entry of Preliminary Approval of the settlement set forth in this Agreement, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination. The order granting Preliminary Approval shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Final Judgment set forth below and do not limit or impair the rights of the Settlement Class.

7.2      After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will (among other things):

         (a)      find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto;

         (b)      approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have res judicata and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and the Releasing Parties with respect to the Released Claims;

         (c)      find that the Notice implemented pursuant to the Agreement (i) constitutes the best practicable notice under the circumstances; (ii) constitutes notice that is reasonably

calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object to the Settlement or exclude themselves from the Settlement Class, and to appear at the Final Approval Hearing; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(d)     find that the Class Representatives and Lead Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(e)     award Class Counsel fees and costs as determined by the Court;

(f)     dismiss the Action (including all individual claims and Class claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

(g)     incorporate the Releases set forth above, make the Releases effective as of the Effective Date, and forever discharge the Released Parties from the Released Claims as set forth herein;

(h)     permanently bar and enjoin all Class Members who have not properly sought exclusion from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement,

and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)    incorporate any other provisions, as the Court deems necessary and just.

7.3    The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

## 8.    TERMINATION OF SETTLEMENT

8.1    **Termination Notice**. Subject to paragraphs 10.1-10.4 below, each Defendant and each Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within twenty-one (21) calendar days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect or a ruling conditionally approving this Agreement subject to proposed changes to, or additions of, material terms (including, but not limited to, changes or additions to the Payment to Class Members set forth in paragraph 3.2, the Notice provisions of paragraphs 5.2-5.11, and the definition of "Released Claims"); (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Court of Appeals or the Supreme Court reverses or modifies the Final Judgment in any material respect; or (v) the date upon which the Court of Appeals or the Supreme Court reverses or modifies in any material respect an Alternative Judgment, as defined in paragraph 10.1(d) of this Agreement.

8.2    **Exclusion Requests.** If, prior to the Final Approval Hearing, the number of members of the Settlement Class who have timely requested exclusion from the Settlement Class

in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto exceeds 50,000 Defendants shall have, in their sole and absolute discretion, the option to terminate this Agreement. Defendants may terminate the Agreement by filing a Termination Notice with the Court and serving such Termination Notice on Lead Class Counsel by hand delivery or overnight courier within ten (10) business days after being informed in writing by the Settlement Administrator that more than 50,001 or more such requests for exclusion have been timely filed.

## 9. INCENTIVE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND PAYMENT OF EXPENSES

9.1    Subject to the Court's approval, the Parties have agreed that the Settlement Fund (comprised of the Settlement Stake Payment or Settlement Stake Payment Sale plus any accrued interest) can be used to pay the Fee and Costs Award to Class Counsel. The Fee and Costs Award is the consideration, representing both attorneys' fees and litigation expenses, awarded by the Court to Class Counsel. Subject to the Court's approval, the Parties have agreed that up to 39.1% of the Settlement Fund may be allocated to the Fee and Costs Award, with the remainder of the Settlement Fund for distribution to the Settlement Class by the Settlement Administrator.  Class Counsel shall not seek or accept more than this amount from the Court.

9.2    Plaintiff's counsel agrees that the Fee and Costs Award shall be paid solely out of the Settlement Fund and shall not increase Defendants' total financial liability with respect to this Settlement Agreement.

9.3    In lieu of any payments on claims to which they may be entitled as a Settlement Class Member under the Settlement Agreement, and in recognition of their efforts on behalf of the Settlement Class, each Class Representatives shall, subject to the approval of the Court, be awarded an incentive award to be paid from the Settlement Fund in an amount equal to the lesser

of 50 shares in the Net Settlement Fund or $1,500.00 [One Thousand Five Hundred Dollars]. This sum shall be paid in recognition of the Class Representatives' time and effort serving as Class Representatives. The Class Representatives reserve all rights with respect to any incentive payments.

9.4     The Parties agree that Defendants' payment of any incentive award approved by the Court shall be paid solely out of the Settlement Fund and shall not increase Defendants' total financial liability with respect to this Agreement.

## 10.     CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

10.1     The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

(a)     The Parties and their counsel have executed this Settlement Agreement;

(b)     The Court has granted Preliminary Approval;

(c)     The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

(d)     The Final Judgment has become Final, as defined by this Agreement, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment"), and that has the approval of the Parties, such Alternative Judgment becomes final and unappealable.

10.2     If some or all of the conditions specified in paragraph 10.1 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in

this Settlement Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to paragraph 8.1 unless Lead Class Counsel and Defendants' Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Settlement Agreement, may terminate this Settlement Agreement on notice to all of the Parties. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the awards to Plaintiffs set forth in paragraph 9 above shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination.

10.3    If this Agreement is terminated or fails to become effective for the reasons set forth in paragraphs 8.1 and 10.1-10.2 above, the Parties shall be restored to their respective positions as of the date of the signing of this Settlement Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* as if this Settlement Agreement had never been entered into.

10.4    In the event the Settlement is terminated or fails to become effective for any reason after the Settlement Fund has been funded, the Settlement Fund, together with any earnings thereon at the same rate as earned by the Settlement Fund, less any Taxes paid or due, shall be returned to Clearview within thirty (30) calendar days after written notification of such event in accordance with instructions provided by Clearview Defendants' Counsel to Lead Class Counsel. At the request of Clearview Defendants' Counsel, Lead Class Counsel or their designees shall apply for any tax refund owed on the amounts in the Settlement Fund and pay the

proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to Clearview or as otherwise directed.

