# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135 <br><br> Judge Sharon Johnson Coleman <br><br> Magistrate Judge Maria Valdez |

### DECLARATION OF HON. WAYNE R. ANDERSEN (RET.) REGARDING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, WAYNE R. ANDERSEN, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this Declaration in my capacity as the mediator in connection with the proposed settlement of the claims asserted in this nationwide class action. While the mediation process is confidential, the parties have authorized me to inform the Court of the procedural and substantive matters set forth herein in support of preliminary approval of the Settlement. I make this Declaration based on personal knowledge and am competent to so testify.

2. For the reasons discussed herein, and based on my extensive discussions with the parties and the information made available to me during negotiations, I believe that the Settlement was negotiated in good faith and the result of each side zealously advocating to obtain the best result for their respective clients given the legal and economic risks involved.

3. I am a former U.S. District Judge, a former Judge of the Circuit Court of Cook County, a former Deputy Secretary of State of Illinois, and a former partner with the law firm of Burditt & Calkins. I currently serve as a mediator and arbitrator with the alternative dispute resolution company, JAMS, working out of the JAMS Chicago office at 71 S. Wacker Drive in Chicago. I am a member of the State Bar of Illinois. I earned my Bachelor of Arts *cum laude* from

Harvard University, and my J.D., from the University of Illinois College of Law. After serving as an administrative assistant to Illinois House of Representatives Majority Leader Henry J. Hyde, an associate and partner in private practice at Burditt & Calkins, and a deputy Secretary of State of Illinois, I became a judge of the Circuit Court of Cook County, a position I held for seven years, from 1984-1991.

4. In 1991, I was nominated by President George H.W. Bush to serve as a United States District Judge for the Northern District of Illinois, a position I held for almost 20 years, from 1991-2010. While on the bench, I presided over hundreds of federal and state court trials. On the bench, I conducted thousands of settlement conferences with parties in state and federal court. These settlement conferences often occurred before trial, enabling the parties to resolve matters without a trial, but I also conducted settlement conferences while withholding entry of judgment on jury verdicts to allow the parties, with my assistance, to work out post-trial final settlements.

5. I left the federal bench in 2010 and joined JAMS, where, for roughly 14 years, I have helped parties resolve disputes in a wide array of matters including acting as a mediator, arbitrator and discovery master. At JAMS, I have devoted considerable time and energy to serving as a mediator and arbitrator in connection with large, complex cases such as this one. I have successfully mediated numerous complex commercial cases, including large-scale data privacy actions and other, complex class actions.

6. In 2022 I was first contacted to serve as mediator in connection with a potential resolution of the litigation involving Clearview AI, Inc. ("Clearview"), and I agreed. I did not oversee a typical, day-long in-person mediation session at that time, but coordinated a lengthy series of back-and-forth conversations and information exchanges between Class and Defense counsel. These discussions and submissions addressed highly complex factual, legal and

2

technological issues that revealed substantial expert and investigatory work. These discussed issues included, for example: (1) the facts surrounding Clearview's data scraping and database of photographs and facial vector information; (2) the huge size of potential liability under Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 ("BIPA") and recent decisions applying BIPA; (3) Clearview's defenses to the all Class claims under BIPA; (4) Clearview's arguments as to the territorial limitation of BIPA as applied to non-Illinois residents; (5) the strength of and defenses to class claims brought under California, New York, and Virginia law, as well as the strength of and defenses to nationwide class claims; and (6) the Class claims against Macy's and the putative Defendant class, including the scope and extent of any use by vendors of the information from the Clearview database. Finally, the parties and I considered the inability of Clearview, as a technology start-up with limited funding, client-base, and revenue, to pay any judgment in the tens, never mind the hundreds, of millions of dollars. On this issue of Clearview finances, Clearview provided extensive information – everything that the Class requested – as to its financial condition.

7. Ultimately, these 2022 discussions did not lead to any agreement or resolution. The Class insisted on receiving a substantial payment from Clearview, along with other forms of possible relief, while Clearview claimed that it could not make the payment being demanded.

8. In February of 2023, Interim Lead Class Counsel reached out to me to see whether I would be willing to facilitate further negotiations. Counsel for Clearview agreed to the resumption of mediated negotiations. I again agreed to serve as the mediator.

