# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No.: 1:21-cv-00135<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Maria Valdez |

## DECLARATION OF MIKE KANOVITZ IN SUPPORT OF PLAINTIFFS' FEE PETITION

I, MIKE KANOVITZ, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney admitted to practice before this Court and am providing this Declaration in support of Plaintiffs' Fee Petition.

2. I am a partner at Loevy & Loevy. I served as one of the lead lawyers in this case, and in *Mutnick v. Clearview AI, Inc.*, N.D. Ill. No. 20-cv-512, one of eleven actions consolidated into this multidistrict litigation by order of the Judicial Panel on Multidistrict Litigation. Following consolidation, this Court named Loevy & Loevy as Interim Lead Class Counsel, Dkts. 25 & 504, and subsequently appointed Loevy & Loevy as Lead Class Counsel. Dkt. 580.

3. As shown in the firm resumé attached as Exhibit A1, Loevy & Loevy is a highly experienced litigation and trial firm, having won hundreds of millions of dollars in verdicts and settlements for clients with diverse legal issues, including civil rights, class actions, whistleblower cases under the False Claims Act, and others. Relevant for this case, our firm has won dozens of trials before juries in this district (and nationally) *including multiple class action trials*, whereas exceedingly few law firms have ever taken a class action all the way through trial. This unique experience helps inform our views on how to effectively litigate class actions, as well as helping

to inform our views on whether settlement is appropriate or whether a trial would likely maximize the class's recovery.

4. Of particular relevance here, our firm was lead trial counsel in the first (and only) class action under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA") to proceed to trial. *Rogers v. BNSF Railway Co.*, N.D. Ill. No. 1:19-cv-3083. I served on the trial team for that case, which resulted in a jury verdict finding that the Defendant had committed reckless violations of the biometric privacy law. This unique experience too helped inform our views on how to obtain the best result for this Class.

5. Our firm is consistently willing to represent clients who no other firms will represent because the cases are either too challenging, or because there are not a lot of economic damages. Instead of just looking at the size of the compensable injuries, we take cases where justice demands it. The firm also devotes thousands of hours each year to *pro bono* cases, primarily post-conviction work.

6. Our firm handles cases almost exclusively on a contingent-fee basis. Our standard contingency fee is 40% of the gross recovery but can range to 50% for particularly risky cases from the standpoint of liability, collectability, or both.

7. We accept cases with the expectation that we will take them all the way through trial, and the appellate process if needed, and we treat every case as if it will go that far. This case was no exception.

**The Litigation**

8. This case has been heavily litigated since its inception. In November of 2019, Lead Class Counsel, Loevy & Loevy, learned about Clearview's practices via information obtained under the Freedom of Information Act from law enforcement and began developing this case.

9. Two months later, when the New York Times article "The Secretive Company that Might End Privacy as We Know It" was published on January 18, 2020, we were already working on the case and thus were the first to file claims on behalf of the Class, in *Mutnick v. Clearview AI, Inc., et al.*, N.D. Ill. No. 20-cv-512.

10. Additional filings, many copying our work, soon followed in courts across the country, alleging not only BIPA violations but also claims based on privacy and computer crime statutes in New York, Virginia and California.

11. In the original *Mutnick* action, Loevy attorneys moved quickly to advance the BIPA claims. Within weeks of filing, our firm had sent FOIA requests to law enforcement agencies in Illinois, New York and New Jersey amassing evidence on Clearview's contracts with those agencies.

12. On April 8, 2020 – as offices and courts across the country shut down in response to Covid – we filed a motion for preliminary injunction seeking to enjoin Clearview's BIPA-violating practices.

13. Clearview filed a motion to dismiss on April 27, 2020, and also sought a stay to forestall Plaintiff's motion for preliminary injunction.

14. The various pleadings motions, motions to stay, and motion for preliminary injunction led to regular filings by our firm over the ensuing months, as reflected on the Court's docket and those of the consolidated actions.

15. Upon consolidation into this MDL on January 8, 2021, the frenetic pace of litigation redoubled. Following this Court's appointment of Loevy & Loevy as Interim Lead Class Counsel on March 10, 2021, our firm coordinated with the other firms who had brought the consolidated

actions to submit a proposed Case Management and Discovery Plan, as well as a Consolidated Class Action Complaint.

