IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| *In re: Clearview AI, Inc. Consumer Privacy Litigation* | Civil Action File No. 1:21-cv-00135 |
|  | Judge Sharon Johnson Coleman |
|  | Magistrate Judge Maria Valdez |

## OBJECTIONS OF CLASS MEMBERS WEISSMAN AND CLAYPOOL AND NOTICE OF INTENT TO APPEAR

Wendy Liu (*pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorney for Objectors Robert Weissman and Rick Claypool*

# TABLE OF CONTENTS

IDENTITY OF OBJECTORS AND INTENT TO APPEAR ........................................................ 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

STANDARD .............................................................................................................................. 6

OBJECTIONS............................................................................................................................ 7

I.   The proposed settlement is not fair, adequate, or reasonable because requiring class members to endorse and bear the risk of Clearview's business is fundamentally unfair. ...................... 7

II.  The proposed settlement is not fair, adequate, or reasonable because class members may receive no value for their sweeping release of claims. .......................................................... 9

    A.  The settling parties have failed to show that the proposed settlement will provide a meaningful benefit to class members................................................................................ 9

        1.  Class members would receive no payment at the time of final approval. ................ 10

        2.  The future value of the purported settlement relief is highly speculative................ 10

        3.  The absence of injunctive relief highlights the inadequacy of the proposed settlement. ................................................................................................ 13

    B.  The proposed release is unreasonably broad. .................................................................. 15

    C.  The proposed settlement provides class members no consideration for the release of claims against defendants other than Clearview. ............................................................ 16

III. The nationwide class is not adequately represented. ............................................................ 18

CONCLUSION.......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................... 6, 7, 18

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
    662 F.3d 913 (7th Cir. 2011) ................................................................................ 7

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ............................................................................ 7, 19

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ............................................................................... 16

*In re HP Inkjet Printer Litigation*,
    716 F.3d 1173 (9th Cir. 2013) ............................................................................... 7

*In re Katrina Canal Breaches Litigation*,
    628 F.3d 185 (5th Cir. 2010) ................................................................................. 9

*In re Payment Card Interchange Fee & Merchant Discrimination Antitrust Litigation*,
    827 F.3d 223 (2d Cir. 2016) ................................................................................. 18

*In re Subway Footlong Sandwich Marketing & Sales Practices Litigation*,
    869 F.3d 551 (7th Cir. 2017) .......................................................................... 6, 7, 9

*In re Southwest Airlines Voucher Litigation*,
    799 F.3d 701 (7th Cir. 2015) ............................................................................. 7, 8

*In re Walgreen Co. Stockholder Litigation*,
    832 F.3d 718 (7th Cir. 2016) ................................................................................. 9

*Koby v. ARS National Services, Inc.*,
    846 F.3d 1071 (9th Cir. 2017) ......................................................................... 9, 13

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................................. 7

*Reynolds v. Beneficial National Bank*,
    288 F.3d 277 (7th Cir. 2002) ........................................................................... 7, 17

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ............................................................................. 7, 8

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ........................................................................................... 6, 9

*Zimmerman v. Zwicker & Associates*,
  2011 WL 65912 (D.N.J. Jan. 10, 2011) ................................................................................ 16

**Federal Rule of Civil Procedure**

Rule 23(a) ................................................................................................................................ 6, 18

Rule 23(b) ..................................................................................................................................... 6

Rule 23(e) ...................................................................................................................... 1, 6, 16, 18

Rule 23, advisory committee's note to 2018 amendments ............................................................ 9

**Other Authorities**

1 *Newberg & Rubenstein on Class Actions* (6th ed., 2024 update) .............................................. 18

*The Biggest Failed Mergers and Acquisitions of the Last Decade*, U.S.A. Today, Mar. 18, 2024,
  https://www.usatoday.com/picture-gallery/money/2024/03/18/the-biggest-failed-mergers-
  and-acquisitions-of-the-last-decade/50489241/ ....................................................................... 11

Alan S. Gutterman, *Business Transactions Solutions* (Sept. 2024 update) ................................. 12

Virginia B. Morris & Kenneth M. Morris, *Guide to Money & Investing* (2010) .......................... 12

## IDENTITY OF OBJECTORS AND INTENT TO APPEAR

These objections are filed on behalf of Robert Weissman and Rick Claypool, who are members of the nationwide class as defined in the proposed settlement. The accompanying certifications of Mr. Weissman and Mr. Claypool contain the information required by paragraph 5.14 of the proposed settlement agreement. *See* Exhibits 1–2. Objectors Weissman and Claypool intend to appear at the final approval hearing through counsel and present argument in support of their objections.