## 11.     MISCELLANEOUS PROVISIONS

11.1     The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals. Lead Class Counsel and Defendants' Counsel agree to cooperate with one another in seeking Preliminary Approval, and entry of the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

11.2     The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendants, or each or any of them, in bad faith or without a reasonable basis.

11.3     Each signatory to this Agreement and warrants (a) that he, she, or it has all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this

Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

11.4    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

11.5    Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)    is, may be deemed, or shall be used, offered or received against Defendant, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil,

criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(d)     is, may be deemed, or shall be construed against Plaintiffs, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(e)     is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

11.6     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

11.7    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

11.8    All of the Exhibits to this Settlement Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

11.9    This Settlement Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.10   Except as otherwise provided herein, each Party shall bear its own costs and attorneys' fees incurred in any way related to the Action.

11.11   Plaintiffs represent and warrant that they have not assigned any claim or right or interest relating to any of the Released Claims against the Release Parties to any other person or party and that they are fully entitled to release the same.

11.12   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

11.13   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

11.14   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

11.15   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

11.16   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflict of laws provisions thereof.

11.17   This Settlement Agreement is deemed to have been prepared by counsel for all Parties as a result of arms' length negotiations among the Parties with the aid of a neutral Mediator. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

11.18   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the following counsel. For Plaintiffs: Michael Kanovitz/Tom Hanson, 311 N. Aberdeen St., Third Floor, Chicago, IL 60607. For Clearview Defendants: Daniel Lynch/James L. Thompson, Lynch Thompson LLP, 150 S. Wacker Drive, Suite 2600 Chicago, IL 60606. For Macy's Defendants:  Rachel Schaller/Daniel Saeedi, Blank Rome LLP, 444 W. Lake St., Suite 1650, Chicago, IL 60606.

11.19   Under no circumstances will Defendants have any liability for Taxes or Tax Expenses under the Settlement. Plaintiffs, Class Counsel, and Class Members, and the recipients of cy pres funds are responsible for any taxes on their respective portions of the recoveries or awards. Nothing in this Agreement, or statements made during the negotiation of its terms, shall constitute tax advice by Defendants or Defendants' counsel.

11.20   All time periods and dates described in this Settlement Agreement are subject to the Court's approval. These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Settlement Class. The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any provision of this Settlement Agreement

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

**For Plaintiffs and the Settlement Class**:

Rondell Sanders (Jun 10, 2024 16:16 CDT)

_____
Rodell Sanders, Class Representative

Date: 10/06/24

*Gerard R. Dache*
Gerard R. Dache (Jun 11, 2024 22:30 EDT)

_____
Gerard Dache, Class Representative

Date: 06/11/24

Eric Gould (Jun 11, 2024 21:21 EDT)

_____
Eric Gould, Class Representative

Date: 06/11/24

*Jordan Orlando*
Jordan Orlando (Jun 11, 2024 10:49 EDT)

_____
Jordan Orlando, Class Representative

Date: 06/11/24

*Thomas Hanson*
Thomas Hanson (Jun 12, 2024 21:53 CDT)

_____
Tom Hanson, Lead Class Counsel
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607

Date: 06/12/24

**For Clearview AI, Inc.:**

_____
NAME, POSITION
CLEARVIEW AI, INC.

Date: _____

_____
NAME
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654

Date: _____

_____
NAME

Date: _____

**For Clearview AI, Inc.:**

_Hoan_

Hoan Ton-That (Jun 12, 2024 14:44 PDT)                    Date: 06/12/2024

Hoan Ton-That, CEO
CLEARVIEW AI, INC.

James Thompson                                             Date: June 12, 2024

LYNCH THOMPSON LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

**For Hoan Ton-That:**

_Hoan_

Hoan Ton-That (Jun 12, 2024 14:44 PDT)                    Date: 06/12/2024

Hoan Ton-That

James Thompson                                             Date: June 12, 2024

LYNCH THOMPSON LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

**For Richard Schwartz:**

_Richard Schwartz_

Richard Schwartz (Jun 12, 2024 17:40 EDT)                 Date: 06/12/2024

Richard Schwartz

James Thompson                                             Date: June 12, 2024

LYNCH THOMPSON LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

**For Rocky Mountain Data Analytics LLC:**

_Hoan_

Hoan Ton-That (Jun 12, 2024 14:44 PDT)                    Date: 06/12/2024

Hoan Ton-That
ROCKY MOUNTAIN DATA ANALYTICS LLC

_____          Date: June 12, 2024
James Thompson
LYNCH THOMPSON LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

**For Thomas Mulcaire:**

_Thomas Mulcaire_
_____          Date: _06/12/202_ _____
Thomas Mulcaire

_____          Date: June 12, 2024
James Thompson
LYNCH THOMPSON LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

161593.00001/135800788v.1

**For Macy's, Inc.:**

Date: 6/12/2024

Rachel L. Schaller
BLANK ROME LLP
444 W. Lake St., Suite 1650
Chicago, Illinois 60606


**For Macy's Retail holdings, Inc. (n/k/a Macy's Retail Holdings, LLC):**

Date: 6/12/2024

Rachel L. Schaller
BLANK ROME LLP
444 W. Lake St., Suite 1650
Chicago, Illinois 60606


**For Macy's Corporate Services, Inc (n/k/a Macy's Corporate Services, LLC):**

Date: 6/12/2024

Rachel L. Schaller
BLANK ROME LLP
444 W. Lake St., Suite 1650
Chicago, Illinois 60606

161593.00001/135800788v.1