9. At the outset of this second round of mediated negotiations, both parties had agreed that any viable class action settlement would need to include the Class receiving a meaningful equity stake in Clearview AI, Inc. Clearview continued to represent that it could not afford a payment large enough to serve as the basis for a settlement of a class action of this size, and

3

Clearview provided Class Counsel with updated information as to its financial position, revenues, and capitalization.

10. By the spring of 2023, after numerous conversations in which I served as the go-between and mediator, the parties ultimately agreed on the basic economic terms that were ultimately incorporated into an early September term sheet. These terms are now reflected in the Class Action Settlement Agreement included with the Motion for Preliminary Approval. The discussions preceding this agreement were extensive and detailed, and addressed key factual issues, legal issues related to liability, damages and class definition/certification, as well as issues of taxation and securities law. I found these discussions to be extremely valuable in helping me understand the relative merits of each party's positions, and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement.

11. From the outset of the resumed, 2023 negotiations, the parties recognized that a class action settlement built around an equity interest in the defendant, rather than funding a sizeable settlement fund, would be relatively unique and pose challenges. For example, the parties needed to consider the tax impacts – to Class, Class Counsel and Clearview – of the various structures under consideration. Both Clearview and Class Counsel retained and consulted with tax experts, and I coordinated calls to address the tax discussions. I mediated spirited negotiations between the parties on many of the structural elements reflected in the final Settlement Agreement, including: the 17% revenue set aside option; the position of the Settlement Master; and the options for liquidation events. By the end of August 2023, I had managed to get the parties to agree on a Term Sheet that could be described to the Court and serve as the basis for a Class Action Settlement Agreement.

12. From my review of the case, discussions with parties and experts, and in-depth involvement with the mediation, the arguments and positions asserted by all involved were the product of much hard work, and they were complex and highly adversarial. After the failed mediation effort in 2022, I believed that the negotiation would be a difficult and adversarial process through which all involved would hold strong to their convictions that they had the better legal and substantive arguments, and that a resolution without further litigation or trial was by no means certain.

13. I also was convinced that even a "victory" by the Class after a long and expensive trial would not necessarily lead to a meaningful monetary recovery for the Class. Clearview did not have the funds to pay a multi-million-dollar judgment. Indeed, there was great uncertainty as to whether Clearview would even have enough money to make it through to the end of a trial, much less fund a judgment. In addition, Clearview explained, and substantiated, that certain of its convertible note holders possessed security interests in the technology being used by Clearview. This meant that, in the event of a Clearview bankruptcy – during litigation or after trial – the holders of those security interests would have priority to any claim by the Class after a judgment, leaving little to nothing with which to satisfy a judgment.

14. The settlement was the product of extensive arm's-length negotiations over more than six months. There was no collusion whatsoever in reaching the terms of the settlement. The settlement obtained provides a potentially very substantial recovery for the Class, especially when measured against the significant obstacles standing in the way of achieving a resolution and collection of a judgment on Plaintiffs' claims.

15. The payout to the Class that is equivalent to a 23% stake in Clearview, on a fully diluted basis as of the time of the signing of the Term Sheet, was particularly the subject of long

6

and contentious negotiation. Too large a percentage ran the risk of preventing Clearview from attracting additional, future investors, which Clearview needed to survive and to thrive; too small a percentage would not have provided the Class with a sufficient payout for their claims and their zealous advocacy of those claims. Like other aspects of the Settlement, counsel for Clearview and the Class advocating fiercely to negotiate a payout they believe strikes this balance.

16. This case also presented numerous appellate issues for both sides, which could have caused this case to drag on for years, with a verdict providing no certainty or finality to either side. Further, at the time of the 2023 mediated negotiations, Clearview's financial position was precarious, making any recovery much more difficult if not impossible. Plaintiffs' counsel took advantage of this opportunity and settled at what I believe to be a most opportune juncture.

17. In sum, based on my experience as a litigator, a former U.S. District and state court Judge and a mediator, I believe that this settlement represents the Parties' strongly held positions throughout the months of negotiations.

I declare that the foregoing facts are true and correct and that this declaration was executed this __11__ day of June, 2024.

Hon. Wayne R. Andersen (ret.)