16. Our firm also renewed Plaintiffs' motion for preliminary injunction and sought and received expedited discovery to support the motion, resulting in the deposition of Defendant Thomas Mulcaire (Clearview's General Counsel) being taken on May 13, 2021.

17. During this same time, our firm also propounded Plaintiffs' initial written discovery requests, sending interrogatories and requests for production on May 24, 2021.

18. The parties also engaged in a settlement conference with Magistrate Judge Valdez at this time, resulting in an agreed resolution on Plaintiffs' motion for preliminary injunction but with the litigation otherwise continuing apace.

19. Clearview and the Macy's Defendants also renewed their motions to dismiss, with multiple *amici curiae* weighing in. The Court ultimately granted in part and denied in part the motions to dismiss in orders dated January 27, 2022, and February 14, 2022. Defendants sought reconsideration and interlocutory appeal, to no avail.

20. Meanwhile, even with the motions to dismiss pending, Plaintiffs forged ahead with written discovery and third-party subpoenas. Class Counsel sent the first of many Rule 37 meet and confer letters on July 26, 2021, triggering a dispute with Clearview that would ultimately lead to competing motions for sanctions against Clearview and for a protective order which were still pending when the matter was stayed for settlement discussions more than a year and a half later.

21. Class Counsel negotiated a detailed ESI protocol in this case that covered potentially billions of records and also negotiated Clearview's ultimate agreement to allow Plaintiffs' retained expert to inspect Clearview's source code – both processes took months of

negotiation, with dozens of letters, emails, and phone calls, as well as (at times) the Court's intervention.

22. Clearview's document production ultimately resulted in the production of more than 300,000 pages of documents.

23. In addition to the time, effort and expertise brought by the attorneys to this cause, Loevy & Loevy also incurred significant costs and expenses, primarily in the retention of experts but also in connection with travel costs, legal research, and other routine litigation expenses. All told, we have expended more than $160,000.00 in out-of-pocket costs in prosecuting this litigation.

24. Loevy & Loevy has employed ten different attorneys on this matter supported by at least as many paralegals and support staff, and additional attorneys from other Class Counsel firms also contributed significant time and effort to the matter.

25. All of this effort was undertaken with full understanding of the risk that Class Counsel might recover nothing.

**The Settlement**

26. Plaintiffs and Clearview first discussed settlement in mid-2022, engaging Hon. Wayne Andersen (ret.) to explore a potential resolution.

27. While the parties held extensive discussions facilitated by Judge Andersen at that time, no resolution was reached.

28. In late December of 2022, Plaintiffs and the Clearview Defendants again expressed interest in exploring settlement. Plaintiffs and Clearview re-engaged Judge Andersen as a mediator and conducted mediation on March 7, 2023.

29.     From the outset, it was clear that the case would not be settled with an adequate cash payment. The size of the proposed plaintiff class and subclasses – encompassing virtually any individual whose face has been posted on the internet – mandates that any monetary settlement be substantial. And Clearview simply does not have the means to make such a payment. Clearview is a startup with few unencumbered assets, and the pendency of this litigation also meant that it could not attract additional funding rounds necessary for its growth. The company provided convincing evidence of its financial condition demonstrating that it could not even survive to continue paying to fight the litigation.

30.     Nor would it have made sense to give up on financial relief in order to secure an injunction. Collateral litigation, brought after these consolidated cases were filed, sought and settled for injunctive-only relief that addressed the landscape of needed changes to the company's practices as well as programmatic accommodations for Class members. It also ended any ongoing violations by the putative defendant class. Among other matters, that settlement permanently bans Clearview from granting free or paid access to its database to private companies, unless explicitly exempt under BIPA, thereby primarily limiting it to government customers with legal authority to use the database, and also allows Class members to remove themselves from the database.

31.     These realities led Lead Class Counsel to fashion a creative solution, that secures for the Class a percentage of the value Clearview could achieve in the future, should they not bankrupt it by continuing to litigate. Over the ensuing months, with the help of Judge Andersen as well as securities and tax experts retained by Lead Class Counsel, the Parties developed the structure and negotiated the terms of this novel approach.

32. To the best of my awareness, this settlement is trailblazing, with no other class action lawyers having found a way to achieve significant value for their clients under such challenging circumstances.

I declare that the foregoing facts are true and correct and that this declaration was executed this 6th day of September, 2024.

                                                      */s/ Mike Kanovitz*
                                                      Mike Kanovitz