## INTRODUCTION

The Court should deny final approval of the proposed settlement because it is not "fair, reasonable, and adequate" as required by Federal Rule of Civil Procedure 23(e)(2), for several reasons. First, although the lawsuit challenged Clearview AI's collection and use of people's biometric information, the proposed settlement does nothing to halt that activity. To the contrary, it requires class members to endorse Clearview's continued collection and use of biometric information, even if unlawfully collected. Requiring class members to authorize activity that they alleged was unlawful is fundamentally unfair.

Second, the settling parties have failed to show that the class members will receive any meaningful benefit from the proposed settlement. The notion that the "settlement stake" will result in a monetary payment for class members in the future rests on sheer speculation, and the proposed settlement includes no injunctive relief.

Third, the proposed release of claims is overbroad. It covers factual matters outside the scope of this lawsuit, requiring the release of claims involving factual conduct different from the conduct alleged in the complaint and for violations of laws not asserted as claims. And without

providing consideration for the release, the proposed settlement releases claims against defendants who contribute nothing to the settlement.

Finally, the nationwide class lacks adequate representation because all class representatives are members of the favored subclasses. In addition, the unexplained replacement of all prior named plaintiffs shortly before settlement raises significant concerns about the fairness of the proposed settlement and the adequacy of the class representatives.

## BACKGROUND

This class action consolidates multiple cases arising out of Clearview AI's secret and unlawful collection and use of biometric identifying information for people across the country. The consolidated class-action complaint alleges that Clearview covertly scraped more than three billion photographs of facial images of people from social media and other websites. Then, using artificial intelligence technology, Clearview harvested the unique biometric identifying information of those people and created a searchable database through which users could identify people by uploading a photograph of that person. Third Am. Consol. Class Action Compl. (TAC) ¶ 1, ECF No. 573. Without the knowledge or consent of the people whose biometric identifying information was captured, Clearview sold access to this database to hundreds of private companies and thousands of law enforcement and government agencies. TAC ¶¶ 1, 29–30.

Alleging violations of their rights under the Illinois Biometric Information Protection Act, 740 ILCS 14/1 et seq. (BIPA), Virginia, California, and New York law, and unjust enrichment, the plaintiffs brought claims on behalf of themselves, all individuals in the United States with biometric information in the Clearview database (the nationwide class), and all residents of Illinois, California, New York, and Virginia with biometric information in the Clearview database (the Illinois, California, New York, and Virginia subclasses), against defendants Clearview, Clearview's

2

co-founders and principals (Hon Ton-That and Richard Schwartz), a Clearview corporate shell (Rocky Mountain Data Analytics LLC), and Clearview's general counsel and Rocky Mountain's vice president (Thomas Mulcaire) (collectively, Clearview Defendants). *Id.* ¶¶ 9–13, 70–193. In addition, the plaintiffs sued Macy's, Inc. and other Macy's entities (collectively, Macy's Defendants), individually and as representatives of a defendant class of other private entities that purchased access to and used the biometric information in the Clearview database. *Id.* ¶ 30. The complaint seeks (i) monetary damages; (ii) a declaration that, among other things, defendants' ongoing collection and use of the plaintiffs' biometric information is unlawful, *id.* ¶ 198; and (iii) an injunction requiring the defendants to delete all the biometric information of the plaintiffs and cease further collection and distribution, purchase or sale of that information, *id.* ¶ 199; *id.* at 52.

This Court denied defendants' motions to dismiss as to nearly all claims. *See* Mem. Op. & Order, ECF No. 272 (Macy's Defendants); Mem. Op. & Order, No. 279 (Clearview Defendants).[1] While discovery was underway, the parties reached a proposed settlement but, to finalize it, they needed to amend the complaint to replace all the previous class representatives with new ones. *See* 4/29/2024 Minute Entry, ECF No. 572. In addition to changing the named plaintiffs, the proposed settlement changes the class definition for the nationwide class: Whereas the complaint defines the nationwide class as "[a]ll individuals in the United States of America whose Biometrics were or are contained in the Biometric Database," TAC ¶ 58(a), the settlement agreement narrows the nationwide class definition to "all individuals who resided in the United States of America between July 1, 2017, and the date of Preliminary Approval." Settlement Agreement (SA) ¶ 1.35, ECF No. 578-1.

---

[1] The California unfair competition law claim and New York unjust enrichment claim were dismissed. ECF Nos. 272, 279.

The proposed settlement includes an extremely broad release of claims, including claims outside the scope of this lawsuit. For example, the settlement would release liability for not only claims relating to the defendants' unlawful capture and use of biometric information through the Clearview database (the subject of this complaint), but also any "*other* Clearview technology." *Id.* ¶ 1.46 (emphasis added). The proposed settlement releases not only the claims in the complaint, but also "any and all state law claims … and federal statutory, constitutional, and common law claims" that could have been alleged "regarding the images held in the Biometric Database." *Id.* Moreover, defendants who contribute nothing to the settlement receive this expansive release in exchange for no consideration to the class. *See id.* ¶¶ 1.47, 1.54.

In exchange, the class members receive no certain monetary relief. *See id.* ¶ 3.2. Instead, class members with "approved claims" receive shares of a Settlement Fund, *see id.* ¶¶ 1.56, 3.2, that remains unfunded unless and until one of four financial transactions occurs: (i) Clearview completes a merger or acquisition or disposes of all or substantially all its assets (the Liquidation Option); (ii) Clearview consummates an initial public offering (IPO) (the IPO Option); (iii) the Settlement Master elects for Clearview to pay a cash demand (the Cash-Demand Option); or (iv) the Settlement Master sells the right to payment from the Liquidation, IPO, or Cash-Demand Options to a third party for a "commercially reasonable price" (the Third-Party Sale Option). *Id.* ¶¶ 3.3–3.4; *see id.* ¶ 1.19. The settlement proposes to generate cash to fund the Settlement Fund through one of these four options; the settlement calls this a payment or sale of the "Settlement Stake," which is defined as a "monetary amount equal to the value of the number of shares of Clearview common stock" that is equivalent to a 23 percent stake in Clearview as of September 6, 2023. *Id.* ¶ 1.57.

4

Class counsel admit that the value of the relief proposed under the settlement is "unknown." Pls. Mem. 3, ECF No. 578. Moreover, the future value of the Settlement Fund, if any, will vary depending on the financial-transaction option completed. For the Liquidation and IPO Options, the payment amount varies depending on, among other things, the value of the Settlement Stake at the time that the financial transaction is completed. SA ¶¶ 3.3(a), (b). For the Cash Option, Clearview pays 17 percent of Clearview's revenue during a specified time period: from the date of final settlement until the date the Cash Option is elected. *Id.* ¶ 3.3(c). For the Third-Party Sale option, Clearview pays nothing at all; instead, the payment from the third-party purchaser funds the Settlement Fund. No defendant other than Clearview pays money into the Settlement Fund, the settlement's administrative expenses, or the Settlement Master's hourly fees. *See id.* ¶¶ 1.51, 1.54, 3.3–3.4. The settlement proposes to award the class representatives $1,500 or 50 shares of the Settlement Fund, whichever is less, paid out of the Settlement Fund. *Id.* ¶ 9.3.

The proposed settlement provides no declaratory or injunctive relief to the class. Clearview is not required to delete any person's biometric information, delete the Clearview biometric database, provide a mechanism for class members to request the removal of their information from the database, or prohibit others from accessing the database. Instead, the settlement authorizes Clearview's continued collection and use of the biometric information of the class members and others across the country and the continued existence of the Clearview database. In addition, the settlement permits others to continue to use people's biometric information stored in the Clearview database—even the biometric information that was unlawfully obtained. Moreover, in a bizarre twist, class members effectively endorse Clearview's collection and use of biometric information, including from its unlawfully constructed biometric database, because the availability of any settlement payment in the future hinges on the value of Clearview's future business.

## STANDARD

A court may approve a class-action settlement only if: the settlement class "is one qualified for certification under Rule 23(a) and (b)," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621 (1997); the class was provided adequate notice and a hearing, Fed. R. Civ. P. 23(e)(1), (2); and the court finds that the settlement is "fair, reasonable, and adequate," *id.* 23(e)(2). The settling parties bear the burden of showing that the settlement meets the requirements of Rule 23. In determining whether the settlement is "fair, reasonable, and adequate," the court considers whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arms length," and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(B), (D). In addition, the court considers whether:

> the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.* 23(e)(2)(C). The Seventh Circuit also sets forth the following "relevant factors" to the court's fairness determination:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014) (citation omitted).

"Underpinning [Rule 23's] requirements is a concern for the unnamed class members whose interests the named plaintiffs represent and the settlement is meant to serve." *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017). In the context of class action settlements, class counsel and defendants may have incentives "to sell out the class" by accepting a "deal that promotes the self-interest of both class counsel and the defendant[s]" at

class members' expense. *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (quoting *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011)). Thus, "especially in the settlement context, the judge must give the requirements for class certification 'undiluted, even heightened, attention.'" *In re Subway*, 869 F.3d at 555 (quoting *Amchem*, 521 U.S. at 620). The court must act "as 'a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries.'" *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)); *see Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) (stating that the district court must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions").

## OBJECTIONS

### I.     The proposed settlement is not fair, adequate, or reasonable because requiring class members to endorse and bear the risk of Clearview's business is fundamentally unfair.

The settlement proposes to provide class members with no guaranteed cash and no injunctive relief. Rather, it provides only a financial interest in the company, which may continue the very business practices that the plaintiffs alleged were unlawful and caused them harm. Forcing class members to endorse and support Clearview's continued performance of the very acts giving rise to this lawsuit is not fair or reasonable.

The Seventh Circuit and other courts view settlements that pay class members coupons or other in-kind compensation with "caution if not skepticism." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 711 (7th Cir. 2015); *see Synfuel Techs.*, 463 F.3d at 654; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013). In the context of such settlements, courts have noted "[t]he potential for abuse" when the relief provided has value "only if a class member is willing to do

business again with the defendant who has injured her in some way." *In re Sw. Airlines*, 799 F.3d at 706; *see Synfuel Techs.,* 463 F.3d at 654 (questioning the fairness of a settlement where the relief provided "'require[s] the claimant to return to the Defendant to do business with him,' something at least some class members likely would prefer not to do"). Here, the "relief" proposed—a stake in Clearview's future business—is a form of in-kind compensation that shares some of the characteristics that make coupon settlements suspect, including forced future business with the defendant. *See Synfuel Techs.*, 463 F.3d at 654.

Indeed, the settlement proposed here is more problematic than coupon settlements because the potential value of the settlement is contingent on Clearview's continued collection, use, and disclosure of people's biometric information, including unlawfully collected biometric information—the very conduct alleged to violate class members' rights. The more successful Clearview is at performing those acts, the more value the Settlement Stake will have. Thus, although this lawsuit sought to enjoin Clearview from unlawfully collecting, using, and disclosing people's biometric information, the proposed settlement requires class members to endorse (and incentivizes them to encourage) that conduct. And because the settlement results in class members effectively consenting to future collection, use, and disclosure of their biometric information, defendants reap significant benefits from the proposed settlement—while absent class members in the nationwide class receive essentially nothing. *See infra* Part II.

Moreover, by granting class members an economic interest in Clearview's business, the proposed settlement forces class members to bear the risk of Clearview's future actions. Although the settlement requires class members to release any claims that they might have in the future, they would bear the risk of Clearview violating others' rights through the same conduct that plaintiffs here allege is unlawful. And they are incentivized to support Clearview's activities and remain

silent about any issues they have with Clearview's actions, lest the value of Clearview diminish and the potential payout from the settlement decrease or disappear. This kind of Faustian bargain is fundamentally unfair.

**II.    The proposed settlement is not fair, adequate, or reasonable because class members may receive no value for their sweeping release of claims.**

**A.  The settling parties have failed to show that the proposed settlement will provide a meaningful benefit to class members.**

The essence of the fairness inquiry is whether the settlement reflects a reasonable compromise in light of the prospects of further litigation. "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864 (citation omitted); *see* Fed. R. Civ. P. 23, advisory committee's note to 2018 amendments ("The relief that the settlement is expected to provide to class members is a central concern.").

 "No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Subway*, 869 F.3d at 556 (quoting *In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016)); *see Koby v. ARS Nat'l Svcs., Inc.*, 846 F.3d 1071, 1079–80 (9th Cir. 2017) (in reversing approval of class action settlement, stating that "[b]ecause the settlement gave the absent class members nothing of value, they could not reasonably be required to give up anything in return"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." (citation omitted)).

Here, the proposed settlement provides no meaningful benefit to the class in exchange for a broad release of claims. At final settlement, class members will receive no certain monetary payment and no injunctive relief. Instead, class members with approved claims will receive shares

of a Settlement Fund that has no money at final settlement and no certainty of any payment in the future. In exchange, class members provide a sweeping release of claims, including claims outside the scope of this lawsuit, and they release claims against defendants who contribute nothing to the settlement but they receive no consideration in return.

### 1. Class members would receive no payment at the time of final approval.

At the time they release their claims, class members will receive no cash or other monetary payment. Although class members with approved claims will receive shares of the Settlement Fund, the Settlement Fund is empty at final settlement.

Moreover, none of the four financial transactions triggering the funding of the Settlement Fund is likely to generate a payout at final settlement. There is no evidence that Clearview can or will liquidate or consummate an IPO at final settlement. The cash demand is likely worth nothing at that time because Clearview is unlikely to have generated revenue in the single day that it settled. *See* SA ¶ 3.3(c) (payment amount from a cash demand is a percentage of Clearview's revenue from the date of final settlement until the date of the cash demand). Finally, because the value of the Third-Party Sale Option is based on the Liquidation, IPO, and Cash-Demand options, a third-party sale is also likely worth nothing. *See id.* ¶ 3.4 (third-party sale amount is for a "commercially reasonable price" of the payment from the Liquidation, IPO, and Cash-Demand Options).

Thus, at final settlement, the class members receive nothing: no cash, no stock, nothing with monetary value.

### 2. The future value of the purported settlement relief is highly speculative.

Under the proposed settlement, neither Clearview nor the Settlement Master is required to initiate (let alone complete) any of the four financial transactions triggering a payout to the Settlement Fund. The settling parties have produced no evidence that any such transaction is likely

to take place, or that it would result in adequate payment to the class. Thus, whether class members with approved claims ever will receive payment from the settlement is uncertain—and unlikely.

Whether any transaction triggering a payout will occur rests on a chain of speculative events. There is no evidence that Clearview is preparing to attempt a merger, acquisition, other liquidation, or an IPO. And even if attempted, its success would be speculative. *See The Biggest Failed Mergers and Acquisitions of the Last Decade*, U.S.A. Today, Mar. 18, 2024 (stating that "Harvard Business Review estimates that 70%–90% of all M&A deals do not succeed, either not living up to the transaction price or failing to properly integrate the new business").[2]

Whether the Settlement Master elects to make a cash demand or sell to a potential third party is similarly speculative. Even if the Settlement Master made a cash demand to Clearview, that cash demand would be worth nothing if Clearview has no recognized revenue in the relevant time period. *See* SA ¶ 3.3(c) (cash-demand payment amount is 17 percent of "Clearview's GAAP recognized revenue … for the period commencing on the date of final settlement approval and ending on the date of the Settlement Master's Cash Demand").

Moreover, there is no evidence of an interested third party qualified to purchase the settlement stake payment. *See id.* ¶ 3.4 (requiring the third-party purchaser to be "a U.S. Person …, an accredited investor … and not a competitor of Clearview or then in active litigation with Clearview"). Even if such a person existed and the Settlement Master elected to make the sale, the "commercially reasonable price" received for the sale is not the highest price achievable, and the settling parties have not shown that a sale at a "commercially reasonable price" would result in adequate relief to the class.

---

[2]    https://www.usatoday.com/picture-gallery/money/2024/03/18/the-biggest-failed-mergers-and-acquisitions-of-the-last-decade/50489241/

In addition, the proposed settlement defines the "Settlement Stake" as a "monetary amount equal to the value of the number of shares of Clearview common stock equal to twenty-three percent (23%) of the capitalization of Clearview as of September 6, 2023, calculated on a fully-diluted basis." SA ¶ 1.57. Notably, the Settlement Stake is *not* a 23 percent stake in Clearview's future value. Rather, it is "a monetary amount" equivalent to a 23 percent stake in Clearview as of September 6, 2023. *Id.* This amount, however, is speculative for at least two reasons.

First, it is unclear how much money is equivalent to "23%[] of the capitalization of Clearview as of September 6, 2023." *Id.* The settling parties do not appear to have put that number into the record. And Clearview's "capitalization" as of September 6, 2023, could mean different things. *Compare* Virginia B. Morris & Kenneth M. Morris, *Guide to Money & Investing* 95 (2010) (discussing "market capitalization") *with* Alan S. Gutterman, *Business Transactions Solutions* § 152:115 (Sept. 2024 update) (discussing "information regarding the capital structure of the company and the shares which the company has available for future sale").

Second, because the value of the Settlement Stake depends on the number and value of shares of Clearview stock at some unknown point in the future, the value of the Settlement Stake is "subject to … dilution by future investments," as Class Counsel admit. Pls. Mem. 8; *see* Hon. Wayne R. Andersen Decl. ¶ 15, ECF No. 578-2 (stating that the parties agreed on the 23-percent number because "[t]oo large a percentage ran the risk of preventing Clearview from attracting additional, future investors"). In addition, there is no evidence that the stock would have any value, but even if it did, the value could decline due to issuance of additional shares or stockholders selling shares. Without knowing the number of shares of Clearview stock or the value of each share

at the future time when a settlement payout (if any) would be triggered, the value of the Settlement Stake is entirely speculative.[3]

### 3. The absence of injunctive relief highlights the inadequacy of the proposed settlement.

The proposed settlement is also inadequate because it provides the class members with no injunctive relief. According to Class Counsel, because Clearview agreed to injunctive relief in settling a *different* lawsuit, *ACLU v. Clearview AI, Inc.*, No. 2020 CH 04353 (Cir. Ct. Cook Cty., Ill.) (the ACLU Lawsuit), "further injunctive relief would not provide meaningful additional consideration for the Classes." Pls. Mem. 2. To begin with, the relief provided through a separate lawsuit is not consideration for the release of the class members' claims in *this* lawsuit. *See Koby*, 846 F.3d at 1080 (reversing approval of settlement where "the settlement's injunctive relief is of no real value" because "[t]he injunction does not obligate [the defendant] to do anything it was not already doing").

In any event, Class Counsel is wrong that Clearview cannot provide further injunctive relief. Indeed, Class Counsel appears to concede that Clearview has not ceased *all* the "allegedly violative practices challenged in this matter." Pls. Mem. 2. In addition, the injunctive relief from the ACLU Lawsuit does not apply nationwide. For example, it requires Clearview to "maintain a publicly available internet-based opt-out request form for *Illinois* residents," ACLU Settlement Agreement ¶ 7 (emphasis added),[4] to implement a "filter program of screening out, to the best of Clearview's ability, *Illinois*-based photographs from the Clearview App," *id.* ¶ 8 (emphasis added),

---

[3] In light of the unknown and speculative nature of the purported relief, it is arguable that the average absent class member likely does not understand the value of that relief.

[4] The settlement agreement in the ACLU Lawsuit is available at https://www.aclu.org/cases/aclu-v-clearview-ai?document=Exhibit-2-Signed-Settlement-Agreement#legal-documents.

13

and provides "an injunction for a period of five (5) years …prohibiting Clearview from granting either paid or free access to *Illinois* state, county, local, or other government agencies and contractors working for those agencies in *Illinois* … to the Clearview App" and "from granting either paid or free access to the Clearview App to any private entity located in *Illinois*," *id.* ¶ 2 (emphases added). Indeed, the settlement agreement makes clear that Clearview may "work with federal government agencies (or State government agencies outside of Illinois)." *Id.* ¶ 1; *see id.* ¶ 2. Thus, the nationwide class here does not benefit from the injunctive relief agreed to in that separate lawsuit, leaving open the possibility of significant meaningful, additional injunctive relief in this case.

Further, the terms of Clearview's privacy policy evidence the substantial room for additional injunctive relief. Pursuant to Clearview's policy, residents of certain states can make certain requests to Clearview regarding their information. For example, residents of six states (California, Colorado, Connecticut, Oregon, Utah, and Virginia) can request that Clearview delete their information and can opt out of certain uses of their information. *See Clearview AI, Inc. Privacy Policy*, Clearview AI, https://www.clearview.ai/privacy-policy (stating that Colorado, Connecticut, Oregon, Utah, and Virginia residents can opt out of the sale, collection, and use of personal data, and that Colorado, Connecticut, Oregon, and Virginia residents also can opt out of "profiling in furtherance of decisions that produce legal or similarly significant effects concerning a consumer"); *see id.* (stating that California residents can "opt-out of appearance in Clearview search results" and request that Clearview limit the use and disclosure of their sensitive personal information). Illinois residents can "opt-out of appearing in Clearview search results." *Id.* Residents of other states, however, cannot make these requests. *See id.*; *see also Privacy & Requests*, Clearview AI, https://www.clearview.ai/privacy-and-requests. Injunctive relief

extending these policies to class members in other states—which would include Objectors Weissman and Claypool—would be meaningful.

In short, deleting a class member's information from Clearview's database and prohibiting the collection, use, disclosure, or sale of that information would provide a meaningful benefit to the nationwide class. Indeed, the plaintiffs asked for that very injunctive relief. *See* TAC ¶ 199. Clearview clearly can provide such relief, having done so for residents of several states. Clearview's failure to confer such benefits to the residents of other states in the nationwide class highlights the unfairness and inadequacy of the proposed settlement.

**B. The proposed release is unreasonably broad.**

The settlement is also not fair, reasonable, or adequate because it contains an overly broad release of liability. Specifically, the settlement agreement defines "Released Claims" as follows:

> any and all claims, theories, or causes of action, whether known or unknown …, arising from or related to Defendants' alleged collection, capture, purchase, storage, possession, receipt through trade, obtainment, sale, lease, trade, profiting from and/or dissemination, disclosure or redisclosure of images and/or facial vectors and/or Biometric Data using the Clearview Biometric Database or other Clearview technology, including, without limitation, Clearview's algorithms, facial vectors, or other proprietary technology, to make use of those images and/or biometric data, including all claims and issues that were litigated in the Action or that could have been brought in the Action and claims for any violation of the Illinois Biometric Information Privacy Act ("BIPA") or other Illinois statutory or common law related to facial recognition, as well as any and all state law claims (including, but not limited to claims under the laws of Illinois, California, New York, and Virigina) and federal statutory, constitutional, and common law claims that were, or could have been, advanced regarding the images held in the Biometric Database in any of the cases assigned by the Judicial Panel on Multidistrict Litigation to the Action.

SA ¶ 1.46. This definition is unreasonably broad in multiple respects.

First, the release encompasses conduct that is different from the conduct alleged in the complaint. In particular, the settlement would require class members to release, in addition to claims related to the Clearview biometric database, any claims involving *other* Clearview

technologies and products.[5] *See id.* (releasing claims based on "other Clearview technology, including, without limitation, Clearview's algorithms, facial vectors, or other proprietary technology"). A class-action settlement that releases claims based on different factual predicates may not be fair, reasonable, and adequate as required by Rule 23(e). *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future … but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.").

Second, the settlement proposes to release "any and all state law claims (including, but not limited to claims under the laws of Illinois, California, New York, and Virigina) and federal statutory, constitutional, and common law claims that were, or could have been, advanced." SA ¶ 1.46. Thus, in addition to the claims alleged in the complaint, the settlement would require class members to release any other claim arising under any federal law, state law, or common law, including state law privacy claims. Particularly given the lack of any concrete benefit that class members receive in return, the broad release of claims not at issue in the litigation is unfair and unreasonable. *See Zimmerman v. Zwicker & Assocs.,* 2011 WL 65912, at *4 (D.N.J. Jan. 10, 2011) (reversing a settlement where, among other things, "the parties propose to release defendants from claims (i.e., state law claims) not asserted in the case").

### C. The proposed settlement provides class members no consideration for the release of claims against defendants other than Clearview.

No defendant other than Clearview has any obligation to contribute to the settlement; they do not pay any money into the Settlement Fund or cover any of the expenses associated with the

---

[5] For example, Clearview has marketed other products, such as "Clearview Consent," "Justice Clearview," and has released the platform "Clearview AI 2.0." *See* Clearview AI, https://www.clearview.ai/press-room/.

settlement, including the Settlement Master's fee. And, like Clearview, no defendant agrees to stop or amend its practices or policies as a result of this lawsuit. Because the settlement does not propose any relief to the class for the release of claims against these defendants, it should be rejected. *See Reynolds*, 288 F.3d at 284 (concluding that the district court abused its discretion in approving a settlement where, among other things, another company was named as a co-defendant for purposes of settlement and "the settlement class received no consideration for the release of *any* claims against" that co-defendant).

In particular, the settlement would release claims against the Macy's Defendants (Macy's, Inc., Macy's Retail Holdings, Inc., and Macy's Corporate Services, Inc.) in exchange for no consideration. The proposed settlement's requirement that "Macy's Defendants have no obligation to contribute any amount to the Settlement Fund," SA ¶ 1.54, deprives the class members of a valuable source of money. *See* Macy's, Inc., Quarterly Report (Form 10-Q) (Sept. 4, 2024) (reporting total revenue of approximately $10 billion for the 26 weeks ending August 3, 2024). Moreover, a release as to Macy's draws into question Class Counsel's assertion that because "there was no money for a substantial settlement," the settlement relief had to rest on a speculative stake in Clearview's future business. Pls. Mem. 2.

*     *     *     *

In short, the proposed settlement confers significant and concrete benefits on Clearview and other defendants, while nationwide class members receive no concrete benefit at all: no certain monetary payment and no injunctive relief. The proposed settlement is not fair, adequate, or reasonable and, accordingly, should not receive final approval.

17

### III.     The nationwide class is not adequately represented.

The Court also should reject the proposed settlement because the class representatives are not adequate. *See* Fed. R. Civ. P. 23(e)(2) (requiring the Court to consider in its fairness determination whether "the class representatives … have adequately represented the class"); *see Amchem*, 521 U.S. at 621 (class-action settlement must satisfy Rule 23(a)'s requirement of adequate class representation). The four named plaintiffs—Rodell Sanders, Gerard Dache, Eric Gould and Jordan Orlando—are residents of Illinois, Virginia, California, and New York, respectively, and represent the subclasses for those four states. TAC ¶¶ 5–8. None of these four named plaintiffs, however, can adequately represent nationwide class members who are not members of any subclass.

Class representatives that "have an incentive to maximize monetary recovery even if doing so requires sacrificing the strength of equitable relief available to the other class members" have a conflict of interest disabling them from representing the class. 1 *Newberg & Rubenstein on Class Actions* § 3:59 (6th ed., 2024 update). Thus, for example, a conflict exists where one class "would want to maximize cash compensation for past harm," but another "would want to maximize restraints … to prevent harm in the future." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016).

Here, the interests of the class representatives, all of whom are subclass members, and the interests of people in the nationwide class, such as Objectors Weissman and Claypool, are in conflict. The availability of injunctive relief is likely more significant for nationwide class members who are not members of a subclass because they, unlike the subclass members, do not allege claims for additional monetary damages under Illinois, Virginia, California, or New York law. Moreover, the proposed settlement provides less purported compensation for nationwide class

18

members, allocating only one share of the Settlement Fund to nationwide class members who are not subclass members, but five shares to California, New York, and Virginia subclass members and ten shares to Illinois subclass members. SA ¶ 1.56. Without a class representative representing the interests of people who are in the nationwide class only, adequacy of representation is lacking.

Moreover, the involvement of these four named plaintiffs raises red flags about fairness and adequacy of representation. To finalize settlement, Class Counsel "need[ed] to … amend[]" the complaint to file an amended complaint that *replaced* the prior named plaintiffs with new named plaintiffs. 4/9/2024 Minute Entry. None of the prior named plaintiffs, however, dismissed their claims; indeed, the day after the named plaintiffs were replaced, the settling parties confirmed that the prior plaintiffs' claims remained. *See* Stipulation Regarding Filing of TAC, ECF No. 574. That the named plaintiffs were "defrocked" by the proposed settlement, *Pella*, 753 F.3d at 722, raises significant concerns about both the adequacy of the current class representatives and the fairness of the proposed settlement.

Finally, the proposed settlement is not fair because the newly added named plaintiffs receive an incentive award but have done no work on behalf of the class. Given the timing of their addition to the case, it is unlikely that these class representatives have expended "time and effort serving as Class Representatives," as the settlement agreement asserts. SA ¶ 9.3. Nevertheless, the settlement proposes to award each named plaintiff "an amount equal to the lesser of 50 shares in the Net Settlement Fund or $1,500" from the Fund. *Id*.

## CONCLUSION

For the foregoing reasons, the Court should deny final approval of the proposed class action settlement.

Respectfully submitted,

/s/ *Wendy Liu*
Wendy Liu (*pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorney for Objectors Robert Weissman
and Rick Claypool*

September 20, 2024